# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____ )
                                         )
BEYOND SYSTEMS, INC.                     )
9501 Anchorage Place                     )
Bethesda, MD  20817,                     )
                                         )
        Plaintiff                        )        Case No. 8:08-cv-00409-PJM
                                         )
        v.                               )        **FIRST AMENDED COMPLAINT**
                                         )
KRAFT FOODS, INC.                        )        **JURY TRIAL DEMANDED**
1 Kraft Court                            )
Glenview, IL  60025,                     )
                                         )
    Agent for Service:                   )
    The Corporation Trust Incorporated   )
    300 E. Lombard Street                )
    Baltimore, MD  21202                 )
                                         )
KRAFT FOODS GLOBAL, INC.                 )
3 Lakes Drive                            )
Northfield, IL  60093                    )
                                         )
    Agent for Service:                   )
    The Corporation Trust Company        )
    Corporation Trust Center             )
    1209 Orange Street                   )
    Wilmington, Delaware  19801          )
                                         )
VICT. TH. ENGWALL & CO.                  )
3 Lakes Drive                            )
Northfield, IL  60093-2753               )
                                         )
    Agent for Service:                   )
    The Corporation Trust Company        )
    Corporation Trust Center             )
    1209 Orange Street                   )
    Wilmington, Delaware  19801          )
                                         )
and                                      )
                                         )
JOHN DOES 1-20                           )
                                         )

Defendants.                                   )
_____)

## INTRODUCTION

Plaintiff Beyond Systems, Inc. ("BSI") brings this action seeking damages and injunctive relief against Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. ("Kraft Global"), Vict. Th. Engwall & Co. ("Engwall"), and John Does 1-20 for violation of Maryland Commercial Law Code § 14-3002 and California Business & Professions Code § 17529.5, and alleges as follows:

1.      BSI is a Maryland-based Internet Service Provider, or "ISP."

2.      As an ISP, BSI receives and delivers thousands of e-mails each day to its individual and business subscribers, as well as offering a variety of other services, including the hosting of websites.

3.      In addition to legitimate e-mail, BSI receives, each day, thousands of unwanted and unsolicited commercial e-mails.  Such unsolicited commercial e-mail is known by various names, including "UCE" or "spam."

4.      Spam is the Internet analog to junkmail and telemarketing, but sent postage due or as if a collect call.

5.      In 2002, the Maryland General Assembly enacted the Maryland Commercial Electronic Mail Act ("MCEMA"), Maryland Commercial Law Code §§ 14-3001 *et seq.*  The Maryland Court of Appeals has recognized that this statute was passed "to curb the dissemination of false or misleading information through unsolicited, commercial e-mail, as a deceptive business practice."  *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 16 (2005).  By the time MCEMA was enacted, 21 other states had already enacted laws to curb the proliferation of spam.  *See id.*  In considering the harm to an ISP (Verizon) from spam, the

District Court for the Eastern District of Virginia noted: "Spam is the twenty first century version of junkmail and over the last few years has quickly become one of the most popular forms of advertising over the Internet, as well as one of the most bothersome." *Verizon Online Servs., Inc. v. Ralsky*, 203 F.Supp.2d 601, 606 (E.D. Va. 2002).

6.    Congress in the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM" Act), moved to regulate commercial e-mail. While Congress legalized spam, it demanded transparency and accountability: thus, federal law and the laws of 34 States, prohibit spam that contains false or misleading information.

7.    In CAN-SPAM, Congress made comprehensive legislative findings on the burdens posed by spam (15 U.S.C. § 7701(a)):

   a.    "The convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail. Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise. Most of these messages are fraudulent or deceptive in one or more respects."

   b.    "The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both."

   c.    "The receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost,

overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient."

d.    "The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure."

e.    "Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail."

f.    "Many senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages."

