## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**BEYOND SYSTEMS, INC.**

  **Plaintiff,**

  v.                                               **Case No.: 8:08-cv-00409-PJM**

**KRAFT FOODS INC.,** *et al.*

  **Defendants.**

## ANSWER OF DEFENDANT KRAFT FOODS GLOBAL INC.
## TO SECOND AMENDED COMPLAINT

Defendant Kraft Foods Global Inc., ("Defendant" or "Kraft Global") answers the Second Amended Complaint of Plaintiff as set forth below.  Unless expressly admitted, the allegations are denied as explained in the answer to each paragraph.

1.      BSI is a Maryland-based Internet Service Provider, or "ISP."

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

2.      As an ISP, BSI receives and delivers thousands of e-mails each day to its individual and business subscribers, as well as offering a variety of other services, including the hosting of websites.

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

3.      In addition to legitimate e-mail, BSI receives, each day, thousands of unwanted and unsolicited commercial e-mails.  Such unsolicited commercial e-mail is known by various names, including "UCE" or "spam."

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

4.      Spam is the internet analog to junkmail and telemarketing, but sent postage due or as if a collect call.

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.  Furthermore, this allegation as written is unintelligible.

5.      In 2002, the Maryland General Assembly enacted the Maryland Commercial Electronic Mail Act ("MCEMA"), Maryland Commercial Law Code §§ 14-3001 *et seq*.  The Maryland Court of Appeals has recognized that this statute was passed "to curb the dissemination of false or misleading information through unsolicited, commercial e-mail, as a deceptive business practice."  *Beyond Sys., Inc., v. Realtime Gaming Holding Co.,* 388 Md. 1, 16 (2005).  By the time MCEMA was enacted, 21 other states had already enacted laws to curb the proliferation of spam.  *See id.*  In considering the harm to an ISP (Verizon) from spam, the District Court for the Eastern District of Virginia noted: "Spam is the twenty first century version of junkmail and over the last few years has quickly become one of the most popular forms of advertising over the Internet, as well as one of the most bothersome."  *Verizon Online Servs., Inc. v. Ralsky,* 203 F. Supp. 2d 601, 606 (E.D. Va. 2002).

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant.  Accordingly, no response is required. To the extent that a response is required,

Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

6.      Congress in the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM" Act), moved to regulate commercial e-mail. While Congress legalized spam, it demanded transparency and accountability: thus, federal law and the laws of 34 States, prohibit spam that contains false or misleading information.

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts relevant to Defendant.  Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff has cited to an Act of Congress intended to regulate email.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

7.      In CAN-SPAM, Congress made comprehensive legislative findings on the burdens posed by spam (15 U.S.C. § 7701(a)):

      a.   "The convenience and efficiency of electronic mail are threatened by extremely rapid growth in the volume of unsolicited commercial electronic mail.  Unsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise.  Most of these messages are fraudulent or deceptive in one or more respects."

      b.   "The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both."

    c.   "The receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient."

    d.   "The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure."

    e.   "Many sender of unsolicited commercial electronic mail purposefully disguise the source of such mail."

    f.   "Many senders of unsolicited commercial mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages."

**Answer:**  With respect to the allegations contained in this paragraph and its subparts, Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant. Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of Congressional materials.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

    8.    Likewise, the California Legislature in enacting the state's anti-spam law,

California Business & Professions Code §§ 17529 *et seq.*, found that (§ 17529(a)-(m)):

a. "Roughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam."

b. "The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age."

c. "Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying."

d. "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)."

e. "Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail."

f.   "Spam filter have not proven effective."

g.   "Like traditional paper "junk" mail, spam can be annoying and waste time but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate."

h.   "The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone."

i.   "Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production."

j.   "There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore."

k.   "The true beneficiaries of spam are the advertisers who benefit from marketing derived from the advertisements."

l.   "In addition spam is responsible for virus proliferation that can cause tremendous damage both to individual computes and to business systems."

m.   "Because of the above problems, it is necessary that spam be prohibited."

