IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | |
| Plaintiff, | Case No. 8:08-CV-00409-PJM |
| v. | |
| KRAFT FOODS, INC., et al., | The Honorable Peter J. Messitte |
| Defendants. | **REDACTED VERSION** |

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants and Third-Party Plaintiffs Connexus Corp. ("Connexus") and Hydra LLC ("Hydra") respectfully submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment.

## INTRODUCTION

Plaintiff Beyond Systems, Inc. ("BSI") alleges that it received at least 53,614 emails from Connexus and Hydra LLC, and that <u>each</u> of the <u>53,614</u> emails is a "<u>separate violation</u>" under Maryland and California law entitling BSI to statutory damages of $1,000 per email. (SAC ¶¶ 42-43, 73-74, 88-89 (emphasis added).) Thus, BSI must prove at trial <u>107,228</u> individual violations of state law to recover the $107,228,000 it seeks in statutory damages. It is undisputed that BSI received at least 49,839 of the 53,614 emails (93%) at issue more than one year before it filed suit. As a matter of law, BSI cannot recover statutory damages for these emails because the statute of limitations for statutory damages is one year. Accordingly,

Connexus and Hydra are entitled to summary judgment as to BSI's claims for statutory damages for all emails BSI received before February 14, 2007 (one year before it filed suit).[1]

## FACTUAL STATEMENT

This action centers around BSI's allegations that it received thousands of emails between February 14, 2005 and the present which supposedly contain deceptive header information and subject lines. (Ex. 1, California Complaint ¶¶ 34, 37-38, 56-57; Second Amended Complaint ("SAC") at ¶¶ 43, 48-50.) However, discovery revealed that BSI received 93% of the emails at issue before February 14, 2007, over a year prior to filing this action. Moreover, BSI did not receive the email from Connexus or Hydra. Instead, BSI received the vast majority (over 96%) of the emails from Joe Wagner/Hypertouch. (Ex. 2, Response to Hydra's Interrogatory No. 1(d); Ex. 3, P. Wagner Dep. at 9:9-15, 69:5-8; 143:1-3; Ex. 4, J. Wagner Dep. at 142:18-144:8; 198:23-199:19; 309:13-21; Ex. 5 at 3; Ex. 6, BSI's Response to Connexus Interrogatory No. 1(d); DE #63 ¶ 19.) Joe Wagner, who runs Hypertouch, is the brother of BSI's ▓▓▓▓▓ ▓▓▓▓▓ Paul Wagner. (Ex. 3, P. Wagner Dep. at 18:2-13, 18:2-4; 30:13-34:4; 36:3-7; 114:11-12; *Hypertouch, Inc. v. Kennedy-Western University*, No. C 04-05203 SL, 2006 WL 648688, at * 3-4 (N.D. Cal. March 8, 2006).) Paul Wagner/BSI and Joe Wagner/Hypertouch routinely conspire with each other to manufacture lawsuits:

> The Hypertouch "business" operated by Mr. Wagner seems primarily for his own benefit and that of his brother. . . [Joe] Wagner proudly proclaimed in the hearing that he has intentionally configured his email system and "service" so as to capture all "spam" sent to him and the non-operational email in-boxes on his system. He routes this "spam" to his brother for further analysis and possible claims against the malefactors.

(Ex. 8, Final Award of Arbitrator at 10-11.) Indeed, neither BSI nor Hypertouch are Internet service providers as they purport to be but instead are lawsuit factories having already

---

[1] Connexus and Hydra reserve all rights to file summary judgment on other issues raised by BSI's claims.

manufactured dozens of lawsuits involving commercial email. (Ex. 2, BSI's Response to Hydra's Interrogatory No. 6; Ex. 4, J. Wagner Dep. at 168:15-169:15; 189:8-192:5.) As Paul Wagner admitted, ████████████████████████████ (Ex. 3, P. Wagner Dep. at 162:8-10.)

BSI filed its original complaint against Connexus and Hydra in the United States District Court for the Central District of California ("California Action") on February 14, 2008. (Ex. 1, California Complaint.) BSI alleged that it received the emails at issue "[b]etween February 15, 2005, and the present." (Ex. 1, California Complaint ¶ 34.) In June 2008, BSI produced 53,614 emails that it claims involve Connexus and Hydra. At least 49,839 of the 53,614 emails (93%) were received by BSI before February 14, 2007 (one year before it filed suit). (Ex. 7, Cohen Decl. ¶ 6.)

BSI filed its Second Amended Complaint ("SAC") in February 2009 after the California Action was transferred to and effectively consolidated with this action, and alleged that it received the emails at issue "[b]etween February 14, 2005 and the present." (SAC at ¶ 43.) BSI maintains that it is entitled to $2,000 per email in statutory damages ($1,000 under each statute) for a total of $107,228,000 in statutory damages alone. (SAC at ¶¶ 74, 89.) However, BSI seeks a mere ████████ for all "Beyond Systems' Spam-Related Costs," and "BSI cannot apportion as to Connexus, Hydra, or anyone else, the damages set forth in the 'Beyond Systems' Spam-Related Costs." (Ex. 9, "Beyond Systems' Spam-Related Costs"; Ex. 10, 3/25/09 J. Kneedler email.) Thus, BSI seeks a windfall in statutory damages as opposed to redress for actual injuries. Unfortunately for BSI, however, BSI cannot recover statutory damages for most of the emails it received because it received most of the emails at issue more than one year before it filed suit.

