**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| BEYOND SYSTEMS, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KRAFT FOODS, INC., *et al.*, )<br>)<br>Defendants. )<br>) | Case No. 8:08-cv-00409 (PJM) |

**PLAINTIFF BEYOND SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS CONNEXUS CORP. AND HYDRA LLC'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff Beyond Systems, Inc. ("BSI"), by and through its undersigned counsel, submits this memorandum in opposition to the Motion for Partial Summary Judgment filed by Defendants Connexus Corp. ("Connexus") and Hydra LLC ("Hydra") (collectively "Defendants"). Defendants contend that Plaintiff's claims under the Maryland and California anti-spam statutes are subject to a one-year statute of limitations. Neither the Maryland nor the California anti-spam statute contains a statute of limitations provision, and both Maryland and California provide that causes of action created by a statute, where the statute does not prescribe a period of limitations, shall have a three-year limitations period. Because the statutory damages permitted by the statutes are not "penalties," under the law of either state, such damages do not trigger a one-year limitations period in either state.

**I.    INTRODUCTION**

Defendants Connexus and Hydra open their brief by focusing on irrelevant facts because their statute of limitations argument clearly fails as a matter of law. Both Maryland and

California law make clear that the statutes BSI has sued on here are not penal in nature because the statutes provide for the recovery of statutory damages by a private litigant, like BSI, not recovery by the State for its financial benefit.  In such cases, a one-year statute of limitations simply does not apply.

## II.     FACTUAL BACKGROUND

BSI is a Maryland-based Internet Service Provider ("ISP") that provides e-mail and Internet services to its customers, who include both individuals and businesses.  As an ISP, BSI receives and delivers thousands of legitimate e-mails to its customers.  But in addition to those legitimate e-mails it receives, BSI is inundated every day with thousands of unwanted spam e-mails that substantially interfere with its business operations.  To combat the deluge of spam e-mails choking BSI's servers, BSI has been forced to devote its time, money and technological resources to handle the spam.  The spam has caused BSI's servers to crash and has slowed its server response.  BSI has also suffered increased costs for network expansion, higher bandwidth utilization and forced upgrades of costly hardware and software.  BSI must devote much of its budget and staff time to dealing with spam, at the expense of its ability to service its customers and perform other tasks.

In response to the scourge known as spam, the Maryland and California legislatures have provided ISPs with a private right of action against spammers and their collaborators for the harm ISPs suffer as the recipients of the overwhelming amount of spam advertising sent daily, and as one means of combating illegal deceptive advertising.  Both statutes provide that a private litigant may seek statutory damages.  In 2002, Maryland enacted the Maryland Commercial Electronic Mail Act ("MCEMA").  Md. Code Ann., Com. Law  §§ 14-3001 - 14-3003 (2005). The Maryland Court of Appeals has stated the statute was passed "to curb the dissemination of

false or misleading information through unsolicited, commercial e-mail, as a deceptive business practice." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). Similarly, California's legislature enacted an anti-spam statute. Cal. Bus. & Prof. Code §§ 17529, *et seq* (2008). The California Legislature found that "it is necessary that spam be prohibited" because of the problems it causes for businesses and individuals alike. Cal. Bus. & Prof. Code § 17529(m).

In February 2008, BSI brought suit under the California and Maryland statutes against several entities responsible for violating the anti-spam statutes, causing the injuries BSI has incurred as a result of Defendants' enabling of the thousands of spam e-mails BSI has received that are at issue in this suit. BSI has alleged that Defendants, including Connexus and Hydra, advertised in; conspired to initiate the transmission of; and conspired to send tens of thousands of illegal commercial e-mails to BSI's servers in Maryland. Specifically, between February 14, 2005 and February 14, 2008, BSI received more than 34,000 e-mails linked to Connexus and more than 28,000 e-mails linked to Hydra. Under the MCEMA, BSI seeks the greater of $1,000 per e-mail, or BSI's actual damages, as prescribed in § 14-3003(3) of Maryland's Commercial Law. Under § 17529.5, BSI seeks $1,000 per e-mail and BSI's actual damages, as prescribed in § 17529.5(b)(1)(B)(ii) of California's Business & Professions Code.

