IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 8:08-CV-00409-PJM |
| v. | : | |
| | : | |
| KRAFT FOODS, INC., et al., | : | The Honorable Peter J. Messitte |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

In light of the rapidly approaching May 15, 2009 fact discovery deadline, Connexus Corp. ("Connexus") and Hydra LLC ("Hydra") seek an order requiring Plaintiff Beyond Systems, Inc. ("BSI") and Third-Party Defendants Joe Wagner and Hypertouch, Inc. to produce discovery that is directly relevant to BSI's allegations in its Second Amended Complaint and issues germane for trial. The specific discovery sought by this motion includes emails over which BSI is suing in their native formats, electronic media used to handle such emails, prior deposition transcripts of BSI's principal in lawsuits involving commercial email, and documents BSI obtained from parties and third parties for use in this case. Connexus and Hydra also seek from Joe Wagner/Hypertouch documents related to defendants in this case, and past litigation documents and deposition transcripts in lawsuits similar to the one BSI initiated here. BSI and Joe Wagner/Hypertouch have no reason to continue withholding the discovery; indeed, they agreed to produce much of it months ago but have not done so. Therefore, the Court should order BSI and Joe Wagner/Hypertouch to immediately produce the requested discovery.

# I.   <u>FACTUAL BACKGROUND</u>

BSI alleges that it is an internet service provider that is the victim of receiving too much alleged "spam," and that it received thousands of emails from Connexus and Hydra that contain false and deceptive header information and subject lines.  However, BSI is actually a lawsuit factory, having already manufactured at least 24 lawsuits involving commercial email similar to the instant litigation. (Ex. 1, BSI's Response to Hydra's Interrogatory No. 6.)  BSI's principal, Paul Wagner, leads BSI's litigation efforts, and "[a]ll of BSI activity sort of relates to litigation." (Ex. 2, P. Wagner Dep. at 162:8-10.)

Paul Wagner coordinates manufacturing lawsuits with his brother, Joe Wagner, who runs an alleged ISP named Hypertouch:

> The Hypertouch "business" operated by Mr. Wagner seems primarily for his own benefit and that of his brother… [Joe] Wagner proudly proclaimed in the hearing that he has intentionally configured his email system and "service" so as to capture all "spam" sent to him and the non-operational email in-boxes on his system.  He routes this "spam" to his brother for further analysis and possible claims against the malefactors.

(Ex. 3, Final Award of Arbitrator at 10-11.)  Consistent with their business models of initiating lawsuits over commercial email, Paul Wagner/BSI and Joe Wagner/Hypertouch conspired here to collect as many emails as possible, transmitted them from Hypertouch to BSI, and undertook other efforts to manufacture this lawsuit. (Ex. 4, J. Wagner Dep. at 253:4-9; Ex. 2, P. Wagner Dep. at 9:9-15, 69:5-8; 143:1-3; 259:7-260:17; 264:16-22.)  Indeed, Paul Wagner testified that the "majority of the e-mails" at issue here "came through Hypertouch," and <u>over 96%</u> of the emails at issue in this suit were sent by Hypertouch to BSI. (Ex. 2, P. Wagner Dep. at 142:18-144:8; DE # 63, Third-Party Complaint at ¶¶ 19-20.)

BSI filed the original complaint against Connexus and Hydra in the United States District Court for the Central District of California in February 2008 ("California Action").  In June

2008, BSI produced approximately 28,137 emails that it attributes to Connexus and 25,475 emails that it attributes to Hydra.  These emails are referred to herein as the "June 2008 emails." Therefore, BSI alleged 107,224 separate violations of California and Maryland state law and sought $107,224,000.00 in statutory damages alone.

As explained more fully below, Connexus and Hydra requested in the California Action that BSI produce, among other things, the emails in native format, and media used to handle the emails (including copies of hard drives and servers).  Connexus and Hydra also requested deposition transcripts involving BSI, documents produced to BSI by parties and third parties in this case (including documents BSI received in response to subpoenas), and documents reflecting litigation proceeds.  Similarly, Connexus and Hydra requested that Joe Wagner/Hypertouch (who is represented by the same counsel as BSI) produce documents related to any defendant in this case, emails that both Joe Wagner/Hypertouch and BSI sued over, substantive communications between Joe Wagner/Hypertouch and Paul Wagner/BSI concerning the relationships and activities of their businesses, and Joe Wagner/Hypertouch deposition transcripts.

