UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BEYOND SYSTEMS, INC.** | |
| **Plaintiff,** | **Case No.: 8:08-cv-00409-PJM** |
| **v.** | **Judge Peter J. Messitte** |
| | **Magistrate Judge Charles B. Day** |
| **KRAFT FOODS INC.,** *et al.* | **REDACTED VERSION** |
| **Defendants.** | |

**DEFENDANTS' MOTION TO COMPEL**
**INTERROGATORY RESPONSES AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 37 and Local Rule 104, Defendants Kraft Foods Inc., Kraft

Foods Global Inc., and Vict. Th. Engwall & Co., Inc. (collectively, "Defendants"), respectfully

submit this Motion to Compel Interrogatory Responses and Memorandum in Support for

Plaintiff Beyond Systems, Inc.'s ("BSI") refusal to provide complete responses to Defendants'

Interrogatories 12 and 14.

Specifically, BSI has refused to provide any information regarding its gross revenues

"derived solely from settlements or judgments obtained…during the course of litigation in which

BSI and/or Paul Wagner brought any claims related to commercial e-mail" on the grounds, *inter*

*alia*, that such "information is not relevant to any claim or defense at issue in this litigation." *See*

Plaintiff's Objection and Responses to Defendants' Second Set of Interrogatories (Nos. 12-14)

(attached hereto as Exhibit 1). On the contrary, such information is relevant to a determination

of whether BSI is entitled to bring suit under the statutes at issue, may also be relevant to the

amount of statutory damages available to BSI, and is certainly relevant for impeachment

purposes.  Moreover, BSI itself has sought similar information from other defendants <u>in this very</u> <u>case</u> on the grounds that such information is relevant to a party's subjective motivations for its actions.  Defendants wholeheartedly agree with BSI's position and therefore ask the Court to compel BSI to provide complete responses to Interrogatories 12 and 14.

## I.  FACTUAL SUMMARY

BSI, a purported Internet Service Provider ("ISP"), has filed no less than 24 lawsuits, including this one, in state and federal court related to its alleged receipt of unsolicited commercial email ("UCE").  *See* Plaintiff's Objection and Responses to Defendants' First Set of Interrogatories (Nos. 1-11), at Interrogatory No. 6 (attached hereto as Exhibit 2).  In this case, BSI claims it is entitled to $22 million in statutory damages from Defendants for emails it has received since 2004, even though it claims to have suffered only $31,011.05 in actual damages from UCE.  *Id.* at Interrogatory No. 2; *see also* "Beyond Systems' Spam-Related Costs" (attached hereto as Exhibit 3).  BSI has identified Paul Wagner and his brother, Joe Wagner, as persons "likely to have personal knowledge of any fact" alleged in BSI's complaint.  *See* BSI's Interrogatory Responses, at Interrogatory No. 1.  Paul Wagner is the President of BSI.  *Id.* at Interrogatory No. 7.  Joe Wagner is the President of Hypertouch, Inc. ("Hypertouch"), another purported ISP and BSI's sister company inasmuch as the companies share common domain names and servers, among other things.  *Id.*  Hypertouch is also a prolific plaintiff in alleged UCE lawsuits and, in fact, previously sued some of the Defendants in this case in *Hypertouch, Inc. v. Kraft Foods, Inc., et al.,* Case No. C 05-01589PJH (N.D. Cal.).  Indeed, Defendants have reason to believe that at least 2,000 of the emails at issue in *Hypertouch, Inc. v. Kraft Foods, Inc.* are the exact same emails which BSI is now suing on in this matter.

On April 24, 2009, BSI served its objections and responses to Defendants' Second Set of Interrogatories.  In its objections and responses, BSI refused to provide any information regarding its gross revenues "derived solely from settlements or judgments obtained…during the course of litigation in which BSI and/or Paul Wagner brought any claims related to commercial e-mail" on the grounds that such "information is not relevant to any claim or defense at issue in this litigation." *See* BSI's Interrogatory Responses, at Interrogatory Nos. 12 & 14.  Defendants notified BSI of the deficiencies in its responses by email on May 5, 2009.  Counsel for BSI responded by email on May 7, 2009 and stated that it would stand on its previously stated objections.

