# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____
                               )

BEYOND SYSTEMS, INC.         )
                               )

     Plaintiff,            )
                               )

       v.              )     Case No. 8:08-cv-00409 (PJM)(CBD)
                               )

KRAFT FOODS, INC., *et al*.     )
                               )

     Defendants.         )
_____)

## PLAINTIFF'S MOTION TO COMPEL THE
## DEPOSITION OF DR. FREDERICK B. COHEN,
## MATERIALS RELIED ON, AND FOR SANCTIONS

Plaintiff Beyond Systems, Inc., through its undersigned counsel, requests that this Court issue an order pursuant to Fed. R. Civ. P. 37 and Local Rule 104 compelling Dr. Frederick B. Cohen ("Dr. Cohen"), the principal expert designated by Defendants Connexus Corp. and Hydra LLC, to provide further testimony at deposition within ten (10) days of this Court's Order. Plaintiff's ability to complete the deposition of Dr. Cohen is time sensitive given the impending filing of Defendants' summary judgment motion.[1]  In addition, Plaintiff respectfully requests that the Court order Dr. Cohen to produce all materials, including computer scripts and tools, relied on in conducting his expert analysis and in forming the opinions expressed in his expert reports. Alternatively, Plaintiff requests the Court enter an order prohibiting Connexus and Hydra from introducing Dr. Cohen's opinions or testimony at trial which are based on the computer tools Dr. Cohen relied on and has refused to produce and submit to examination through deposition. Plaintiff respectfully refers the Court to the attached memorandum in support of this motion.

---

[1] The parties have negotiated and agreed to a schedule for briefing of summary judgment motions, with Defendants filing their motion by December 18, 2009.

DATED:  December 1, 2009

Respectfully Submitted,


_____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December 2009, the foregoing *Plaintiff's Motion to Compel the Deposition of Dr. Frederick B. Cohen, Materials Relied On, and For Sanctions* was filed electronically via the Court's CM/ECF system, and served electronically on the below-named parties via the Court's electronic notification system:

Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
John K. Roche (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
202-434-1613 (Telephone)
202-434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, DC  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jbaldridge @venable.com
ljfales @venable.com
anrothman@venable.com

*Counsel for Defendants Connexus Corp. and Hydra LLC*

_____/s/_____
Thomas M. Barba

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| BEYOND SYSTEMS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 8:08-cv-00409 (PJM)(CBD) |
| | ) |
| KRAFT FOODS, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |

_____)


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF**
**DR. FREDERICK B. COHEN, MATERIALS RELIED ON, AND FOR SANCTIONS**

**BACKGROUND FACTS**

Plaintiff moves to compel the completion of Dr. Frederick B. Cohen's ("Dr. Cohen")

deposition.  In addition, Plaintiff moves to compel the production of materials he relied on in

conducting his analysis.  Pursuant to Rules 26(a)(2) and 26(e), Dr. Cohen is required to produce

these materials, which were also subpoenaed by Plaintiff.  Absent a timely cure, Plaintiff further

requests that the Court exclude testimony or analyses derived from Dr. Cohen's unproduced

tools.

Defendants Connexus and Hydra have refused to permit completion of the deposition of

their principal expert, Dr. Cohen.  Yet additional deposition time is clearly warranted:  Dr.

Cohen has produced eight expert reports totaling 1,224 pages, plus thousands of pages of

supporting documents and hundreds of thousands of supporting files – but not certain key

computer scripts used to conduct his analysis[2]; Dr. Cohen's reports contain highly technical and

_____

[2] Dr. Cohen's reports include:

dense information and analysis, often erroneously referencing legal concepts and terms that confuse and obfuscate his dozens of conclusions; Dr. Cohen also has a lengthy curriculum vitae referencing many possibly relevant writings; and Dr. Cohen produced a key computer script too late for examination during his deposition.

