IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC., | : | |
| | : | |
| Plaintiff, | : | Case No. 8:08-CV-00409-PJM |
| | : | |
| v. | : | The Honorable Peter J. Messitte |
| | : | |
| KRAFT FOODS, INC., et al., | : | Magistrate Judge Charles B. Day |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## OPPOSITION TO MOTION TO COMPEL THE DEPOSITION OF
## DR. FREDERICK B. COHEN, MATERIALS RELIED ON, AND FOR SANCTIONS

Connexus Corp. ("Connexus") and Hydra LLC ("Hydra") respectfully submit this opposition to Plaintiff Beyond Systems, Inc.'s ("BSI") Motion to Compel. (DE# 246.)

## I.      INTRODUCTION

BSI's request for an <u>unlimited number of days</u> to depose Dr. Frederick B. Cohen should be denied because Dr. Cohen already provided four full days of deposition testimony during which BSI's counsel examined Dr. Cohen about his disclosures.  Thus, not only has BSI had more than an "ample opportunity" to examine Dr. Cohen under FRCP 26(b)(2)(C)(ii), but it has had four times the amount of time permitted by FRCP 30(d)(1).  Further, the summary judgment motion that Connexus and Hydra filed today does not "heavily rely" on Dr. Cohen, and BSI's other arguments do not warrant the relief BSI seeks.  Finally, BSI wasted valuable time yelling at, arguing with, and interrupting Dr. Cohen; extensively questioned him about issues that have nothing to do with this case; asked materially identical questions *ad nauseam*; asked him about documents he had never seen before and that BSI withheld until Dr. Cohen's deposition; and

engaged in other vexatious conduct that does not justify subjecting Dr. Cohen to an unlimited number of days of deposition at the expense of Connexus and Hydra.

BSI's request that Dr. Cohen produce "materials he relied on in conducting his analysis" should be denied because Dr. Cohen already produced such materials months ago. Further, BSI's request for Dr. Cohen's "tools" should be denied because FRCP 26(a)(2)(B) and dispositive authorities do not require experts to produce "tools" that they used, and because Dr. Cohen did not "consider" them within the meaning of FRCP 26(a)(2)(B)(ii) in any event. Dr. Cohen used tools as mere aids in performing certain tasks, produced source code pertaining to a portion of the "Hypermail" tool that BSI requested (although the law clearly did not require him to do so), explained how he used the Hypermail and other tools and what they do, and produced the files he generated using tools so that his results could be independently verified. Thus, Dr. Cohen's tools are not needed to understand or test Dr. Cohen's substantive conclusions. Moreover, some of the software tools BSI seeks are proprietary and Dr. Cohen would lose trade secret status associated with them even with the protective order in place.

Finally, BSI's request for sanctions is specious. FRCP 37(c) does not apply to expert deposition testimony, and Connexus and Hydra cannot possibly be penalized for producing Dr. Cohen for four full days at their expense where FRCP 30(d)(1) permits only one day and given that FRCP 26(b)(4)(C)(i) and Local Rule 104(11) require the party taking the deposition to pay expert costs. Moreover, BSI's sanctions request as to Dr. Cohen's tools is premised on its alleged entitlement to such information, but as explained herein, the law simply does not require Dr. Cohen to produce tools as even BSI acknowledges because BSI's experts, such as Mr. Shin, did not produce proprietary tools they used either.

For these reasons and as more fully explained below, BSI's motion should be denied, and Connexus and Hydra should be awarded their reasonable expenses associated with litigating this motion.  Alternatively, as required by FRCP 26(b)(4)(C)(i) and Local Rule 104(11), BSI should be ordered to pay all fees and costs associated with any additional discovery this Court may order, the scope of Dr. Cohen's deposition should be limited to the opinions expressed in his reports, and Dr. Cohen's additional deposition time should be limited to one day.  Further, Dr. Cohen should only be ordered to produce his proprietary tools in the manner described herein, and BSI and its experts should be ordered to produce all of their "tools" and appear for additional depositions at BSI's expense.

