IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | : |
| Plaintiff, | : Case No. 8:08-CV-00409-PJM |
| v. | : The Honorable Peter J. Messitte |
| KRAFT FOODS, INC., et al., | : Magistrate Judge Charles B. Day |
| Defendants. | : |

**REPLY IN SUPPORT OF**
**MOTION FOR RETURN OF INADVERTENTLY PRODUCED PRIVILEGED FILE**

Hydra LLC ("Hydra") respectfully submits this Reply in Support of its Motion for Return of Inadvertently Produced Privileged File (DE# 240).

**INTRODUCTION**

Plaintiff Beyond Systems, Inc. ("BSI") agrees that the Spreadsheet that Hydra seeks to claw back is privileged, and does not contest, and therefore concedes, that the Spreadsheet was inadvertently produced. For these reasons, and because the Confidentiality Order expressly states that "[i]f information subject to a claim of attorney-client privilege, work product or other immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or immunity for such information" (DE# 87-3 at ¶8), no waiver occurred and the *Hobson* factors are irrelevant. Further, Hydra timely requested the Spreadsheet's return, and the short delay that BSI claims occurred does not constitute "extraordinary circumstances" that binding Fourth Circuit precedent requires before allowing inquiry into attorney work product. *In re Allen*, 106 F. 3d 582, 607 (4th Cir. 1997). Hydra's motion should be granted.

**ARGUMENT**

**A.     The Hopson Factors are Irrelevant.**

"The test for the claw back of inadvertently produced privileged documents" upon which BSI's entire opposition depends is irrelevant because the *Hopson* factors do not apply where, as here, a confidentiality order expressly states that the inadvertent production of privileged materials does not result in waiver. (DE# 247 at 1-2 (quoting *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 237 (D. Md. 2005)).

For instance, the court in *Prescient Partners* ordered return of inadvertently produced privileged documents pursuant to a claw back provision in a confidentiality agreement where the agreement "d[id] not incorporate the caselaw governing inadvertent waiver." *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96CIV.7590, 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) (emphasis added).  The court noted that "[t]he parties drafted this provision to provide for the out-of-court resolution of inadvertent production issues and to avoid litigating these issues" and "[i]f the provision applied only to documents deemed inadvertently produced under governing caselaw, then the parties would have to brief that law for the court to determine even whether the provision applied to a particular situation.  This would contravene the provision's purpose of protecting the parties from having to litigate inadvertent production issues." *Id*. Similarly, in *VLT*, the court declined to analyze the law addressing inadvertent disclosure because "the parties here have chosen to have the issue of inadvertent disclosure governed by the stipulated protective order." *VLT Corp. v. Unitrode Corp*., 194 F.R.D. 8, 11 (D. Mass. 2000). Thus, the court required the return of the inadvertently produced privileged documents pursuant to terms of the stipulated confidentiality order. *Id.* at 19-20.  And, the court in *Burlington* held that inadvertent disclosure did not result in waiver where confidentiality order stated "inadvertent

production of privileged documents during the course of discovery herein shall not constitute a waiver of either the attorney-client privilege or the work product privilege." *W'ern. Fuels Ass'n, Inc. v. Burlington N'ern. R.R. Co*., 102 F.R.D. 201, 204 (D. Wyo. 1984).

Tellingly, none of the cases BSI cites applied the *Hopson* factors to a confidentiality order with a claw back provision similar to the one at issue here. Indeed, *Hopson* itself did not involve a confidentiality order with a claw back provision. (Ex. 1, *Hopson* Confidentiality Order.) And, in one case cited by BSI, the court declined to "comb the precedents, if there be any, in an attempt to justify circumvention of a clear expression of the intent of the parties" where a confidentiality order provided "there would be no waiver of any privilege unless expressed in writing" which, therefore, precluded "any argument of waiver to be implied by a particular course of conduct." *Eutectic Corp. v. Metco*, 61 F.R.D. 35, 42-43 (E.D.N.Y. 1973) (cited by BSI at DE# 247 at 4); *see also F.H Chase Inc., v. Clack/Gifford*, 341 F. Supp. 2d 562 (D. Md. 2004) (no confidentiality order between the parties and no claw back provision governing inadvertent disclosures) (cited by BSI at DE# 247 at 1-2); *F.C. Cycles Int'l, Inc., v Fila Sport, S.p.A.,* 184 F.R.D. 64, 76 (D. Md. 1998) (defendant sought "neither the return of the document nor to limit its use during the litigation…admit[ted] that the document was disclosed, that it had an opportunity to pull it back under the confidentiality agreement but that it failed to do so, and that the plaintiff has unfettered use [of] the document during the balance of the litigation") (cited by BSI at DE# 247 at 1-4).

