UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CONNEXUS CORP., *et al.*, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES JOSEPH WAGNER, *et al.*, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**THIRD-PARTY DEFENDANTS' MOTION TO STRIKE
THIRD-PARTY PLAINTIFFS' AFFIRMATIVE DEFENSE OF
CDA IMMUNITY OR FOR A MORE DEFINITE STATEMENT**

Third-Party Defendants James Joseph Wagner and Hypertouch, Inc., through their undersigned counsel, request that this Court issue an order pursuant to Fed. R. Civ. P. 12(f) striking Third-Party Plaintiffs Connexus' and Hydra's affirmative defense of immunity under the Communications Decency Act ("CDA") as insufficient and impertinent because there is no factual or legal basis for such a defense. Alternatively, pursuant to Fed. R. Civ. P. 12(e), Third-Party Defendants request that this Court issue an order requiring Connexus and Hydra to provide a more definite statement as to the factual and legal basis for their affirmative defense of CDA

immunity.  Plaintiff respectfully refers the Court to the attached memorandum in support of this motion.[1]

Date:  January 6, 2010

                                              Respectfully Submitted,

                                              _____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

*Counsel for Third-Party Defendants James Joseph Wagner and Hypertouch, Inc.*

---

[1] Wagner and Hypertouch requested a meet and confer on this motion on Dec. 30, 2009, in advance of a Dec. 31, 2009 filing deadline.  Third-Party Plaintiffs' counsel stated that more time was needed to confer with Connexus and Hydra.  As a result, the parties stipulated that Third-Party Plaintiffs could have until this week to confer and that Third-Party Plaintiffs would not challenge the timeliness of this motion if it was filed within 24 hours of their meet and confer reply.  Third-Party Plaintiffs responded on Jan. 5, 2010, to state that they would not withdraw their affirmative defense.  *See* Ex. 1 (meet and confer exchange).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| KRAFT FOODS, INC., *et al.* | ) | |
| Defendants. | ) | |
| CONNEXUS CORP., *et al.*, | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| JAMES JOSEPH WAGNER, *et al.*, | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO
STRIKE THIRD-PARTY PLAINTIFFS' AFFIRMATIVE DEFENSE
OF CDA IMMUNITY OR FOR A MORE DEFINITE STATEMENT**

**Background Facts**

Third-Party Defendants James Joseph Wagner ("Wagner") and Hypertouch, Inc. ("Hypertouch") hereby move to strike Third-Party Plaintiffs Connexus' and Hydra's affirmative defense of immunity under the Communications Decency Act ("CDA") as insufficient and impertinent because there is no factual or legal basis for such a defense. Connexus and Hydra are defendants in Case No. 8:08-cv-00409 (PJM)(CBD). Connexus and Hydra are accused of having violated the Maryland and California anti-spam statutes by virtue of having sent 73,943

emails to internet service provider Beyond Systems, Inc. ("BSI") containing false or deceptive commercial advertising content.  Connexus and Hydra are "ad networks" which send or enable the sending of millions, if not billions, of spam emails each year on behalf of the advertisers they contract with.  Connexus and Hydra send the email ads or provide the content, instructions and payment to their "affiliates" through their websites.  On March 6, 2009, Connexus and Hydra, in what appears to be a tactical move vexatiously designed to drive up litigation costs, filed this third-party action against Wagner and another ISP, Hypertouch, Inc., asserting the novel and unsupported theory that Wagner and Hypertouch are liable for indemnification or contribution by virtue of having relayed to BSI the spam deployed by Connexus and Hydra.

Hypertouch moved to dismiss the third-party claim.  On October 20, 2009, this Court denied the motion following oral argument during which Connexus and Hydra alleged that Hypertouch is not an ISP.

On November 16, 2009, Wagner and Hypertouch answered Connexus' and Hydra's third-party complaint and counterclaimed.  On December 7, 2009, Connexus and Hydra answered Wagner and Hypertouch's counterclaim and asserted affirmative defenses, including an affirmative defense of immunity from suit under the CDA.  That defense should be struck.  In order for CDA immunity to apply, the party invoking the immunity must be (1) an "interactive computer service" as defined in the CDA, and (2) must not itself be responsible for the content of the email alleged to be the source of liability, be it, for example, defamation, or in this case, commercial advertising that is illegal because it contains false or deceptive content.  Because Connexus and Hydra are not "interactive computer services" and because they are responsible for the content of the spam emails, they are not entitled to CDA immunity.

