UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| KRAFT FOODS, INC., *et al.* | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
TO COMPEL THE DEPOSITION OF DR. FREDERICK B. COHEN,
MATERIALS RELIED ON, AND FOR SANCTIONS**

Plaintiff Beyond Systems, Inc. ("BSI") respectfully submits this Reply to Defendants Connexus Corp.'s ("Connexus") and Hydra LLC's ("Hydra") (collectively, "Defendants") Opposition to Plaintiff's motion to compel the completion of their expert Dr. Cohen's deposition and the materials on which he relied, and for sanctions.

**INTRODUCTION**

As has become routine, Defendants Connexus and Hydra have mischaracterized Plaintiff's arguments, responded with aspersions rather than substance, and have stalled the discovery process based on nothing other than their own conception of what is reasonable. The tenor and tone of Defendants' opposition to this motion speak for themselves and serve only to underscore Plaintiff's position: that Defendants' obstructionist tactics and evasion of their clear obligations under the Federal Rules justify the relief Plaintiff seeks. Indeed, Defendants have raised a host of issues and ad hominem attacks that are not relevant to resolution of Plaintiff's motion. Therefore, this Reply responds only to the issues on which this motion necessarily

- 2 -

turns: Plaintiff respectfully submits that (1) completion of Dr. Cohen's deposition – Defendants' principal expert in this matter – is necessary, reasonable, and can be completed expeditiously, likely in two days; (2) Defendants have a plain obligation under the Federal Rules to disclose the materials on which Dr. Cohen relied; (3) preventing completion of Dr. Cohen's deposition on the basis that Defendants' believe it is "unreasonable" is a position that lacks substance and merit; and (4) Plaintiff should not bear the burden of the costs of this unnecessary judicial intervention.

## ARGUMENT

### I.     Completion of Dr. Cohen's Deposition

Contrary to Defendants' characterization, Plaintiff does not seek an "unlimited" number of days to depose Dr. Cohen. Defendants' continued assertion of facts that are explicitly contradicted by the communications between the parties and by their briefs to this Court should not be countenanced. After an eight-day delay, on November 18, 2009, Defendants rejected Plaintiff's request "*for two additional days*" as "unreasonable." Mot. to Compel, Ex. 2. Then, in BSI's opening brief, Plaintiff requested *two days* of deposition in response to Defendants' demand that Plaintiff get a court order to complete the deposition. *See id.* ("[Y]ou will need to get a court order for the *two additional days* with Cohen . . . .") (emphasis added). Defendants' blatant and repeated misstatements throughout their opposition are just another instance of their obstructionist tactics when it comes to discovery and underscores how little stock this Court should put in their representations. *See* Opp. at 1–2, 5–7, 11–13 (characterizing, often in bold, underlined and italicized text, Plaintiff's motion as seeking an "unlimited" amount of days to depose Dr. Cohen).

In addition, as discussed in Plaintiff's moving papers, it appears Defendants knew going into Day 4 of the deposition that they would squirrel away Dr. Cohen, as shown by their attempt

to interrupt BSI's direct questioning of Dr. Cohen in order to ask re-direct questions, hoping to repair his testimony before premeditatively cutting off Plaintiff. Mot. to Compel at 3; Ex. 1, Cohen Dep. 1170:16-18 ("MR. ROTHMAN: I indicated off the record during the last break that I had some questions that I felt would be appropriate to ask this witness now."). Defendants' tactics are manifestly unfair in light of the multiple days of deposition Plaintiff has afforded of its own experts (*see* Mot. to Compel at note 3), Dr. Cohen's 1,224 pages of expert reports, their sequestering of Dr. Cohen while at the same time relying on him in support of their summary judgment motion (*see* DE #257, Defs.' Mot. for Summ. J. at 7, 8, 28) – and their probable reliance on him in opposition to Plaintiff's response.

Defendants remarkably assert that various issues such as what systems Dr. Cohen runs, what policies he follows for filtering and spamming, whether ISPs have a duty to preserve evidence, etc. (Opp. at 8), are not relevant to the issues here and were improper questioning as beyond the proper scope of deposition. However, Dr. Cohen opined *on all of these issues* and proclaimed himself an expert on "[e]verything and anything" in his 8-volume report. Mot. to Compel, Ex. 4. Plaintiff is happy to submit all of Dr. Cohen's reports for review, but trusts the Court does not want over 1,200 pages uploaded.[1] Defendants' argument on this point simply illustrates that Defendants do not understand the purpose and scope of expert discovery.

