UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER
ENFORCING THIS COURT'S DECEMBER 7, 2009 RULING
REGARDING EMAILS IN THIS CASE AND FOR SANCTIONS**

Plaintiff Beyond Systems, Inc. ("BSI") respectfully submits this Reply in support of its Motion for an order enforcing this Court's December 7, 2009 ruling, and for sanctions ("Mot. to Enforce") against Defendants for their refusal to comply with their discovery obligations.

At the present time, Hydra LLC's ("Hydra") counsel, Venable LLP, has a pending motion to withdraw from its representation of Hydra based on Hydra's alleged failure to pay its fees. Hydra has apparently sold its assets to a new entity, Hydra Group LLC, run by the same principal, and Hydra is seeking to shed its legal and financial obligations. As a result, Plaintiff requests that this Court grant its motion as expeditiously as possible, before Hydra takes additional actions to evade its legal obligations.

**INTRODUCTION**

On December 7, 2009, Judge Day denied Defendants' Rule 37(c) motion to exclude 20,331 Hydra emails that Plaintiff had timely added to the case – representing up to $40 million in additional liability for Hydra. On December 8, 2009, BSI sent a letter to Defendants' counsel

requesting that Defendants produce, by January 6, 2010, the discovery that it had been withholding for over a year.  On December 16, 2009, BSI sent a follow-up letter concerning (1) Connexus' and Hydra's months-overdue production of creatives (HTML images) which the Court has already compelled [DE# 190], and (2) the discovery Hydra owed to BSI concerning the 20,331 Hydra emails.  [Mot. to Enforce Ex. 1].  To assist Hydra in assembling responsive materials, BSI extracted the campaign IDs and affiliate IDs appearing in the 20,331 Hydra emails and included them as an exhibit to that letter.  On December 21, 2009, Defendants stated their refusal to produce any materials in response to the Court's December 7 Order, including as to the 20,331 Hydra emails.  [Mot. to Enforce Ex. 2].

During this same period of time, while Hydra was again stonewalling discovery, it was also selling its assets and seeking to dump its obligations.  In reverse chronological order:  on January 22, 2010, Venable moved to withdraw from its representation of Hydra.  [DE# 280]. Venable asserted as the basis for its withdrawal that Hydra had stopped paying its bills and owed Venable $486,531.72.  *Id*. at 2.  Venable stated it had contacted Hydra "in December 2009" and was told that a receiver had been appointed for Hydra and had sold the assets from CEO Zac Brandenberg's old company, Hydra LLC, to his new company, Hydra Group LLC.[1]  *Id*.  The motion also stated that the new Hydra entity would not assume any debt owed to Venable.  *Id*. Venable then stated that the receiver confirmed that the gutted shell of Hydra has no assets.[2]  *Id*.

---

[1] Shortly before the motion to withdraw, on January 19, "new Hydra" put out a press release stating that it had "purchased the assets of Hydra LLC, including the Hydra Network, one of the largest performance-based ad networks in the internet advertising industry.  A newly formed entity comprised of a group of leading edge, online marketing focused investors, Hydra Group also includes original Hydra founder and CEO Zac Brandenberg."  As a result, new Hydra is now running old Hydra's same affiliate network, and is conducting the same business through the same website, hydranetwork.com.

[2] Hydra currently states on its website that it "earned a position on the prestigious Inc. 500 list for the third consecutive year.  Hydra posted three-year revenue growth of 579.1% and is one of only a few dozen firms to ever have earned three consecutive spots on the Inc. 500 list."  Hydra showed revenue of $108.6 million on the *Inc*. 2009 list.  http://www.inc.com/inc5000/2009/the-full-list.html?o=400.

Venable's motion was the first time Plaintiff was given notice that Hydra had gone into receivership, had become Hydra Group LLC, and had left its former self with no assets.

Shortly before that, on January 15, 2010, Venable had sent a letter to Hydra giving notice of Venable's intent to withdraw as Hydra's counsel. [DE# 280-2]. Earlier that same week, on January 11, Venable had filed its Opposition to Plaintiff's instant motion. [DE# 274].

On December 10, 2009, three days after Judge Day allowed the 20,331 Hydra emails into this case, the sale of Hydra was approved.

