IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | : |
| Plaintiff, | : Case No. 8:08-CV-00409-PJM |
| v. | : |
| | : The Honorable Peter J. Messitte |
| KRAFT FOODS, INC., et al., | : |
| | : Magistrate Judge Charles B. Day |
| Defendants. | : |

**REPLY CONCERNING INTERIM SEALING MOTION AND
MOTION TO CHALLENGE CONFIDENTIALITY**

Defendant Connexus Corp. files this Reply concerning its Interim Sealing Motion and Motion to Challenge Confidentiality (DE# 260) filed with its Motion for Summary Judgment (DE# 257).[1]

**INTRODUCTION**

The Protective Order states in relevant part that "[t]he burden of proving the confidentiality of designated information remains with the party asserting such confidentiality." (DE# 87-3 at ¶ 4.) Thus, Connexus agrees that Plaintiff Beyond Systems, Inc. ("BSI") and Third-Party Defendants Joe Wagner/Hypertouch (1) "must make a particularized factual showing of the harm that would be sustained if the court did not grant [or uphold] a protective order," and (2) show "good cause exists to protect the information from disclosure." (DE# 279 at 2-3 (quotations and citations omitted)). Here, BSI and Joe Wagner/Hypertouch neither make any

---

[1] On January 22, 2010, Venable filed a motion seeking leave to withdraw as counsel of record for Hydra LLC because Hydra failed to pay amounts due and owing to Venable for legal services provided in this case. (DE# 280.) On February 4, 2010, Hydra requested an extension of time to file its reply to the current sealing motion until three weeks after the Court rules on Venable's motion. (DE# 286.) However, Connexus )(also represented by Venable) submits that, for purposes of this motion only, the Court can rule on this sealing motion without Hydra's reply because the reasons set forth in the opening motion and in this reply are sufficient to unseal the pending summary judgment motion and exhibits thereto doutwout further briefing.

"particularized factual showing" that they will be harmed if the information at issue is unsealed nor show good cause to permanently seal it, and instead merely re-litigate old arguments that this Court long ago rejected and invent others that lack merit. Further, Exhibit 22 is not privileged, and even if it was, BSI intentionally – or at best recklessly – produced it and did not timely request that Exhibit 22 be returned. Thus, BSI cannot invoke the Protective Order to claw back Exhibit 22. Moreover, all of the factors that courts consider when determining whether a producing party waived attorney-client privilege through inadvertent disclosure weigh heavily and convincingly in favor of finding waiver here and unsealing Exhibit 22. Thus, the entire memorandum of law in support of the pending summary judgment motion and all exhibits thereto should be unsealed.

## ARGUMENT

### A. BSI's Aggregate and Non-Specific Litigation Proceeds (Exhibit 6).

The only reason why BSI opposes unsealing aggregate and non-specific litigation proceeds is because, although such information "contains an annualized summary and does not identify the parties involved in each transaction, its publication would still violate the terms of the confidential settlement agreements" and that somehow "[a]ggregate information still permits an interested party to deduce confidential settlement information and expose BSI to the risk of claims that they have breached other settlement agreements." (DE# 279 at 4.) However, BSI already made, and the Court already expressly rejected, this very argument.

In opposing the motion seeking to compel aggregate and non-specific litigation proceeds, BSI argued that "[a]ggregate information regarding BSI's annual revenues from litigation would necessarily reveal the amount of certain litigation settlements, which cannot be disclosed pursuant to confidentiality agreements with third parties," and that "[i]n any given year, BSI

often did not receive revenue associated with more than one litigation matter." (DE# 181-16 at 3.)  Kraft Defendants countered that (1) "Defendants seek only aggregate information regarding BSI's annual revenue from litigation" and, thus, "it is difficult to understand how the production of the requested aggregate information could violate the terms of any settlement agreement," and (2) "even if BSI only received revenue associated with one litigation matter in a given year, it would be difficult, if not impossible, for Defendants to link that revenue to any particular litigation." (DE# 181 at 6; DE# 181-16 at 3.)  Indeed, given that BSI has filed no less than 24 lawsuits since 2003, it is virtually impossible to "deduce" any specific settlement information.  This Court agreed with Defendants, and held that "Defendants are correct to note that confidentiality is a non-issue, as Defendants only seek aggregate amounts, not amounts for any particular settlement.  Defendants also are not seeking the disclosure of the identity of any participant to any confidentiality agreement." (DE#233 at 2.)  And, no new facts or law have arisen since the Court made its ruling, and there is no reason to change the Court's ruling now.  Accordingly, aggregate and non-specific litigation proceeds information should be unsealed.

