# EXHIBIT 10

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM) (CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DECLARATION OF PAUL WAGNER PURSUANT TO 28 U.S.C. § 1746</u>**

I, Paul A. Wagner, hereby declare as follows:

    1.    I am over 18 years of age. I have personal knowledge of the facts set forth below and would competently testify to those facts if called upon to do so.

    2.    I am the President of Plaintiff Beyond Systems, Inc., ("BSI") a Maryland-based corporation that is an Internet service provider, and have served in that capacity since the company's inception in 1996.

    3.    Joe Wagner is my brother, and is President of Hypertouch, Inc., a California-based corporation that is also an Internet service provider.

    4.    Steve Wagner, also my brother, is an attorney. He has served as outside counsel for BSI since 1999, and has provided advice on various matters during that time. Steve advised me and BSI while he was a lawyer at the firm of Chadbourne & Parke LLP, and after departing from Chadbourne.

    5.    Starting in 2003, Steve Ring also has served as outside counsel to BSI.

    6.    BSI and Hypertouch are entirely separate companies. As part of their independent businesses providing Internet services to their respective customers, Hypertouch and

BSI sometimes work together using their distinct geographically distributed networks to support each other.  For example, at times, BSI uses Hypertouch's servers to back up its own computer facilities, which enables BSI to provide continuous service to its customers during service interruptions. BSI performs email archival services for Hypertouch.  Also, each company provides secondary DNS and secondary mail server services on behalf of the other and their customers to maximize reliability and service uptime.

7. In 2002, Hypertouch and BSI entered into a joint interest agreement, with Steve Wagner as counsel.  The purpose of the joint interest agreement was to permit Hypertouch and BSI to share information and legal strategy in connection with potential lawsuits by BSI and/or Hypertouch.

8. In 2004, following consultations with their respective attorneys, BSI and Hypertouch undertook a joint interest agreement that that overlapped with the existing joint interest agreement and permitted the parties to share privileged information and legal strategy in connection with the lawsuits BSI or Hypertouch had filed or was considering.  That agreement has been in continuous effect from 2004 until the present.

9. In 2006, my attorney Steve Wagner directed me to assemble a document containing information prepared in connection with potential representation of BSI by his then-firm of Chadbourne & Parke LLP.  The document I created reflected details of BSI's potential litigation, as well as the mental impressions of Steve Wagner as an attorney on the subject in the brief and is thus covered by the attorney work product doctrine.  It also reflects the mental impressions of Joe Wagner, reviewed pursuant to the joint interest agreement between BSI and his company Hypertouch Inc.

10. In late 2007 through early 2008, I updated this document at the direction of Steve Wagner to reflect additional information. The document was prepared in anticipation of litigation and in connection with potential representation by several firms, including Chadbourne & Park LLP, Steptoe & Johnson LLP, and the law practices of Steve Ring and Mike Rothman. The document contains my and Steve Wagner's mental impressions regarding potential litigation. I used this document as a method of communication with my potential attorneys.

11. In February of 2008, I inadvertently sent this document as an attachment to an email to three expert witnesses retained by BSI in this case. Shortly after sending the experts this document, I realized the inadvertent attachment and subsequently contacted the experts again, requesting that they delete it without review. Each of the three experts, Drs. Levine and Klensin and Mr. Resnick, confirmed that they had done as requested.

12. My attorneys at Steptoe & Johnson LLP retained copies of the communications in which I inadvertently produced the document in question to the experts. As a result of this, the document was inadvertently produced in the course of this case as KLENSIN 002210-002218, LEVINE 001593-001601, and RESNICK 004412-004420. Accordingly, these documents are identical copies of the document described above, prepared in anticipation of litigation and in connection with potential representation by several law firms, and containing the mental impressions of me and my attorney, Steve Wagner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of February, 2010, at District of Columbia.

By: _____  
*Paul A. Wagner*