IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | : |
| | : |
| Plaintiff, | :    Case No. 8:08-CV-00409-PJM |
| | : |
| v. | :    The Honorable Peter J. Messitte |
| | : |
| KRAFT FOODS, INC., et al., | :    Magistrate Judge Charles B. Day |
| | : |
| Defendants. | : |
| | : |
| | : |

## CONNEXUS'S OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO STRIKE AND FOR A MORE DEFINITE STATEMENT; CONNEXUS'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Order dated January 20, 2010 (Paper No. 277) and the Joint Motion currently pending with the Court (Paper No. 291), Third-Party Plaintiff Connexus Corp. ("Connexus") hereby opposes Third-Party Defendants Joe Wagner's and Hypertouch, Inc.'s Motion to Strike and for More Definite Statement (Paper No. 268). Connexus also moves the Court for summary judgment pursuant to FRCP 56(c) as to Joe Wagner/Hypertouch's indemnification claim against Connexus.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As Connexus has demonstrated in this case, Joe Wagner/Hypertouch is truly responsible – not Connexus – for sending tens of thousands of emails to Plaintiff Beyond Systems, Inc. ("BSI") over which BSI sues Connexus in the underlying litigation. Accordingly, Connexus filed third-party claims against Joe Wagner and Hypertouch for indemnification and contribution. Then, in a purely retaliatory move, Joe Wagner/Hypertouch counterclaimed against Connexus on the ground that he/it is entitled to indemnification if Connexus prevails on its third-party claims against none other than Joe Wagner/Hypertouch. Joe

Wagner/Hypertouch's indemnification counterclaim makes no sense and fails as a matter of law, and Connexus is entitled to summary judgment, for the following reasons.

First, Joe Wagner/Hypertouch's "counterclaim" is merely a defense to Connexus's third-party claims, and it should be "correctly designated" and treated only as a defense under FRCP 8(c). And, because Joe Wagner/Hypertouch's "counterclaim" is a mere defense, it fails to state an affirmative claim for relief and thus fails as a matter of law, thereby entitling Connexus to summary judgment for this reason alone.

Second, Joe Wagner/Hypertouch cannot sustain an indemnification claim on the undisputed facts of this case. Maryland law requires a party seeking indemnification to prove (1) that it was found liable to a plaintiff, (2) for conduct committed by the party from whom indemnity is sought, and (3) the party from whom indemnity is sought was actively negligent or primarily responsible for causing tortious injury to the plaintiff. Here, neither BSI nor any one else sued Joe Wagner/Hypertouch over the alleged Connexus emails that BSI sues over (except for Connexus who seeks only indemnification and contribution). Thus, Joe Wagner/Hypertouch cannot show it will be held liable to a plaintiff for conduct committed by Connexus. Further, Joe Wagner/Hypertouch does not allege in its counterclaim that Connexus was actively negligent or primarily responsible for sending the emails to BSI. Accordingly, Joe Wagner/Hypertouch cannot sustain an indemnification claim as a matter of law, thereby mandating summary judgment in Connexus's favor for this additional reason.

Third, Joe Wagner/Hypertouch will always be collaterally estopped from suing Connexus for indemnification. Maryland law provides that a party's right to indemnification does not accrue until after judgment has been entered against it. Here, the only claims pending against Joe Wagner/Hypertouch are the indemnification and contribution claims filed by Connexus and

Hydra, and Connexus's indemnification claim will succeed only if Joe Wagner/Hypertouch is adjudicated to be primarily responsible for sending to BSI tens of thousands of emails at issue in the underlying litigation.  Because Joe Wagner/Hypertouch's indemnification claim against Connexus turns on this same issue, and because this issue must be fully adjudicated in favor of Connexus before Joe Wagner/Hypertouch's indemnification accrues, Joe Wagner/Hypertouch always will be collaterally estopped from seeking indemnification from Connexus.  Therefore, Joe Wagner/Hypertouch's indemnification claim fails as a matter of law and Connexus is entitled to summary judgment for this reason as well.

Because Joe Wagner/Hypertouch's counterclaim fails for any and all of the reasons above, Joe Wagner/Hypertouch's motion to strike and for a more definite statement is moot and the Court need not decide it.  Nonetheless, the Court should deny Joe Wagner/Hypertouch's motion because Connexus stated a sufficient defense under the Federal Communications Decency Act, 47 U.S.C. § 230 ("CDA").  The CDA states that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  Here, Connexus is a "provider" of "interactive computer services" within the meaning of the CDA because Connexus maintains computer servers that allow users to view and obtain information (including graphics for email advertising) by accessing those servers over the Internet.  Further, information maintained on those servers, including graphics for email advertising, is created and developed by third-party advertisers which, in turn, are "information content providers" within the meaning of the CDA. 47 U.S.C. § 230(f)(3).  Thus, Connexus is immune from "information provided by another information content provider." 47 U.S.C. § 230(c)(1).  And, if there is any doubt that

CDA immunity applies, then the Court must deny Joe Wagner/Hypertouch's motion because it raises factual issues that preclude striking Connexus's CDA defense pursuant to FRCP 12(f).

