UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 8:08-cv-00409 (PJM) |
| ) | |
| KRAFT FOODS, INC., et al. ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF J. JOSEPH WAGNER PURSUANT TO 28 U.S.C. § 1746

1. Hypertouch, Inc. is a California corporation located in San Mateo County, California. Hypertouch, Inc. has been providing email and web site hosting services for customers since 1997, approximately 5 years before the first Maryland anti-spam laws were enacted and approximately 7 years before the enactment of CAN – SPAM and California's current spam laws. Hypertouch has been in existence longer than either Connexus or Hydra.

2. Beyond Systems has always been the owner of the Hypertouch.com domain name since it was first registered in 1997.

3. Since the very beginning, Hypertouch, Inc. has configured its servers to accept all email and, for various reasons, has implemented a policy never to delete emails. Hypertouch, Inc.'s virus checker and spam filter label suspect emails, unless a customer specifically requests other action. This guarantees delivery of all legitimate email, which is the reason many of Hypertouch, Inc.'s customers use Hypertouch, Inc.'s email service rather than other services.

4. Hypertouch, Inc. archives emails for a number of reasons, including to preserve emails that users might want but that could be misaddressed or misrouted in the

1

event of mail server routing table errors. There is no technological way to delete spam automatically without also deleting legitimate, desired email. Hypertouch, Inc., as a policy, believes it is important to deliver and retain all legitimate email for its customers. Because it is physically impossible to sift through hundreds of thousands of emails every day manually in order to distinguish the legitimate emails from the spam, Hypertouch, Inc. archives all emails it receives.

5. In 2002 or 2003 the volume of email that Hypertouch, Inc.'s servers received daily had grown beyond Hypertouch, Inc.'s ability to robustly archive in a manner that would not degrade the mail servers' performance or their reliability. Therefore, Hypertouch, Inc. asked BSI, which had hardware more capable of robustly archiving emails, if BSI would archive BSI's hypertouch.com email and Hypertouch, Inc.'s customer email. BSI agreed.

6. Hypertouch, Inc. also routes copies of many customers' emails received by Hypertouch's servers to third party email service providers (e.g. Gmail, HotMail, Yahoo Mail). Most of these customers' domains have existed for the better part of a decade, and 99% of the email routed on to these other ISPs is spam.

7. I believe that the 1998 California spam law required that ISPs prove that the spammer had actual notice of both Hypertouch, Inc.'s no spam policy and that its servers were located in California. Hypertouch, Inc. provided notice on its domain hypertouch.net that it prohibits spam emails, explicitly stating "NO UCE -- No Unsolicited Email". Additionally, Hypertouch, Inc. provided its California server location, along with email addresses that were explicitly opting out of receiving spam.

8. The email address "Gotcha@hypertouch.com" was found on a web page containing a notice that stated plainly: "NO UCE -- No Unsolicited Email" to any address associated with the web page. This was not in any way a solicitation to receive spam.

9. I have never solicited commercial email as the Defendants claim.

2

10. Hypertouch has never employed spam traps as the Defendants claim.

11. I have used opt-out mechanisms to reduce the spam I receive and to investigate spammers. For example, after I created a test opt-out email address and opted out from receiving spam from Kraft, I found that the test opt-out address began receiving spam regularly. Because the test opt-out address had never been used for any purpose other than to opt out from receiving Kraft's spam, I surmised that Kraft had somehow released the test opt-out address to its spammers.

12. In the course of investigating spam, I occasionally clicked through the spam's landing page. This requires the submission of a name and physical address. For example, I submitted a person named "None Given" residing at "Fake Address, Fake City" on the Internet form. Entering some information was required to research the legitimacy of Connexus's offer emails. The email address I used was nonsense@example.com, which never resulted in spam being sent to a hypertouch.com or other BSI-owned email address. Example.com is reserved by the Internet Engineering Task Force as a non-working example domain. "'Example.com' is used in a generic and vendor-neutral manner." (http://en.wikipedia.org/wiki/Example.com.) There is no way for Hypertouch to generate spam to BSI's or Hypertouch, Inc.'s domains by using such non-working, nonsensical email addresses.

13. I do not view litigation against spammers as a profit generation enterprise. To date, Hypertouch, Inc. has donated over $100,000 in judgments or settlements to the Darfur Stove Project, Second Harvest Foodbank, and the San Francisco Coalition on Homelessness. Hypertouch, Inc. has also declined large settlement offers by companies who use illegal spam, but later accepted smaller settlements that included corrective behavior by the defendant.

14. Hypertouch, Inc. owns and operates mail servers, web servers, and DNS (Domain Name Service) servers that are connected to and accessed over the Internet.

15. Hypertouch, Inc.'s mail servers have hosted at least 203 email accounts assigned to at least 111 subscribers. Of those 111 subscribers, 73 are non-family/non-Hypertouch, Inc./Non-BSI. In addition, Hypertouch, Inc.'s mail servers have served as secondary mail servers for a number of outside organizations. Therefore, the total number of subscribers served by Hypertouch, Inc. is unknown, although it is believed to be more than 400.

16. I am proud that Hypertouch, Inc. has provided the Internet services for the incubation of a number of start-up companies, which were able to prosper, continuing on through venture capital funding and, in some cases, successful acquisition.

17. I am proud that Hypertouch, Inc. was able to provide many people and their businesses with their first email address, their first website, their first Internet access – their first online participation in the information age.

18. I am proud that Hypertouch, Inc. has provided the Internet services for a number of non-profit organizations, a biennial international conference for rehabilitation robotics and even businesses inside countries with restrictive communist governments.

19. Some customers have paid Hypertouch, Inc. for its Internet services, but most have not. Like Gmail, Yahoo Mail and Hotmail, Hypertouch, Inc. does not provide these services as a profit center from net hosting fees. Indeed, but for the burden imposed by spam, Hypertouch, Inc.'s hosting costs would be fully financed by its other outside consulting.


I, James Joseph Wagner, declare and state:


I am President of HYPERTOUCH, INC. All matters set forth herein are within my personal knowledge. The information contained above is drawn from pertinent business records and from my own knowledge and information, and based thereon I believe the information contained in these responses is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

February 18, 2010                            _____
                                             James Joseph Wagner