# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

BEYOND SYSTEMS, INC.       )
                                )
      Plaintiff,           )
                                )
        v.                 )     Case No. 8:08-cv-00409 (PJM)(CBD)
                                )
KRAFT FOODS, INC., *et al.*   )
                                )
      Defendants.       )
_____)

## MOTION FOR RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENT AND ORDER STRIKING ALL REFERENCE TO SAID DOCUMENT

Pursuant to Fed. R. Civ. P. 26(b)(5)(B) and Paragraph 8 of the Amended Stipulated Order Regarding the Confidentiality of Discovery Material (DE#'s 87-3 & 119, hereinafter "Confidentiality Order") Plaintiff Beyond Systems, Inc. ("BSI") respectfully requests the relief described more fully below concerning an inadvertently produced document that contains attorney-client work product and attorney-client communications.  Good cause exists to grant the motion for the reasons set forth in the accompanying memorandum of law.  A proposed order is attached.

Date: February 24, 2010

Respectfully Submitted,


_____/s/_____
Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036

T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

BEYOND SYSTEMS, INC.   )
          )
   Plaintiff,     )
          )
    v.       )   Case No. 8:08-cv-00409 (PJM)(CBD)
          )
KRAFT FOODS, INC., *et al*.   )
          )
   Defendants.    )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENT AND ORDER STRIKING ALL REFERENCE TO SAID DOCUMENT

### BACKGROUND

As an exhibit to their Motion for Summary Judgment, Defendants Connexus Corp. ("Connexus") and Hydra LLC ("Hydra") attached a legal memorandum that BSI had prepared, with the assistance of counsel, for the purposes of internally assessing its litigation strategy and presenting that strategy to potential law firms they were interested in retaining.  This document reflects an email communication between Paul A. Wagner, President of Plaintiff Beyond Systems, Inc. ("BSI"), one of Plaintiff's expert witnesses, and counsel.  Inadvertently attached to the email was the legal memorandum created by BSI at the direction of counsel for litigation purposes, including seeking representation.  While the document contemplates possible joint litigation with Hypertouch Inc. ("Hypertouch"), BSI created the document at the direction of counsel and shared it with Hypertouch under a joint interest agreement.  As explained below, this document was mistakenly provided to Plaintiff's experts and was almost immediately thereinafter directed to be returned.  When Plaintiff realized that this document had later been

produced to the Connexus and Hydra Defendants in the course of this litigation, Plaintiff's counsel complied with the Confidentiality Order by timely requesting its return in writing. Counsel for Defendants Connexus and Hydra advised that they would not agree to the return of the requested documents, challenging the privilege thereof, and forcing Plaintiff to seek this Court's intervention.[1]  During preparation for the motion as to Connexus and Hydra, Plaintiff realized it had neglected to serve notice on Kraft Foods Inc., Kraft Foods Global, and Vict. Th. Engwall & Co, (collectively, "Kraft") when it notified Connexus and Hydra.  Such notice was then provided soon after this oversight was discovered.  Ex. 3.

Early in this litigation, Paul A. Wagner sent several emails to the three experts that Plaintiff had engaged, attaching information for their review.  On February 12, 2008, two days prior to the filing of the original Complaint, Paul A. Wagner sent one such email to each of the three experts, under separate cover and copying counsel, attaching identical documents. The document that forms Exhibit 22 to the Connexus and Hydra Defendants' motion (produced as KLENSIN 002210-002218) was mistakenly attached to one of these emails.[2]  Once he learned of the inadvertent attachment, Mr. Wagner almost immediately sent a retraction email to the

---

[1] *See* Ex. 1, Dec. 23, 2009 correspondence between T. Onorato and A. Rothman; *see* Ex. 2, Jan. 22, 2010 correspondence between S. Bielicki and counsel for Connexus and Hydra. BSI also notified the Kraft Defendants on Jan. 22, 2009; *see* Ex. 3, Jan. 22, 2010 correspondence between S. Bielicki and counsel for Kraft Defendants.  Plaintiff previously filed the instant motion for return of the documents at issue by Defendants Connexus Corp. and Hydra LLC [DE # 290].

