IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BEYOND SYSTEMS, INC. | : Case No. 8:08-CV-00409-PJM |
| Plaintiff, | : |
| v. | : The Honorable Peter J. Messitte |
| KRAFT FOODS, INC., et al., | : Magistrate Judge Charles B. Day |
| Defendants. | : **REDACTED VERSION** |

## COMBINED OPPOSITION TO MOTIONS FOR
## RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENT AND
## ORDER STRIKING ALL REFERENCES THERETO

Defendant Connexus Corp. files this Opposition to Plaintiff Beyond Systems, Inc.'s

Motions for Return of Inadvertently Produced Privileged Document and Order Striking All

References Thereto filed on February 9, 2010 (DE# 290) and February 24, 2010 (DE# 303).

## INTRODUCTION

For the fourth time in this case, BSI seeks to convince this Court that communications

between Paul Wagner/BSI and Joe Wagner/Hypertouch reflecting their litigation crusades are

privileged under an alleged oral "joint interest agreement" and the common interest doctrine.

(DE# 152-2 at 3; DE# 209-21 at 2-4; DE# 279 at 7-8.)  However, this fourth attempt, which seeks

the return of Exhibit 22 to Connexus's summary judgment motion filed herewith under seal as

Exhibit A[1], fares no better than the others, and BSI's motion should be denied.

First, this Court already ruled that similar communications reflecting efforts by Paul

Wagner/BSI and Joe Wagner/Hypertouch to file lawsuits are not privileged under an alleged "joint

---

[1]     FRCP 26(b)(5)(B) allows a party who received allegedly privileged information to "promptly present the
information to the court under seal for a determination of the claim."

interest agreement" or otherwise, and that ruling forecloses all of BSI's arguments that Exhibit 22 is privileged under the same alleged "joint interest agreement."

Second, there is no credible evidence demonstrating that the alleged "joint interest agreement" ever existed, and BSI's sworn deposition testimony and conduct refutes that BSI's "treatment of [Exhibit 22], including earlier drafts of it, over the course of more than three years is consistent with an expectation of privilege." (DE# 290 at 8; DE# 303 at 8.)  Thus, without any joint interest agreement, BSI's intentional disclosure to Joe Wagner/Hypertouch, a separate company, waived any privilege that may have attached to Exhibit 22.

Third, even assuming a "joint interest agreement" existed, the common interest doctrine does not apply because the alleged agreement did not involve any specific litigation and is therefore invalid, and because the alleged agreement ended <u>before</u> Exhibit 22 was disclosed to Joe Wagner/Hypertouch.  Further, Exhibit 22 reflects matters in which Joe Wagner/Hypertouch had absolutely no shared interests with BSI, as the Wagners admit that Exhibit 22 contained "information prepared in connection with potential <u>representation of BSI</u>" and not Joe Wagner/Hypertouch. (DE# 290-12 at ¶¶ 9-10 (emphasis added); DE# 290-13 at ¶¶ 9.)

Fourth, even assuming the common interest doctrine applied, the Wagners waived privilege over the subject matter in Exhibit 22 by publicly disclosing their efforts to file lawsuits in deposition testimony and publicly filed documents.

Finally, BSI cannot retrieve Exhibit 22 under the Protective Order because BSI recklessly, if not intentionally, disclosed it (BSI produced it to Connexus/Hydra and the Kraft Defendants <u>twelve times</u>), BSI admits that it failed to timely request the document's return, and all of the factors that courts consider when determining whether a producing party is entitled to claw back an allegedly privileged document mandate denying the relief BSI seeks.

## ARGUMENT

**I.**   **EXHIBIT 22 IS NOT PRIVILEGED UNDER THE ALLEGED "JOINT INTEREST AGREEMENT" OR THE COMMON INTEREST DOCTRINE.**

**A.**   **Legal Standard.**

The common interest doctrine "is an extension of the attorney-client privilege and 'presupposes the existence of an otherwise valid privilege.'" *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 415-416 (D. Md. 2005) (quoting *In re Grand Jury Proceedings 89-3 & 89-4*, 902 F.2d 244, 249 (4th Cir. 1990)).  For the doctrine to apply, "courts require that the common interest must be legal in nature for the privilege to apply to any information shared among the parties." *Id.* (citing *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996)).  Thus, the "proponent of the joint defense/common interest privilege must establish that when communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Id.* (quotations and citation omitted).  In determining whether the common interest applies, courts focus on "the circumstances surrounding the disclosure of the privileged documents to a jointly interested third party." *Id.* (citations and quotations omitted).

For the reasons set forth below, BSI cannot show that Exhibit 22 is privileged under the common interest doctrine.  Thus, BSI waived any privilege Exhibit 22 may have had when BSI disclosed it to Joe Wagner/Hypertouch, and its motions must be denied. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (waiver occurs "when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege" because "[s]uch a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege") (internal citation omitted).

