# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al.* | ) | **REDACTED VERSION** |
| | ) | |
| Defendants. | ) | |

_____)

## PLAINTIFF'S REPLY TO CONNEXUS' OPPOSITION TO PLAINTIFF'S MOTION FOR RETURN OF INADVERTENTLY-PRODUCED PRIVILEGED DOCUMENT AND ORDER STRIKING ALL REFERENCE TO SAID DOCUMENT

Plaintiff Beyond Systems, Inc. ("BSI"), herein replies to Connexus Corp.'s ("Connexus") opposition to Plaintiff's motion [DE# 305] for an order returning an inadvertently-produced privileged document [DE# 257 at Ex. 22 (hereinafter, "Exhibit 22")] and striking reference to that document from all Defendants' pleadings.

## INTRODUCTION

Connexus' attacks on the BSI-Hypertouch, Inc. common interest agreement are desperate, ill supported, and demonstrate a lack of understanding of the common interest rule. Connexus has no basis to challenge the existence of the common interest agreement so it relies on a collection of innuendo, mischaracterization, and unsupported argument. Obviously these efforts fail. Connexus also attempts to argue that waiver has occurred. In this argument they misapply the common interest rule and fail to recognize the Fourth Circuit's reluctance to apply subject matter waiver in matters involving opinion work product. Finally, Connexus opposes the claw back based upon a technical error that multiplied the number of identical copies of the

privileged document that was produced.  Amazingly, Connexus also argues that the consequences of striking reference to the document are too high for it to bear.  However, Connexus admits that it had similar documents that it could have used in lieu of Exhibit 22.  As discussed below, Connexus' arguments are without merit and BSI's motion should be granted.

## I.     EXHIBIT 22 IS PRIVILEGED.

### A.     <u>The Court Has Not Ruled On Exhibit 22, Which Is A Completely Different Document Than The Document This Court Determined Was Not Privileged.</u>

Defendant argues in its opposition [DE# 305] that a seven-sentence email that was previously found to not be privileged [DE# 305, Opp. at Ex. B (hereinafter "Exhibit B")] in some way forecloses BSI's joint interest agreement.  Opp. at 4.  The fact that the Court found there was no privilege regarding Exhibit B [DE# 188] does not mean that Exhibit 22, an entirely different document which is the subject of this dispute, is not privileged.  Furthermore, Connexus misleadingly implies that this issue has been disposed of three times already.  Mot at 1.  However, only one ruling has been entered and there, the Court found that the underlying document was not privileged.  DE# 188 at 2.  The Court did not rule on the validity of the joint defense agreement.  *Id.*

Along with a one-page forwarding email, Exhibit 22 is a nine-page document containing legal analysis applied to specific factual situations where BSI and Hypertouch, Inc. may have similar claims against multiple purveyors of spam.  Exhibit 22 contains an analysis of three separate anti-spam laws (Md. Comm. Code § 14-3001, CAN-SPAM, and Cal. Bus. & Prof. Code § 17529) and applies that analysis to the activities of multiple potential defendants.  The document was *created and updated* under the express direction of attorney Steve Wagner for the purposes of his client's seeking representation in litigation.  *See* DE# 290 at 6-7; *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 771 F. Supp. 149, 151 (S.D. W. Va.

1991) (documents protected under the work product doctrine must be prepared at the direction of an attorney and in anticipation of litigation); 2 Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 1002 (5th ed. 2007) (citing Fed. R. Civ. P. 26(a)(2)(B)); *E.I. du Pont de Nemours & Co. v. FormaPack, Inc.*, 718 A.2d 1129, 1138 (Md. 1998).

In contrast, Exhibit B is merely a general discussion about potential statutory damages. This Court determined that it was not privileged.  DE # 188.  Even a cursory review clearly shows that these are very different documents, and that Exhibit 22 is subject to the attorney-client privilege and attorney work product doctrine.  Defendant attempts to conflate Exhibit B with Exhibit 22 because it is clear that an analysis of Exhibit 22 readily shows that the document is protected.

## B.       There Is A Common Interest Agreement Protecting Exhibit 22.

Defendant attempts to argue that there is no common interest agreement.  Opp. at 5-11. The existence of the common interest agreement and the facts concerning the agreement are exhaustively explained in DE# 290.  Those facts do not bear repeating here in this Reply; however, Defendant's spurious credibility attack does merit a reply.

