IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | Case No. 8:08-CV-00409-PJM |
| Plaintiff, | |
| | The Honorable Peter J. Messitte |
| v. | |
| | Magistrate Judge Charles B. Day |
| KRAFT FOODS, INC., et al., | |
| Defendants. | |

**<u>CONNEXUS'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Connexus Corp. respectfully files this Reply in Support of its Motion for Summary Judgment (DE# 257).

**<u>INTRODUCTION</u>**

This case presents a number of legal issues tied to the applicability, scope and effect of the California and Maryland statutes governing commercial email, and whether this action is preempted by CAN-SPAM.  While each of these legal issues should be resolved in Connexus's favor, far more practical issues are controlling.  Specifically, none of the statutes or legal principles here allows opportunists like BSI to use the courts to realize enormous windfalls by doing everything within their power to knowingly capture alleged "spam" and then sue over it. Indeed, Joe Wagner/Hypertouch admits that he alone – and no one else, much less Connexus – sent to BSI 97% of the alleged "spam" at issue, and Paul Wagner/BSI admits that he expressly agreed to receive it.  Quite simply, regardless of the impact of the statutes at issue, self-inflicted damages are not recoverable much less at the rate of over $56 million – the amount that BSI seeks from Connexus alone.  A simple illustration from BSI's opposition brief makes the point. BSI's argues that "A man does not consent to having a rock thrown through his window because

he does not erect and close shutters." This evades the real question before this Court. The relevant question is: Does a man subject himself to damages if he throws a rock and another man Joe picks up that rock and throws it at his brother Paul who specifically asked Joe to throw the rock at him? Most certainly, this is not the intended scope of the statutes and legal principles before this Court. Connexus is entitled to summary judgment.

## ARGUMENT

**A.** **BSI Lacks Standing Because It Is Not a *Bona Fide* or Injured ISP.**

BSI takes issue with the position that only *bona fide* internet service providers ("ISPs") that suffered actual injuries may avail themselves of the protections of the statutes at issue, arguing that it has standing merely if it meets the technical definition of an ISP because the words "*bona fide*" and "adversely affected" are "not found in the Maryland and California statutes." (DE# 295 at 18-20.)[1] However, the concurrence in *Gordon* refutes BSI's own argument: "I would presume a *bona fide* requirement even without this legislative history" and "the legislative history is not necessary to reach this conclusion in light of the common-law antecedents that do not favor manufactured claims." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009).[2] If, as Connexus contends, only *bona fide* ISPs that suffered actual injuries have standing, summary judgment must be granted because there is no genuine issue that BSI is not *bona fide* and did not suffer any injuries (or, if it did, then they were self-inflicted). (DE# 257-1 at 12-19; Ex. 1, J. Levine Dep. at 426:15-427 (BSI expert admitting that emails themselves do not prove crashes/damages); Ex. 2, P. Wagner Dep. at 328:4-9; 605:10-17 (Paul Wagner could not identify when BSI's servers crashed).)

---

[1] Connexus cites the page numbers added by the Court's ECF system on the top of each page when referring to filings made in this case. Further, unless otherwise indicated herein, Connexus does not concede any factual or legal assertion in BSI's opposition.

[2] Like the California and Maryland statutes, the phrase "bona fide" is not in the text of CAN-SPAM.

**B.     BSI Consented to Receive the Emails.**

There is no genuine issue of material fact that BSI consented to receive the emails at issue, and whether BSI "opted in or signed up" for the emails is irrelevant to Connexus's consent defense. (DE# 290 at 10.)  Paul Wagner/BSI's entire business operation is set up and intended to capture and receive all emails, resulting in self-inflicted injuries and consent as a matter of law. (DE# 257-1 at 19-21; DE# 295 at 15; DE# 295-42 at ¶ 28 (BSI admits it was a calculated decision to receive and save all alleged spam).)[3]  Indeed, 97% of the emails over which BSI sues were sent to BSI by, and belonged to nobody other than, Joe Wagner/Hypertouch. (Ex. 2, P. Wagner Dep. at 472:11-21; 484:8-22 (listing Hypertouch/non-BSI domains); Exs. 9-11 (sample emails addressed to Joe Wagner/Hypertouch/non-BSI domains); Ex. 3, J. Wagner Dep. at 184:16-24; 198:23-199:19; 301:25-302:10; 309:13-21; Ex. 4, J. Wagner/Hypertouch Resp. to Connexus RFA No. 1.)[4]

