# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al*. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CONNEXUS CORP., *et al*., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES JOSEPH WAGNER, *et al*., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

### REPLY TO CONNEXUS' OPPOSITION TO JOE WAGNER/HYPERTOUCH'S MOTION TO BIFURCATE THE THIRD-PARTY TRIAL AND STAY DISCOVERY

**I.     Introduction**

Third-party Defendants Joe Wagner and Hypertouch Inc. (collectively, "Hypertouch") submit this reply to Connexus Corp.'s opposition to their Motion to Bifurcate the Third-Party Claims and Stay Discovery ("Motion to Bifurcate"). Connexus argues that judicial efficiency requires BSI's claim against Connexus to be tried with Connexus' third-party indemnification/contribution claim against Hypertouch, but to the contrary, judicial efficiency will be enhanced by the separation of these claims. Connexus intends to offer a number of defenses to BSI's claims, only one of which — that Hypertouch supposedly "sent" the emails to

BSI because their delivery path went through Hypertouch's servers — involves any facts in common with the Third-Party Complaint. Further, according to Connexus, the fact that the emails at issues were routed through Hypertouch-owned servers is not in dispute.

On the other hand, to succeed on the Third-Party Complaint requires Connexus to show that Hypertouch is liable to BSI under the anti-spam statutes, which would require, for example, Connexus to demonstrate that Hypertouch "advertised" in the emails. In addition, the Third-Party Complaint would require Connexus to overcome Hypertouch's immunity defenses under the Communications Decency Act, and the anti-spam statutes themselves, which exempt from the scope of the statute actions such as those which Connexus attributes to Hypertouch. None of these issue have any facts in common with the issues in the underlying case. Furthermore, Connexus does not argue that it is improper to stay discovery if the claims are bifurcated, but merely states its preference for a different stay of the discovery period.

The anticipated trial on the underlying claims will not just involve BSI's claims against Connexus, but also BSI's claims against another defendant, Kraft. The emails at issue in the Kraft case are, for the most part, different than the emails in the Connexus cases. Thus, the trial on the underlying claims will be quite complicated without the addition of the Connexus Third-Party claims, which are entirely contingent on the outcome of the BSI v Connexus claims. In a situation where the potential overlap is small and the possibility of confusion on the part of the jury is great, courts have granted motions to bifurcate third-party contribution claims. For instance, in *Adams v. NVR Homes, Inc.*, 2000 WL 1859001, *1-2 (D. Md. Dec. 14, 2000), cited by Connexus, the court granted a third-party defendant's motion to sever a contribution claim against it, essentially because of the derivative nature of the parties' potential liability. *Id.* at *3. The court reasoned that because the "only potential exposure of [third-party defendant] is that

which arises as a result of the claim of contribution asserted by the [defendants]," the third-party defendant was "only peripherally involved." *Id.*  Thus, the court held that "it would be conducive to expedition and economy to have the preliminary claims resolved at a first trial and, if necessary," the contribution claims resolved at a later trial. *Id.*   Likewise, the derivative claims at issue here should be bifurcated and tried at a later date, if necessary.  Further, where claims are bifurcated, courts often find that staying discovery pertinent to the second phase serves interest of efficiency and judicial economy, as the jury need not reach matters related to the second phase of trial unless or until defendants are found to be liable in the first underlying phase.

Finally, Hypertouch's need to conduct additional discovery on the Third-Party Complaint would delay the start of the trial on the underlying claims, as is evidenced by Connexus' delay tactics up to this point.

## II. <u>Argument</u>

.    It is squarely within the Court's discretion whether to bifurcate the claims.  *Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995).  Courts routinely bifurcate third-party claims from the underlying actions.  *See*, *e.g.*, *Rogers v. Prince George's County*, 1990 U.S. Dist. LEXIS 21011, at *1 (D. Md. Feb. 8, 1990); *see also Gail v. New Eng. Gas Co.*, 247 F.R.D. 282, 288 (D.R.I. 2008); *Cincinnati Ins. Co. v. Belkin Corp.*, 2008 WL 4949783, at *6 (S.D. Ala. Nov. 14, 2008); *Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 466 (N.D. Iowa 2003); *McGuire v. Bridgeport & Port Jefferson Steamboat Co.*, 2001 U.S. Dist. LEXIS 19753, at *1-3 (S.D.N.Y. Nov. 29, 2001); *Beights v. W. R. Grace & Co.*, 67 F.R.D. 81, 86 (W.D. Okla. 1975).  Under Rule 42(b), bifurcating Connexus' and Hypertouch's third-party claims would serve the interests of judicial economy and lessen the risk of jury confusion, as stated above.  In

