## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 8:08-cv-00409 (PJM) |
| KRAFT FOODS, INC., *et al.* | ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFF BEYOND SYSTEMS, INC.'S APPLICATION FOR
### DEFAULT JUDGMENT AGAINST DEFENDANT HYDRA LLC

Plaintiff Beyond Systems, Inc. ("BSI") applies for a default judgment against Defendant Hydra LLC ("Hydra") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

In support of its Application, Plaintiff states as follows:

1. On February 14, 2008, Plaintiff filed a Complaint initiating adversary proceedings against Hydra in the United States District Court for the Central District of California. *Beyond Systems, Inc. v. Connexus Corp. et al.*, No. 08-01039 (RGK) at DE# 1. Hydra filed its answer on April 3, 2008, and proceeded to defend itself in the action. *Id.* at DE# 47.

2. The parties agreed to dismiss Defendants Hydra and Connexus Corp. from action No. 08-01039 (RGK) pursuant to Fed. R. Civ. P. 41(a)(2), and add only those Defendants by amendment to a pre-existing action Plaintiff had previously filed in Maryland, *Beyond Systems, Inc. v. Kraft Foods, et al.*, No. 8:08-cv-00409 (PJM). Plaintiff added Hydra and Connexus Corp. through its Second Amended Complaint in the *Kraft* action, filed November 26, 2008. DE# 52.

3. The remaining Defendants from action No. 08-01039 (RGK), MailCompanyX and Sebastian Barale, were left in the *Beyond Systems, Inc. v. Connexus Corp.* case, re-captioned in Maryland as No. 8:09-cv-00080 (PJM).

4. Hydra filed its answer to the Second Amended Complaint on March 4, 2009 [DE# 62] and proceeded to actively defend itself in this lawsuit, including filing a third-party complaint in the District Court of Maryland on March 6, 2010.  DE# 74.

5. In the course of litigation between BSI and Hydra, Hydra filed more than 25 motions, participated in over 55 days of depositions, issued 107 requests for documents, 21 interrogatories, and 123 requests for admissions.  BSI produced over 20,000 pages of documents to Hydra in response to these requests, and Hydra produced over 10,000 pages of documents in addition to creatives files in response to BSI's discovery requests concerning the original 25,475 emails BSI produced at the outset of the case.

6. It is undisputed that Hydra and its agents advertised in and initiated and assisted in the transmission of 45,773 commercial e-mail advertisements to email addresses held by BSI. This includes the 25,475 emails BSI produced at the outset of the case, plus two sets totaling 20,331 Hydra emails BSI received after the case was filed.  Twenty-nine (29) emails pre-dating February 14, 2005 have been removed along with four (4) non-Hydra emails.  45,773 Hydra emails are at issue in this Application.

7. BSI has attributed all the emails at issue to Hydra and catalogued the falsity in the emails.  *See infra* sections III.A.3 & 5.

8. In October 2008 and May 2009, these additional 20,331 emails were produced to Hydra.  In response, in November 2008 and May 2009, Hydra refused to produce any discovery as to those emails and instead filed a motion seeking to exclude the emails from the case.

9. On December 7, 2009, Judge Day denied Hydra's motion and ruled that the 20,331 additional Hydra emails received between the time the case was filed until March 2009 were properly at issue in this case. *See* December 7, 2009 Hrg. Tr. before Magistrate Judge Day at 30:18-19, 57:23-25.

10. Because Hydra had been refusing since November 2008 – over 13 months earlier – to produce any discovery as to these emails, following Judge Day's ruling on December 8, 2009, BSI sent a letter to Hydra's counsel demanding that Hydra produce, by January 6, 2010, the improperly withheld discovery.

11. On December 16, 2009, BSI sent a second letter demanding Hydra's overdue production of documents which the Court had compelled in July 2009 [DE# 190] and the discovery Hydra owed to BSI concerning the 20,331 Hydra emails. DE# 264 at Ex. 1.

12. On December 21, 2009, Defendants again refused to produce any discovery, including as to the 20,331 Hydra emails, in direct defiance of this Court's December 7th Order. *Id.* at Ex. 2.

13. On December 23, 2009, BSI filed a motion to enforce the Court's order and compel the production of the wrongfully withheld discovery. DE# 264. That motion was outstanding when Hydra first defaulted on February 22, 2010.

14. On January 22, 2010, Venable LLP ("Venable") moved to withdraw from its representation of Hydra. DE# 280. This motion revealed that Hydra had informed Venable in December 2009 that Hydra had entered into voluntary receivership and was selling Hydra's assets from Hydra LLC ("Hydra I") to Hydra Group LLC, f/k/a Marlboro Investment Group, ("Hydra II"), another company also formed by Zac Brandenberg. *Id.* at 1, 2.

15. The successor company, Hydra Group LLC, has continued to operate the same spam advertising business, running old Hydra's same affiliate network, and conducting the business through Hydra's existing network, hydranetwork.com. DE# 280 at 1, 2; DE# 282 at 2-3; DE# 295 at note 2 (showing new Hydra spam from February 18, 2010).

