**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:08-cv-00409 (PJM) |
| KRAFT FOODS, INC., *et al.* | ) ) ) | |
| Defendants. | ) ) | |

## **DECLARATION OF SCOTT T. BIELICKI PURSUANT TO 28 U.S.C. § 1746**

I, Scott T. Bielicki, state that:

1. I am over 18 years of age and am fully competent to testify to the facts set forth in this Declaration.

2. I am an attorney licensed to practice before all of the courts of the states of New York, California and the District of Columbia. I am also admitted to practice before the United States District Court for the District of Maryland. I am an associate of Steptoe & Johnson LLP, attorneys for Plaintiff Beyond Systems, Inc. ("BSI"). I have personal knowledge of the facts set forth below and would competently testify to those facts if called upon to do so.

3. According to a report of the National Conference of State Legislatures, the legislatures of California, Maryland and 35 other states, as well as the federal government, have outlawed deceptive email advertising. Attached hereto as Exhibit 1 is a true and correct copy of the National Conference of State Legislatures report on *State Laws Relating to Unsolicited Commercial or Bulk E-mail (SPAM)* (last updated Feb. 10, 2010) enumerating the 37 states which have passed laws regulating unsolicited commercial email advertising.

4. According to a report of Barracuda Networks, since at least 2007, spam came to account for 95% of all email sent everyday over the Internet. Attached hereto as Exhibit 2 is a true and correct copy of the Barracuda Networks Annual Spam Report (Dec. 12, 2007) indicating that "90 to 95 percent of all email sent in 2007 was spam, increasing from an estimated 85 to 90 percent of email in 2006. This growing proportion is even more significant when compared to 2004, when the federal CAN-SPAM Act, which set parameters for sending unsolicited email and defined penalties for spammers, went into effect. At that time spam was 70 percent of all email. In 2001, spam accounted for only five percent of email messages."

5. Attached hereto as Exhibit 3 is a true and correct copy of excerpts of Hydra's Responses to Plaintiff's First Set of Requests for Admission ("RFA") Nos. 1, 2, 3, 4, 5, 6, 13, 25, 147-153, and 209, as served on November 24, 2008.

6. Attached hereto as Exhibit 4 is a true and correct copy of excerpts of Hydra's Amended & Supplemental Responses to Plaintiff's First Set of Interrogatories (Nos. 2 and 3), as served on May 22, 2009.

7. Attached hereto as Exhibit 5 is a true and correct copy of excerpts of the deposition of John Stafford, taken by BSI on September 10, 2008.

8. Attached hereto as Exhibit 6 is a true and correct copy of excerpts of the deposition of Scott Steele, taken by BSI on September 18, 2008.

9. Attached hereto as Exhibit 7 is a true and correct copy of excerpts of the deposition of Maya Gadde, taken by BSI on November 14, 2008.

10. Attached hereto as Exhibit 8 is a true and correct copy of excerpts of the deposition of Chris Krelle, taken by BSI on September 9, 2008.

11. Attached hereto as Exhibit 9 is a true and correct copy of excerpts of the deposition of Karen Nugent, taken by BSI on June 12, 2009.

12. Attached hereto as Exhibit 10 is a true and correct copy of excerpts of the deposition of Abby Whitridge, taken by BSI on September 17, 2008.

13. BSI subpoenaed several Hydra affiliates in the course of this case. Attached hereto as Exhibit 11 is a true and correct copy of an email produced to BSI pursuant to subpoena by one such affiliate, Alchemy Digital Media. The email was received from Hydra and advertises the campaigns available on its site to its affiliates.

14. Pursuant to document requests served by BSI, Hydra produced records from its internal advertising campaign databases. Attached hereto as Exhibit 12 is a true and correct copy of one such sample record from Hydra's campaign database as produced in this litigation at H00004645-4647.

15. Pursuant to document requests served by BSI, Hydra produced HTML creatives files. Attached hereto as Ex. 13 is a true and correct copy of a PDF rendering of one of these HTML creatives, produced at H10881, along with its associated source code.  The source code has been highlighted to indicate Hydra's hosting of the images contained therein on the Hydra-owned ltpic.com domain and image server.

16. Attached hereto as Exhibit 14 is a true and correct copy of Third-Party Defendant Hypertouch, Inc.'s First Set of Requests for Admission to Hydra LLC Nos. 1-9, as served on February 22, 2010.  Hydra never served responses to these requests. These RFAs, deemed admitted by Hydra's failure to respond, admit, *inter alia*, that Hydra provided content and sent the emails, and was paid and paid others for the emails.

17.     Following Hydra's entry into voluntary receivership in a California state action, the press reported that Hydra had revenues of $108.6 million in 2008. Attached hereto as Exhibit 15 is a true and correct copy of Inc.com's company profile on Hydra, where it was named among the Inc. Top 500 companies for 2009.

18.     Also following Hydra's entry into voluntary receivership in a California state action, on January 26, 2010, Young Money published an interview with Zac Brandenberg, CEO of Hydra, in which Brandenberg stated that Hydra has been profitable every year since its founding. Attached hereto as Exhibit 16 is a true and correct copy of that interview, entitled "Secrets Behind Zac Brandenberg's Online Ad Network."

19.     In an October 2009 interview with Retire@21, Zac Brandenberg was quoted as saying "It's better to be profitable today, than perfect tomorrow." A true and correct copy of this interview is attached hereto as Exhibit 17.

20.     On June 21, 2010, it was announced that Adknowledge, a privately-owned internet ad network, had acquired Hydra Group. Attached hereto as Ex. 18 is a true and correct copy of the press release from Hydra announcing the acquisition.

21.     In its December 2005 report to Congress, the Federal Trade Commission identified sending emails with many domain names and IP addresses as a deceptive means of avoiding ISP's spam filters. Attached hereto as Exhibit 19 is a true and correct copy of excerpted portions of the FTC's report to Congress.

22.     Pursuant to document requests served by BSI, Hydra produced a report by compliance officer John Stafford entitled Compliance Proposal and Program-Plan, dated May 5, 2008, wherein it was indicated that Hydra received at least 3,763 reported possible violations of

- 5 -

federal law over just a 90-day period.  Attached hereto as Exhibit 20 is a true and correct copy of that report.

Date:   August 12, 2010

                                                          /s/
                                         Scott T. Bielicki