UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 8:08-cv-00409 (PJM)(CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND FOR SANCTIONS**

Plaintiff Beyond Systems, Inc. ("BSI") submits this Reply Memorandum in Support of its Motion to Compel Discovery and for Sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 104 for Defendant Connexus Corp.'s ("Connexus") failure to timely supplement its discovery responses.

**I.  CONNEXUS' DISCLOSURES TO EPIC MEDIA ARE DISCOVERABLE**

In its opening memorandum, BSI narrowed its Request for Production 35 and requested "all documents (including disclosures and other communications) relating to this litigation that Connexus made available to any person in connection with the Epic Media transaction," and explained that the requested documents are relevant because they may contain admissions of liability which could be admissible against Connexus.  Opening Memo. at 2.  Connexus argues that it has never admitted liability and thus has no documents to produce.  Opp. at 2.  But it is not for Connexus to determine what constitutes an admission; if Connexus disclosed information about this lawsuit, then such information is relevant and responsive to BSI's discovery request. Connexus' self-serving determination of what is and is not an admission of liability is not

grounds to withhold from BSI what it told Epic Media about this lawsuit. If Connexus does not believe that it should disclose the requested documents, the appropriate course of action is to move for a protective order. *See, e.g., Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 46 (D. Col. 1984) (appropriate course of party which considers a discovery request improper is to oppose such request in court; it cannot simply sit back on basis of its unilateral judgment that request is improper). Further, BSI is entitled to see what was shared regarding this lawsuit and decide for itself if there was an admission. Of course, the Court will ultimately decide if any such information is actually admissible, but ultimate admissibility is not the standard for discovery. Fed. R. Civ. P. 26(b)(1).

Further, in any commercial transaction, a sophisticated buyer, such as Epic Media, will want to know – indeed, must learn – exactly what it is purchasing, for a failure to perform adequate due diligence prior to an acquisition may be a breach of its fiduciary duty of care.[1] "In all M&A transactions, a substantial amount of due diligence will be conducted. . . . [T]he acquiring firm is looking for full disclosure. This would include contingent liabilities [of the seller]."[2] Specifically, prior to consummating a transaction, a savvy buyer will want to know the legal proceedings the seller faces. *See, e.g.*, Gary M. Lawrence, DUE DILIGENCE IN BUSINESS TRANSACTIONS, § 1.05 [1] at 1-16, 1-21 (2010) (listing "legal proceedings and threats" as an

---

[1] *See, e.g., Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 368 (Del. 1993) ("[A] trial court will not find a board to have breached its duty of care *unless* the directors individually and the board collectively have failed to inform themselves fully and in a deliberate manner before voting as a board upon a transaction as significant as a proposed merger or sale of the company.") (emphasis added); *In re Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, C.A. No. 4066-VCN, 2008 WL 4824053 (Del. Ch. Oct. 28, 2008) (plaintiff presented colorable claim when it alleged that board negotiated and agreed to a merger without conducting adequate due diligence as to true value of the company or the feasibility of securing an alternative transaction).

[2] Gary S. Schiff, "Corporate Governance Risks for M&A Deals in a Difficult Economy," *in Managing Corporate Governance Issues in M&A – Leading Lawyers on Identifying Issues in M&A Negotiations, Understanding Risk in a Down Economy, and Assimilating Governance Standards in a Merger* 1 (2010), *available at* 2010 WL 2511575.

"important component[] of many due diligence investigations for mergers or acquisitions"). And because a merger generally means that the buyer acquires all of the liabilities of the seller,[3] a seller's liabilities may even influence the structure of the transaction itself. For example, a buyer, upon learning of extensive liabilities and/or litigation, may opt to acquire certain assets in order to limit the liabilities the buyer is assuming. *See*, *e.g.*, James C. Freund, ANATOMY OF A MERGER: STRATEGIES AND TECHNIQUES FOR NEGOTIATING CORPORATE ACQUISITIONS, at 112 (1975) (citing example of seller as defendant in litigation seeking substantial damages as a time when buyer may want to acquire seller's assets rather than effect a merger to permit the parties to agree that buyer will not assume responsibility for that particular litigation).[4]

It is highly unlikely that Connexus made no disclosures to Epic Media concerning this litigation. Indeed, Connexus does not deny that it provided documents to Epic Media concerning this litigation. Rather, it seeks to unilaterally limit its discovery obligations under the Rules. But "the failure to produce documents pursuant to Rule 34(a) 'may not be excused on the ground that the discovery sought is objectionable *unless* the party failing to act has a pending motion for a protective order as provided by Rule 26(c)).'" *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D. 426, 466 (W.D.N.Y. 2005) (quoting F.R.C.P. 37(d) (emphasis added). Connexus has not moved for protection.

