IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | : | |
| Plaintiff, | : | Case No. 8:08-CV-00409-PJM |
| v. | : | The Honorable Peter J. Messitte |
| KRAFT FOODS, INC., et al., | : | Magistrate Judge Charles B. Day |
| Defendants. | : | |

**OPPOSITION TO PLAINTIFF'S AND THIRD-PARTY DEFENDANTS
MOTION TO QUASH OR MODIFY SUBPOENAS ISSUED BY CONNEXUS**

Movants Paul Wagner/BSI and Joe Wagner/Hypertouch move to quash the subpoenas Connexus served on World Avenue solely to prevent and delay Connexus from obtaining evidence relevant to the June 2012 Mini-Trial, and to conceal – under the guise of a "confidential" settlement agreement and a draft protective order that this Court never entered – the extent to which they are transferring and hiding this evidence from Connexus.

As an initial matter, Movants lack standing to challenge the subpoenas. Fourth Circuit precedent requires Movants to have a "personal right or privilege in the information sought by the subpoenas" to challenge them, and their mere desire to shield discovery from Connexus does not constitute such a "personal right or privilege." The Court should deny Movants' motion for this reason alone. Further, each of Movants' other arguments lack merit: (1) the discovery, including the Settlement Agreement and related communications, is discoverable because it pertains to the Mini-Trial (litigation proceeds as this Court previously held and the location, custody, and existence of discoverable information under FRCP 26); (2) this Court ordered no less than three times that Connexus may seek discovery pertaining to the June 2012 Mini-Trial;

(3) Movants' cannot conceal the discovery by unilaterally designating it as "confidential" under a protective order in another case; and (4) Movants failed to show any undue burden.

For these reasons, the Court should deny the motion, and award Connexus its fees and costs associated with opposing it.

## BACKGROUND

On November 30, 2010, this Court ordered the following Mini-Trial issues to be tried in the *BSI/World Avenue Litigation*: (1) "whether Plaintiff Beyond Systems, Inc. is a *bona fide* 'interactive computer service provider' entitled to bring suit under the Maryland Commercial Electronic Mail Act," (2) "whether Plaintiff Beyond Systems, Inc. is a *bona fide* resident of the state of Maryland within the meaning of the MD-CEMA statute," and (3) "the nature of the relationship between Plaintiff Beyond Systems, Inc. and Third-Party Defendant Hypertouch, Inc." (WA ECF No. 544 at 2.)[1] The Court then stayed all proceedings here because "the *World Avenue* trial will address critical issues of standing that could very well preclude BSI from pursuing its claims in the present action—particularly those brought pursuant to the MD-CEMA statute." (ECF No. 419 at 2.)

The *BSI/World Avenue Litigation* settled on or about August 5, 2011. (WA ECF No. 767.) Connexus asked Movants and World Avenue to preserve materials relating to the *BSI/World Avenue Litigation*, and to confirm that none would be destroyed. (Ex. 1, 1st M&C Email Chain at 4.) Nobody provided any substantive response, except that World Avenue and its counsel indicated they would not discuss these matters with Connexus. (Id. at 1.)

Counsel for Connexus and Movants convened by telephone at 1:30 p.m. on September 6, 2011. During that call, Steve Ring, counsel for Movants, admitted that he knew

---

[1] "WA ECF No." denotes the document number designated by the court's electronic filing system in the *BSI/World Avenue* litigation (Case No. 8:08-cv-00921).

whether World Avenue destroyed, retained, and/or transferred the materials Connexus seeks, but refused to divulge his knowledge and deferred back to World Avenue. (Ex. 2, 9/6/11 M&C Trans. at 5:1-8:18; 10:12-13; 11:20; 18:10-21:5.) World Avenue then refused to discuss the existence, location, transfer, retention, or destruction of documents expect to say that "You have the protective order so you know what happened to documents within its scope. We have retained copies of the other documents generated in the litigation." (Ex. 3, 9/16/11 S. Saunders Email.) As explained below, the Court never entered any "protective order" that permitted World Avenue to transfer or destroy documents responsive to a subpoena.

