**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 8:08-CV-00409-PJM |
| | ) | |
| KRAFT FOODS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**NON-PARTIES WORLD AVENUE USA, LLC, THEUSEFUL, LLC, AND WORLD AVENUE HOLDINGS, LLC'S AND GREENBERG TRAURIG, LLP'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL, AND CROSS-MOTION TO QUASH AND FOR ENTRY OF PROTECTIVE ORDER**

Non-Parties World Avenue USA, LLC, TheUseful, LLC, World Avenue Holdings, LLC, ("World Avenue Companies") and Greenberg Traurig, LLP ("GT") hereby submit their Memorandum of Law in Opposition to Connexus Corp.'s ("Connexus") Motion to Compel, and pursuant to Rules 26 and 45, cross-move to quash and/or for entry of a protective order regarding the subpoenas for documents issued by Connexus ("Subpoenas").[1]  As for good cause, the World Avenue Companies and GT state:[2]

I.      **Preliminary Statement.**

The Subpoenas attempt to inflict Connexus' trial preparation costs onto disinterested third parties though the same documents sought are readily available from Connexus' multiple

---

[1] The Subpoenas are attached as Exhibit 1 to Connexus' Memorandum, and GT and the World Avenue Companies' timely-filed objections are attached as Exhibit 7 to Connexus' Memorandum (*See* DE 441-2, p. 99 of 189).

[2] Connexus originally issued the Subpoenas and filed its Motion to Compel in the U.S. District Court for the District of Columbia although this case was venued in this judicial district.  By Joint Motion dated October 27, 2011, the parties consented to transfer jurisdiction over the Motion to this case.  *See* DE 441, 444.

opponents in this case.  The World Avenue Companies recently resolved their litigation in this judicial district (the "World Avenue Litigation") with Plaintiff Beyond Systems, Inc. ("BSI") and Third Party Defendants Hypertouch, Inc. ("Hypertouch") and James Joseph Wagner ("Wagner") (collectively, the "BSI/Hypertouch Parties").   In utter disregard of clear legal authority that discovery available from parties should not be sought from non-parties, let alone their counsel, Connexus has issued facially oppressive Subpoenas to the World Avenue Companies and to GT to gather documents for its trial notebook that are easily obtainable from the BSI/Hypertouch Parties. Similarly, Connexus seeks to pierce the confidentiality provisions of the World Avenue Companies' Settlement Agreement with the BSI/Hypertouch Parties -- although the content of that Settlement Agreement has no relevance whatsoever to this case.[3]

This Court has already permitted Connexus full discovery against the BSI/Hypertouch Parties on the Mini-Trial scheduled in this case.   Indeed, just yesterday, counsel for the BSI/Hypertouch Parties advised that they have agreed to produce to Connexus:

- All documents produced by BSI or any non-party after the Court ordered the mini-trial in the World Avenue Litigation;

- All documents produced by BSI or any non-party before the Court ordered the Mini-Trial;

- All documents that the Court ordered BSI, Joe Wagner, or Hypertouch to produce in the World Avenue Litigation relating to the Mini-Trial;

---

[3] The Settlement Agreement at issue contains a confidentiality clause.  Though the World Avenue Companies and GT will obey any Court Order with respect to the Settlement Agreement, Connexus' desire to know the terms of settlement, without a demonstration of relevance to its case, is no justification for revealing those terms.

- The BSI revenue back-up information that BSI produced in the World Avenue Litigation, including BSI's ledger and unredacted tax returns for tax years up to 2009;

- Bank statements, checks sent to BSI during the relevant period, and checks sent out by BSI during the relevant period;[4] and

- Documents produced by the third parties in the World Avenue Litigation.

*See* Declaration of Sanford M. Saunders, Jr., attached as Ex. 1.  The BSI/Hypertouch Parties' agreement to produce these materials has been made in writing and reaffirmed in writing.

Yet, despite the multiple Court Orders permitting Connexus to seek this discovery from the BSI/Hypertouch Parties, and the BSI/Hypertouch Parties' written agreement to provide it, Connexus still insists on having GT and the World Avenue Parties prepare its trial notebook on the pretext that the BSI/Hypertouch Parties will disobey this Court and withhold the very documents they have offered to produce.  This argument amounts to several things:  infliction of burden on non-parties to satisfy unreasonable paranoia; an underlying assumption that this Court is incapable of enforcing its own Orders, and complete disregard of the reality that this Court did in fact enforce its Orders vigorously in the World Avenue Litigation.  That reality gives every reason to believe that the BSI/Hypertouch Parties' offer to produce now is real, will occur, and obviates any possible need to inflict the oppressive burden of Connexus' Subpoenas on the World Avenue Companies and their counsel.  For these reasons and those described below, the Court should quash the Subpoenas, deny the Motion to Compel, and require Connexus to seek the documents directly from the parties to this case who have the documents and have already agreed to produce them -- the BSI/Hypertouch Parties.

