**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | ) | |
| BEYOND SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM) (CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| CONNEXUS CORP., *et al.*, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES JOSEPH WAGNER, *et al.*, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

**PLAINTIFF'S AND THIRD-PARTY DEFENDANTS'
OPPOSITION TO CONNEXUS CORPORATION'S MOTION TO COMPEL
WORLD AVENUE HOLDINGS, LLC AND GREENBERG TRAURIG, LLP**

Plaintiff Beyond Systems, Inc. (" BSI") and Third-Party Defendants Dr. James Joseph

Wagner and Hypertouch, Inc, (collectively, "Hypertouch") oppose the Motion to Compel World

Avenue Holdings, LLC and Greenberg Traurig, LLP to Produce Documents ("Motion"), filed by

Defendant Connexus Corporation ("Connexus").  In its Motion, Connexus asks this Court to

compel World Avenue Holdings, LLC ("World Avenue') and its attorneys, Greenberg Traurig,

LLP ("Greenberg"), to provide the documents demanded by Connexus' overbroad subpoenas.[1]

World Avenue, which is not a party to this litigation, and it attorneys, properly objected to these

---

[1] *See*, *e.g.*, Exhibit 1, Connexus' Subpoena *Duces Tecum* served on World Avenue USA, LLC.

subpoenas[2], which seek without justification: (1) documents from World Avenue, a stranger to

this litigation, that can be obtained, if appropriate, from the parties in this case; (2) documents

covered by a protective order entered by this Court in *Beyond Systems, Inc. v. World Avenue*

*USA, LLC, et al.*, Case No. 8:08-cv-00921-PJM (the "World Avenue Litigation"); (3) the

confidential Settlement Agreement entered into between BSI, Hypertouch, and World Avenue[3]

and documents relating to that agreement[4], which have no bearing on the mini-trial issues which

this Court has ordered to be tried; and (4) documents and communications pertaining to the

disposition, return, retention and/or destruction of any documents produced in the World Avenue

Litigation, which is a false issue manufactured by Connexus to again seek documents not

relevant to the mini-trial issues or otherwise.[5]  Finally, Connexus also demands all discovery that

took place and all documents "referenced" on the docket in the World Avenue Litigation,

documents that it can either obtain itself or are covered by the Work Product privilege.

These tactics by Connexus should not be condoned.  Connexus has already had the

opportunity to take 13 months' of discovery and either chose as a strategic matter not to take, or

simply did not recognize it might take, much of the discovery it now seeks.  Now, Connexus

continues its insatiable quest for more discovery, but discovery is supposed to be limited to the

mini-trial issues ordered by this Court.  However, no constraints on that discovery have been

imposed by this Court and Connexus views the mini-trial issues as all-encompassing of every

issue related to BSI – *i.e*., in Connexus' eyes, all issues, one way or another, relate to "BSI's

---

[2] *See* Exhibit 2, Oct. 19, 2011 Non-Parties World Avenue, USA, LLC, The Useful, LLC, and World Avenue
Holdings, LLC, and Greenberg Traurig, LLP's Objections to Subpoenas for Documents.

[3] *See* Exhibit 1 at 4, ¶ 8.

[4] *Id.* at ¶¶ 8, 9, and 11.

[5] *Id.* at  ¶ 10.

legitimacy." It is incumbent on this Court to put delimiters on this overreaching. To wit, Connexus has now served since the Sept. 19 conference with the court:

- 16 additional document requests to BSI, bringing the <u>total to date to 106</u>;

- 5 additional interrogatories to BSI, each asking for multiple pieces of information, including information dating back to 1997, bringing the <u>total to date to 20 interrogatories</u>, with <u>at least 21 additional subparts</u>;

- 18 additional RFAs, bringing the <u>total to date to 134</u>;

In addition, it has served:

- 9 additional document requests to Hypertouch;

- 2 additional document requests to Joe Wagner;

- 3 additional interrogatories to Hypertouch;

- It has subpoenaed documents and the deposition of Steve Wagner, counsel to BSI;

- And this is on top of the <u>19 days of deposition</u> of fact and expert witnesses, including 6 days with Paul Wagner and more than 2 days with Joe Wagner, it has already taken.

The critical fact is Connexus, from Day 1, has vigorously contested BSI's ISP status in support of its affirmative defense on this point, and thoroughly investigated BSI's relationship with Hypertouch, including previously attempting to take discovery in the World Avenue case, which this Court denied. Yet, Connexus now wants to take discovery from World Avenue, but they had every opportunity to take – and did take – discovery on the defenses they have raised.