8.    Likewise, the California Legislature in enacting that state's anti-spam law, California Business & Professions Code §§ 17529, *et seq*., found that (§ 17529(a)-(m)):

a.    "Roughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam."

b.    "The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age."

c.   "Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying."

d.   "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)."

e.   "Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail."

f.   "Spam filters have not proven effective."

g.   "Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate."

h.   "The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone."

i.      "Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production."

j.      "There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore."

k.      "The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."

l.      "In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems."

m.      "Because of the above problems, it is necessary that spam be prohibited . . . ."

9.      In its April 2003 report entitled, *False Claims in Spam*, "the Federal Trade Commission (FTC) found that 66 percent of all spam contains some kind of false, fraudulent, or misleading information, either in the e-mail's routing information, its subject line, or the body of its message." S. Rep. No. 108-102 ("CAN-SPAM Act of 2003"), at 2. The FTC found that "one-third of all spam contains a fraudulent return e-mail address that is included in the routing information (known as the 'header') of the e-mail message." *Id.* at 3. In the Senate Report,

Congress also found that falsified headers "not only trick ISP's increasingly sophisticated filters," but "lure consumers into mistakenly opening messages from what appears to be people they know." *Id.*  In addition, Congress found that senders use false or misleading subject lines to "trick the recipient into thinking that the e-mail sender has a personal or business relationship with the recipient." *Id.* at 4.

## PARTIES

10.     Plaintiff BSI is Maryland corporation, with its principal place of business in Bethesda, Maryland.

11.     On information and belief, Defendant Kraft is a Virginia corporation with its principal place of business in Glenview, Illinois.

12.     On information and belief, Defendant Kraft Global is a Delaware corporation with its principal place of business in Northfield, Illinois.

13.     On information and belief, Defendant Engwall is a Delaware corporation with its principal place of business in New Jersey.  Engwall is a wholly-owned subsidiary of Kraft Global.

14.     John Does 1-20 are persons to be identified.  Plaintiff is unaware of the true names and capacities of these defendants and therefore sues by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities once ascertained.  BSI is informed and believes and therefore alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that BSI's injuries as herein alleged were proximately caused by such defendants.  These fictitiously-named defendants, along with Kraft, Kraft Global, and Engwall, are herein referred to collectively as "Defendants."

15.     Plaintiff is informed and believes that Defendants conspired to commit the acts described herein, or alternatively, aided and abetted others in the performance of the wrongful acts hereinafter alleged.  All Defendants (including Does 1-20) authorized, participated in, acquiesced to, consented to and/or were the agents of another defendant in the acts alleged, and initiated, conspired, assisted, participated in, or otherwise encouraged the conduct alleged in furtherance of one or more conspiracies to initiate the e-mails.  The transmissions of the e-mails identified herein were actions that each of the Defendants authorized, controlled, directed, or had the ability to authorize, control or direct, and were actions for which each of the Defendants is liable.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  Plaintiff is a resident of Maryland, Kraft is a resident of Virginia and Illinois, Kraft Global is a resident of Delaware and Illinois, and Engwall is a resident of Delaware and New Jersey.  Plaintiff alleges greater than $75,000 in damages in this suit.

17.     By virtue of Kraft's longstanding and multifarious business enterprises in Maryland, Kraft has continuous and systematic contacts with the State of Maryland and is subject to general personal jurisdiction.  This Court also has personal jurisdiction over Kraft under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

18.     By virtue of Kraft Global's longstanding and multifarious business enterprises in Maryland, Kraft Global has continuous and systematic contacts with the State of Maryland and is subject to general personal jurisdiction.  This Court also has personal jurisdiction over Kraft Global under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

19.     This Court has personal jurisdiction over Engwall under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

20.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2), (3) and (c). Venue is proper as a substantial part of the events giving rise to the claim occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

## FACTS

21.     BSI is an ISP.  An ISP is defined under Maryland Commercial Law Code § 14-3001 to include "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer service" or "a service or system that provides access to the internet".  BSI provides and enables access to the Internet for multiple users.

22.     BSI owns and operates interactive computer services that enable its customers to, among other things, access the Internet, access BSI-hosted Internet services and exchange e-mail.  BSI owns and maintains computers and other equipment, including specialized computers or "servers" that process e-mail messages and otherwise support its e-mail services.  BSI maintains the e-mail-related equipment in Silver Spring, Maryland.