**Answer:** With respect to the allegations contained in this paragraph and its subparts,

Plaintiff is stating its interpretation of the law. It is not stating any facts related to Defendant. Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of California legislative materials. Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

9.      In its April 2003 report entitled, *False Claims in Spam*, "the Federal Trade Commission (FTC) found that 66 percent of all spam contains some kind of false, fraudulent, or misleading information, either in the e-mail's routing information, its subject line, or the body of its message." S. Rep. No. 108-102 ("CAN-SPAM Act of2003"), at 2. The FTC found that "one-third of all spam contains a fraudulent return e-mail address that is included in the routing information (known as the 'header') of the e-mail message. . . . *Id*. at 3. In the Senate Report, Congress also found that falsified headers "not only trick ISP's increasingly sophisticated filters," but "lure consumers into mistakenly opening messages from what appears to be people they know." *Id*. In addition, Congress found that senders use false or misleading subject lines to "trick the recipient into thinking that the e-mail sender has a personal or business relationship with the recipient." *Id*. at 4

**Answer:** Plaintiff is stating its interpretation of the law. It is not stating any facts related to Defendant. Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of Federal Trade Commission and Congressional materials. Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

## PARTIES

10.      Plaintiff BSI is a Maryland corporation, with its principal place of business in

Bethesda, Maryland.

**Answer:** Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

11.  Defendant Kraft is a Virginia corporation with its principal place of business in Glenview, Il1inois.

**Answer:** Defendant admits that Kraft Foods Inc. is a Virginia corporation with its principal place of business in Glenview, Illinois.

12.  Defendant Kraft Global is a Delaware corporation with its principal place of business in Northfield, Il1inois.

**Answer:** Defendant admits that Kraft Global is a Delaware corporation with its principal place of business in Northfield, Il1inois.

13.  Defendant Engwall is a Delaware corporation with its principal place of business in New Jersey.  Engwall is a wholly-owned subsidiary of Kraft Global.

**Answer:** Admitted.

14.  Defendant Connexus is a Delaware corporation with its principal place of business in El Segundo, California.

**Answer:** Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

15.  Defendant Hydra LLC is a California corporation with its principal place of business in Beverly Hills, California.

**Answer:** Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

16.  Plaintiff is informed and believes that Defendants conspired to commit the acts

described herein, or alternatively, aided and abetted others in the performance of the wrongful

acts hereinafter alleged.  All Defendants authorized, participated in, acquiesced to, consented to

and/or were the agents of another defendant in the acts alleged, and initiated, conspired, assisted,

participated in, or otherwise encouraged the conduct alleged in furtherance of one or more

conspiracies to initiate the e-mails.  The transmissions of the e-mails identified herein were

actions that each of the Defendants authorized, controlled, directed, or had the ability to

authorize, control or direct, and were actions for which each of the Defendants is liable.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global

denies the allegations.  To the extent the allegations are directed at others, Kraft Global is

without knowledge or information sufficient to form a belief as to the truth of those allegations

and therefore they are denied.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction over the claims in this action pursuant

to 28 U.S.C. § 1332 (diversity jurisdiction).  Plaintiff is a resident of Maryland, Kraft is a

resident of Virginia and Illinois, Kraft Global is a resident of Delaware and Illinois, Engwall is a

resident of Delaware and New Jersey, Connexus is a resident of Delaware and California, and

Hydra is a resident of California.  Plaintiff alleges greater than $75,000 in damages in this suit.

**Answer:**  Defendant admits that the Court has subject matter jurisdiction over this matter

in that Plaintiff avers there exists diversity among the parties and the amount in issue is over

$75,000.  Kraft Global is without knowledge or information sufficient to form a belief as to the

truth of any remaining allegations and therefore they are denied.

18.    By virtue of Kraft's longstanding and multifarious business enterprises in

Maryland, Kraft has continuous and systematic contacts with the State of Maryland and is

9

subject to general personal jurisdiction.  This Court also has personal jurisdiction over Kraft

under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

**Answer:**  The allegations in this paragraph are directed at others and not at Kraft Global.

Accordingly, no response is required from Kraft Global.  To the extent that a response is

required, Defendant is without knowledge or information sufficient to form a belief as to the

truth of any remaining allegations and therefore they are denied.

19.     By virtue of Kraft Global's longstanding and multifarious business enterprises in

Maryland, Kraft Global has continuous and systematic contacts with the State of Maryland and is

subject to general personal jurisdiction.  This Court also has personal jurisdiction over Kraft

Global under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

**Answer:**  Kraft Global is not contesting personal jurisdiction over it for purposes of this

litigation.  However, Kraft Global denies the allegations of this paragraph.

20.     By virtue of Connexus's longstanding and multifarious business enterprises in

Maryland, Connexus has continuous and systematic contacts with the State of Maryland and is

subject to general personal jurisdiction.  This Court also has personal jurisdiction over Connexus

under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

**Answer:**  The allegations in this paragraph are directed at others and not at Kraft Global.

Accordingly, no response is required from Kraft Global.  To the extent that a response is

required, Defendant is without knowledge or information sufficient to form a belief as to the

truth of any remaining allegations and therefore they are denied.