## ARGUMENT

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *see also Nader v. Blair*, 549 F.3d 953, 958-59 (4th Cir. 2008). On the undisputed facts of this case, whether BSI's claims for statutory damages are time-barred is a pure legal issue because there is no genuine issue of material fact that the BSI filed its complaint on February 14, 2008 and the emails subject to this motion were received by BSI prior to February 14, 2007.

BSI brings claims for statutory damages under both the California Business & Professions Code § 17529.5 and Maryland Commercial Electronic Mail Act §§ 14-3001 *et seq.* ("MCEMA"). Both laws are subject to a one year statute of limitations when statutory damages are sought. Therefore, to the extent BSI seeks statutory damages for emails it received prior to February 14, 2007, its claims are barred. That is precisely the situation in this case with respect to at least 49,839 of the emails at issue.

A. **The One-Year Statute of Limitations Applies to BSI's Claims for Statutory Damages under California Law.**

A plaintiff bringing an action pursuant to California Business & Professions Code § 17529.5 may recover actual damages and/or "[l]iquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section." Cal. Bus. & Prof. Code § 17529.5(b)(1)(B). Courts have uniformly held that the statute of limitations for statutory damages claims under § 17529.5 is one year because imposition of such damages constitutes a penalty under California Code of Civil Procedure § 340(a). (Ex. 11, *Hypertouch, Inc. v. Azoogle, Inc.*, No. 3:08-cv-04970-MMC, *3 (N.D. Cal. Mar. 19, 2009); Ex. 12, *Balsam v. Subscriberbase, Inc.*, Case No. 1:06-cv-066258, **1-3 (Sup. Ct. Cal. Oct. 24,

4

2008); C.C.P. § 340(a) (mandating one-year statute of limitations if "the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation").)

In a case pending in the Northern District of California, Hypertouch (represented by BSI's counsel in this case) sued Azoogle and other defendants for violations of § 17529.5 seeking statutory and actual damages. The court dismissed Hypertouch's claims for statutory damages <u>with prejudice,</u> and held the statutory damages provision in § 17529.5 "is mandatory" and that "such recovery would constitute a penalty because Hypertouch is entitled to recover both its actual damages and an award of liquidated damages." (Ex. 11, *Hypertouch v. Azoogle* at *3 (citing *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 277-79 (1983) (holding that "statutes which provide for recovery of damages additional to actual losses incurred" are "penal in nature" and stating that although claim for actual losses is subject to § 338's three-year statute of limitations, claim for recovery of damages in addition to actual losses is subject to § 340(a)'s one-year statute of limitations)). The court also expressly rejected Hypertouch's argument that the statute of limitations for Hypertouch's statutory damages claims was four years. *Id.* at **2-3.

Similarly, the court in *Balsam* held that California's one-year statute of limitations applies to plaintiff's claims for statutory damages under § 17529.5. (Ex. 12, *Balsam v. Subscriberbase, Inc.* at **1-3.) The court noted that "the legislative history of § 17529.5, which was enacted by the passage of Senate Bill 186, supports the proposition that the statutory liquidated damages are penalties," because "the comments to an Assembly committee report indicate that the author of Senate Bill 186 sought by the proposed legislation 'to get to the heart of the matter [of unsolicited email advertisements] by *penalizing* the actual advertiser of the spam e-mails'" and in "another Assembly committee report, the damages recoverable for

violations of the proposed anti-spam law are specifically referred to as 'penalties.'" *Id.* at \*\*2-3. And, although the Court in *Balsam* indicated that statutory damages under § 17529.5 are mandatory once a violation is proved because the plaintiff did not seek actual damages, other California courts, including the court in *Hypertouch,* held that § 340 governs claims for penalties where a statute contains separate provisions for recovery of actual damages and penalties. *Hypertouch,* No. 3:08-cv-04970-MMC at \*3; *Menefee v. Ostawari,* 228 Cal. App. 3d 239, 243 (1991); *Prudential Home Mortgage Co. v. Superior Court of Orange County,* 66 Cal. App. 4th 1236, 1242 (1998).

Here, there is no genuine issue of material fact that BSI filed suit on February 14, 2008, and that BSI seeks statutory damages for more emails it received "[b]etween February 14, 2005 and the present." (SAC at ¶¶ 42-43.) There is also no genuine issue of material fact that BSI received 49,839 emails over which it is suing before February 14, 2007 (one year before BSI filed suit). (Ex. 7, Cohen Decl. at ¶ 6.) Accordingly, Connexus and Hydra are entitled to summary judgment in their favor on BSI's claims for statutory damages under § 17529.5 for all emails BSI received before February 14, 2007, including the 49,839 emails identified herein.