Defendants Connexus and Hydra contend that the bulk of BSI's claims for statutory damages under the Maryland and California anti-spam statutes are time-barred because BSI received some 93% of the e-mails at issue more than one year before BSI filed suit. Defendants' contention fails: neither the Maryland Court of Appeals nor the Supreme Court of California would find that a one-year statute of limitations applies to BSI's claims for statutory damages under the respective anti-spam statutes.

**III.     ARGUMENT**

    **A.     STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Defendants contend that their motion presents a legal issue for this Court's determination, yet they include a "factual statement" filled with citations to materials outside the pleadings.[1] None of the "facts" Defendants supply, however, seem to have any bearing on the relief they seek and are a calculated distraction from the legal issue before this Court: whether the Maryland and California anti-spam statutes are remedial in nature and provide a private remedy to a private cause of action.

"Summary judgment 'should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 332 (4th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). BSI agrees that the issue before the Court presents a legal question, but should the Court conclude that either of the following facts are material to the decision before it—whether BSI is an ISP and the entities from which BSI received the e-mails at issue—summary judgment would be inappropriate because these facts are disputed. *See* Paul Wagner Decl. *and* Docket Entry # 82, Motion to Dismiss, or in the Alternative, Partial Motion to Dismiss by James Joseph Wagner and Hypertouch, Inc.

---

[1] Although Defendants cite to Exhibit 3 to support their "factual statement," BSI could not locate this exhibit in its service copy or on the Court's docket on PACER.

### B. BSI'S CLAIMS UNDER THE MARYLAND AND CALIFORNIA ANTI-SPAM STATUTES ARE SUBJECT TO A THREE-YEAR STATUTE OF LIMITATIONS

Defendants' argument—that BSI's claims under the Maryland and California anti-spam statutes are time-barred—fails as a matter of law. As a federal court sitting in diversity, this Court has "an obligation to apply the jurisprudence of [Maryland's and California's] highest court" and "where the state's highest court has spoken neither directly nor indirectly on the particular issue before [this Court, the Court is] called upon to predict how that [state] court would rule if presented with the issue." *Ellis v. Grant Thornton LLP*, 530 F.3d 280, 287 (4th Cir.), *cert. denied*, 129 S. Ct. 652 (2008). Here, neither the Maryland Court of Appeals nor the California Supreme Court has spoken specifically on whether a party's claim for statutory damages under the state's anti-spam statute is a suit for a penalty, subject to a one-year limitations period. Case law demonstrates, however, that these courts would reject Defendants' argument, would apply the general three-year statute of limitations to these claims and would allow BSI's claims to proceed.

#### 1. Long-standing Maryland law holds that the one-year limitations period under § 5-107 applies to actions by the State, not private litigants.

Maryland has a general three-year statute of limitations that applies to statutes like the MCEMA that do not identify a period of limitations. Md. Ann. Code, Courts & Judicial Proceedings § 5-101 ("[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced"). Although § 5-107 of the Maryland Code of Courts & Judicial Proceedings provides that "a prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed," Maryland law has firmly established that this one-year limitations period applies only to suits brought by the State for its financial

5

benefit, not to private litigants seeking remedies provided by statute. The Maryland Court of Special Appeals concluded, over twenty years ago, that § 5-107 applies "*only* to suits brought *on behalf of the State* to *enforce the State's penal laws* for *its financial benefit*." *Williams v. Standard Fed. Sav. & Loan Ass'n*, 545 A.2d 708, 711 (Md. Ct. Spec. App. 1988) (emphasis added).