BSI and Joe Wagner/Hypertouch initially refused to produce, or agreed to produce but then did not produce, the documents sought by way of this motion.  Consequently, Connexus, Hydra, BSI and Joe Wagner/Hypertouch completed a "Joint Stipulation" which is the document required to be completed before filing a motion to compel under the local rules of the Central District of California.  The Joint Stipulation, which was completed on October 24, 2008, is attached hereto as Exhibit 5.  A few days later, BSI consented to transferring this action from the Central District of California and to consolidate it with this action before this Court.  During the pendency of the transfer, this Court stayed discovery "pending the submission of a joint amended proposed schedule" in response to the representation by BSI's counsel to this Court that "the

Parties to this Action do not believe that it makes sense to proceed with discovery until the

Parties to both Actions are properly before this Court and can agree to an amended case schedule

that will permit the prompt and efficient completion of discovery." (DE #s 47-48.)

Promptly after answering the Second Amended Complaint on March 4, 2009, counsel for

Connexus and Hydra sent a letter to BSI's counsel requesting a meet and confer to resolve

outstanding issues. (Ex. 6, 3/5/09 A. Rothman Ltr.)  The parties met and conferred on

March 13, 2009, and BSI's counsel indicated that many of the requested documents would be

produced. (Ex. 7, 3/25/09 J. Kneedler email.)  Having not received the promised documents,

counsel for Connexus and Hydra emailed counsel for BSI and Joe Wagner/Hypertouch to

determine when the promised documents would be produced. (Ex. 8, 4/3/09 A. Rothman Email.)

BSI and Joe Wagner/Hypertouch have not responded, thereby necessitating this motion.

**II.     CONNEXUS AND HYDRA ARE ENTITLED TO THE DISCOVERY SOUGHT**

**A.     Legal Standard.**

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party." FRCP 26(b)(1).

The Supreme Court has explained that "relevant information" should be construed very broadly

"to encompass any matter that bears on, or that reasonably could lead to other matter that could

bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

340, 351 (1978).  If a party fails to respond to discovery requests, then the party seeking

discovery may move for an order compelling an answer, designation, production, or inspection.

FRCP 37(a)(3)(iv); *see also* FRCP 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer, or respond.").  There is no disputing

that Connexus and Hydra are entitled to the discovery that BSI indicated it would produce and

the other discovery sought herein.  Indeed, BSI is seeking over $100,000,000 in statutory

damages alone, and must be compelled to provide the basic information sought by way of this

motion.

**B.**     **Specific Discovery Requests Propounded on BSI Should be Compelled.**

   **1.**     **Document Requests Native Format Emails and Media Used in Connection**
             **with Emails.**

   **Connexus Document Request No. 1**
   Produce in native format all emails pertaining to Connexus that you
   contend give rise to the allegations in the Complaint.
   **BSI Response to Connexus Document Request No. 1**
   BSI objects to this Request, in conjunction with Request Nos. 2 and 3, in
   that requiring the production of documents in multiple formats is unduly
   burdensome, oppressive, unreasonably duplicative, and imposes upon BSI
   obligations beyond those set forth in the Federal Rules of Civil Procedure
   and/or applicable case law. Under Rule 34, BSI is required to produce
   documents as they are kept in the usual course of business and need not
   produce the same electronically stored information in more than one form.
   Further, BSI believes that producing in native format (when available), is
   all that is required pursuant to Plaintiff s proposed agreement regarding
   the production of electronically stored information.  In addition, requiring
   the production of documents in multiple formats is contrary to Instructions
   D and K of these Document Requests.   Subject to the foregoing
   objections, and the objections to the Definitions and Instructions and the
   General Objections which are all incorporated herein by reference, BSI
   will produce documents responsive to this Document Request.

   **Hydra Document Request No. 1**
   Produce in native format all emails pertaining to Hydra that you contend
   give rise to the allegations in the Complaint.
   **BSI Response to Hydra Document Request No. 1**
   BSI objects to this Request, in conjunction with Request Nos. 2 and 3, in
   that requiring the production of documents in multiple formats is unduly
   burdensome, oppressive, unreasonably duplicative, and imposes upon BSI
   obligations beyond those set forth in the Federal Rules of Civil Procedure
   and/or applicable case law. Under Rule 34, BSI is required to produce
   documents as they are kept in the usual course of business and need not
   produce the same electronically stored information in more than one form.
   Further, BSI believes that producing in native format (when available), is
   all that is required pursuant to Plaintiff's proposed agreement regarding
   the production of electronically stored information.  In addition, requiring
   the production of documents in multiple formats is contrary to Instructions
   D and K of these Document Requests.   Subject to the foregoing

objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, BSI will produce documents responsive to this Document Request.