## II.    ARGUMENT

In this case, BSI purports to be an ISP that has received thousands of unsolicited commercial emails from Defendants and/or their agents in violation of Maryland and California law.  *See* Second Amended Complaint, ¶¶ 1, 3, 66-89 [Dkt. No. 52].  Nevertheless, based on the foregoing factual summary and a host of other information obtained through discovery and by other means, Defendants believe that BSI is not a bona-fide ISP.  Rather, Defendants – ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – believe that the Wagner brothers use their purported ISPs simply as vehicles by which to file UCE lawsuits and thereby profit from statutes that were enacted to protect consumers, not line the pockets of opportunistic plaintiffs masquerading as bona-fide ISPs.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ (attached hereto as Exhibit 4).  For example, over the last five years BSI has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ <u>excludes</u> its gross revenues derived solely from settlements or judgments obtained during the

course of UCE litigation. *See* BSI's Interrogatory Responses, at Interrogatory Nos. 12-14 &

Exhibit A thereto.  However, BSI has ███████████████████████████████████████████

one <u>includes</u> its revenues derived from UCE litigation. *See* Excerpts from 30(b)(6) Deposition of

Beyond Systems, Inc., at ██████████ (May 11, 2009) (attached hereto as Exhibit 5).  A

complete picture of the full extent to which BSI relies on litigation-fueled revenue to remain

solvent is certainly relevant to whether BSI is in fact a bona-fide ISP or simply a litigation

factory, and therefore not an entity intended to benefit from the considerable statutory damages

available under the statutes at issue.  Moreover, BSI will likely present itself to the jury at trial as

a heroic entity that selflessly brings UCE lawsuits in order to protect defenseless consumers.

However, evidence showing the full extent to which BSI actually needs litigation revenue in

order to remain solvent and to support Paul Wagner, its only employee, would tend to discredit

BSI's representation of itself as a populist savior.  For these reasons, and those discussed in

further detail below, Defendants respectfully submit that they are entitled to discovery regarding

BSI's gross revenues derived solely from settlements or judgments obtained during the course of

litigation in which BSI and/or Paul Wagner have brought any claims related to commercial e-

mail.

**A.     BSI Should Be Compelled to Respond Fully to Interrogatories 12 and 14**

**INTERROGATORY NO. 12:**

Identify BSI's annual gross revenues separately for each year from 2004 to the present.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff objects to this Interrogatory on the ground that it seeks information which is neither
relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff
further objects to this Interrogatory on the ground that it seeks information which is protected
from disclosure and discovery by virtue of BSI's and third parties' rights to non-disclosure of
confidential information.  Plaintiff further objects to this Interrogatory on the grounds that it is
overly broad and unduly burdensome.

4

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

Plaintiff has produced, concurrently herewith, an annualized summary of BSI's profits and loss statements from 2004 to 2008, which does not include amounts derived solely from settlements or judgments obtained by BSI and/or Paul Wagner during the course of litigation in which BSI and/or Paul Wagner brought any claims related to commercial e-mail. That information is not relevant to any claim or defense at issue in this litigation.

**INTERROGATORY NO. 14:**

For BSI's annual gross revenues for each year from 2004 to the present as provided in response to interrogatory no. 12, identify the amount derived in each year solely from settlements or judgments obtained by BSI and/or Paul Wagner during the course of litigation in which BSI and/or Paul Wagner brought any claims related to commercial e-mail.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Interrogatory on the ground that it seeks information which is protected from disclosure and discovery by virtue of BSI's and third parties' rights to non-disclosure of confidential information. Plaintiff further objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

Plaintiff has produced, concurrently herewith, an annualized summary of BSI's profits and loss statements from 2004 to 2008, which does not include amounts derived solely from settlements or judgments obtained by BSI and/or Paul Wagner during the course of litigation in which BSI and/or Paul Wagner brought any claims related to commercial e-mail. That information is not relevant to any claim or defense at issue in this litigation.

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The Supreme Court has explained that "relevant information" should be construed very broadly "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue

that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"Discovery requests may be deemed relevant if there is any possibility that the information may

be relevant to the general subject matter of the action." *Cadmus Communications Corp. v.

Goldman*, Civil Action No. 3:05CV257, 2006 WL 3359491, at *2 (W.D.N.C., Nov. 17, 2006).

"Thus...a request for discovery should be allowed unless it is clear that the information sought

can have no possible bearing on the claim or defense of any party." *Garrett v. Sprint PCS*, No.