Without any reasonable basis or explanation, Defendants have cut off access to Dr. Cohen, refusing to produce him for completion of his ongoing deposition.  Dr. Cohen has appeared for four days of deposition, during which Plaintiff has diligently attempted to elicit testimony regarding Dr. Cohen's background, voluminous reports and many thousands of supportive documents and data.  By contrast, one of Plaintiff's experts, Peter Resnick ("Resnick"), has provided three straightforward expert reports (initial report, reply to rebuttal, and supplemental) totaling 87 pages.  Even though Mr. Resnick's reports comprise less than 10% the size of Dr. Cohen's, he has already been produced for a fifth day of deposition.

Despite diligent efforts to move expeditiously through his eight reports, as a result of the sheer volume of opinions expressed by Dr. Cohen and the after-the-fact production and non-production of his computer tools, Plaintiff sought to schedule two additional days to complete his deposition.  (Ex. 1, November 10, 2009 email from T. Onorato to A. Rothman.)  In response, on November 18, 2009, Connexus and Hydra refused to continue Dr. Cohen's deposition and refused to produce materials on which Dr. Cohen claimed he relied throughout his voluminous expert analyses.  Counsel for Connexus and Hydra demanded that Plaintiff obtain a court order

---

Item C (report analyzing the Connexus e-mails), 430 pages;
Item H (report analyzing the Hydra e-mails), 327 pages;
First Supplemental Report, 100 pages;
Klensin Rebuttal, 84 pages;
Shin Rebuttal, 42 pages;
Levine Rebuttal, 93 pages;
Wagner Rebuttal, 69 pages;
Resnick Rebuttal, 79 pages.

to complete Dr. Cohen's deposition and to acquire the materials which Rules 26(a) and 26(e) unambiguously require them to affirmatively produce:

> Cohen does not have two consecutive days available until after January 10, 2010. However, your request for two additional days combined with your request for Hypermail documents is unreasonable.  Therefore, you will need to get a court order for the two additional days with Cohen and the Hypermail documents you requested. . . . [W]e are fully prepared to oppose any motion you may file now concerning these issues.

(Ex. 2, November 18, 2009 email from A. Rothman to T. Onorato.)   What is more, Defendants appear to have already made the tactical decision to foreclose Dr. Cohen's testimony even before the end of Day 4.   As is shown in the transcript, at the end of Day 4 of his deposition, Defendants sought to pose re-direct questions out of turn to Dr. Cohen while Plaintiff's direct examination was still ongoing.  This way, they could try to repair his testimony and then turn around and cut off access to him having pulled their coup.  (Ex. 3, F. Cohen dep. at 1170:16-1172:3.)  Foreshadowing their current position, even though Plaintiff's counsel noted that Dr. Cohen's reports responding to Drs. Klensin, Levine and Messrs. Resnick, Shin and Wagner remain unaddressed, Defendants were – from the outset – unwilling to agree to reconvene Dr. Cohen's partially complete deposition.  *Id.*

Now, based solely on Defendants' perception of what is reasonable, Defendants have required Plaintiff to bring this motion.  The one-way street Defendants have constructed, taking advantage of the substantial discovery provided by Plaintiff[3] while simultaneously foreclosing Plaintiff from completing the deposition of their principal expert witness – upon whose testimony, analyses and declarations their forthcoming motion for summary judgment will

---

[3] Plaintiff has made its experts available without objection for, respectively, at least two days (Dr. Klensin; deposition ongoing), a third day (Dr. Levine; deposition ongoing), a fifth day (Mr. Resnick), and at least a sixth day (Mr. Wagner as plaintiff and hybrid expert).

heavily rely – is manifestly unfair, improper and impedes this matter from moving forward.  This sort of tactical gamesmanship is wholly improper and should require that Defendants produce Dr. Cohen for completion of his deposition and produce the computer tools he is withholding.  In the alternative, Plaintiff requests the Court to exclude testimony based on those tools.  In addition, Plaintiff requests the Court to order Defendants to reimburse Plaintiff for costs associated with this motion.

## I.        Plaintiff is Entitled to Complete the Deposition of Defendants' Primary Expert

For good cause, the Court "may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  Discovery rules "are given a 'broad and liberal treatment.'"  *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Here, there can be no question that Dr. Cohen's testimony is relevant to the subject matter of this action.  Indeed, Dr. Cohen's testimony is at the heart of Connexus and Hydra's defense and is likely to be prominently featured in their motion for summary judgment.  For all the following reasons, Plaintiff is clearly entitled to complete the partial deposition of Dr. Cohen.