## II.  FACTS

Connexus and Hydra retained Dr. Cohen in the Summer of 2008 to analyze digital forensic issues associated with emails that BSI is suing over.  After spending hundreds of hours analyzing emails BSI produced in June 2008, Dr. Cohen concluded, among other things, that the alleged emails that BSI produced reflect spoliation, that Paul Wagner's (BSI's sole employee) representations about the "emails" are materially inconsistent with what the emails actually show, and that the emails cannot be used to support BSI's claims.  And, as it turns out, BSI's experts agree with Dr. Cohen, as BSI expert Klensin testified that "I knew for the reasons we discussed earlier today that neither I nor anyone else would be able to authenticate what was going on" and described alleged emails as "fatally damaged" and "do not contain enough information to interpret them as e-mail without either speculation or other information," while BSI expert Levine suggested "excluding [emails] from evidence," described printed out emails as "a mess" and "certainly not the way they would appear in a mail program" and agreed that

"much of the mail contains technical flaws," and BSI expert Resnick testified that items were "not as stored e-mail messages." (DE# 257-1 at 10-11.)

Dr. Cohen documented his findings in two substantially similar reports (one for Connexus emails and one for Hydra emails) produced in July 2009, and one supplemental report produced in September 2009.  In July 2009, Dr. Cohen also submitted reports rebutting disclosures made by BSI's experts.  The data and information that Dr. Cohen "considered" within the meaning of Rule 26(a)(2)(B)(ii) were produced with his reports in July 2009, and additional materials were produced on October 1, 2009 (the due date on a subpoena served by BSI).

BSI initially requested two days to depose Dr. Cohen in California (where Dr. Cohen resides) but stated "If we need a 3rd day with Cohen we are reserving the right to take it." (Ex. 1, 9/15/09 T. Onorato Email.)  Connexus and Hydra then produced Dr. Cohen for two full days, and BSI's counsel then indicated "[w]e have made it clear that we expect to need at least a third day and possibly more of Dr. Cohen."  (Ex. 2, 10/9/09 T. Onorato Email.)  Connexus and Hydra agreed to and did produce Dr. Cohen for two more additional full days for a total of four days.

Months after the production of Dr. Cohen's disclosures in July 2009, and after three full days of eliciting Dr. Cohen's testimony, BSI for the first time on November 5, 2009, asked undersigned counsel to produce "Cohen's script 'hypermail.pl.'" (Ex. 3, 11/09 Email Exchange.) Although not required to do so, undersigned counsel obtained the script and produced it within hours of BSI's request on the condition that BSI agreed to treat the script as confidential under the protective order.  (*Id.*)  The next day (day four of Cohen's deposition), BSI's counsel questioned Dr. Cohen extensively about his use of the script, including the files he generated and the input used to generate those files. (Ex. 4, F. Cohen Dep. 906:18-927:7; 1010:7-1031:8;

1160:7-1164:7)  By the end of this fourth day, Dr. Cohen had been questioned about, among other things, six reports, two declarations and the Hypermail script, and filled 1,173 pages of deposition transcripts.  However, as set forth more fully below, BSI wasted valuable time engaging in prohibited and bad faith deposition tactics that do not warrant the unlimited relief BSI seeks.

### III.   ARGUMENT

**A.   The Court Should Deny BSI's Request for Unlimited Cohen Testimony.**

FRCP 30(d)(1) states that "a deposition is limited to 1 day of 7 hours," and FRCP 30(d)(1) requires BSI to show that it needs the additional time requested "to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  However, FRCP 26(b)(2)(C) requires the court to "limit the frequency or extent of discovery otherwise allowed by these rules" if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," and FRCP 30(d)(3)(A) states that "the deponent or a party may move to terminate or limit [a deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

**1.   BSI Has Had More Than an "Ample Opportunity" to Examine Dr. Cohen.**

BSI has had more than an "ample opportunity" to examine Dr. Cohen, as Connexus and Hydra generously produced Dr. Cohen <u>at their expense for a total of four full days</u> during which BSI examined Dr. Cohen about his reports and opinions in this case.  Among other things, BSI's counsel indicated that "[w]e have worked our way through the 430-page Item C [Connexus Report], [and] through the 327-page Item H [Hydra Report]." (DE# 246-6; Ex. 4, F. Cohen Dep. at 1172:8-9.)  BSI also questioned Dr. Cohen about his rebuttal reports concerning BSI experts

Klensin, Levine, and Resnick; his September 2009 supplemental report; and two declarations executed by Dr. Cohen that were filed with the Court. (*See, e.g.,* Ex. 4, F. Cohen Dep. at 130:18-132:18; 394:13-397:5; 411:6-447:5; 530:15-531:11; 1104:24-1109:12; 1154:12-1155:19).