For all of these reasons, including foremost because the Confidentiality Order here expressly holds that inadvertent disclosure does not result in waiver, the *Hopson* factors do not apply, and this Court does not need to analyze them in ordering that the Spreadsheet be returned.

### B. The *Hopson* Factors Weigh in Favor of Returning the Spreadsheet.

The *Hopson* factors mandate claw back of the Spreadsheet even assuming they apply. First, "the number of inadvertent disclosures" weighs convincingly in Hydra's favor because the Spreadsheet is the only privileged document that Hydra inadvertently produced of the thousands of documents produced in this case since its inception in February 2008. *Hopson*, 232 F.R.D. at 237 (cited by BSI at DE# 247 at 1).

Second, "the reasonableness of the precautions taken to prevent the inadvertent disclosure" also weighs in Hydra's favor. *Hopson*, 232 F.R.D. at 237 (cited by BSI at DE# 247 at 1). In light of the duration of this case and the number of documents produced since the litigation's inception in February 2008, as well as the sheer volume (at least 160,000 files) in Dr. Cohen's document production, the inadvertent production of only one privileged document necessarily reflects adequate precautions to prevent inadvertent disclosure.

Third, "the extent of the disclosure" also weighs heavily in Hydra's favor, as the Spreadsheet was only inadvertently disclosed to BSI and Dr. Cohen, and BSI represents in its opposition that it has not made "use of the documents at issue here" (although BSI's counsel clearly reviewed it to allege that "the information on this document is responsive to discovery requests and should have been produced"). (DE# 247 at 7; DE# 240 at 6.) And, contrary to BSI's unfounded speculation that the Spreadsheet "may have been considered" by Dr. Cohen, Dr. Cohen testified unambiguously that he did not even recognize the document much less use it:

> Q:   All right. My first question is, if you could just tell me what these documents are or appear to be.
>
> A.   I don't know.
>
> Q.   Okay. Do you know whether or not you created these documents or they were documents given to you?

4

> A. Well, this is a depiction that I'm not immediately familiar with; that is, that the -- what I see in this page is not something that I recognize as something that I've seen in this form before. So I'm not certain of what this is.

(DE# 240 at 3-4.) Indeed, Dr. Cohen then testified "I don't know" when asked "Did you receive this?," and confirmed that he never opened or viewed it, and that he did not use it in connection with this case. (Id. at 4.). And, in all events, the spreadsheet was never verified or completed as explained in the motion. (Id. at 3.)

BSI's reliance on cases involving disclosure to experts of otherwise privileged information is misplaced because those cases do not address <u>inadvertent</u> production to testifying experts. Thus, in contrast to BSI's authorities, *Rhone* holds that "Rule 26(a)(2)(B) does not directly address the issue in this case: the inadvertent, rather than deliberate, disclosure of an otherwise privileged communication" and ordered the return of an inadvertently produced privileged document to an expert. *Rhone-Poulenc, Inc. v. Int'l Ins. Co*., No. 94 C 3303, 1997 WL 264299, *8 (N.D. Ill. May, 9, 1997).

Fourth, no "delay in measures taken to rectify the disclosure" occurred. *Hopson*, 232 F.R.D. at 237 (cited by BSI at DE# 247 at 1.) As explained in Hydra's motion, Hydra's counsel promptly asked BSI to cease using and disclosing the Spreadsheet immediately after Dr. Cohen testified that he was not sure whether he received it, and BSI's counsel then agreed to allow counsel to investigate the circumstances surrounding the Spreadsheet's production. (DE# 240 at 9.) And, although counsel agrees that it was "on notice" of the Spreadsheet's production at Dr. Cohen's deposition and that it was marked privileged, counsel lacked information sufficient to invoke the Confidentiality Order's claw back provision at the deposition. Thus, after the deposition, counsel for Hydra investigated the circumstances surrounding the production of the Spreadsheet, which involved conferring with Dr. Cohen (who had to review his production of