**I.     The Court Should Strike Defendants' Affirmative Defense of Immunity as Insufficient and Impertinent**

### A.     The Legal Standard

Pursuant to Rule 12(f), the Court "may strike from a pleading an insufficient defense" on its own initiative or by motion. Fed. R. Civ. P. 12(f). Doing so is not a trivial matter. *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Nonetheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.* (*quoting* 5A Wright & Miller § 1381 (2d ed. 1990)). Indeed, the district courts "have broad discretion" to do so. *Chapman v. Duke Energy Carolinas, LLC*, Civ. No. 09-37RJC, 2009 WL 1652463, at *1 (W.D.N.C. June 11, 2009). Here, Connexus' and Hydra's asserted defense of immunity is not only baseless and impertinent, but also conflates and confuses the issues; accordingly, it should be struck from the pleadings.

### B.     There Is No Factual or Legal Basis for Connexus' and Hydra's Affirmative Defense of Immunity.

As discussed above, in their Answers to Third-Party Defendants' counterclaim, Connexus and Hydra each assert that they are "immune from suit under the federal Communications Decency Act, 42 [sic] U.S.C. § 230." [DE#249 at 2; DE#250 at 2.] However, a review of the CDA and related case law quickly reveals that this defense is wholly inapplicable to Connexus and Hydra.

The immunity from suit which the CDA affords applies only to those who operate or use an "interactive computer service." This, in turn, is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet

3

and such systems operated or services offered by libraries and educational institutions." 47 U.S.C. § 230(f)(2). Even when this definition is read expansively, Connexus and Hydra can not qualify for this form of immunity.

First, Connexus and Hydra are not "interactive computer service[s]" because they do not "provide[] or enable[] computer access by multiple users to a computer server . . . ." *Id.* Although courts have construed this definition broadly, none have read it so broadly as to encompass "ad networks" which send commercial email advertising or which make the content of the advertising, including illegal content in the form of false or deceptive Subject lines and From lines, available for others to send. In *Batzel v. Smith*, for example, the Ninth Circuit noted that numerous courts have found that CDA immunity was available to "a wide range of cyberspace services, not only internet service providers." 333 F.3d 1018, 1030 n.15 (9th Cir. 2003); *see Nemet Chevrolet v. Consumeraffairs.com, Inc.*, Civ. No. 08-2097, 2009 WL 5126224, at 2-3 (4th Cir. Dec. 29, 2009). To be sure, immunity has been extended to online auction websites,[2] online bookstores,[3] newsgroups,[4] dating websites,[5] search engines,[6] companies providing Internet access through computer rentals,[7] and ISPs.[8] There has never been immunity from suit afforded to those who send commercial email advertisements or to those who pay

---

[2] *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 831 (2002).

[3] *Schneider v. Amazon.com*, 31 P.3d 37, 40–41 (Wash. Ct. App. 2001).

[4] *Barrett v. Clark*, 2001 WL 881259, at *9 (Cal. Sup. Ct. 2001).

[5] *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1124 (9th Cir. 2003).

[6] *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006).

[7] *PatentWizard, Inc. v. Kinko's Inc.*, 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001).

[8] *E.g.*, *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*, 206 F.3d 980, 985 (10th Cir. 2000).

others to send such advertising. Tellingly, Connexus and Hydra did not assert CDA immunity as a defense to sending nearly 74,000 false or deceptive emails to BSI.