At bottom, Dr. Cohen provided dozens of opinions on both legal and technical issues, and spent hundreds of pages asserting that Plaintiff has committed unlawful acts – everything from "spoliation" to "fraud" to "fabrication," including suggesting that BSI could have created the

---

[1] In addition, Plaintiff is happy to submit the transcripts of Dr. Cohen's depositions to debunk Defendants' argument that the same questions were repeatedly and improperly posed to Dr. Cohen. Opp. at 7-11. This is nothing more than a thinly-veiled personal attack on counsel which BSI will not dignify. The Court can readily see from the transcript that where questions were repeatedly posed it was because of Dr. Cohen's blatant obfuscation, filibustering and/or counsel's obstruction.

emails at issue out of "whole cloth." *E.g.*, Ex. 2, Cohen Dep. 694:17-20 ("It could be that Plaintiff fabricated [the emails] from whole cloth."); Ex. 3, Cohen Item C Report at p. 76 & Cohen Item H Report at p. 80 ("Item C [H] includes email-like sequences that are inconsistent with ever having been sent."). Some of these opinions are the basis of Defendants' motion for summary judgment, concerning, *inter alia*, consent to receive the emails versus blocking emails, alleged duplication of emails, and whether there can be falsity in domain registrations. Plaintiff, therefore, is entitled to test Dr. Cohen's theories and statements which are clearly "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Accordingly, the Court is well within its discretion to order the completion of Dr. Cohen's deposition.

## II.    Plaintiff Is Entitled to the Materials on Which Dr. Cohen Relied

The Federal Rules are clear: a party must produce the "data or other information considered" by an expert. Fed. R. Civ. P. 26(a)(2)(B)(ii). Defendants' hair-splitting semantics do not change their obligation to produce documents, including customized scripts, on which Dr. Cohen relied in forming his expert opinions. Unlike the cases Defendants cite in opposition, the scripts at issue in this matter were not mere aids used to analyze the spam emails at issue. *See* Mot. to Compel, Ex. 7. Rather, the output of these scripts undergirds Dr. Cohen's expert opinions. *Id.* Defendants fail to appreciate that a customized script is significantly different than a commercially-available product, one fact that undermines their case law.[2] Dr. Cohen understood that his tools were to be produced for purposes of verifying the results of his analyses on the original emails at issue ("Items C and H"):

---

[2] BSI pointed out to Defendants' counsel that there is an appreciable difference between a customized script and a commercially-available product, such as Eudora, in responding to the assertion that BSI's request for the tools Dr. Cohen relied on was "overbroad." Mot. to Compel, Ex. 8.

> Q: First of all, did you customize Hypermail.pl for purposes of this case?
> A. So my understanding is that you were provided a copy of this file solely for the purposes of your verifying that when this program is run on Item C and Item H and other items that I've described in my reports, that it produces the results that I indicated that it produces. So it's my view that your use of it for any other purpose goes beyond the scope of the disclosure. (Ex. 1, Cohen Dep. 907:16-25.)

Yet, rather than producing his set of tools, he instead offered that Plaintiff's experts should verify his results without the benefit of access to the same custom tools that produced his results:

> So as a matter of your ability to verify my analytical results, it's my belief that it would be in your best interest to have your experts do so independently and not try to rely on my tools but rather make certain on their own. . . . (Ex. 1, Cohen Dep. 909:20-24.)
>
> So your experts can independently, regardless of whether or not my tools worked in any particular way, verify and confirm or refute any results that I've presented. (Ex. 1, Cohen Dep. 912:16-19.)

Further, although he claimed in deposition and in his expert reports (*see* Mot. to Compel, Ex. 7 at page 41 of Item C and Item H reports) that *his* tool had been peer reviewed, he later admitted that *his* tool was, in fact, not peer reviewed:

> This script is a script that I have used for other purposes previously. In fact, as I indicated, it has been -- the use of this script and the results have been published. . . . (Ex. 1, Cohen Dep. 911:16-19.)
>
> Q. Has your customized script itself been peer reviewed?
> A. No. The specific tool that I used has not been peer reviewed.
> (Ex. 1, Cohen Dep. 912:1-4.)

Defendants rely on *Snoznik v. Jeld-Wen, Inc.* for the proposition that Dr. Cohen does not have to produce the scripts on which he relied to form his expert opinions. *Snoznik* is easily distinguishable. At issue in *Snoznik* were Microsoft Excel templates which the expert at issue developed solely for the purposes of efficiency and "productivity in preparing reports." 259

- 5 -

F.R.D. 217, 220 (W.D.N.C. 2009). These templates, in other words, merely saved the expert the effort of calculating various types of benefits based on lost earnings, fringe benefits, stock options, etc., in personal injury cases. *Id.* At their very essence, the templates at issue were used as a matter of convenience.