## I.     ARGUMENT

Plaintiff trusts that the Court knows what it ordered in its well-considered ruling. Judge Day did not need to additionally and redundantly order discovery since producing discovery on emails at issue in the case was already required of Defendants under the Federal Rules and the Local Rules. Following Judge Day's Order, Defendants have continued to maintain that they have no obligation to produce discovery on the emails, and now take the position that since the Court did not utter the magic words "discovery is ordered" they are not required to comply with these *already-outstanding* discovery obligations. Hydra's counsel calls Plaintiff's motion "ridiculous" and its arguments "ludicrous," "absurd," "frivolous," and "outlandish," Opp. at 4, 5, 7, 10, but his heated rhetoric cannot disguise the logical flaws in its argument. The 20,331 emails were added to the case by Plaintiff's timely production, and Hydra's discovery obligation attached at that time, more than a year ago as to certain of these emails. Hydra refused to comply with that obligation based on the pendency of its Rule 37(c) motion, which refusal was improper. When Hydra's Rule 37(c) motion to exclude the emails was denied, it no longer had any basis for refusing to comply with its preexisting obligations. Hydra's contention that discovery – wrongfully withheld for over a year – is not mandated by force of Rules and the

substance of this Court's ruling itself, is remarkable and unsupportable, and this Court should reject their baseless protestations.

### A. Defendants Are Withholding Discovery Clearly Relevant To Issues On Which They Seek Summary Judgment, To Their Affirmative Defenses, And Which Would Support An Offensive Motion For Summary Judgment.

True to form, Connexus and Hydra misrepresent the facts and treat this litigation as a one-way street. First, they disingenuously state that they notified BSI that they "would move for summary judgment on at least the issues of standing and preemption," and therefore, "any discovery concerning the emails would be irrelevant to the issues in the motion." Opp. at 3. However, while Defendants did say that, they moved for summary judgment on additional issues – including falsity, claiming BSI cannot show "material falsity" or falsity sufficient to survive preemption. *Yet, they are withholding evidence of the falsity which they claim BSI cannot show*. Defendants also challenged the authenticity of every email BSI has produced. (Mot. for Summ. J. at 8-9). *Yet, they are withholding evidence of the authenticity which they claim BSI cannot show*. At the least, they are withholding (1) the identities of the senders which are falsely portrayed in the emails, (2) evidence of deceptive subject lines as shown in records from their campaign database, and (3) creative content, domain information, and payment records evidencing their complicity with the advertisers and affiliates. Such documents clearly relate to BSI's defenses to summary judgment.

Second, Defendants disregard that the discovery they are withholding is relevant to Plaintiff's potential motion for summary judgment concerning, *inter alia*, attribution of the emails and the falsity contained therein. Both of those issues would be supported, at the least, by the discovery identified in items 1-3 of the last paragraph. For that reason, Defendants want to stay discovery now that they have filed their summary judgment motion, but before they would

be compelled to produce discovery to which Plaintiff is entitled and that would aid its summary judgment motion.

### 1. Hydra should *again* be ordered to produce discovery on the Hydra emails Judge Day allowed in the case and sanctions should be imposed.

Hydra leads off by blatantly misrepresenting the facts, saying that emails the Court found to be properly at issue in the case were produced "after the close of fact discovery." Opp. at 7. Hydra has been withholding this discovery since the first set of these emails (the 1,834 "Hydra-AccelerateBiz October 2008 Emails") was produced *in October 2008*, months before the close of discovery. The second set (the "Hydra 2008-2009 Emails") was produced on May 20, 2009, *also before the close of discovery*.[3] Regardless, Hydra is just re-litigating the 37(c) motion it lost. The reason it is in the position of producing at this time is that it refused to produce *and instead gambled on a motion – a gamble that failed.* Hydra was on notice as to the 1,834 Hydra emails produced in October 2008. (Hrg. Tr. at 57:5-25 (Dec. 7, 2009) [Ex. 1]). And as Defendants pointed out in their 37(c) motion, over 18,000 of the e-mails were received between November 4, 2008 and March 20, 2009. One reason the Court denied Hydra's motion is because Hydra was on notice and because Hydra continued to send spam to Plaintiff anyway, at least through March 2009 (and has since continued), resulting in Plaintiff's production of that spam in May. (Hrg. Tr. at 18:12-19 (Dec. 7, 2009) [Ex. 1]). Hydra's position that it should not now have to produce what it stonewalled then – discovery related to spam Hydra was sending at that late point in discovery – is ironic and meritless.