      **B.**      **Aggregate and Non-Specific Revenue Information (Exhibits 7 and 10).**

BSI and Joe Wagner/Hypertouch do not contest, and therefore concede, that the aggregate revenue information they seek to seal (1) does not identify the sources of income and, therefore, nobody can tell how much revenue BSI or Joe Wagner/Hypertouch generated from whom or from any specific source, and (2) is far more general than specific loss information detailing BSI's alleged actual damages that the Court ruled is not confidential. (DE# 142, granting DE# 84).  Instead, BSI and Joe Wagner/Hypertouch speculate without proof that they "are particularly vulnerable to new competitors who might be induced to challenge their business if these potential competitors had accurate profit information," "relations with customers could

be harmed if those customers were aware of profits and losses and "customer[s] could force concessions if it viewed profit levels as excessive or they might flee to another ISP if losses gave the impression that BSI or Hypertouch might be forced to discontinue operations." (DE# 279 at 5-6.) BSI and Joe Wagner/Hypertouch also argue that "public disclosure of the information in Exhibits 7 and 10 serve little if any purpose related to the substantive issues in this case." (DE# 279 at 6.) These arguments lack merit and this Court has already rejected them.

First, the Court already rejected BSI's argument that "non-public financial information about BSI" is confidential. In seeking to seal Paul Wagner's status as BSI's sole shareholder and employee, BSI argued that "[t]he information BSI seeks to keep confidential here is also clearly confidential… because it pertains to business development activities, as it involves the structure of BSI's business and how it is run, information that many privately held companies keep confidential, as well as non-public financial information about BSI." (DE# 112 at 7 (emphasis added).) BSI also argued that:

> Disclosure of the single employee status would reveal that BSI has no outside venture capital firms backing its product and service development efforts. This information affects BSI's marketing potential to new clients and customers as well as the potential to secure venture capital financing and additional funding for each business. If prospective customers know that BSI is owned and run by one individual, it would certainly inhibit BSI's ability to attract commercial clients and would diminish client confidence. If these or other prospective customers knew that BSI is owned and operated only by Paul Wagner, they might look elsewhere for internet and email service.

(DE# 112 at 6.) In response, Connexus argued the information should be unsealed because (1) it does not constitute a trade secret, confidential business information, or anything else that would warrant confidential treatment under FRCP 26(c)(1)(g) or otherwise, (2) BSI and Joe Wagner/Hypertouch are not legitimate businesses and have no legitimate business prospects but instead are serial plaintiffs that cannot possibly suffer competitive harm, and (3) there is a presumption that the public should have access to court proceedings and records, and the

4

unreasonable designation of documents has the effect of "insulat[ing] the participants, masking impropriety, obscuring incompetence, and concealing corruption." (DE# 138 at 3-5 (*quoting Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).)  This Court then rejected BSI's arguments and denied BSI's motion to seal. (DE# 228 (denying BSI's Motion to Seal (DE# 112)).)  And, as with this Court's order concerning litigation proceeds, there are no new facts or law mandating that the Court reverse its order.

Second, the Court already ruled that revenue information relates to the substantive issues in this case.  In ordering BSI to produce aggregate litigation proceeds, this Court held:

> The Court finds that the information sought may inform the Court in its assessment of statutory damages.  The motivations of Plaintiff, as well as those of the named Defendants, may be of value to the Court.  Equally true, discovery of impeachment evidence is appropriate. Newsome v. Penske Truck Leasing Corp., 427 F. Supp. 2d 431 (D. Md. 2006).  The quantification of income derived from litigation endeavors, juxtaposed with those from the legitimate operation of an internet service provider, may influence the Court as to the motives of Plaintiff in light of any legislative intent. See Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1056 (9th Cir. 2009) (plaintiff's company generates no revenue and is financed strictly through lawsuits against e-mail marketers).  While the statute in Gordon is not controlling here, the Court's reasoning may be helpful in discerning the true harm inflicted upon Beyond Systems, Inc.

(DE# 233 at 2.)  Nothing has transpired that warrants changing this finding either.

Finally, a corporation seeking protection must show that "disclosure would cause significant harm to its competitive and financial position.  That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Deford v. Schmid Prod. Co.,* 120 F.R.D. 648, 653 (D. Md. 1987).  Here, BSI and Joe Wagner/Hypertouch offer no cases, affidavits, or examples to support their broad, conclusory, speculative and unfounded allegations of potential harm.  Quite simply, BSI and Joe Wagner/Hypertouch have utterly failed to meet their burden to

permanently seal aggregate and non-specific revenue information, and such information should be unsealed for this additional reason.