Finally, Joe Wagner/Hypertouch's motion for a more definite statement fails because FRCP 12(e) does not apply to affirmative defenses, and because Connexus provides substantial factual and legal information herein explaining its defense, thereby mooting the alternative relief that Joe Wagner/Hypertouch seek.

## UNDISPUTED FACTS

### A.    Joe Wagner/Hypertouch Sent to BSI Thousands of Emails.

Paul Wagner/BSI filed suit in February 2008, and alleged that Connexus was involved in sending BSI thousands of emails that violated the California and Maryland anti-spam statutes. However, discovery revealed a carefully devised scheme between Paul Wagner/BSI and his brother Joe Wagner/Hypertouch whereby Joe Wagner/Hypertouch, not Connexus, sent to BSI almost all of the emails over which BSI sues Connexus.  The scheme between the Wagners that gives rise to Connexus's third-party claims is fully set forth in Connexus's Motion for Summary Judgment and briefly summarized below. (Paper No. 257-1 at 5-9.)

First, Paul Wagner/BSI and Joe Wagner/Hypertouch set up sham corporations to manufacture lawsuits based on commercial email.  To date, BSI has already manufactured at least 24 lawsuits involving commercial email similar to the instant litigation, and Paul Wagner, BSI's sole employee, admitted that "[a]ll of BSI activity sort of relates to litigation" and that he has spent "a good 40 hours a week at least" working on litigation and in some weeks "well over 40." (Ex. 1, BSI's 2nd Response to Hydra's Interrogatory No. 6; Ex. 2, P. Wagner Dep. at 30:21-31:15; 162:8-10; Ex. 3, P. Wagner/Dynamic Dep. at 71:20-72:13.)  Likewise, Joe Wagner is the sole employee of Hypertouch, and Hypertouch is not a legitimate internet service provider either

but is instead a lawsuit factory that affirmatively collects emails and then sues on them, as Joe Wagner/Hypertouch filed at least 41 lawsuits over alleged illegal emails, and admitted that he spent a "significant" amount of time "engaged in the pursuit of litigation or potential litigation." (Ex. 4, J. Wagner Dep. at 134:22-25; 139:19-24; 142:5-7; 168:15-172:5; Ex. 5, J. Wagner/Valueclick Dep. at 35:12-17.)

Second, Joe Wagner/Hypertouch configured his computers to receive and store "all e-mails," including alleged "spam," that were addressed to certain domains he/Hypertouch "own[s], host[s] or manage[s]." (Ex. 4, J. Wagner Dep. at 149:17-153:13; 189:8-192:9.) Joe Wagner/Hypertouch and Paul Wagner/BSI also deployed spam traps to capture as much email as possible as described in Connexus's Motion for Summary Judgment. (Paper No. 257-1 at 7-9.)

Third, Joe Wagner/Hypertouch asked Paul Wagner/BSI "Would you archive for hypertouch.com" and otherwise store "whatever e-mails," including alleged "spam" and emails addressed to domain names owned by Hypertouch, that Joe Wagner/Hypertouch would send to Paul Wagner/BSI. (Ex. 2, P. Wagner Dep. at 88:5-15; 472:11-13; 484:8-20; Ex. 4, J. Wagner Dep. at 184:16-24; 190:3-192:20; 198:23-199:19; 301:25-302:10; 309:13-21.) Paul Wagner/BSI "said 'yes,'" and pursuant to this agreement among brothers, Joe Wagner/Hypertouch then sent emails to Paul Wagner/BSI knowing that the emails "would include spam." (Ex. 2, P. Wagner Dep. at 9:9-15, 88:5-89:1; Ex. 4, J. Wagner Dep. at 191:25-192:20; 195:6-10; 199:16-19; 200:21-25; 205:21-24.)

Finally, Paul Wagner/BSI received and stored the emails that "came through Hypertouch" and extracted such emails for use in this lawsuit. (Ex. 2, P. Wagner Dep. at 9:9-15, 69:5-8; 143:1-3; 259:7-260:17.) Paul Wagner testified that the "majority of the e-mails" over

which BSI sues Connexus "came through Hypertouch." (Ex. 2, P. Wagner Dep. at 142:18-144:8.)

In light of these undisputed facts, Connexus filed third-party claims against Joe Wagner and Hypertouch for indemnification and contribution, and alleged that "But for the actions of Joe Wagner/Hypertouch in sending or causing to be sent the Hypertouch Emails,[1] Beyond Systems would not have received the Hypertouch Emails, would have no claim under the Maryland or California statutes, and would not have suffered any of its alleged damages claimed in its lawsuit as to the Hypertouch Emails." (Paper No. 63 at ¶ 25.)  No other lawsuit is pending against Joe Wagner/Hypertouch respecting the Hypertouch Emails.