[2] While Exhibit 22 itself contains the email and attachment as sent to Plaintiff's Expert Klensin, in the course of preparing the instant motion, Plaintiff uncovered the related disclosures of the copies as sent under separate cover to Dr. John Levine and Peter J. Resnick.  Therefore, this motion seeks the return of two identical copies of KLENSIN 002210-002218.  Those copies are LEVINE 001593-001601 and RESNICK 004412-004420.  Plaintiff similarly advised Defendants' counsels of the related disclosures in a timely manner.  *See* Exs. 2 and 3.

recipients asking that Exhibit 22 not be reviewed and be deleted.[3]  Each expert confirmed doing so, but copies of the emails sent to each expert were retained by Plaintiff's counsel, as a copied recipient of the original messages, and were inadvertently produced in Plaintiff's production of communications with experts in connection with Fed. R. Civ. P. 26(a)(1)(A)(ii), some sixteen months later.

Admittedly, the facts in this matter are similar to those in Hydra's outstanding November 16, 2009 Motion for the Return of Inadvertently Produced Privileged file.  [DE# 240].  Plaintiff acknowledges that its notice to Kraft was 14 days outside the 21-day timeline set out in the Confidentiality Order.  However, Plaintiff did timely seek to enforce its rights against Hydra and Connexus, the parties who revealed that they had received the inadvertently produced document. As Kraft has provided no indication that they have relied on this document, Plaintiff's slight lapse in notice should be excused and the document should be returned.  As previously stated in Plaintiff's motion as to Connexus and Hydra [DE# 290], the fact that the experts whom Plaintiff send this document, all deleted it prior to ever opening the file also weighs in favor of its return.

## ARGUMENT

Privileged documents inadvertently produced are subject to being returned.  Fed. R. Civ. P. 26(b)(5)(B) and Paragraph 8 of the Confidentiality Order.  Below, Plaintiff will demonstrate that the subject document is privileged, that it was inadvertently produced, and that the Confidentiality Order and case law indicate that it should be returned.

---

[3] These retraction efforts with respect to Experts Klensin and Resnick have been produced to Defendants in the course of discovery.  Ex. 4, Feb. 12, 2008 correspondence between P. Wagner and J. Klensin, from Dr. Klensin's production of communications pursuant to subpoena; Ex. 5, Decl. of Dr. John C. Klensin at ¶¶ 12-15; Ex. 6, Feb. 12, 2008 email correspondence between P. Wagner and P. Resnick, from Mr. Resnick's production of communications pursuant to subpoena; Ex. 7, Decl. of Peter J. Resnick at ¶¶ 13-16.  Expert Dr. John Levine did not retain this correspondence and thus it was not produced pursuant to subpoena.  Ex. 8, Decl. of Dr. John R. Levine at ¶¶ 11-15.

## A.        The Inadvertently Produced Document Is Privileged.

This document was prepared by Paul Wagner and Attorney Steve Wagner.  The current

version was reviewed by Joe Wagner of Hypertouch Inc. ("Hypertouch").   Steve Wagner has

been counsel to BSI since 1999.  Ex. 9, S. Wagner Decl. ¶ 4.  Steve Wagner has also served as

counsel to Hypertouch Inc. since 1999. *Id* at ¶ 6. From 2000-2007, Steve Wagner was an

attorney at Chadbourne & Parke LLP. *Id*. at ¶ 2. In 2002, BSI and Hypertouch, both represented

by Steve Wagner, entered into a joint interest agreement so that they could share privileged

communications and legal strategy concerning potential litigation matters. Ex. 9, S. Wagner

Decl. ¶7; Ex. 10, P. Wagner Decl. at ¶ 7; Ex.11., J. Wagner Decl. ¶ 7. In 2004, BSI and

Hypertouch undertook a joint interest agreement with their respective outside counsel, Steve

Ring and John Fallat, that overlapped the existing joint interest agreement and permitted the

parties to share privileged information and legal strategy in connection with lawsuits BSI or