**B.**     **The Court Already Disposed of BSI's Privilege Claim.**

The Court already determined that communications between Paul Wagner/BSI and Joe

Wagner/Hypertouch reflecting their collaborations over lawsuits are not privileged under an

alleged joint interest agreement.  In opposing the public filing of an email that demonstrates the

Wagner brothers' strategy to maximize their statutory damages through lawsuits ("Email"), Paul

Wagner/BSI argued that the Email reflected "communications between Paul and Joe Wagner [that]

were made within the confines of the joint defense agreement BSI and Hypertouch had at that

time." ((DE# 152-2 at 3.)  The Email states:

> At 04:01 AM 12/3/2004 -0800, you wrote:
> >(FYI -- I called your cell phone several times tonight, but only reached
> >your voicemail.)
> Sorry, I went to bed early, except for a drink of water, where I mailed out the sample spam.
> > Wouldn't that recovery be twice as large if we teamed up?
> >I forget the logic behind his possible reluctance to sharing recovery…
> Tentatively, we could get $1375 per spam.  BS should get $500. So that's 100% of 1375, versus 50% of $1875 (i.e. = %100 of $937.5) or roughly 1/3 less if we split 50-50% than if we get 100% and we get award the max damages.
> Joe

(Ex. B.)  In response, Connexus argued that (1) BSI failed to prove the existence of any joint

interest agreement, (2) the Email is not privileged because efforts by the Wagners to manufacture

lawsuits had already been publicly filed, and (3) Joe Wagner/Hypertouch waived any privilege

through deposition testimony elicited by Defendant Kraft about the Email. (DE# 167 a 3-6.)  The

Court agreed with Connexus and found that it "is not persuaded that [the email] contains privileged

information" and that any privilege that existed was waived because the Email was disclosed to

Kraft. (DE# 188 at 2.)

There are no material differences between the Email and Exhibit 22.  In both cases, Paul Wagner/BSI argued that the documents reflect communications subject to a joint interest agreement with Joe Wagner/Hypertouch. (DE# 152-2 at 3; DE# 290 at 6-7; DE# 303 at 6-7.) Further, the subject matter of the Email and Exhibit 22 is identical, as both reflect efforts by Paul Wagner/BSI to file lawsuits to maximize recovery of statutory damages.  Thus, the Court's finding that the Email is not privileged applies equally to Exhibit 22, and the Court should deny BSI's motion for this reason alone.[2]

### C.       There is no "Joint Interest Agreement."

To avoid suffering the consequences of waiving any privilege that might have applied to Exhibit 22, BSI sweepingly states that it "shared [Exhibit 22] with Hypertouch under a joint interest agreement." (DE# 290 at 3; DE# 303 at 3.)  However, there is not a shred of credible evidence demonstrating that Paul Wagner/BSI and Joe Wagner/Hypertouch entered into any "joint interest agreement," and the conduct of the Wagners at the time this alleged agreement existed proves that no such agreement ever existed.

First, it is simply unbelievable that no written agreement exists notwithstanding that three lawyers from three different law firms were involved in these alleged agreements.  Quite simply, the absence of any written agreement under these circumstances can only mean that no agreement ever existed. (DE# 290 at 6; DE# 303 at 6.)

Second, Exhibit 22 on its face does <u>not</u> claim it is subject to any joint interest agreement or the common interest doctrine, thereby further demonstrating that no agreement ever existed.  (Ex. A.)  Presumably, Steve Wagner would have designated Exhibit 22 as subject to the agreement if

---

[2]       Although Paul Wagner/BSI provided declarations and other information with its instant motions, that evidence is not credible as explained herein, and the Court should ignore it for this reason and because Paul Wagner/BSI already had ample opportunities to establish the existence of any alleged "joint interest agreement" in prior filings. (*See* DE# 152-2 at 3; DE# 209-21 at 2-4; DE# 279 at 7-8.)

one actually existed and the common interest doctrine it if truly applied.  Similarly, Paul Wagner

claims in his declarations that Exhibit 22 is "covered by the attorney work product doctrine" and

that he has "personal knowledge" about the doctrine, yet he did not designate the document as

subject to a joint interest agreement or the common interest doctrine either. (DE# 290-12 at ¶¶1, 9-

10; DE# 303-10 at ¶¶1, 9-10.)  And, the fact that Exhibit 22 does state "Attorney Client Work

Product – Confidential" means that BSI and its counsel deliberated about designating the

document and then intentionally omitted any reference to any joint interest agreement (and the

common interest doctrine) because no such agreement existed.

Third, the Wagners did <u>not</u> make any claim of privilege under any joint interest agreement

or the common interest doctrine notwithstanding the requirement in FRCP 26(b)(5) that a party

claiming privilege "expressly make the claim" and "describe the nature of the documents" such

that other parties can "assess the claim." (DE# 290-14; DE# 303-12.)  Thus, either is no joint

interest agreement existed or BSI waived privilege by failing to assert the common interest

doctrine. *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230

F.R.D. 398, 418 (D. Md. 2005) (waiver found where counsel failed to assert the attorney-client

privilege); *Elkton Care Center Associates Ltd. Partnership v. Quality Care Management, Inc.,* 145

Md. App. 532, 546-47 (2002) (same).