### 1.       An oral joint interest agreement is effective.

Connexus states that is "unbelievable" that the common interest agreement between BSI and Hypertouch was not in writing.  Opp. at 5.  An oral joint interest agreement is perfectly valid and enforceable.  1 Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, 274 (5th ed. 2007) (oral joint interest agreement is valid); *Fort v. Leonard*, 2006 WL 2708321, at*3 (D.C.C. Sept. 20, 2006) (same). Connexus' skepticism is unsupported, disputed in sworn affidavits, and is nothing more than unpersuasive lawyer argument.  This spurious attack

on the professionalism of the attorneys involved in the oral agreement reflects poorly upon the professionalism of the attacker.

> **2.      A document need not state "common interest doctrine" on its face to be protected from disclosure.**

Defendant next makes the frivolous argument that because Exhibit 22 does not claim on its face that there is a common interest agreement that no such agreement exists. Opp. at 5-6. Connexus cites no support for the proposition that not declaring an exception to a privilege waiver on the face of a document negates that exception. Furthermore, this argument is also logically unsound because it assumes that only documents that are created with the intent of sharing them under a common interest agreement can be protected under this doctrine. This is not the case, and the law clearly recognizes that a document created prior to a common interest agreement can later be shared under an agreement entered into after the document was created. *In re Grand Jury Proceedings 89-3 & 89-4*, 902 F.2d. 244, 249 (4th Cir. 1990) ("The rationale underling the joint defense privilege focuses not on when the documents were generated, but on the circumstances surrounding the disclosure…").

Most importantly, this argument reveals Defendant's basic misunderstanding of the common interest rule. The rule is not a privilege in and of itself, it is an exception to the waiver rule. *Id.* ("Finally, as an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege…"). What Defendant is advocating is that you cannot apply an exception to the waiver rule unless you explain that exception on the face of the document – even though the agreement that creates the waiver does not need to exist when you create the subject document itself. Clearly this argument lacks merit.

> **3.      The common interest doctrine is not a privilege in itself so there is no requirement to disclose it under the Federal Rules.**

Connexus makes the exact same error in its argument that BSI was required to make an express privilege claim regarding the common interest rule under Fed. R. Civ. P. 26(b)(5). Opp. at 6. The common interest rule is not a privilege; it is an exception to the waiver rule. *In re Grand* Jury, 902 F.2d. at 249. As an exception, there is no requirement to declare it as a privilege. Defendant misunderstands the common interest rule.

### 4. Not all documents referencing litigation have an underlying privilege.

Defendant argues that failing to withhold non-privileged documents under the common interest rule indicates there was no common interest agreement. Opp. at 6-7. Yet again, Defendant highlights its misunderstanding of the common interest rule. In order for the common interest rule to apply, there must be an underlying privilege. *Id.* The documents that Connexus cites to at 7 were not prepared at the direction of an attorney, do not contain the mental impressions of an attorney, and were not created for the purpose of seeking counsel. In contrast, Exhibit 22 was prepared under the direction of counsel, contains counsel's mental impressions, and was prepared for the purpose of seeking representation. DE# 290 at 6. Therefore, the documents Connexus cites are inapposite examples because they were not created as privileged documents and therefore the common interest rule would not apply to them. The common interest rule does not protect all communications between the parties, it exempts *privileged* documents from waiver. *Id.* Producing non-privileged documents cannot waive privilege.

### 5. Testimony about non-privileged issues has nothing to do with the common interest rule.

Defendant claims that general discussions about litigation by BSI (and Hypertouch, Inc.) indicate that the communications containing those discussions were not privileged. Opp. at 8. That is correct. The communications that Connexus cites to were not privileged – and therefore had nothing to do with the common interest rule, which as previously stated, does not protect all

communications between the parties, but exempts *privileged* communications from waiver. *Id*. Exhibit 22, unlike the documents cited as examples by Connexus, is privileged.

The only citation used by Connexus that sniffs even a whiff of privilege is the discussion in Exhibit E to Connexus' Opp. about Exhibit B regarding how a potential damages award would be divided in the event of joint-litigation. However, a closer examination reveals that this is simply a discussion of a purely mathematical division of a potential judgment. The Court has held that there was no privileged information in the underlying document and thus the testimony about the document cannot have been privileged. DE# 188. Exhibit B cited by Connexus was found to be not privileged, unlike the document at issue (Exhibit 22), and therefore Connexus' argument fails for the same reasons cited in the previous section.