BSI's argument that there is no "blocking" requirement is flat wrong:  "One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury." *Hedding v. Pearson*, 173 P.2d 382, 385 (Cal. App. 1946); *Gordon*, 575 F.3d at 1056-1057 (plaintiff lacked standing because it "made no real effort to avoid, block, or delete commercial e-mail").  BSI's related

---

[3]     BSI's claims that it did not consent to the emails because "[n]one of BSI's domains are 'spam traps,'" and that "BSI has not set up email accounts purposefully designed as spam traps or repositories" using "wild cards" or "catchalls," are refuted by binding admissions cited in Connexus's Motion. (*See* DE# 257-1 at 7-9, 20-21.)  And, BSI's prior admissions control, not its self-serving statements in its Opposition or declarations designed to defeat summary judgment. *Erwin v. U.S.*, 591 F.3d 313, 325 (4th Cir. 2010) (accepting admissions in deposition as true on summary judgment rather than contradictory averments in a later-filed affidavit); *S.P. v. City of Takoma Park*, 134 F.3d 260, 273 (4th Cir.1998) (party's "later denial" of earlier "statements does not create a genuine issue of a material fact").

[4]     Emails addressed to hypertouch.com do not belong to BSI contrary to what BSI suggests in its Opposition. (DE# 295 14-15.)  Joe Wagner/Hypertouch – not BSI – first received these emails and then sent them to Paul Wagner/BSI, Joe Wagner/Hypertouch admitted that BSI archived these emails with others that "BSI was archiving <u>for Hypertouch</u>," Joe Wagner/Hypertouch used hypertouch.com emails in <u>Hypertouch</u> lawsuits, and all of the hypertouch.com emails at issue were addressed to nonexistent users. (Ex. 2, P. Wagner Dep. at 143:1-3; Ex. 3, J. Wagner Dep. at 212:3-213:4; Ex. 5, J. Wagner/ValueClick Dep. at 354:15-357:2; DE# 257-1 at 9, 27.)

3

argument that BSI did not consent to receive the emails because it took "precautions by filtering" emails is also wrong. (DE# 290 at 26.) To the contrary, "filtering" means receiving the emails "and then handling [them] differentially" after arrival (consent), while blocking/bouncing involves rejecting emails before they arrive. (Ex. 2, P. Wagner Dep. at 349:7-11; 1171:25-1172:6; 1197:5-1198:2.) And, BSI's claim that "even if BSI used filters to block spam" it would "not stop the influx" of emails does not apply to BSI because BSI never tried to block emails. (DE# 295 at 27; Ex. 2, P. Wagner Dep. at 1195:12-22.)

BSI's attempts to defeat Connexus's consent defense through a strained interpretation of the statutory framework fail also. BSI asserts that because the California statute, § 17529.1(d), "defines the required consent, the more general provisions of Cal. Civ. Code § 3515 are not applicable." (DE# 295 at 28.) However, a "statute dealing expressly with a particular subject controls and takes priority over a general statute" only if the statutes in question are conflicting. *Murillo v. Fleetwood Enters.*, 17 Cal. 4th 985 (Cal. 1998). No conflict exists here, nor does BSI identify any conflict. The statutes would not conflict even assuming § 17529.1(d) applied to ISPs (BSI contends it does not) because § 3515 is a complete defense to BSI's entire action while § 17529.1(d) merely defines the phrase "direct consent" in the context of whether a plaintiff is entitled to statutory damages in addition to other remedies. (Id.) Further, § 3515 is merely a codification of the common law maxim "*volenti non fit injuria*," and statutes "should be construed so as to avoid conflict with common law rules." *Pinney & Topliff v. Chrysler Corp.*, 176 F. Supp. 801, 810 (S.D. Cal. 1959); *People v. Zikorus*, 197 Cal. Rptr. 509, 512 (Ca. App. 1983).

BSI's attempt to defeat Connexus's consent defense under Maryland law fares no better. BSI's representation that "the Maryland cases that Defendants cite are not even about consent,

they are assumption of the risk cases" is wrong. (DE# 295 at 30). These cases expressly address consent. *Janelsins v. Button*, 648 A.2d 1039, 1042 (Md. Spec. Ct. App. 1994) ("<u>consent</u> is willingness in fact for conduct to occur") (emphasis added); *McQuiggan v. Boy Scouts of Am.*, 536 A.2d 137, 141 (Md. Ct. Spec. App. 1988) (discussing consent under the heading "<u>Consent</u> to Battery" and holding that plaintiff "<u>consented</u> to the infliction of injury") (emphasis added). *Katsenelenbogen* merely lists the elements of assault and nothing in that decision suggests that "[c]onsent is only a defense when it negates an element of an intentional wrong" as BSI claims. (DE# 295 at 30.)