addition, bifurcation would avoid needless delays in the underlying action caused by discovery in the third-party action. Connexus' argument that there would be no delay due to the need for additional discovery is wrong. Connexus, in keeping with its discovery strategy from the underlying action, deliberately misstates the time and expense that discovery in the third-party action will require. However, the record tells the true story. Prior to the transfer of the underlying action, fact discovery began on April 7, 2008, granting Plaintiff's motion for expedited discovery and permitting the immediate issuance of third-party subpoenas. 08-1039 (RGK) at DE# 48. The first round of fact discovery requests were exchanged between the parties on May 2, 2008. Now, *nearly two full years and seven motions to compel later*, fact and expert discovery in this case are still not completed. Connexus *still* owes BSI discovery that was ordered by this Court in July 2009.[1] Most recently, on April 12, 2010, this Court granted in part BSI's motion to compel additional deposition testimony from Connexus' primary expert, Dr. Frederick Cohen, after Connexus refused to allow BSI to complete his deposition. Given Connexus' history of strident discovery positions, forcing BSI to file four motions to compel in the underlying action, and the two years over which that battle has played out, Hypertouch's need to take discovery will more than likely result in significant unnecessary delay in the underlying case.

Further to the point that bifurcation will serve judicial economy and eliminate the risk of delays in the underlying action caused by lengthy discovery in the third-party action, per this Court's scheduling order, third-party fact discovery ends July 16, 2010. DE# 266. To date,

---

[1] Also pending is BSI's Motion for an Order Enforcing this Court's December 7, 2009 Ruling. DE# 264. In that motion, BSI seeks from Connexus production relating to the emails Judge Day ordered into the case. BSI contends that discovery as to certain emails, although excluded for liability purposes, is still proper because that discovery is relevant to other issues in the case.

Connexus and Hypertouch have exchanged one round of discovery requests, Connexus refused to provide any substantive responses, choosing to stand on its objections that, among other things, all of Hypertouch's requests are "premature given Joe Wagner/Hypertouch's pending motion to stay discovery (DE# 321), and in light of Joe Wagner/Hypertouch's positions concerning discovery about Connexus' third-party claims."  Connexus, therefore, has taken the position that it will not produce discovery while the motion to stay is outstanding – a position which has no proper basis – and thus is necessarily going to require an enlargement of the schedule while the Third-Party Defendants move this Court for a fifth Order requiring Connexus to produce.  Connexus' strategy of seeking to run the clock on the discovery in order to later claim that discovery is closed is further evidenced by the fact that it did not seek a meet and confer over three months on Third-Party Defendants' responses to its discovery requests.  By contrast, following the receipt of Connexus' stonewalling responses to discovery, Third-Party Defendants on April 13, 2010 initiated a meet and confer.  Such an enlargement of time and the filing of another motion to compel with this Court will be required in order to force Connexus to comply with the discovery obligations *in the action it initiated*, and judicial economy is disserved by Connexus' tactics as a result.

      At issue in the third-party action is what, if any, liability Hypertouch has to Connexus in the event that Connexus is found liable to BSI in the underlying action.  Connexus bases its argument against bifurcation on the notion that it requires "little if any additional discovery" in order to prosecute the third-party action, because "Joe Wagner/Hypertouch already admitted" that the BSI emails were delivered through Hypertouch.  Mot. at 6.  Connexus misleads the Court in its insinuation that email routing is the only triable issue of fact in the third-party action.

Connexus, in any event, discounts Hypertouch's rights to affirmatively seek discovery to assist in its defenses and the prosecution of the third-party claims.

Specifically, Hypertouch's defense preparation will involve the retention of experts, requiring additional rounds of expert discovery, including reports and depositions, on issues targeted to the third-party action claims and counterclaims, including, but not limited to, Hypertouch's ISP status and the longstanding routing relationship between BSI and Hypertouch. Furthermore, it is foreseeable that Connexus will retain experts to counter Hypertouch's experts and thus discovery will be far more involved than Connexus implies. Discovery may also need to be taken by Hypertouch on the issues of whether Connexus is an interactive computer service, or information content provider, in order to dispute Connexus' claim of CDA immunity. This will entail an in-depth exploration of Connexus' business model and include additional discovery related to Connexus' involvement in the emails at issue, including its role in creating the content of, initiation and transmission of the emails themselves. Further, Connexus' relationships with affiliates and advertisers, and its internal business practices are at the heart of the third-party claims and counterclaims and must be explored. Similarly, further discovery is required regarding the involvement of the affiliate primarily responsible for the actual sending of many emails at issue, MailCompanyX and its principal Sebastian Barale (both of whom are currently subject to a default judgment as to liability in the transferred 09-0080 action).[2]

At bottom, Connexus claims it can pursue its third-party claims based on discovery it has already taken in the underlying action and at the same time seeks to disadvantage Hypertouch – previously a non-party to this action – by blocking its discovery. Connexus wants to have its cake – by dragging third parties into this litigation to distract from the fact that it sent the illegal

---

[2] *See* Case No. 09-00080 (PJM) (D. Md.) at DE# 122; *see also* Case No. CV08-1039-RGK(PLAx) (C.D. Cal.) at DE# 108.

spam to BSI – and eat it too – by limiting those third parties from defending themselves. Bifurcation best serves to prevent this unfairness while serving the Court, the jury and the litigants in the main action.