16. Prior to withdrawing, Venable advised Hydra that per the rules of this Court, Hydra must have new counsel enter an appearance by February 22, 2010, or it would be subject to the dismissal of its claims and/or default judgment on claims against it. DE# 280 at Ex. 1; June 14, 2010 Hrg. Tr. at 7:16-19; *see* L.R. 101(2)(b).

17. Hydra has not retained new counsel. In fact, "Hydra has advised Venable that it will not retain new counsel." DE# 289 at 2. Moreover, Hydra has told Venable that "[t]his litigation has no value to the company so there is no reason for the company to continue litigating." *Id.* at Ex. 1. This statement makes evident that the "company" simply reincarnated itself from Hydra I to Hydra II.

18. Venable's motion to withdraw was granted on March 5, 2010. DE# 308.

19. On June 14, 2010, Judge Messitte ordered in open court that Plaintiff's motion for entry of default as to Hydra was granted, and directed the Clerk of Court to enter default against Hydra. June 14, 2010 Hrg. Tr. at 7:21-25.

20. On July 16, 2010, the Clerk of Court entered the default. DE# 376.

21. Since March 20, 2009, when BSI last assembled emails for production to Hydra, Hydra has sent thousands of additional illegal emails to BSI, all of which contain a sales link that redirected through Hydra's server at lynxtrack.com and/or a URL with a Hydra domain, such as imglt.com. *See* attached Declaration of Paul Wagner ¶ 18. Between July 12 and July 30, 2010, at least 33 Hydra emails all advertising Gevalia for co-defendant Kraft were sent to BSIs

domains. Each email contains Mailer ID: 15- . . .**,** which Kraft has stated designates Hydra**,** and/or sales links that re-directed to Hydras lynxtrack server.  In each email, the domains used by the spammer were registered under a false or misleading identity, such as to a proxy service.  In addition, BSI sent a reply email to one of the spam emails which bounced back (*i.e.*, could not be delivered) showing that the spammers From line is a fake, non-working email address.  *Id*. ¶ 19.

22.     These emails are not included in the 45,773 Hydra emails at issue, but they are relevant to the ongoing nature of Hydra's spam operation and disregard for the anti-spam laws.

23.     Those anti-spam laws must be enforced to protect BSI and its users, and the other users of the Internet that pay the costs imposed by spam's domination of email traffic – approximately 95% of all email every day.

24.     Hydra is a corporation and therefore not an infant or incompetent person.

25.     Hydra is a corporation and therefore the Servicemember's Civil Relief Act of 2003 does not apply.

26.     ISPs such as BSI have a statutory right to sue all the collaborators, including the merchants who pay to be promoted in deceptive spam, the middlemen "ad networks" that conduct the advertising in deceptive spam and which also make the advertising available through their websites for their "affiliates" or "publishers" to send.  *See, e.g.*, Md. Com. Law § 14-3002(b); Cal. Bus. & Prof. Code §§ 17529(j), (k), 17529.5(a).

27.     A default judgment in favor of Plaintiff against Hydra is proper under the Local and Federal Rules, and the applicable law.  It is undisputed that Hydra, based in Beverly Hills, California, and/or its agents sent or caused to be sent 45,773 commercial e-mail advertisements to BSI which contained or were accompanied by falsified, misrepresented, or forged header

information, and/or had a subject line likely to mislead a recipient, all in violation of Cal. Bus. & Prof. Code §§ 17529.5(a)(1), (2) and/or (3).

28.  With regard to those same emails, Hydra and/or their agents, initiated the transmission, conspired with another person or persons to initiate the transmission, and/or assisted in the transmission of the emails received by BSI in Maryland which contained false and/or misleading information about the origin or the transmission path of the e-mail, and/or which contained false and/or misleading information in the subject line that had the capacity, tendency, or effect of deceiving the recipient, all in violation of Md. Comm. Law §§ 14-3002(b)(i), (ii) and/or (iii).

29.  Hydra is liable for sending 45,773 emails to BSI.  Under Maryland law, Hydra is liable to BSI for $1,000 per email in statutory damages.  Under California law, Hydra is liable to BSI for $1,000 per email in statutory damages.  BSI requests a judgment of $69,691,000 in statutory damages.

In further support of its Application, BSI respectfully refers the Court to the attached Memorandum of Points and Authorities in Support of its Application for Default Judgment.

WHEREFORE, BSI respectfully requests that this Court enter a default judgment against Defendant Hydra in the amount of $69,691,000.

Date:  August 12, 2010                    Respectfully submitted,

                                                                     /s/
                                       Thomas M. Barba (US DC-MD Bar No. 28487)
                                       John J. Duffy (US DC-MD Bar No. 28613)
                                       Scott Bielicki (US DC-MD Bar No. 29162)
                                       STEPTOE & JOHNSON LLP
                                       1330 Connecticut Ave., NW
                                       Washington, D.C.  20036
                                       T: 202-429-3000
                                       F: 202-429-3902

tbarba@steptoe.com
jduffy@steptoe.com
sbielicki@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown MD 20876
T: 301-540-8180
F: 301-540-8195
Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*