---

[3] *See*, *e.g.*, *Nissen Corp. v. Miller*, 594 A.2d 564, 565-66 (Md. 1991); *see also Ray v. Alad Corp.*, 560 P.2d 3, 7 (Cal. 1977); Del. Code Ann. tit. 8 § 259 (2010).

[4] *See also* Thomas J. McCaffrey & Arthur M. Nathan, *Business Due Diligence Strategies Leading Lawyers on Meeting Client Expectations, Navigating Cross-Border M and A Transactions, and Understanding the Importance of Due Diligence in Today's Economy: New Areas of Focus in M&A Due Diligence* 6 (2010), 2010 WL 2515657 ("Another concern regarding potential successor liability issues involves the concept of undisclosed liabilities and possible future lawsuits. Even if a buyer does not assume a particular liability, courts have been known, in certain circumstances, to impose successor liability on the buyer even though the buyer did not expressly assume the liability in question.").

Furthermore, as pointed out in BSI's motion to compel, BSI previously requested merger disclosures and Connexus agreed to produce such disclosures. Opening Memo. at 3.[5] But even though Connexus previously agreed to produce responsive documents and now has responsive documents, Connexus nevertheless tries to avoid its obligations under the Federal Rules by arguing that it did not agree to produce documents in 2008 that it could not foresee would come to exist in 2010. Connexus fails to cite to any legal support for this position, for good reason – Connexus' position is baseless. Logic dictates that the duty to supplement covers situations exactly like this – where changed circumstances require that a party which *now* has documents responsive to a *pre-existing* request produce them. If one had to only supplement foreseeable items, there would be almost no duty to supplement.

The threshold for discovery is low: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant" to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). And "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Here, BSI's request seeks information relevant to its claims that could be admissible at trial or could lead to the discovery of admissible evidence. Accordingly, the Court should compel Connexus to produce "all documents (including disclosures and other communications) relating to this litigation that Connexus made available to any person in connection with the Epic Media transaction."

---

[5] "**REQUEST FOR PRODUCTION NO. 35[:]** All DOCUMENTS RELATED to disclosures made by or to Vendare, NetBlue or Connexus in connection with the mergers of those companies into each other, or any other actual or potential merger or acqusition, regarding any liability or potential liability for INTERNET ADVERTISING" and

"RESPONSE TO REQUEST FOR PRODUCTION NO. 35[:] Connexus incorporates into this response its General Objections set forth above. Connexus further objects to this document request because it calls for the production of documents protected from disclosure under the attorney-client privilege and/or the attorney work-product doctrine. Connexus will not produce documents protected from disclosure under the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, **Connexus states that it will produce documents responsive to this request to the extent such documents exist in its possession, custody or control**." (Emphasis added).

## II. BSI DOES NOT SEEK REVENUE OR ASSET INFORMATION SUBJECT TO FED. R. CIV. P. 69

Connexus goes to great length to explain why BSI's discovery requests are premature. But Connexus is expanding the breadth of BSI's request in order to concoct a reason to oppose the request. Connexus reads a request for documents implicating successor-liability as seeking asset or revenue data. Opp. at 3-4. But BSI is not seeking to discover revenue or asset information to aid in executing a judgment; rather, it seeks to discover information regarding the structure of the transaction and whether Epic Media assumed Connexus' liabilities as part of the merger to determine whether Connexus is the proper defendant in this lawsuit. Thus, Connexus' discussion of Rule 69 is misplaced.

And rather than addressing head-on BSI's reasons for seeking the transaction information, Opening Memo. at 6, Connexus bypasses the concept of successor-liability altogether. Connexus bears the burden of explaining why this discovery is not relevant. *See Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009) ("The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules."). Here, Connexus fails to demonstrate why the requested information is not discoverable in the context of successor-liability.[6] By ignoring the rationale presented by BSI, Connexus fails to carry its burden and should be compelled to produce the requested documents.