During a telephonic hearing on September 19, 2011, the Court ordered the same three Mini-Trial Issues to be tried in this case that it ordered to be tried in the *BSI/World Avenue Litigation*, and ordered that discovery could proceeds on Mini-Trial Issues. Connexus then issued subpoenas to World Avenue and its counsel seeking the following information:

- All documents, deposition transcripts, expert reports, videotaped inspections, and under seal filings in the *BSI/World Avenue Litigation* pertaining to the Mini-Trial Issues (ECF No. 439-1 at Request Nos. 1-7);

- The settlement agreement resolving the *BSI/World Avenue Litigation* ("Settlement Agreement"), and all communications reflecting consideration exchanged thereunder (Id. at Request Nos. 8-9); and

- Discovery concerning the disposition/destruction/location of documents responsive to the subpoenas, (Id. at Request Nos. 8, 10-11).

World Avenue and its counsel committed to produce documents on October 19, 2011. (Ex. 4, 10/4/11 S. Saunders Email.) World Avenue and its counsel failed to produce a single document as promised. Instead, on October 19, 2011, World Avenue's counsel – "pursuant to [its] discussion with Steptoe & Johnson [Movants' other counsel in this case]," produced to Steve Ring some unidentified "additional confidential documents not accounted for in our original compliance with the Protective Order." (Ex. 5, 10/19/11 S. Saunders Ltr.) World

Avenue then declined to confer about the documents or subpoenas because "we do not want anyone to contend that we violated the confidentiality provisions of the documents referenced in our objections," and its objections state that the information Connexus seeks cannot be disclosed pursuant to "the Settlement Agreement." (Ex. 6, S. Saunders/A. Rothman Email Exchange; Ex. 7, Subpoena Responses.)  Connexus then moved to enforce the subpoenas, and that motion is now pending in this Court at ECF No. 441 by agreement of the parties and subject to the approval of the Court.  Only the Settlement Agreement and related communications will reveal the existence, location, custody and condition of the discovery Connexus seeks, and Connexus is entitled to the requested discovery for this and other substantive reasons set forth below.  The Court should deny Movants' motion.

## ARGUMENT

### A.     The Settlement Agreement and Communications Are Discoverable.

The Settlement Agreement and related communications (subpoena request nos. 8 through 11) are discoverable because they reflect:  (1) Paul Wagner/BSI's revenues generated from litigation, and the Court in this and the *BSI/World Avenue Litigation* compelled discovery concerning BSI's revenues because they are relevant to BSI's standing as a *bona fide* Internet service provider, and (2) the location, existence, and custodians of documents responsive to the subpoena, and such information is discoverable under the express language of FRCP 26(b)(1).

#### 1.     Legal Standard

FRCP 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Supreme Court precedent holds that "relevant information" should be construed very broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

4

be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Further, "[t]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).  Movants cannot plausibly argue that the information sought is not discoverable.

### 2. BSI's ISP Status.

The Settlement Agreement and communications Connexus seeks are discoverable because they must reflect consideration provided (or to be provided) to BSI (directly or indirectly) resulting from the *BSI/World Avenue Litigation*.  And, the court in this and the *BSI/World Avenue Litigation* compelled BSI to produce discovery reflecting revenues that BSI generated from anti-spam lawsuits and settlements because such discovery is relevant to BSI's standing to sue as a *bona fide* Internet service provider (Mini-Trial Issue No. 1):

> The Court finds that that the information sought may inform the Court in its assessment of statutory damages.  The motivations of Plaintiff, as well as those of the named Defendants, may be of value to the Court.  Equally true, discovery of impeachment evidence is appropriate. Newsome v. Penske Truck Leasing Corp., 427 F. Supp. 2d 431 (D. Md. 2006).  The quantification of income derived from litigation endeavors, juxtaposed with those from the legitimate operation of an internet service provider, may influence the Court as to the motives of Plaintiff in light of any legislative intent. See Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1056 (9th Cir. 2009) (plaintiff's company generates no revenue and is financed strictly through lawsuits against e-mail marketers).  While the statute in Gordon is not controlling here, the Court's reasoning may be helpful in discerning the true harm inflicted upon Beyond Systems, Inc.

(ECF No. 233 at 2; Ex. 8, 2/16/11 Hrg. Trans. at 52:1-54:17.)  Consideration provided to BSI resulting from the *BSI/World Avenue Litigation* is relevant under the law of this case, and thus the Settlement Agreement and communications reflecting such information is discoverable.