---

[4] The World Avenue Companies never received these bank statements and checks.  Connexus will therefore receive a more fulsome production than the World Avenue Companies ever received or could provide.

## II.      **Applicable Legal Standard.**

While Federal Rule of Civil Procedure 45 allows a party to "issue a subpoena to compel a non-party to produce evidence independent of any deposition," paragraph (c)(3) of the Rule also "explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power."  Fed. R. Civ. P. 45(a)(1) Advisory Committee's Note 1991 Amendment. The district court has "wide discretion" in deciding a motion to quash subpoenas and its decision is reviewable only for abuse of that discretion.  *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1997 (11th Cir. 1991) (affirming granting of motion to quash subpoena).

Federal Rules of Civil Procedure 26(c) and 45(c)(3) act in conjunction with each other to provide the grounds upon which a subpoena should be quashed.  The Court has the discretion, for good cause, to issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expenses, including … (A) forbidding the disclosure or discovery."  *See* Fed. R. Civ. P. 26(c).  If the threshold for good cause is met, the Court has broad discretion to fashion an appropriate order and should deny the request only if the opposing party can show that the protective order will substantially prejudice them.  *M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992).

A subpoena must also be quashed where it "subjects a person to an undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  And, a subpoena should also be quashed if it "requires disclosure of a trade secret or other confidential research, development, or commercial information" unless the party requesting the information established a "substantial need" for the information that cannot be met "without undue hardship."  Fed. R. Civ. P. 45(c)(3)(B)(i) (2005); *see also* Fed. R. Civ. P. 45(c)(3) Advisory Committee's Note 1991 Amendment (stating that Rule 45(c)(3)(B) identifies those situations in which a subpoena should be quashed unless the party serving the subpoena

shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness).  To seek protection under this section, the subpoenaed party must first show that the information requested constitutes confidential information or trade secrets and that the disclosure of the information would be harmful.  *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 525 (W.D. Tenn. 1999).

### III.   Summary of Argument.

The Court should deny the Motion to Compel and quash the Subpoenas and/or enter a protective order for four compelling reasons.  First, the Subpoenas foist the burden of Connexus' trial preparation upon third parties -- the World Avenue Companies and GT -- who have no interest in the outcome of this case.  Second, Connexus' party opponents have agreed in writing to produce the relevant materials requested.  Third, the Subpoenas improperly seek disclosure of a confidential Settlement Agreement without meeting the heightened standards of relevancy for such a request.  Finally, the World Avenue Companies and GT have timely objected to the production of documents based on appropriate privileges, and timely provided a Privilege Log. In sum, Connexus has violated its clear duty to minimize expense and burden to the World Avenue Companies and GT.  Connexus has no valid reason for doing so and, as a result, enforcement of the Subpoenas should be denied.

### IV.   Argument.

#### A.   The Subpoenas Should Be Quashed As A Matter of Law Because The Documents Sought Therein Are Directly Available From Multiple Parties To This Action Who Have Agreed to Produce Them.

##### 1.   The Court Should Quash The Subpoenas Because The Materials Are Readily Available From The BSI/Hypertouch Parties.

Rule 26(b)(2), Fed. R. Civ. P., states that a district court may limit discovery where "(i)

the discovery sought is unreasonably cumulative or duplicative, or *is obtainable from some other*

*source that is more convenient, less burdensome, or less expensive*" (emphasis added).  "In the

context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to

the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance."

*Schaaf v. SmithKline Beecham Corp.*, 223 F.R.D. 451, 453 (E.D.N.C. 2005).  This inquiry "calls

for the court to consider, *inter alia*, whether the information is necessary and unavailable from

any other source."  *Carl Zeiss Stiftung v. Zeiss*, 40 F.R.D. 318, 328 (D.D.C. 1966) ("Necessity

for production is sharply reduced where an available alternative for obtaining the desired

evidence has not been explored"), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967).