Moreover, it seeks documents which have no bearing on the mini-trial issues, such as the parties' confidential settlement agreement. Ordering the production of this document and the related documents only serves to hurt the parties who worked tirelessly for weeks to resolve that

action, undercuts one of the bases for their settling (confidentiality), and only serves to hurt any

future efforts there might be between the parties to settle this matter.

## **ARGUMENT**

A.      Courts Have Repeatedly Held That Litigants Cannot Seek Documents From Strangers To
        The Litigation If The Documents Could Be Obtained From Parties To The Case.

It stands to reason that a party should not be permitted to seek documents from strangers

to litigation until it is clear that those documents cannot be obtained from other parties to the

case if there is an obligation to provide them.  The rules of civil procedure themselves say that

discovery can be limited if it "can be obtained from some other source that is more convenient,

less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).  Moreover, Fed. R. Civ. P.

45(c)(1) provides:

> A party or attorney responsible for issuing and serving a subpoena
> must take reasonable steps to avoid imposing *undue burden or*
> *expense* on a person subject to the subpoena. The issuing court
> must enforce this duty and impose an appropriate sanction —
> which may include lost earnings and reasonable attorney's fees —
> on a party or attorney who fails to comply.

(Emphasis added.)

Courts in the Fourth Circuit have repeatedly confirmed this point.  *See e.g. Med.*

*Components, Inc. v. Classic Med., Inc.*, 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("[T]he

current generally prevailing view is that the Court may first consider whether information should

be obtained by direct discovery from a party, as opposed to from a non-party, and that the court

should give special weight to the unwanted burden thrust upon non-parties when evaluating the

balance of competing needs.")*; Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453

(E.D.N.C. 2005) ("In the context of evaluating subpoenas issued to third parties, a court will give

extra consideration to the objections of a non-party, non-fact witness in weighing

burdensomeness versus relevance"); *Ambu, Inc. v. Kohlbrat & Bunz Corp.*, No. 5:99CV20 MCK,

2000 WL 17181, at *7 (W.D.N.C. Jan.6, 2000) ("It is correct that discovery must be sought first

from parties before burdening third parties.").[6]  Connexus has, in the words of Mark Twain,

flung down this rule and danced upon it.  The subpoenas issued to World Avenue and its

attorneys seek, with one exception – Request No. 7 – the same documents as the document

requests served on Plaintiff BSI and Third-Party Defendants Hypertouch and James Joseph

Wagner, and with the exception of the settlement agreement and related documents, and the

documents relating to alleged transfer and destruction of documents, BSI and

Hypertouch/Wagner have committed to produce those documents.  In a recent email to counsel

for Connexus and Kraft, BSI agreed:

> [to]produce to Connexus 1) all documents produced by BSI or any non-party after the Court ordered the mini-trial in the WA litigation, 2) all documents produced by BSI or any non-party before the Court ordered that mini-trial that relate to the mini-trial issues, and 3) all documents that the Court ordered BSI, Joe Wagner, or Hypertouch to produce in that litigation concerning the mini-trial issues, it should now be clear that such production will include the documents you seek in your motion to compel related to 1) BSI revenue back-up information and 2) ISP communications. Specifically, BSI has agreed to produce to Connexus those revenue backup documents it was ordered to produce, and did produce, in the WA litigation, including BSI's ledger and unredacted tax returns for tax years up to 2009. In addition, subject to our on-going review as we roll out the production to you, we are also reviewing bank statements, checks sent to BSI during the relevant period, and checks sent out by BSI during the relevant period. We also have the documents produced by the third parties in the WA litigation, and will promptly produce those as well.

---

[6] Connexus cites cases that state there is no *absolute* rule that a party must seek discovery first from a party before it seeks discovery from a non- party, but FRCP45(c)(1), the overwhelming weight of precedent, and common sense dictate the governing rule that discovery from a non-party is to be avoided if the documents can be obtained from a party.  It is worth noting that, unlike cases in which the non-party had a role in the subject matter of the litigation, World Avenue's only involvement is as a prior defendant in similar litigation brought by BSI. *See also Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142, at *2-3 (N.D. Cal. Aug.18, 2008) (where there is a well-defined set of documents that can be requested from a party instead of a non-party, they should be requested from a party).

*See* Exhibit 3 (Nov. 10, 2011 email from J. McFadden to Connexus counsel).  There is, therefore,

no reason for World Avenue to be required to produce these same documents.