23.     On information and belief, Engwall is a wholly-owned subsidiary of Kraft Global.

24.     On information and belief, Defendant Kraft and/or Kraft Global is the owner of the Gevalia brand name.

25.     On information and belief, Defendant Kraft and/or Kraft Global licenses the Gevalia brand name to Engwall.

26.    On information and belief, the domain names Gevalia.com and JoinGevalia.com are registered to Kraft Foods, Inc.  Engwall uses domain names Gevalia.com and JoinGevalia.com for its online promotions.

27.    Kraft advertises Gevalia coffee and related products on its website at http://www.kraftfoodservice.com/ProductsandBrands/HotBeverages/Gevalia.htm, including stating:  "We offer a full line of appealing merchandising and equipment to help you promote and serve the smooth, distinct taste of Gevalia."

28.    The Gevalia website (www.gevalia.com) is copyrighted 2008 by Victor Th. Engwall & Co.

29.    On information and belief, Defendants and/or their agents initiated the transmission, conspired with others to initiate the transmission, and/or assisted in the transmission of the e-mails advertising Gevalia ("Gevalia e-mails").

30.    On information and belief, Defendants and/or their agents used other companies to send and track e-mails advertising Gevalia products.  It is alleged that Defendants and/or their agents sent the e-mails, initiated the transmission of the e-mails, conspired with others to initiate the transmission of the e-mails, and/or assisted in the transmission of the e-mails by other companies, which in turn directed other persons to send the tens of thousands of e-mails at a time, including Gevalia e-mails.

31.    On information and belief, Defendants and/or their agents paid others based on the number of people who "clicked-through" the links in that spammer's e-mails and thereby were directed to the Defendants' or third-party advertiser's website and/or numbers of people who make a purchase, participate in a "incentive" program or otherwise become a customer.

32.     On information and belief, Defendants and/or their agents tracked the results of the transmissions and all related sales and services, in part so that the bulk e-mailer responsible for the e-mail which lured the recipient to click through to the Gevalia site could be paid accordingly.

33.     This tracking generated records that identify the participants in these activities, and the related times, dates, quantities and payment amounts.

34.     On information and belief, Defendants used, among others, Connexus Corporation, Hydra Media Group, MailCompanyX, and OC-3 Networks, Inc. in California to send Gevalia e-mails from California to Maryland.

35.     Between February 13, 2005 and February 2, 2008, BSI received thousands of Gevalia e-mails from Defendants and/or their agents at its mail servers.  (Attached as Exhibits 1, 2 and 3 are true and correct samples of Gevalia e-mail received by Plaintiff.)

36.     BSI received Gevalia e-mails at its servers in Maryland.

37.     Plaintiff alleges that in each case, Defendants and/or their agents initiated, conspired to initiate, and assisted in the initiation of commercial electronic mail messages to recipients in Maryland, including Plaintiff.

38.     Plaintiff alleges Defendants and/or their agents sent Gevalia e-mails via intermediary and/or third party computers and networks that were located in California..

39.     Plaintiff alleges that Defendants advertised in these e-mails.

40.     Plaintiff alleges Gevalia e-mails received by BSI contained or were accompanied by falsified, misrepresented, or forged header information.

41.     Plaintiff alleges the Gevalia e-mails received by BSI contained false or misleading information about the origin or the transmission path.

42.     Plaintiff alleges Gevalia e-mails received by BSI had subject lines that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

43.     Plaintiff alleges the Gevalia e-mails received by BSI had subject lines that have the capacity, tendency, or effect of deceiving the recipient.