21.     By virtue of Hydra's longstanding and multifarious business enterprises in

Maryland, Hydra has continuous and systematic contacts with the State of Maryland and is

subject to general personal jurisdiction.  This Court also has personal jurisdiction over Hydra

under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global. To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

22.     This Court has personal jurisdiction over Engwall under Maryland Courts & Judicial Proceedings Code §§ 6-103(b)(1), (2), (3), and (4).

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global. To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2), (3) and (c). Venue is proper as a substantial part of the events giving rise to the claim occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

**Answer:** Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

FACTS

24.     BSI is an Internet Service Provider. As such, BSI is an "electronic mail service provider" as defined in California Business & Professions Code § 17529.1(h) and an "interactive computer service provider" as defined in Maryland Commercial Law Code § 14-3001. BSI provides and enables access to the Internet for multiple users.

**Answer:** Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

25.     BSI owns and operates interactive computer services that enable its customers to, among other things, access the Internet, access BSI-hosted Internet services and exchange e-mail.  BSI owns and maintains computers and other equipment, including specialized computers or "servers" that process e-mail messages and otherwise support its e-mail services.  BSI maintains the e-mail-related equipment in Silver Spring, Maryland and in Rockville, Maryland.

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

26.     Engwall is a wholly-owned subsidiary of Kraft Global.

**Answer:**  Admitted.

27.     On information and belief, Defendant Kraft and/or Kraft Global is the owner of the Gevalia brand name.

**Answer:**  Denied.

28.     On information and belief, an unknown entity either licenses the Gevalia brand name to Engwall or Engwall owns the Gevalia brand name.

**Answer:**  The allegations in this paragraph are directed at others and not at Kraft Global.  Accordingly, no response is required from Kraft Global.  To the extent that a response is required, Defendant admits that an entity licenses the Gevalia brand name to Engwall.

29.     On information and belief, the domain names Gevalia.com and JoinGevalia.com are registered to Kraft Foods Inc.  Engwall uses domain names Gevalia.com and JoinGevalia.com for its online promotions.

**Answer:**  Defendant admits that the domain names are held by Kraft Foods Inc. and that Engwall uses domain manes Gevalia.com and JoinGevalia.com.  Defendant denies any remaining allegations of this paragraph.

30.     Kraft advertises Gevalia coffee and related products on its website at http://www.kraftfoodservice.com/ProductsandBrands/HotBeverages/Gevalia.htm, including stating: "We offer a full line of appealing merchandising and equipment to help you promote and serve the smooth, distinct taste of Gevalia."

**Answer:** Kraft Global admits that Engwall advertises Gevalia coffee and related products as averred.  Kraft Global denies any remaining allegations of this paragraph.

31.     The Gevalia website (www.gevalia.com) is copyrighted 2008 by Victor Th. Engwall & Co.

**Answer:** Admitted.

32.     Connexus was formed by the union of Vendare and NetBlue.

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global.  To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

33.     Connexus states on its website (http://www.connexuscorp.com/about.html) that it "offer[s] a diversified, multi-channel approach to connect advertisers with their target customers."  It states that it performs this function through a variety of "marketing vehicles," including through the use of "display, lead generation, co-registration, proprietary consumer sites, search, and e-mail."

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global.  To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

34.     On information and belief, Defendants and/or their agents initiated the transmission, conspired with others to initiate the transmission, and/or assisted in the transmission of commercial e-mail advertisements.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

35.     On information and belief, Defendants and/or their agents transmitted or caused the transmission of commercial e-mail advertisements.  Defendants and/or their agents arrange with other companies to have commercial e-mail advertisements sent to e-mail addresses both in California and other states.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

36.     On information and belief, Defendants and/or their agents advertise in, send, direct, assist, encourage, conspire in, procure, initiate, participate in and/or facilitate the sending of tens of thousands of e-mails at a time advertising various goods and services.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

37.     On information and belief, Defendants Kraft, Kraft Global, and Engwall and/or

14

their agents used other companies to send and track e-mails advertising Gevalia products.  It is alleged that Defendants and/or their agents sent the e-mails, initiated the transmission of the e-mails, conspired with others to initiate the transmission of the e-mails, and/or assisted in the transmission of the e-mails by other companies, which in turn directed other persons to send the tens of thousands of e-mails at a time, including Gevalia e-mails.