### B. The One-Year Statute of Limitations Applies to BSI's Claims for Statutory Damages under Maryland Law.

The same result is mandated by Maryland law. The statutory damages provision in MCEMA is a penalty and is subject to the one-year statute of limitations set forth in Maryland Code of Courts & Judicial Proceedings § 5-107.

Maryland Commercial Law Code § 14-3003, which is entitled "Penalty," allows an "interactive computer service provider"[2] to recover "an amount equal to the greater of $1,000[3] or

---

[2] Connexus and Hydra disagree that BSI (or Hypertouch) is an "interactive computer service provider" under MCEMA or an "electronic mail service provider" under § 17529. Alternatively, Connexus and Hydra maintain that BSI is not an entity that either MCEMA or § 17529 was designed to protect even if BSI meets the technical

the interactive computer service provider's actual damages" upon proving a violation of the Maryland Commercial Electronic Mail Act ("MCEMA"). Maryland Code of Courts & Judicial Proceedings § 5-107 provides that "a prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed." Md. Code Ann. Cts. & Jud. Pro. § 5-107 (2008).

"The primary source of legislative intent is the language of the statute itself, with the words used being given their ordinary and popularly understood meaning, absent a manifest contrary legislative intention." *In re Arnold M.*, 471 A.2d 313, 315 (Md. 1984) (internal citations omitted). Further, "where the language of the statute is free from ambiguity, courts may not disregard the natural import of the words used in order to extend or limit its meaning." *Privette v. State*, 580 A.2d 188, 191 (Md. 1990) (internal citations omitted). Here, the Maryland legislature elected to title the damages section of MCEMA a "penalty." Accordingly, the plain language of MCEMA shows that the legislature intended the damages provision of MCEMA to be a penalty and § 5-107 applies.

Maryland courts have held that the one-year statute of limitations in § 5-107 applies to penalties in similar statutes. For example, the court in *Dickson* held that § 5-107 applied to the provision of Maryland's Consumer Protection Act ("MCPA") allowing penalties, and a three-year limitation applied to the provision allowing restitution. *Maryland v. Dickson*, 717 F. Supp. 1090, 1103 (D. Md. 1989). The court explained that "[t]he limitation periods for bringing claims under the Maryland Consumer Protection Act differ with the relief requested . . . The general period of limitations on Maryland state claims, which includes the claims for restitutionary relief,

---

definitions of the statutes because BSI's business primarily involves collecting emails and manufacturing lawsuits. Connexus and Hydra reserve all rights on this issue.

[3] Connexus and Hydra disagree that BSI would be entitled to $1,000 "per email" under this provision and reserve all rights on this issue.

is three years" while "[t]he limitations with respect to fines, however, is governed by § 5-107." *Id.*

Further, the court in *MaryCLE* held that the MCPA and MCEMA should be construed similarly: "MCEMA violations, like violations of the Consumer Protection Act, are 'in the nature of a tort.' Indeed, both statutes regulate false and deceptive trade practices. Both are included in the same Article of the Maryland Code, and MCEMA falls under Chapter 14, entitled 'Miscellaneous Consumer Protection Provisions.' Thus, the same principles that guide us when faced with questions of individual liability for torts apply here." *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 846 (Md. Ct. Spec. App. 2006). Therefore, because § 5-107 applies to penalties under the MCPA, § 5-107 necessarily applies to the penalty provision in MCEMA under *MaryCLE*.

The Fourth Circuit's holding in *Brown* is also instructive. *In re Brown*, 843 F.2d 1386 (4th Cir. 1988). There, the Fourth Circuit held "that the one-year limitation period [codified in § 5-107 in suits for fines, penalties, and forfeitures] applie[d]" to the "Civil Penalties" provision of Maryland's Secondary Mortgage Loan Law which provides that "a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law." *Id.* Similarly, in *Early Learning*, the Fourth Circuit held that the one-year statute of limitations applied to a private plaintiff's action seeking relief under the Maryland Retail Installment Sales Act and held that "the district court concluded that if the suit was brought to recover a statutory penalty, suit was barred by Maryland's one year statute of limitations . . . governing suits to recover 'a fine, penalty, or forfeiture . . .' We agree also with this analysis." *Early Learning Inc. v. U.S. Leasing Corp*, 836 F.2d 1342 (4th Cir. 1988).

For these reasons, the statute of limitations for BSI's claims for statutory damages under MCEMA is one year. Therefore, BSI is precluded as a matter of law from obtaining statutory damages for 49,839 emails it received before February 14, 2007 (one year before it filed suit).

## **CONCLUSION**

BSI's claims for statutory damages for emails it received before February 14, 2007, are time-barred under California and Maryland law. Therefore, Connexus and Hydra request that the Court enter summary judgment in their favor regarding BSI's claims for statutory damages as to all emails received by BSI before February 14, 2007, including the 49,839 emails identified herein.

Respectfully Submitted,

Dated: April 3, 2009

_____/s/_____
J. Douglas Baldridge, US DC-MD Bar No. 11023
Lisa Jose Fales, US DC-MD Bar No. 08141
Ari N. Rothman, US DC-MD Bar No. 17560
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Attorneys for Connexus Corp. and Hydra LLC*