In *Williams*, the court rejected defendants' argument that the statutory damages sought by the plaintiffs, private litigants, were time-barred under § 5-107. The court considered the plain language of the statute that established the cause of action at issue and discerned "no clear expression of legislative intent to subject a suit by a wronged borrower seeking recovery . . . to a one year limitation rather than the three year limitation applicable to civil actions generally under § 5-101. . . ." *Id*. at 710. The court next considered in detail the legislative history of § 5-107, and its predecessors, extending back to 1777, and concluded:

> It appears from this history of the statute of limitations now codified as § 5-107 of the Courts & Judicial Proceedings Article that it has always been considered as applicable only to suits brought on behalf of the State to enforce the State's penal laws for its financial benefit.

*Id*. at 711. The court's review of Maryland case law confirmed that "our appellate courts have not recognized a private right of action to enforce a private remedy as subject to the statute [§ 5-107]." *Id*.

Next, relying on the U.S. Supreme Court decisions in *Meeker & Co. v. Lehigh Valley Railroad*, 236 U.S. 412 (1914) and *Huntington v. Attrill*, 146 U.S. 657 (1892), and Maryland decisions interpreting those cases, the *Williams* court rejected appellees' argument that the court should interpret the terms "fines, penalties and forfeitures" to include "as civil penalties any private right of action created by statute." *Id*. at 712. In *Meeker*, the Supreme Court explained

6

that a "penalty" refers to "something imposed in a punitive way for an infraction of a public law, and do[es] not include a liability imposed for the purpose of redressing a private injury." *Id*. (quoting *Meeker*, 236 U.S. at 423). Similarly, the *Huntington* court "explained that neither the liability imposed, nor the remedy given, in statutes providing a private action against the wrongdoer, is strictly penal." *Id*. at 713 (citing *Huntington*, 146 U.S. at 667). In *Huntington*, the Supreme Court enunciated the following test for determining whether a law is penal:

> The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether *its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act*.

*Huntington*, 146 U.S. at 673-74 (emphasis added). Applying *Huntington*, the *Williams* court concluded that § 5-107 did not apply to the statute at issue, which provided a private remedy to private litigants. *Williams*, 545 A.2d at 713-14.

The Maryland Court of Appeals has applied the *Huntington* test to determine whether other statutes are penal or remedial, and uniformly held that, in cases brought by private litigants, the statute at issue was not penal. *See*, *e.g*., *Rein v. Koons Ford, Inc*., 567 A.2d 101, 103 (Md. 1989) ("This Court . . . identifies penal statutes by the test established in *Huntington*" where the proper focus is "on whether the individual plaintiff sues to vindicate a private right"; under *Huntington*, the statute in question was not penal because it provided a private civil remedy); *see also Lambros v. Brown*, 41 A.2d 78 (1945) (applying *Huntington* and concluding that the federal Emergency Price Act of 1942 was remedial, not penal, because it provided a private remedy for a statutory violation); *accord Ordway v. Cent. Nat'l Bank of Baltimore*, 47 Md. 217, 240-41 (1877) (in a case pre-dating *Huntington*, the Maryland Court of Appeals concluded that the statute at issue was remedial, not penal, because "the cause of action is a

forfeiture, a penalty of a civil nature, for the exacting and taking of usurious interest upon money loaned; and *the remedy given by the statute is by private civil action of debt to the party grieved. The government or the public is not concerned with it*.") (emphasis added).

In short, therefore, Maryland recognizes the distinction between "a statutory penalty to be paid into the government treasury and a statutory private civil remedy." *Williams*, 545 A.2d at 713. A statute that provides a private remedy for a wrongful act is remedial, not penal. *See id*. Under Maryland law, § 5-107's one-year period of limitations applies only to *State* actions for statutory damages to be paid into the *State's* coffers, not suits by *private* litigants seeking to enforce *private* remedies. Accordingly, a suit under a statute providing a private remedy is not a suit to recover a penalty, and therefore, is not subject to § 5-107.