**Connexus Document Request No. 77**
An imaged copy of all hard drives, servers, and other computer equipment you used in connection with the emails you produced in response to Document Request Nos. 1-9 of Connexus's First Request for Production of Documents.
**BSI Response to Connexus Document Request No. 77**
Plaintiff objects to this Request on the ground that it is overly broad and unduly burdensome. Plaintiff further objects to this Request to the extent that it violates any guaranteed right of privacy afforded to third parties by law, rule or regulation. Plaintiff further objects to this Request on the ground that the term "in connection with" is not defined and is therefore vague and ambiguous. Plaintiff further objects to this Request on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Hydra Document Request No. 67**
An imaged copy of all hard drives, servers, and other computer equipment you used in connection with the emails you produced in response to Document Request Nos. 1-3 of Hydra's First Request for Production of Documents.
**BSI Response to Hydra Document Request No. 67**
Plaintiff objects to this Request on the ground that it is overly broad and unduly burdensome. Plaintiff further objects to this Request to the extent that it violates any guaranteed right of privacy afforded to third parties by law, rule or regulation. Plaintiff further objects to this Request on the ground that the term "in connection with" is not defined and is therefore vague and ambiguous. Plaintiff further objects to this Request on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

BSI should be compelled to produce the June 2008 emails in their most native format, the files from which the June 2008 emails were extracted, the information that BSI's counsel indicated would be produced as explained in counsel's March 25, 2009 email attached hereto as Exhibit 7, and all hard drives, servers, and other computer equipment BSI used in connection with the emails.

A threshold issue in this litigation is the authenticity of the emails (which were electronically stored) over which plaintiff is suing, how they were processed and stored, and

whether any changes were made to them after they were sent, among other things. (Ex. 4, J.

Wagner Dep. at 253:4-9; Ex. 2, P. Wagner Dep. at 9:9-15, 69:5-8; 143:1-3; 259:7-260:17;

264:16-22.)  Joe Wagner/Hypertouch, which sent to BSI virtually all of the emails at issue,

admitted that Hypertouch computers added content to the email headers. (Ex. 4, J. Wagner Dep.

at 379:2-17; 381:2-382:1; 391:5-393:22; 412:11-413:4.)  But, Joe Wagner also testified that he

did not know it, if at all, until his deposition that his computers added certain information to the

emails:

> Q.     So you don't know if SIMS actually added that message ID?
> A.     My -- based upon what I'm reading here, my best guess – unless
>        something really weird, but I don't – I don't think the sender is ever
>        told the SMTP ID.
> Q.     So –
> A.     So I apologize.  I'm thinking out loud here. So I believe – yeah, I –
>        all mail.hasit.com must have added that message ID or – that's –
>        that's what it appears like to me, but this is the first I've noticed
>        that.

(Ex. 4, J. Wagner Dep. at 413:23-414:8.)  Connexus and Hydra are clearly entitled to the

information they seek to see who added what to the emails, and to identify and address

discrepancies between the emails themselves and representations BSI has made about them (BSI

produced spreadsheets that purport to contain information about the emails).  Indeed, Connexus

and Hydra hired a forensic expert to analyze the emails for this and other purposes.  Thus,

Connexus and Hydra are entitled to <u>all of the emails</u> in their most native format, <u>all of the files in

which they reside</u>, and all of the other information they seek to further forensically analyze the

emails, and understand the contents and changes made to them. *Hagenbuch v. 3B6 Sistemi

Elettronici Industriali S.R.L.*, 2006 WL 665005 (N.D. Ill. Mar. 8, 2006) (ordering production of

"electronic media" including storage devices where files stored on such media contained

information relevant to the subject matter of plaintiff's claims); *Rodriguez v. City of Fresno*,

2006 WL 903675 (E.D. Cal. Apr. 7, 2006) (ordering production of metadata corresponding to electronic documents where changes to documents were at issue).[1]