00-2583-KHV, 2002 WL 181364, at *1 (D. Kan., Jan. 31, 2002).

BSI first objects to providing any information regarding its litigation revenues on the

grounds that such information is protected from disclosure and discovery "by virtue of BSI's and

third parties' rights to non-disclosure of confidential information." *See* BSI's Interrogatory

Responses, at Interrogatory Nos. 12 & 14.  While this objection is vague to say the least,

Defendants gather that BSI is relying on certain confidentiality terms that may appear in its

numerous settlement agreements.  However, this objection is unfounded because Defendants

seek only aggregate information regarding BSI's annual revenue from litigation; Defendants

have not asked for information regarding any individual settlements.  Accordingly, it is difficult

to understand how the production of the requested aggregate information could violate the terms

of any settlement agreement.  Moreover, such information could be produced under the

protective order entered in this case, and therefore, would not violate any rights of confidentiality

or privacy. *Cadmus Communications Corp. v. Goldman*, Civil Action No. 3:05CV257, 2006

WL 3359491, at *2 (W.D.N.C., Nov. 17, 2006) ("The Court finds that Defendants' legitimate

interest in the confidentiality of the Settlement Agreement can be preserved by a protective

order.").

BSI next objects to providing any information regarding its litigation revenues on the grounds that such a request "is overly broad and unduly burdensome." *See* BSI's Interrogatory Responses, at Interrogatory Nos. 12 & 14.  However, the veracity of this boilerplate objection is belied by the fact that BSI has already produced an annualized summary of <u>all</u> its profits and losses from 2004 to 2008, excluding information regarding its litigation revenues.  Hence, it is difficult to believe that BSI would find it "unduly burdensome" to gather copies of its various settlement agreements and perform some simple addition.

BSI's final objection to producing the requested information is that the amount of revenue it has derived solely from litigation "is not relevant to any claim or defense at issue in this litigation."  However, this is simply not so.  For example, consider the following discussion from one court regarding the "ill-motivated, unreasonable, and frivolous type of lawsuit[s]" filed by Omni Innovations, LLC and its principal, James S. Gordon, who – not coincidentally – happens to be one of the Wagner brothers' colleagues in the UCE litigation business:[1]

> First, it is obvious that Plaintiffs are testing their luck at making their "spam business" extraordinarily lucrative by seeking statutory damages through a strategy of spam collection and serial litigation. Plaintiffs are parties to ten additional cases similar to the instant case in the Western District of Washington alone…as well as at least one "spam" case in the Eastern District of Washington, [citation omitted].  The Court is not merely speculating on Plaintiffs' motives or assessment of potential profits.  In analyzing Plaintiffs' CAN-SPAM standing, this Court noted that Gordon testified that the "benefits" of receiving spam can be quantified in terms of his dissertation research, as well as "settlement agreements for people who have said that they wouldn't spam me any longer." (May 15, 2007 Order 7.)

> \*       \*       \*

Gordon testified that all of Plaintiffs' income or revenue for 2006

---

[1] Joe Wagner has been a consultant to James. S. Gordon regarding UCE lawsuits. *See Beyond Systems, Inc. v. Connexus Corp., et al,* CV08-01039 RGK PLAX (C.D. Cal.), Deposition of Joe Wagner, at 123:13 – 124:2 (Oct. 7, 2008) (attached hereto as Exhibit 11).

and 2007 has been from settlements and disputes. (*Id.* at 7-8.) Gordon also testified regarding the "time-consuming process" of collecting, sorting, and compiling spam regarding these and other defendants. (*Id.* at 8.) Clearly, Plaintiffs are assembling a litigation factory, which, if successful, could net millions of dollars in profit, at least theoretically.

Moreover, after assessing the utter lack of evidence going to any technical impact or financial harm due to the alleged illegal spam, this Court found it significant that Gordon did not seek actual damages in the instant litigation, because none exist, and that he is instead seeking solely statutory damages for each e-mail sent. (*Id.* at 8.) Plaintiffs admitted that they benefit from receiving spam, and this Court concluded that "Plaintiffs' continued use of other people's e-mail addresses to collect spam and their undisputed ability to separate spam from other e-mails for generating lawsuit-fueled revenue directly contradicts any hint of adverse effect that otherwise might exist." (*Id.* at 15.) Not only are Plaintiffs "not the type of entity that Congress intended to possess the limited private right of action it conferred on adversely affected bona fide Internet access service providers" (*id.* at 15), they are not the type of plaintiff that should be allowed to pursue the strategy outlined above without financial cost.

*Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 WL 2253296, at *5-6 (W.D. Wash. Aug. 1, 2007).

This discussion, from an order in which the court awarded Defendants their attorney's fees for having to defend against Mr. Gordon's frivolous claims, followed a previous order in which the court found evidence of Mr. Gordon's "prolific litigation and settlements" relevant to a determination that he was not in fact operating a bona fide ISP that had been "adversely affected" by UCE. *Gordon v. Virtumundo, Inc.* No. 06-0204-JCC, 2007 WL 1459395, at *9 (W.D. Wash., May 15, 2007). Additionally, even if BSI is found to be a proper plaintiff and Defendants are ultimately found liable, BSI's status as a professional litigant that derives substantial income from its many lawsuits may also be relevant to the Court's assessment of the amount of statutory damages to which BSI is entitled. *See, e.g., Hale v. Citibank, N.A.*, 198 F.R.D. 606, 608 (S.D.N.Y. 2001) ("Citibank's allegation that Hale is a 'professional plaintiff'

who acted from 'ulterior motives' in opening her AutoSave account might, if proven, warrant the Court in diminishing the amount of statutory damages to which she might otherwise be entitled").

Moreover, BSI itself has repeatedly argued that it is entitled to discovery regarding revenue information from the other defendants in this very case because such information is allegedly "relevant to Defendants' motivation to ignore violations of the law by their affiliates, and thus go to their business practices and defenses." *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Responses to Requests for Admission from Connexus Corp. and Hydra LLC, at 5 (Apr. 13, 2009) (attached hereto as Exhibit 6); *see also* Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Deposition Testimony from Connexus Corp. and Hydra LLC, at 2 (Apr. 13, 2009) (attached hereto as Exhibit 7); *see also* Reply to Defendants' Opposition to Plaintiff's Motion to Compel Responses to Requests for Admission, at 1 (May 13, 2009) ("Revenue and profit information is clearly relevant and should be produced.") (attached hereto as Exhibit 8); *see also* Reply to Defendants' Opposition to Plaintiff's Motion to Compel Deposition Testimony, at 1 (May 13, 2009) ("Revenue and profit testimony is clearly relevant and should be produced.") (attached hereto as Exhibit 9). In support of this argument, BSI contends that "[t]he subjective motivations of a party are a proper subject in discovery." *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Responses to Requests for Admission from Connexus Corp. and Hydra LLC, at 6 (Apr. 13, 2009) (citing *In re Nat'l Med. Imaging, LLC,* 2005 Bankr. LEXIS 2374, at *9 (Bankr. E.D. Pa. Oct. 31, 2005)); *see also* Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Deposition Testimony from Connexus Corp. and Hydra LLC, at 2 (Apr. 13, 2009) (same). Defendants could not agree more. The

extent to which BSI relies on litigation-fueled revenue in order to remain solvent certainly goes to its subjective motivation for filing baseless UCE lawsuits, like this one, in the hope of extracting quick settlements from corporate defendants. Accordingly, the Court should accept BSI's own argument and find that its revenue derived from litigation is a proper subject in discovery.

Finally, Defendants are also entitled to the requested information because it will speak to the credibility and bias of BSI and its principal Paul Wagner, as well as representations BSI and Paul Wagner have made and will likely make at trial. For example, BSI has represented that it is acting as a "private attorney general" that "has sought to alleviate the harm the ceaseless wave of spam causes to its business by investigating and bringing claims against egregious spammers." *See Beyond Systems, Inc. v. Connexus Corp., et al*, CV08-01039 RGK PLAX (C.D. Cal.), Joint Report to the Court Regarding Rule 26(f) Meeting of Counsel, at 2 (June 9, 2008) (attached hereto as Exhibit 10). Defendants are entitled to discover and present to the jury BSI's true motives and credibility in bringing suit, particularly if BSI is going to portray itself at trial as a sort of Robin Hood, selflessly fighting UCE on behalf of helpless consumers as a "private attorney general." Indeed, "[p]roduction of impeachment evidence is required in the ordinary course of discovery" and "[a] specific discovery request makes impeachment evidence discoverable." *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006); *Butler v. Rigsby*, No. Civ.A 96-2453, 1998 WL 164857 (E.D. La., Apr. 7, 1998) (permitting inquiry into the percentage of a witness' net income derived from litigation for purposes of attacking credibility); FRE 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). Accordingly, complete responses to Interrogatories 12 and 14 should be provided because this information will speak to the

credibility of BSI and its principal and its true motives in filing what Defendants contend is a baseless lawsuit.