First, Dr. Cohen's expert reports pursuant to Rule 26(a)(2)(B) totaled 1,224 pages.  Within these prolix pages, Dr. Cohen renders dozens of opinions on both legal and technical issues. In fact, on the first day of his deposition, Dr. Cohen testified that he was an expert or potentially an expert as to "*[e]verything and anything*" contained in his eight expert reports:

> 22        Q   Well, I get to ask you about them.  So
> 23   you need to tell me about them.  So what aspects
> 24   of service providers and their configuration are
> 25   you appearing as an expert as to?
>                                             64
> *1        A   If you put my report in front of you, I*
> *2   will be happy to go through it and identify each*
> *3   of the items in my report that go to aspects of*
> *4   service providers and provide you with the*

> 5   *specifics of my, you know, knowledge, experience,*
> 6   *background, skills, expertise, training relative*
> 7   *to the specific issues in those reports.  So*
> 8   *everything in my reports where I have expressed an*
> 9   *opinion is an area where I will be or may be*
> 10  *expressing an opinion in this case.*
> 11       Q   Okay.  So that I understand it is your
> 12  position that everything on which you have
> 13  expressed an opinion in your 1,100 pages of expert
> 14  reports is something on which you might be
> 15  offering expert testimony?
> 16       *A   Yes.*
> 17       Q   Okay.  So that includes then --
> 18       *A   Excuse me.  Everything and anything.  I*
> 19  *am not certain that I will be expressing an*
> 20  *opinion on each and every one of those things.*

(Ex. 4, F. Cohen dep. at 63:22-64:20.)  As shown above, Dr. Cohen claims he is an expert with

regard to an expansive set of topics, including, at least, all issues on which he opined on in his

voluminous reports.  Under Rule 26(b)(1), Plaintiff is entitled to question Dr. Cohen as to his

analyses, opinions, and conclusions contained therein.  To date, as Connexus and Hydra are well

aware, Plaintiff has not had a full and fair opportunity to do so.

Second, Dr. Cohen's eight reports contain lengthy, technical, and detailed opinions,

frequently stated as legal or pseudo-legal conclusions.  Dr. Cohen, a non-lawyer, has throughout

his expert report and during his deposition, used and confused all manner of legal theories, terms,

and definitions, including allegations of "spoliation," "fabrication," "fraud," and "illicit"

behavior by Plaintiff.  Since Dr. Cohen imparts his own definitions to these terms, each must be

explored in order to adequately understand exactly what he is alleging and the basis for his

opinions.  (Ex. 5, F. Cohen dep. at 324:8-325:19; Ex. 3, F. Cohen dep. at 894:15-895:22,

1084:22-1085:10, and 1075:19-1076:23.)  Dr. Cohen also bandies about legal concepts in his

written opinions on what constitutes "original writing" and "best evidence" and has imparted his

own non-lawyer meanings to such terms and/or borrowed imprecise definitions from his

understanding of the Federal Rules of Evidence.  (Ex. 6, F. Cohen dep. at 791:2-794:5; Ex. 3, F.

Cohen dep. at 1118:25-1120:10.)  Dr. Cohen's understanding of these concepts and his

conclusions about them all required considerable attention and correction during his deposition.

*See* Fed. R. Civ. P. 26, 1993 committee notes (noting that usually expert reports should be

tailored so as to narrow issues and reduce the need for expert depositions).

Third, Dr. Cohen has refused to produce – or produced after the fact – computer scripts

and tools used to conduct his analysis.  In his Item C report and his Item H report, Dr. Cohen

stated that his personally customized tool "Hypermail.pl" was used to produce critical elements

of his analysis, and he makes bold assertions regarding its reliability:

> Hypermail.pl is part of a set of tools identified in [BEF2009] for
> the purposes of analysis of electronic mails. This set of tools also
> uses the "lisp" and "perl" computer languages, the Unix shell, and
> many other Unix-related programs for its processing. I have used
> these tools for forensics cases including cases where the results
> have been presented in reports and declarations and they have been
> accepted in this use in previous legal matters. I have also improved
> them over a period of years, and they have been tested with
> hundreds of thousands of emails, have been used in work that
> resulted in peer reviewed articles, [BEF2009][CFSE2009] and
> have been found generally reliable for the purposes that I used
> them for in this case.