BSI's argument that it needs additional time to depose Dr. Cohen about his reports because they total "1,224 pages" grossly mischaracterizes Dr. Cohen's disclosures, among other ways, by ignoring that two of the reports (totaling 757 pages) are largely identical (two sets of files containing tens of thousands of alleged emails), and that <u>all</u> of the reports contain Dr. Cohen's substantially identical and lengthy descriptions of his qualifications.  Moreover, BSI fails to identify which opinions in any of the reports it contends that it needs to explore, and has not cited any documents (other than the overreaching request for "tools") that it claims it needs to depose Dr. Cohen about.  Therefore, BSI's argument that the volume of Dr. Cohen's disclosures justifies the unlimited relief BSI seeks lacks basis.

BSI's argument that Dr. Cohen should be produced for an unlimited number of days because Defendants' summary judgment motion "will heavily rely" on Dr. Cohen's disclosures and because Dr. Cohen's disclosures are "likely to be prominently featured" in the motion does not warrant the relief BSI seeks either. (DE# 246 at 6-7.)  Contrary to BSI's unfounded speculation, Connexus and Hydra do <u>not</u> argue in their motion that the emails are unreliable (which is the thrust of Dr. Cohen's conclusions) but instead assume that the emails are reliable for the sole purpose of their summary judgment motion.  Further, Connexus and Hydra do <u>not</u> cite <u>any</u> of Dr. Cohen's reports or documents, and cite <u>only two excerpts of Dr. Cohen's deposition that BSI elicited and fully explored</u> and an admission by BSI's counsel made on the record (DE# 257-1 at 9-10, 30.)  Indeed, the Court need not even rule on this motion unless the

summary judgment motion is denied because it seeks to dispose of all of BSI's claims.  Thus, the summary judgment motion does not justify the relief BSI seeks either.

Likewise, BSI's argument that it needs an unlimited number of days to depose Dr. Cohen about his tools lacks merit because Dr. Cohen is not required to produce them as a matter of law as explained more fully below, and because BSI's counsel already questioned Dr. Cohen extensively about his use of the tools and the information they generated.  (*See, e.g.,* Ex. 4, F. Cohen Dep. 906:18-927:7; 1010:7-1031:8; 1160:7-1164:7).

Finally, BSI's attempt to accuse Dr. Cohen of impeding a complete deposition is belied by counsel's clear statements on the record and BSI's motion proving otherwise, such as:

- "I appreciate that.  Thank you for your full answer." (*Id.* at 12:1-2.)

- "Thank you.  I appreciate that.  It helps me to better understand." (*Id.* at 169:25-170:1.)

- "I understand that and I appreciate that." (*Id.* at 652:24.)

Rather, as explained below, only BSI's vexatious deposition misconduct inhibited BSI from allegedly completing Dr. Cohen's deposition.

### 2.    BSI's Deposition Misconduct Does Not Warrant the Relief BSI Seeks.

BSI has nobody but its counsel to blame for any perceived inability to complete Dr. Cohen's deposition in the full four days provided, as BSI wasted valuable time engaging in bad faith deposition tactics that violate the Discovery Guidelines of this Court and mandate denying BSI's motion under FRCP 30(d)(3)(A).

First, Guideline 6(d) states "it is also presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1), particularly of a personal nature, and continuing to do so after objection shall be evidence that the deposition is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the

deponent or party, which is prohibited by Fed. R. Civ. P. 30(d)(3)."  Here, BSI wasted an

inordinate amount of time asking Dr. Cohen personal and irrelevant questions about mail servers

he operates (none of which are at issue here), Dr. Cohen's email policies (also not at issue here),

a patent that Dr. Cohen has that is not relevant to anything at issue in this case (this is not a

patent infringement case), whether Microsoft or Google have a duty to preserve evidence

(Microsoft and Google are not parties or third-parties here), documents that have not been

produced in the litigation (and in at least one case not even shown to Dr. Cohen at all but instead

testified to by BSI's counsel during the deposition), news articles about Dr. Cohen involving

irrelevant issues, Dr. Cohen's advertising of his books (none of which are in the emails at issue),

and other issues that have nothing do to do with anything in the case. (*See, e.g.,* Ex. 4, F. Cohen

Dep. at 183:20-188:21; 337:25-355:23; 493:6-528:5; 560:20-566:15; 620:7-623:5 738:11-

749:15; 831:7-837:2; 887:21-889:11; 899:17-900:3; 1039:2-1067:18.)