5

tens of thousands of files) and Hydra's general counsel (who needed to review notes and communications to determine whether he intended to disclose the Spreadsheet), and reviewing internal communications to determine how the Spreadsheet was produced to Dr. Cohen and whether it was intentional (Dr. Cohen was a non-testifying consultant initially).  These efforts, combined with the prodigious amount of substantive work on this case which involved several days of depositions, were not concluded until November 9, 2009, at which time Hydra's counsel had a basis to claim that the disclosure was inadvertent (which basis counsel did not have on October 9) and thus requested return of the Spreadsheet.  This is to be contrasted with counsel for BSI who, without basis, invoked the Confidentiality Order without basis and forced Hydra to engage in costly motions practice concerning a document that the Court found was not privileged. (*See* DE# 188.)  Accordingly, the *Hopson* factor addressing "any delay in measures taken to rectify the disclosure" also weighs in Hydra's favor.

Finally, "overriding interests of justice" also weigh in Hydra's favor.  Foremost, BSI does not claim and cannot show any prejudice if it is required to return the Spreadsheet, and although BSI's counsel clearly reviewed it so that it could allege that "the information on this document is responsive to discovery requests and should have been produced," BSI has not and cannot demonstrate that it needs the Spreadsheet for any purpose particularly given that the Spreadsheet was never completed or verified for accuracy as explained in the motion. (DE# 240 at 3, 6.) Further, assuming that Hydra untimely invoked the Confidentiality Order's claw back provision, a delay of just a few days does not warrant piercing the attorney work product doctrine which the Fourth Circuit has extended "nearly absolute immunity" from discovery and has "only [in] extraordinary circumstances" required disclosure because "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of

6

any attorney" particularly where, as here, BSI has not shown how it was prejudiced by the delay. *In re Allen*, 106 F. 3d 582, 607 (4th Cir. 1997); *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

## CONCLUSION

For the reasons set forth above and in Hydra's motion, Hydra respectfully requests that the Court grant the relief it seeks.

Respectfully submitted,

Dated:  December 21, 2009                  /s/
J. Douglas Baldridge, US DC-MD Bar No. 11023
Lisa Jose Fales, US DC-MD Bar No. 08141
Ari N. Rothman, US DC-MD Bar No. 17560
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com
*Attorneys for Hydra LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of December 2009, a copy of the foregoing *Reply in Support of Motion for Return of Inadvertently Produced Privileged File* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system:

| | |
|---|---|
| Thomas M. Barba<br>John J. Duffy<br>Jennie L. Kneedler<br>STEPTOE & JOHNSON LLP<br>1330 Connecticut Ave NW<br>Washington DC 20036<br>tbarba@steptoe.com<br>jduffy@steptoe.com<br>jkneedler@steptoe.com | John K. Roche<br>Barry J. Reingold<br>John M. Devaney<br>PERKINS COIE LLP<br>607 14th Street NW, Suite 800<br>Washington DC 20005-2003<br>jroche@perkinscoie.com<br>breingold@perkinscoie.com<br>jdevaney@perkinscoie.com |
| Anthony A. Onorato<br>STEPTOE & JOHNSON LLP<br>750 Seventh Ave., Ste. 1800<br>New York, NY 10019<br>tonorato@steptoe.com | Darrell J. Graham<br>THE LAW OFFICE OF DARRELL J. GRAHAM, LLC<br>53 W. Jackson Blvd.<br>Suite 1334<br>Chicago, IL 60604<br>dgraham@djgrahamlaw.com |
| Stephen H. Ring<br>Law Offices of Stephen H. Ring, P. C.<br>20300 Seneca Meadows Parkway, Suite 200<br>Germantown MD 20876<br>shr@ringlaw.us | *Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.* |
| Mike Rothman<br>Law Office of Michael S. Rothman<br>401 E. Jefferson Street, Suite 201<br>Rockville MD 20850<br>mike@mikerothman.com<br>*Counsel for Plaintiff Beyond Systems, Inc.* | |

                                                                                    /s/
                                                                            Ari N. Rothman