Second, "§ 230 [of the CDA] limits immunity to those who pass on information 'provided by another information content provider.'" *Batzel*, 333 F.3d at 1031 (*quoting* 47 U.S.C. § 230). In other words, there is no immunity for parties who are themselves "information content providers." *Id.* Thus, there is no factual or legal basis for Connexus and Hydra to claim CDA immunity from suit where they contract with advertisers to create email advertising and then send out millions of the ads or make the advertising available to their affiliates to send.[9] Connexus and Hydra are not an interactive computer services, but even if they were, they are not entitled to immunity because they provide unlawful content or materially contribute to someone else's unlawful content. *Id.*; *see Nemet* Chevrolet, 2009 WL 5126224, at 6. Here, there is no question that both Connexus and Hydra are responsible for the content of the emails which they send or have sent on behalf of their clients: at a minimum, Connexus and Hydra contract with advertisers through "insertion orders" to send email advertising[10]; have employees who work with the advertisers to generate the ad campaigns and employees who interface with the affiliates

---

[9] Ex. 2, Hydra's Resps. to Plaintiff Beyond Systems, Inc.'s First Set of Req. for Admission in what is now Case No. 8:08-cv-00409 (PJM)(CBD) Nos. 1 & 2 (admitting that Hydra and Hydra's affiliates send commercial emails) (hereinafter, "Pl.'s First Set of Req. for Admission"); Ex. 3, Connexus' Resps. to Plaintiff Beyond Systems, Inc.'s First Set of Req. for Admission in what is now Case No. 8:08-cv-00409 (PJM)(CBD) No. 2 (admitting that Connexus' affiliates send commercial emails) (hereinafter, "Pl.'s First Set of Req. for Admission").

[10] Ex. 2, Hydra's Resps. to Pl.'s First Set of Req. for Admission Nos. 3 & 4 (admitting that Hydra's affiliates get paid for sending emails and that Hydra contracts with advertisers in connection with commercial emails); Ex. 3, Connexus' Resps. to Pl.'s First Set of Req. for Admission Nos. 3 & 4 (admitting that Connexus' affiliates get paid for sending emails and that Connexus contracts with advertisers in connection with commercial emails); Ex. 4, Hydra's Am. & Suppl. Resp. to Pl.'s First Set of Interrogs., Nos. 2 and 3 (identifying insertion orders as H00004593-4644); Ex. 5, Connexus' Am. & Suppl. Resp. to Pl.'s First Set of Interrogs., Nos. 2 & 3 (identifying insertion orders as C00000399-723, C00012274-12436, C00012836-12849, C00012852-12855, C00012863-12866).

to recommend campaigns that they believe will be profitable for that affiliate[11]; arrange the content of the ads on their websites for download by affiliates[12]; host many of the HTML creatives (the images in the emails) shown in the ads on their servers[13]; give instructions and suppression files to their affiliates for use with each ad campaign[14]; require affiliates to insert Connexus' and Hydra's own unique identification and campaign numbers into emails[15] to enable them to determine which affiliate to pay for sales or leads generated by the spam, and consequently, what their own cut is of the money owed by the advertiser[16]; and receive warnings from advertisers and reports from third-party services alerting them to possible violations of the federal anti-spam statute CAN-SPAM.[17]

---

[11] Ex. 6. Stafford Dep. at 53:17-54:1; Ex. 7, Steele Dep. at 24:24-25:11; Ex. 8, email from Hydra to affiliate Alchemy Digital Media (showing Hydra advertising the campaigns available on its site to its affiliates and pushing campaign recommendations).

[12] Ex. 2, Hydra's Resps. to Pl.'s First Req. for Admission No 25 (admitting that "approved" Hydra "affiliates go into the Hydra Network and there can choose what ad campaigns they would like to send commercial email for" with regard to "campaigns approved for email distribution"); Ex. 3, Connexus' Resps. to Pl.'s First Req. for Admission No. 25 (admitting that "approved" Connexus "affiliates go into the Hydra Network and there can choose what ad campaigns they would like to send commercial email for" with regard to "campaigns approved for email distribution"); Ex. 6, Stafford Dep. at 53:9-54:1; Ex. 9, Gadde Dep. at 49:1-50:12.

[13] Ex. 10, Krelle Dep. at 32:15-36:22; Ex. 9, Gadde Dep. at 49:3-10.

[14] Ex. 10, Krelle Dep. at 78:6-24; Ex. 11, Nugent Dep. at 43:13-45:4.

[15] Ex. 2, Hydra's Resps. to Pl.'s First Req. for Admission Nos. 5 & 6 (admitting that Hydra assigns an identification number to each affiliate and advertiser); Ex. 3, Connexus' Resps. to Pl.'s First Req. for Admission Nos. 5 & 6 (admitting that Connexus assigns an identification number to each affiliate and advertiser).