Here, in contrast, these scripts parsed and analyzed the tens of thousands of emails on which this lawsuit is based and Dr. Cohen relied on the scripts to form an opinion bearing on a central issue: whether many of the emails can properly be attributed to Defendants. *See, e.g.*, Mot. to Compel, Ex. 7 (excerpt of expert report detailing fact that customized scripts were used to produce critical elements of analyses). There can be no question, therefore, that Dr. Cohen's reliance on these scripts, together with their importance, gave rise to Defendants' clear obligation under the Federal Rules to disclose these materials to Plaintiff.

In addition, Defendants' reliance on *Earp v. Peters* is similarly unavailing. Civ. No. 07-31, 2009 WL 1444707 (W.D.N.C. May 21, 2009). Defendants misinterpret *Earp* to stand for the general proposition that experts are exempt from production of proprietary software programs. *See* Opp. at 14. In *Earp*, the plaintiff sought production of a copyrighted computer animation program that defendants had used to recreate the scene of an accident. The court found that the defendants could not be obligated to make a "copy" of a copyrighted computer program so that plaintiff could recreate the computer animation defendants had generated. *Id.* at *2. In short, at issue in *Earp* was production of a commercially-available copyrighted computer animation program; the defendant's expert added nothing of his own to the program, made no modifications, and was a mere user – not creator or modifier – of the program in question. *Id.* As such, plaintiff could have acquired the computer program at its own expense, rather than seek production from defendant.

Here, by contrast, though Dr. Cohen has used some publicly available scripts as the foundation of this tool, he has made modifications to these scripts so that they can run on thousands of spam emails and produce *particularized* results. As such, Plaintiff is entitled to the production of Dr. Cohen's scripts.

Dr. Cohen's own assertion that his scripts are "valuable intellectual property" to him (*see* Mot. to Compel at 6-7 and Ex. 8) only underscores that they are different in kind from an off-the-shelf product. Defendants' concern that disclosure of these scripts would somehow harm Dr. Cohen's proprietary interest in his scripts is unfounded. First, as Defendants acknowledge, there is a protective order in place that prevents disclosure of whatever trade secrets may come out in the course of discovery. Second, as set forth in Plaintiff's opening motion, this position is inconsistent with Dr. Cohen's statements that his scripts "have been tested with hundreds of thousands of emails, have been used in work that resulted in peer reviewed articles, and have been found generally reliable. . . ." Mot. to Compel, Ex. 7. If Dr. Cohen's scripts have been extensively tested, reviewed, and were used in reputable publications, it is unclear why he will not now disclose such scripts to Plaintiff for limited testing under a protective order.

In short, Defendants should have disclosed these scripts based on their plain and continuing obligation to do so under Federal Rule 26. Defendants' tactics continue to cause unnecessary and unfair delay and are wasteful of judicial and party resources. As such, they are sanctionable.

### III.    Federal Rule 37 Permits Sanctions for Failure to Disclose Expert Materials

Defendants argue that Rule 37 sanctions do not apply. Their argument mischaracterizes – once again – the relief Plaintiff seeks, and it is contingent upon the Court finding that Dr. Cohen did not have an obligation under Rule 26 to disclose materials he relied on. *See* Opp. at 12

("FRCP 37(c) does not apply to expert depositions . . . .") As Defendants concede, however, Rule 37 sanctions apply to "disclosures made under FRCP 26(a) and FRCP 26(e)." *Id.* Plaintiff, in fact, agrees: these are precisely the sort of sanctions that Plaintiff seeks.

Assuming the Defendants were obligated to disclose Dr. Cohen's scripts, the *Southern State* factors determine whether nondisclosure was prejudicial and, therefore, whether sanctions are appropriate. *Southern States Rack & Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Defendants, however, spend little energy on analyzing the *Southern States* factors and make some outrageous claims that deserve rebuttal.

First, Defendants argue that there can be no surprise because Plaintiff has withheld similar information. Even if true – which it is not – it does not logically follow that Defendants' failure to disclose data and materials central to their principal expert's analysis would not surprise Plaintiff. Indeed, the "belated and surprising disclosure of important [] evidence is not harmless." *Kimpel v. Bd. of County Comm'rs*, Civ. No. 06-0097, 2009 WL 1890092, at *5–6 (D. Md. Mar. 25, 2009).

Second, as for Defendants' cure of any surprise, they neglect to mention that when they did disclose one of Dr. Cohen's 700-line scripts, they did so at 11:50 p.m. on the eve of the last day of Dr. Cohen's partial deposition. Mot. to Compel, Ex. 8. This had the effect of ensuring that Plaintiff's experts could not analyze the script and that Plaintiff could not adequately question Dr. Cohen about the script. Here, amazingly, Defendants appear to actually be acknowledging their own "belated and surprising disclosure of important [] evidence," but hope to excuse it as harmless. *Id.* The Court should not credit this argument – the production was late, contained important information, and Defendants appear to have *knowingly withheld* the

production of the script.  *See* Mot. to Compel at 6-7 ("If I am understanding you correctly, the script you are requesting was not provided for at least two reasons . . . .")