Now, Hydra refuses to produce on the basis that the Court "never ordered Hydra to produce anything concerning the Hydra Emails" and that it should not have to produce at this

---

[3] Defendants like to use the modified "close of official discovery" to permit them to skirt the fact that the parties specifically agreed to extend fact discovery for purposes of production until May 22, 2009. [DE#170 Ex. 6 (May 14, 2009 email exchange between A. Rothman and T. Onorato)].

late stage in the litigation.  Opp. at 7.  Judge Day ruled that the emails had been properly added to BSI's complaint, and, therefore, he necessarily ruled that Hydra's refusal to produce discovery on those emails – which was based on the pendency of the Rule 37(c) motion seeking to remove the emails from the case – was improper.  The logic to Hydra's position – that the Court refused to remove the emails from the case, but did not anticipate that the discovery needed for Plaintiff's case at trial and required by the Rules would be forthcoming – is not clear, and Hydra spends little effort in supporting its position.  *See* Opp. at 7-9.  What is clear, however, is that Hydra appears on the verge of being unrepresented in this action and, unless the Court intervenes, of making it even more difficult to get the discovery it has refused to produce.

As for Hydra's second argument at 7-8, that BSI "admits" certain emails are not attributable to Hydra and therefore discovery as to those emails is irrelevant, that tired argument again blatantly and demonstrably misrepresents the statements made.  For starters, BSI cannot even find the alleged quotation cited as page 3 of DE#264.  Opp. at 7.  However, presumably, Hydra took the statement:  "In October 2008 and May 2009, BSI produced additional emails attributable to Defendants, most of which it had received since the filing of the initial complaint, and <u>most of which are attributable to Hydra</u>," Mot. to Enforce at 1 (emphasis added), and twisted it to suggest that BSI admits some of the *Hydra emails* are not attributable *to Hydra*.  This is plainly not what this statement says – the emails referenced here as not attributable to Hydra are those that BSI produced in October 2008 and May 2009 which are attributable *to Connexus*.  The Hydra emails are attributable to Hydra, at least because they *directly click through to Hydra*, thus exposing Hydra.  Whatever argument Hydra is trying to concoct here is another inaccurate representation of the pleadings to the Court and unavailing.

Third, Hydra argues that the emails are not relevant to summary judgment. Hydra moved for summary judgment on falsity. It is withholding discovery on, among other things (1) the identities of the senders that are falsely portrayed in the emails, (2) evidence of the deceptive subject lines as shown in records from their campaign database, and (3) creative content, domain information, and payment records evidencing their complicity with the advertisers and affiliates. These documents are clearly relevant to Plaintiff's opposition to summary judgment, as well as to a summary judgment on attribution and/or falsity.

Hydra's other arguments at 8 – related to preemption, a consumer's decision to purchase, and fraud – are just legal arguments that have nothing to do with the substance of this motion and the discovery it owes – *discovery Hydra would owe even if it was not relevant to summary judgment*. The fact that it is relevant to summary judgment simply serves to underscore the prejudice to Plaintiff.

Finally, while Hydra claims it was not attempting an end run around this Court's Order with its motion to stay, Opp. at 9, this Court should note that Hydra has again demonstrably misrepresented facts, as shown above. Further, the Court should consider that while counsel was asserting why Hydra should not produce in its Opposition – filed four days before it gave notice of withdrawal and at a time when it must have been in discussion with the client given that it was owed $486,531.72 and was about to pull the plug on the representation – it must have known that the real reason was that Hydra was being gutted of assets and would likely be walking away from the litigation.

It is unreasonable to believe that the Court only went "half way" and put the emails in but kept the discovery out. Hydra's position that it has no discovery obligations in this circumstance unless the Court says so is either form over substance or wrong.

### 2.   Discovery on the Connexus emails is relevant to Connexus' affirmative defenses and Plaintiff's opposition to summary judgment.

As it stands, Defendants have already managed to prejudice Plaintiff.  By refusing discovery since November 2008, they have hindered the development of Plaintiff's case, and by refusing to comply with the Court's Order and forcing this Motion, they have strung out their stonewalling strategy all the way up to the time for Plaintiff's February 12 summary judgment opposition.  It is simply unfair.