### C. Efforts to Manufacture Lawsuits (Exhibit 22).

The only reason why BSI claims that Exhibit 22 should be sealed is because it reflects privileged information and was "inadvertently produced." (DE# 279 at 8.) Although the Protective Order allows clawing back of inadvertently produced privileged documents, Exhibit 22 is not privileged, it was intentionally produced – or at best recklessly produced – to BSI's testifying experts, and BSI failed to timely request that Exhibit 22 be returned. Thus, BSI cannot claw back Exhibit 22 under the Protective Order. Further, all of the factors that courts consider in determining whether a producing party waived privilege through inadvertent disclosure weigh heavily and convincingly in favor of finding that BSI waived privilege. Thus, Exhibit 22 should be unsealed.

#### 1. BSI cannot claw back Exhibit 22 under the Protective Order.

***Exhibit 22 is not privileged.*** The Protective Order allows a party to claw back "information subject to a claim of attorney-client privilege." (DE# 87-3 at ¶ 8.) Further, a party asserting that a document is privileged "must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (internal citations omitted). Here, BSI utterly failed to meet its burden, as BSI has not filed a single declaration or provided any facts showing that Exhibit 22 is privileged or that it did not waive privilege. Exhibit 22 should be unsealed for this reason alone.

Further, the Court has already found – and BSI has already consented to make public – documents reflecting efforts by Paul Wagner/BSI and Joe Wagner/Hypertouch to file lawsuits

that are substantially similar to Exhibit 22. For example, attached hereto as Exhibit A is an email that BSI produced that is substantially similar to (although shorter than) and has the same date as Exhibit 22, yet BSI did not even designate this document as confidential much less privileged.

Moreover, when Connexus challenged the confidentiality of six documents that reflected "discussions between Paul Wagner/BSI and Joe Wagner/Hypertouch concerning their plans to collect and organize email for purposes of manufacturing lawsuits," Paul Wagner/BSI and Joe Wagner/Hypertouch consented to file five of them publicly but then claimed that the remaining document reflected privileged information and opposed its public filing. (DE# 132 at 2; DE# 152 at 203.) In support of unsealing the document, Connexus argued that (1) the email merely reveals how the Wagner brothers scheme to obtain as much money as possible through their manufactured claims and is in no way privileged, and (2) documents with substantively identical content were already disclosed publicly. (DE# 167 at 1, 3.) This Court agreed, and held that "the Court is not persuaded that [the challenged exhibit] contains privileged information," and "[m]ost important, the information contained in [the challenged exhibit] has been publically disclosed to other parties, namely Kraft Foods, Inc., and in other documents." (DE# 188 at 2.) Thus, just like the other documents reflecting how the Wagner brothers manufacture lawsuits, Exhibit 22 is not privileged and should be unsealed.

***BSI Intentionally Disclosed Exhibit 22.*** Even if information that a party produces is privileged, the Protective Order only allows a producing party to claw back a document reflecting privileged communications if such information was "inadvertently or mistakenly produced." (DE# 87-3 at ¶ 8.) Here, BSI through its sole employee Paul Wagner intentionally produced Exhibit 22. Specifically, Paul Wagner wrote to BSI testifying expert that "I will be sending you the following file attachments in two subsequent emails," including

"ProespectiveSpamCases-BSI-200801222.doc," which is the file name of Exhibit 22. (Ex. A, 2/12/08 P. Wagner/J. Levine Email.) Paul Wagner/BSI then emailed the document to BSI testifying expert Levine, thereby intentionally disclosing it. (Ex. B, Exhibit 22 emailed to BSI testifying expert J. Levine.) And, because the Protective Order's claw back provision does not apply to intentional disclosures, BSI cannot retrieve Exhibit 22. Indeed, it is now crystal clear that the only reason why BSI seeks to retrieve Exhibit is because it proves that BSI is merely a litigation factory and not a legitimate ISP consistent with the wealth of other undisputed facts in Connexus's summary judgment motion.

Further, even assuming that BSI did not intentionally produce Exhibit 22, BSI – at best- recklessly produced Exhibit 22. And. As BSI's counsel knows well, the distinction between inadvertent and reckless disclosure is dispositive. For example, in *Parra* (a case cited by BSI in its opposition to Hydra's motion requesting the claw back of a privileged document), a party represented by BSI's counsel herein, Steptoe & Johnson LLP, produced a privileged document to its opponent twice and then sought to strike its opponent's court filing that used the privileged document on the ground that the document was inadvertently produced. *Parra v. Bashas*, 2005 WL 6182338 (D. Ariz. Aug. 29, 2005). The court denied the producing party's motion to strike, and in doing so, carefully distinguished between inadvertent and reckless production, and found that the producing party's second disclosure constituted "more an act of recklessness than inadvertency" and "if there is no penalty to a reckless disclosure, there will be no incentive to diligently review discovery for privileged documents." *Id*. at *6.