### B. Connexus's Role as "Middleman" Between Advertisers and Senders.

In addition to demonstrating that Joe Wagner/Hypertouch sent to Paul Wagner/BSI almost all of the emails over which Paul Wagner/BSI sues Connexus, discovery also revealed that BSI does not claim that Connexus actually sent the emails.  Rather, Paul Wagner/BSI claims that MailCompanyX/Sebastian Barale is the "sender" of most of the emails, and identified Connexus as a mere "middleman and/or advertiser" and an "advertising network[]." (Ex. 6, P. Wagner Dep. Ex. 99; Ex. 2, P. Wagner Dep. at 713:5-714:7.)  Specifically, advertisers that seek to attract new customers by email, such as Kraft, contract with Connexus to find independent contractors called "affiliates" or "publishers" to send email advertisements created by the advertisers. (Ex. 7, Owen Dep. at 28:7-16.)  In this regard, Connexus acts much like an auction house that connects a seller seeking to sell an item with a buyer looking to purchase it. Connexus's role as a middleman works as follows.

---

[1]     The Third-Party Complaint defines the Hypertouch Emails as the emails that Beyond Systems received from Joe Wagner/Hypertouch. (Paper No. 63 at ¶ 20.)

First, the advertiser provides to Connexus the advertisement it wishes to email to potential customers. (Ex. 7, Owen Dep. at 41:5-19.)  Contrary to Joe Wagner/Hypertouch's assertions, Connexus neither creates the email advertisements nor "contract[s] with advertisers to create email advertising" provided by third-parties. (Paper No. 268 at 7.)[2]  Indeed, Connexus's Master Services Agreement, which it enters into with all of its advertisers, expressly states that "<u>Advertiser</u> shall provide all creative and substantive materials" including "language/text for promotional e-mail text, links, key words and any other creative content as needed." (Ex. 8 at ¶2(a) (emphasis added); *see also* Ex. 9, Sim Dep. at 130:1-12; Ex. 7, Owen Dep. at 31:3-21.) And, Connexus expressly disclaims any responsibility for, and does not alter, any content provided by the advertiser (other than to make technical formatting changes for use in emails) unless the advertiser directs Connexus to do so, in which case Connexus strictly follows orders from the advertiser. (Ex. 8, Master Services Agreement ¶ 2(a), (c), (f).)

Second, Connexus publishes the advertisements created, approved, and provided by the advertiser on Internet web servers owned and operated by Connexus. (Ex. 10, Gadde Dep. at 49:3-10; Ex. 7, Owen Dep. at 41:20-42:16; Ex. 9, Sim Dep. at 138:11-139:16.)

Third, the "publishers" or "affiliates" log on to Connexus's Internet website, download the email advertisements created by the advertisers, compile the email messages, and send them to potential customers. (Ex. 10, Gadde Dep. at 49:3-10; Ex. 9, Sim Dep. at 138:11-139:16.) Importantly, and as Joe Wagner/Hypertouch concede, Connexus merely provides to affiliates and publishers the "<u>exact</u>" email advertisements, including "the <u>exact</u> HTML content, Subject lines

---

[2]     Connexus created email advertisements in some cases on its own behalf.  However, Connexus does <u>not</u> seek CDA respecting those email advertisements but instead seeks immunity concerning email advertisements that third-parties created.

[and] From lines" that the advertiser created and developed.[3] (Paper No. 268 at 9.)  And, as demonstrated herein, this arrangement clearly qualifies Connexus for CDA immunity and mandates denying Joe Wagner/Hypertouch's motion to strike.

## ARGUMENT

## I.   CONNEXUS IS ENTITLED TO SUMMARY JUDGMENT.

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *see also Nader v. Blair*, 549 F.3d 953, 958-59 (4th Cir. 2008).  Here, Joe Wagner/Hypertouch's indemnification claim fails as a mater of law, and Connexus is entitled to summary judgment, because (1) the "counterclaim" is a mere defense and thus fails to state an affirmative claim for relief, (2) Joe Wagner/Hypertouch cannot show and has not alleged elements needed to sustain an indemnification claim, and (3) Joe Wagner/Hypertouch always will be collaterally estopped from maintaining an indemnification claim against Connexus on the undisputed facts of this case.