Hypertouch had filed or were considering.  Ex. 10 at ¶ 8; Ex. 11 at ¶ 8. The subject document

was prepared in anticipation of litigation and in connection with a potential representation by

Steve Wagner's former law firm, Chadbourne & Parke LLP, Steptoe & Johnson LLP, and the

law practices of Steve Ring and Mike Rothman. Ex. 9 at ¶ 9.  The document is protected under

the attorney work-product doctrine because it contains information prepared in connection with

potential litigation by BSI and the law firm of Chadbourne & Parke LLP. Ex. 9, at ¶¶ 8-9; Ex. 10

at ¶¶ 9-10; Ex. 11 at ¶¶ 9-10.   It reflects the mental impressions of Steve Wagner as counsel.

Ex. 9 at ¶¶ 8-9. *See Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 771

F. Supp. 149, 151 (S.D. W. Va. 1991) (documents protected under the work product doctrine

must be prepared at the direction of an attorney and in anticipation of litigation); 2 Edna Selan

Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 1002 (5th ed. 2007)

(citing Fed. R. Civ. P. 26(a)(2)(B)).  The document is also privileged because it constitutes a confidential communication from clients seeking to engage attorneys.  Ex. 9 at ¶ 9; Ex. 10 at ¶ 10. The attorney client privilege protects communications between a client and attorney made for the purpose of seeking legal advice.  *See E.I. du Pont de Nemours & Co. v. FormaPack, Inc.*, 718 A.2d 1129, 1138 (1998).  Clearly reflecting the privileged nature of the document's creation by Paul Wagner in conjunction with counsel, the document plainly states on its face:  "Attorney Client Work Product --- Confidential."

The involvement of Joe Wagner does not waive the privilege because the joint interest agreement permits parties to share privileged communications involving counsel in furtherance of the companies' assessment and prosecution of litigation.  *See* Ex. 10 at ¶¶ 7-8; Ex. 11 at ¶¶ 7-8.  The purpose of the joint interest agreement is to preserve the protected nature of communications while facilitating communications between parties with mutual interests.  *See id.*; *see also* Epstein, at 274; *Fort v. Leonard*, No. 7:05-1028-HFF-WMC, 2006 WL 2708321, at *3 (D.S.C. Sept. 20, 2006).  When "two or more clients with a common interest . . . are represented by separate lawyers and they agree to exchange information concerning the matter[s], a communication of any such client that qualifies as privileged [and] that relates to the [common interest] matter[s] is privileged against third persons."  Epstein, at 274 (quoting Restatement (Third) of the Law Governing Lawyers § 126(1) (Proposed Final Draft 1996)); *see also Gallagher v. Office of Attorney Gen.*, 787 A.2d 777, 784-85 (Md. Ct. Spec. App. 2001) (citing *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129 (Under Seal)*, 902 F.2d 244, 248-49 (4th Cir. 1990)) ("[P}arties with shared interests in actual or pending litigation against a common adversary may share privileged information without waiving their right to assert privilege.").  Joe Wagner's interests are common with Plaintiff's because, in this litigation and

others, they have contemplated pursuing joint litigation, on common adversaries, and have potential claims based upon on similar legal theories and evidence. Therefore, Joe Wagner was allowed to view this document without waiving privilege because of the parties' joint interest agreement.

Additionally, Plaintiff previously asserted a claim of attorney-client work product and attorney-client communication privilege to a 2006 version of this document by including it in its privilege log. Ex. 12, June 22, 2009 BSI privilege log. *See Victor Stanley, Inc. v. Creative Pipe*, 250 F.R.D. 251, 267 (D. Md. 2008) (privilege log is the first step in asserting and maintaining privilege). Plaintiff has also asserted its claim of privilege to this document to Connexus and Hydra. *See* Exs. 1-2 and DE # 290. Thus, Defendants had notice of this privilege claim when Plaintiff produced its privilege log regarding its document requests. Document No. 2 on that log is an earlier draft of the document currently in dispute.[4] The version that is at issue here is the same base document, but it contains additional information gathered by BSI over the intervening two years, and was used for purposes of seeking legal advice and legal representation in 2008. Ex. 9 at ¶¶ 8-9; Ex. 10 at ¶¶ 9-10; Ex. 11 at ¶¶ 9-10.