Fourth, the Wagners (through Joe Wagner/Hypertouch) already publicly filed documents

reflecting their litigation efforts without designating such documents as subject to any joint interest

agreement, thereby further demonstrating that no joint interest agreement existed (and that subject

matter waiver resulted as explained below).  For example, the Wagners filed publicly the following

communication reflecting activities between the Wagners and lawyers (Steve Ring and John

Fallat) allegedly involved in the agreement:

> Joe,
>
> Steve Ring and I are completing affidavits and complaints for KWU and Gevalia.
>
> What are you and John Fallat up to at this point, and for which case(s) are you preferring we postpone making contact with the defendants?  Wouldn't it add motivation to settle if we weighed in?
>
> -- Paul

(Ex. C at 3.)[3]  The Wagners also publicly disclosed their views on what constitutes a "deceptive"

email under the law which, no doubt, must have reflected communications with their lawyers:

> Joe,
>
> FYI, lately we seem to be getting a lot of deceptive spam through Hypertouch's servers advertising "kennedy-western" and "kw.edu". These spams exhibit false info in the headers concerning their origin or path of transmission and, in these and other ways, appear to violate MD, CA and US law.
>
> We are interested in pursuing legal claims against those who are responsible.
>
> -- Paul

(Ex. C at 1.)  The Wagners would not have publicly disclosed these and other communications

(some of which are attached hereto as Exhibit C) if a joint interest agreement truly existed.

Fifth, Paul Wagner/BSI voluntarily and openly testified about his litigation efforts with his

brother Joe Wagner/Hypertouch, including the process by which the brothers exchanged affidavits,

thereby further evidencing that the Wagners did not treat such communications as privileged:

> Q. So he [Joe Wagner] would give you information for your affidavits, and you would put them in yours?
>
> A. Right, or he might just tell me over the phone to look at certain things.  Since I possessed the same e-mails since BSI was a recipient of the e-mails he could give me pointers over the phone about what to

---

[3]     Connexus's motion to challenge confidentiality (DE# 132) fully describes how Joe Wagner/Hypertouch published this and other similar documents in his/its publicly available website.

look for, but I don't recall specifically what.  I was asking for his
findings, investigative findings, but I don't know what he had at that
time.

Q. Has your brother Joe given you investigative findings for your
lawsuits over the years?

MR. ONORATO: Objection; form.

A. Yes.

(Ex. D, P. Wagner Dep. at 669:20-670:11; *see also Id.* at 662:6-23; 666:15-24; 668:5-15.)

Likewise, Joe Wagner/Hypertouch testified about his efforts to help his brother Paul Wagner/BSI

file lawsuits and communications he had with lawyers that were involved in the alleged joint

interest agreement:

Both BSI and Hypertouch have independent claims for the spam, and
so we were -- what we were talking about here is, if we had litigation
together, Hypertouch would be awarded damages, you know, per CAN
spam in California, based upon California law, and BSI would get
claims as the recipient of the spam, according to Maryland law, and
also as the recipient, you know, is entitled to damages.  And so the
discussion was, and the context that we were discussing with the
attorneys is, if we did do a co-defense, part of the issue is how, if we
combined together on their -- how the damages would parse out,
which affects, for example, how the attorneys get paid and so on,
versus if they did a Maryland-only action, and a California-only action
and do it independently, how you would parse out those damages. And
so it's a discussion of -- Hypertouch is entitled to specific damages and
BMI [sic] is entitled to specific damages, and so it is, in fact, just how
that mathematics works when those two suits are combined together,
because Hypertouch is entitled to, you know, some amount of
damages.

(Ex. E, J. Wagner/Kraft Dep. at 159:12-160:21 (emphasis added).)  Although the Wagners clearly

coordinated their lawsuit endeavors with each other, they cannot credibly claim that

communications relating to their crusades are protected under any joint interest agreement given

these and other extensive voluntarily disclosures.

Sixth, Steve Wagner does <u>not</u> claim in his carefully worded declaration that his brothers Paul Wagner/BSI and Joe Wagner/Hypertouch actually entered into any joint interest agreement but only that the idea of one was "discussed." (DE# 290-11 at ¶ 7; DE# 303-9 at ¶ 7.)  And, the fact that Steve Wagner did not state that an agreement was actually reached means that no agreement ever existed.