**6.     There is a long-running common interest agreement involving attorney Steve Wagner, BSI, and Hypertouch, Inc.**

Defendant's argument that where Steve Wagner's declaration stated that he "discussed" a common interest agreement means that there was no such agreement is flat out wrong. Opp. at 9. First of all, Paul Wagner and Joe Wagner unequivocally state that there was a common interest agreement. P. Wagner Decl. at ¶¶ 7-8; J. Wagner Decl. at ¶¶ 7-8. To further clarify, Steve Wagner used the term "discussed" because this was an oral agreement. S. Wager Decl. at ¶ 2. Steve Wagner unequivocally states that an agreement *was reached* between himself, BSI and Hypertouch, Inc. to enter a common interest agreement regarding spam received by both BSI and Hypertouch, Inc. and that agreement remains in effect. S. Wagner Decl. at ¶¶ 1-4. Clearly the agreement exists.

**7.     Paul Wagner's deposition testimony does not conflict with his declaration.**

Defendant cites 31 words from a lengthy and confusing section of deposition questioning as evidence that Paul Wagner's deposition testimony is inconsistent with his declaration.  Opp. at 9.  It is undisputed that Steve Wagner, BSI, and Hypertouch, Inc. have been in a continuous common interest agreement since they received similar or identical spam emails in 2002. P. Wagner Decl. at ¶¶ 7-8; J. Wagner Decl. at ¶¶ 7-8; S. Wagner Decl. at ¶¶ 1-4. Furthermore, Paul Wagner's statement that "[t]here are other agreements in place today" indicates he was always under the impression that BSI and Hypertouch, Inc. had a common interest agreement in regards to certain spam emails since the initial agreement.  Ex. 1, P. Wagner Dep. at 678:13-15.

Defendant overemphasizes one word from a long, high-pressured, and often contentious deposition.  A look at the surrounding testimony makes clear that BSI, through Paul Wagner, has continuously maintained an agreement with Steve Wagner and Hypertouch Inc.  Ex. 1, P. Wagner Dep. at 672:23-679:7.  Part of the confusion in the testimony likely is the result of collateral agreements with various other counsel who represented either BSI or Hypertouch, Inc. at one time.  S. Wagner Decl. at ¶ 3. This testimony does not indicate that Steve Wagner, BSI, and Hypertouch, Inc., have not had a continuous common interest agreement since 2002 or that this agreement does not remain in effect today.  The declarations of the parties to the agreement make clear that there was an agreement.  P. Wagner Decl. at ¶¶ 7-8; J. Wagner Decl. at ¶¶ 7-8; S. Wagner Decl. at ¶¶ 1-4.

In this section, Defendant also questions Paul Wagner's memory because during his deposition he was unable to recall certain emails from 2002 and 2004.  Opp. at 9-10.  First of all, Paul Wagner's ability to recall specifics of individual emails that were sent 6 to 8 years ago has nothing to do with his ability to recall a common interest agreement that he has used periodically over the last 8 years.  Additionally, depositions are not memory tests and the implication by

Connexus that they are is contrary to the law. *United States v. Sabbagh*, 888 F. Supp. 714, 726

n.28 (D. Md. 1993) (citing *United States v. Weidman*, 572 F.2d 1199, 1207 (5th Cir. 1978)

("Since the statement did not pretend to be an exhaustive chronicle of the Burns Harbor mail

fraud, there is simply no inconsistency between its omission of [the defendant's] name and those

portions of [the witness's] subsequent testimony that may have implicated the appellant.")).

### 8.    Joe Wagner is credible.

Defendant provides two reasons why it claims Joe Wagner is not credible. Opp. at 10.