For these reasons and those in Connexus's motion, Connexus is entitled to summary judgment because BSI consented to receive the emails.

C. **<u>BSI's Claims are Preempted by CAN-SPAM.</u>**

The gravamen of BSI's complaint is that the emails contain "falsity that impairs or obscures the identification of the sender," and that the emails "obscure[e] the identity of Defendants." (DE# 295 at 37, 41.) However, BSI's claims are preempted because (1) CAN-SPAM preempts all state claims other than those for fraud or, alternatively, preempt BSI's claims, (2) BSI admits that it cannot prove fraud here, and (3) the emails identify Connexus.

1. **CAN-SPAM Preempts State Claims Other Than for Fraud.**

CAN-SPAM preempts all state law claims that do not sound in common law fraud as shown in Connexus's motion. (DE# 257-1 at 22-27.) Further, the Fourth Circuit in *Omega* held that plaintiff's claims were preempted by CAN-SPAM where the statute there "seem[ed] to reach beyond <u>common law fraud or deceit</u>," and the *Gordon* court, after a comprehensive analysis of the CAN-SPAM Act's text and legislative purpose, found that CAN-SPAM "save[s] from preemption <u>only</u> 'statutes, regulations, or rules that <u>target fraud or deception</u>." *Omega World*

5

*Travel, Inc. v. Mummagraphics*, *Inc.*, 469 F.3d 348, 353 (4th Cir. 2006) (emphasis added); *Gordon*, 575 F.3d at 1061-1062 (quoting S.Rep. No. 108-102) (emphasis added).[5] Likewise, *Hypertouch/Valueclick* found that CAN-SPAM "preempts state law claims, including California law, unless such claims are for 'common law fraud or deceit,'" and "[a]ccordingly, any claim must be based on fraud." *Hypertouch v. Valueclick*, No. LC081000 at 18, 22 (Cal. Sup. Court. Jun. 16, 2009) (attached to Connexus's motion as DE# 257-44).  And, *Kleffman* held that CAN-SPAM "left states room only to extend their traditional fraud prohibitions to the realm of commercial emails" while *Gordon/Commonwealth* held "the CAN-SPAM Act preempts [plaintiff]'s state law claims to the extent they allege more than fraudulent conduct." *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *1 (C.D. Cal. May 23, 2007); *Gordon v. Commonwealth Mktg. Group*, 2009 WL 3784606, at *1 (E.D. Wash. Nov. 9, 2009).

Even if Congress intended to save more than common law fraud from preemption, BSI's own authorities evidence that CAN-SPAM – not state law – applies to BSI's claims for emails that "impair[] or obscure[] the identification of the sender":

- " 'The single greatest challenge for anti-spam law enforcement is to identify and locate the source of a particular spam campaign,' *FTC Report: A CAN-SPAM Informant Reward System: A Report to Congress* at 10 (Sept. 2004)," (DE#295 at 6); and

- "The FTC reported to Congress that spammers are exceedingly difficult to identify because they obscure their identities:  'Spammers routinely employ a variety of obfuscation techniques to conceal the source of their email,' *FTC Report:  A CAN-SPAM Informant Reward System:  A Report to Congress* at 10-11 (Sept. 2004)," (DE#295 at 6).

*See Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) ("[p]re-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the

---

[5] The elements for fraud are the same as those for deceit under California and Maryland law. *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 537 (Md. 1982) ("to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice"); *Lazar v. Superior Court*, 909 P.2d 981, 984-985 (Cal. 1996) ("elements of fraud, which give rise to the tort action for deceit," include "intent to defraud" and "justifiable reliance").

6

legislative field). BSI's reliance on *Kilbride* to show that "[f]alsity in the header designed to impair that ability [to identify the sender]" also demonstrates that Congress intended to preempt BSI's claims because *Kilbride* applied CAN-SPAM not state law. (DE# 295 at 40.)