Illustrative of this unfairness is the fact that Connexus has already taken two days of deposition with Wagner/Hypertouch, and has obtained Hypertouch documents via a Rule 45 subpoena, whereas Hypertouch as a non-party to the litigation did not have the ability to depose or obtain documents from Connexus. Even if it is appropriate for Hypertouch to share the fruits of BSI's discovery, the unique issues raised in the party-action require additional discovery – to which Hypertouch is entitled as it has now been forced into litigation.

Finally, and further to the point that bifurcation will obviate one source of jury confusion, Connexus argues that trying the underlying BSI action against Connexus and the Kraft Defendants simultaneously with Connexus' third-party claims against Hypertouch for indemnification and contribution, as well as with Hypertouch's counterclaims against Connexus, would not result in jury confusion.[3] However, trying all these claims together will result in a convoluted presentation to the jury. This is wholly unnecessary and avoidable given that the jury need not reach the issue of Hypertouch's "indemnification" of Connexus for Connexus' spam until, at least, it found primary liability by Connexus to BSI. The subject matter of this action, including determining if the tens of thousands of individual emails at issue sent by Connexus were false and deceptive, can be confusing and will be technical and require expert testimony on nearly every issue. If the jury is also called on to consider the side show of how it is that Hypertouch could be liable to BSI, even though Connexus sent the emails, and also

---

[3] Because Connexus' opposition to the motion to bifurcate implicates delays in the underlying action and thereby potentially affects BSI's ability to timely try its case against Connexus and Kraft, BSI joins this motion and urges the Court to bifurcate the actions.

Hypertouch's counterclaims against Connexus, all in the context of CDA immunity, that is certain to create confusion and significantly lengthen the trial and increase expenses. Furthermore, these issues are particular to the claims between BSI, Connexus, and Hypertouch, and have nothing to do with BSI's claims against the Kraft Defendants and their defenses, which will also need to be litigated simultaneously. *See Cincinnati Ins. Co. v. Belkin Corp.*, 2008 WL 4949783, at *6 (S.D. Ala. Nov. 14, 2008) (bifurcating indemnity claims to avoid "risk of jury confusion that may result from trying issues of liability and indemnity together").

In conclusion, Connexus does not argue that it is improper to stay discovery if the claims are bifurcated, but rather states its preference for a different period to stay discovery. Mot. at 8. Where claims are bifurcated, courts often find that staying discovery pertinent to the second phase serves "the interests of efficiency and judicial economy, as there would be no reason to delve into matters relating to [the second phase] unless or until" the defendants in the first phase are found liable. *See*, *e.g.*, *Swagler v. Harford County*, 2009 WL 3747175, *1 (D. Md. Nov. 4, 2009). Such is the case here and Connexus implicitly concedes this point. As such, and for the reasons stated herein, Hypertouch's motion to bifurcate Connexus' third-party claims and to stay discovery until resolution of the underlying case should be granted.

Dated: April 22, 2010                               Respectfully submitted,

                                                               /s/
                                     Thomas M. Barba (US DC-MD Bar No. 28487)
                                     John J. Duffy (US DC-MD Bar No. 28613)
                                     STEPTOE & JOHNSON LLP
                                     1330 Connecticut Ave., NW
                                     Washington, D.C.  20036
                                     (202) 429-3000
                                     Fax:  (202) 429-3902
                                     tbarba@steptoe.com
                                     jduffy@steptoe.com

- 9 -

        Anthony A. Onorato (USDC-MD Bar No. 28622)
        STEPTOE & JOHNSON LLP
        750 Seventh Ave.
        New York, NY  10019
        (212) 506-3900
        Fax:  (212) 506-3950
        tonorato@steptoe.com

        *Attorneys for Third-Party Defendants James Joseph Wagner and Hypertouch Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of April, 2010, the foregoing REPLY TO CONNEXUS' OPPOSITION TO JOE WAGNER/HYPERTOUCH'S MOTION TO BIFURCATE THE THIRD-PARTY TRIAL AND STAY DISCOVERY was filed electronically via the Court's CM/ECF system, and served electronically on the below-named parties via the Court's electronic notification system:

Barry J. Reingold (USDC-MD Bar No. 06490)
John M. Devaney (*Pro Hac Vice*)
John K. Roche (*Pro Hac Vice*)
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington DC 20005-2003
202-434-1613 (Telephone)
202-434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, DC 20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus Corp.*

Thomas M. Barba