Finally, while Connexus does state that it is a "wholly owned subsidiary of Epic Media Group, Inc.[,]" it does not state whether Epic Media assumed the liabilities of Connexus that may

---

[6] As explained in BSI's opening memorandum, at 8, Connexus is resisting discovery on successor liability when it knows that this is a real issue in this case – not just a hypothetical – given that its co-defendant Hydra (who shared counsel with Connexus) allegedly changed corporate form and abandoned the litigation and now claims that the new Hydra shed any liability it might have had by way of the *form of the transaction*.

arise from this litigation. Connexus could provide a simple affidavit to answer this question and resolve this discovery dispute. BSI does not contend that Epic Media was involved in the emails at issue, but, as explained in its opening memorandum and here, seeks the requested documents because they are relevant to the question of successor-liability.

### III.   BSI'S REQUESTS ARE NOT OVERBROAD

BSI seeks disclosures made available to Epic Media concerning this litigation – a narrowly-tailored request confined to a specific topic, specific recipient and presumably provided to Epic Media during a specific time frame. As to the corporate structure, all Connexus need do is provide an affidavit from an individual with personal knowledge as to whether Epic Media assumed the liabilities from Connexus that could arise in connection with this litigation.

### IV.   BSI SHOULD NOT BE SANCTIONED

Because of Connexus' determined effort not to provide relevant documents to BSI, BSI was forced to resort to court intervention. Because of the "scant" information available publicly about the transaction with Epic Media, BSI attempted to informally reach an agreement with Connexus about the merger documents – only to be completely rebuffed. Opening Memo. at Ex. 4. Even in its opposition, Connexus rejected the opportunity to state clearly whether Epic Media assumed liabilities of Connexus that could arise in connection with this litigation. Further, as BSI previously explained, in a typical merger, the buyer assumes all liabilities of the seller. Thus, it is not unreasonable for BSI to ask for discovery as to whether Epic Media assumed Connexus' liabilities in the transaction.

Similarly, due diligence in a typical merger or acquisition involves disclosures as to liabilities and litigation. Here, given the timing of the transaction, Connexus surely disclosed information to Epic Media about this litigation. Those disclosures are relevant so discovery is appropriate.

In short, BSI attempted to obtain this material informally from Connexus and turned to this Court for relief only upon Connexus' refusal to produce the requested documents. Further, as demonstrated above and in the opening memorandum, BSI's narrowed requests have a reasonable basis – both in fact and in law.

## V.   CONCLUSION

Because the requested documents are clearly relevant and Connexus' refusal to produce them is without any foundation, BSI requests that the Court grant its Motion to Compel Production of Documents for Requests for Production Numbers 20 and 35. BSI also requests that the Court sanction Connexus for its failure to comply with the Federal Rules of Civil Procedure.

Date:  August 16, 2010                                  Respectfully submitted,

                                                                                /s/
                                                        Thomas M. Barba (US DC-MD Bar No. 28487)
                                                        John J. Duffy (US DC-MD Bar No. 28613)
                                                        Scott Bielicki (US DC-MD Bar No. 29162)
                                                        STEPTOE & JOHNSON LLP
                                                        1330 Connecticut Ave., NW
                                                        Washington, D.C.  20036
                                                        T: 202-429-3000
                                                        F: 202-429-3902
                                                        tbarba@steptoe.com
                                                        jduffy@steptoe.com
                                                        sbielicki@steptoe.com

                                                        Anthony A. Onorato (US DC-MD Bar No. 28622)
                                                        STEPTOE & JOHNSON LLP
                                                        750 Seventh Avenue
                                                        New York, NY  10019
                                                        T: 212-506-3900
                                                        F: 212-506-3950
                                                        tonorato@steptoe.com

Of Counsel:

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P. C.
20300 Seneca Meadows Parkway, Suite 200
Germantown, MD  20876
T: 301-540-8180
F: 301-540-8195
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2010, the foregoing REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR SANCTIONS was served by electronic mail and U.S. Mail on the below-named parties:

Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington, D.C.  20005-2003
(202) 434-1613 (Telephone)
(202) 434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Law Offices of Darrell J. Graham, LLC
53 W. Jackson Boulevard
Suite 1334
Chicago, IL 60604

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus Corp.*

                            /s/
                         Jennifer M. Newton