### 3.     Existence, Nature, Custody, Condition and Location of Documents.

FRCP 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense –including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Here, the Settlement Agreement and related communications must reflect the existence, description, nature, custody, condition, and location of responsive documents because World Avenue is using it to refuse to provide Connexus with a single piece of paper. (Ex. 7, Subpoena Response at 2; Ex. 8, S. Saunders/A. Rothman/ Email Exchange.)   And, the only way Connexus can determine such information is by obtaining the Settlement Agreement and related communications.  As shown above, World Avenue and its counsel – even while under subpoena – are transferring responsive documents in coordination with Movants' counsel, but counsel for World Avenue and Movants refuse to discuss these documents because of the Settlement Agreement.  Further, given Movants' and World Avenue's repeated refusals to advise whether they are destroying documents, Connexus is deeply concerned that they may have already destroyed documents and may continue to do so.  Only the Settlement Agreement and communications asking for the description, nature, custody, condition, and location will ensure Connexus obtains the information it seeks.

Movants and World Avenue suggested in their communications preceding Movants' motion that no discovery about the location or existence of the documents is needed because Movants are maintaining copies responsive documents. (Ex. 2, 9/6/11 M&C Trans. at 5:18-6:2.) Their argument is irrelevant, as "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an

absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." *Software Rights Archive, LLC v. Google Inc.*, 2009 WL 1438249, at *2 (D. Del. May 21, 2009) (citations and quotations omitted). Such a requirement "would unduly burden the discovery process by permitting wasteful controversy over whether a party actually has the documents and whether they are exactly the same as those sought." *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 73 (M.D.N.C. 1986). Thus, "production from a third party will be compelled in the face of an argument that the 'same' documents could be obtained from a party, because there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008) (internal quotations and citations omitted).

Here, Movants cannot be trusted to disclose information concerning the documents, much less produce all of them even if the Court orders them to do so. Magistrate Judge Kay issued sanctions when Steve Ring, counsel for Movants, falsely represented to the court that Movants' father, William Wagner, did not have documents responsive to a subpoena that World Avenue served in the *BSI/World Avenue Litigation* when in fact he did have responsive documents:

> Respondent's repeated failure to disclose these responsive documents amounts to an intentional misrepresentation to this Court suggestive of bad faith…Given the revelation of responsive documents during the deposition, Respondent's repeated failure to disclose their existence, and his refusal even now to adequately excuse that failure, this Court finds it appropriate to award Petitioner costs and attorneys' fees related to responding to this instant renewed motion for sanctions.

(Ex. 9, 7/30/10 Sanctions Order at 8-9.) If Movants cannot be trusted to disclose to a federal judge the existence of responsive documents, then they cannot be trusted to disclose them to their adversaries from whom they are seeking tens of millions of dollars.

7

Further, this court sanctioned Movants no less than twelve times for failing to comply with their discovery obligations and engaging in other vexatious misconduct, including issuing false subpoenas. (Ex. 10, 12 Sanction Orders.)  Moreover, Paul Wagner/BSI destroyed evidence, including the original emails over which BSI sues and equipment at issue in the case. (Ex. 11, P. Wagner Dep. at 119:7-120:9; 1018:6-1019:10; 1030:2-1031:8; Ex. 12, BSI Response to Interrogatory No. 1(i).)  Paul Wagner/BSI and Joe Wagner/Hypertouch, and their counsel, apparently are insisting that World Avenue transfer documents pursuant to the Settlement Agreement and the alleged BSI/World Avenue Protective Order – even with full knowledge that World Avenue and its counsel are under subpoena. (Ex. 5, 10/19/11 S. Saunders Letter.)