> As stated by one court:

> To determine whether a subpoena imposes an "undue burden," courts balance
> several factors, including " '[the] relevance [of the materials sought], the need of
> the party for the documents, the breadth of the document request, the time period
> covered by it, the particularity with which the documents are described and the
> burden imposed.'" *Flatow v. Islamic Rep. of Iran*, 202 F.R.D. 35, 36
> (D.D.C.2001) (alterations in original) (*quoting Alexander v. FBI*, 186 F.R.D. 21,
> 34 (D.D.C.1998)). Also "potentially relevant" to this analysis is "whether the
> discovery is 'unreasonably cumulative or duplicative'; whether the discovery
> sought is 'obtainable from some other source that is more convenient, less
> burdensome, or less expensive'; and whether 'the burden or expense of the
> proposed discovery outweighs its likely benefit.' " *Watts v. Secs. and Exchange
> Comm'n*, 482 F.3d 501, 509 (D.C.Cir.2007) (quoting Fed.R.Civ.P. 26(b)).

*Educ. Fin Council v. Oberg*, 2010 WL 3719921, at *1, *2 (D.D.C. Mar. 8, 2010).

Where a subpoena seeks from a non-party certain communications that are readily

available from a party to the underlying litigation, then it imposes an undue burden as a matter of

law. *Oberg*, 2010 WL 3719921, at *3 ("Oberg's request imposes an undue burden on EFC

because it appears that many, if not all, of EFC's communications with the defendants are

available from the defendants to the underlying litigation themselves"); *Medical Components,*

*Inc. v. Classic Medical, Inc.*, 210 F.R.D. 175,  180 n. 9 (M.D.N.C. 2002) ("The current generally

prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party, and that the court should give special weight to the unwanted burden thrust upon non-parties when evaluating the balance of competing needs"); *Schaaf*, 233 F.R.D. at 455 (holding that plaintiff should seek discovery from party before issuing subpoena to non-party, and "[b]ecause the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, and the burden or expense of the proposed discovery outweighs its likely benefit, the motion to enforce is denied and the subpoena to PRG is quashed"); *Ambu, Inc. v. Kohlbrat & Bunz Corp.*, 2000 WL 17181, at *1, *7 (W.D.N.C. 2000) (stating that "it is correct that discovery must be sought first from parties before burdening non-parties").

Here, the Subpoenas are unduly burdensome on their face because each and every one of the requests in the Subpoenas seek documents that are obtainable directly from the BSI/Hypertouch Parties.[5]   Requests 1 through 7 seek depositions, videotapes, documents, discovery requests, privilege logs, expert reports, filings under seal, documents referenced in filings served in the litigation -- all of which are in the possession of the BSI/Hypertouch Parties. Requests 8-9, and 11 seek irrelevant documents pertaining to the Settlement Agreement and payments thereunder, all of which are also in the possession of the BSI/Hypertouch Parties. Request 10 calls for irrelevant communications and documents on the retention and destruction of documents under the Court's Protective Order and under the Settlement Agreement -- both of which are either irrelevant, in the BSI/Hypertouch Parties' possession, or both.

---

[5] For a specification of the burden imposed simply by the assembly of a Privilege Log and revised Privilege Log, see Exhibit 2, Declaration of Barry Dotson.  Due to a number of factors, including preparation of a privilege log due to, *inter alia*, the Subpoenas' overreaching request for internal communications, and due to Connexus' initial filing in another court, the costs of responding to the Subpoenas are now a substantial five-figure sum.

> **2.    The BSI/Hypertouch Parties Have Agreed To Produce The Documents That Are The Subject Of The Subpoenas**.

On page 1 of its Memorandum, Connexus declares that "Connexus' opponents in [this case] refuse to produce the requested information." *See* Memorandum, p. 1. Connexus points to a transcript of a September <u>6</u>, 2011 conference call with the BSI/Hypertouch Parties' counsel. *See* Memorandum, Ex. 10, p. 21, l. 16-22; p. 22, l. 1-22. During the conference call, the BSI/Hypertouch Parties' counsel stated that they did not believe that *any* discovery should go forward. *Id.*

Yet, amazingly, Connexus fails to refer to the multiple Orders and rulings *since* September 6th that *overrule* Hypertouch, BSI, and the Wagners' objections and *authorize* Connexus to seek discovery relating to the Mini-Trial. Specifically, Connexus filed a Motion to Lift Stay for Limited Discovery and Related Relief for the purpose of seeking the materials it seeks from the World Avenue Companies and GT. *See* DE 424; filed 9/9/11. After the September 19, 2011 conference in this case with Judge Messitte, Connexus recognized that the Court had "ordered that discovery may proceed" as to the Mini-Trial issues and withdrew its Motion to Lift Stay as moot. *See* DE 431-1. In a paperless Order, the Court agreed with Connexus that the Motion to Lift Stay was moot. *See* DE 433.