Connexus suggests that it still needs copies of the documents in World Avenue's

possession *even if it has received the same documents from BSI and Hypertouch* because BSI

and Hypertouch "can't be trusted" to produce all of the documents.  The argument is illogical,

because BSI produced almost all of the documents to World Avenue in the first place.  To

support its contention that BSI is "untrustworthy," Connexus references a series of sanctions

imposed on BSI for various reasons, none of which involves a situation where BSI failed to

produce documents that it had agreed to produce.  Connexus points in particular to a sanction

imposed on Dr. William Wagner, the father of Paul Wagner, for Dr. William Wagner's alleged

failure to identify and produce documents sought by World Avenue.  *See* Motion at 11.

Assuming that the founding fathers' repugnance to attainder continues to survive in the

American judicial system, the relevance of Dr. William Wagner, a third-party witness in the

World Avenue litigation, and who is not a party in this litigation, to the future actions of BSI is

zero.  Dr. Wagner testified that he wrote checks to BSI.  Judge Key presumed, therefore, that BSI

deposited the checks and that Dr. Wagner then reacquired and retained those checks, or that Dr.

Wagner's bank possessed them.  However, the whereabouts and existence of the checks after

BSI received them was, in fact, never established, and the sanctions were under appeal when the

case settled.  Nothing was false about Dr. Wagner's representations about the existence of the

documents, and, in any event, nothing about this irrelevant line of attacks supports Connexus'

entitlement to documents from World Avenue.

Sensing the problem of connecting the sins of the father to a corporation owned by his

son, Connexus grasps the straw that both Dr. William Wagner and BSI were represented by the

same counsel.  BSI's counsel in the World Avenue case is, however, not the lead counsel for BSI

in this case, and thus even this extended stretch of an argument fails in the present case.

B.        BSI Documents Subject To A Protective Order And Filed Under Seal Cannot Be
          Produced By World Avenue Without The Consent of BSI Or A Court Order.

        Parties exchange documents under seal for a reason: to protect documents exchanged

with opponents in the litigation from the eyes of third parties.  World Avenue documents that

BSI filed under seal have no obvious evidentiary relevance to *BSI v. Kraft/Connexus* nor are they

likely to lead to relevant evidence.  Their apparent inclusion among the documents requested by

the subpoena is an example of the chronic overbreadth of these subpoenas.  BSI documents that

World Avenue filed under seal must remain protected by World Avenue – and not produced to

Connexus – until either BSI agrees to their production or the Court orders their production, as

required by the Protective Order in the *World Avenue* case.  Again, the proper party to ask for

these documents is BSI, who may then agree to their production under the protective order in *BSI

v. Kraft/Connexus.*

        Connexus' argument that its subpoena is a "court order" is mere sophistry to which no

response is required.  Where there is a protective order in place (as in the *World Avenue* case), a

court order must first be issued for the parties to be able to comply with the subpoena.  *See

Martin v. Neil*, 2009 WL 1161009, at *1 (E.D.N.Y. Apr. 28, 2009) (only issuing an order to

show cause after attorney did not comply either with subpoena or seek to quash).  The syllogism

that issuance of a subpoena equals a court order which equals automatic compliance is not

accurate.  The requirement of a court order refers, of course, to a decision by a judge balancing

the litigation need for the document against the possible harm to the interest of the protected

party by the disclosure of the document.

C.      The Policy Of Encouraging Settlements Supports Maintaining The Confidentiality Of Settlement Agreements.

BSI and Hypertouch ended their litigation with World Avenue by way of a settlement agreement that the parties agreed would be kept confidential.  The parties to the *World Avenue* settlement agreement were motivated to settle by virtue of their stipulation to keep in confidence the settlement terms and the negotiations and communications leading up to it.  Courts have repeatedly recognized that the public has an interest in protecting the confidentiality of settlement agreements, and that maintaining the confidentiality of settlement agreements in litigation is essential to the goals of increasing judicial economy by having parties settle their disputes without taking up valuable court time.  *See Stephens v. County of Albermarle*, 422 F. Supp. 2d 640, 644 (W.D. Va. 2006) ("[C]onfidentiality may be of paramount concern to the parties, especially where one side fears that publicity of a settlement might encourage further litigation.  Subjecting a settlement to terms of confidentiality can play an important role in allaying those concerns, thereby facilitating settlement and avoiding protracted litigation.").  Courts have repeatedly issued orders to maintain the confidentiality of a settlement agreement. *See Minogue v. Modell*, No. 03-CV-3391, 2011 WL 1308553, at *4 (D. Md. March 30, 2011) (recognizing courts have granted protective orders to protect confidential settlement agreements); *Prosurance Group, Inc. v. Liberty Mut. Group, Inc.*, No. 10-CV-02600, 2011 WL 704456, at *1 (N.D. Cal. Feb. 18, 2011) (same); *E.E.O.C. v. ABM Indus., Inc.*, No. 1:07-CV-01428, 2010 WL 582049, at *1 (E.D. Cal. Feb. 12, 2010) (same as above).  Courts have also denied motions to compel the production of settlement agreements in discovery for precisely the same reason. *See Cason v. Builders Firstsource-Se. Grp., Inc.,* 159 F. Supp. 2d 242, 249 (W.D.N.C. 2001) (holding that "there are significant policy reasons for promoting fair, speedy, and confidential settlements . . . Such results will be more difficult to attain if [the parties] believe that such