44.     Plaintiff alleges Gevalia e-mails contain false and/or misleading header information about the origin or the transmission path of the e-mail.  This includes, for example, that the e-mail arrived at BSI servers bearing false information concerning the identities of the computers sending the e-mails.  When an e-mail arrives, the transmitting computer sends a "HELO," which is a parameter typically showing the computer's name and/or IP address so as to identify to the recipient computer who is sending the e-mail and where it came from.  In the case of Gevalia e-mails, the identities of the sending computers given in the HELO did not match the IP addresses of the sending computers.  That is, the identities, provided by the Defendant and/or its agents, of the computers delivering mail to Plaintiff's mail servers do not match the IP addresses of the contacting computers.  For example, in Exhibit 2, the sender used a computer at IP address 66.55.191.198, but that machine identified itself as "producttesterswanted.info", which the sender's own DNS server confirmed resided at a completely different IP address – not 66.55.191.198.  This false identification was designed to mask the identity of the sender of the e-mails and to make it more difficult, if not impossible, to find or contact the sender.

45.     Plaintiff alleges Gevalia e-mails contain false and/or misleading header information about the origin or the transmission path of the e-mail because they contain one or more fictitious, false and/or misleading names in the "From:" lines of the message headers.  For example, on February 15, 2005, Defendants and/or their agents sent over 500 electronic

messages purporting to be from over 500 different people, with each message's "From:" line containing one or more unique first and last names, many, if not all of which were fictitious.  The false names were designed to mislead the recipients of the messages and to bypass spam filters.

46.     Plaintiff alleges Gevalia e-mails contain false and/or misleading header information about the origin or the transmission path of the e-mail because they contain false domain names in the sender addresses.  For example, some bulk e-mail campaigns were sent with many domain names, such as Turishusa.com, registered to Intercosmos Media Group Inc d/b/a Directnic.com, designed by Defendant and/or their agents to mislead the recipients of the messages, mask the identity of the true sender of the e-mail, and to deceive recipients and spam filters into *not* blocking the messages.  (*See* Exhibits 3 and 4.)

47.     The Federal Trade Commission in its December 2005 report to Congress, identified sending e-mails with many domain names and IP addresses as a deceptive means of avoiding ISPs' spam filters.  *See Effectiveness and Enforcement of the CAN-SPAM Act: A Federal Trade Commission Report to Congress*, at A-3 & n.74 (December 2005).  By using multiple domain names and IP addresses, Defendants were able to disguise the actual source of Gevalia e-mail, and to trick ISPs by "spreading out" the total volume of e-mail, thus reducing the volume sent from *each* domain name and IP address, and thus preventing spam filters which react to large volumes of e-mail from a single source.

48.     Plaintiff alleges Defendants and/or their agents also sent Gevalia e-mails to the Plaintiff that included domain names which were registered to false, non-existent entities, as well as entities using false addresses and/or false telephone numbers.  Over 500 illegal e-mails were sent by a single spammer under multiple domain names with a penchant for registering hundreds of throw-away domain names, using fake names, addresses and/or proxy services in the

registration record (a.k.a. the "Whois data") for the domain to conceal its identity.  As an example, a few of this spammer's domains were registered using the false name and address of "Ted Hoffmann" at 4336 Degnan Blvd. in Los Angeles, an address which in reality belongs to a restaurant called Euphoria 360 (formerly known as Augustine's Restaurant).  Other domains by this spammer were registered with the address of a day care center in Alabama, a Chiropractor's office in Phoenix, a restaurant in Philadelphia, and an office on the "fourth floor" of what turns out to be just a three story building in Miami.  The U.S. Postal Service's website verifies the fraudulent nature of the dozens of addresses from all over the U.S. that were used to register this spammer's domains.  For example, the domain name "turishusa.com" found in Exhibit 3 was registered to "RC" with a registration address of "381 NE 207st, Hallandale, FL 33181." Plaintiff alleges the name and address listed on Exhibit 4 is false.  (Attached as Exhibit 4 is a true and correct copy of the domain registration of turishusa.com at the time period of its use.) Defendant and/or its agents included false domain names and/or domain names associated with false contact information so as to mask the true identity of the senders, and to prevent complaining parties from contacting them.

49.     Plaintiff alleges Gevalia e-mails contain false or misleading information about the origin or the transmission path of the commercial electronic mail in the message body itself.  An e-mail not only bears statements "about the origin" in terms of the origin's location, but can also bear statements "about the origin" in terms of the origin's relationship to the recipient.  That is, Gevalia e-mails falsely claim to have been generated and sent to the recipient because the recipient requested the e-mail.