**Answer:**  Kraft Global admits that it did not send any of the emails that are exhibits to the Complaint.  Kraft Global denies any further allegations in this paragraph that are directed at it.  To the extent the allegations are directed at others, Kraft is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

38.    On information and belief, Defendants and/or their agents paid others based on the number of people who "clicked-through" the links in that spammer's e-mails and thereby were directed to the Defendants' or third-party advertiser's website and/or numbers of people who make a purchase, participate in a (*sic*) "incentive" program or otherwise become a customer.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations of this paragraph.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

39.    On information and belief, Defendants and/or their agents tracked the results of the transmissions and all related sales and services, in part so that the bulk e-mailer responsible for the e-mail which lured the recipient to click through to the advertiser site could be paid accordingly.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations of this paragraph.  To the extent the allegations are directed at others, Kraft

Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

40.     This tracking generated records that identify the participants in these activities, and the related times, dates, quantities and payment amounts.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations of this paragraph.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

41.     On information and belief, Defendants Kraft, Kraft Global, and Engwall used, among others, Defendant Connexus, Defendant Hydra, MailCompanyX (now known as Internet Endeavours), and OC-3 Networks, Inc. in California to send Gevalia e-mails from California to Maryland.

**Answer:**  Kraft Global admits that it has used Connexus Corporation and Hydra Media Group to promote Gevalia products.  Kraft Global is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore they are denied.

42.     Between February 14, 2005 and the present, BSI received more than 11,000 Gevalia e-mails from Defendants Kraft, Kraft Global, Engwall, and/or their agents (including Defendants Connexus and Hydra) at its mail servers, some of which are included among (and overlap with) the more than 62,000 emails linked to Connexus and/or Hydra as described in paragraphs 43, 69-70 and 81-82 of this Complaint.  (Attached as Exhibits 1, 2 and 3 are true and correct samples of Gevalia e-mail received by Plaintiff.).

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

43.     Between February 14, 2005 and the present, BSI received more than 34,000 e-mails linked to Connexus and more than 28,000 e-mails linked to Hydra at its mail servers. (Attached as Exhibits 1, 2, 3, 5, 6 and 8 are true and correct sample copies of email linked to Connexus and/or Hydra received by Plaintiff).

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

44.     BSI received the e-mails referenced in paragraphs 42 and 43 at its servers in Maryland.

**Answer:**  Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

45.     Plaintiff alleges that in each case, Defendants and/or their agents initiated, conspired to initiate, and assisted in the initiation of commercial electronic mail messages to recipients in Maryland, including Plaintiff.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global believes that at least some emails advertising Gevalia products were sent to recipients in Maryland.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

46.     Plaintiff alleges Defendants and/or their agents sent commercial e-mails via intermediary and/or third party computers and networks that were located in California to e-mail addresses both in California and other states.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further

denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws. Kraft Global denies any remaining allegations directed at it. To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

47.     Plaintiff alleges that Defendants advertised in these emails.

**Answer:** To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains. Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws. Kraft Global denies any remaining allegations directed at it. To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

48.     Plaintiff alleges the emails received by BSI contained or were accompanied by falsified, misrepresented, or forged header information.

**Answer:** To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains. Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws. Kraft Global denies any remaining allegations directed at it. To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

49.     Plaintiff alleges the e-mails received by BSI contained false or misleading

information about the origin or the transmission path.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

50.     Plaintiff alleges the emails received by BSI had subject lines that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

51.     Plaintiff alleges the emails received by BSI had subject lines that have the capacity, tendency, or effect of deceiving the recipient.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in

compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

52.      Plaintiff alleges the e-mails contain false and/or misleading header information about the origin or the transmission path of the e-mail.  Plaintiff also alleges it received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information.  This includes, for example, that the e-mail arrived at BSI servers bearing false information concerning the identities of the computers sending the e-mails.  When an e-mail arrives, the transmitting computer sends a "HELO," which is a parameter typically showing the computer's name and/or IP address so as to identify to the recipient computer who is sending the e-mail and where it came from.  In the case of these e-mails, the identities of the sending computers given in the HELO did not match the IP address of the sending computers.  That is, the identities, provided by the Defendant and/or its agents, of the computers delivering mail to Plaintiff's mail servers do not match the IP addresses of the contacting computers.  For example, in Exhibit 2, the sender used a computer at IP address 66.55.191.198, but that machine identified itself as "producttesterswanted.info", which the sender's own DNS server confirmed resided at a completely different IP address – not 66.55.191.198.  This false identification was designed to mask the identity of the sender of the e-mails and to make it more difficult, if not impossible, to find or contact the sender.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in

compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

53.     Plaintiff alleges it received commercial e-mail advertisements sent by Defendants and/or their agents containing false, misrepresented and/or forged header information, and false and/or misleading header information about the origin or the transmission path of the e-mail because they contain one or more fictitious, false and/or misleading names in the "From:" lines of the message headers.  For example on February 15, 2005, Defendants Kraft, Kraft Global, and Engwall and/or their agents, sent over 500 electronic messages purporting to be from over 500 different people, with each message's "From:" line containing one or more unique first and last names, many, if not all of which were fictitious.  The false names were designed to mislead the recipients of the messages and to bypass spam filters.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