Based on the case law discussed above, § 5-107's one-year period of limitations cannot apply to BSI's claims under the MCEMA as a matter of law because BSI is a private litigant seeking a private remedy. The MCEMA provides that "[a] person who violates this subtitle is liable for reasonable attorney's fees and for damages . . . [t]o an interactive computer service provider, in an amount equal to the greater of $1,000 or the interactive computer service provider's actual damages." Md. Code Ann., Com. Law § 14-3003(3). Therefore, because the plain language of the statute provides a private civil remedy, § 5-107 cannot apply to BSI's claims for statutory damages under the MCEMA.

Defendants' arguments to the contrary are unavailing. Defendants first contend that because the MCEMA section addressing damages is captioned "penalty," the private right of action under MCEMA seeks a penalty and is governed by § 5-107. This argument fails for two reasons. First, the plain language of the statute dooms this argument. Section 14-3003 permits the recovery of *both actual damages and statutory damages*; the section's caption of "penalty" is

a misnomer.  Md. Code Ann., Com. Law § 14-3003(3).  Second, under Maryland law, the "penalty" caption is not part of the statute.  The Maryland code provides that

> The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the sections and subsections. They are not to be deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless expressly so provided, they shall not be so deemed or taken when any of such sections and subsections, including the captions or headlines, are amended or reenacted.

Md. Code Ann., Art. 1, § 18 (Rules of Interpretation).  That is, "a caption is not part of the law, unless expressly provided or part of the law as enacted." *Erwin & Shafer, Inc. v. Pabst Brewing Co*, 498 A.2d 1188, 1193-94 (Md. 1985); *see also Ohio Cas. Ins. Co. v. Ins. Comm'r*, 387 A.2d 622, 625 (Md. Ct. Spec. App. 1978) ("The law is crystalline that section titles and subtitles are not part of the section or subsection unless expressly stated to be a part thereof.").  When the Maryland General Assembly enacted the MCEMA, the statute contained neither captions nor headings.  *See* Kneedler Decl., Ex. 1 (attaching enacted versions of House Bill 915 and Senate Bill 538 from the Maryland General Assembly's 2002 session).  The "penalty" caption was added by publishers when the statute was codified; it was not part of the statute when enacted by the General Assembly.  Thus, the "penalty" caption is "not the word[] of the legislature and cannot be read to inject an intent not expressed in the body of the law." *Montgomery County v. Eli*, 315 A.2d 136, 140 (Md. Ct. Spec. App. 1974).

Further, the cases upon which Defendants rely do not support their argument.  For example, *Attorney General of Maryland v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989), is actually consistent with the *Williams* case.  In *Dickson*, the *Attorney General of the State of Maryland* brought suit against the defendant, alleging violations of the Maryland Consumer

9

Protection Act ("MCPA"). Because *Dickson* was an action brought by *the State* in which *the State* sought civil penalties for *its benefit*, the court applied § 5-107 to the Attorney General's claims for statutory damages and found those claims time-barred. Moreover, Defendants' contention that "§ 5-107 applies to statutory damages under the MCPA, and therefore, that § 5-107 necessarily applies to claims for statutory damages in the MCEMA," is just plain wrong. While violations of both the MCPA and the MCEMA may be "in the nature of a tort[,]" *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 846 (Md. Ct. Spec. App. 2006), the damages provisions of the two statutes differ significantly with respect to the *Williams* test. Under the MCPA, a private litigant may *only* obtain actual damages, not statutory damages. Md. Code Ann., Com. Law § 13-408. And only the State may pursue statutory damages. Md. Code Ann., Com. Law § 13-410. The MCEMA, however, provides a private litigant with a private statutory remedy against a defendant who violates the statute. Md. Code Ann., Com. Law § 14-3003. Based on the cases discussed above, it makes sense that a statute providing that the State alone can pursue statutory damages would be subject to a one-year statute of limitations; however, with the MCEMA, the statutory damages recovered by the private litigant go into his bank account, not the state treasury. The statutory damages under the MCEMA compensate the plaintiff for the difficult-to-quantify damages suffered by an ISP for harm to its network infrastructure and business so the one-year statute of limitations does not apply. Finally, Defendants cite two Fourth Circuit cases as "instructive." The two cases are unpublished Fourth Circuit decisions that *pre-date* the *Williams* decision, and thus provide no support for Defendants' position.