Another threshold issue is whether BSI is an electronic mail service provider under Cal. Bus. & Prof. Code § 17529.1(h) and an interactive computer service provider under Md. Comm. Law. § 14-3001(c), or whether BSI is a mere lawsuit factory that is not within the class of entities that the statutes were intended to protect.  In *Ferron*, plaintiff alleged defendants transmitted email messages to plaintiff's account in violation of Ohio's consumer protection and anti-spam statutes. *Ferron v. Echostar Satellite, LLC*, No. 2:060CV-453, 2008 U.S. Dist. LEXIS 38257 (S.D. Ohio Feb. 6, 2008).  On defendants' motion to compel, the court compelled discovery of "original email messages and other files, in their native format, and in the actual place in which they are stored on Plaintiff's home and/or office computers." *Id.* at **5-6.  The court held that this information was relevant to "the claims and defenses asserted under the [Ohio statutes]," and whether the plaintiff qualified as a "consumer" under an Ohio consumer protection statute where defendants alleged that plaintiff "developed a scheme aimed at receiving, gathering, sorting, and storing huge volumes of emails for the sole purpose of formulating and asserting" lawsuits. *Id.* at **12; *see also Ferron v. Search Cactus, LLC*, Case No. 2:06-cv-327, 2008 U.S. Dist. LEXIS 34599, *13-14 (S. D. Ohio 2007) (granting defendant's request for a current mirror image of plaintiff's computer systems' hard drives, to prevent the potential removal of any relevant information from the computer hard drives).  The Court in *Ferron* also held that plaintiff could not invoke privilege as a defense to producing non-

---

[1]     Although BSI asserted in the Joint Stipulation that it provided a mere "excerpt of one of the .mbox files containing 100 consecutive emails (including <u>one</u> of the emails at issue)," and mere "representative copies" and "samples" of various things, these items are inadequate and not a substitute for the information Connexus and Hydra seek. (Ex. 5, Joint Stipulation at 38-41 (emphasis added).)  BSI is seeking $2,000 in statutory damages alone for each email for a total of over $100,000,000 and should be compelled to provide responsive information as to each email over which it suing.

privileged documents.  Connexus and Hydra are not seeking privileged information, and

Connexus and Hydra agree that BSI need not produce privileged information.  In all events, the

principles warranting production in *Ferron* apply equally here.

Although Connexus and Hydra initially requested computers, hard drives and servers to

investigate these issues, Connexus and Hydra did not know until they received BSI's portion of

its Joint Stipulation that the emails produced were not the emails BSI received in their most

original form because BSI "purged" the original emails from its servers. (Ex. 5, Joint Stipulation

at 39.)  Therefore, Connexus and Hydra asked for the emails in their most unaltered state and

files from which the emails were extracted. (Ex. 6, 3/5/09 A. Rothman Ltr.; Ex. 9, 3/16/09

A. Rothman Email; Ex. 8, 4/3/09 A. Rothman Email.)[2]   However, BSI has failed to produce

responsive information or fully answer questions that would resolve this dispute.  Therefore,

Connexus and Hydra have no choice but to seek all of the documents requested herein.

### 2.   Paul Wagner/BSI Deposition Transcripts.

**Connexus Document Request No. 69:**
A copy of each transcript in which Paul Wagner gave testimony during a
deposition, hearing, trial, and/or other legal proceeding.
**BSI Response to Document Request No. 69:**
Plaintiff objects to this Request on the ground that it is overbroad and unduly
burdensome.  Plaintiff further objects to this Request on the ground that it seeks
information which is neither relevant nor reasonably calculated to lead to the
discovery of admissible evidence.  Plaintiff further objects to this Request to the
extent that the information requested is protected by confidentiality orders in
other proceedings.

Connexus and Hydra seek an order requiring BSI to produce Paul Wagner/BSI deposition

transcripts.  As early as October 23, 2008, BSI indicated it would produce BSI/Paul Wagner

deposition transcripts (including transcripts pertaining to the ongoing *Hypertouch v. ValueClick*

matter). (Ex. 10, 10/23/08 Email Exchange.)  Because BSI did not produce these documents,

---

[2]       Counsel for Connexus and Hydra exchanged numerous emails concerning this issue but include here only
the most recent communications for the Court's convenience.

Defendants reiterated this request on March 5, 2009. (Ex. 6, 3/5/2009 A. Rothman Ltr.)  On

March 13, 2009 and March 25, 2009, BSI again promised to produce these documents. (Ex. 9,

3/16/09 A. Rothman Email; Ex. 7, 3/25/09 J. Kneedler Email.)  Counsel for Connexus and Hydra

then asked again when the promised documents would be produced. (Ex. 8, 4/3/09 A. Rothman

Email.)  Defendants, however, have still not received from BSI any deposition transcripts where

Paul Wagner was the deponent.  Connexus and Hydra are entitled to the transcripts because they

will contain facts about how BSI operates and handles emails, the grounds for and circumstances

of lawsuits BSI has initiated that are similar to this lawsuit, injuries sustained by BSI, and other

issues that are central to the claims and defenses here.  Indeed, BSI has initiated at least 24

lawsuits involving commercial emails as explained above.  Further, the transcripts may very well

have admissions in them that could be used for impeachment purposes.  There is no question that

deposition transcripts are discoverable and should be produced, and BSI does not and cannot

contend otherwise. *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 437 (D. Md.