## III.   CONCLUSION

Accordingly, for the reasons stated, Defendants respectfully request that the Court order BSI to serve complete responses to Defendants' Interrogatories 12 and 14 within five (5) days of the Court's ruling on the instant motion.

Respectfully submitted,

DATED: May 22, 2009

_____/s/_____

John K. Roche (USDC-MD Bar No. 17531)
Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street, N.W., Suite 800
Washington, D.C. 20005-2003
(202) 434-1613
(202) 434-1690 (facsimile)
breingold@perkinscoie.com
jdevaney@perkinscoie.com
jroche@perkinscoie.com

Darrell J. Graham (*Pro Hac Vice*)
THE LAW OFFICE OF DARRELL J. GRAHAM, LLC
53 W. Jackson Blvd., Suite 1334
Chicago, IL  60604
(312)922-4533
(312)922-4757 (facsimile)
dgraham@djgrahamlaw.com

*Attorneys for Defendants Kraft Foods Inc., Kraft Foods Global Inc., and Vict. Th. Engwall & Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2009, I will send the foregoing document and accompanying exhibits to the following individuals via electronic and U.S. mail:

Anthony Cavanaugh
Thomas M. Barba
John J. Duffy
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
(202) 429-3000
(202) 429-3902 (facsimile)
acavanaugh@steptoe.com
tbarba@steptoe.com
jduffy@steptoe.com
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P.C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
(301) 540-8180
(301) 540-8195 (facsimile)
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson St., Suite 201
Rockville, MD  20850
(301) 251-9660
(301) 251-9610 (facsimile)
mike@mikerothman.com

*Attorneys for Plaintiff Beyond Systems, Inc.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Attorneys for Defendants Connexus Corp. and Hydra LLC*

_/s/_

John K. Roche (USDC-MD Bar No. 17531)
Barry J. Reingold (USDC-MD Bar No. 06490
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street, N.W., Suite 800
Washington, D.C. 20005-2003
(202) 434-1613
(202) 434-1690 (facsimile)
breingold@perkinscoie.com
jdevaney@perkinscoie.com
jroche@perkinscoie.com

*Attorneys for Defendants Kraft Foods Inc., Kraft Foods Global Inc., and Vict. Th. Engwall & Co., Inc.*

## TABLE OF EXHIBITS

1. Plaintiff's Objection and Responses to Defendants' Second Set of Interrogatories (Nos. 12-14)
2. Plaintiff's Objection and Responses to Defendants' First Set of Interrogatories (Nos. 1-11)
3. Beyond Systems' Spam-Related Costs, BSI-DISCL000001 - BSI-DISCL000009.
4. *In re Hypertouch, Inc. v. Stamps.com,* AAA No. 74 117 00953 04 SUBR, Final Award of Arbitrator (Jan. 5, 2006)
5. Excerpts from 30(b)(6) Deposition of Beyond Systems, Inc. (May 11, 2009)
6. Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Responses to Requests for Admission from Connexus Corp. and Hydra LLC (Apr. 13, 2009)
7. Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Deposition Testimony from Connexus Corp. and Hydra LLC (Apr. 13, 2009)
8. Reply to Defendants' Opposition to Plaintiff's Motion to Compel Responses to Requests for Admission, at 1 (May 13, 2009)
9. Reply to Defendants' Opposition to Plaintiff's Motion to Compel Deposition Testimony, at 1 (May 13, 2009)
10. *Beyond Systems, Inc. v. Connexus Corp., et al,* CV08-01039 RGK PLAX (C.D. Cal.), Joint Report to the Court Regarding Rule 26(f) Meeting of Counsel (June 9, 2008)
11. *Beyond Systems, Inc. v. Connexus Corp., et al,* CV08-01039 RGK PLAX (C.D. Cal.), Deposition of Joe Wagner (Oct. 7, 2008)