(Ex. 7, Excerpts of Dr. Cohen's Disclosures regarding Item C and Item H.)  However, Dr. Cohen

quietly withheld the Hypermail.pl tool until Plaintiff inquired as to where it could be found in Dr.

Cohen's production.  At that point, on the night before Day 4 of his deposition, Plaintiff was for

the first time given an explanation why Dr. Cohen did not produce his script:

> If I am understanding you correctly, the script you are requesting
> was not provided for at least two reasons. First, it was unnecessary
> because the actual input (as opposed to a mere reference to the
> input), output, and steps associated with the use of the script in Dr.
> Cohen's analysis were all provided. Second, it is a customized
> script that is proprietary to Dr. Cohen and represents valuable
> intellectual property to him in that it is part of a software package
> he licenses at a substantial cost. However, Dr. Cohen said he will

6

> produce it at no charge if you agree that it will be treated as
> confidential under the protective order and not subsequently
> challenged, and that it will be used for the sole purpose of
> verifying Dr. Cohen's analysis in his reports in this case. Let me
> know whether you agree.

(Ex. 8, November 5, 2009 email from A. Rothman to T. Onorato.)

Plaintiff agreed to use the script only for purposes of assessing Dr. Cohen's analysis and thus it was not until 11:50pm on the night before Day 4 of his deposition that Dr. Cohen produced a 700-line customized script.[4]  This after-the-fact production, only after Plaintiff questioned the silent withholding of the script, came despite Dr. Cohen's obligation under Rule 26(a)(2)(B)(ii) to have produced this script well before his deposition.  The complex nature of the script and its importance to Dr. Cohen's analyses required extensive review by Plaintiff and Plaintiff's own experts prior to Dr. Cohen's deposition, which could obviously not be accomplished in the overnight hours before Day 4 of his deposition.  Dr. Cohen's script was withheld without any sound justification.  Plaintiff deserves the opportunity to test the script which Dr. Cohen personally customized – about which he made assertions as to its reliability – and question him about its use in an informed manner.

In addition, an initial review showed that Dr. Cohen's Hypermail.pl script interacts with other computer scripts which he also did not produce.  Plaintiff requested after Day 4 of his deposition that Dr. Cohen produce "the tools associated with Hypermail.pl, including "Getopt::Std" –  the main external module associated with Hypermail.pl – as well as the tools described by Cohen which he has modified ("improved")." in advance of Day 5 of his deposition.  Defendants refused to produce these other elements of Dr. Cohen's analytical tools.

---

[4] Plaintiff agreed not to challenge the confidentiality designation of the script and is not doing so here, but reserves the right to do so as it stated in its November 5, 2009 email to Defendants' counsel.  (Ex. 12, November 5, 2009 email from T. Onorato to A. Rothman.)

(Ex. 9, November 12, 2009 email from T. Onorato to A. Rothman.)  Dr. Cohen has suggested that Plaintiff's experts can review his analysis using tools other than the customized tools he used, but this does not suffice and is contrary to the purposes of expert discovery.  (Ex. 3, F. Cohen dep. at 907:16-912:24.)  Plaintiff's experts should not have to try to figure out what Dr. Cohen did and replicate it in some uncertain way.  Further, Defendants have tried to justify their non-production of the scripts on the grounds that the "output, and steps associated with the use of the script in Dr. Cohen's analysis were all provided" (Ex. 8, November 5, 2009 email from A. Rothman to T. Onorato) in his reports, but this does not suffice for the same reason – just because an expert describes their analytical method and results in their report does not free them from the obligation under Rule 26 to produce the means to the results.