   Second, BSI yelled at and argued with Dr. Cohen when Dr. Cohen tried to answer vague

and confusing questions:

> Q:   That's not correct?  Page 31 of your report says:  "RFC **881** **[sic]** - the
> applicable protocol to this analysis."  Is that wrong?  Is that inaccurate?
>
> MR. ROTHMAN:  Objection to form.  He's answering this question.
> Then we're taking a break.  And I'll just note here I'm glad we have audio
> and video here.  If you yell at him one more time, we're leaving and if you
> do it again –
>
> MR. ONORATO:  Okay. If continues to evade, then, you know, that's –
>
> BY MR. ONORATO:
>
> Q:   The question is did you or did you not write that RFC **821** is the applicable
> protocol to this analysis?
>
> MR. ROTHMAN:  What exhibit and what page number?  We'll look at it
> together.

> MR. ONORATO:  Page 31 of Exhibit 302, the one that's right in front of you.

A:   THE DEPONENT:  So your question refers to something different than your previous question.

Q.   I'm asking did you write –

A.   I'm trying to answer your question.

Q.   It's a yes/no question.  Did you write that RFC **841 [sic]** is the applicable protocol to this analysis?

> MR. ROTHMAN:  If you yell at him one more time, I'm going back to DC and he's going home and if you want to continue his deposition you're going to get a court order.  So answer that question and then we're taking a break.

(Ex. 4, F. Cohen Dep. 715:6-716:24 (emphasis added); *see also id.* at 215:3-10.).

Another typical outburst by BSI's counsel includes the following:

Q:   But you've had no problem casting aspersions at so-called spam vigilantes and plaintiffs.  You say, you know -- for example, you say that the typical claims include using multiple email addresses is fraudulent and you say but they themselves do the same thing.  Using multiple domain names is fraudulent, but they themselves do the same thing.  Using multiple email servers is fraudulent, but they themselves do the same thing.  Using the word "free" is fraudulent, but they don't actually look at the emails before suing.  Removal links didn't work.  But they didn't actually test out the removal links.  The content implies the source, but there is lots of evidence to the contrary.  So you're telling me that you are -- are not in this opining generally on spam plaintiffs?

> MR. ROTHMAN:  Objection to form.  Asked and answered. Argumentative.  Compound.

> THE DEPONENT:  So what was the actual question at the end?

(Ex. 4, F. Cohen Dep. 1073:14-1074:3.)  These are but two of many examples of counsel's heated and inappropriate confrontations with Dr. Cohen.  And this is far from the first time that BSI's counsel has yelled at deposition witnesses as evidenced by BSI's questioning of expert Keith Jones:

Q:      But you don't know whether or not NUYX opens Eudora MBOX files; do
        you?

        MR. ROTHMAN:  Objection to form, argumentative, asked and answered.

A:      THE WITNESS:  Yeah, I've already answered that.

Q:      No.  Don't hide behind counsel's objection.  You're an expert in this case.
        I'm entitled to your expert testimony, and I'm entitled to your knowledge
        base.  Do you or don't you know for a fact that NUYX opens Eudora
        MBOX files?

        MR. ROTHMAN:  Objection to form.  You need to lower your tone, or
        we're leaving, then you can get the rest of his testimony from the Court.

(Ex. 5, K. Jones Dep. at 56:17-57:16.)