[16] Ex. 12, Whitridge Dep. at 35:17-36:8; Ex. 9, Gadde Dep. at 43:19-46:7.

[17] Ex. 2, Hydra's Resp. to Pl.'s First Req. for Admission No. 156 & 190 (admitting that "Hydra receives reports from third party vendors notifying it of potential violations of CAN-SPAM by its affiliates" and that Hydra "ha[s] been warned by advertisers because of complaints regarding emails [its] affiliate sent"); Ex. 3, Connexus' Resp. to Pl.'s First Req. for Admission No. 58 (admitting that "Connexus receives reports from third party vendors notifying it of potential violations of CAN-SPAM by its affiliates"); Ex. 6, Stafford Dep. at 43:1-46:22; Ex. 11, Nugent Dep. at 26:2-27:14.

Thus, Connexus and Hydra are not passively routing emails; Connexus and Hydra provide creative material and ad copy, track the emails[18], insert image server information into the ads, provide suppression lists of email addresses, and receive payment and pay others based on the sales or leads generated by the email ads.[19] *In fact, Connexus' and Hydra's business is the content of the emails.* Connexus and Hydra contract with advertisers to provide creative content of emails to affiliates.[20] Hydra provides its affiliates with the exact HTML content of email advertisements for the campaigns they promote, and host the associated images on their own image servers.[21] Further, Hydra provides Subject lines and From lines – including content alleged to be false and deceptive – for use in the ads[22], as well as providing tracking links, publisher URLs and opt-out URLs for email advertisements which track through Hydra's own domains.[23] Similarly, spreadsheets of campaign data produced by Connexus demonstrate that they too provide the exact HTML content, Subject lines, From lines, and requisite links for email

---

[18] Ex. 2, Hydra's Resps. to Pl.'s First Req. for Admission Nos. 13, 147-153, 209 (admitting that Hydra uses "tracking pixels that report information from the advertiser's website back to" Hydra and tracks and records the emails through information inserted in the email links); Ex. 3, Connexus' Resps. to Pl.'s First Req. for Admissions 13 & 14 (admitting that Connexus uses a tracking pixel, and information relating to which is recorded by Connexus's server).

[19] Ex. 2, Hydra's Resps. to Pl.'s First Req. for Admission Nos. 3 & 4 (*supra* note 10); Ex. 3, Connexus' Resps. to Pl.'s First Req. for Admission Nos. 3 & 4 (*supra* note 10); Ex. 4, Hydra's Am. & Suppl. Resp. to Pl.'s First Set of Interrogs., No. 3 (identifying payment records as H00000939); Ex. 5, Connexus' Am. & Suppl. Resp. to Pl.'s First Set of Interrogs., No. 3 (identifying payment records as C00000912-1484); Ex. 6, Stafford Dep. at 53:9-54:1; Ex. 9, Gadde Dep. at 43:19-47:3, 49:1-50:12; Ex. 10, Krelle Dep. at 32:19-36:22, 78:6-24; Ex. 12, Whitridge Dep. at 35:17-36:8.

[20] Ex. 13, sample insertion order between Hydra and an advertiser at H00004593-4595; Ex. 14, sample insertion order between Connexus and an advertiser at C00000400-401.

[21] Ex. 15, PDF rendering of sample Hydra HTML creative from H10881 and associated source code (demonstrating Hydra's hosting of images).

[22] Ex. 6, Stafford dep. at 56:24-57:4.

[23] Ex. 16, sample Hydra campaign database page at H00004645-4647.

advertisements to their affiliates.[24]  As the Court in *Doe v. City of New York* rightly found, parties are foreclosed from seeking shelter under the CDA immunity provisions when they add their own content because they "cease[] to be a passive host of third-party information." 583 F. Supp. 2d 444, 449 (S.D.N.Y. 2008).  Given their active roles in encouraging commercial advertising, including the spam at issue, Connexus and Hydra would not have immunity even if they were interactive service providers.