Third, as for the disruption of trial, Defendants simply turn a blind eye toward the obvious fact that testing Dr. Cohen's scripts at trial would be costly and has the ability to stall proceedings.  To do during trial what should have been done pre-trial, away from the jury, will inevitably create an unnecessary and expensive sideshow.

Fourth, Defendants do not – and cannot – meet Plaintiff's argument that the scripts are central to Dr. Cohen's findings.  Their very silence on this point and prior statements should amount to a concession of this factor as well as this motion.  *See, e.g.*, Mot. to Compel, Ex. 7.

Fifth, the only proffered explanation for Defendants' failure to disclose Dr. Cohen's scripts is that they believed they were not evidence.  For the reasons set forth above, this argument has no merit because Defendants were well aware of the centrality of these scripts to Dr. Cohen's findings.

Accordingly, because Defendants had a clear obligation to disclose Dr. Cohen's scripts and failed to do so, the Court should compel the production or preclude Defendants from relying on evidence derived from Dr. Cohen as they have, for example, in their summary judgment motion on file.

## IV.   Connexus and Hydra Should Bear the Costs of This Motion

For the reasons set forth above and in Plaintiff's original motion, bringing this dispute before the Court would have been unnecessary except for Defendants' insistence that Plaintiff get a court order to complete the deposition of Dr. Cohen and to obtain expert materials which the Federal Rules require Defendants to produce.  Plaintiff should not have to pay for the Court to order Defendants to do what the Federal Rules clearly require of them.  In situations

where, as here, a party is forced to make an unnecessary motion to compel compliance with clear discovery obligations, the Federal Rules provide that "the court . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). *See also* Mot. to Compel at 16 (setting forth case law). Accordingly, Plaintiff respectfully requests Defendants to bear the costs of this motion.

Finally, with regard to Defendants' outrageous requests for alternative relief (Opp. at 13, 18) and that *Plaintiff pay* to take further discovery of Dr. Cohen, *circumscribed by Defendants*, as a remedy for *Defendants' wrongful conduct*, underscores their remarkable disrespect for the rules of discovery. Plaintiff opposes this "alternative relief" for the reasons stated herein and in its opening motion, and requests that the Court hold oral argument should it consider granting such relief.

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiff's motion and memorandum in support thereof, Plaintiff's motion to compel the completion of Dr. Cohen's deposition, production of the materials he relied on, and for sanctions, should be granted.

Date: January 7, 2010                         Respectfully Submitted,

                                                                     /s/
                                     Thomas M. Barba (US DC-MD Bar No. 28487)
                                     John J. Duffy (US DC-MD Bar No. 28613)
                                     Jennie L. Kneedler (US DC-MD Bar No. 28617)
                                     STEPTOE & JOHNSON LLP
                                     1330 Connecticut Ave NW
                                     Washington DC 20036
                                     T: 202-429-3000
                                     F: 202-429-3902
                                     tbarba@steptoe.com
                                     jduffy@steptoe.com
                                     jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY 10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD 20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January 2010, the foregoing *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion to Compel the Deposition of Dr. Frederick B. Cohen, Materials Relied On, and for Sanctions* was filed electronically via the Court's CM/ECF system, and served electronically on the below-named parties via the Court's electronic notification system:

| | |
|---|---|
| Barry J. Reingold (USDC-MD Bar No. 06490) <br> John M. Devaney (*Pro Hac Vice*) <br> John K. Roche (*Pro Hac Vice*) <br> PERKINS COIE LLP <br> 607 14th Street NW, Suite 800 <br> Washington DC 20005-2003 <br> 202-434-1613 (Telephone) <br> 202-434-1690 (Facsimile) <br> jroche@perkinscoie.com <br> breingold@perkinscoie.com <br> jdevaney@perkinscoie.com | J. Douglas Baldridge <br> Lisa Jose Fales <br> Ari N. Rothman <br> VENABLE LLP <br> 575 7th Street NW <br> Washington, DC 20004 <br> (202) 344-4000 (Telephone) <br> (202) 344-8300 (Facsimile) <br> jbaldridge@venable.com <br> ljfales@venable.com <br> anrothman@venable.com |
| Darrell J. Graham <br> Law Offices of Darrell J. Graham, LLC <br> 53 W. Jackson Boulevard <br> Suite 1334 <br> Chicago, IL 60604 | *Counsel for Defendants Connexus Corp. and Hydra LLC* |

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

/s/ Thomas M. Barba

Thomas M. Barba