First, even if these emails (the 2005 Ralsky-Connexus emails and the 2005 MCX-Connexus-Kraft emails) are not in the case for liability purposes, discovery is still appropriate because it is relevant to at least three of Defendants' affirmative defenses:

> SEVENTH AFFIRMATIVE DEFENSE
> (Good Faith)
> 7. Any representations contained in the subject emails allegedly sent by Connexus to Plaintiff, if actually made by Connexus, were made with a good-faith belief in their truth.
>
> EIGHTH AFFIRMATIVE DEFENSE
> (No Misrepresentations)
> 8. Any representations contained in the subject emails allegedly sent by Connexus to Plaintiff were not made by Connexus for the purpose of misleading Plaintiff, inducing Plaintiff to rely upon them, or to act or to refrain from acting in reliance thereon.
>
> NINTH AFFIRMATIVE DEFENSE
> (Due Care)
> 9. Connexus established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial email advertisements.

DE# 61, Connexus' Answer to Second Am. Compl. at 18.  Discovery concerning the 2005 Ralsky-Connexus emails would further evidence that Connexus worked with Alan Ralsky, the self-proclaimed "Godfather of Spam," who on November 30, 2009 was sentenced to 51 months

in prison by a federal judge in Detroit for his lead role in an email stock scam.[4] This discovery relates, at the least, to Connexus' Good Faith, No Misrepresentations, and Due Care defenses. Discovery concerning the 2005 MCX-Connexus-Kraft emails would further evidence Connexus' substantial involvement with Sebastian Barale and his company MailCompanyX, defendants that this Court defaulted after Barale had ensconced himself in Argentina. Over 24,000 of the emails produced in June 2008 that are in the case for liability purposes were sent by Barale/MCX for Connexus. As such, this discovery also relates, at the least, to Connexus' Good Faith, No Misrepresentations, and Due Care defenses, as well as to the Kraft Defendants in this case (the advertiser in those emails), and for that reason alone remains proper and relevant.

Second, Defendants in their 37(c) motion sought as relief, specifically, "<u>Precluding BSI from suing over</u> the 'Hydra 2008-2009 Emails,' the '2005 Ralsky-Connexus Emails,' the '2005 MCX-Connexus-Kraft Emails,' and the "Hydra-AccelerateBiz October 2008 Emails.'" [DE# 153 at 2; 153-34 (Proposed Order) at 1]. As Connexus quotes in its opposition, the Court stated it was "<u>grant[ing]</u> **the relief requested** as to the use of these documents as evidence." Opp. at 4. The relief Connexus requested was that the emails be excluded for purposes of being sued on them – *i.e.*, liability purposes – but now seeks to reinterpret its own proposed order to give itself the benefit of more relief than it sought in its motion. The Court granted the relief Connexus sought and whether it now wishes it had drafted its order differently or sought different relief is a different issue entirely.

Third, Connexus argues that it should not have to produce because fact discovery would have to be reopened. Opp. at 5. But, first, it was Connexus' refusal to produce months ago that put it in this spot, and second, Judge Day specifically took note of the possibility of more

---

[4] http://money.cnn.com/2009/11/24/technology/King_of_spam_lawsuit_fraud_Ralsky/index.htm.

discovery in making his ruling and refusing Hydra's efforts to exclude the emails from the case. [Mot. to Enforce Ex. 3 ("certain aspects of discovery continue because either there is motions to compel that have to be ruled upon or Court grants additional relief or there are signed agreements that counsel make because it makes sense to do it that way, so I do not think we have an issue with respect to discovery deadlines being a disruption for the trial. . . . So, as to the Hydra 2008/2009 issues emails, I will deny the motion.")]. Thus, reopening discovery for the limited purpose of producing materials Connexus should have produced months ago is appropriate.

Finally, Connexus argues that this Court has already denied discovery where Plaintiff moved to compel documents identifying "all affiliates" and "all advertisers, middlemen, affiliates or other email-related vendor with whom you had agreements." Opp. at 5. Connexus notes that BSI contended that "[i]t is not appropriate to limit these responses to the e-mails at issue" and that the Court held the requested information was not relevant. *Id*. From this, Connexus reaches the unwarranted conclusion that only discovery as to emails at issue for liability purposes is relevant, and that this Court ruled that any discovery other than as to emails at issue for liability purposes is irrelevant. *Id*. However, in this instance, BSI does not seek broad discovery along the lines of "all affiliates" or "all advertisers," but rather the specifics concerning the particular emails/ad campaigns in the 2005 Ralsky-Connexus and the 2005 MCX-Connexus-Kraft sets. This would be limited, generally, to the senders of those emails (Plaintiff contends it was Alan Ralsky for the former and Sebastian Barale for the latter); campaign database records concerning what (false) From lines and Subject Lines were given to Connexus by the advertiser or by Connexus to the affiliate; payment records for those campaigns; creative content used in those campaigns; and complaints or warnings generated by those campaigns. Each of these categories of documents is directly relevant to Connexus' Good Faith, No