Here, BSI's production of Exhibit 22 was reckless. BSI admits that, on February 12, 2008, it disclosed Exhibit 22 to three of its testifying experts via email, "copied" BSI's counsel on the transmission, and then allegedly retrieved it from BSI's experts. (DE# 279

at 8.) Months later, Connexus and Hydra served document requests asking for all communications between BSI and its testifying experts. In response to these requests, and having acquired full knowledge by no later than February 12, 2008 that Exhibit 22 had been produced to BSI's experts, BSI's counsel scrutinized Exhibit 22 in sufficient detail to designate it as "Confidential"[2] under the Protective Order, and then produced it to Connexus <u>three times</u> on June 19, 2009. (Ex. B, Copy #1 of Exhibit 22 produced on 6/19/09; Ex. C, Copy #2 of Exhibit 22 produced on 6/19/09; Ex. D, Copy #3 of Exhibit 22 produced on 6/19/09.)[3] Then, even after purportedly correcting inadvertent omissions and inclusions respecting the June 19 production, BSI's counsel produced Exhibit 22 to Connexus and Hydra <u>three more times</u> on June 22, 2009. (Ex. E, 7/31/09 T. Onorato Email; Ex. F, Copy #4 of Exhibit 22 produced on 6/22/09; Ex. G, Copy #5 of Exhibit 22 produced on 6/22/09; Ex. H, Copy #6 of Exhibit 22 produced on 6/22/09.)[4] BSI had several opportunities to prevent what it now claims is an "inadvertent disclosure," and its production of Exhibit 22 no less than six times after carefully reviewing it in sufficient detail to designate it as "Confidential" before producing it can only mean that BSI's production was reckless if not intentional. And, because the Protective Order's claw back provision does not apply to reckless disclosures, BSI cannot retrieve Exhibit 22.

***BSI did not "timely demand" the return of Exhibit 22.*** The Protective Order requires a party seeking to claw back an inadvertently produced document to request its return "within five (5) business days of the discovery of such disclosure." (DE# 87-3 at ¶ 8.) Although BSI must have known that Exhibit 22 was produced by no later than June 2009 as demonstrated herein,

---

[2] The "CONFIDENTIAL" designation that BSI's counsel apparently added before production appears in all capital letters on the bottom left-hand corner of each page, and is to be contrasted with other confidential designations on the document.

[3] FRCP 26(b)(5)(B) allows a party who received allegedly privileged information to "promptly present the information to the court under seal for a determination of the claim."

[4] BSI produced the "RESNICK" version of Exhibit 22 twice with the same bates number.

9

BSI knew Exhibit 22 was disclosed on December 18, 2009 when counsel for Connexus emailed it to counsel for BSI <u>and Kraft</u> with other sealed documents respecting Connexus's summary judgment motion. (Ex. I, 12/18/09 Connexus-BSI-Kraft Email.)  However, BSI did not ask Kraft to return it until almost one month later on January 22, 2010. (Ex. J, 1/22/10 S. Bielicki Ltr. to Kraft.)  Thus, BSI did not "timely demand" the return of Exhibit 22 under the Protective Order. (DE# 279 at 7.)

### 2. Paul Wagner/BSI and Joe Wagner/Hypertouch Waived Privilege.

Because Paul Wagner/BSI and Joe Wagner/Hypertouch cannot claw back Exhibit 22 under the Protective Order, Paul Wagner/BSI and Joe Wagner/Hypertouch must show that they did not waive any claim of privilege with respect to the document.  In the Fourth Circuit, waiver occurs "when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege" because "[s]uch a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege." *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003).  To determine whether a producing party waived privilege, courts consider "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measure taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving a party of its error." *F.H. Chase, Inc. v. Clark/Gilford*, 341 F. Supp. 2d 562, 563 (D. Md. 2004) (citations and internal quotations omitted).  Each of these factors weighs heavily and convincingly in favor of finding waiver and unsealing Exhibit 22.

The "number of inadvertent disclosures" that BSI and its counsel made in this case, and BSI's failure to withhold Exhibit 22 under the circumstances discussed herein, proves that

neither BSI nor its counsel took reasonable "precautions to prevent inadvertent disclosure." Indeed, in addition to producing Exhibit 22 six times, BSI and its counsel (on behalf of Joe Wagner/Hypertouch) in this case alone claimed that no less than <u>17 other documents</u> had been inadvertently produced. (Ex. K, 10/6/08 J. Kneedler Email; Ex. L, 10/22/08 J. Kneedler Email; DE# 152-2.) And, the Court already found that the only document that Connexus challenged previously was neither privileged nor confidential because, *inter alia*, BSI waived any privilege status by disclosing the document to others. (DE# 188-2.)