### A.   Joe Wagner/Hypertouch's "Counterclaim" is a Mere Defense.

The Court should treat Joe Wagner/Hypertouch's counterclaim" as a mere defense and enter judgment on the counterclaim in Connexus's favor because it fails to state an affirmative claim for relief.  FRCP 8(c)(2) states that "[i]f a party mistakenly designates a defense as a counterclaim" then "the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."  For example, when the defendant in *MidAmerican* filed a counterclaim against plaintiff seeking "recoupment" for "under earnings,"

---

[3] The fact that Connexus publishes the exact content provided by the advertiser on its website does <u>not</u> mean that this same content appears in the emails over which BSI sues, as discovery revealed that the senders and/or BSI (and possibly Joe Wagner/Hypertouch) substantially altered the emails and that the emails reflect material spoliation of evidence.

the court found the "alleged right to recoupment is a defense because it can diminish or nullify MidAmerican's damages and cannot be brought as a separate claim as a matter of law," and that defendant's counterclaim for "recoupment is purely defensive and not offensive." *MidAmerican Commc'ns Corp. v U.S. W. Commc'ns, Inc.*, 857 F. Supp. 772, 773-774 (D. Colo. 1994). Thus, the court designated the counterclaim as a defense under FRCP 8(c)(2). *Id.* at 774. Likewise, the court in *Crown Theaters* held that defendant's "counterclaim" in a negligence case stated merely the affirmative defense of contributory negligence. *Crown Theaters v. Daly*, 331 F. Supp. 2d 89 (D. Conn. 2004). Thus, the Court treated the "counterclaim" as an affirmative defense under FRCP 8 and entered summary judgment against the defendant on its counterclaim. *Id.*

As in *MidAmerican* and *Crown Theaters*, Joe Wagner/Hypertouch's counterclaim is nothing more than a defense to Connexus's third-party claims and is not an affirmative claim for relief. In his/its answer, Joe Wagner/Hypertouch denied all liability in response to Connexus's third-party complaint for indemnification and contribution. (Paper No. 241.) Then, in his/its counterclaim, Joe Wagner/Hypertouch merely repeats his/its denials: "Third-Party Defendants have answered, denying any violation of California Business & Professions Code § 17529.5 or Maryland Commercial Law Code § 14-3002; any liability to Beyond Systems for violation of these statutes; or any liability to Connexus or Hydra for Indemnity or Contribution." (Id. at 11.) Thus, the indemnification counterclaim is not an independent claim for relief but rather a mere repetition of Joe Wagner/Hypertouch's denial of the claims asserted against him/it, and the Court should treat Joe Wagner/Hypertouch's counterclaim as a mere defense under FRCP 8(c)(2). And, because Joe Wagner/Hypertouch's counterclaim is nothing more than a defense, its "counterclaim" fails to state an affirmative claim as a matter of law, thereby entitling Connexus to summary judgment.

**B.      Joe Wagner/Hypertouch Failed to Allege and Cannot Show Elements Needed to Sustain an Indemnification Claim.**

Joe Wagner/Hypertouch's counterclaim for indemnification against Connexus fails as a matter of law because Joe Wagner/Hypertouch failed to allege and cannot prove essential elements needed to sustain an indemnification claim.  Under Maryland law, "indemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by another," and "involves the shifting of the entire loss from the party who paid the judgment to the tortfeasor or wrongdoer who should in fairness bear it." *Utica Mut. Ins. v. Way of the Cross Church of Christ, Inc.*, 219 F. Supp. 2d 663, 667 (D. Md. 2002).  Thus, Maryland law requires a party seeking indemnification to allege and prove (1) that it was found liable to a plaintiff (2) for conduct committed by the party from whom indemnity is sought and (3) the party from whom indemnity is sought was "actively negligent" or primarily responsible for causing tortious injury to the plaintiff. *S. Md. Oil Co. v. Tex. Co.*, 203 F. Supp. 449, 452-53 (D. Md. 1962) (applying Maryland law); *Bd. of Trustees v. Baltimore County Cmty. Colls.*, 559 A.2d 805, 811 (Md. Ct. Spec. App. 1989) (quotation and citation omitted).

Here, Joe Wagner/Hypertouch's indemnification claim fails as a matter of law because Joe Wagner/Hypertouch cannot have a judgment entered against him/it that it can "shift" to Connexus.  Indeed, Joe Wagner/Hypertouch admits that he/it has not been sued by BSI or anyone else for the emails over which BSI sues: "Third-Party Defendants are not alleged by the plaintiff in the *Beyond Systems, Inc. v. Kraft Foods, Inc., et al*. case to have sent or caused to be sent any of the emails, or to have been responsible for any deceptive or misleading information in the emails." (Paper No. 241 at 10.)  Because Joe Wagner/Hypertouch cannot have a judgment entered against him/it that it can "shift" to Connexus, Joe Wagner/Hypertouch cannot prove an

essential element needed to sustain his/its indemnification counterclaim, thereby entitling Connexus to summary judgment.