Plaintiff's treatment of this document, including earlier drafts of it, over the course of more than three years is consistent with an expectation of privilege. Furthermore, the document was created with the assistance of, and direction from counsel. Finally, it was created for the purpose of seeking legal advice. Therefore, it is subject to both the attorney-client privilege and the work product privilege.

### B.     The Document was Inadvertently Produced.

---

[4] Kraft Defendants' pending motion to compel (DE# 209) includes this earlier version.

The document was accidently forwarded to three of Plaintiff's experts on February 12, 2008, along with several other documents that were necessary for these experts to perform their roles as expert witnesses in this case.  One of BSI's counsel in this matter was also copied on the forwarding message.  Mere hours after it was sent, the inadvertent production was discovered and Paul Wagner took immediate efforts to have the subject memorandum destroyed before it was reviewed by those experts.  Each expert was contacted and did destroy the document without reviewing it.  *See* Exs. 4 and 6.; *See also* Ex. 5, J. Klensin Decl. at ¶¶ 11-15; Ex. 7, P. Resnick Decl. at ¶¶ 13-16; Ex. 8, J. Levine Decl. at ¶¶ 11-15.

While the expert recipients deleted the document without having read it, BSI counsel retained a copy of the related correspondence on which he had been copied.  Sixteen months later, when counsel compiled communications with experts pursuant to 26(a)(1)(A)(ii), the three emails, from Paul Wagner to each of Plaintiff's three experts, were inadvertently included in expert production.  Plaintiff's counsel was unaware of this inadvertent production to the Defendants until the document was attached to Defendants' December 18, 2009 motion for summary judgment.  *See* Ex. 1.  Plaintiff's counsel complied with the Confidentiality Order by identifying the document, in writing, requesting its return and requesting that Connexus and Hydra Defendants' make no further use of the document.  *Id.*  Regarding the document as sent to Dr. Klensin, this action was taken just days after Plaintiff's counsel learned of the inadvertent disclosure and was well within the 21 days provided in the Confidentiality Order.  The Levine and Resnick copies were discovered by Plaintiff's counsel as part of preparation for the Connexus and Hydra claw back motion. DE # 290; Ex. 13, J. Newton Decl. at ¶¶ 6-7.  At this time, Plaintiff's counsel also realized that a similar request should be provided to Kraft, seeking return of the document and its copies.  Such notice followed three days later.  Ex. 3. Although

notice to Kraft was outside the 21-day limit, Plaintiff did timely move to enforce its rights to have the document in question returned from three experts and two other defendants almost immediately.  Furthermore, its request to Kraft was made within a reasonable time.

Therefore, it is clear that this document was inadvertently produced to the Defendants and that Plaintiff has generally complied with the Confidentiality Order's provisions regarding its return.

### C.      Under Controlling Law, The Document Must Be Returned.

The test for the clawback of inadvertently produced privileged documents, for diversity cases applying Maryland law, is a balancing approach.  *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 237 (D. Md. 2005) (citing *F.H Chase Inc. v. Clack/Gifford*, 341 F. Supp. 2d 562, 562 (D. Md. 2004)); *see also* Fed. R. Evid. 502(b) and accompanying Explanatory Note.  The test weighs the following factors:  "(1) the reasonableness of the precautions taken to prevent the inadvertent disclosure; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay in measures taken to rectify the disclosure; and (5) overriding interests of justice."  *F.C. Cycles Int'l Inc. v Fila Sport, S.p.A.*, 184 F.R.D. 64, 76 (D. Md. 1998) (citing *In re Grand Jury Investigation*, 142 F.R.D. 276, 278-79 (M.D.N.C. 1992)).  After a breach of confidentiality, the privilege holder bears the burden of convincing the court that the above factors weigh against waiver.  *Id.* at 70.