Seventh, Paul Wagner's declarations conflict with sworn deposition testimony and cannot be trusted.  Paul Wagner/BSI now claims that (1) he entered into a joint interest agreement with Joe Wagner/Hypertouch in 2002, (2) this 2002 agreement was merged into or "overlapped" with a 2004 agreement, (3) he disclosed Exhibit 22 – which was created in 2008 – to Joe Wagner/Hypertouch pursuant to this agreement, and (4) this merged/overlapping "<u>agreement has been in continuous effect from 2004 until the present</u>." (DE# 290-12 at ¶¶ 7- 9 (emphasis added); DE# 290 at 5-6; DE# 303-10 at ¶¶ 7-9 (emphasis added); DE# 303 at 6.)  However, Paul Wagner/BSI previously declared that the alleged joint interest agreement existed only "[f]or a time in 2004 and 2005," and that he "not perceive this joint interest agreement to be separate from the agreement between BSI, Hypertouch and Steve Wagner." (DE# 209-22 at ¶ 8.)  Paul Wagner/BSI also previously testified unequivocally that this joint interest agreement ended and that it does <u>not</u> continue today:

> Q:   When did you enter into this agreement?
> A:   I think it was in 2004.
> Q:   And is that an ongoing agreement that still exists today?
> A:   No.  There are other agreements in place today.

(Ex. D, P. Wagner Dep. at 678:11-15; *see also Id.* at 676:22-679:2.)

Further, it defies belief that Paul Wagner/BSI can now remember the details of this alleged joint interest agreement in 2002/2004 to claw back an exhibit that is detrimental to BSI's case but

could not recall events about collaborating with Joe Wagner/Hypertouch to file lawsuits when confronted at his deposition with contemporaneous emails that he authored:

> Q. Going back to page 8 of this exhibit, right in the middle of the page you state, I will forward you a draft of my affidavit shortly tonight. Do you see that?
>
> A. Yes.
>
> Q. What was the affidavit you were -- or strike it.  Did you send an affidavit to your brother?
>
> A. I don't recall. Yeah. I don't know.
>
> Q. Do you know why you stated, I will forward you a draft of my affidavit shortly tonight, in this e-mail?
>
> A. It looks like I was planning to forward him a draft of my affidavit.
>
> Q. Affidavit pertaining to what?
>
> A. I -- I'm not clear. This is like four and a half years ago. It would seem reasonable that it had to do with Kennedy-Western, but there were other participants in Kennedy-Western e-mails. So I'm not sure what, what my interest was there. I'd have to look on my calendar to see what, what my main spam battles were at the time.

(Ex. D, P. Wagner Dep. at 662:6-23.)

Finally, Joe Wagner/Hypertouch's declaration cannot be trusted either, as he also claims that the "[a]greement has been in continuous effect from 2004 until the present" notwithstanding his brother's clear testimony and sworn statements to the contrary. (DE# 290-13 at ¶ 8; DE# 303-11 at ¶ 8.)  Joe Wagner/Hypertouch also claims that Hypertouch is currently a "California-based Internet service provider." (DE# 290-13 at ¶ 2; DE# 303-11 at ¶ 2.)  However, Joe Wagner, who is Hypertouch's only employee and shareholder, vacated his California apartment (which also served as Hypertouch's "place of business") and moved to Massachusetts by no later than July 2009. (Ex. F, World Avenue's Opposition to Motion to Quash.)

At bottom, there is no credible evidence that any joint interest agreement ever existed. And, without a joint interest agreement, and because BSI admits that Exhibit 22 "was reviewed by Joe Wagner of Hypertouch Inc.," BSI waived privilege and BSI's motion must be denied. (DE# 290 at 5; DE# 303 at 6.)

### D.   The Common Interest Doctrine Does Not Apply to Exhibit 22.

The common interest doctrine does not apply even assuming that a joint interest agreement existed because the alleged agreement is invalid, Paul Wagner/BSI disclosed Exhibit 22 to Joe Wagner/Hypertouch after the alleged agreement terminated, and the Wagners did not have identical shared interests in the matters referenced in Exhibit 22.

### 1.   The alleged "joint interest agreement" is invalid.

The Fourth Circuit only applies the common interest privilege where information is shared "by agreement relating to some shared actual or imminent, <u>specific litigation</u>." *U.S. v. Duke Energy Corp.,* 214 F.R.D. 383, 388 (M.D.N.C. 2003) (discussing Fourth Circuit's application of the common interest rule) (emphasis added).  Here, the alleged joint interest agreement is invalid because it does not relate to "shared actual or imminent, specific litigation."  Instead, Paul Wagner/BSI merely states that the alleged joint interest agreement existed so that he and his brother Joe Wagner/Hypertouch "could share privileged communications and legal strategy concerning potential litigation matters," and that it "permitted the parties to share privileged information and legal strategy in connection with lawsuits BSI or Hypertouch had filed or were considering." (DE# 290 at 6; DE# 303 at 6.)  BSI's sweeping and vague representations do not even come close to meeting the rigorous and specific requirements imposed by the Fourth Circuit for the common interest doctrine to apply.  Indeed, Paul Wagner/BSI and Joe Wagner/Hypertouch do not in the motions even identify a single piece of litigation in which they allegedly shared any

interest.  Thus, Exhibit 22 cannot possibly be exempt from disclosure under the common interest doctrine.