The first reason is based completely on section I.B.7 *supra*. As discussed above, this argument is

meritless. Secondly, Defendant claims that Joe Wagner's claim that Hypertouch, Inc. is a

California based Internet service provider is somehow incorrect because Joe Wagner resides in

Massachusetts. Opp. at 10. Hypertouch, Inc. is incorporated in California as a California close

corporation. J. Wagner Decl. at ¶ 2; DE# 309-47 at ¶¶ 1-2, 4, 11. "[A] corporation shall be

deemed to be a citizen of any State by which it has been incorporated .…" 28 U.S.C. §

1332(c)(1).[1] Joe Wagner's residence has nothing to do with the fact that Hypertouch, Inc. is

based in California, where the bulk of its equipment remains. J. Wagner Decl. at ¶ 4, 11. The

fact that co-defendant Kraft has its headquarters in Glenview, IL does not mean that Kraft is not

a Virginia corporation. DE# 55 at ¶ 11. This ill-founded allegation is a bald attempt to place

before this Court an unflattering pleading filed against Hypertouch, Inc. in an unrelated case.

DE# 305, Opp. at Ex. F. Such tactics further reflect upon the professionalism of Defendant's

counsel.

In summary, while Defendant has demonstrated a profound lack of understanding of the

common interest rule and its counsel's aversion to professional conduct, nothing has been put

---

[1] After the declaration was filed, the Supreme Court clarified this rule. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

forward to cause this Court to discredit BSI's valid evidence that it has had a common interest

agreement with its counsel Steve Wagner and Hypertouch, Inc. continuously since well before

Exhibit 22 was shared among the members of the agreement.

### C.    The Common Interest Doctrine Applies To Exhibit 22.

Connexus incorrectly alleges that the common interest doctrine does not apply, that the

agreement was not in effect when Exhibit 22 was shared, and that Joe and Paul Wagner shared

interests were insufficient as to the matters addressed in Exhibit 22.

### 1.    The common interest agreement is valid.

Connexus claims that the common interest agreement is invalid because it does not relate

to "shared actual or imminent, specific litigation."  Opp. at 11.  However, Connexus misstates

the Fourth Circuit standard for the common interest rule.  The test is:

> Whether an action is ongoing or contemplated, whether the jointly
> interested persons are defendants or plaintiffs, and whether the
> litigation or potential litigation is civil or criminal, the rationale for
> the joint defense rule remains unchanged: persons who share a
> common interest in litigation should be able to communicate with
> their respective attorneys and with each other to more effectively
> prosecute or defend their claims.

*In re Grand Jury Subpoenas*, 902 F.2d. at 249.

The requirement that the agreement relate to "shared, actual or imminent, specific

litigation" is not part of the Fourth Circuit test, but is a district court construct that is not binding.

*U.S v. Duke Energy Corp.*, 214 F.R.D. 383, 388 (M.D.N.C. 2003).  Regardless, Exhibit 22 on its

face states that '███████████████████████████████████'

DE# 257, Ex. 22 at 1.  It is not clear how much more could be shared than the very evidence that

gives rise to the litigation being contemplated.  *See In Re LTV Sec. Litig.*, 89 F.R.D. (N.D. Tex.

1981) (applying common interest rule to potential co-parties to prospective litigation);

*Schanchar v. Am. Acad. of Ophthalmology*, 106 F.R.D. 187, 192 (N.D. Ill. 1985) (applying common interest rule where plaintiffs were pursuing separate actions in different states because "the factual bases for the two cases are sufficiently similar…"); *Transmirra Prods. Corp. v. Monstano Chem. Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960) (applying common interest rule to civil defendants sued in separate actions over same patent).

Defendant also continues with its misleading habit of quoting incomplete sentence fragments from depositions to twist the testimony of the deponents to support its contentions. The sharing that occurred between BSI and Hypertouch, Inc. was not "sweeping and vague"(Opp. At 11) – it all dealt with lawsuits or potential litigation regarding spam that was received by BSI or Hypertouch, Inc.  S. Wagner Decl. at ¶ 4.  In many cases, BSI and Hypertouch, Inc. received the same spam, and in others, they received similar spam from the same exact spammers. *Id.*  This is completely in-line with other courts' applications of the common interest doctrine as cited above.  Furthermore, "[c]ourts have found a community of interest … where both consult the same attorney."  *Cheeves v. Southern Clays, Inc.*, 128 F.R.D. 128, 130 (M.D. Ga. 1989).  This is exactly what BSI and Hypertouch, Inc. have done here.  The common interest agreement most certainly is valid.