If CAN-SPAM saves more than fraud from preemption, then, according to BSI's own authorities, CAN-SPAM saves only, in addition, actions involving "consumer protection, an area long regulated by the States." (DE# 295 at 32.) Indeed, BSI claims that "CAN-SPAM also refers to falsity and deception in its substantive provisions governing commercial email and requires that those terms be consistent with the definition of the same terms in the FTC Act," and the FTC Act provides "'an act or practice is deceptive if first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" (DE# 295 at 34-35.) And, according to the FTC, "[a] 'material' misrepresentation or practice" is one "which is likely to affect a consumer's choice of or conduct regarding a product." (DE# 257-45, *FTC Policy Statement on Deception*.) Yet, BSI is not a consumer and concedes that it did not suffer any consumer-type injuries so its claims do not survive preemption even under its own standard. (DE# 295 at 17.)

Underscoring that CAN-SPAM preempts BSI's claims, BSI states that "[i]t is notable that Congress conferred standing only on adversely affected [ISPs], but not adversely affected consumers." (DE# 295 at 20.) Connexus agrees because Congress's decision to do so further evidences that it intended to preempt BSI's claims through CAN-SPAM. By saving fraud (or consumer deception) from preemption, Congress allowed consumers to pursue state law fraud remedies and thus did not provide a private right of action to consumers under CAN-SPAM. Likewise, Congress's decision to grant ISPs standing indicates its intent to regulate through

7

CAN-SPAM the types of non-fraud/non-consumer deception claims like the ones BSI alleges here. And, the likely reason why BSI does not pursue CAN-SPAM claims here is because it would be liable to defendants for attorneys' fees and costs if defendants prevail. 15 USCS § 7706(g).

Finally, BSI's claim that CAN-SPAM's savings clause should be interpreted to save only BSI's statutory claims "as distinct from common law claims" because the preemption clause uses the words "statute, regulation or rule" instead of "common law," and its related argument that "the references to 'tort law' and 'acts of fraud'" in § 7707(b)(2) "shows that Congress was cognizant of common law fraud actions and did not intend to preempt them," are flat wrong. *Omega* read CAN-SPAM to save "traditionally tortious or wrongful conduct," *Gordon* held that CAN-SPAM "left the individual states free to extend traditional tort theories such as claims arising from fraud," and BSI's own authorities – like *Asis* – held that CAN-SPAM saved "common law fraud claims" from preemption. *Omega*, 469 F.3d at 354 (4th Cir. 2006); *Gordon*, 575 F.3d at 1062; *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2009 WL 4723338, at *3, 8-9 (N.D. Cal. Dec. 4, 2009). And, *Gordon* found that the express language of § 7707(b) actually demonstrates the opposite of what BSI claims here. *Gordon*, 575 F.3d at 1062.

      **2.**     **BSI Cannot Sustain a Common Law Fraud Claim.**

BSI concedes that it cannot prove common law fraud. (DE# 295 at 17, 40.) BSI also cannot prove that Paul Wagner/BSI was deceived into purchasing any good or service. (Id. at 17.) Instead, BSI claims that "[a] fraud standard simply makes no sense when applied to an ISP." (DE# 295 at 40.) As demonstrated above and in Connexus's motion, the courts disagree. In sum, BSI cannot survive summary judgment because it cannot show common law fraud.

### 3. The Connexus Emails Identify Connexus.

Because BSI cannot show common law fraud, BSI argues that its claims survive preemption because "the emails are replete with falsity that impairs the ability to identify Defendants." (DE# 295 at 42.) However, BSI claims it easily identified Connexus as the "middleman" and MailCompanyX as the sender, as Paul Wagner testified that he could "speak all day long about how I connect these e-mails to MailCompanyX and Connexus." (Ex. 2, P. Wagner Dep. at 393:13-15.) Years before filing suit (and thus before discovery), Paul Wagner attributed the emails "by examining the e-mails and seeing that trade names or domain names" used by Connexus, and mailing addresses "in public records" that appeared in the emails, to "attribute emails to Defendants" (NetBlue and Vendare are now Connexus). (DE# 295-42 at ¶ 40; Ex. 2, P. Wagner Dep. at 65:3-4; 80:14-81:21; 713:21-715:25; 788:4-24; 762:3-18; Ex. 6, P. Wagner Dep. Ex. 99; Exs. 9-11 (sample Connexus/emarketpanel emails with addresses).) Likewise, Paul Wagner/BSI identified MailCompanyX/Sebastian Barale as the "sender" because the emails had "domain names, an X-Mailer tag unique to MCX, dates of transmission and other attributes that together are found uniquely in MCX" emails. (Ex. 6, P. Wagner Dep. Ex. 99 at 1-2; Ex. 2, P. Wagner Dep. 716:6-23.)[6]

At bottom, "the parties responsible for sending the email were accurately identified" (BSI's test for whether its claims survive *Omega*) and BSI's claims fail. (DE# 295 at 41.) And, BSI's effort to distinguish *Omega* on the ground that "no other falsity [was] present" in the *Omega* emails mischaracterizes the emails at issue in that case. *See Omega*, 469 F.3d at 350-53.