Finally, Movants may contend that the discovery sought is irrelevant because the draft protective order submitted by Movants' counsel at WA ECF No. 94 discloses the location and existence of responsive documents, and permits Movants and World Avenue to destroy and/or transfer them upon the conclusion of litigation even if under subpoena.  Movants' argument would strain credulity.  First, the Court never entered any protective order allowing any party to transfer and/or destroy materials much less in response to a subpoena.  Instead, the Court via paperless order at WA ECF No. 97 entered only the protective order at WA ECF No. 92, and WA ECF No. 92 says nothing about destroying or transferring documents. (Ex. 13, *BSI/World Avenue* Litigation Docket Excerpts; Ex. 14, BSI/World Avenue Protective Order.)  Second, the BSI/World Avenue protective order applies only to "discovery materials" designated as "confidential," but World Avenue now refuses to discuss the location and existence of <u>any</u> documents Connexus seeks due to the Settlement Agreement, and Movants merely assert that Movants are retaining them.  Connexus must review the Settlement Agreement and related communications to discover the full extent of the nature, condition, and location of the requested

documents, including documents which World Avenue transferred so that Connexus may ensure a complete production.

### B. Movants Lack Standing.

Movants lack standing to seek to quash the subpoenas. Fourth Circuit precedent holds that "[a] party has standing to challenge a subpoena served on a third party if 'the party claims some personal right or privilege in the information sought by the subpoena.'" *Corsair v. Engineered Framing Systems, Inc.*, 2011 U.S. Dist. LEXIS 91770, *6 (D. Md. 2011) (*quoting United States v. Idema*, 118 Fed. App'x 740 (4th Cir. Jan. 4, 2005)). The "personal right or privilege" must be recognized by law, as the "[t]he Supreme Court has expressed reluctance to create new privileges." *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. Ill. 2009) (*citing University of Pennsylvania v. EEOC,* 493 U.S. 182 (declining to create an "academic deliberations privilege")).

Here, Movants claim that they have a "personal right or privilege in the information sought by the subpoenas" because "they agreed by virtue of their stipulation to keep in confidence the settlement terms and the negotiations and communications leading up to it." (ECF No. 439 at 2.) Movants are flat wrong, as there is no "private confidentiality privilege" or "confidential settlement privilege."

"[A] person's desire for confidentiality is not honored in litigation. Trade secrets, privileges, and statutes or rules requiring confidentiality must be respected, see *Fed. R. Civ. P. 45(c)(3)(A)(iii)*, but litigants' preference for secrecy does not create a legal bar to disclosure." *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. Ill. 2009). Further, "[c]ontracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off." *Id*. Thus, Movants

cannot seek to quash the subpoenas on the basis of a confidentiality provision in a private agreement. *Grumman Aerospace Corporation v. Titanium Metals Corp. Of Am.*, 91 F.R.D. 84, 87 (E.D.N.Y. 1981) (confidentiality agreement with consultant did not warrant quashing subpoena); *Amari Co. v. Burgess*, 546 F. Supp. 2d 571 (N.D. Ill. 2008) (confidentiality agreement cannot be used "to prevent an individual from providing testimony under a subpoena") (citations omitted); *United States v. Robinson*, 2007 U.S. Dist. LEXIS 14853, 16-17 (W.D. Tex. 2007) ("a private confidentiality agreement will not trump a court order of production unless an established legal privilege applies") (citing FRCP 26(b)(1), *Jaffee v. Redmond*, 518 U.S. 1, 8-9 (1996)).

Because a party's mere desire to keep information confidential does not constitute a "personal right or privilege in the information sought by the subpoenas" sufficient to mandate quashing them, all of the discovery Connexus seeks, including the Settlement Agreement, is discoverable. Thus, in compelling Paul Wagner/BSI to produce information about its litigation proceeds resulting from settlements, this Court ruled that "confidentiality is a non-issue," and that although the moving party sought only aggregate amounts, "any concerns about confidentiality that may appear in any agreement that forms the basis for a recovery, are pierced by the issuance of the Order of this Court, and the protective order currently in place." (ECF No. 233 at 2.) Indeed, courts uniformly hold that settlement agreements themselves are discoverable where, as here, they are relevant to the litigation in which it is sought even if the parties to the agreements stipulated to confidentiality. *Thermal Design, Inc. v. Guardian Building Prods., Inc.*, 270 F.R.D. 437 (E.D. Wis. 2010) ("Most cases find that a settlement agreement is discoverable despite a confidential designation, especially when there is a protective order in place to prevent unauthorized disclosure."); *Potluri v. Yalamanchili*, 2008 WL 2566367 (E.D. Mich. June 24,