The BSI/Hypertouch Parties had moved to reconsider the Court's September 19, 2011 rulings to, among other things, preclude discovery from occurring on the Mini-Trial issues (*see* DE 429, 431, 432), and the Court summarily denied the Motion. *See* DE 437. Thereafter, the Court entered a Scheduling Order permitting discovery. *See* DE 440, 447. The Court's Order stated that: "Discovery limited to the Mini-Trial issues may commence immediately." *See* DE 440. Thus, after the September 6th claimed refusal by the BSI/Hypertouch Parties, the Court gave Connexus the green light to proceed with discovery relevant to the Mini-Trial.

Indeed, just yesterday, counsel for the BSI/Hypertouch Parties agreed in writing to produce:

- All documents produced by BSI or any non-party after the Court ordered the mini-trial in the World Avenue Litigation;

- All documents produced by BSI or any non-party before the Court ordered the Mini-Trial;

- All documents that the Court ordered BSI, Joe Wagner, or Hypertouch to produce in the World Avenue Litigation relating to the Mini-Trial;

- BSI revenue back-up information that BSI produced in the World Avenue Litigation, including BSI's ledger and unredacted tax returns for tax years up to 2009;

- Bank statements, checks sent to BSI during the relevant period, and checks sent out by BSI during the relevant period; and

- Documents produced by the third parties in the World Avenue Litigation.

*See* Declaration of Sanford M. Saunders, Jr., attached as Ex. 1, ¶ 3.

Yet, notwithstanding, Connexus still insists on having its trial preparation performed by the World Avenue Companies and GT, rather than seeking the discovery directly from the BSI/Hypertouch Parties.  Inexplicably, Connexus ignores the BSI/Hypertouch Parties' written agreement to produce and stubbornly, though incorrectly, asserts that "BSI, Hypertouch, and Joe Wagner are not producing (or have not said whether they will produce) other information we requested (not just the settlement agreement and related communications but other things like expert reports, all deposition transcripts, etc.), and have not given us any deadline by when they will produce the documents they said they are willing to produce other than by saying they can

roll out production through March 2012," "our firm view remains that World Avenue and Greenberg Traurig must produce the documents we requested." *See* email from A. Rothman dated November 10, 2011. Thus, rather then pursuing the BSI/Hypertouch Parties' written commitment to produce the pertinent documents, or file a motion to compel against them for the remaining irrelevant materials Connexus wants documents that relate to the Settlement Agreement and performance of obligations thereunder. Connexus unsustainably insists that World Avenue Companies and GT provide what the BSI/Hypertouch Parties have offered, and more.[6]

Connexus' Memorandum is devoid of a single discovery request propounded by Connexus to the BSI/Hypertouch Parties that requests these same materials or materials relevant to the Mini-Trial. Nor does Connexus refer to any objections, refusals, or agreements to produce filed or offered by the BSI/Hypertouch Parties to any discovery requests on the Mini-Trial.

### 3. Twelve Sanctions Orders Afford Connexus No Excuse To Impose An Undue Burden On The World Avenue Companies and GT.

Connexus claims that it has a well-founded fear that the BSI/Hypertouch Parties will not comply with their discovery obligations because they have been sanctioned eleven times in the World Avenue Litigation and one time in this case. *See* Memorandum, Ex. 2. To the contrary, this Court's history of vigorously enforcing its discovery Orders -- as evidenced by the twelve sanctions orders against the BSI/Hypertouch Parties -- guarantees that all relevant discovery pertaining to Mini-Trial issues will be produced by the BSI/Hypertouch Parties. This is particularly so where Connexus is seeking discovery that was already the result of multiple Court

---

[6] Connexus seems to have the current case and the World Avenue Litigation confused. Although it states that it made efforts "over the last three months to obtain relevant Mini-Trial discovery", the discovery in Connexus' case was closed and no Mini-Trial was ordered in Connexus' case until September 2011. The only Mini-Trial prior to the September 19th status conference in Connexus' case was scheduled in the World Avenue Litigation, to which Connexus was not a party.

rulings in the World Avenue Litigation.  This is even more the case now that the BSI/Hypertouch

Parties have agreed to produce the relevant materials sought.  Connexus' continued questioning

of the will of this Court in vigorously enforcing discovery obligations is irrational and an insult

to this tribunal.  But should Connexus continue to want to argue this inexplicable position, its

"concern" is better raised by motion before the Court than by foisting trial preparation activities

on disinterested non-parties that cost those non-parties thousands of dollars.