settlement agreements might be subject to disclosure to third parties . . . These concerns outweigh Plaintiff's need for any information which might be contained in the settlement documents alone."); *see also Wolfe v. Nat. Med. Care, Inc.,* No. 2:07-0115, 2009 WL 1755127, at *4 (S.D. W. Va. June 17, 2009) (reversing the finding of a magistrate judge requiring production of a settlement agreement and finding that the agreement was neither admissible nor likely to lead to the discovery of admissible evidence).

Although the court in *Carson* concluded that a settlement agreement might be kept confidential even if the agreement had "information which might be contained in the settlement documents alone," 159 F. Supp. 2d at 249, this is not the situation in this case.  Connexus has not shown that the settlement agreement contains any information that would constitute evidence in this case or anything that would likely lead to evidence relevant to the mini-trial – the only permissible discovery – and certainly nothing that could not be obtained elsewhere.  In its subpoenas *duces tecum*, Connexus seeks, *inter alia*, the following:

> 8.    The settlement agreement, and all related agreements, schedules, and exhibits, pertaining to the resolution of the World Avenue Litigation.
>
> 9.   All documents reflecting consideration exchanged or to be exchanged under the settlement pertaining to the resolution of the World Avenue Litigation.
>
> 10.   All documents and communications pertaining to the disposition, return, retention and/or destruction of any documents produced in the World Avenue Litigation.
>
> 11.   All documents and communications relating to any restrictions, prohibitions, and/or conditions imposed on World Avenue (including its counsel) resulting from and/or attendant to the settlement of the World Avenue Litigation.

Connexus contends (Motion at 5) that the settlement agreement – the entire document, all schedules, all related documents, etc., -- all need to be produced so that Connexus can discover

one piece of information -- the consideration received by BSI.  Further, Connexus states that the

Court has previously granted motions to compel the amount of consideration received by BSI in

settlements, but that is incorrect.  This Court has not required BSI to provide copies of

confidential settlement agreements themselves in order to allow Connexus to determine the

amount of compensation that BSI has received, and it has not required BSI to provide any

information relating to or documents reflecting the consideration that has been exchanged with

respect to any particular settlement agreement.  It has only required BSI to produce information

reflecting revenues that BSI has generate from litigation in the aggregate, but this is very

different.  DE# 233 at 2.

Connexus also contends (Motion at 6) that it needs the settlement agreement – as well as

the documents sought in requests 10 and 11 – to discover the disposition of responsive

documents.  To justify this claim, it conflates and takes out of context a number of unrelated

statements made by various attorneys at various times.  World Avenue has stated that it has taken

steps to fulfill its obligations under the Protective Order, which is a public document, and which

requires that, at the conclusion of the case, World Avenue return to BSI confidential documents

produced by BSI and covered by the Protective Order, or destroy them.[7]  BSI has stated that it

has retained copies of all of the documents it produced to World Avenue (including the

documents covered by the Protective Order), and World Avenue has affirmed that it has retained

copies of all of the documents involved in the World Avenue Litigation, except those

confidential documents produced by BSI covered by the Protective Order.  As such, no

documents have been lost, as copies of all documents have been retained by BSI and/or World

Avenue, and to the extent that Connexus seeks documents designated as confidential by BSI

---

[7] The Protective Order also requires BSI to return to World Avenue documents produced by World Avenue and
covered by the Protective Order, but these documents are not relevant to Connexus' defense in the present case.

under the terms of the Protective Order, BSI is the proper, and only, party from whom to seek

said documents.