50.     Gevalia e-mails use a form that provides a space in which the list publisher with which the recipient has allegedly subscribed is identified, but the e-mails either do not supply

that information, instead stating:  "You have received this advertisement because you have registered with (Publisher List Name Entered Here)," or provide the name of a Publisher List to which the BSI had never opted-in.

51.     Plaintiff alleges Gevalia e-mails contain false and/or misleading information in the subject lines that has the capacity, tendency, or effect of deceiving the recipient and/or that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  This includes, for example, stating "Free Stainless Steel Coffeemaker & 2 Travel Mugs from Gevalia" when a purchase is required.  The subject lines of Gevalia e-mails were designed by Defendants and/or their agents in order to deceive or attempt to deceive the recipient.  (*See* Exhibit 5.)

52.     On information and belief attempts to opt out of Gevalia e-mail, including contacting Defendants directly with requests that they cease sending the Gevalia e-mail are ineffective.  Moreover, e-mail addresses which opt-out through Gevalia's own "opt-out" system begin to receive spam for other products, meaning e-mails on the opt-out list are sold or given to other spammers.

53.     Gevalia e-mails have harmed and continue to harm BSI by interfering with BSI's business operations, requiring the application of time, money and technological resources to handle the spam.  Among the adverse affects to BSI that high spam loads have caused are decreased server response and crashes, increased costs for network expansion, higher bandwidth utilization, forced upgrades of expensive hardware and software, frustration of subscribers, and loss of staff time.  To the extent Defendants' thousands of e-mails consume disk space, drain the processing power of BSI's computer equipment, and stress BSI's network infrastructure, those

resources are not available to serve subscribers or perform other tasks.  Spam is BSI's subscribers' number one complaint.

### COUNT I:  VIOLATION OF MARYLAND COMMERCIAL LAW CODE § 14-3002

54.     Plaintiff hereby repeats and re-alleges paragraphs 1 through 53 set forth above as if fully set forth herein.

55.     Under Maryland Commercial Law Code § 14-3002, a person "may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State," and which "contains false or misleading information about the origin or the transmission path of the commercial electronic mail"; or "contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient."

56.     Between February 14, 2005 and May 26, 2008, Defendants and/or their agents initiated the transmission, conspired with another person or persons to initiate the transmission, and/or assisted in the transmission of at least 10,000 commercial electronic mail messages which contained false and/or misleading information about the origin or the transmission path of the e-mail, as stated herein, and/or which contained false and/or misleading information in the subject line that had the capacity, tendency, or effect of deceiving the recipient, as stated herein.

57.     The claims asserted in Count I are ongoing and include e-mails that may be received as Defendants may continue to send them, and as new information is discovered, up to the time of entry of a final nonappealable judgment.

58.     Under Maryland Commercial Law Code § 14-3002(c), a sender is presumed to know that the intended recipient of commercial electronic mail is a resident of Maryland if the

information is available on request from the registrant of the Internet domain name contained in the recipient's electronic mail address.  BSI's domains are registered at www.joker.com which readily identifies the domains as being found in Maryland.

59.     Each e-mail is a separate violation.

60.     As a proximate result of the unlawful actions of Defendants and/or their agents, Plaintiff is entitled to damages under Maryland Commercial Law Code § 14-3003 in an amount equal to the greater of $1,000 per e-mail, or BSI's actual damages, and attorneys' fees.

## COUNT II:  VIOLATION OF CALIFORNIA
## BUSINESS & PROFESSIONS CODE § 17529.5

61.     Plaintiff hereby repeats and re-alleges paragraphs 1 through 60 set forth above as if fully set forth herein.

62.     Under California Code Business & Professions § 17529.5(a), it is "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address" where that e-mail advertisement "contains or is accompanied by falsified, misrepresented, or forged header information," or "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

63.     Defendants and/or their agents advertised in commercial e-mail advertisements that they sent or caused to be sent from servers in California to in-state and out-of-state recipients, including to BSI in Maryland.