54.     Also, on July 25, 2005, Defendants Connexus, Hydra and/or their agents sent over 500 electronic messages purporting to be from 673 different people, with each message's "From:" line containing a unique full first and last name.  The false names were designed by

Defendant and/or its agents to mislead the recipients of the messages and to bypass spam filters. (*See* Exhibit 9.)

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global. To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

55.     In another example, over the course of two days, June 30-July 1, 2005, Defendant Connexus and/or its agents sent over 4,300 electronic messages falsely claiming to be from the "Apple Store." The false names were designed by Defendants and/or their agents to mislead the recipients of the messages and to bypass spam filters. (*See* Exhibit 6)

**Answer:** The allegations in this paragraph are directed at others and not at Kraft Global. Accordingly, no response is required from Kraft Global. To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

56.     Plaintiff alleges it received commercial e-mail advertisements sent by Defendants and/or their agents containing false and/or misleading header information about the origin or the transmission path of the e-mail and false, misrepresented, or forged header information because they contain false domain names in the sender addresses. For example, some bulk e-mail campaigns were sent with many domain names, such as Turishusa.com, registered to Intercosmos Media Group Inc d/b/a Directnic.com, designed by Defendants and/or their agents to mislead the recipients of the messages, mask the identity of the true sender of the e-mail, and to deceive recipients and spam filters into not blocking the messages. (*See* Exhibits 3, 4, 6 and 8.)

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

57.      The Federal Trade Commission in its December 2005 report to Congress, identified sending e-mails with many domain names and IP addresses as a deceptive means of avoiding ISPs' spam filters. *See Effectiveness and Enforcement of the CAN-SPAM Act: A Federal Trade Commission Report to Congress,* at A-3 & n.74 (December 2005).  By using multiple domain names and IP addresses, Defendants were able to disguise the actual source of Gevalia e-mail, and to trick ISPs by "spreading out" the total volume of e-mail, thus reducing the volume sent from *each* domain name and IP address, and thus preventing spam filters which react to large volumes of e-mail from a single source.

**Answer:**  Defendant admits that Plaintiff is citing to a Federal Trade Commission Report. Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

58.      Plaintiff alleges it received commercial e-mail advertisements sent by Defendants and/or their agents that included domain names which were registered to false, non-existent entities, as well as entities using false addresses and/or false telephone numbers.  Over 500 illegal e-mails were sent by a single spammer under multiple domain names with a penchant for registering hundreds of throw-away domain names, using fake names, addresses and/or proxy

services in the registration record (a.k.a. the "Whois data") for the domain to conceal its identity. As an example, a few of this spammer's domains were registered using the false name and address of "Ted Hoffmann" at 4336 Degnan Blvd in Los Angeles, an address which in reality belongs to a restaurant called Euphoria 360 (formerly known as Augustine's Restaurant).  Other domains by this spammer were registered with the address of a day care center in Alabama, a Chiropractor's office in Phoenix, a restaurant in Philadelphia, and an office on the "fourth floor" of what turns out to be just a three story building in Miami.  The U.S. Postal Service's website verifies the fraudulent nature of the dozens of addresses from all over the U.S. that were used to register this spammer's domains.  For example, the domain name "turishusa.com" found in Exhibit 3 was registered to "RC" with a registration address of "381 NE 207st, Hallandale, FL 33181." Plaintiff alleges the name and address listed on Exhibit 4 is false.  (Attached as Exhibit 4 is a true and correct copy of the domain registration of turishusa.com at the time period of its use.)  Defendant and/or its agents included false domain names and/or domain names associated with false contact information so as to mask the true identity of the senders, and to prevent complaining parties from contacting them.  *See also* Exhibits 6 and 7.