Thus, the Maryland Court of Appeals would apply long-standing Maryland law and hold that BSI's claims are not subject to § 5-107; that the three-year statute of limitations of § 5-101 applies; and that Defendants' arguments to the contrary are wrong as a matter of law.

> 2.  **The Ninth Circuit has held repeatedly that the California Supreme Court would not apply the one-year statute of limitations set forth in § 340(a) to statutes, such as § 17952, that provide a private remedy.**

The California anti-spam statute provides that "[a]n electronic mail service provider" may bring an action under the statute to recover "either or both . . . (i) Actual damages[;] (ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." Cal. Bus. & Prof. Code § 17529.5(b)(1)(A) & (b)(1)(B). California has a general three-year statute of limitations, California Code of Civil Procedure § 338(a), that applies to statutes like § 17529.5 that do not specify a period of limitation. California also has a provision, § 340(a) of California's Code of Civil Procedure, which provides that "[a]n action upon a statute for a penalty or forfeiture" is subject to a one-year limitations period. Cal. Code Civ. Proc. § 340(a).

As we noted previously, *supra* at 5, as a federal court sitting in diversity, this Court has an obligation to apply the jurisprudence of California's highest court, and where the state's highest court has not spoken on the particular issue, this Court must predict how the California Supreme Court would rule if presented with the issue. *See Ellis*, 530 F.3d at 287. The California Supreme Court has not yet determined whether § 338(a) or § 340(a) applies to claims brought by an ISP for "liquidated damages" under § 17529.5. However, based on the Ninth Circuit's prior rulings, this Court should conclude that § 17529.5 carries a three-year statute of limitations because liquidated damages should not be construed as a "penalty." As with the Maryland

11

jurisprudence, the crux of the issue is whether the wrong sought to be redressed is a public harm or to a private party; the harm to BSI, an ISP, is unarguably harm to a private litigant.

The Ninth Circuit has held that the California Supreme Court would not apply the one-year limitations period to a private litigant's claims for liquidated damages, *Culver v. Bell & Loffland*, 146 F.2d 29, 31 (9th Cir. 1944) (applying *Huntington* to determine whether a federal statute was remedial or penal and concluding that California's one-year limitations period did not apply to the claim for liquidated damages at issue because the damages "are compensation, not a penalty or punishment by the Government"), and the Ninth Circuit has reiterated this analysis in subsequent decisions. *See Rivera v. Anaya*, 726 F.2d 564, 567 (9th Cir. 1984); *see also Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995) ("[T]he test under California law for whether a recovery was a 'penalty' was whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual.") (internal quotation marks and citation omitted).

In *Rivera*, the Ninth Circuit was confronted with "whether plaintiffs' cause of action is one for damages or to enforce a penalty. . . ." *Rivera*, 726 F.2d at 567. Plaintiffs were private individuals who brought suit against defendants for their alleged violations of a federal statute; the statute provided that plaintiffs could seek actual damages or statutory damages. The Ninth Circuit noted that when faced with a federal statute that did not provide a period of limitations, a federal court was required to apply the statute of limitations of the state statute most analogous to the federal statute, and where the most analogous state statute was also silent as to the applicable limitations period, the court looked to the state's general statute of limitations provisions; consequently, the *Rivera* court considered whether § 338 or § 340 would govern plaintiffs' claims. 726 F.2d at 567. Applying *Huntington*, the Ninth Circuit concluded that the statute was "remedial in nature and therefore subject in each instance to the three year statute of limitations

provision of Cal. Civ. Proc. Sec. 338(1) [now § 338(a)] (West 1982)" because it provided a private suit for damages. 726 F.2d at 569. Canvassing California law led the court to "conclude that California's highest court would properly characterize this action as a private suit for damages subject to the three year limitation of section 338(1) [now § 338(a)]." 726 F.2d at 567.