2006) (compelling prior sworn statements of witness containing information that would be used

for impeachment purposes, and holding that "[p]roduction of impeachment evidence is required

in the ordinary course of discovery" and "[a] specific discovery request makes impeachment

evidence discoverable.")

3.     **Documents Produced by Parties and Third-Parties.**

**Document Request Nos. 4 (Hydra) and 10 (Connexus)**
All documents produced to you by any party or non-party pertaining to this Action or the allegations in the Complaint, including documents produced to you in response to any subpoena.
**BSI Response to Document Request Nos. a (Hydra) and 10 (Connexus):**
BSI incorporates into this response its objections to the Definitions and Instructions and the General Objections set forth above.   BSI further objects to this Request as it seeks information not relevant to any claim or defense asserted by defendant and is not reasonably calculated to lead to the discovery of admissible evidence.  BSI further objects to this Request to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or protection.

These requests seek all documents that BSI has received from any party or non-party

concerning this lawsuit.  Included in this request are documents concerning an agreement that

was reached with defendants in a related case, Sebastian Barale and MailCompanyX, whereby

these defendants would be released from a multimillion dollar default judgment against them in

BSI's favor in exchange for documents and testimony against Connexus and Hydra in this case

("Barale Agreement").

Although BSI initially opposed producing any responsive documents, BSI subsequently

produced some documents produced by third parties but BSI has failed to produce others,

principally the documents it received in response to dozens of subpoenas it issued in October

2008 through at least January 2009.  BSI is obligated to produce these documents pursuant to

FRCP 26(e), and it has agreed to do so. (Ex. 9, 3/16/09 A. Rothman Ltr; Ex. 7, 3/25/09 J.

Kneedler Email.)

BSI is also obligated to produce documents concerning the Barale Agreement.  Although

Connexus and Hydra issued a subpoena to Steptoe & Johnson based on their understanding that

Steptoe negotiated the agreement, and although Steptoe agreed to produce responsive

documents, Steptoe has not yet produced responsive documents. (Ex. 11, Email Chain

Concerning Barale Agreement.)  Connexus and Hydra will withdraw this and any other topic if

documents are provided.  In any event, there is no basis to withhold these documents, as they

speak directly to the credibility of the information and testimony that Barale will provide, among

other things. *General Motors Corp. v. Lahocki,* 410 A.2d 1039 (Md. 1980) (requiring disclosure

of agreement between plaintiff and less than all defendants because "because the court or jury as

trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of

the signing defendant as related to the non-signing defendants"); *Corn Exchange Bank v. Tri-*

*State Livestock Auction Co. Inc.*, 368 N.W.2d 596, 599 (S.D. 1985) ("The search for the truth, in

order to give justice to the litigants, is the primary duty of the courts.  Secret agreements between

plaintiffs and one or more of several multiple defendants can tend to mislead judges and juries,

and border on collusion.") (citation omitted); *Newsome v. Penske Truck Leasing Corp.*, 437

F.Supp.2d 431, 437 (D. Md. 2006) ("[p]roduction of impeachment evidence is required in the

ordinary course of discovery" and "[a] specific discovery request makes impeachment evidence

discoverable").  Further, undersigned counsel understands that responsive documents have

already been produced in the litigation Hypertouch initiated against ValueClick (Hypertouch is

represented by the same counsel as BSI herein).  There is no legitimate basis to continue

withholding these documents.

The Court should order the production of the documents sought herein immediately so

that Connexus and Hydra can plan their remaining discovery and trial strategies accordingly.

### 4. Discovery Concerning Litigation Proceeds.

**Connexus Interrogatory No. 5**
All documents produced to you by any party or non-party pertaining to
this Action or the allegations in the Complaint, including documents
produced to you in response to any subpoena.
**BSI Response**

Plaintiff objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Interrogatory on the ground that the time period is not reasonably limited in scope.  Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows: Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows: Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A).

## Connexus Document Request No. 61

Documents sufficient to identify your quarterly revenue, income, and profits since January 1, 2000 that you have derived from each of your business lines, profit centers or other revenue-producing activities or operations, including but not limited to the provision of internet and/or email access, the products and services you list in response to Request Nos. 4 and 5 herein, consulting, and settlements or judgments arising out of litigation or the threat of litigation.