Fourth, Dr. Cohen's report is phrased in purposefully misleading language, despite the apparent facile nature of his underlying theories and conclusions, and efforts to decipher Dr. Cohen's statements were inhibited by his evasiveness and filibustering.  For instance, Dr. Cohen claims that the emails produced by Plaintiff in this litigation are "fabrications that have fabrication errors" (Ex. 3, F. Cohen dep. at 1151:14-15), which makes little sense to begin with. When questioned about Plaintiff's use of the SpamPal program, which Dr. Cohen erroneously believes supports his meritless allegation that Plaintiff "fabricated" the emails it received, Dr. Cohen evaded answering the question for pages and pages.  Finally after a root canal-like series of questions to examine whether the alleged "fabrication errors" could instead be caused by checking or unchecking an option box in the SpamPal software settings, Dr. Cohen revealed the secret of his evasiveness:  he was avoiding answering on the ground that he was being asked to assume the impossible, *i.e.*, that 'clicking on an icon' meant literally clicking on the paper exhibit he was looking at, not with a mouse on a computer screen:  "You can't uncheck the box.

It's -- it's a document.  It's not a program, it's a picture." (Ex. 5, F. Cohen dep. at 565:19-21.)

This sort of exchange was typical, frustrated the purpose of the deposition, and prevented

Plaintiff from investigating the bulk of Dr. Cohen's theories.[5]

Fifth, Connexus and Hydra can assert no prejudice arising from the completion of Dr.

Cohen's deposition.  *See, e.g.*, *Yazdani v. Pan-American Life Ins. Co.*, Civ. No. 02-1418, 2002

WL 32098288, at *4 (D. Md. Nov. 25, 2002) (permitting further deposition of experts for good

cause where there was no prejudice to non-moving party).  Plaintiff simply wants to realize the

goals of any deposition:  to investigate the facts and narrow the issues.  The parties have

negotiated and agreed to a schedule for briefing of summary judgment motions, with Defendants

filing their motion by December 18, 2009.  Indeed, the only harm to Connexus and Hydra from

the completion of Dr. Cohen's deposition would be Plaintiff's ability to properly oppose their

forthcoming motion for summary judgment.

For all the above reasons, Rule 26(b)(1) entitles Plaintiff to finish the deposition of Dr.

Cohen.  All the above, moreover, make it clear that Connexus and Hydra's opposition to

completion of Dr. Cohen's deposition is entirely unreasonable, without any sound basis, and

done for an improper purpose.  Connexus' and Hydra's demand that Plaintiff move for that to

which it is clearly entitled is consistent with their strategy throughout this case of stonewalling

discovery and banking that their gamble on abusive discovery tactics will be condoned by this

Court.  Accordingly, Plaintiff respectfully requests that, in addition to ordering the completion of

Dr. Cohen's deposition, the Court also award Plaintiff its costs associated with bringing this

motion before the Court.

---

[5] For the first two days of his deposition Dr. Cohen had to leave promptly at 5:30 p.m. because of other commitments.

**II.   Connexus and Hydra's Failure to Provide Materials on Which Dr. Cohen Relied To Prepare His Expert Report Precludes Use of the Materials and is Sanctionable**

Despite their unequivocal, affirmative, and continuing obligations under Rule 26(a)(2)(B)(ii) and Rule 26(e) to produce the "data or other information considered by" Dr. Cohen and used in preparation of his expert reports, and despite requests from Plaintiff to produce this data, Connexus and Hydra have refused to do so, calling these requests "unreasonable."  (Ex. 2, November 18, 2009 email from A. Rothman to T. Onorato.)  On its face, this is indefensible and deserving of sanction.  Indeed, the Fourth Circuit has recently re-emphasized the importance of such disclosures:

> Rule 26 disclosures are often the *centerpiece* of discovery in litigation that uses expert witnesses.  A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case.

*Carr v. Deeds*, 453 F.3d 593, 604 (4th Cir. 2006) (quoting *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005) (emphasis in original)).  To date, Connexus and Hydra have not provided Plaintiff with the full set of tools upon which Dr. Cohen based his expert report.  Throughout his expert report and throughout his deposition, there is constant reference to these tools, giving rise to a clear obligation for Connexus and Hydra to have produced these tools to Plaintiff.  *See* Fed. R. Civ. P. 26(e).  Plaintiff now seeks their production, and in the alternative, the remedy of exclusion of testimony and opinions based on these tools.