        Third, and although BSI's counsel represented at the outset of Dr. Cohen's deposition

that "I will allow you to finish your answer before I ask the next question," BSI from the

beginning of day one through the end of day four refused to allow Dr. Cohen to respond to

questions and interrupted him endlessly. (*See, e.g.,* Ex. 4, F. Cohen Dep. at 6:22-23; 33:8-9;

46:21; 56:25-57:2; 78:19; 137:4; 137:16-18; 192:5; 211:9; 215:13; 235:5-6; 239:6; 239:14;

240:3; 244:10; 261:15-17; 266:14-23; 270:20-22; 296:19-22; 299:1; 303:1-2; 336:10-12; 338:8;

348:18-19; 351:15; 397:4-7; 484:8-14; 502:10; 557:10; 568:9; 638:13-14; 854:14; 877:7-9;

912:3-7; 936:10-14; 951:13; 970:24-971:1; 971:23; 977:8-9; 1004:11-23; 1062:13; 1148:5.)

        Fourth, Guideline 6(c) of the discovery rules of this Court provides that "[a]n attorney

should not repeatedly ask the same or substantially identical question of a deponent if the

question already has been asked and fully and responsively answered by the deponent.  Upon

objection by counsel for the deponent, or by the deponent if unrepresented, it is presumptively

improper for an attorney to continue to ask the same or substantially identical question of a

witness unless the previous answer was evasive or incomplete."  However, BSI repeatedly asked

the same question after Dr. Cohen provided full and complete answers.  For example, BSI's

counsel asked "Is it the inclusion of the From separator that causes you to call it an email-like sequence" to which Dr. Cohen provided a full response.  (Ex. 4, F. Cohen Dep. at 211:11-212:4.) Despite Dr. Cohen's full answer, <u>BSI's counsel then bombarded Dr. Cohen with the same question ten additional times</u>.  (*Id.* at 211:11-220:22.)  BSI's counsel also asked identical questions about patterns of emails <u>five times</u>.  (*Id.* at 976:1-5; 976:16-22; 977:10-14; 977:19-21; 978:17-20.)  BSI also asked repetitive questions about Dr. Cohen's use of the Hypermail tool even after BSI purports in its motion to not have had time to examine or question Dr. Cohen about it – yet amazingly claims that it needs additional deposition testimony from Dr. Cohen on this very topic. (*See, e.g., id.* at 1013:9-1027:22.)

Finally, BSI questioned Dr. Cohen about documents that he had never seen and that BSI withheld until Dr. Cohen's deposition, including an unidentified document from a website that BSI's counsel represented pertains to "SpamPal."  (DE# 246 at 8-9.)  Yet, astonishingly, BSI now blames Dr. Cohen for being unable to testify about documents he had never seen until BSI ambushed him with the documents at his deposition.  (*Id.*)  Thus, it was this and other bad faith deposition tactics employed by BSI's counsel that were "typical, frustrated the purpose of the deposition, and prevented Plaintiff from investigating the bulk of Dr. Cohen's theories" to the extent that BSI was actually prevented from doing so and not Dr. Cohen. (*Id.* at 9.)  Quite simply, Dr. Cohen should not be compelled to subject himself to these bad faith tactics for an unlimited number of days, and Connexus and Hydra certainly should not have to pay for it.

### 3.    BSI's Request for Relief is Overbroad, and its Sanctions Request is Specious.

BSI's request for an <u>unlimited number</u> of days to depose Dr. Cohen is facially unreasonable and lacks legal support.  Indeed, BSI materially misstates the holding in the only case it cites in support of the overbroad relief it seeks.  Whereas BSI represents that the court in *Yazdani* "permit[ted] further deposition of experts for good cause where there was no prejudice

to non-moving party," the court actually permitted the deposition of an expert who had never been deposed in the case and did <u>not</u> order that a party could further depose an expert witness until the deposition was completed.  (DE# 246 at 9 (citing *Yazdani v. Pan-American Life Ins. Co.*, Civ. No. 02-1418, 2002 WL 32098288, at *4 (D. Md. Nov. 25, 2002) (determining that defendant could depose plaintiff's expert witnesses beyond the expert discovery cut-off because the witnesses were actually hybrid fact/expert witnesses)).)

BSI's sanctions request is even more specious than its request for an unlimited number of days to depose Dr. Cohen.  Foremost, FRCP 37(c) does not apply to expert depositions because FRCP 37(c) applies only to disclosures made under FRCP 26(a) and FRCP 26(e), and neither of these provisions of FRCP 26 govern expert depositions.  And, even if FRCP 37(c) applies (and it does not), Connexus and Hydra cannot possibly be punished for voluntarily producing Dr. Cohen at their expense for four times the number of days allowed by FRCP 30(d)(1).