Further still, as a policy matter, immunity in this situation makes no sense.  The whole point of CDA immunity is to shield passive conduits of information, such as ISPs and Internet users, from lawsuits based on the content of the emails sent by others over their networks, and to protect those who take means to restrict access to offensive or potentially offensive materials. *See* 47 U.S.C. § 230(c).  Indeed, "[t]he purpose of this statutory immunity is not difficult to discern." *Blumenthal v. Drudge*, 992 F. Supp. 44, 50 (D.D.C. 1998) (*quoting Zeran v. America Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997)).

> Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

*Id.*  To interpret CDA immunity to shield ad networks would be to ignore Congress' core interest in protecting those who passively route the speech of others and would immunize spammers from suit simply because they are "users" of the Internet when they send their spam emails. Such an argument is plainly wrong.

---

[24] Ex. 17, extracted entry from Connexus campaign spreadsheet at C12881.xls.

Thus, there is no factual or legal basis for Connexus' and Hydra's affirmative defense of CDA immunity. In addition, litigating this issue has the potential to create an irrelevant sideshow at trial, inevitably causing confusion with respect to legitimate issues: *e.g.*, whether Hypertouch itself, as a bonafide ISP, can rely on the CDA for immunity from Connexus' and Hydra's baseless claims for indemnification or contribution. Connexus and Hydra have contended that Hypertouch is not an ISP and to permit them to confuse the issue further by forcing Wagner and Hypertouch to have to take discovery on and expend expert witness costs to address Connexus' and Hydra's theory of CDA immunity is not just and would undeniably cause Wagner and Hypertouch prejudice. *See Dawson v. Winter*, Civ. No. 06-2885, 2007 WL 1610905, at *2 (D. Md. May 21, 2007) ("[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party.") (*quoting Simaan, Inc. v. BP Prods. N. Am., Inc.*, 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005)). This alone is sufficient to strike Connexus and Hydra's immunity defense.

The facts of this matter make clear that Connexus and Hydra's claim of immunity "would not [] constitute a valid defense to the action [] and should be deleted." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Accordingly, Third-Party Defendants respectfully ask the Court, in the interest of judicial economy and conserving the resources of the parties for issues that are actually central to this matter, to exercise its broad discretion and strike this ungrounded defense from the pleadings.

II.  **In the Alternative, Connexus and Hydra Should Be Required to Provide a More Definite Statement as to the Bases of Their Affirmative Defense of Immunity.**

It is appropriate for this Court should strike the affirmative defense of CDA immunity for the reasons stated above. However, Third-Party Defendants alternatively request a more definite statement because such an explanation would serve the purposes of the Federal Rules in adequately apprising another party of the substance of a claim or defense, and serve the Court's interests in economizing resources.

Pursuant to Rule 12(e), "a party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). To do so, the moving party "must point out the defects complained of and the details desired." *Id.*; *see also Haburn v. Kilby*, Civ. No. 04-00336, 2008 WL 1944155, at *1 (W.D. Va. May 2, 2008) (setting forth the requirements to move for a more definite statement with respect to an affirmative defense). Here, as detailed above, Connexus and Hydra have asserted the affirmative defense of CDA immunity, without specifying any factual or legal basis for such immunity. This asserted defense is not only vague and ambiguous, but as shown above is contrary to the law it relies upon, and in this instance, ordering a more definite statement serves the purposes of the Federal Rules. *See, e.g.*, *Martek Biosciences Corp. v. Nutrinova Inc.*, Civ. No. 03-896, 2004 WL 2297870, at *5 (D. Del. Oct. 8, 2004) (ordering defendant provide a more definite statement as to an affirmative defense in lieu of striking the pleadings).

Accordingly, should the Court decide not to strike this defense, Third-Party Defendants are entitled to a more definite statement from Connexus and Hydra as to both the facts supporting their defense of immunity and the legal theories on which they will rely. *See, e.g.*, *Taylor v. Northwest Educ. Loan Ass'n*, Civ No. 09-235, 2009 WL 3297564, at *1 (W.D.N.C. Oct. 13, 2009) (granting motion for more definite statement where there was no "clear

expression of the factual and legal grounds" relied upon).  If Connexus and Hydra wish to rely on what facially appears to be an unavailable defense, they should be required to further explain the basis of this defense, an exercise that will save everyone time and money.