Misrepresentations, and Due Care defenses. Connexus' argument that the Court's denial of Plaintiff's earlier request to compel a different and much broader set of documents – "all affiliates" and "all advertisers, middlemen, affiliates or other email-related vendor with whom you had agreements" – controls this issue or forecloses this request is clearly not correct. Just because the Court at one point thought a broad request for documents was not relevant enough to affirmative defenses to warrant being compelled, *does not dictate the conclusion* that at this point, another, distinct and more specific set of documents, in a distinct scenario, is not relevant.

### 3. Defendants' procedural objections are not well taken in this instance.

Defendants claim they are entitled to additional meet and confers concerning discovery requests over which the parties have already met and conferred, and tries to recast Plaintiff's motion as a motion to compel rather than for an order granting discovery it is already owed. Opp. at 7. The reality here is that Defendants' tactic is designed to delay discovery, some of which is now 14 months in arrears, on the cusp of Plaintiff's summary judgment opposition. This Court should not credit these arguments from these Defendants.

First, Plaintiff attempted to resolve disputes over this discovery in November 2008 and May 2009. *See, e.g.*, DE# 170 at Exs. 6-7. Plaintiff also sent letters on December 8 and 16 to Defendants concerning the discovery owed as a result of the Court's Order. Plaintiff has made sincere attempts to resolve the parties' differences and in return was flatly told in November 2008 and May 2009 that Defendants would not produce, and on Dec. 21, 2009 that Defendants would not produce in response to the Court's Order, thus cutting off any meet and confer.

Second, *Weintraub v. Mental Health Auth. of St. Mary's, Inc*., 2010 U.S. Dist. LEXIS 5131 (D. Md. Jan. 22, 2010) is on point. In that case, the court found that Local Rule 104(7) had no application under the circumstances. *Id*. at *6. The court had addressed "discovery disputes"

arising from the Rule 30(b)(6) deposition on two prior occasions and the issue at that point was compliance with an order of this court. *Id*. The court noted that that situation was "quite different" and that, because there had been prior efforts to resolve the disputes, plaintiff was not required to do more prior to filing her motion for sanctions. *Id*. at *7. Thus, "[t]o the extent that conciliation efforts may have been required, the court suspends that requirement for purposes of this motion. *See* Local Rule 604; *see also Pandora Jewelry, LLC v. Chamilia, LLC*, Civ. No. CCB-06-3041, 2008 U.S. Dist. LEXIS 79232, 2008 WL 4533902, *6 (D. Md. Sept. 30, 2008)." *Id*.

*Weintraub* also supports the point that Plaintiff does not have additional meet and confer obligations in this instance, although Plaintiff contends it adhered in substance to the Rules in any event. Plaintiff has met and conferred; Plaintiff has sent letters; Plaintiff has filed motions; but the bottom line is that the Local Rules do not require a party to meet and confer for discovery materials that another party is already obliged to produce, or to enforce an order of the Court, as is the circumstance here.

> **B.     Sanctions Against Defendants Are Mandatory Because Defendants' Failure To Obey The Court's Order Was Not Substantially Justified Nor Would Such Sanctions Work An Injustice.**

Sanctions here are mandatory because Defendants' failure to obey the Court's Order was not substantially justified nor would it work an injustice, points Defendants do not address in their opposition.

Rule 37(b)(2) provides that where a party "fails to obey an order to provide or permit discovery," "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Wash., D.C. Cement Masons Welfare Fund v. Rapid Response Constr., Inc.*, 2009 U.S. Dist. LEXIS

93021, at *5-6 (D. Md. Oct. 6, 2009) (quoting Fed. R. Civ. P. 37(b)(2)(C)). Nothing in Defendants' papers supports a finding of substantial justification or that sanctions would work an injustice on Defendants. In *Cement Masons*, defendants failed to follow the court's Order requiring supplementation of discovery until three weeks after the deadline imposed by the court and only after plaintiffs had filed a motion to show cause. *Id*. The court found that "Defendants have provided no substantial justification for this failure or explained why an award of attorney's fees for Plaintiffs would be unjust. Therefore, this Court will grant Plaintiffs' request for attorney's fees in relation to this Motion to Show Cause." *Id*.