"[T]he extent of the disclosure" also weighs in favor of unsealing Exhibit 22 because, before BSI requested to claw it back, it was widely disclosed to Connexus, Hydra, Kraft and BSI's testifying experts. Further, the subject matter is already public, as there are several documents with substantially similar content in the public domain as discussed above.

BSI's "delay and measure taken to rectify the disclosure" also militate toward unsealing Exhibit 22. As explained above, Paul Wagner/BSI emailed Exhibit 22 to BSI's testifying experts and BSI's counsel on February 18, 2008, yet BSI's counsel did absolutely nothing to prevent Exhibit 22 from being produced to Connexus and Hydra in June 2009 even though counsel knew full well that the document had been produced to BSI's experts. (DE# 258-5.) In fact, BSI's counsel waited almost <u>two years</u> to take any corrective action, as the first measure it employed involved a request to claw back the document in late December 2009. (DE# 279-1.) Moreover, BSI claims that it will file a motion seeking the return of Exhibit 22 yet it still has not done so almost a month and a half after it asked Connexus to return the document. (DE# 279 at 7.) And, BSI failed to timely request that Kraft return the document by waiting over a month after BSI knew that the document had been disclosed to Kraft as explained above. Thus, BSI's delay also militates toward unsealing the document.

Finally, "overriding interests of justice" also mandates unsealing Exhibit 22. First, Connexus and the Court would be prejudiced because returning Exhibit 22 would involve removing the pending summary judgment motion from the Court's files and replacing it with another filing at the sole expense of Connexus caused by BSI's reckless behavior. Second, because there are substantially similar documents like Exhibit 22 already on the public record, replacing the briefs and exhibits would serve no purpose other than to increase costs and burden the parties in the Court since the same information would be re-filed in all events. Third, BSI and its counsel need an incentive to start diligently reviewing and producing documents given the number of alleged inadvertent disclosures it made in this case. Indeed, as the court held in *Parra* in denying a request by BSI's counsel to strike a pleading that attached a privileged document that BSI's counsel produced, "if there is no penalty to a reckless disclosure, there will be no incentive to diligently review discovery for privileged documents." *Parra*, 2005 WL 6182338 at *6.

### 3. No Further Briefing is Needed to Unseal Exhibit 22.

No further briefing is needed to determine whether Exhibit 22 is unsealed, and BSI's suggestion to the contrary proves only BSI's typical vexatious and dilatory litigation tactics. Connexus filed its motion to challenge confidentiality on December 18, 2009, and BSI's response was due on January 4, 2010. BSI inexcusably missed the deadline. Notwithstanding, and solely to avoid court intervention to cure BSI's neglect, Connexus agreed to allow BSI to file its late response on January 20, 2010 – over two weeks after BSI missed its deadline. Thus, BSI had over a month to oppose the instant motion to challenge in which BSI had a full and complete opportunity to set forth why Exhibit 22 should remain confidential and/or should be returned. BSI also has had over a month to file a motion to seek the return of Exhibit 22. And, given

BSI's extensive arguments in its opposition, no further briefing is needed in all events. Accordingly, the Court should reject BSI's vexatious attempt to stall a ruling on the instant motion and grant the relief Connexus seeks without further briefing.

## CONCLUSION

For these reasons, Connexus requests that the Court order the entire Motion for Summary Judgment and exhibits thereto be filed publicly.

Dated:  February 8, 2010

                /s/
J. Douglas Baldridge (US DC-MD Bar No. 11023)
Lisa Jose Fales (US DC-MD Bar No. 08141)
Ari N. Rothman (US DC-MD Bar No. 17560)
Robert A. Friedman, (US DC-MD Bar No. 28864)
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com
rafriedman@venable.com
*Attorneys for Connexus Corp.*

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of February, 2010, a copy of the foregoing *Reply Concerning Interim Sealing Motion and Motion to Challenge Confidentiality* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system:

Thomas M. Barba
John J. Duffy
Jennie L. Kneedler
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY 10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD 20850
mike@mikerothman.com
*Counsel for Plaintiff Beyond Systems, Inc. and Third-Party Defendants Joe Wagner and Hypertouch, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
THE LAW OFFICE OF DARRELL J. GRAHAM, LLC
53 W. Jackson Blvd.
Suite 1334
Chicago, IL 60604
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.*

                                                                          /s/
                                                             Ari N. Rothman