Connexus is also entitled to summary judgment because Joe Wagner/Hypertouch failed to allege that he/it are secondarily liable to BSI (or that Connexus is primarily liable to BSI), and instead merely claim that "[t]o the extent that Third-Party Defendants are found liable for any cause of action as to the [emails over which BSI sues], Hypertouch and Wagner are entitled to indemnification from Connexus." (Paper No. 241 at 11.)  Indeed, Joe Wagner/Hypertouch would have been subject to FRCP 11 sanctions if Joe Wagner/Hypertouch alleged that Connexus was primarily responsible because the undisputed facts – including binding admissions made by Joe Wagner/Hypertouch – prove that Joe Wagner/Hypertouch, not Connexus, sent to BSI almost all of the emails over which BSI sues Connexus.  Thus, Connexus is entitled to summary judgment because Joe Wagner/Hypertouch failed to allege an essential element needed to sustain an indemnification claim. *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 592 (D. Md. 1985) (dismissing indemnification claim for failure to show essential elements); *Crown Theaters,* 331 F. Supp. at 93 (dismissing indemnification claim "because [defendant]'s two paragraph counterclaim fails to plead the necessary elements for common law indemnification").

**C.    Joe Wagner/Hypertouch Will Always be Collaterally Estopped from Seeking Indemnification from Connexus.**

Joe Wagner/Hypertouch's indemnification counterclaim also fails because Joe Wagner/Hypertouch always will be collaterally estopped from seeking indemnification from Connexus.  "[A] claim for indemnification or contribution does not accrue until judgment has been entered against the party seeking indemnification or contribution." *Haupt v. State*, 340 Md. 462, 476 (Md. 1995).  Further, collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in

11

prior litigation in which the party against whom collateral estoppel is asserted had a full and fair

opportunity to litigate." *Zeno v. United States*, 2009 WL 4910050 (D. Md. Dec. 11, 2009)

(quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

Here, Connexus and Hydra are the only parties suing Joe Wagner/Hypertouch for sending

to BSI emails in the underlying lawsuit.  Thus, Joe Wagner/Hypertouch's counterclaim for

indemnification against Connexus will only accrue if a judgment is entered against Joe

Wagner/Hypertouch as a result of the indemnification suit brought by Connexus.  And, a

judgment will only be entered against Joe Wagner/Hypertouch if Joe Wagner/Hypertouch is

found to be primarily responsible for sending to BSI tens of thousands at issue in the underlying

lawsuit. *Haupt*, 340 Md. at 476.  However, Joe Wagner/Hypertouch's indemnification claim

against Connexus turns on this same issue, and this issue will have been "actually determined

and necessarily decided" during the trial on BSI's claims and the third-party claims filed by

Connexus during which Joe Wagner/Hypertouch will have a "full and fair opportunity to

litigate" them. *Zeno*, 2009 WL 4910050.  Thus, there are no circumstances under which Joe

Wagner/Hypertouch will have any right to indemnification from Connexus before the issue of

Joe Wagner/Hypertouch's primary responsibility is fully adjudicated in Connexus's favor.

Therefore, Joe Wagner/Hypertouch always will be collaterally estopped from seeking

indemnification from Connexus, and his/its counterclaim fails as a matter of law for this

additional reason.

## II.     JOE WAGNER/HYPERTOUCH'S MOTION TO STRIKE AND
##          FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED.

Because Joe Wagner/Hypertouch's indemnification claim fails as a matter of law as

explained herein, the Court does not need to decide Joe Wagner/Hypertouch's motion because it

is moot.  However, the Court should deny the motion if the Court reaches it for the reasons set forth below.

## A.      Connexus's CDA Defense Should Not Be Stricken.[4]

FRCP 8(b)(1)(A) states that "In responding to a pleading, a party must state in short and plain terms its defenses to each claim asserted against it," and FRCP 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Critically, a motion to strike a defense "is a drastic remedy which is disfavored by the courts and is infrequently granted," and "a motion to strike insufficient defenses should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law." *NCUA v. First Union Capital Mkts. Corp.*, 189 F.R.D. 158, 162-163 (D. Md. 1999) (citations and quotations omitted).  Thus, "[w]hen questions of law are not well established, the decision of whether to strike a defense is quite properly viewed as determinable only after discovery and a hearing on the merits," and "even when technically appropriate and well-founded, a motion to strike is often not granted in the absence of a showing of prejudice to the moving party." *Id*. (citations and quotations omitted).

Here, the CDA states in relevant part that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  And, Connexus stated this defense in "short and plain" terms: "Connexus is immune from suit under the federal Communications Decency Act, 42 U.S.C.§ 230." (Paper No. 249 at 2.)  Further, as shown below,

---

[4]      Joe Wagner/Hypertouch's suggestion that Connexus "did not assert CDA immunity as a defense" to BSI's claims (Paper No. 268 at 7) is wrong.  Connexus clearly stated in its answer that it is not "responsible for any deceptive or misleading information in the alleged emails to the extent such deceptive or misleading information exists in the alleged emails, it "cannot be held liable for the unilateral acts or omissions of independent third parties," and is "not vicariously liable for any of the alleged wrongdoing in the Second Amended Complaint" (Paper No. 61 at 19-20).  These defenses include, but are not limited to, CDA immunity, and BSI obtained full and complete discovery on this issue. *See also* FRCP 8(e) ("Pleadings must be construed so as to do justice.")