Regarding the reasonableness of BSI's precautions, the nature of Plaintiff's inadvertent disclosure satisfies this test.  The document in question was sent under separate cover to each of Plaintiff's experts within a few moments on February 12, 2008.  The inadvertent disclosure was realized almost immediately thereafter, and that same day, Wagner sent a retraction request to each expert.  *See* Exs. 4 and 6; *see also* Ex. 5 ¶¶ 13-15; Ex. 7 at ¶¶ 15-17; Ex. 8 ¶¶ 13-15;.  Each

expert confirmed his deletion and non-review to Wagner within 24 hours.  *Id.*  This quick

detection and action indicates that Plaintiff took reasonable precautions to prevent the production

of this document.

Regarding the number of inadvertent disclosures, BSI's production of Exhibit 22 was

only Plaintiff's fourth inadvertent production out of the over 20,000 pages of BSI documents,

plus hundreds of thousands of  native files, which include personal email correspondence, that

have been produced by Plaintiff in this case.  Additionally, over 15,000 pages of expert

documents and tens of thousands of pages of subpoena productions have been produced to

Defendants.  Ex. 13 at ¶ 3.  The fact that a very small number of documents were inadvertently

produced, especially in relation to the total size of the production, indicates that BSI is entitled to

have this document returned.  *See In re Grand Jury Investigation*, 142 F.R.D. at 280 (holding 18

inadvertently disclosed documents out of 22,000 documents produced was "low ratio" and did

not constitute waiver); *Lois Sportswear, USA v. Levi Strauss & Co.*, 104 F.R.D. 103, 105

(S.D.N.Y. 1985) (holding 22 privileged documents inadvertently produced out of 3,000 copied

and 16,000 reviewed did not constitute waiver); *Kansas-Nebraska Natural Gas Co. v. Marathon

Oil*, 109 F.R.D. 12, 21 (D. Neb. 1984), (holding inadvertent production of one privileged

document out of 75,000 produced did not constitute waiver); *Monarch Cement Co. v. Lone Star

Indus., Inc.*, 132 F.R.D. 558, 560 (D. Kan. 1990) (holding inadvertent production of eight pages

of privileged documents out of more than 9,000 pages produced did not constitute waiver).

Furthermore, courts have found that this factor is strongly probative of the first factor.  *In re

Grand Jury Investigation*, 142  at 280 ("The number of privileged documents inadvertently

produced is a separate factor under the five-factor test, although it probably has its greatest

probative value in determining the reasonableness of the precautions taken during the document

production.").  Therefore, the small number of inadvertently produced documents weighs strongly in BSI's favor.

The extent of disclosure factor also weighs in BSI's favor.  The reason for consideration of this factor, is whether any meaningful confidentiality can be restored.  *In re Grand Jury*, 142 F.R.D. at 281 (citing *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 330 (N.D. Cal. 1985) ("focus [is] on whether there still exists sufficient confidentiality that the court can preserve the privileged nature of the documents despite the disclosure")).  Here, disclosure is restricted to the Defendants' counsel.  Additionally, as the principals involved with this document, Paul Wagner and Joe Wagner, have already been deposed, this document serves no ongoing discovery purpose.  Further, the only use of this document has been the Connexus and Hydra Defendants' inclusion of the document in support of their motion for summary judgment, which was filed under seal.  *See* DE# 257, Defendants' Motion for Summary Judgment; DE#'s 260 and 279, Defendants' Interim Sealing Motion and Motion Challenging Confidentiality, and Plaintiff's Opposition thereto.  That use has been challenged and a request has been made to strike reference to the document.  [DE # 290].  Therefore, the privileged and confidential nature of the document can be preserved despite the inadvertent disclosure.  However, if the document is not returned, it is likely to be used by Defendants at trial, thereby exposing fact-finders to an otherwise privileged document.