      **2.**        **Paul Wagner/BSI disclosed Exhibit 22 to Joe Wagner/Hypertouch after the alleged "joint interest agreement" ended.**

The common interest doctrine does not apply to Exhibit 22 even assuming a valid joint interest agreement existed because Paul Wagner/BSI disclosed Exhibit 22 to Joe Wagner/Hypertouch <u>after</u> the alleged "joint interest agreement" ended.  The alleged joint interest agreement ended in <u>2005</u> as explained in Section I(C) above.  Yet, Paul Wagner/BSI admits that Exhibit 22 "was used for purposes of seeking legal advice and legal representation in <u>2008</u>," and that the "current version was reviewed by Joe Wagner of Hypertouch Inc." (DE# 290 at 5, 8; DE# 303 at 6, 8.)  And, although Paul Wagner/BSI testified that "[t]here are other agreements in place today," Paul Wagner explained that the current "agreements" involve Steptoe & Johnson LLP, and Paul Wagner/BSI does <u>not</u> claim in the motions that Exhibit 22 was created or disclosed pursuant to these agreements. (Ex. D, P. Wagner Dep. at 679:3-682:4; 684:2-13; 1132:4-16.)  Thus, the common interest doctrine does not apply because no joint interest agreement existed when Paul Wagner/BSI disclosed Exhibit 22 to Joe Wagner/Hypertouch.

      **3.**        **The Wagners did not have any identical shared interests in Exhibit 22.**

The common interest doctrine "only applies to the exchange of information which falls within the agreed shared interest." *Duke Energy Corp.*, 214 F.R.D. at 388 (M.D.N.C. 2003) (citing *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)).  Further, courts require an "<u>identical</u>, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney." *Neuberger*, 230 F.R.D. at 416 (emphasis added) (citation and quotations omitted).  And, employing joint counsel does not create a common interest. *Id*. at 417.

Here, the Wagners admit that Exhibit 22 reflects matters in which Joe Wagner/Hypertouch had absolutely no shared interests with Paul Wagner/BSI, as Paul Wagner/BSI and Joe Wagner/Hypertouch both declare that Exhibit 22 reflects "information prepared in connection with potential representation of BSI" – not Joe Wagner/Hypertouch. (DE# 290-12 at ¶ 9 (emphasis added); DE# 290-13 at ¶¶ 9.)  Indeed, Joe Wagner/Hypertouch does not claim that Exhibit 22 was disclosed to him concerning potential representation of Hypertouch.

Further, Exhibit 22 cannot possibly pertain to shared joint litigation interests between the Wagners (other than Joe's willingness to facilitate Paul Wagner/BSI's lawsuits for BSI's benefit). For example, Exhibit 22 indicates that Paul Wagner/BSI ███████████████████████ ████████████████████████████████████████████████████████████ ██████████████████. (Ex. A at 4; DE# 283-18 (Kraft/Hypertouch Settlement Agreement.) Thus, Joe Wagner/Hypertouch could not have any interest in Paul Wagner/BSI's lawsuit against Kraft.  Exhibit 22 also anticipates that ████████████████████████████ but Paul Wagner/BSI testified that he did not know whether Joe Wagner/Hypertouch intended to sue Connexus or Hydra, thereby admitting that Joe Wagner/Hypertouch did not have any interest in BSI's suits against these defendants when Exhibit 22 was disclosed to Joe Wagner/Hypertouch in 2008. (Ex. A; Ex. D, P. Wagner Dep. at 686:7-25.)  And, although Exhibit 22 vaguely claims that ████████████████████████████████████████████████████████████ Exhibit 22 ████████████████████████████████████████████████ ██████████████████ (*See* Ex. A.)  Accordingly, the Wagners did not have the required "identical" legal interests required for the common interest doctrine to apply, and Exhibit 22 is not protected by the common interest doctrine even assuming a valid agreement existed when Paul Wagner/BSI disclosed Exhibit 22 to Joe Wagner/Hypertouch.

###### E.       Paul Wagner/BSI and Joe Wagner/Hypertouch Waived Privilege.

Paul Wagner/BSI and Joe Wagner/Hypertouch waived any privilege that might have attached to Exhibit 22 by voluntarily and extensively testifying about their efforts to manufacture lawsuits, and by publicly disclosing other documents reflecting such efforts.  "Generally, the client's offer by his own testimony as to a specific communication with his attorney constitutes a waiver as to all other communications to the attorney on the same subject matter." *Harrison v. State,* 276 Md. 122, 136 (1975); *see also Hawkins v. Stables,* 148 F.3d 379, 384 n.4 (4th Cir. 1998) ("the attorney-client privilege would not apply because [defendant's] testimony during deposition and trial waived it").  Further, a party cannot "assert an attorney-client privilege over matters that were essentially revealed to the world" through public disclosure of documents reflecting matters that the party later claims is privileged. *Agnew v. State*, 446 A.2d 425 (Md. Ct. Spec. App. 1982) (privilege waived when party disclosed matters by publishing a book).