> **2.     The common interest agreement was in effect when Exhibit 22 was shared.**

As discussed more fully in section I.B.6. and 7 *supra*, Defendant's allegation that the common interest agreement between BSI and Hypertouch, Inc. has ended is simply incorrect. Opp. at 12.  There has been a continuous common interest agreement in place between attorney Steve Wagner, BSI, and Hypertouch, Inc. since 2002.  That agreement plainly covered the sharing of Exhibit 22 and should be honored.

> **3.     BSI and Hypertouch have identical shared interests.**

Defendant alleges that this court should require a finding of an "identical" shared legal interest and that no such interest exists between BSI and Hypertouch, Inc.  Opp. at 12.  BSI and Hypertouch, Inc. do have identical shared interests.  As described more fully in section I.C.1 *supra,* ████████████████████████████████████████████████████████ ████████████████████████████████████████████████  The fact that Hypertouch, Inc. had already settled with Kraft prior to receiving Exhibit 22 is irrelevant to the common interest agreement.  There is nothing in the rule that indicates that the common interest terminates when one of the member's claim terminates.  Obviously whenever there are separate cases, one will terminate before the other.  The conclusion of a claim does not extinguish the common interest.  Furthermore, this argument goes against the intent of the common interest doctrine for "sharing the fruit of the trial preparation efforts."  *United States v. Am. Tel. & Tel. Co.*, 642 F.2d. 1285, 1299 (D.C. Cir. 1980).  There is no requirement that the cases be simultaneous and it is illogical that the common interest terminates when the first claim is resolved.

Furthermore, Defendant admits that on its face Exhibit 22 states that BSI and Hypertouch, Inc. have claims against the same parties listed in the exhibit.  Opp. at 13.  The fact that Paul Wagner did not know exactly what Hypertouch, Inc. intended to do regarding any of the potential defendants only demonstrates that Paul Wagner did not know exactly what Hypertouch, Inc. intended to do regarding any of the potential defendants.  This lack of specific knowledge does not have any bearing on whether there was an identical interest – which there most clearly was.  Both parties received the same illegal emails and emails from the same spammers.

Finally, Defendant's allegation that pages 8 and 9 of Exhibit 22 lists parties that only BSI was contemplating suit against is not supported in the document – or anywhere else.  The case law is clear:  similar evidence creates a common interest, as is the case here with spam sent by the same potential defendants.  Obviously the interests are shared.

### D.      The Privilege Protecting Exhibit 22 Has Not Been Waived.

Defendant's waiver argument is devoid of support and should be rejected.  Opp. at 14. Conclusive to this issue is the fact that Exhibit 22 is covered by the work product doctrine.  As such, there is no subject matter waiver because "work product, unlike the attorney-client privilege, is not waived merely upon the disclosure of documents to third parties."  *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 389 (M.D.N.C. 2003); *Duplan Corp. v. Deering Milliken Inc.*, 540 F.2d 1215, 1222 (4th Cir. 1976) (broad subject-matter waiver does not apply to opinion work product).

Even if waiver did apply, the testimony cited by Defendant as supporting a privilege waiver as to Exhibit 22 does not have anything to do with Exhibit 22 or its contents.  The fact that Paul Wagner generally discussed that BSI and Hypertouch considered joining in litigation does not waive the privilege as to a detailed legal analysis of how such litigation might be undertaken.  The so-called "similar" documents are equally vague as to how they in any way relate to Exhibit 22 or its contents.  The only document cited that mentions any specifics is Exhibit B, and as discussed in section I.A *infra*, that document is merely a non-privileged, factual document.  The testimony cited by Defendant regarding Exhibit B makes clear that Paul and Joe Wagner are simply figuring out a factual issue regarding potential damages, "how the damages parse out … just how the mathematics works when those two suits are combined." DE# 305, Opp. at Ex. E.