---

[6] How the identifiers that Paul Wagner/BSI used to attribute the emails appeared in the emails and whether the emails are authentic is an entirely different matter due to BSI's spoliation of evidence, and BSI's attempts in its Opposition to explain away its spoliation of evidence are unavailing for too many reasons to list here. Connexus will address BSI's spoliation in a separately filed motion.

9

**D.     BSI's Claims Fail Even If They Are Not Preempted**.

BSI's claims fail because the conduct that BSI alleges caused its injuries – falsity in the emails – did <u>not</u> cause BSI's alleged injuries on this record.  In Maryland, "the plaintiff must establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought," *Med. Mutual Liability Society of Md. v. B. Dixon Evander and Assocs., Inc.*, 660 A.2d 433, 439 (Md. Ct. App. 1995).  Likewise, California law requires the defendant's wrongful conduct to be a "substantial factor" in causing the injury. *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) (applying California law).

BSI claims in its Opposition that "[t]he harm of spam is in the receipt of the deceptive advertising." (DE# 295 at 28, 39.)  BSI then claims that the falsity in the emails caused BSI to receive them, as BSI's "computer systems were <u>deceived into receiving</u> the false emails Defendants sent." (DE# 295 at 17 (emphasis added).)  However, BSI does nothing to prevent the "receipt" of emails, and admitted that emails are <u>not</u> "evading reject[ion]" because BSI does not even try to reject emails. (DE# 295 at 27; Ex. 2, P. Wagner Dep. at 1195:12-22.)  Thus, Paul Wagner/BSI's computers could not possibly have been "deceived" into receiving the emails because Paul Wagner/BSI programmed them to accept everything and block nothing regardless of falsity.  Accordingly, BSI's claims fail because the alleged falsity in the emails did not cause BSI's alleged injuries.

Many of BSI's specific claims fail.  First, Connexus does not argue that "false registration of the domains cannot be false as a matter of law." (DE# 290 at 4.)  Rather, BSI cannot sue over allegedly false domain name registrations because they do <u>not</u> appear in emails and the state statutes apply only to the emails themselves. (DE# 257-1 at 35-36.)  *Kilbride* (cited by BSI in its Opposition) proves Connexus's point:  defendants there violated a statute expressly

prohibiting false registrations of domain names and not any state law. *United States v. Kilbride*, 584 F.3d 1240, 1256 (9th Cir. 2009). BSI does not dispute this but simply glosses over it hoping that the Court will find that the state statutes proscribe domain registrations when they do no such thing.

BSI's claims respecting emails "stating or implying that the email[s] w[ere] solicited" when they were not solicited fare no better because these claims involve "untruth about directly consenting to receive the email" and not the identity of the sender or spam filter evasion. (DE# 295 at 45-46.) Thus, and because these are claims that *Omega* preempted, BSI's claims fail. *Omega*, 469 F.3d at 353-56.

BSI's HELO claims also fail according to BSI expert Klensin (he wrote the HELO protocol), and they have already been rejected in Hypertouch's lawsuit against ValueClick. (DE# 257-1 at 32.) Further, BSI's claim that "ISPs use this information to determine whether the mail should be filtered based on the sender's IP address or domain" is false because (1) Klensin testified "whatever it is you do with the argument to the HELO command and later the EHLO command, <u>you must not use it to reject messages</u>," and (2) BSI does not block or filter based on the HELO fields. (Ex. 7, J. Klensin Dep. at 296:17-21 (emphasis added); Ex. 2, P. Wagner Dep. at 256:16-257:5.)

BSI's claim that the "To" fields "cause the recipient to want to open the email to assess its contents and why it was sent to his address with a name other than his own" is an admission that BSI's "To" claims fail because the "To" fields have nothing to do with identifying the sender or a consumer's decision to purchase. (DE# 295 at 43.) Indeed, BSI's experts agree that the "To" lines would not "tell me anything about who sent [the email] one way or the other. (Ex. 1, J. Levine Dep. at 446:3-4; Ex. 8, P. Resnick Dep. at 299:8-15.)