10

2008) (settlement agreement discoverable even though it had a confidentiality clause); *Bd. of Trustees v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) (settlement agreement relevant and discoverable, and noting that just because parties to an agreement agree to confidentiality does not "shield it from discovery"); *Am. Guarantee & Liability Ins. Co. v. CTA Accoustics, Inc.*, 2007 WL 1099620, at *4 (E.D. Ky. Apr. 10, 2007) (settlement agreement is discoverable if it is relevant, and "the agreement is not protected from discovery simply because it has been denominated 'confidential' by the parties"); *Conopco, Inc. v. Wein*, 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) ("the simple fact that the parties to the settlement agreement agreed to its confidentiality does not shield it from discovery") (internal quotations and citations removed). And, the protective order in this case will resolve any confidentiality concerns. (ECF No. 87-3.)

The authorities cited by Movants on page 3 do not support concealing the discovery Connexus seeks. None of them addressed, much less held, that parties to a settlement agreement containing discoverable information may shield it from a subpoena by merely agreeing to confidentiality. Likewise, none of them allowed a subpoena recipient to shield discovery produced in a related case by unilaterally designating documents as "confidential." And, each case cited by Movants is distinguishable for other reasons. *Minogue* did not even involve a subpoena or settlement agreement but instead held – as Connexus contends below – that a party must show harm to prevent disclosure. Likewise, *Prosurance* and *ABM* did not did not recognize any privacy or other interest that would warrant withholding settlement communications in response to a subpoena, but rather granted unopposed motions to seal settlement communications to prevent the public from viewing such information while fully disclosing it to all parties in the litigation. Under these authorities, the Court should compel

11

disclosure while allowing Movants to designate the Settlement Agreement as "confidential" under the protective order in this case. (ECF No. 87.)

**D.     Movants' "Confidentiality" Objections Are Wrong.**

Movants object to the production of documents Connexus seek because "many" of them were "exchanged between the parties in the World Avenue litigation were produced, as in this case, under a confidentiality agreement." (ECF No. 439 at 2-4.)  Movants' mere desire for confidentiality is irrelevant as explained above.  Further, the BSI/World Avenue protective order protects only "discovery material." (Ex. 14, BSI/World Avenue Protective Order at ¶1(a).)  The Settlement Agreement and related communications are not "discovery material."

Moreover, the BSI/World Avenue protective order applies only to discovery that that contains "sensitive personal information, trade secrets or other confidential research, development, or commercial information." (Id. at ¶1(a).)  To withhold production on confidentiality grounds, Movants must identify the trade secrets and similar information, and how that disclosure "would cause significant harm to its competitive and financial position" by "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Deford v. Schmid Prod. Co*., 120 F.R.D. 648, 653 (D. Md. 1987).  Movants failed to show how any of the requested information meets any of the foregoing criteria, or that any harm would flow from disclosure.

**E.     The Court Ordered Mini-Trial Discovery to Proceed**.

Movants resist the discovery on the ground that "the parties have substantially different positions on whether discovery is or should be closed in this case and on the acceptable scope of remaining discovery if discovery is allowed at all" and "the Court should suspend the enforcement of remainder of the Connexus subpoenas until it enters its new Scheduling Order." (ECF No. 439 at 2.)  The Court should reject Movants' argument because it ignores the

following unequivocal Court rulings ordering Mini-Trial discovery to proceed: (1) the Court – over Movants' objections – ordered that Connexus could take discovery concerning the Mini-Trial during the September 19, 2011, telephonic hearing; (2) the Court confirmed its ruling when it denied Movants' motion for reconsideration in which Movants argued that the Court should bar or restrict Mini-Trial discovery; (3) the Court rejected Movants' proposed scheduling order seeking to restrict discovery; and (4) the Court entered a scheduling order at ECF No. 440 reconfirming Mini-Trial discovery may proceed. (ECF Nos. 429, 434; 436-438; 440.)