### 4. Connexus' Cited Cases Affirmatively Support Denial of Its Motion to Compel.

Connexus' reliance on *Software Rights Archive, LLC v. Google, Inc.*, 2009 WL 1438249,

at *1, *2 (D. Del. May 21, 2009), *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 73 (M.D.N.C. 1986),

and *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *1, *3 (N.D. Cal. Aug. 18, 2003),

for the proposition that there is no absolute rule that a party seek documents from an opposing

party before serving a non-party subpoena, is misplaced.  None of the cases overrule Federal

Rule 26(b)(2)(C)(i), which allows the court to limit discovery where it "can be obtained from

some other source that is more convenient, less burdensome, or less expensive."  Instead,

*Software Rights* deals with a case where the court compelled discovery because the third party

had an interest in the underlying litigation.  *Software Rights*, 2009 WL 1438249, at *2.

Likewise, *Byrnes* dealt with a subpoena to an interested manufacturer that was named shortly

after as a third party defendant.  *Byrnes*, 111 F.R.D. at 69 & 73.  Here, by contrast, GT and the

World Avenue Companies are disinterested.

Viacom addresses a situation where the non-party "is in possession of a non-well-defined

set of materials (i.e., a set whose completeness is not readily verifiable) that defendants no longer

possess or never possessed."  *Viacom*, 2008 WL 3876142, at *3.  Here, by contrast, the set is

well-defined, and consists of a defined universe of bates-labeled documents, deposition

11

transcripts and videotaped inspections taken by third party document custodians,[7] discovery requests and responses (many of which were filed in the World Avenue Litigation), court filings, an irrelevant Settlement Agreement, and irrelevant documents pertinent to the irrelevant Settlement Agreement.

*Viacom* also addressed the distinguishable situation where a party represented that it possessed and would produce the documents in question, *id.* at \*2.  Of note, the Court found that discovery from the non- party would *not* be appropriate because the documents were being produced by a party.  *Id.* That is exactly what the BSI/Hypertouch Parties agreed to yesterday. *See* Saunders Decl., attached as Ex. 1, ¶ 3.  Further, in a case cited in *Viacom*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993), the Federal Circuit affirmed that enforcement of a subpoena against a non-party was properly denied where the subpoena sought *a settlement agreement and files on a settlement agreement* that were equally in the hands of the party to the litigation.  Although the Settlement Agreement Connexus seeks in the Subpoenas is irrelevant to its own Mini-Trial against the BSI/Hypertouch Parties, *Haworth* alone nonetheless compels denial of Connexus' motion.

### B.   Connexus Has Failed To Meet The Heightened Standard of Relevancy For Discovery of a Confidential Settlement Agreement.

#### 1.   Connexus Bears The Burden To Establish The Relevance of The Settlement Agreement and Settlement Communications.

As a preliminary matter, the information requested in the Subpoena must fall within the permissible scope of discovery in general.  *See, e.g.* Fed. R. Civ. P. 45(d) Advisory Committee's Note 1970 Amendment (stating that "the scope of discovery through a subpoena is the same as that applicable to . . . the other discovery rules").  This means that the documents requested in the

---

[7] To the extent that Connexus has any remaining concerns, the depositions, transcripts, and videotapes at issue in Requests 1, 2, and 3 are readily available from Alderson Court Reporting, 1155 Connecticut Avenue, N.W., Suite 200, Washington, D.C., 20036.

Subpoena must be "relevant to the subject matter involved in the pending action."  Fed. R. Civ.