In this vein, Connexus has previously asserted, as a means of trying to get discovery of

the same documents, that Mr. Ring, counsel to BSI in the World Avenue case, stated that he

"knew whether World Avenue and its counsel destroyed the materials Connexus seeks, but

refused to divulge that knowledge."  (Motion to Lift Stay To Take Discovery And For Other

Relief (DE 424) at 5).  Mr. Ring said no such thing and the transcript proves the

misrepresentation.  Mr. Ring stated in response to Mr. Rothman's interrogation that he was

*aware of a provision concerning World Avenue's obligation* with regard to documents, *not that*

*he was aware World Avenue "destroyed" documents.*  As the transcript makes absolutely clear,

Mr. Ring was asked whether he knew if there was a *provision relating to the maintenance of*

documents, and never "admitted" that he knew World Avenue was "destroying documents."  See

Exhibit 4, Sept. 6, 2011 call trans. at 9.  Mr. Rothman's co-counsel, Mr. Graham, recognized that

the parties were discussing document obligations, not the fact of destruction, which Connexus

counsel then recognizes as well, contrary to its assertions:

> Mr. GRAHAM: . . .
> 8 . . . That, I think, is
> 9 the central question, and it seems to me that it would
> 10 sure help us out. **No one is asking what World Avenue**
> **11 has actually done with documents. We've asked World**
> **12 Avenue that, but what we are asking is whether there's a**
> **13 provision in the settlement agreement that requires**
> **14 that.**
>
> **15 MR. ROTHMAN: Right.**

Exhibit 4, Sept. 6, 2011 call trans. at 13.  In other words, Mr. Ring said that he knows what the

settlement agreement requires, and NOT that he knows World Avenue "destroyed documents."

The fact remains that all relevant documents still exist and should be sought from BSI, which is in the process of document production.

Further, the documents Connexus seeks from World Avenue here, and from BSI in identical document requests, necessarily seek privileged documents.  This overreaching again demonstrates why this Court should step in to erect meaningful boundaries on discovery in advance of what is supposed to be a limited issue mini-trial.

Finally, again, Connexus has sought these same documents from BSI.  BSI has agreed to produce to Connexus the documents it produced to World Avenue that relate to the mini-trial – all documents post mini-trial order, and all documents pre-mini-trial order which relate to the three mini trial issues, as well as the third-party documents received as a result of World Avenue's subpoenas.  Therefore, Connexus' motion is misplaced, as well as another inappropriate exercise in wasting everyone's time in order to seek even more discovery it didn't think to take in the first 13 months of discovery in this case.

## **CONCLUSION**

For the foregoing reasons, Connexus' motion to compel World Avenue and Greenberg

Traurig should be denied.


Date:  November 11, 2011                          Respectfully submitted,


_____/s/_____                          *Of Counsel:*
Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)          Stephen H. Ring (USDC-MD Bar No. 00405)
Jeffrey McFadden (D. Md. Bar No. 8738)           Law Offices of Stephen H. Ring, P.C.
John J. Duffy (D. Md. Bar No. 28613)             506 Main Street, Suite 215
STEPTOE & JOHNSON LLP                            Gaithersburg, Maryland  20878
1330 Connecticut Ave., NW                        T: 301-563-9249
Washington, D.C.  20036                          F: 301-563-9639
T: 202-429-3000                                  shr@ringlaw.us
F: 202-429-3902
tbarba@steptoe.com                               Mike Rothman (USDC-MD Bar No. 14568)
ryoerges@steptoe.com                             Law Office of Michael S. Rothman
jmcfadden@steptoe.com                            401 E. Jefferson Street, Suite 201
jduffy@steptoe.com                               Rockville, MD  20850
                                                 T: 301-251-9660
Anthony A. Onorato (D. Md. Bar No. 28622)        F: 301-251-9610
STEPTOE & JOHNSON LLP                            mike@mikerothman.com
750 Seventh Avenue
New York, NY  10019                              *Counsel for Plaintiff Beyond Systems, Inc.*
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

*Counsel for Plaintiff Beyond Systems, Inc. and*
*Third-Party Defendants James Joseph Wagner*
*and Hypertouch, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November, 2011, the foregoing PLAINTIFF AND THIRD-PARTY DEFENDANTS' OPPOSITION TO CONNEXUS CORPORATION'S MOTION TO COMPEL WORLD AVENUE HOLDINGS, LLC AND GREENBERG TRAURIG, LLP was served via ECF on the below-named parties:


Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington, D.C.  20005-2003
(202) 434-1613 (Telephone)
(202) 434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

Darrell J. Graham
ROESER, BUCHEIT & GRAHAM LLC
20 N. Wacker Dr.
Chicago, IL 60606
(312) 922-1200
dgraham@rbglegal.com

*Counsel for Defendant Connexus Corp.*

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

Sanford M. Saunders, Jr., Esq.
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: 202-331-3100
Fax: 202-331-3101
saunderss@gtlaw.com

*Counsel for WAUSA Companies
and Greenberg Traurig LLP*

                                        /s/
                             Jennifer M. Newton