64.     Between February 14, 2005 and May 26, 2008, Defendants and/or their agents sent at least 10,000 deceptive e-mails to Plaintiff's servers in violation of California Business & Professions Code § 17529.5(a)(2) and/or (3).

65. The claims asserted in Count II are ongoing and include e-mails that may be received as Defendants may continue to send them, and as new information is discovered, up to the time of entry of a final nonappealable judgment.

66. The e-mails received from Defendants and/or their agents contained and/or were accompanied by falsified, misrepresented, or forged header information.  For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(2).

67. The e-mails received from Defendants and/or their agents had subject lines that would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(3).

68. Defendants and/or their agents advertised in commercial e-mail advertisements that they sent or caused to be sent to a California electronic mail address and received by BSI.

69. Each e-mail is a separate violation.

70. As a proximate result of the unlawful actions of Defendant and/or their agents, Plaintiff is entitled to damages under California Business & Professions Code § 17529.5(b)(1)(B) of $1,000 per e-mail, BSI's actual damages, and its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, BSI respectfully requests that this Court enter judgment against Defendants, jointly and severally, for in excess of $20,000,000, including:

A. Awarding BSI damages, including statutory damages under Maryland Commercial Law Code § 14-3003 in an amount equal to the greater of $1,000 per e-mail, or BSI's actual damages;

B.      Awarding BSI its attorneys' fees as provided under Maryland Commercial Law Code § 14-3003;

C.      Awarding BSI damages, including statutory damages under California Business & Professions Code § 17529.5(b)(1)(B) of $1,000 per e-mail and BSI's actual damages;

D.      Awarding BSI its attorneys' fees and costs as provided under California Business & Professions Code § 17529.5(b)(2);

E.      Enjoining temporarily and permanently Defendants, their officers, agents, representatives, servants, employees, attorneys, successors, assignees, and all others in active concert or participation with Defendants, from initiating, conspiring, or assisting in the sending of false or misleading commercial e-mail; and

F.      Awarding such other relief as this Court considers just and proper.

## JURY DEMAND

Plaintiff BSI demands a trial by jury.


                              Respectfully submitted,
                              STEPTOE & JOHNSON LLP


                              _____/s/ Thomas M. Barba_____
                              Thomas M. Barba (US DC-MD Bar No. 28487)
                              John J. Duffy (US DC-MD Bar No. 28613)
                              Jennie L. Kneedler (US DC-MD Bar No. 28617)
                              STEPTOE & JOHNSON LLP
                              1330 Connecticut Ave., NW
                              Washington, DC  20036
                              (202) 429-3000
                              Fax:  (202) 429-3902
                              tbarba@steptoe.com
                              jduffy@steptoe.com
                              jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
(212) 506-3900
Fax:  (212) 506-3950
tonorato@steptoe.com

Of Counsel:
Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, Maryland  20876
301-540-8180
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street
Suite 201
Rockville, MD  20850
mike@mikerothman.com
Phone: (301) 251-9660
Fax: (301) 251-9610

*Attorneys for Plaintiff Beyond Systems, Inc.*

Dated:  August 18, 2008

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of August 2008, the foregoing *First Amended Complaint* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel for Defendants via the Court's electronic filing notification system. A true and correct copy of the foregoing First Amended Complaint, along with the Complaint and Exhibits as filed on February 14, 2008, will be served via personal service upon the below named agent of service for added party Defendant Kraft Foods Global, Inc.

> John K. Roche
> Barry M. Reingold
> John M. Devaney
> PERKINS COIE LLP
> 607 14th Street NW
> Suite 800
> Washington DC 20005
> jroche@perkinscoie.com
> breingold@perkinscoie.com
> jdevaney@perkinscoie.com
> *Counsel for Defendants Kraft Foods Inc. and Vict. Th. Engwall & Co.*
>
> Kraft Foods Global, Inc.
> The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, Delaware 19801
> *Defendant Kraft Foods Global Inc.*

<u>/s/ Jennifer M. Newton</u>

Jennifer M. Newton