   **Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

   59.    Plaintiff alleges it received commercial e-mail advertisements sent by Defendants

and/or their agents containing a reply address that was not and/or could not be functional because the return address was connected with an invalid domain name or non-working account.  For example, in Exhibit 6 on July 1, 2005, "RECRUITINGPRODUCTTESTERS" was not accepting any e-mail communications.  As such, the headers contained false information, designed by Connexus and/or their agents to mask the true identity of the senders, and to prevent complaining parties from contacting them.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

60.     Plaintiff alleges that it received commercial e-mail advertisements sent by Defendants and/or their agents containing false or misleading information about the origin or the transmission path of the commercial electronic mail in the message body itself.  An e-mail not only bears statements "about the origin" in terms of the origin's location, but can also bear statements "about the origin" in terms of the origin's relationship to the recipient. That is, Gevalia e-mails falsely claim to have been generated and sent to the recipient because the recipient requested the e-mail.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or

information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

61.     Gevalia e-mails use a form that provides a space in which the list publisher with which the recipient has allegedly subscribed is identified, but the e-mails either do not supply that information, instead stating: "You have received this advertisement because you have registered with (Publisher List Name Entered Here)," or provide the name of a Publisher List to which the (sic) BSI had never opted-in.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

62.     Plaintiff alleges that it received commercial e-mail advertisements sent by Defendants and/or their agents containing false and/or misleading information in the subject lines that has the capacity, tendency, or effect of deceiving the recipient and/or that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  This includes, for example, stating "Free Stainless Steel Coffeemaker & 2 Travel Mugs from Gevalia" when a purchase is required, or stating that the e-mail recipient had won a "Free" gift.  The subject lines were designed by Defendants and/or their agents in order to deceive or attempt to deceive the recipient, and were likely to mislead a recipient.  (*See* Exhibit 10)

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

63.     On information and belief attempts to opt out of Gevalia e-mail, including contacting Defendants directly with requests that they cease sending the Gevalia e-mail are ineffective.  Moreover, e-mail addresses which opt-out through Gevalia's own "opt-out" system begin to receive spam for other products, meaning e-mails on the opt-out list are sold or given to other spammers.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations of this paragraph.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

64.     On information and belief, attempts to opt out of e-mail, for example contacting Connexus directly with complaints and requests that they cease sending e-mail are ineffective.  Moreover, e-mail addresses which "opted out" or which were used in complaint correspondence begin almost immediately to receive additional e-mails from other spammers.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies the allegations of this paragraph.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those

allegations and therefore they are denied.

65.     These e-mails have harmed and continue to harm BSI by interfering with BSI's

business operations, requiring the application of time, money and technological resources to

handle the spam.  Among the adverse affects to BSI that high spam loads have caused are

decreased server response and crashes, increased costs for network expansion, higher bandwidth

utilization, forced upgrades of expensive hardware and software, frustration of subscribers, and

loss of staff time.  To the extent Defendants' thousands of e-mails consume disk space, drain the

processing power of BSI's computer equipment, and stress BSI's network infrastructure, those

resources are not available to serve subscribers or perform other tasks.  Spam is BSI's

subscribers' number one complaint.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global

specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further

denies that it sent or caused to be sent any emails advertising Gevalia products that were not in

compliance with state and federal laws.  Kraft Global denies any remaining allegations directed

at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or

information sufficient to form a belief as to the truth of those allegations and therefore they are

denied.

**COUNT I: VIOLATION OF MARYLAND COMMERCIAL LAW CODE § 14-3002**

66.     Plaintiff hereby repeats and re-alleges paragraphs 1 through 65 set forth above as

if fully set forth herein.

**Answer:**  Kraft Global hereby incorporates its answers to paragraphs 1 through 65 as its

answer to this paragraph.

67.     Under Maryland Commercial Law Code § 14-3002, a person "may not initiate the

transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that is sent to an electronic address that the sender knows or should have known is held by a resident of the State," and which "contains false or misleading information about the origin or the transmission path of the commercial electronic mail"; or "contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient."

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant.  Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of the Maryland Commercial Law Code.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

68.     Between at least February 14, 2005 and the present, Defendants Kraft, Kraft Global, and Engwall, and/or their agents initiated the transmission, conspired with another person or persons to initiate the transmission, and/or assisted in the transmission of more than 11,000 commercial electronic mail messages, some of which are included among (and overlap with) the more than 62,000 emails linked to Connexus and/or Hydra as described in paragraphs 43, 69-70 and 81-82 of this Complaint, which contained false and/or misleading information about the origin or the transmission path of the e-mail, as stated herein, and/or which contained false and/or misleading information in the subject line that had the capacity, tendency, or effect of deceiving the recipient, as stated herein.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at

others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

69.    Between at least February 14, 2005 and the present, inclusive, Defendant Connexus, and/or their agents, including but not limited to other Defendants herein, initiated the transmission, conspired with another person or persons to initiate the transmission, and/or assisted in the transmission of more than 34,000 commercial electronic mail messages which contained false and/or misleading information about the origin or the transmission path of the e-mail, as stated herein, and/or which contained false and/or misleading information in the subject line that had the capacity, tendency, or effect of deceiving the recipient, as stated herein.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