Similarly, in *Stone*, the Ninth Circuit was again called upon to determine whether a statute was remedial or penal in nature and found that it was remedial because the remedy sought was payable to a private plaintiff. The statute in question provided that the defendant could be liable for "$100 a day from the date" of the statutory violation. 58 F.3d at 438 (internal quotation marks and citation omitted). Applying *Rivera* and *Huntington*, the court concluded the $100 per day recovery under ERISA, Sec. 1132(c), "is not a 'penalty or forfeiture,'" for purposes of the California statute of limitations because "the remedy is sought by Stone and is *payable to him* for *his injury*, and is *not sought by the government to compensate for a public injury*." 58 F.3d at 439 (emphasis added).[2]

The California Supreme Court's recent decision in *Murphy v. Kenneth Cole Productions, Inc.*, 155 P.3d 284 (Cal. 2007), buttresses the Ninth Circuit's prediction of what the California Supreme Court would do if confronted with the question before this Court. In *Murphy*, the

---

[2] Under § 340(a), a one-year limitations period applies to "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." As the *Stone* court explained, however, § 340(a) does not apply to an action brought by an individual where the individual sues to enforce a remedy that belongs to him, not to enforce "some general public policy." *Stone*, 58 F.3d at 439 ("[T]he payment of up to $100 per day is not sought by Stone as a 'private attorney general' to enforce some general public policy; he sues over his own pension or severance rights and the access to information about them. Under the reasoning of *Rivera*, the recovery is remedial, and is to redress a private wrong."). Similarly, BSI does not seek to enforce some "general public policy," but sues over *the harm BSI has incurred* as a result of the Defendants' violations of the California and Maryland statutes; its recovery is thus remedial as it seeks "to address a private wrong." *Id.*

13

California Supreme Court concluded that a statute providing a private cause of action for statutory damages, in addition to actual damages, was not penal, and therefore, the plaintiff's claim was not time-barred by the one-year period of limitations under § 340(a).

The *Murphy* court first set out its analytical frame work, noting that the primary goal of its examination was to determine the legislative intent with respect to the appropriate statute of limitations and if the plain language of the statute revealed whether the legislature intended a cause of action for statutory damages to be treated as remedial or penal that settled the matter, and if not, the legislative history would be consulted. *Murphy*, 155 P.3d at 289-90. Here, in § 17529.5, the legislature described the damages available under the statute as "liquidated damages"; the term "penalty" is conspicuously absent from this section. And as the *Murphy* court noted: "the Legislature certainly knows how to impose a penalty when it wants to, having established penalties in many . . . statutes by using the word 'penalty.'" *Murphy*, 155 P.3d at 292.

The *Murphy* court also rejected defendants' argument that the measure of statutory damages at issue was "a penalty because it is imposed without reference to actual damage." *Murphy*, 155 P.3d at 296. Citing U.S. Supreme Court case law, the court reasoned that "[w]here damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty." *Id.* (citing *Overnight Motor Co. v. Missel*, 316 U.S. 572, 583–84 (1942)). In this case, BSI has alleged specific actual damages based, *inter alia*, on the need to repeatedly upgrade its hardware. But, as the legislature recognizes, the damages associated with the drain spam places on servers, the need to handle the spam (and the malware and spyware that often accompanies it), and the complaints and

14

frustration of customers, are difficult to quantify.[3]  As such, the liquidated damages provided for in § 17529.5 are entirely consistent with compensating a private litigant, and in particular an ISP.