## BSI Response

Plaintiff objects to this Request on the ground that it is overbroad and unduly burdensome.  Plaintiff further objects to this Request on the ground that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects to this Request to the extent that it violates any guaranteed right of privacy afforded to Plaintiff by law, rule or regulation.  Plaintiff further objects to this Request on the ground that it is duplicative of other Requests herein.  Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, and based on further consultation with counsel for Defendant, Plaintiff responds as follows:  Plaintiff has agreed to provide certain information responsive to this Request. This information will be reflected in a supplemental response to Interrogatory No. 5, to be served on counsel for Defendant. Discovery is continuing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

## Connexus Document Request No. 61

Documents sufficient to identify your quarterly revenue, income, and profits since January 1, 2000 that you have derived from each of your business lines, profit centers or other revenue-producing activities or operations, including but not limited to the provision of internet and/or email access, the products and services you list in response to Request Nos. 4 and 5 herein, consulting, and settlements or judgments arising out of litigation or the threat of litigation.

## BSI Response

Plaintiff objects to this Request on the ground that it is overbroad and unduly burdensome. Plaintiff further objects to this Request on the ground that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Request to the extent that it violates any guaranteed right of privacy afforded to Plaintiff by law, rule or regulation. Plaintiff further objects to this Request on the ground that it is duplicative of other Requests herein. Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, and based on further consultation with counsel for Defendant, Plaintiff responds as follows: Plaintiff has agreed to provide certain information responsive to this Request. This information will be reflected in a supplemental response to Interrogatory No. 5, to be served on counsel for Defendant. Discovery is continuing. Plaintiff expressly reserves the right to supplement this Response should additional information become available.

**Connexus Document Request No. 64**
Documents sufficient to show the amount of money you have received from parties you have sued in lawsuits pertaining to email.
**BSI Response**
Plaintiff objects to this Request on the ground that it is overbroad, vague, ambiguous and unduly burdensome. Plaintiff further objects to this Request on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Request on the ground that it seeks documents protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or other related doctrine or privilege. Plaintiff further objects to this Request to the extent that it seeks information subject to agreements with third parties the terms of which are confidential.

Connexus Interrogatory No. 5 and Connexus Document Request Nos. 61 and 64 seek

information pertaining to revenue BSI obtained from litigation it initiated. Responsive

information tests, among other things, BSI's allegation that it is an electronic mail service

provider under Cal. Bus. & Prof. Code § 17529.1(h) and an interactive computer service provider

under Md. Comm. Law. § 14-3001(c), or whether BSI's business model involves initiating

lawsuits. Even assuming BSI could meet the technical definitions of the statutes, Defendants are

entitled to discover the requested information to determine whether BSI is an entity that the

statutes were designed to protect and therefore whether BSI has standing. *Ferron*, 2008 U.S.

Dist. LEXIS 38257 at **5-6 (compelling discovery seeking to determine whether plaintiff

qualified as a "consumer" under Ohio statute where plaintiff "developed a scheme aimed at

receiving, gathering, sorting, and storing huge volumes of emails for the sole purpose of

formulating and asserting" lawsuits).  How much money BSI has received from litigation speaks

directly to this issue.

      Connexus and Hydra are also entitled to responsive information because it will speak to

the credibility and bias of BSI and its principal Paul Wagner, as well as representations BSI and

Paul Wagner have made and will likely make at trial.  BSI represented that it is acting as a

"private attorney general" that "has sought to alleviate the harm the ceaseless wave of spam

causes to its business by investigating and bringing claims against egregious spammers." (Ex. 12,

5/15/08 Joint Status Report.)  Yet, BSI is seeking in excess of $100,000,000 in statutory damages

alone but seeks only $31,011.05 for <u>all</u> "Beyond Systems' Spam-Related Costs" and "cannot

apportion as to Connexus, Hydra, or anyone else, the damages set forth in the 'Beyond Systems'

Spam-Related Costs." (Ex. 13, "Beyond Systems' Spam-Related Costs"; Ex. 7, 3/25/09 J.

Kneedler Email.)  Connexus and Hydra are entitled to discover and present to the jury BSI's true

motives and credibility in bringing suit particularly if BSI is going to portray itself at trial as the

victim of receiving too much alleged spam and as an entity that is altruistically seeking to stop

receiving it by filing lawsuits.  Connexus and Hydra are also entitled to determine how BSI has

acted as a "private attorney general" and what BSI has done with monies it has recovered (*e.g.*,

whether it distributed litigation proceeds to those truly aggrieved by "spam" or whether it used

the funds for other purposes).  Accordingly, responsive documents should be produced because

they speak to the credibility of BSI and its principal.  Indeed, "[p]roduction of impeachment

evidence is required in the ordinary course of discovery" and "[a] specific discovery request

makes impeachment evidence discoverable." *Newsome v. Penske Truck Leasing Corp.*, 437

F.Supp.2d 431, 437 (D. Md. 2006); FRE 607 ("The credibility of a witness may be attacked by

any party, including the party calling the witness.").