When these circumstances occur, the Federal Rules are clear:  "If a party fails to provide information [] as required by Rule 26(a) or (e), the party is not allowed to use that information [] to supply evidence on a motion, at a hearing, or at a trial. . . ."  Fed. R. Civ. P. 37(c)(1).  This is because "[e]very litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate

10

and ferret out that information as best they can and at the expense of their client." *Carr*, 453

F.3d at 605. "The available penalty for failure to comply with Rule 26(a)(2)(B) is equally plain,

and if a litigant refuses to comply with the requirements of the rule, he does so at his peril." *Id.*

Accordingly, per Rule 37, the Court should prevent Connexus and Hydra from relying on Dr.

Cohen's opinions based on his unproduced, customized tools, which remain untested by either

deposition or Plaintiff's experts. In addition, given that Connexus and Hydra can advance no

sound basis for their denial to provide this information, the Court should require them to pay

Plaintiff's costs associated with making this motion – a motion they, in fact, demanded Plaintiff

file.

As the Fourth Circuit has recognized, the Rule 37(c) advisory committee notes emphasize

that exclusion of evidence to be relied upon is an "automatic sanction" and such exclusion does

not require a showing of bad faith on the part of the nondisclosing party. *Southern States Rack

& Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) ("Rule 37(c)(1) does

not require a finding of bad faith or callous disregard of the discovery rules."). Indeed, "[i]t is

the obligation of the party facing sanctions for belated disclosure to show that its failure to

comply with Rule 37(c)(1) was either justified or harmless." *Id.* at 596 (quoting *Wilson v.

Bradlees of New England, Inc.*, 260 F.3d 10, 21 (1st Cir. 2001)). Given the ability of

nondisclosure under Rule 26 to provide a tactical advantage to one party and frustrate

proceedings on numerous levels, the Fourth Circuit has "give[n] particularly wide latitude to the

district court's discretion to issue sanctions under Rule 37(c)(1)." *Carr*, 453 F.3d at 604.

In making its determination whether nondisclosure was justified or harmless, the Fourth

Circuit has set forth five factors for a District Court to consider:

> (1) the surprise to the party against whom the evidence would be
> offered;

(2) the ability of that party to cure the surprise;
(3) the extent to which allowing the evidence would disrupt the trial;
(4) the importance of the evidence; and
(5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc.*, 318 F.3d at 597; *Kimpel v. Bd. of County Comm'rs*, Civ. No. 06-0097, 2009 WL 1890092, at *5–6 (D. Md. Mar. 25, 2009).  All of these factors weigh heavily in favor of excluding this testimony.

### A.    Surprise to Plaintiff

Connexus and Hydra's refusal to permit the completion of Dr. Cohen's deposition and to provide the Hypermail and associated scripts on which Dr. Cohen relied to generate his analyses and conclusions comes as a complete surprise to Plaintiff.  At the end of the Day 4 session of his deposition, Plaintiff's counsel put Defendants on notice that the deposition was not completed, including for the reasons stated in this motion.  (Ex. 3, F. Cohen dep. at 1170: 7-1173:3.) Nonetheless, without any reasonable justification or basis, from November 18, 2009 onwards Connexus and Hydra have stonewalled Plaintiff, ignoring the clear obligations of the Federal Rules, to obtain a tactical advantage on summary judgment.  (Ex. 2, November 18, 2009 email from T. Onorato to A. Rothman.)  Until this point, Plaintiff was relying on the reasonable assumption that Connexus and Hydra would provide both the tools their expert relied upon in making his report and their expert himself.  This sort of "belated and surprising disclosure of important [] evidence is not harmless. . . ."  *Cf. Kimpel*, Civ. No. 06-0097, 2009 WL 1890092, at *6.  The refusal to do so, immediately before summary judgment, is indeed a surprising and unfair position in which to put Plaintiff.  As such, this factor weighs heavily in favor of exclusion.