The *Southern States* factors do not apply, and even if they did, they do not warrant sanctions.  (DE# 246 at 11-12 (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).)  Denying BSI's request for additional days of depositions should come as no surprise to BSI given that Connexus and Hydra only agreed to two total days to begin with and that Connexus and Hydra refuse to pay for Dr. Cohen to submit himself to BSI's vexatious deposition misconduct.  Thus, there was no surprise and nothing to cure.  Moreover, trial will not be disrupted because Dr. Cohen fully disclosed his opinions and bases for them. Finally, Connexus and Hydra did not "fail" to disclose Dr. Cohen; to the contrary, they provided him for four full days along with complete and detailed reports.  Thus, to the extent the *Southern States* factors even apply, they clearly do not warrant the relief BSI seeks.

**4.      Request for Alternative Relief.**

Although BSI's request for an unlimited number of days should be denied in total,

Connexus and Hydra ask in the alternative that the Court limit Dr. Cohen's deposition to one

day, that the scope of his examination be limited to the opinions expressed in his expert reports,

and that BSI be ordered to pay all fees and costs associated with such additional deposition time

as required by FRCP 26 and LR 104(11). *See* FRCP 26(b)(4)(C)(i) ("the court must require that

the party seeking discovery: pay the expert a reasonable fee for time spent in responding to

discovery"); LR 104(11) ("Unless otherwise ordered by the Court, any reasonable fee charged by

an expert for the time spent in a discovery deposition and in traveling to and from the deposition

shall be paid by the party taking the deposition"); Guideline 3(a) ("Unless counsel agree that

each party will pay its own experts, the party taking an expert witness's deposition ordinarily

pays the expert's fee for the time spent in deposition and related travel.").

**B.      The Court Should Deny BSI's Request for Dr. Cohen's "Tools."**

**1.      Dr. Cohen Is Not and Never Was Required to Produce "Tools."**

BSI's argument that FRCP 26(a)(2)(B)(ii) requires that Dr. Cohen produce his software

tools is wrong.  (DE# 246 at 10.)  First, "data or other information considered" under FRCP

26(a)(2)(B)(ii) means <u>substantive</u> materials an expert reviewed to inform the expert's opinions,

and <u>not</u> tools that the expert used as aids in analyzing data. *Scott v. City of New York*, 591

F. Supp. 2d 554, 558-59 (S.D.N.Y. 2008) (expert's report properly included the "data or other

information considered" where it identified the variables the expert considered but did not

identify the equation the expert used); *Snoznik v. Jeld-Wen, Inc.*, No. 1:09cv42, 2009 WL

2602219 (W.D.N.C. Aug. 21, 2009) (granting third-party expert's motion for protective order

regarding software templates); *Earp v. Peters*, No. 5:07-CV-31-RLV-DCK, 2009 WL 1444707

(W.D.N.C. May 21, 2009) (denying motion to compel production of a computer program).

In *Snoznik*, the defendant sought production of electronic templates that the plaintiff's expert witness created to use in conjunction with Microsoft Excel to facilitate preparing his expert report. *Snoznik*, 2009 WL 1444707 at *2. The court held that the expert was not required to produce his electronic templates because (1) the templates were used as aids in analyzing data, (2) the use of templates and the templates themselves did not comprise the subject matter of the lawsuit and thus had no relevance to the actual information produced, (3) disclosure of the templates would endanger the expert's trade secrets by providing access to the opposing party's experts, who were potential competitors. *See id.* at *6-7. Thus, the court held "the defendant has not shown any real need for the templates due to the fact that [plaintiff's expert] has provided, as required by Rule 26, his written report which contains in writing all of the information that he has considered and he has further offered to explain the complete written report, including every calculation by use of a calculator." *Id.* at *6.