## Conclusion

For the foregoing reasons, the Court should grant Third-Party Defendants' motion to strike Connexus' and Hydra's affirmative defense of CDA immunity as insufficient and impertinent because there is no factual or legal basis for such a defense.  Alternatively, Third-Party Defendants request that this Court issue an order requiring Connexus and Hydra provide a more definite statement as to the factual and legal basis for their affirmative defense of CDA immunity which would allow Third-Party Defendants to properly rebut this defense.

Respectfully Submitted,

_____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

*Counsel for Third-Party Defendants James Joseph Wagner and Hypertouch, Inc.*

January 6, 2010

# **TABLE OF EXHIBITS**

1. Meet and Confer email exchange between counsel for Wagner and Hypertouch and counsel for Connexus Corp. and Hydra LLC

2. Excerpts of Defendant Hydra LLC's Responses to Plaintiff's First Set of Requests for Admission in *Beyond Systems, Inc. v. Connexus Corp.*, et al., now Case No. 8:08-cv-00409 (PJM)(CBD)

3. Excerpts of Defendant Connexus Corp.'s Responses to Plaintiff's First Set of Requests for Admission in *Beyond Systems, Inc. v. Connexus Corp.*, et al., now Case No. 8:08-cv-00409 (PJM)(CBD)

4. Excerpts of Defendant Hydra LLC's Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories in *Beyond Systems, Inc. v. Connexus Corp.*, et al., now Case No. 8:08-cv-00409 (PJM)(CBD)

5. Excerpts of Defendant Connexus Corp.'s Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories in *Beyond Systems, Inc. v. Connexus Corp.*, et al., now Case No. 8:08-cv-00409 (PJM)(CBD)

6. Excerpts of September 10, 2008 Deposition of John Stafford

7. Excerpts of September 18, 2008 Deposition of Scott Steele

8. Email from Hydra to Hydra affiliate Alchemy Digital Media

9. Excerpts of November 14, 2008 Deposition of Maya Gadde

10. Excerpts of September 9, 2008 Deposition of Chris Krelle

11. Excerpts of June 12, 2009 Deposition of Karen Nugent

12. Excerpts of September 17, 2008 Deposition of Abby Whitridge

13. Hydra Insertion Order at H00004593-4595 (UNDER SEAL)

14. Vendare (Connexus) Insertion Order at C00000400-401 (UNDER SEAL)

15. Sample Hydra HTML creative and associated source code at H10881

16. Sample Hydra Network campaign entry at H00004645-4647 (UNDER SEAL)

17. Extract of Connexus spreadsheet at C12881.xls (UNDER SEAL)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January 2010, the foregoing *Third-Party Defendants' Motion to Strike Third-Party Plaintiffs' Affirmative Defense of CDA Immunity or for a More Definite Statement* was filed electronically via the Court's CM/ECF system, and served electronically on the below-named parties via the Court's electronic notification system:

| | |
|---|---|
| Barry J. Reingold (USDC-MD Bar No. 06490)<br>John M. Devaney (*Pro Hac Vice*)<br>John K. Roche (*Pro Hac Vice*)<br>PERKINS COIE LLP<br>607 14th Street NW, Suite 800<br>Washington DC 20005-2003<br>202-434-1613 (Telephone)<br>202-434-1690 (Facsimile)<br>jroche@perkinscoie.com<br>breingold@perkinscoie.com<br>jdevaney@perkinscoie.com | J. Douglas Baldridge<br>Lisa Jose Fales<br>Ari N. Rothman<br>VENABLE LLP<br>575 7th Street NW<br>Washington, DC 20004<br>(202) 344-4000 (Telephone)<br>(202) 344-8300 (Facsimile)<br>jbaldridge@venable.com<br>ljfales@venable.com<br>anrothman@venable.com |
| Darrell J. Graham<br>Law Offices of Darrell J. Graham, LLC<br>53 W. Jackson Boulevard<br>Suite 1334<br>Chicago, IL 60604 | *Counsel for Defendants Connexus Corp. and Hydra LLC* |
| *Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.* | |

/s/ Thomas M. Barba

———————————————————
Thomas M. Barba