Here, it has been many *months*, not a mere three weeks, since much of the discovery at issue was due and, as in *Cement Masons*, this Court issued an Order and Plaintiff had to move the Court to enforce it. Given Defendants' track record of obfuscation and stonewalling, only the imposition of sanctions can ensure that such behavior will not continue. The most recent illustration of such conduct is Connexus' January 7, 2010 production of documents it was ordered to produce over five months earlier on July 24, 2009, relating to emails produced to it over 13 months earlier in June 2008, and only after yet another letter from Plaintiff's counsel. [*See* Ex. 2, Jan. 7, 2010 A. Rothman email]. Hydra, on the other hand, enjoys the benefit of no similar, albeit meager effort such as Connexus' to point to – it has simply decided it is not going to obey the rules or this Court.

As is their practice, Defendants misleadingly bullet point several events and attempt to portray them as a history of sanctions against BSI. Opp. at 10. In the first bullet, it was the California court, not this Court, that denied an *ex parte* motion for more depositions, finding that the exigent circumstances standard required for such a motion simply had not been met. That motion was made at the end of a highly-compressed discovery schedule before the case was

transferred. As for the second bullet, the Court gave no reason for its denial of the request for letters rogatory, so it is not clear how Defendants claim to have prevailed in that particular dispute, especially given that their entire Reply brief on that issue was stricken. With regard to the third and fourth bullets, Plaintiff states that it has had to bring motions to compel because of Defendants stonewalling. Plaintiff has been successful at times and not successful at others, and has negotiated a narrowing of requests at other times. That hardly means Defendants should not be sanctioned for their egregious conduct here. And finally, while the Court did exclude some emails on December 7, it allowed over 20,000 into the case – approximately 75% of the emails Defendants moved to exclude. In any event, this is not relevant to the issue of whether sanctions are appropriate in this instance.

At this juncture, on the cusp of Plaintiff's opposition to Defendants' summary judgment motion, further delay further prejudices BSI. *Accord Thompson v. United States HUD*, 219 F.R.D. 93, 103 (D. Md. 2003) (imposing Fed. R. Civ. P. 37(b)(2) sanctions against city officials where late production left residents no opportunity to review e-mail records, digest them, and assess their impact on case).

As for Defendants' tit-for-tat request for sanctions, it should be denied. First, this is not a motion to compel but rather a motion to enforce the Court's Order, and thus Defendants' citation to Fed. R. Civ. P. 37(a)(5)(B) is misplaced. Opp. at 10. Second, BSI filed its motion with substantial justification – it has been requesting the discovery that is the subject of this motion for up to 14 months now. Defendants try to turn the Court's December 7 ruling on its head as a sanction for "BSI's misconduct" but, as they know, the Court denied the majority of their motion, and although the Court did exclude certain emails, it was not for any misconduct, but rather because, on balance, temporal considerations militated in favor of exclusion.

At bottom, if this Court agrees with Plaintiff's position in its motion it should deny Defendants' request, and even if it denies Plaintiff's motion, the motion itself was justified because Plaintiff had a good faith belief that the 2005 Connexus emails remained relevant to other claims or defenses, and that when the Court allowed the Hydra emails into the case it necessarily ordered discovery about them given that there is simply no other means for a plaintiff to prove its case at trial.

## CONCLUSION

Plaintiff respectfully requests the Court grant its motion in its entirety.

Date: January 28, 2010

Respectfully Submitted,

/s/
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington, DC  20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January 2010, the foregoing *Reply in Support of Plaintiff's Motion for Order Enforcing This Court's December 7, 2009 Ruling Regarding Emails in this Case and For Sanctions* was filed electronically via the Court's CM/ECF system, and served electronically on the below-named parties via the Court's electronic notification system:

Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
John K. Roche (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
202-434-1613 (Telephone)
202-434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, DC 20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendants Connexus Corp. and Hydra LLC*

_/s/ Thomas M. Barba_
Thomas M. Barba