Connexus's CDA defense is not "insufficient" because Connexus is a "provider" of "an interactive service" that published "information provided by another content provider." Moreover, and as even Joe Wagner/Hypertouch concede, whether CDA immunity applies raises fact issues that requires denying Joe Wagner/Hypertouch's motion.

### 1.   Connexus is a "Provider" of an "Interactive Computer Service."

Connexus is an "interactive computer service."  The CDA defines an "interactive computer service" as "<u>any</u> information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2) (emphasis added). CDA immunity is available to "a wide range of cyberspace services, not only internet service providers." *Batzel v. Smith*, 333 F.3d 1018, 1030 n.15 (9th Cir. 2003).  Thus, "courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service.' " *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123- 1124 (9th Cir. 2003).

For example, the Fourth Circuit found that America Online ("AOL") qualified as an "interactive computer service" where it provided a network on which users could "communicate publicly by posting messages on AOL bulletin boards." *Zeran v. Am. Online, Inc.* 129 F.3d 327, 329 (4th Cir. 1997).  Likewise, a company that operated a website with an electronic newsletter that users could view and download qualified as an "interactive computer service" under the Ninth Circuit's holding in *Batzel*, and held that the term "interactive computer service" does not merely encompass internet providers but also includes " 'any' information services or other systems, as long as the service or system allows 'multiple users' to access 'a computer server'." *Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003).  And, in *Carafano*, the court found that a company that operated an online matchmaking service qualified as an interactive computer

service where the company provided questionnaires for customers to complete and post on the Internet, and where customers could also view profiles posted by others. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003).  These are but a few examples of courts broadly interpreting "interactive computer service" to give the CDA its full legislative effect. *See, e.g., Optinrealbig.com v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037 (N.D. Cal. 2004) (company that posted reports on its Internet website and distributed on-line mailings qualified as an "interactive computer service"); *Parker v. Google, Inc*., 422 F. Supp. 2d 492 (E.D. Pa. 2006) (company that allowed users to post and search archived messages on the Internet qualified as an "interactive computer service").

Connexus plainly qualifies as an "interactive computer service."  As shown on pages six and seven herein, Connexus posts content provided by third-party advertisers on Connexus's Internet website and web servers, and Connexus's third-party affiliates ("users" under the CDA) log onto the website to view and download the content provided by third-party advertisers. Thus, Connexus's services are no different than the services provided by the interactive computer services in *Zeran*, *Batzel*, or *Carafano*, and Joe Wagner/Hypertouch's claim that no Court expressly found that CDA immunity applies to "advertising networks" is simply irrelevant. And, although the undisputed facts demonstrate that Connexus qualifies as an "interactive computer service," the Court should deny Joe Wagner/Hypertouch's motion if there is any doubt as to Connexus's status because whether Connexus is an "interactive computer service" is a factual inquiry that mandates denying Joe Wagner/Hypertouch's FRCP 12(f)motion. *NCUA*, 189 F.R.D. at 162-163.

### 2.      Connexus is not an "Information Content Provider."

Connexus is not an "information content provider" respecting the emails for which it seeks immunity but rather publishes information provided by "another information content

provider." 47 U.S.C. § 230(c)(1).  An "information content provider" under the CDA "means

any person or entity that is responsible, in whole or in part, for the creation or development of

information provided through the Internet or any other interactive computer service." 47 U.S.C.

§ 230(f)(3).  Thus, under the CDA and binding Fourth Circuit precedent, "[s]tate-law plaintiffs

may hold liable the person who creates or develops unlawful content, but not the interactive

computer service provider who merely enables that content to be posted online." *Nemet*

*Chevrolet v. Consumeraffairs.com, Inc.*, No. 08-2097, 2009 WL 5126224, at 2-3 (4th Cir. Dec.

29, 2009).  Accordingly, "[u]nder the statutory scheme, an 'interactive computer service'

qualifies for immunity so long as it does not also function as an 'information content provider'

for the portion of the statement or publication at issue." *Carafano*, 339 F.3d at1123; *Anthony v.*

*Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) ("The critical issue is whether eBay

acted as an information content provider with respect to the information that appellants claim is

false or misleading.") (quotations and citations omitted).

Here, Connexus is not an "information content provider" because Connexus did not

create any of the email advertisements for which it seeks immunity.  Nor did Connexus "contract

with advertisers to create email advertising" or "generate the ad campaigns," and Joe

Wagner/Hypertouch's representation that Connexus's "business is the content of the emails" is

false as Connexus does not sell coffee or cars, or run a dating service. (Paper No. 268 at 7, 9.)

Instead, Connexus merely provides to affiliates through its Internet web sites the "exact" email

advertisement, including "the exact HTML content, Subject lines [and] From lines" that the

advertiser created and developed as even Joe Wagner/Hypertouch concede. (Paper No. 268 at 9.)