BSI notes that it argued in its Response to Defendant Hydra's Motion for Return of Inadvertently Produced Privileged File [DE # 247], that this Court should adopt the bright-line Rule 26 test from *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d. 697, 717 (6th Cir. 2006), *reh'g denied in part*, (Oct. 3, 2006) ("Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney work product, given to testifying experts.").  The

current instance is distinguishable from that position because BSI's experts deleted these

documents without ever having viewed them.  BSI's experts have stated unequivocally that they

never even opened up the subject files – and their contemporaneous responses to Plaintiff's

request to destroy the documents bolster their affidavits.  *See* Exs. 4 and 6; *See also* Ex. 5 ¶¶ 11-

15; Ex. 7 at ¶¶ 13-17; Ex. 8 at ¶¶ 11-15.

As BSI's experts never opened the file that contained the subject document, in essence it

was never disclosed to them.  Therefore, the only disclosure of the document was to Defendants.

An inadvertent disclosure, only to a defendant, who is subject to a confidentiality order, is far

from widespread.  This factor, therefore, weighs in BSI's favor.  *See In re Grand Jury*

*Investigation*, 142 F.R.D. at 281 (fact that documents were not yet shown to experts and

witnesses weighed in favor of non-waiver); *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601,

2009 U.S. Dist. LEXIS 14160, at *19 (E.D. Mich. Feb. 24, 2009) (finding extent of disclosure

weighed against waiver where inadvertently produced document shown only to opposing

counsel); *Nilavar v. Mercy Health Sys.*, No. 3:99cv612, 2004 U.S. Dist. LEXIS 30531, at *18

(S.D. Ohio Mar. 22, 2004) (same).

The lack of delay in rectifying the disclosure also favors BSI.  When BSI inadvertently

produced the document to its experts, it discovered its error and took corrective action in a matter

of hours.  There was no delay.  Furthermore, BSI's experts deleted the files expeditiously – in

one case, within seven minutes of being notified.  *See* Ex. 4.  When Plaintiff's counsel learned

that the document had been inadvertently disclosed to Connexus and Hydra, via their December

18th filing, they requested its return several days later. There was no significant delay requesting

the return of the document.  While Plaintiff's counsel missed the Confidentiality Order's 21 day

window to request the return of privileged material from Kraft, it still made a timely request,

especially since there is no indication that Kraft has relied in any way upon the document.  DE# 87-2 at ¶ 8.  *See e.g.*, *Angell Invs., L.L.C. v. Purizer Corp.*, 01 C 6359, 2002 U.S. Dist. LEXIS 11545 (N.D. Ill. June 26, 2002) (holding that there was no waiver where the court found that assertion of privilege within two months was not unreasonable).  Therefore, Plaintiff did not delay in acting to rectify the inadvertent disclosures.

The interests of justice factor also requires Defendants to return the subject document and refrain from taking advantage of its contents.  Plaintiff was timely in requesting destruction of the document before its experts reviewed it and was timely in requesting the document's return from the Connexus and Hydra Defendants.  Plaintiff's similar request to Kraft was made in a reasonable amount of time.  Furthermore, there have been a small number of previous inadvertent disclosures which indicates that reasonable measures were in place to prevent disclosure.  Additionally, Kraft has not relied upon this document, and the inadvertent disclosure has been confined to Defendants' counsel, all of whom are subject to a Confidentiality Order.  The fact that a version of the document was on a privilege log surely should have put counsel on notice that the document was privileged and not to be used.  Thus, the interests of justice factor favors the retention of the privilege and return of the document.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court order Defendants to return the subject documents and destroy all copies and expunge any document reflecting the contents of these inadvertently produced documents.

Date: February 24, 2010

Respectfully Submitted,

_____/s/_____

Thomas M. Barba (US DC-MD Bar No. 28487)
John J. Duffy (US DC-MD Bar No. 28613)
Jennie L. Kneedler (US DC-MD Bar No. 28617)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2010, the foregoing *Plaintiff's Motion*

*for Return of Inadvertently Produced Privileged Document and Order Striking All Reference to*

*Said Document* was filed electronically via the Court's CM/ECF system, and served

electronically on the below-named parties via the Court's electronic notification system:


Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
John K. Roche (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
202-434-1613 (Telephone)
202-434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com


Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft*
*Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, DC  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendants Connexus Corp. and*
*Hydra LLC*


_____
Thomas M. Barba