Here, and as explained in Section I(C) above, Paul Wagner/BSI and Joe Wagner/Hypertouch publicly filed documents reflecting their alleged joint litigation strategy. Further, attached hereto as Exhibit G is an email that BSI produced that is substantially similar to (although shorter than) and has the same date as Exhibit 22, yet BSI did not even designate this document as confidential much less privileged.  The Wagners also voluntarily and extensively testified about their joint litigation efforts as explained above.  Because the Wagners waived privilege as to the subject matter respecting their joint litigation endeavors, and because Exhibit 22 involves identical subject matter, Paul Wagner/BSI waived privilege and its request to retrieve Exhibit 22 should be denied.

## II.       BSI CANNOT CLAW BACK EXHIBIT 22.

The Protective Order only allows a producing party to claw back Exhibit 22 if it was "inadvertently or mistakenly produced." (DE# 87-3 at ¶ 8.)  Here, BSI cannot claw back Exhibit 22

even assuming it is privileged because (1) BSI intentionally – or at least recklessly – disclosed it to Connexus, Hydra and Kraft, (2) BSI did not timely request its return, and (3) all of the factors that courts consider when determining whether a producing party is entitled to claw back an allegedly privileged document weigh heavily and convincingly in favor of denying BSI's request to claw back Exhibit 22.

### A.    BSI Intentionally, or at Best Recklessly, Disclosed Exhibit 22.

BSI through its sole employee Paul Wagner intentionally produced Exhibit 22. Specifically, Paul Wagner wrote to BSI testifying expert Levine that "I will be sending you the following file attachments in two subsequent emails," including "ProspectiveSpamCases-BSI-200801222.doc," which is the file name of Exhibit 22. (Ex. G, 2/12/08 P. Wagner/J. Levine Email.)  In a separate email, Paul Wagner/BSI then emailed the document to BSI testifying expert Levine, thereby intentionally disclosing it. (Ex. A.)

Further, even assuming that BSI did not intentionally produce Exhibit 22 to its testifying expert Levine, BSI recklessly produced Exhibit 22 to Connexus, Hydra and Kraft, and the distinction between inadvertent and reckless disclosure is dispositive.  For example, in *Parra*, Steptoe & Johnson LLP (BSI's counsel herein), produced a privileged document to its opponent twice and then sought to strike its opponent's court filing that used the privileged document on the ground that the document was inadvertently produced. *Parra v. Bashas*, 2005 WL 6182338 (D. Ariz. Aug. 29, 2005).  The court denied the producing party's motion to strike, and in doing so, carefully distinguished between inadvertent and reckless production, and found that the producing party's second disclosure constituted "more an act of recklessness than inadvertency" and "if there is no penalty to a reckless disclosure, there will be no incentive to diligently review discovery for privileged documents." *Id*. at *6.

Here, BSI's production of Exhibit 22 was reckless. BSI admits that, on February 12, 2008, it disclosed Exhibit 22 to three of its testifying experts via email, "copied" BSI's counsel on the transmission, and then allegedly retrieved it from BSI's experts. (DE# 290 at 8.) Months later, Connexus and Hydra served document requests asking for all communications between BSI and its testifying experts. In response to these requests, and having acquired full knowledge by no later than February 12, 2008 that Exhibit 22 had been produced to BSI's experts, BSI's counsel scrutinized Exhibit 22 in sufficient detail to designate it as "Confidential"[4] under the Protective Order, and then produced it to Connexus <u>three times</u> on June 19, 2009. (DE# 288 at 9.) Then, even after purportedly correcting inadvertent omissions and inclusions respecting the June 19 production, BSI's counsel produced Exhibit 22 to Connexus and Hydra <u>three more times</u> on June 22, 2009. (*Id.*)[5] Connexus further understands that BSI produced six versions of Exhibit 22 to the Kraft Defendants and thus BSI has produced Exhibit 22 no less than <u>twelve times</u>. BSI had several opportunities to prevent what it now claims is an "inadvertent disclosure," and its production of Exhibit 22 no less than twelve times after carefully reviewing it in sufficient detail to designate it as "Confidential" before producing it can only mean that BSI's production was reckless. And, because the Protective Order's claw back provision does not apply to reckless disclosures, BSI cannot retrieve Exhibit 22.

**B.      <u>BSI Did Not Timely Demand The Return of Exhibit 22</u>.**

Although BSI's represents in its February 9, 2010 motion that it "timely request[ed]" the return of Exhibit 22, BSI concedes in its February 24, 2010 motion that it did <u>not</u> timely request

---

[4]      The "CONFIDENTIAL" designation that BSI's counsel apparently added before production appears in all capital letters on the bottom left-hand corner of each page, and is to be contrasted with other confidential designations on the document.

[5]      Connexus filed the six versions of Exhibit 22 that BSI produced when Connexus filed its most recent motion to challenge BSI's confidentiality designations. (DE#s 288-289.)

the document's return from Kraft. (*Compare* DE# 290 at 4 with DE# 303 at 5.)  Thus, BSI cannot

claw back Exhibit 22 under the Protective Order.