Additionally, BSI disputes Defendant's claims that Exhibit G is substantially similar to Exhibit 22.  Opp. at 14.  While many of the facts in the two documents are the same, Exhibit G to Defendants' Opposition, which was sent to one of BSI's expert witnesses to provide him information upon which he might base an opinion, does not contain any legal analysis -- it merely provides copies of the subject statutes.  Exhibit G explicitly discusses the "factual elements that BSI must establish" (at 4).  This document contains no legal analysis and therefore was not designated as privileged.  Additionally, as a document provided to a testifying expert its production was required.  *Reg'l Airport Auth. of Louisville v. LFG, LLC,* 460 F.3d. 697, 771 (6th Cir. 2006).  As a factual document, its production does not waive privilege simply because the facts that is discloses are similar to the facts used in a legal analysis.  To overstate the obvious, it is the legal analysis that gives rise to the privilege.[2]  In contrast, Exhibit 22 applies various statutes to facts specific to potential defendants.  It is this application of law to the facts which differentiates these two documents.  It is also this analysis which makes this work product and therefore not subject to general waiver.

Since Exhibit 22 is work product, there is no subject matter waiver, and even if there was, in the communications cited, BSI does not discuss the specifics of Exhibit 22 so those communications do not amount to waiver.  Additionally, the documents that Defendant claims are similar to Exhibit 22 contain none of the legal analysis that causes the Exhibit to be privileged.

---

[2] Plaintiff recognizes that certain collections of facts, gathered by an attorney, are privileged.  *Better Gov't Bureau v. McGraw (In re Allen)*, 106 F.3d 582, 608 (4th Cir. W. Va. 1997) (internal cites omitted).  However, the reason those collections are privileged is because they give rise to insight into the gathering attorney's legal analysis.  *Id*.  Here, the factual collection in Exhibit G was presented by BSI's President, not an attorney.

## II.     THIS COURT SHOULD ORDER THAT EXHIBIT 22 BE RETURNED.

### A.     Exhibit 22 Was Inadvertently Produced.

Defendant's claim that BSI's production of Exhibit 22 was intentional or reckless is unfounded.  The facts behind BSI's inadvertence and subsequent remedial measures are fully addressed in DE# 290.  The only new item to be addressed is Defendant's misleading multiplication of the number of times the document was produced.  While Defendant is technically correct that copies of Exhibit 22 were produced 12 times, the facts indicate that this was akin to a single production.  Contrary to Defendant's contention that this production was reckless, there is a reasonable explanation as to how a single error resulted in twelve identical copies of Exhibit 22 being produced.

This document was produced as an attachment to nearly identical emails that were sent to three of BSI's expert witnesses.  The emails in question, as demonstrated in Exhibit 22 itself, contained seven attachments.  Once the first expert email was approved for release in a discovery document production, the subsequent two emails did not require a detailed review of these identical attachments, so the single error was multiplied times three.  Next, identical productions of the expert material were produced to Connexus/Hydra and the Kraft Defendants.  As the productions were identical, there was no reason to re-review the same material.  This multiplied the initial error again from three to six.  Finally, soon after the June 19th production, Steptoe & Johnson's litigation support manager advised that there had been a technical problem which caused certain documents to be incorrectly appended or excluded from the production set.  Newton Decl. at ¶ 6.  Consequently BSI produced a replacement production to all Defendants the following Monday, June 22nd.  BSI made clear that the June 22nd production was a replacement to correct the technical errors – this was not a new production.  *Id.* at ¶ 7. The replacement of the

production was entirely electronic in nature, did not involve anyone familiar with the facts of the case, and required no additional human review.  *Id.* ¶ 8.  There was no reason to conduct a complete re-review of an 8,275 page, 503-document production.  *Id.*  This technical error then multiplied the number of identical copies produced from six to twelve.  The document was not reviewed 12 separate times and deemed fit to produce, it was inadvertently approved for production once, and 11 identical copies were subsequently produced.

### B.  The Demand For The Document's Return Was Timely.

Defendant's argument that BSI did not timely request the return of Exhibit 22 ignores the fact that BSI was timely in its request to Connexus.  Defendant tries to piggyback on an issue that only relates to Kraft.  If and when Kraft raises a timeliness objection BSI will respond to it.  However, here the facts are undisputed that BSI timely provided written notice of its intent to claw back Exhibit 22 from Hydra and Connexus.  The confidentiality order (DE#s 87-3 & 119) does not provide a notice requirement regarding other parties.  It order simply states that the "producing party" provide written request for return of the document within 21-days to the "receiving party."  DE# 87-3 ¶ 8.  BSI requested the return of the document from Connexus within four days of the revelation of its inadvertent production.  The Kraft Defendants are irrelevant to this dispute between BSI and Connexus.  This irrelevance is demonstrated by the recent withdrawal of Hydra's counsel and Hydra's decision to not continue to defend itself in this litigation.  Should Kraft similarly abandon this litigation, for whatever reason, a decision based upon what happened between BSI and Kraft should not have any bearing on Connexus.[3]

---

[3] BSI in no way concedes to allowing Kraft to maintain this document and stands by its arguments as to why Kraft should return the document that are laid out in DE# 303.