11

Finally, BSI's claim that "[s]ubject line falsity, per the statute, is adjudged by whether the Subject line itself could deceive – no provision is made for clarification that forces people to open the emails" is false because the California statute expressly states that the subject line is to be viewed in light of the "the contents or subject matter of the message." § 17529.5(a)(3). Indeed, the FTC's policy provides that a "headline" cannot be misleading if the text of the message "eliminate[s] any false impression stemming from the headline." (DE# 257-45.)  And, BSI cannot maintain subject line claims anyway because (1) it never saved the images and thus cannot make the required comparison, (2) its attempts to cure its spoliation by reconstructing the emails through post-filing discovery have not been produced or filed, and (3) BSI claims that the subject lines relate to emails that "require a purchase or commitment" while admitting neither Paul Wagner/BSI nor any alleged customer suffered any consumer-type injuries.

E.  **BSI is Not Entitled to Double Recovery.**

BSI's argument that it can seek double recovery because the "California and Maryland statutes proscribe different acts" is wrong, as <u>both</u> statutes proscribe only sending false commercial emails – a point that BSI makes throughout its Opposition. (DE# 295 at 37-39, 51.)

BSI's cases prove that BSI is not entitled to double recovery.  BSI cites *Clisser* to show that a plaintiff "recover twice for the same elements of damage growing out of the same occurrence or event," but the sending of each email can only be "the same occurrence or event." (DE# 295 at 52.)  BSI claims "*Kramer* instructs courts to permit multiple causes of action where the injuries sustained are related rather than the same" and that this presents a fact issue, but BSI concedes its alleged injuries – receiving the emails – are the same under both statutes. (Id. at 37, 52.)  Likewise, *Microsoft* allowed recovery under two statutes because "multiple wrongs have been committed" and "distinct injuries to different interests have been suffered by the Plaintiff."

*Microsoft Corp. v. Evans*, 2007 U.S. Dist LEXIS 77088, at *26–27 (E.D. Cal. Oct. 17, 2007). Yet BSI alleges one act (sending false commercial email) and one injury (receipt of the emails).

Further, *Globe* held that a wrongful death action and a survival action do not result in double recovery because one action allows the victim's relatives to sue for their losses while the other allows the victim's representative to sue for the victim's losses. *Globe Am. Cas. Co. v. Chung*, 76 Md. App. 524, 527 (Md. App. 1988). Here, BSI seeks recovery only for itself. *Corr-Williams* does not help BSI either because double recovery was not even at issue.

Finally, *Gordon* does not help BSI because double recovery was not an issue there. In fact, *Gordon* noted that "a single e-mail could instantaneously implicate the laws of multiple jurisdictions" to show why CAN-SPAM preempts claims like BSI's: "The CAN-SPAM Act was designed to ensure that legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Gordon*, *Gordon*, 575 F.3d at 1063 (citations and quotations omitted). Thus, BSI's argument that it can recover under both statutes under *Gordon* is not only wrong but further proves that its claims are preempted.

## CONCLUSION

For these reasons and those in Connexus's Motion, Connexus requests that the Court enter summary judgment in its favor.

\* \* \*

           Respectfully submitted,

Dated:  March 18, 2010       /s/
                J. Douglas Baldridge (US DC-MD Bar No. 11023)
                Lisa Jose Fales (US DC-MD Bar No. 08141)
                Ari N. Rothman (US DC-MD Bar No. 17560)
                Robert A. Friedman, (US DC-MD Bar No. 28864)
                VENABLE LLP
                575 7th Street, N.W.
                Washington, DC  20004-1601
                (202) 344-4000 (phone)
                (202) 344-8300 (fax)
                jdbaldridge@venable.com
                ljfales@venable.com
                anrothman@venable.com
                rafriedman@venable.com
                *Attorneys for Connexus Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of March, 2010, a copy of the foregoing *Connexus's Reply in Support of its Motion for Summary Judgment* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system except where otherwise indicated:

Thomas M. Barba
John J. Duffy
Jennie L. Kneedler
STEPTOE & JOHNSON LLP
1330 Connecticut Ave NW
Washington DC 20036
tbarba@steptoe.com
jduffy@steptoe.com
jkneedler@steptoe.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville MD  20850
mike@mikerothman.com
*Counsel for Plaintiff Beyond Systems, Inc. and Third-Party Defendants Joe Wagner and Hypertouch, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
THE LAW OFFICE OF DARRELL J. GRAHAM, LLC
53 W. Jackson Blvd.
Suite 1334
Chicago, IL 60604
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.*

Hydra LLC
8800 Wilshire Blvd., 2nd Floor
Beverly Hills, CA 90211
(by regular mail only)

                                        /s/
                                 Ari N. Rothman