### F. Movants Failed to Show Any Burden.

Movants claim "[t]he remainder of the Connexus subpoenas seeks, in a nutshell, the entire record in the World Avenue litigation, including all written and deposition discovery and every document ever produced in that litigation, ostensibly 'limited' to documents and discovery that were requested or produced 'after the Court ordered the Mini-Trial' in World Avenue or that otherwise 'pertain' or 'relate' to the Mini-Trial issues, regardless of when they were sought or produced." (ECF No. 439 at 4.) Movants are correct to the extent they claim that Connexus seeks discovery pertaining to the Mini-Trial. Movants are incorrect to the extent they contend that Connexus seeks information irrelevant to the Mini-Trial. The plain language of the requests expressly limits discovery to the Mini-Trial Issues and expressly excludes from the requests any documents that this Court ordered in the *BSI/World Avenue Litigation* need not be produced. (ECF No. 439-1.)

In all events, Movants failed to show any burden they would experience if World Avenue and its counsel are required to produce all requested documents. "The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence. *Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38 (D. Md. 2000) (internal quotations and citation omitted). Here, no harm

will flow to Movants because the subpoenas do not require Movants to produce a shred of paper, and because they already reviewed all requested documents in the *BSI/World Avenue Litigation*. Rather, Movants seek only to conceal evidence that is harmful to their case and helpful to Connexus, and production of harmful information does not constitute undue burden.

### G.     Movants Should be Sanctioned.

Movants should be sanctioned. "Federal courts possess inherent authority to sanction a litigant for bad-faith behavior and to regulate litigant's behavior." *Prince Uchenna Obifuele v. 1300, LLC*, No. SKG-04-3839, 2006 U.S. Dist. LEXIS 60043, *28 (D. Md. August 23, 2006) (citing *In re Weiss,* 111 F.3d 1159, 1171 (4th Cir. 1997)). Unlike Rule 11, "the inherent power reaches all litigation misconduct done in bad faith." *Id.* at *29 (citing *Chambers v. NASCO Inc.,* 5*0*1 U.S. 32, 58, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). This Court already sanctioned Paul Wagner/BSI for filing frivolous motions, and Movants' instant motion is no different than those the Court already sanctioned because it lacks any basis or justification, ignores this Court's unequivocal ruling ordering Mini-Trial discovery to proceed, and ignores this Court's findings that the requested discovery is relevant to the Mini-Trial. (Ex. 10, 12 Sanctions Orders at 4, 6, 10, 12, 26.) Movants filed their motion solely to prevent and delay Connexus's access to relevant discovery that – given Movants' resistance – can only harm the merits of their claims and defenses. The Court should award Connexus's its attorneys' fees and costs associated with opposing Movants' motion.

## CONCLUSION

For these reasons, Connexus respectfully requests that the Court deny Movants' motion and grant the relief it seeks.

Respectfully submitted,

Dated: October 27, 2011                  /s/
                                         J. Douglas Baldridge, US DC-MD Bar No. 11023
                                         Lisa Jose Fales, US DC-MD Bar No. 08141
                                         Ari N. Rothman, US DC-MD Bar No. 17560
                                         VENABLE LLP
                                         575 7th Street, NW
                                         Washington, DC 20004-1601
                                         (202) 344-4000 (phone)
                                         (202) 344-8300 (fax)
                                         jdbaldridge@venable.com
                                         ljfales@venable.com
                                         anrothman@venable.com
                                         *Attorneys for Connexus Corp.*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 27th day of October 2011, a copy of the foregoing *Opposition to Plaintiff's and Third-Party Defendants Motion to Quash or Modify Subpoenas Issued by Connexus* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system unless otherwise indicated:

Thomas M. Barba
John J. Duffy
Jeffrey Edward McFadden
Roger William Yoerges
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC  20036

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY  10019

Stephen H. Ring
Law Offices of Stephen H. Ring, P.C.
506 Main St., Suite 215
Gaithersburg, MD  20878

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850

*Counsel for Plaintiff BSI, Inc.,*
*Joe Wagner/Hypertouch, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th St., NW, Suite 800
Washington, DC  20005-2003

Darrell J. Graham
Roeser Bucheit & Graham LLC
20 N. Wacker Dr.
Suite 1330
Chicago, IL  60606

*Counsel for Defendants Kraft Foods Inc. &*
*Vict. Th. Engwall & Co.*

Sanford M Saunders , Jr.
Greenberg Traurig LLP
2101 L St NW Ste 1000
Washington, DC  20037

*Counsel for World Avenue USA, LLC and*
*World Avenue Holdings, LLC*

             /s/
            Ari N. Rothman