P. 26(b)(1).  Should a subpoena fail to meet this requirement, it must be quashed.  *See* 9A Miller

& Wright, FED. PRAC. & PROC., § 2459 (2005) (recognizing that "a subpoena may be quashed if

it calls for clearly irrelevant matter"); *see also Thompson v. Glenmede Trust Co.*, No. Civ. A. 92-

5233, 1995 WL 752422 (E.D. Pa. 1995) (quashing a subpoena served on a non-party because the

discovery sought was irrelevant to the underlying action).  Discovery simply may not be had

regarding a matter that is "not relevant to the subject matter in the pending action."  *Micro*

*Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990).  The burden of

demonstrating relevance rests with Connexus, as the party seeking discovery from the World

Avenue Companies and GT.  *Echostar Communications Corp. v. The New Corporation, Ltd.*,

180 F.R.D. 391, 394 (D. Colo. 1998); *Johns Hopkins University v. Datascope Corp.*, 2007 WL

1450367, at *1 (D. Md. 2007) (denying the plaintiff's motion to compel given its failure to

demonstrate that the requests fall within the scope of discovery under Rule 26) (emphasis

added); *see also Behler v. Hanlon,* 199 F.R.D. 553 (D. Md. 2001) (noting that "the revised scope

of discovery adopted on December 1, 2000, the scope of discovery *was narrowed* to cover facts

that are not privileged that are relevant to the claims and defenses raised in the pleadings"); *AG-*

*Innovations, Inc. v. U.*S., 82 Fed. Cl. 69 (Fed. Cl. 2008) (opining that "[u]nder the current

standard, courts are advised to focus upon *the specific claims or defenses* when determining the

scope of discovery") (emphasis added).

**2.     Connexus Has Failed To Meet The Heightened Standard For
Discovery of Confidential Settlement Agreements.**

In this Circuit, the "weight of authority and Rule 26(b) itself impose upon the requesting

party a greater burden to establish the relevancy, and to gain discovery, of otherwise

inadmissible non-privileged confidential settlement documents."  *Young v. State Farm Mut. Auto*

13

*Ins. Co.*, 169 F.R.D. 72, 76 (S.D.W.V. 1996) ("When the requested discovery concerns a confidential settlement agreement, the majority of courts considering the issue have required the requesting party to meet a heightened standard, in deference to Federal Rule of Evidence 408, and the public policy to encourage settlements and to uphold confidentiality provisions"). Furthermore, the communications leading up to a settlement and the process of the settlement are also irrelevant. *Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 4964034, at *1 (N.D. Okla. Oct. 19, 2011) (holding that process leading up to settlement agreement and communications in furtherance thereof are not relevant).

The terms of the Settlement Agreement between the World Avenue Companies and the BSI/Hypertouch Parties are not relevant to this action.  Even if Connexus argues that the litigation expenditures or proceeds, if any, made or received by the BSI/Hypertouch Parties as a consequence of the Settlement Agreement are relevant, the same evidence is directly obtainable through the BSI/Hypertouch Parties in this action through evidence of their litigation and non-litigation related costs, expenditures, and proceeds.  In fact, that is exactly what the BSI/Hypertouch Parties represented that they would produce. *See* Ex. 1, Saunders Decl., ¶ 3. Through this more direct route, Connexus can obtain the same evidence without intruding on the parties' expectations of confidentiality when they entered into the Settlement Agreement.

Connexus misreads the Court's October 21, 2009 Order in this case to mandate production of the Settlement Agreement.  See Ex. 8.  The Court required no such thing, but only required disclosure of the amount of litigation and non-litigation proceeds and costs in both this case and the World Avenue Litigation.  In the October 21, 2009 Order, the Court specifically stated it was not requiring disclosure of individual settlements:  "Defendants are correct to note that confidentiality is a non-issue, as Defendants only seek aggregate amounts, not amounts for

any particular settlement.  Defendants also are not seeking the disclosure of the identity of any participant to any settlement agreement."  *See* Ex. 8 to Memorandum.  Rather than supporting Connexus, the Order requires denial of its motion to produce the Settlement Agreement.  The same information can be produced from the BSI/Hypertouch Parties in the form of updated litigation and non-litigation proceeds.

It is considered oppressive and unreasonable to require a non-party to disclose private and confidential business information.  *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) (recognizing the right to privacy and the right to keep financial affairs as confidential and that it is oppressive or unreasonable to require a non-party to disclose such information).  The potential loss of the World Avenue Companies' legitimate expectation of confidentiality far outweighs any purported need for the information on Connexus' part.  *See also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (quashing a subpoena issued by the Government to a non-party hospital seeking information regarding some of the hospital's doctors on the grounds that the "balance of harms resulting from disclosure severely out-weighs the loss to the government through non-disclosure").