70.    Between at least February 14, 2005 and the present, inclusive, Defendant Hydra, and/or their agents, including but not limited to other Defendants herein, initiated the transmission, conspired with another person or persons to initiate the transmission, and/or assisted in the transmission of more than 28,000 commercial electronic mail messages which contained false and/or misleading information about the origin or the transmission path of the e-mail as stated herein, and/or which contained false and/or misleading information in the subject line that had the capacity, tendency, or effect of deceiving the recipient, as stated herein.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further

denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

71.     The claims asserted in Count I are ongoing and include emails that may be received as Defendants may continue to send them, and as new information is discovered, up to the time of entry of a final nonappealable judgment.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

72.     Under Maryland Commercial Law Code § 14-3002(c), a sender is presumed to know that the intended recipient of commercial electronic mail is a resident of Maryland if the information is available on request from the registrant of the Internet domain name contained in the recipient's electronic mail address.  BSI's domains are registered at www.joker.com which readily identifies the domains as being found in Maryland.

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant.  Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of the Maryland Commercial

Law Code.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

73.     Each e-mail is a separate violation.

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts. Accordingly, no response is required. To the extent that a response is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

74.     As a proximate result of the unlawful actions of Defendants and/or their agents, Plaintiff is entitled to damages under Maryland Commercial Law Code § 14-3003 in an amount equal to the greater of $1,000 per e-mail, or BSI's actual damages, and attorneys' fees.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

**COUNT II: VIOLATION OF CALIFORNIA**
**BUSINESS & PROFESSIONS CODE § 17529.5**

75.     Plaintiff hereby repeats and re-alleges paragraphs 1 through 74 set forth above as if fully set forth herein.

**Answer:**  Kraft Global hereby incorporates its answers to paragraphs 1 through 74 as its answer to this paragraph.

76.     Under California Code Business & Professions § 17529.5(a), it is "unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address" where that e-mail advertisement "contains or is accompanied by falsified, misrepresented, or forged header information," or "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant.  Accordingly, no response is required. To the extent that a response is required, Defendant admits that Plaintiff purports to quote selected portions of the California Business & Professions Code.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations and therefore they are denied.

77.     Defendants and/or their agents advertised in commercial e-mail advertisements that they sent or caused to be sent from servers in California to in-state and out-of-state recipients, including to BSI in Maryland.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

78.     Defendants and/or their agents advertised in commercial e-mail advertisements initiated in California and received by BSI in Maryland.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations of this paragraph that are directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

79.     Defendants and/or their agents sent or caused to be sent commercial e-mail advertisements from California and received by BSI in Maryland.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations of this paragraph that are directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

80.     Between February 14, 2005 and the present, Defendants Kraft, Kraft Global, Engwall, and/or their agents, sent more than 11,000 deceptive e-mails to Plaintiff's servers in violation of California Business & Professions Code § 17529.5(a)(2) and/or (3), some of which were included among (and overlap with) the more than 62,000 emails linked to Connexus and/or Hydra as described in paragraphs 43, 69-70 and 81-82 of this Complaint.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations of this paragraph that are directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

81.     Between at least February 14, 2005 and the present, inclusive, Connexus and/or

its agents, including but not limited to other Defendants herein, sent or caused to be sent more than 34,000 false and/or deceptive commercial e-mail advertisements to Plaintiff's servers in violation of California Business & Professions Code § 17529.5(a)(2) and/or (3).

**Answer:** To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products. Kraft Global denies any remaining allegations of this paragraph that are directed at it. To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

82. Between at least February 14, 2005 and the present, inclusive, Hydra and/or its agents, including but not limited to other Defendants herein, sent or caused to be sent more than 28,000 false and/or deceptive commercial e-mail advertisements to Plaintiff's servers in violation of California Business & Professions Code § 17529.5(a)(2) and/or (3).

**Answer:** To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains. Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws. Kraft Global denies any remaining allegations directed at it. To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

83. The claims asserted in Count II are ongoing and include e-mails that may be received as Defendants may continue to send them, and as new information is discovered, up to the time of entry of a final nonappealable judgment.