Defendants' reliance on the *Azoogle*[4] and *Balsam*[5] decisions is unavailing.  The *Azoogle* court did not address the pertinent Ninth Circuit precedent interpreting § 340(a) and the *Azoogle* court's conclusion that the possible award of actual and statutory damages constitutes a "penalty" under California law flies in the face of that precedent.  *See*, *e.g.*, *Culver*, 146 F.2d 29 (applying *Huntington* to determine whether a statute was remedial or penal and concluding that California's one-year limitations period did not apply to the claim for liquidated damages at issue); *see also Rivera*, 726 F.2d 564 (applying *Huntington* and holding that the one-year limitations period did not apply where the statute provided plaintiffs with a private right of action and private remedy); *Stone*, 58 F.3d 434 (applying *Rivera* and *Huntington* and concluding that

---

[3] The California Legislature in the preamble to its anti-spam law stated:

> (d)…[S]pam will cost United States organizations more than ten billion dollars [in 2003], including lost productivity and the additional equipment, software, and manpower needed to combat the problem.  California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000).
>
> (e)…[S]pam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.

Cal. Bus. & Prof. Code § 17529(d) and (e).

[4] *Hypertouch, Inc. v. Azoogle.com, Inc.*, No. C-08-4970, 2009 U.S. Dist. LEXIS 16610 (N.D. Cal. Feb. 27, 2009).

[5] *See* Ex. 12 to Docket Entry # 83, Motion for Partial Summary Judgment by Connexus Corp. and Hydra LLC, *Balsam v. Subscriberbase, Inc.*, No. 1-06-CV 066258, *Order Re: Motion for Summary Judgment or Adjudication* (Cal. Super. Ct. Oct. 24, 2008).

the plaintiff's suit was not time-barred because he sought to enforce a private remedy). The *Azoogle* decision is also inconsistent with the California Supreme Court's decision in *Murphy*, where that court explicitly rejected the argument that an award of statutory damages in addition to actual damages constituted a penalty triggering § 340(a)'s one-year limitations period. *Murphy*, 155 P.3d at 296.[6]

The *Balsam* decision is equally flawed. The court completely ignored the plain language of the statute, which, under *Murphy*, should have governed its decision. There is no reference anywhere in the language of the statute to a penalty being assessed against any person, and as the Supreme Court of California noted in *Murphy* it must be presumed, in the absence of ambiguity, that "the Legislature meant what it said and the plain meaning of the statute governs." *Murphy*, 155 P.3d at 289 (quotation marks and citation omitted). There is no ambiguity in § 17529.5; it provides for the provision of either or both of actual or liquidated damages. There is no mention anywhere in the damages provision of the word "penalty."

Further, the *Balsam* court selectively read the legislative history of the anti-spam statute, focusing on words such as "penalizing" and "penalties." This selective reading, however, misses the larger point: the California legislature did not intend for the liquidated damages provision to be treated as a penalty. A predecessor version of the anti-spam statute, Business and Professions Code § 17538.4, and its enrolled bill, used the words "fine" and "civil penalties" in describing

---

[6] BSI recognizes that the California Courts of Appeals are in disagreement as to whether § 338(a) or § 340(a) applies to a private suit for statutory damages. *Compare MacManus v. A. E. Realty Partners*, 146 Cal. App. 3d 275, 283 (Cal. App. 4th Dist. 1983) (applying *Huntington* to a California statute and holding that because the statute was remedial in nature the three-year limitations period applied) *with Prudential Home Mortgage Co. v. Superior Court of Orange County*, 66 Cal. App. 4th 1236 (Cal. App. 4th Dist. 1998) (criticizing *MacManus* and instead finding that a California statute providing for statutory damages was penal, and thus subject to then § 340(1)'s one-year limitations period). This Court, however, must determine what the *California Supreme Court* would likely do if faced with the issue before this Court.

damages available for violations associated with the advertising of unsolicited commercial electronic communications. *See Kaufman v. ACS System, Inc.*, 110 Cal. App. 4th 886, 900 (Cal. Ct. App. 2003). The legislature superseded and revised the statute in 2003 by enacting § 17529.5, which used the terms "liquidated damages" and "actual damages." Given this express decision to alter the description of available remedies and damages, the *Balsam* court should never have concluded that "liquidated damages" is akin to a "penalty." Had that been the legislature's intent, it simply would have called the damages a "penalty" as it had before. *See*, *e.g.*, *Murphy*, 155 P.3d at 291-92.