**C.      Specific Discovery Requests Propounded on Joe Wagner Should be Compelled.**

> **Document Request No. 2(d)**
> All documents and communications pertaining to (d) any litigation
> involving Paul Wagner, BSI and/or Hypertouch involving allegations of
> illegal commercial emails.
>
> **Response to Document Request No. 2(d)**
> Wagner objects to this Request on the ground that it is compound.
> Wagner further objects to this Request on the ground that it is unduly
> burdensome, overbroad, vague and ambiguous.  Wagner further objects to
> this Request to the extent that it violates any guaranteed right of privacy
> afforded by law, rule or regulation.  Wagner further objects to this Request
> to the extent it seeks information protected from disclosure by the
> attorney-client privilege, attorney work-product doctrine, or other related
> doctrine or privilege.  Wagner further objects to this Request on the
> ground that it seeks information not within Wagner's knowledge.  Wagner
> further objects to this Request on the ground that it seeks information
> which is neither relevant nor reasonably calculated to lead to the discovery
> of admissible evidence.

Connexus and Hydra previously served Joe Wagner with a subpoena while the case was

pending in the Central District of California.  Joe Wagner and Hypertouch are now Third-Party

Defendants in this action, and the discovery Connexus and Hydra seek is as relevant now as it

was when Connexus and Hydra served their subpoena.  Specifically, Connexus and Hydra seek

(1) all documents related to any defendant in this case or that are relevant to this case, (2) past

Joe Wagner deposition transcripts, declarations, and written discovery responses, (3) emails over

which Joe Wagner/Hypertouch has sued or threatened to sue that Paul Wagner/BSI has also sued

and/or threatened to sue over, and (4) substantive communications between Joe

Wagner/Hypertouch and Paul Wagner/BSI concerning the relationships and activities of their

businesses.

Counsel for Joe Wagner/Hypertouch, who also represents BSI, indicated months ago that "all documents related to any defendant in this case or that are relevant to this case" would be produced.  (Ex. 5, Joint Stipulation at 72.)  Included in this request are documents concerning an agreement that was reached with defendants in a related case, Sebastian Barale and MailCompanyX, whereby these defendants would be released from a multimillion dollar default judgment against them in BSI's favor in exchange for documents and testimony against Connexus and Hydra in this case ("Barale Agreement").  Although Connexus and Hydra issued a subpoena to Steptoe & Johnson based on their understanding that Steptoe negotiated the agreement, and although Steptoe agreed to produce responsive documents, Steptoe has not yet produced responsive documents. (Ex. 11, Email Chain Concerning Barale Agreement.) Connexus and Hydra will withdraw this and any other topic if documents are provided.  In any event, there is no basis to withhold these documents, as they speak directly to the credibility of the information and testimony that Barale will provide, among other things. *General Motors Corp. v. Lahocki,* 410 A.2d 1039 (Md. 1980) (requiring disclosure of agreement between plaintiff and less than all defendants "because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of the signing defendant as related to the non-signing defendants"); *Corn Exchange Bank v. Tri-State Livestock Auction Co. Inc.*, 368 N.W.2d 596, 599 (S.D. 1985) ("The search for the truth, in order to give justice to the litigants, is the primary duty of the courts.  Secret agreements between plaintiffs and one or more of several multiple defendants can tend to mislead judges and juries, and border on collusion.") (citation omitted); *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 437 (D. Md. 2006) ("[p]roduction of impeachment evidence is required in the ordinary course of discovery" and "[a] specific discovery request makes impeachment evidence discoverable").  Further,

17

undersigned counsel understands that responsive documents have already been produced in the litigation Hypertouch initiated against ValueClick (Hypertouch is represented by the same counsel as BSI herein).  No documents have been produced since the parties met and conferred, and there is no legitimate basis to continue withholding these documents.