**B.      Ability of Plaintiff to Cure the Surprise**

The only possible cure for Connexus and Hydra's surprising refusal to produce both the

tools on which Dr. Cohen relied and Dr. Cohen himself is the production of both the tools and

Dr. Cohen.  In short, a cure would require Plaintiff to scramble to analyze the Hypermail tools it

should have had some time ago and then, assuming cooperation with Connexus and Hydra,

immediately depose Dr. Cohen even though that might come after Defendants' summary

judgment filing.  As such, this factor also weighs heavily in favor of exclusion.

**C.      Disruption of Trial**

There is the potential for a disruption of the schedule of this matter as Plaintiff should be

permitted to depose Dr. Cohen in advance of its summary judgment opposition and Plaintiff has

clearly stated to Defendants that it believes the summary judgment schedule will be impacted by

their stonewalling and the need to bring this motion, (Ex. 2, November 18, 2009 from T. Onorato

to A. Rothman.)  Further, there is the potential for disruption of trial.  If Dr. Cohen's untested

and quite possibly unreliable evidence is not excluded, Plaintiff will have no choice but to focus

on seeking to prevent Dr. Cohen's testimony from reaching the jury.  In short, there could be

significant disruption of the trial proceedings because all of the work, analysis, and testing that

should have been done pre-trial during discovery would have to be done during trial.  As such,

this factor also weighs heavily in favor of exclusion.

**D.      Importance of the Evidence**

The undisclosed Hypermail script and related scripts with which it interacts are central to

Dr. Cohen's analysis.  As Dr. Cohen has stated in both his expert report and at deposition, these

tools were used to produce the key data on which analyses and conclusions were based.  (*See*

Exs. 10 and 13.)  The importance of Plaintiff having the ability to test Dr. Cohen's results and do

so using the customized tools he used is very significant; without the ability to test Dr. Cohen's

tools, his expert report will stand unchallenged in parts.  As such, this factor also weighs heavily in favor of exclusion.

### E.  Connexus and Hydra's Explanation for Their Failure to Disclose

The only proffered explanation for Connexus and Hydra's failure to disclose the Hypermail tools on which Dr. Cohen primarily relied to draft his expert report are weak, unsupported, and highly questionable.  On November 5, 2009, counsel for Connexus claimed that Dr. Cohen's modifications to these Hypermail scripts were intellectual property not subject to disclosure.  (Ex. 8, A. November 5, 2009 email from A. Rothman to T. Onorato.)  By contrast, Plaintiff has produced the computer scripts he created even though they too would be intellectual property under Dr. Cohen's definition.  Ignoring the unsupported assertion that modifications to a script constitute intellectual property, Connexus and Hydra are well aware that there is a protective order in place in this action.  Further, the Maryland Suggested Protocol for Discovery of Electronically Stored Information does not make any distinction affording proprietary information greater protection from discovery.  Further still, to claim that Dr. Cohen's customized scripts are sensitive intellectual property is inconsistent with Dr. Cohen's claim that he has used these very same scripts in numerous peer reviewed articles.  *See supra* Part I; Ex. 7, Excerpts of Dr. Cohen's Disclosures regarding Item C and Item H.

When, however, Defendants did turn over the 700-line Hypermail script, they did so the night before the fourth day of Dr. Cohen's deposition, thus ensuring that Plaintiff's experts could not analyze the script and Plaintiff's counsel could neither question Dr. Cohen about these tools nor his conclusions based upon them.  In addition, as stated in section I at 7 *supra*, Dr. Cohen and counsel for Connexus and Hydra also claimed that Plaintiff was not entitled to these tools because Plaintiff could find and use other scripts and programs to verify Dr. Cohen's results or because since he described the results, he did not need to produce them.  These excuses overlook

the fact that the scripts Dr. Cohen used are interdependent and are contrary to the Fourth Circuit's admonition that: "Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client." *Carr*, 453 F.3d at 605.

Connexus' and Hydra's weak explanations for nondisclosure are meritless. As such, this factor also weighs heavily in favor of exclusion.