Likewise, the court in *Earp* denied the plaintiff's motion to compel the production of computer animation software that the defendant's expert used to recreate an accident scene. *Earp*, 2009 WL 1444707 at *1. There, the court held that the plaintiff failed to show that the "proprietary software program was reasonably calculated to lead to the discovery of admissible evidence" because the plaintiff "not only has the input data and the animation itself, but has also been able to question the animator (and accident reconstructionists) about specific data." *Id.* at *2-3 (noting that discovery has "ultimate and necessary boundaries") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

BSI's demand that Dr. Cohen produce the software tools he used to analyze the data is indistinguishable from the demands made upon the experts in *Snoznick* and *Earp* and denied by the courts in those cases. Like the experts in those cases, Dr. Cohen used tools as mere aids to

review data, and produced the input and output along with an in depth explanation of his process and how his tools work. (*See, e.g.*, Ex. 4, F. Cohen Dep. at 906:18-927:7; 1010:7-1031:8; 1160:7-1164:7).

Further, BSI does not need and cannot use Dr. Cohen's tools to verify the accuracy of his results, as different tools that perform the same task must be employed to verify the results. (*See* Ex. 6, Decl. of F. Cohen at ¶ 7.) Otherwise, using the same tool would merely generate identical results. (*Id.*) By way of analogy, if an expert uses a ruler to determine that the length of an object is 10 inches, then a different ruler must be used to verify the accuracy of the measurement because the same ruler will always result in a measurement of 10 inches. (*See, e.g., id.*) Indeed, even BSI's sole employee, Paul Wagner, conceded that to verify the accuracy of an expert's results, two experts do not need to use the same tool so long as (1) an explanation is provided as to what the tool does, and (2) the files used with the tool are produced. (Ex. 7, P. Wagner Dep. at 1553:19-1557:8.) And, Paul Wagner/BSI testified that there are "a million ways" to achieve the same results and "there are many programs, many techniques using any given program of combination of programs that would yield the exact same results." (*See id.* at 1555:4-16.) Thus, as in *Snoznik*, where the expert's results could be checked for accuracy and verified with "a hand-held calculator," so too can Dr. Cohen's results be verified with other tools. *Snoznik*, 2009 WL 1444707 at *2.

Moreover, Dr. Cohen has a proprietary interest in protecting the tools he created. (*See* Ex. 6, Decl. of F. Cohen at ¶ 6.) While some of the tools Dr. Cohen used are available in the public domain and therefore obtainable by BSI (such as "Getopt::Std" referenced on page 7 of BSI's motion), Dr. Cohen modified other tools to make them more efficient, and his customizations reflect proprietary and confidential business information. (*Id.*) If Dr. Cohen was ordered to

disclose his proprietary tools, he could lose any competitive advantage he has created for himself by developing the tools, and the protective order in place in this action would not protect Dr. Cohen from disclosing his trade secrets to his competitors (like BSI's experts). *See Snoznick*, 2009 WL 1444707 at *7 (holding that the likelihood of harm to an expert is increased if his trade secrets are disclosed in litigation to competitors).

Finally, BSI's argument is extreme and does not comport with the Federal Rules of Civil Procedure. In short, if BSI's position is taken to its logical conclusion, it would require the production of items never considered to be within the scope of discovery, such as Microsoft Excel, which is frequently used by expert witnesses to analyze data and other input in reaching conclusions. And, BSI knows that the law does not support its request because BSI's expert, Mr. Shin, did not produce his proprietary tool either, and because BSI did not produce "perl," a program upon which BSI heavily relied. (Ex. 8, D. Shin Dep. at 373:4-17.) Accordingly, Dr. Cohen should not be required to produce his tools.

### 2.   BSI's Request for Sanctions is Specious.

Even if this Court were to determine that Dr. Cohen must produce his tools, BSI is not entitled to the sanctions it seeks. Foremost, Dr. Cohen was never obligated to produce his software tools and, thus, Dr. Cohen cannot be sanctioned for not producing something he was not obligated to produce.

Even assuming that Dr. Cohen was somehow obligated to produce his software tools, BSI's request for sanctions still lacks merit and BSI cannot satisfy any of the *Southern States* factors. (DE# 246 at 11-12 (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)).) First, Dr. Cohen's July 14, 2009 expert report disclosed that he had used his own proprietary tools to reach his opinions. (Ex. 9, 7/14/09 F. Cohen Expert Report

at 41 ("I used a customized version of the perl script called 'Hypermail.pl' that separates segments of the 'mbx' file based on lines starting with 'From', that has proven reliable over time, and that has been used in previous cases for similar purposes."))  Further, BSI's experts, including Mr. Shin, did not produce any of their proprietary tools, and Paul Wagner/BSI only produced those tools that he felt like producing.  Thus, BSI cannot credibly claim it was surprised when Dr. Cohen did not produce the same type of information that BSI and its experts refused to produce.