Under this arrangement, Connexus does not create the email advertisements and is not

responsible for their contents.  Thus, and not surprisingly, Joe Wagner/Hypertouch cite nothing

supporting its false claim that Connexus "materially contribute[s] to someone else's unlawful content" or "generate[s] the ad campaigns" provided by third-parties. (Paper No. 268 at 7.)

None of the activities Joe Wagner/Hypertouch describes on pages 7 through 10 of the motion pierce Connexus's CDA immunity, and Joe Wagner/Hypertouch's arguments raise fact issues that cannot be resolved on a motion to strike in all events.  Indeed, many of these activities Joe Wagner/Hypertouch describes prove that CDA immunity applies to Connexus.

First, Joe Wagner/Hypertouch's admissions that Connexus "arrange[s] the content of [its] ads on [its] websites for download by affiliates," "provide[s] creative material and ad copy," and "host[s] many of the HTML creatives (the images in the emails) shown in the ads on [its] servers" proves only that Connexus is an interactive computer service "that provides or enables computer access by multiple users to a computer server" under 47 U.S.C. § 230(f)(2) and is therefore immune. (Paper No. 268 at 6, 8-9.)  These admissions also show that Connexus qualifies for immunity because, as the Fourth Circuit and other courts uniformly hold, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  For example, the Fourth Circuit held that immunity applied to an ICS that solicited customer complaints and then placed the complaints in specific categories on a website after working with customers to revise the complaints. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, No. 08-2097, 2009 WL 5126224 (4th Cir. Dec. 29, 2009).  And, in the context of email marketing, the court in *Batzel* found that " '[t]he development of information' . . . means something more substantial than merely editing portions of an e-mail and selecting material for publication." *Batzel,* 333 F.3d at 1031.  Thus, arranging content and even revising it with its advertisers does not mean that

Connexus is an information content provider but rather that it exercised traditional editorial functions and therefore qualifies for immunity under the CDA and Fourth Circuit precedent.

Second, "giv[ing] instructions and suppression files to their affiliates for use with each ad campaign," and "provid[ing] suppression lists of email addresses" involves directions for ensuring emails are not sent to recipients who "opted-out" as opposed to changing the content of the advertisements. (Paper No. 268 at 8-9; Ex. 8, Master Service Agreement ¶ 2; Ex. 11, Nugent Dep. at 43:21-25.)  Likewise, receiving "warnings from advertisers and reports from third-party services alerting them to possible violations of the federal anti-spam statute CAN-SPAM" involves compliance with "opt-out" requests. (Paper No. 268 at 8; Ex. 12, Stevenson Dep. at 32:19-33:12.)  These issues are irrelevant to CDA immunity and to this case because they do not involve the contents of the advertisements over which BSI sues, and BSI did <u>not</u> opt-out to receive any of the emails but instead did everything it could to affirmatively capture as much email as possible to sue over as demonstrated in Connexus's summary judgment motion.

Third, "require[ing] affiliates to insert [Connexus's] own unique identification and campaign numbers into emails" and providing "tracking links" have nothing to do with the contents of the email advertisements but rather involves a technical means by which Connexus (or its affiliates) track a consumer's purchases resulting from the emails. (Ex. 10, Gadde Dep. at 40:21-42:15; 46:1-20.)  Likewise, "insert[ing] image server information into the ads" involves nothing more than computer commands that request images (created by the advertiser as explained herein) to be published on a user's screen. (Paper No. 268 at 7.)  Because BSI does not claim that these items are unlawful, they are irrelevant to CDA immunity. *Carafano*, 339 F.3d at1123 ("Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the

statement or publication at issue."); *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) ("The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading.") (quotations and citations omitted).

Fourth, CDA immunity still applies even assuming that Connexus "recommend[s] campaigns that [it] believe[s] will be profitable for that affiliate" and "encourage[es] commercial advertising." (Paper No. 268 at 8, 10.)  In *Blementhal*, AOL contracted with an author to provide an electronic gossip report for AOL's website, and AOL retained the right to edit the report and paid the author monthly royalties. *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998). Plaintiff sued AOL for defamation, and AOL claimed immunity under the CDA.  In response to AOL's CDA defense, plaintiff claimed that AOL was an "information content provider" because AOL played an active role in publishing the report, as AOL hired the author and the author was not an anonymous person merely sending a message through AOL.  The court held that AOL acted as an interactive computer service, and in doing so found that Congress provided immunity through the CDA "even where the interactive service provider has an active, even aggressive role in making available content prepared by others," and that AOL's payments to the author and its right to edit the author's report did not mean that AOL "created" the report. *Id.* at 51-53.  Thus, Connexus's activities related to "encourage[ing] commercial advertising" does not affect its immunity under the CDA either.