      BSI's arguments in its February 24 motion that "its request to Kraft was made within a

reasonable time," and that BSI "generally complied with the Confidentiality Order's provisions

regarding its return," are unavailing. (DE# 303 at 10.)  Although BSI knew that Exhibit 22 was

disclosed on December 18, 2009 when counsel for Connexus emailed it to counsel for BSI <u>and</u>

<u>Kraft</u> with other sealed documents concerning the summary judgment motion filed that day, BSI

waited 35 days to seek the return of the Exhibit from Kraft. (Ex. H, 12/18/09 Connexus-BSI-Kraft

Email.)[6]  This <u>35 day</u> delay is not "reasonable" even according to BSI, as it claims that Hydra's

motion for return of a privileged document should be denied where Hydra's alleged delay was

shorter. (DE# 247 at 4.)  BSI's new arguments must be rejected.

      **C.**    <u>**Paul Wagner/BSI Waived Privilege Through Inadvertent Disclosure**</u>.

      The factors that courts consider in determining whether a producing party is entitled to

claw back an allegedly privileged document (listed on page 10 of BSI's February 9 motion) weigh

heavily and convincingly in favor of denying BSI's request here.

      **1.**    **"Precautions to prevent inadvertent disclosure"**
                  **and "number of inadvertent disclosures."**

      The absence of any adequate precautions to prevent inadvertent disclosure is clear.  First,

according to a senior paralegal employed by BSI's counsel, BSI has only identified three of the six

versions of Exhibit 22 that were produced to Connexus even <u>after</u> Connexus indicated in its reply

in support of a recent motion to challenge confidentiality that six versions had been produced.

(DE# 290-15 at ¶¶ 5-7; DE# 303-13 at ¶¶ 5-7; DE# 288 at 9.)  Yet, BSI still has not asked

Connexus (or Hydra) to return these three additional versions almost three weeks after Connexus

---

[6]     BSI states that it "notified the Kraft Defendants on Jan. 22, 2009" about the inadvertent disclosure but BSI
actually notified the Kraft Defendants on January 22, <u>2010</u>. (DE# 290 at 4; DE # 290-5; DE# 303 at 4; DE# 303-3.)

advised BSI about these additional disclosures.  BSI cannot possibly have adequate precautions to prevent inadvertent disclosures if it cannot identify such inadvertent disclosures even after Connexus notifies BSI about them.

Second, nowhere in any of the declarations or other voluminous materials filed by BSI is any description of any mechanism or procedure that BSI or its counsel employed to prevent inadvertent disclosures.  Instead, BSI is relying on Connexus to inform BSI about BSI's inadvertent productions after such productions are made, and this is insufficient to protect BSI from the consequences of an allegedly inadvertent production.

Finally, the "number of inadvertent disclosures" that BSI and its counsel made in this case, in addition to BSI's failure to withhold Exhibit 22 under the circumstances discussed herein, further proves that neither BSI nor its counsel took reasonable "precautions to prevent inadvertent disclosure."  Indeed, in addition to producing Exhibit 22 twelve times (6 to Connexus/Hydra and 6 to Kraft), BSI and its counsel (on behalf of Joe Wagner/Hypertouch) in this case alone claimed that no less than 17 other documents had been inadvertently produced. (Ex. I, 10/6/08 J. Kneedler Email; Ex. J, 10/22/08 J. Kneedler Email; DE# 152-2.)  And, the Court already found that the only document that Connexus challenged previously was neither privileged nor confidential because, *inter alia*, BSI waived any privilege status by disclosing the document to others, and the Court should likewise find waiver here. (DE# 188 at 2.)

### 2.      "The extent of the disclosure."

"[T]he extent of the disclosure" also weighs in favor of unsealing Exhibit 22 because, before BSI requested to claw it back, it was widely disclosed to Connexus, Hydra, Kraft and BSI's testifying experts.  Further, Connexus heavily relied on Exhibit 22 in its summary judgment motion to show that BSI lacks standing before BSI requested the document's return. *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 78-79 (D. Md. 1998) (adverse party's reliance on

inadvertently disclosed document resulted in waiver of privilege).  Moreover, BSI's new argument in its February 24, 2010 motion that "there is no indication that Kraft has relied in any way upon the document" is false because Kraft expressly adopted Connexus's standing arguments:  "As the Court explained in *Gordon v. Virtumundo*, 575 F.3d 1040-1055-57 (9th Cir. 2009), and as Connexus developed in its Memorandum, which arguments Kraft adopts, BSI is not a legitimate ISP entitled to pursue claims under either statute." (DE# 283-1 at 27.)  Moreover, the subject matter is already public as discussed above.  Finally, BSI's claim that Exhibit 22 "serves no ongoing discovery purpose" somehow tips the "extent of disclosure" factor in its favor lacks legal basis and is irrelevant anyway because Exhibit 22 is used in Connexus's summary judgment and can be used at trial if the Court denies BSI's motion. (DE# 303 at 12.)  Thus, "the extent of the disclosure" also militates toward denying BSI's motion.