C.      **The Five Factor Test For Inadvertent Production Dictates Exhibit 22 Be Returned**

BSI has previously briefed why the balancing test weighs in its favor.  *See* DE# 290 at section C.  However, in reply to Defendant's opposition assertions, BSI provides the following additional information.

1.      **Precautions to prevent inadvertent disclosure and the number of inadvertent disclosures both favor the return of the document.**

Defendant argues that BSI failed to identify 3 or the 6 versions of Exhibit 22 that BSI produced.  Opp. at 15-16.  As discussed in section II.A. *supra*, the June 22nd production was a replacement of the technically flawed June 19th production and therefore BSI has always considered it one production.  Newton Decl. at ¶¶ 5, 7-9.  Because it was the same production, BSI internally deleted the June 19th production.  *Id.* ¶ 8.  The 3 additional versions that Connexus refers to in its brief do not exist as far as BSI is concerned.  Those versions were replaced on June 22nd.  Therefore, BSI maintains that this document was not produced twelve times.  It was produced once to Connexus, with two identical copies.

Furthermore, as previously briefed (DE# 290 at 11), precedent indicates that a small number of inadvertently produced documents when the production itself is large is evidence of inadvertence and the most important factor in determining the reasonableness of the precautions taken.  *See In re Grand Jury Investigation*, 142 F.R.D. at 280 (holding 18 inadvertently disclosed documents out of 22,000 documents produced was "low ratio" and did not constitute waiver); *Lois Sportswear, USA v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985) (holding 22 privileged documents inadvertently produced out of 3,000 copied and 16,000 reviewed did not constitute waiver); *Kansas-Nebraska Natural Gas Co. v. Marathon Oil*, 109 F.R.D. 12, 21 (D. Neb. 1984) (holding inadvertent production of one privileged document out of 75,000 produced did not constitute waiver); *Monarch Cement Co. v. Lone Star Indus., Inc.*, 132 F.R.D. 558, 560

(D. Kan. 1990) (holding inadvertent production of eight pages of privileged documents out of

more than 9,000 pages produced did not constitute waiver); *see also In re Grand Jury*

*Investigation*, 142 F.R.D. at 280 ("The number of privileged documents inadvertently produced

is a separate factor under the five-factor test, although it probably has its greatest probative value

in determining the reasonableness of the precautions taken during the document production.").

Therefore, Defendant's argument to the contrary is unpersuasive.

### 2. The extent of the disclosure favors the return of the document.

BSI demonstrated that Exhibit 22 had not been widely disclosed. *See* DE# 290 at 11-12.

Connexus is incorrect in claiming that it was produced to BSI experts when each expert has

explained that he destroyed the file without ever viewing the privileged document. Notably,

Connexus cites no law in this section – because the applicable law indicates that BSI is correct.

Producing a document, only to counsel, who are under a protective order, is not indicative of

waiver. *Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2009 U.S. Dist. LEXIS 14160, at

*19 (E.D. Mich. Feb. 24, 2009) (finding extent of disclosure weighed against waiver where

inadvertently produced document shown only to opposing counsel); *Nilavar v. Mercy Health*

*Sys.*, No. 3:99cv612, 2004 U.S. Dist. LEXIS 30531, at *18 (S.D. Ohio Mar. 22, 2004) (same).

Furthermore, Connexus improperly attempts to shift the risk of using Exhibit 22 onto

BSI. The document on its face states "Attorney Client Work Product Confidential" therefore

Defendant was on notice that the document might have been inadvertently produced.

Additionally, Connexus claims that it had substantially similar documents in its possession.

"There are no material differences between that Email and Exhibit 22." And "Exhibit E is an

email that BSI produced that is substantially similar to … Exhibit 22." Opp. at 5, 14.