## C.      The WAUSA Companies And GT Did Not Waive Any Privileges.

Connexus next asserts that the WAUSA Companies and GT waived privilege by not serving a Privilege Log within fourteen (14) days of service of the subpoena.  Notably, Connexus cites to no authority for this novel proposition under Rule 45.[8]  Under applicable law, it is sufficient under Rule 45 to serve a Privilege Log "within a reasonable time."  As the D.C. Circuit has stated:

---

[8] Instead, Connexus cites to a decision of this Court in the World Avenue Litigation in which the Court found that BSI had waived privilege by failing to serve a Privilege Log.  However, Connexus fails to alert the Court that BSI failed to do so for many months after the request for said Privilege Log and after Motions to Compel had been filed and granted.

> Common sense and the purpose of the rule dictate that the "subject to" language of Rule 45(c)(2)(B) does not mandate that the full description required by Rule 45(d)(2) be provided at the time the initial objection is asserted. Although Rule 45(d)(2) does not contain a specific time limit within which objecting parties must supply the requisite privilege log, the Advisory Committee Notes indicate that the purpose of the Rule "is to provide a party whose discovery is constrained by a claim of privilege ... with information sufficient to evaluate such a claim and to resist if it seems unjustified." FED.R.CIV.P. 45(d)(2) advisory committee's note. Consistent with this purpose, the responsibility rests with the district court to ensure that the information required under the Rule is provided to the requesting party within a reasonable time, such that the claiming party has adequate opportunity to evaluate fully the subpoenaed documents and the requesting party has ample opportunity to contest that claim. District courts must then take account of the information provided under Rule 45(d)(2) in ruling on a motion to [compel]. In this case, we find that the District Court did not abuse its discretion in concluding that the Rule's purpose was served where the privilege log required by Rule 45(d)(2) was filed within a reasonable time in response to appellants' motion to [compel].

*See Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996); *accord, Educ. Fin. Council v. Oberg*, 2010 WL 3719921, at *1, *6 n. 11 (D.D.C. Mar. 8, 2010); *In re: Dept' of Justice Subpoenas to ABC*, 263 F.R.D. 66, 70 (D. Mass. 2009).  Here, as in *Tuite*, *Oberg*, and *Dep't of Justice*, the WAUSA Companies and GT are providing a privilege log within a reasonable time by serving an initial privilege log in connection with the motion to compel, and supplementing it when the process is complete.  *See* Exhibits 2 (Dotson Decl.) & 3 (*Interim* Privilege Log).  Putting aside the expense and burden Connexus has inflicted on non-parties and their counsel with its Subpoenas, Connexus has no legitimate basis to claim a waiver.

> **D.**     **The Subpoenas Improperly Seek Confidential Information Not In The Possession, Custody, Or Control of The World Avenue Companies or GT.**

The Subpoenas also seek Confidential Information of the BSI/Hypertouch Parties that is not in the possession, custody, or control of the World Avenue Companies or GT because documents, discovery responses, and depositions were designated as Confidential Information, or contained the Confidential Information of BSI, Hypertouch and Wagner.

16

Connexus incorrectly states that there is no order that requires the parties to return or discard Confidential Information of the producing party in the World Avenue Litigation. Connexus is wrong on two grounds.  First, the Parties stipulated to a Confidentiality Order that requires return or discarding of the opposing party's Confidential Information at the termination of the action.  The Confidentiality Order provides in relevant part:

> 7.     Return of Confidential Material at Conclusion of Litigation.   At the conclusion of the litigation, all material treated as confidential under this Order and not received in evidence shall be returned to the originating party, unless the Court grants an injunction, in which case the confidential material necessary to enforce the injunction may be retained and preserved by a party for the purpose of continuing to enforce the injunction.  If the parties so stipulate, the material may be destroyed instead of returned.  The Clerk may return to counsel for the parties, or destroy, any sealed material at the end of the litigation, including any appeals.

Thus, pursuant to this Court's Order, the World Avenue Companies and GT were not and are not permitted to retain the BSI/Hypertouch Parties' Confidential Information produced in the World Avenue Litigation.

Second, the parties in the World Avenue Litigation submitted at DE 768 on August 30, 2011 their Joint Stipulation and Order retaining jurisdiction to enforce the Settlement Agreement, and the same was approved by paperless order on the following day.  *See* DE 768 & DE 769.   Accordingly, because GT and the World Avenue Companies do not have the BSI/Hypertouch Parties' Confidential Information  -- which is much of what the Subpoenas entail -- the Subpoenas are more appropriately directed to the BSI/Hypertouch Parties.