**Answer:** To the extent that this paragraph is directed at Kraft Global, Kraft Global

specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

84.     The e-mails received from Defendants and/or their agents contained and/or was accompanied by falsified, misrepresented, or forged header information.  For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(2).

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

85.     The e-mails received from Defendants and/or their agents had subject lines that would be likely to mislead a recipient acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  For the reasons stated herein, these e-mails violated California Business & Professions Code § 17529.5(a)(3).

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in

compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

86.     Defendants and/or their agents advertised in commercial e-mail advertisements that they sent or caused to be sent to a California electronic mail address and received by BSI.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

87.     Defendants conspired with others to send the unlawful commerical e-mail advertisements.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global denies that it sent or caused to be sent any emails advertising Gevalia products.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

88.     Each e-mail is a separate violation.

**Answer:**  Plaintiff is stating its interpretation of the law.  It is not stating any facts related to Defendant.  Accordingly, no response is required. To the extent that a response is required,

Defendant is without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore it is denied.

89.     As a proximate result of the unlawful actions of Defendant and/or their agents, Plaintiff is entitled to damages under California Business & Professions Code § 17529.5(b)(1)(B) of $1,000 per e-mail, BSI's actual damages, and its attorneys' fees.

**Answer:**  To the extent that this paragraph is directed at Kraft Global, Kraft Global specifically denies that it sent the emails about which Plaintiff complains.  Kraft Global further denies that it sent or caused to be sent any emails advertising Gevalia products that were not in compliance with state and federal laws.  Kraft Global denies any remaining allegations directed at it.  To the extent the allegations are directed at others, Kraft Global is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore they are denied.

**SEPARATE DEFENSES**

1.      Plaintiff's claims are barred for failure to state a claim on which relief may be granted under either the California Business & Professions Code § 17529.5 and the Maryland Commercial Code § 14-3002.

2.      Plaintiff lacks standing to bring its claim.

3.      All or portions of the state statutes on which Plaintiff bases its claims are preempted by the CAN-SPAM Act of 2003, 15 U.S.C. § 7701 *et seq.*

4.      Plaintiff's alleged injury is the result, in whole or in part, of its own or others' actions and comparative or contributory fault.  In addition, if any damages have resulted, Plaintiff failed to mitigate.

5.      Plaintiff's claims are barred because, to the extent that any alleged unlawful e-

mails were sent by Defendant, which Kraft Global expressly denies, such e-mails were transmitted accidentally and/or after implementation of reasonable measures or procedures to avoid sending unlawful e-mails.

6.      Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, estoppel and unclean hands.  These defenses apply because of, among other things, the June 29, 2006 settlement agreement entered in *Hypertouch, Inc. v. Kraft Foods, Inc., et al.,* Case No. C 05-01589PJH (N.D. Cal.).

## JURY DEMAND

Kraft Global demands a jury trial on all issues so triable.

Respectfully submitted,

DATED: December 23, 2008

_____
                                    /s/
John K. Roche (*Pro Hac Vice*)
Barry J. Reingold (Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street, N.W., Suite 800
Washington, D.C. 20005-2003
(202) 434-1613
(202) 434-1690 (facsimile)
breingold@perkinscoie.com
jdevaney@perkinscoie.com
jroche@perkinscoie.com

Darrell J. Graham (*Pro Hac Vice*)
THE LAW OFFICE OF DARRELL J.
GRAHAM, LLC
53 W. Jackson Blvd., Suite 1334
Chicago, IL  60604
(312)922-4533
(312)922-4757 (facsimile)
dgraham@djgrahamlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals:

Anthony Cavanaugh (Bar No. 16478)
Thomas M. Barba
John J. Duffy
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
(202) 429-3000
(202) 429-3902 (facsimile)
acavanaugh@steptoe.com
tbarba@steptoe.com
jduffy@steptoe.com
tonorato@steptoe.com

Stephen H. Ring (Bar No. 00405)
Law Offices of Stephen H. Ring, P.C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
(301) 540-8180
(301) 540-8195 (facsimile)
shr@ringlaw.us

Mike Rothman (Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson St., Suite 201
Rockville, MD  20850
(301) 251-9660
(301) 251-9610 (facsimile)
mike@mikerothman.com

*Attorneys for Plaintiff Beyond Systems, Inc.*

_____

_____
/s/
John K. Roche (*Pro Hac Vice*)
Barry J. Reingold (Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street, N.W., Suite 800
Washington, D.C. 20005-2003
(202) 434-1613
(202) 434-1690 (facsimile)
breingold@perkinscoie.com
jdevaney@perkinscoie.com
jroche@perkinscoie.com

*Attorneys for Defendants*