   The *Balsam* court's decision to ignore the plain language of the statute, which provides for liquidated damages, and to rely on finding the word "penalizing" in the legislative history of the anti-spam statute ignores both general principles governing the use of legislative history[7] and Ninth Circuit cases such as *Culver*, *Rivera*, and *Stone* holding that "penal" or "penalty" means something imposed in a punitive way for an infraction of a public law, not liability imposed for the purpose of redressing a private injury. *See Culver*, 146 F.2d at 32 ("'The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual.'") (quoting *Huntington*, 146 U.S. at 668); *Rivera*, 726 F.2d at 567 (same); *Stone*, 58 F.3d at 438 ("[T]he test under California law for whether a recovery was a 'penalty' 'was whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual.'") (quoting *Rivera*, 726 F.2d at 567).

---

[7] *See*, *e.g.*, *Zedner v. United States*, 547 U.S. 489, 510 (2006) (Scalia, J., concurring) ("when the language of the statute is plain, legislative history is irrelevant") *and Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citation omitted).

Thus, the Ninth Circuit has already concluded that the California Supreme Court would hold that BSI's claims are not subject to § 340(a) and that the three-year statute of limitations of § 338(a) applies to BSI's claims. The *Azoogle* and *Balsam* decisions, which fly in the face of the Ninth Circuit's rulings, the recent *Murphy* decision by the California Supreme Court, and the plain language of § 17529.5, should not be followed.

## IV.  CONCLUSION

For the foregoing reasons this Court should deny Defendants' Motion for Partial Summary Judgment.

Respectfully Submitted,

_____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY 10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876

                    T: 301-540-8180
                    F: 301-540-8195
                    shr@ringlaw.us

                    Mike Rothman (USDC-MD Bar No. 14568)
                    Law Office of Michael S. Rothman
                    401 E. Jefferson Street, Suite 201
                    Rockville MD  20850
                    T: 301-251-9660
                    F: 301-251-9610
                    mike@mikerothman.com

                    *Counsel for Plaintiff Beyond Systems, Inc.*

Date:  April 20, 2009

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, Declaration of Paul Wagner, and Declaration of Jennie L. Kneedler, and exhibit thereto, was served via the Court's electronic filing notification system this 20th day of April, 2009, upon:

| | |
|---|---|
| J. Douglas Baldridge<br>Lisa Jose Fales<br>Ari N. Rothman<br>VENABLE LLP<br>575 7th Street, N.W.<br>Washington, DC  20004-1601<br>(202) 344-4000 (phone)<br>(202) 344-8300 (fax)<br>jdbaldridge@venable.com<br>ljfales@venable.com<br>anrothman@venable.com<br><br>*Counsel for Defendants Connexus Corp. and Hydra LLC* | John K. Roche<br>Barry J. Reingold<br>John M. Devaney<br>PERKINS COIE LLP<br>607 14th Street NW, Suite 800<br>Washington DC 20005-2003<br>jroche@perkinscoie.com<br>breingold@perkinscoie.com<br>jdevaney@perkinscoie.com<br><br>Darrell J. Graham<br>THE LAW OFFICE OF DARRELL J. GRAHAM, LLC<br>53 W. Jackson Blvd.<br>Suite 1334<br>Chicago, IL 60604<br>dgraham@djgrahamlaw.com<br><br>*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global, Inc. & Vict. Th. Engwall & Co.* |

 

                                                /s/
                                           Thomas M. Barba