Counsel for Connexus and Hydra narrowed the request concerning past litigation to include "deposition transcripts, declarations, written discovery responses, and emails over which Joe Wagner/Hypertouch has sued or threatened to sue where Paul Wagner/BSI has sued and/or threatened to sue over those same emails." (Ex. 9, 3/16/09 A. Rothman Email.)  Counsel for Joe Wagner/Hypertouch responded "In terms of the proposed narrowing of your request for past litigation documents, Joe Wagner will agree to produce non-privileged responsive documents in his possession, custody, or control" but then stated "[a]ny agreement to produce other deposition transcripts would be part of any agreement we might reach regarding past litigation documents generally." (Ex 7, 3/25/09 J. Kneedler Email.)  Counsel for Joe Wagner/Hypertouch also believed that Connexus and Hydra had already received the requested deposition transcripts pursuant to a subpoena they served on a non-party, but Connexus and Hydra did not receive the subpoenas.  Regardless, nothing has been produced by Joe Wagner/Hypertouch to Connexus or Hydra since the parties last met and conferred, and Joe Wagner/Hypertouch have not provided any legitimate reason to withhold responsive information.  The Court should order the requested information for these reasons, and because such documents will likely contain substantive evidence about the relationship between BSI and Hypertouch as well as information that could be used for impeachment. *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 437 (D. Md. 2006) (compelling prior sworn statements of witness containing information that would be used for impeachment purposes, and holding that "[p]roduction of impeachment evidence is

required in the ordinary course of discovery" and "[a] specific discovery request makes impeachment evidence discoverable.")

Joe Wagner/Hypertouch should be ordered to produce emails over which Joe Wagner/Hypertouch and BSI have sued or threatened to sue. On April 8, 2008, Hypertouch filed a complaint against ValueClick in the Superior Court of the County of Los Angeles similar to the complaint filed by BSI here, and Joe Wagner testified that Hypertouch is suing on emails in the ValueClick litigation that were ultimately sent to BSI, thereby showing that the emails are relevant to interactions between BSI and Hypertouch and how they handle email. (Ex. 14, ValueClick Complaint; Ex. 4, J. Wagner Deposition at 62:10-11.) Joe Wagner also testified that BSI received some of the emails that are at issue in the litigation Hypertouch initiated against Azoogle. (Ex. 4, J. Wagner Deposition at 62:23-24.) And, Joe Wagner testified that some of the emails at issue were also at issue in other cases, including *Hypertouch v. Kraft*, a case that was settled in 2006. (Ex. 4, J. Wagner Deposition at 63:1-21.) Indeed, for all Defendants know, Joe Wagner/Hypertouch is suing or has sued over the same emails that BSI is suing over here, and the information that Defendants are requesting will enable them to make that determination and investigate the legal ramifications that may arise, such as *res judicata* and/or collateral estoppel, among other things. Moreover, the requested information will also shed light on the interaction between Hypertouch and BSI which is central to the issues here given that Hypertouch sent virtually all of the emails at issue to BSI.

Joe Wagner/Hypertouch also agreed to produce "substantive communications with BSI/Paul Wagner concerning services that Hypertouch and BSI provide to each other and substantive communications regarding e-mail archiving." (Ex. 7, 3/25/09 J. Kneedler Email.) These documents have not yet been produced.

Finally, Joe Wagner/Hypertouch is refusing to produce non-privileged past communications regarding lawsuits and investigations with Paul Wagner.  There is no basis to withhold these documents because Joe Wagner and Paul Wagner collaborated to manufacture these lawsuits, and the information requested has both impeachment value and substantive information.  Indeed, Joe Wagner/Hypertouch sent over 96% of the emails at issue here to BSI as explained above.  Responsive documents would shed light on the transmission of these emails as well as whether emails are authentic as explained above, among other things.

### III.   BSI AND JOE WAGNER/HYPERTOUCH SHOULD BE SANCTIONED

FRCP 37(a)(5) provides that if a motion to compel is granted then the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust."  Connexus and Hydra have repeatedly attempted in good faith to obtain the requested information, and there is no reason why BSI and Joe Wagner/Hypertouch should continue to withhold the requested information – particularly the information that they agreed to produce.  Accordingly, BSI and Joe Wagner/Hypertouch, and/or their counsel, should be sanctioned.

### IV.   CONCLUSION

For all of these reasons, the Court should grant the relief that Connexus and Hydra seek.

Respectfully Submitted,

Dated:  April 8, 2009                            _____/s/_____
                                                 J. Douglas Baldridge, US DC-MD Bar No. 11023
                                                 Lisa Jose Fales, US DC-MD Bar No. 08141
                                                 Ari N. Rothman, US DC-MD Bar No. 17560
                                                 VENABLE LLP
                                                 575 7th Street, N.W.
                                                 Washington, DC  20004-1601
                                                 (202) 344-4000 (phone)
                                                 (202) 344-8300 (fax)
                                                 jdbaldridge@venable.com
                                                 ljfales@venable.com
                                                 anrothman@venable.com
                                                 *Attorneys for Connexus Corp. and Hydra LLC*