  **F. The Above Factors Should Preclude Connexus And Hydra from Relying on Dr. Cohen's Opinions Derived From the Use of Unproduced and/or Unexamined Tools**

As Part II.A–E of this memorandum has made clear, Connexus and Hydra's refusal to produce Dr. Cohen and the "data or other information considered by" Dr. Cohen and used in preparation of his expert reports under Rule 26(a)(2)(B)(ii) and Rule 26(e) has no justification, substantial or otherwise. The sole purpose of their gamesmanship, by both delaying and surprising Plaintiff, was to gain a tactical advantage on summary judgment. Indeed, Rule 26 "is meant in part to prevent prejudice created by last minute surprises." *Michelone v. Desmarais*, 25 Fed. Appx. 155, 158 (4th Cir. 2002). Accordingly, Plaintiff respectfully suggests that the Court not condone their tactics and preclude Connexus and Hydra's reliance on evidence derived from Dr. Cohen.

**III. Connexus and Hydra Should Pay Plaintiff's Costs and Attorneys' Fees for this Motion**

Where, as here, a party is forced to make a motion to compel compliance with unambiguous discovery obligations, the Federal Rules are again clear: "If a party fails to provide information [] as required by Rule 26(a) or (e) . . . the court . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P.

37(c)(1)(A); *see also Moreno v. Empire City Subway Co.*, Civ. No. 05-7768, 2008 WL 793605, at *2–7 (S.D.N.Y. Mar. 26, 2008) (awarding and calculating attorneys fees under Rule 37(c)(1)(A) after successful motion to compel).  Indeed, where a party successfully moves the Court to compel compliance with Rule 26(a) or Rule 26(e), the Court possesses the inherent power to award attorneys' fees and expenses, including "expenses associated with ascertaining the basis for the motion," to the prevailing party.  *Republic Leasing Co. v. Rest. Equip. Mktg. Specialists, Inc.*, 203 F.3d 822  (4th Cir. 1999) (mem.), *available at*  2000 WL 11286, at *20.

For all the reasons set forth above, Plaintiff should not have had to move the Court for the relief it now seeks.  Connexus and Hydra both had clear obligations under the Federal Rules to fully produce and supplement Dr. Cohen's disclosures – and refused to do so – stating from the outset that they would only obey the Federal Rules if ordered to do so.  Plaintiff, therefore, respectfully requests that Connexus and Hydra now reimburse the costs and attorneys' fees associated with the making of this motion.

## CONCLUSION

The foregoing makes clear that Connexus and Hydra have no sound basis for: (1) preventing Plaintiff from completing the deposition of their principal expert, Dr. Cohen; (2) refusing to provide Plaintiff with the tools on which Dr. Cohen relied to generate his 1,224 pages of expert reports; and (3) requiring Plaintiff to bring this motion before the Court.  Accordingly, Plaintiff respectfully requests the Court order that Plaintiff be permitted to complete Dr. Cohen's deposition and that the full set of tools and data Dr. Cohen used in the preparation of his expert report be produced.  In the alternative, Plaintiff requests that the Court preclude Connexus and Hydra from relying on evidence from Dr. Cohen in any motion, at any hearing, or at trial, derived from his unproduced and/or unexamined tools.  Plaintiff also respectfully submits that

the foregoing establishes Plaintiff's right to the costs associated with bringing this unnecessary

motion before the Court.

Respectfully Submitted,

_____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD  20850
T: 301-251-9660
F: 301-251-9610

mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

DATED: December 1, 2009

## TABLE OF EXHIBITS

1.     November 10, 2009 email from T. Onorato to A. Rothman

2.     November 11-18, 2009 email exchange between T. Onorato and A. Rothman

3.     Excerpts of November 6, 2009 deposition transcript of Dr. Cohen

4.     Excerpts of October 8, 2009 deposition transcript of Dr. Cohen

5.     Excerpts of October 9, 2009 deposition transcript of Dr. Cohen

6.     Excerpts of November 4, 2009 deposition transcript of Dr. Cohen

7.     Excerpts of Dr. Cohen's Disclosures regarding Item C and Item H

8.     November 5, 2009 email exchange between T. Onorato and A. Rothman

9.     November 12-13, 2009 email exchange between T. Onorato and A. Rothman