Second, Dr. Cohen already cured any surprise that BSI claims it suffered because Dr. Cohen produced the relevant portion of Hypermail that BSI requested, BSI questioned Dr. Cohen about it, and Dr. Cohen provided an explanation as to how the tool works and all of the files it generated so that BSI can verify the results.  Moreover, many of the parts of other tools are publicly available as explained herein.

Third, allowing Dr. Cohen to testify without producing his tools will not disrupt trial. Contrary to BSI's arguments, Dr. Cohen's analysis does not "depend" on his tools any more than this opposition brief depends on the word processing application used to write this brief, as the tools are not at issue in any of the claims or defenses in this case, and Dr. Cohen already provided all of the information he is required to produce as explained herein.

Fourth, Connexus and Hydra did not fail to name Dr. Cohen as an expert witness before trial, and Dr. Cohen was not under a duty to produce his tools.

Finally, Dr. Cohen's proprietary software tools are not evidence but, instead, are mere tools.  BSI's argument that "without the ability to test Dr. Cohen's tools, his expert report will stand unchallenged in parts" is irrelevant because his conclusions in no way stand or fall because of his use of tools.  (DE# 246 at 14.)  Accordingly, BSI's request for sanctions should be denied.

**3.      Request for Alternative Relief.**

In the alternative to producing proprietary tools, Connexus and Hydra request that Dr. Cohen be allowed to set up a system at BSI's expense so that BSI's experts can see how the program performs with the aid of Dr. Cohen.  Doing so will allow BSI to seek the clarity it claims it needs while protecting Dr. Cohen's trade secrets.  BSI must be ordered to pay all costs pursuant to FRCP 26(b)(4)(C)(i) and Local Rule 104(11)(a), which mandates that "any reasonable fee charged by an expert for the time spent in a discovery deposition and in traveling to and from the deposition shall be paid by the party taking the deposition."

Moreover, if the Court agrees that Dr. Cohen should be compelled to produce his tools, then Connexus and Hydra request that Paul Wagner (who has been disclosed as a hybrid fact/expert witness) and all of BSI's experts also produce all of the tools they used to analyze the underlying data.  Otherwise, BSI will be placed at an unfair advantage at trial because it will have been permitted to explore Dr. Cohen's tools while Connexus and Hydra will have been prevented from examining BSI's experts about the tools they used but did not produce.  Connexus and Hydra further request leave for additional depositions, fees and costs, and any other relief consistent with the demands BSI is making in its motion.

## IV.      CONCLUSION

For these reasons, Connexus and Hydra respectfully request that the Court deny BSI's motion and grant Connexus and Hydra their reasonable expenses incurred in opposing the motion, including attorney's fees pursuant FRCP 37(a)(5)(B).  Alternatively, Connexus and Hydra request that the Court enter an order consistent with the alternative relief Connexus and Hydra describe herein.

Respectfully submitted,

Dated:  December 18, 2009

_____/s/_____
J. Douglas Baldridge, US DC-MD Bar No. 11023
Lisa Jose Fales, US DC-MD Bar No. 08141
Ari N. Rothman, US DC-MD Bar No. 17560
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com
*Attorneys for Connexus Corp. and Hydra LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December 2009, a copy of the foregoing *Opposition to Motion to Compel the Deposition of Dr. Frederick B. Cohen, Materials Relied on, and for Sanctions* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system:

Thomas M. Barba
John J. Duffy
Jennie L. Kneedler
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Avenue
Suite 1800
New York, New York  10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway
Suite 200
Germantown, Maryland  20876
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 East Jefferson Street
Suite 201
Rockville, Maryland  20850
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th Street, N.W.
Suite 800
Washington, D.C.  20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
THE LAW OFFICE OF DARRELL J.
GRAHAM, LLC
53 West Jackson Boulevard
Suite 1334
Chicago, Illinois  60604
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.*

_____/s/_____
Ari N. Rothman