Finally, although Joe Wagner/Hypertouch contends that Connexus sent the emails in question, Paul Wagner/BSI admitted that Connexus did <u>not</u> send any of them, and indeed identified MailCompanyX as the sender of almost all of the emails over which BSI sues as to Connexus. (Ex. 6, P. Wagner Dep. Ex. 99; Ex. 2, P. Wagner Dep. at 713:5-714:7.)  And, in all

events, Connexus would not be liable under the CDA even if it sent the emails because it would

be merely transmitting information provided by another information content provider (the

advertiser). *Zeran*, 129 F.3d at 332 (no distinction between "publisher" and "distributor" when

deciding CDA immunity); *Optinrealbig.com v. Ironport Sys, Inc.*, 323 F. Supp. 2d 1037 (N.D.

Cal. 2004) (same).  Thus, whether Connexus sent the emails is also irrelevant.

For all of these reasons, Joe Wagner/Hypertouch's argument that Connexus is an

"information content provider" and thus exempt from immunity is wrong, and raises fact issues

that cannot be resolved on a motion to strike in all events.  Therefore, Joe Wagner/Hypertouch's

motion to strike should be denied.

### 3.    CDA Immunity is Relevant.

Joe Wagner/Hypertouch's argument that litigating CDA immunity "has the potential to

create an irrelevant sideshow at trial, inevitably causing confusion with respect to legitimate

issues: *e.g.*, whether Hypertouch itself, as a bonafide ISP, can rely on the CDA for immunity

from Connexus' and Hydra's baseless claims for indemnification or contribution" is also wrong.

(Paper No. 268 at 11.)

"[A] motion to strike on the basis of irrelevancy should only be granted when it is clear

that the material in question can have no possible bearing upon the subject matter of the litigation

and the material may prejudice the other party." *Dawson v. Winter*, Civ. No. 06-2885, 2007 WL

1610905, at *2 (D. Md. May 21, 2007) (quotations and citations omitted).  Here, CDA immunity

is plainly relevant given that it disposes of Joe Wagner/Hypertouch's (and BSI's) claims against

Connexus.  Further, no prejudice will result because, given the dense factual record already

developed in this case, the jury will easily differentiate between the litigation factory created by

Joe Wagner/Hypertouch to manufacture lawsuits on the one hand, and the legitimate on-line

advertising network operated by Connexus on the other.  Thus, because CDA immunity plainly is relevant, the Court should deny Joe Wagner/Hypertouch's motion to strike.

**B.      The Court Should Deny
          Joe Wagner/Hypertouch's Request for a More Definite Statement.**

The Court should deny Joe Wagner/Hypertouch's alternative request for a more definite statement for two reasons.  First, FRCP 12(e) applies only to "a pleading to which a responsive pleading is allowed," and FRCP 7(a) does not permit a responsive pleading to an affirmative defense or an answer unless "the court orders one."  Here, the Court has not ordered a response to Connexus's answer to Joe Wagner/Hypertouch's complaint.  Thus, FRCP 12(e) does not apply. *Travelers Indem. Co. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653 (N.D. Tex. 2004).

Second, Connexus has provided in this filing far more than enough information to enable Joe Wagner/Hypertouch to evaluate Connexus's CDA defense.  Accordingly, forcing Connexus to amend their answer would be a complete waste of resources, and would be less helpful than this filing because Connexus clearly would not be required to provide as much detail in an amended answer as it does here.  Regardless, to avoid striking their defense, Connexus will provide an amended pleading if the Court orders it.

For these reasons, the Court should deny Joe Wagner/Hypertouch's alternative request for a more definite statement.

<u>**CONCLUSION**</u>

For the foregoing reasons, Connexus requests that the Court grant summary judgment in its favor, and deny Joe Wagner/Hypertouch's Motion to Strike and for a More Definite Statement.

Respectfully submitted,


Dated: February 18, 2010                    _____/s/_____

J. Douglas Baldridge, US DC-MD Bar No. 11023
Lisa Jose Fales, US DC-MD Bar No. 08141
Ari N. Rothman, US DC-MD Bar No. 17560
Robert A. Friedman, US DC-MD Bar No. 28864
VENABLE LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com
rafriedman@venable.com
*Attorneys for Connexus Corp.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February 2010, a copy of the foregoing *Connexus's Opposition to Third-Party Defendants' Motion to Strike and for a More Definite Statement; Connexus's Cross-Motion for Summary Judgment* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system:

Thomas M. Barba
John J. Duffy
Jennie L. Kneedler
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY 10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD 20850
mike@mikerothman.com
*Counsel for Plaintiff Beyond Systems, Inc. and Joe Wagner and Hypertouch, Inc.*

Darrell J. Graham
THE LAW OFFICE OF DARRELL J. GRAHAM, LLC
53 W. Jackson Blvd.
Suite 1334
Chicago, IL 60604
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.*

_____ /s/ _____
Ari N. Rothman