### 3.  "Delay and measure taken to rectify the disclosure."

BSI's "delay and measure taken to rectify the disclosure" also militate toward denying BSI's motion because BSI failed to timely request that Kraft return the document as explained above.  Further, Paul Wagner/BSI emailed Exhibit 22 to BSI's testifying experts and BSI's counsel on February 18, 2008, yet BSI's counsel did absolutely nothing to prevent Exhibit 22 from being produced to Connexus or Hydra in June 2009 even though counsel knew full well that the document had been produced to BSI's experts. (DE# 258-5.)  In fact, BSI's counsel waited almost two years to take any corrective action, as the first measure it employed involved a request to claw back three versions of the document in late December 2009. (DE# 279-1.)  Thus, BSI's delay mandates denying its motion.

### 4.  "Overriding Interests of Justice."

"[O]verriding interests of justice" also mandates denying BSI's motion.  First, "[w]hether fundamental fairness weighs for or against waiver largely depends on the extent of the reliance the

party has made on the document in its case." *F.C. Cycles*, 184 F.R.D. at 78-79 (adverse party's reliance an inadvertently disclosed document resulted in waiver of privilege). Here, Connexus and Kraft significantly relied on Exhibit 22 in their summary judgment motions <u>before</u> BSI notified Connexus that Exhibit 22 had been inadvertently disclosed. Further, Connexus and the Court would be prejudiced by returning Exhibit 22, as the relief BSI seeks involves removing the pending summary judgment motion from the Court's files and replacing it with another filing at the sole expense of Connexus. Connexus should not be punished due to BSI's reckless behavior.

Second, BSI and its counsel need an incentive to start diligently reviewing and producing documents given the number of alleged inadvertent disclosures it made in this case. Indeed, as the court held in *Parra* in denying a request by BSI's counsel to strike a pleading that attached a privileged document that BSI's counsel produced, "if there is no penalty to a reckless disclosure, there will be no incentive to diligently review discovery for privileged documents." *Parra*, 2005 WL 6182338 at *6.

Third, BSI in its February 9 motion notes that "it argued in its Response to Defendant Hydra's Motion for Return of Inadvertently Produced Privileged File, DE# 247, that this Court should adopt the bright-line Rule 26 test from *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d. 697, 717 (6th Cir. 2006), *reh'g denied in part*, (Oct. 3, 2006) ("Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney work product, given to testifying experts.")," and then suggests that "the current instance is distinguishable from that position because BSI's experts deleted these documents without ever having viewed them." (DE# 290 at 12.) BSI then claims that Connexus and Hydra expert Dr. Fred Cohen actually reviewed the document that Hydra seeks to claw back even though Dr. Cohen unambiguously testified and declared that he did not recognize the document much less review it. (DE# 240 at 3-5.) BSI's

claim that its instant motions should be granted because Dr. Cohen reviewed the document that Hydra seeks to claw back is false.  And, regardless, this Court is not bound by Sixth Circuit precedent.  However, justice requires that the Court deny BSI's motion if the Court adopts the bright-line test when ruling on Hydra's motion.

Finally, and without citing a single example, BSI claims in its February 9 motion that "Defendants are likely to publicly post the document based on their previous public posting of confidential documents and similar threats such as one made on January 15, 2010 in connection with a motion to seal." (DE# 290 at 12.)  Connexus has <u>not</u> "publicly posted" any "confidential" documents (but did file documents that this Court found were not confidential after the Court rejected specious confidentiality claims made by the Wagners).  BSI's false claim is a clear effort to mislead this Court, cannot justify granting the relief BSI seeks, and indeed mandates denying it.

## <u>CONCLUSION</u>

For these reasons, Connexus requests that the Court deny BSI's motion.


Dated:  February 26, 2010

_____/s/_____
J. Douglas Baldridge (US DC-MD Bar No. 11023)
Lisa Jose Fales (US DC-MD Bar No. 08141)
Ari N. Rothman (US DC-MD Bar No. 17560)
Robert A. Friedman, (US DC-MD Bar No. 28864)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com
rafriedman@venable.com
*Attorneys for Connexus Corp.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of February, 2010, a copy of the

foregoing *Combined Opposition to Motions for Return of Inadvertently Produced*

*Privileged Document and Order Striking All References Thereto* was filed electronically

in accordance with the Court's CM/ECF procedures, and served upon the below-named

counsel via the Court's electronic filing notification system:

Thomas M. Barba
John J. Duffy
Jennie L. Kneedler
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Avenue, Suite 1800
New York, NY 10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD 20876
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
mike@mikerothman.com
*Counsel for Plaintiff Beyond Systems, Inc. and*
*Third-Party Defendants Joe Wagner and*
*Hypertouch, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th Street N.W., Suite 800
Washington, D.C. 20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
THE LAW OFFICE OF DARRELL J.
GRAHAM, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict.*
*Th. Engwall & Co.*

_____/s/_____
Ari N. Rothman