Defendant's decision to use a clearly suspect document instead of one of the " substantially

similar" documents it claims to possess was either reckless or intentional.  In either event,

Defendant's poor decision should not now be construed in Defendant's favor.  If the other

documents were in fact similar, Defendant could have made the same point without incurring the

risk that Exhibit 22 would be clawed back.  Defendant should not be allowed to now use that ill-

advised decision as a shield to avoid its consequences.[4]  Connexus chose to use Exhibit 22 and

now seeks to be absolved of the consequences of that decision.  This should not be allowed.

### 3.    The extent of the delay favors the return of the document.

As described above, there as been no delay in this matter.  Connexus has no right to

attribute delay as to Kraft to itself when BSI timely met all its obligations to Connexus.  *See* DE#

290 at 3-4.  Furthermore, there is no basis for Connexus' claim that there was two years of delay

because of how these documents were sent to the expert witness.  As previously described, the

issue with the expert witnesses was rectified on the very same day – and none of the three

experts ever opened the document in question.  *See* DE# 290 at 4.  Plaintiff became aware that

this document had been produced on December 18th and requested its return on December 23rd.

DE# 290 at Ex. 1. This is not delay.

### 4.    The interests of justice favor the return of the document.

As discussed in section II.C.2 *infra*, Connexus is improperly shifting its decision to use

Exhibit 22 onto BSI.  Defendant's decision to forgo using "similar documents" in lieu of a

document marked "Attorney Client Work Product" on its face was its choice and Connexus

should bear the burden of that choice.  The facts and the law clearly indicate that the small

number of inadvertent disclosures in this case, when compared to the overall volume of

---

[4] We again note that as a separate defendant, Kraft should not be lumped in with
Connexus.  Additionally, BSI reiterates its objection to Kraft incorporating large portions of
Connexus' summary judgment motion, thereby eviscerating the page limits provided under the
rules.

documents, do not favor waiver and do not indicate recklessness.  Defendant's repeated tactic of "willing something to happen" by continuously restating it does not overcome the clear facts and established law.  *See* section II.C.1 *supra*.  Defendant's assertion that Dr. Cohen testified unambiguously about the documents is demonstrably false.  Opp. at 20.  Dr. Cohen testified that he received the subject documents, that they "might have been considered" and that he was uncertain "whether or to what extent I looked at this."  DE# 240 at Ex. 2.  Even in his self-serving declaration, Dr. Cohen's denial of his consideration of these documents is qualified.[5]  In contrast, BSI's experts affirmatively denied ever viewing the privileged document.  DE# 290 at Exs. 5, 6, and 8.  Thus, BSI's argument about the *Reg'l Airport Auth. of Louisville v. LFG, LLC* bright line test is distinguishable.  DE# 290 at 12-13; 460 F.3d. 697, 771 (6th Cir. 2006).  Dr. Cohen could not recall if he reviewed the document whereas BSI's experts unequivocally state that they deleted the document with ever opening it.  In effect, BSI's experts never received the document, whereas Dr. Cohen did.

## CONCLUSION

As described in DE# 290, the factors weigh in BSI's favor and Exhibit 22 should be returned, and all references to it stricken.


Date: March 15, 2010                              Respectfully Submitted,


                                                  _____/s/_____
                                                  Thomas M. Barba (US DC-MD Bar No. 28487)
                                                  John J. Duffy (US DC-MD Bar No. 28613)
                                                  Jennie L. Kneedler (US DC-MD Bar No. 28617)
                                                  STEPTOE & JOHNSON LLP
                                                  1330 Connecticut Ave., NW
                                                  Washington, D.C.  20036

---

[5] "*To the best of my knowledge*, I did not view the documents…*To the best of my knowledge*, I was never asked by counsel for Hydra to view or use Exhibits 220, 221, 223 or 224."  DE #240-5, Ex. 3 to Hydra Mot. at ¶ 3. (emphasis added).

T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Ave.
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March 2010, the foregoing PLAINTIFF'S REPLY TO CONNEXUS' OPPOSITION TO PLAINTIFF'S MOTION FOR RETURN OF INADVERTENTLY-PRODUCED PRIVILEGED DOCUMENT AND ORDER STRIKING ALL REFERENCE TO SAID DOCUMENT was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic notification system:

Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
John K. Roche (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington, D.C.  20005-2003
(202) 434-1613 (Telephone)
(202) 434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus Corp.*

_____/s/   Thomas M. Barba_____