### E.     Connexus Violated Its Duty To Protect The World Avenue Companies and GT From Significant Expense.

Under Rule 45(c)(2)(B), non-parties, such as the World Avenue Companies and GT, are entitled to be protected from "significant expense" resulting from compliance with a subpoena. The 1991 amendment to Rule 45(c)(2)(B) eliminated altogether the district court's discretion

with respect to protecting these non-parties. "The mandatory language of this Rule represents a clear change from old Rule 45(b), which gave district courts discretion to condition the enforcement of subpoenas on the petitioner's paying for the costs of production." *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992); *accord, Tutor-Saliba Corp. v. U.S.*, 32 Fed.Cl. 609, 611-12 (Fed. Cl.) ("the new rule expressly provides that, when a court orders a nonparty to comply with a subpoena, it must protect the nonparty from significant expense; previously, this action was merely discretionary"), *appeal dismissed,* 52 F.3d 343 (Fed. Cir. 1995).

The intended result of the revised rule is to make discovery more efficient by providing parties with a disincentive to abusive, nonparty discovery:

> Rule 45's mandatory cost-shifting provisions promote the most efficient use of resources in the discovery process. When nonparties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material. Requestors forced to internalize the costs of discovery will be more inclined to make narrowly tailored requests reflecting a reasonable balance between the likely relevance of the evidence that will be discovered and the costs of compliance.

*Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322-23 (D.D.C. 1998); *see also Guy Chemical Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 312 -313 (N.D. Ind. 2007) ("[n]ot only is it fundamentally unfair for non-parties to bear the significant litigation costs of others, but also if this Court were to allow litigating parties like Romaco to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy").

Here, Connexus has done nothing to protect the World Avenue Companies and GT from the significant expense that has already been incurred, is being incurred and would be incurred to comply with a set of Subpoenas that are an expensive effort to shift the burden to non-parties to perform Connexus' trial preparation for it. *See* Dotson Declaration, attached as Ex. 2. The Court should deny enforcement of the Subpoena for this reason alone.

### V.      Conclusion.

The caselaw is clear that a party may not foist the burden of trial preparation on a disinterested third party via subpoenas when the same documents are directly and readily available from multiple parties to the proceeding.   In such a case as this, the Subpoenas are facially overbroad and burdensome.   Furthermore, the terms of the Settlement Agreement are in no way relevant to the claims or defenses in this action, and, as such, the Court should respect the parties' expectation of confidentiality when they executed the Settlement Agreement. Finally, though Connexus strives mightily to ignore it, its party opponents in its case have committed in writing to produce the requested relevant material.   Connexus cannot legitimately ask for anything more.

**WHEREFORE**, Non-Parties World Avenue USA, LLC, TheUseful, LLC, and World Avenue Holdings, LLC, and Greenberg Traurig, LLP respectfully request entry of an Order denying the Motion to Compel and granting their Motion to Quash and for Protective Order.   In the alternative, in the event that the Court compels compliance with *any* category of the Subpoenas, the Non-Parties request that Connexus Corp. be compelled to protect Non-Parties from significant expense under the mandatory cost-shifting provisions of Rule 45 by payment in advance of 100% of all attorneys' fees and costs incurred and that will be incurred in compliance with any portion of any of the Subpoenas.

Dated: November 11, 2011

                                 Respectfully submitted,

                                   GREENBERG TRAURIG, LLP

                                   ___/s/_____
                                   Sanford M. Saunders, Jr., Esq.
                                   USDC, MD #4734
                                   GREENBERG TRAURIG, LLP
                                   2101 L Street, NW, Suite 1000
                                   Washington, DC 20037
                                   Telephone:  202-331-3100
                                   Facsimile:  202-331-3101

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of November 2011, a copy of the foregoing was served on the below counsel via e-mail and first class mail, post prepaid:

Thomas M. Barba
John J. Duffy
Jeffrey Edward McFadden
Scott T. Bielicki
Roger William Oeges
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, DC 20036

Anthony A. Onorato
Steptoe & Johnson LLP
750 Seventh Ave., Ste 1800
New York, NY 10019

Stephen H. Ring
Law Offices of Stephen H. Ring, PC
506 Main St., Suite 215
Gaithersburg, MD 20878

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson St., Suite 201
Rockville, MD 20850

*Counsel for Plaintiff, BSI, Inc.,*
*Joe Wagner/Hypertouch*

Ari N. Rothman
J. Douglas Baldridge
Lisa Jose Fales
Venable LLP
575 7th St. NW
Washington, DC 20004

*Counsel for Defendant Connexus Corp.*

_/s_____
Sanford M. Saunders, Jr.