## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ ) | |
| BEYOND SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:08-cv-00409 (PJM)(CBD) |
| ) | |
| KRAFT FOODS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| CONNEXUS CORP., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES JOSEPH WAGNER, *et al.*, ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____) | |

### MEMORANDUM OF LAW IN SUPPORT OF BEYOND SYSTEMS, INC.'S
### MOTION TO STRIKE AFFIRMATIVE DEFENSES
### <u>RELATED TO "ISP" STANDING AND FOR ALTERNATIVE RELIEF</u>

Plaintiff Beyond Systems, Inc. ("BSI"), by and through its undersigned counsel, hereby

moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike the affirmative

defense, raised by both Kraft and Connexus, that BSI lacks standing to bring its claims under

Maryland Commercial Law §§ 14-3001 *et seq.*, and California Business & Professions Code

§§ 17529, *et seq.*, on the ground that BSI is not a "*bona fide*" Internet Service Provider ("ISP")

and was not "adversely affected" by the unsolicited commercial email ("spam") that Defendants

sent or caused to be sent.[1]  This affirmative defense must be struck because the grounds upon

which it is premised are not found anywhere in the Maryland and California statutes nor in any

case construing those statutes.

In the alternative, should the Court continue to hold that such standing requirements are

essential elements of BSI's claims under the Maryland and California statutes, BSI respectfully

moves for an order (1) articulating the precise standards against which BSI's status as a "*bona*

*fide* ISP" would be measured so that discovery and the development of expert opinions going

forward can be so constrained; (2) holding that the burden of proving such an affirmative defense

lies with the parties raising it; and (3) holding that a jury, and not the Court, must ultimately

decide the issue.

## INTRODUCTION

This case is moving through substantial additional discovery and forward to trial on an

affirmative defense that lies at the core of the first (and probably)[2] third issue the Court

designated for trial in June 2012.  But the terms "*bona fide* ISP" and "adversely affected," which

have pervaded the instant action, are fictions created by Defendants, borrowed from the Ninth

Circuit's decision in *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1052-57 (9th Cir. 2009), a

decision construing the standing requirements under the Federal CAN-SPAM Act of 2003.[3]  This

is a diversity case, and the law that controls BSI's standing lies solely within the Maryland and

California statutes under which BSI's causes of action were brought.[4]  Nothing in either the text

---

[1] DE# 61, Connexus Def.'s Answer to Second Am. Compl. 19, nos. 10, 13-14; DE# 55, Kraft Def.'s Answer to Second Am. Compl. 36, no. 2.

[2] We say "probably" because no party yet has a clear idea of what the third mini-trial issue means, let alone how it is to be established or defended at trial.

[3] Codified at 15 U.S.C. §§ 7701, *et seq*. ("CAN-SPAM").

[4] Md. Code Ann., Com. Law § 14-3002 (West 2011); Cal. Bus. & Prof. Code § 17529.5 (West 2011).

or legislative histories of those two statutes contains any reference to a "*bona fide* ISP" or

"adverse effect" as standing requirements or elements of any claim brought under them.

Moreover, the concerns about Congress's conferral of a limited private right of action under

CAN-SPAM that underpinned *Gordon's* circumscription of standing requirements under that

statute have no bearing on statutory enforcement schemes put into place by the Maryland and

California legislatures, frameworks that permit *anyone* to bring a claim under those states' anti-

spam statutes and that require no showing of actual harm.  Courts must defer to the plain

meaning—and thus the standing requirements—of the terms "Electronic mail service provider"

in the California statute[5] and "Interactive computer service provider"[6] in the Maryland statute,

standards BSI easily meets and which do not require any further discovery or a mini-trial.  Nor

may courts disrupt the enforcement frameworks that state legislatures have chosen to enforce

their anti-spam statutes, regardless of the extent to which those frameworks may differ from the

federal scheme under CAN-SPAM.  And irrespective of BSI's real or imagined status as a

"professional plaintiff," such status erects no legal barrier to a plaintiff's right to bring suit under

consumer protection statutes and the state anti-spam legislation modeled after them.

Even if this Court should decide to the contrary, and given the absolute dearth of

Maryland or California authority providing any guidance as to the meaning of "*bona fide* ISP"

under the Maryland and California statutes, the Court should set down clear, defined standards as

to the meaning of the term so that the parties can proceed through discovery and prepare for trial

in a streamlined, orderly way.  And as we further show below, Defendants, not BSI, should have

the burden of proof at trial, and a jury, not the Court, should decide the issue.

---

[5] Cal. Bus. & Prof. Code § 17529.1(h) (West 2011).

[6] Md. Code Ann., Com. Law § 14-3001(c) (West 2011).

# ARGUMENT

## I.     RULE 12(f) STANDARD

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

insufficient defense," including an affirmative defense.[7]  Although courts will sometimes not

grant a motion to strike when there are "disputed and substantial questions of law," *United States*

*v. Fairchild Indus., Inc.*, 766 F. Supp. 405, 408 (D. Md. 1991), "it is equally important to

recognize that a motion to strike 'does serve a useful purpose by eliminating insufficient

defenses and saving the time and expense which would otherwise be spent in litigating issues

which would not affect the outcome of the case.'" *Id.* (quoting *United States v. Marisol, Inc.*,

725 F. Supp. 833, 836 (M.D. Pa. 1989)).  A motion to strike should be granted where the legal

insufficiency of a defense is "clearly apparent." *Nat'l Credit Union Admin. v. First Union*

*Capital Mkts. Corp.*, 189 F.R.D. 158, 163 (D. Md. 1999).  And where the legal issue involved

can be answered, as it can in this case, by a straightforward statutory construction, courts have

held that an affirmative defense raises no substantial question of law and should be struck under

Rule 12(f).  *See, e.g.*, *Owens v. UNUM Life Ins. Co.*, 285 F. Supp. 2d 778, 780-82 (E.D. Tex.

2003) (granting motion to strike and finding no substantial question of law regarding affirmative

defense of preemption under ERISA, because contract at issue clearly did not meet statutory

definition of a "plan" subject to preemption); *Mohegan Tribe v. Conn.*, 528 F. Supp. 1359, 1365-

66 (D. Conn. 1982) (granting motion and finding no substantial question of law because it was

---

[7] Although Rule 12(f) requires a party's motion to be filed either before responding to the pleading or within 21 days after being served with a pleading for which no response is allowed, the Rule also permits the court to strike an insufficient defense of its own accord. Fed. R. Civ. P. 12(f)(1)-(2).  For this reason, courts have been willing to grant a motion to strike insufficient defenses under Rule 12(f) even when the time provided by the rule "has long since passed." *Nat'l Credit Union Admin. v. First Union Capital Mkts. Corp.*, 189 F.R.D. 158, 162 (D. Md. 1999); *see Ciminelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984) ("In effect, the power of the court renders the twenty (20) [now 21] day rule 'essentially unimportant.'").  Should this Court, nonetheless, find the instant motion untimely, BSI would move in the alternative for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

clear that "defendant's proposed construction of the 1793 amendment to the Nonintercourse Act [wa]s not supported by either a fair reading of the statute or the case law"). Finally, a motion to strike an affirmative defense should be granted when the assertion of the defense has resulted, or will continue to result, in substantial prejudice to the party against which the defense is asserted. *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 909 (D. Md. 1971).

Neither Maryland nor California law requires that BSI be a "*bona fide* ISP" as a condition to obtaining relief, and any trial on that issue is thus unnecessary as a matter of law.[8] Given that the Court has scheduled a trial for June 2012 that will focus principally on whether BSI is a *bona fide* ISP, the Court should address the validity of this defense now, once and for all. If BSI is correct that the "*bona fide* ISP" issue is not actually an issue as a matter of law, then a trial would clearly be improper and a waste of judicial resources, and the substantial prejudice to BSI by continuing to give this defense vitality is apparent.

## II. THE STANDING REQUIREMENTS UNDER THE FEDERAL CAN-SPAM ACT ARE NOT THE SAME AS THE REQUIREMENTS UNDER MARYLAND AND CALIFORNIA LAW, AND THERE IS NO BASIS FOR INCORPORATING THE FEDERAL STANDARDS INTO THIS CASE.

Defendants seek to impose on BSI the standing requirements articulated by a Ninth Circuit case, *Gordon v. Virtumundo, Inc.*, which held that standing under the Federal CAN-SPAM Act is limited to "*bona fide* ISPs" that have been "adversely affected" in that they suffered "real ISP-type harms" causally linked to spam. 575 F.3d 1040, 1052-57 (9th Cir. 2009).[9] But this is not a CAN-SPAM case. It is an action brought by BSI under two state anti-spam statutes that are different from the CAN-SPAM Act. And in a diversity case, the Court

---

[8] *Cf. Nat'l Credit Union Admin. v. First Union Capital Mkts. Corp.*, 189 F.R.D. 158, 167-69 (D. Md. 1999) (finding substantial question of law where there was split among district courts regarding legal issue involved and no controlling decision from an appellate court).

[9] *See* Kraft Defs.' Reply in Support of Mot. Sum. J. at 1, 3; Connexus Def.'s Mot. Summ. J. at 15.

must look to state law, not federal law, to "determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004).

The CAN-SPAM Act limits private enforcement to ISPs that have been "adversely affected" (harmed) by the transmission of spam. 15 U.S.C. § 7706(g)(1) (2006). And although the phrase "*bona fide* ISP" does not appear in CAN-SPAM's text, it does appear in the statute's legislative history. *Gordon*, 575 F.3d 1040, 1050 (citing 150 Cong. Rec. E72-73 (daily ed. Jan. 28, 2004) (statement of John D. Dingell); *id.* at E73 (statement of Rep. W.J. "Billy" Tauzin)).

The Maryland and California statutes, in contrast to the CAN-SPAM Act, do not contain, incorporate, or rely on CAN-SPAM's standing requirements and, most importantly, do not even refer to ISPs, much less "*bona fide* ISPs." The state anti-spam statutes use the broader terms "electronic mail service provider" (California) and "interactive computer service provider" (Maryland) and confer standing on these entities, regardless of whether they have been "adversely affected." Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(i)-(ii) (West 2011) (permitting recovery of "either or both of" actual damages, or liquidated damages of $1,000 per violation); Md. Code Ann., Com. Law § 14-3003(3) (West 2011) (allowing recovery of either $1,000 or actual damages for a violation). Moreover, nothing in the language of the statutes themselves or their legislative history requires or even suggests that the *bona fides* of a claimant must be examined before standing can be conferred. Accordingly, the essential underpinning of the decision in *Gordon*, which dealt with a federal statute that has different terms and its own legislative history, are absent here. The issue in this case is thus not whether BSI is a "litigation mill" or an "opportunistic plaintiff," as Defendants so often say. The issue is whether BSI is an electronic mail service provider or an interactive computer service provider, which it

indisputably is, that has received spam, which it indisputably did.  Its *bona fides* are—and there

is no other word for it—irrelevant.

> **A.      Contrary To What Was Held In *Gordon*, The Maryland And California Statutes Do Not Require BSI To Be A *"Bona Fide"* ISP Or To Prove That It Has Suffered "Real ISP-Type Harms."**

Whether a plaintiff has standing to seek relief under a statute must turn on the text of the

relevant statute.  *See Gollust v. Mendell*, 501 U.S. 115, 127 (1991) (stating that "we will not read

any further condition into the statute" where the plaintiffs satisfied the statute's standing

requirements as defined by the "text of the statute").  The Maryland statute provides that any

person who violates the Act by transmitting or conspiring to transmit commercial email that

contains false or misleading information is liable "to an interactive computer service provider, in

an amount equal to the greater of $1,000 or the interactive computer service provider's actual

damages."  Md. Code Ann., Com. Law §§ 14-3002(b); 14-3003(3) (West 2011).  And the law

defines an "interactive computer service provider" as "an information service, system, or access

software provider that provides or enables computer access by multiple users to a computer

service."  Md. Code Ann., Com. Law § 14-3001(c)(1) (West 2011).  The California statute

contains virtually identical substantive prohibitions, Cal. Bus. & Prof. Code § 17529.5(a), and

provides that "[a]n electronic mail service provider" "may bring an action against a person or

entity that violates any provision of this section."  Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)

(West 2011).  The California statute broadly defines an "Electronic mail service provider"

("EMSP") to include "any person, including an Internet service provider, that is an intermediary

in sending or receiving electronic mail or that provides to end users of the electronic mail service

the ability to send or receive electronic mail."  Cal. Bus. & Prof. Code § 17529.1(h) (West 2011).

The phrase "*bona fide*" appears nowhere in either of the statutes.

BSI indisputably meets the standing requirements under both statutes.  Since its incorporation in 1996, years before the state statutes at issue were enacted, BSI has provided Internet-related services to the public.  *See* Declaration of Paul Wagner ¶¶ 2-4, 19-29 (DE# 309-45).  From its inception, BSI has provided email receipt, filtering, and delivery services.  *Id.* ¶ 3. Currently, BSI receives approximately 1 million emails per day and delivers legitimate emails to its customers.  *Id.* ¶ 26.  BSI also hosts web sites, DNS servers, streaming media services and e-commerce services, and the domains of its customers on its servers, and it provides Internet-related technology consulting.  *Id.* ¶¶ 6-9, 11-15, 22; *see* P. Wagner Kraft Dep. at 24:22-28:14 (DE# 309-12).  Defendants have not and cannot dispute any of this.  BSI is nothing like what the court faced in *Gordon*, and no trial is needed to determine that.

Likewise, unlike the standing requirements of CAN-SPAM, 15 U.S.C. § 7706(g)(1), the text of § 14-3003 contains no requirement that an ISP be "adversely affected" by a defendant's improper spam.  Rather, an ISP that has been "spammed" with false or deceptive emails may sue even if it suffered no actual damages whatsoever.  *See* Md. Gen. Assemb., Econ. Matters Comm., Floor Rep., H.B. 915, at 2 (2002) (noting that a violation occurs "regardless of whether a consumer in fact has been misled, deceived, or damaged as a result of the practice"); Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(i)-(ii)  (West 2011) (permitting EMSPs to sue to recover "either or both" actual or liquidated damages).

Time and again, the U.S. Supreme Court has emphasized both that courts have a duty to "follow the plain and unambiguous meaning of the statutory language" and that there is no "license for the judiciary to rewrite the language enacted by the legislature."  *United States v. Albertini*, 472 U.S. 675, 680 (1985).  "Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers. . . ."  *Id.*  Where the text of the

statute grants standing, courts must hear the merits of the plaintiff's claim, whether brought by a so-called "professional plaintiff" or otherwise.  Statutory standing is, therefore, a question of statutory construction, not an inquiry into a plaintiff's motives for bringing suit.

The analysis by the court in *Gordon* was, as it had to be, guided by the language of the CAN-SPAM Act and, most importantly, its limited private right of action and its requirement that an ISP be "adversely affected."  *See Gordon*, 575 F.3d at 1049-52.  The state anti-spam statutes simply do not mimic the federal statute in these respects, and *Gordon* is, therefore, inapposite.

Furthermore, while inquiry into the legislative history of the CAN-SPAM Act was critical to the *Gordon* court's holding that an ISP had to be a "*bona fide* ISP" to proceed, no legislative history supports any such requirement under the Maryland or California laws.  Looking to congressional intent in the CAN-SPAM context, the court in *Gordon* observed that

> the congressional record reveals a legitimate concern that the private right of action be circumscribed and confined to a narrow group of private plaintiffs:  "[Section 7706](g) provides for a limited right of action by bona fide Internet service providers."  . . . It is perhaps a sad reality that Congress must specify a bona fide IAS provider, as possibly distinct from a non-genuine IAS provider.  But this demonstrates to us that lawmakers were wary of the possibility, if not the likelihood, that the siren song of substantial statutory damages would entice opportunistic plaintiffs to join the fray, which would lead to undesirable results.  *While Congress did not intend that standing be limited to fee-for-service operations, we think it did intend to exclude plaintiffs who, despite certain identifying characteristics, did not provide the actual, bona fide service of a legitimate operation.*  We believe that Congress's clear intention to restrict private action remains of great importance and guides the proper standing analysis.

575 F.3d at 1050 (emphasis added; citations omitted).

In stark contrast, there is nothing whatsoever in the Maryland or California legislative history that would support a similar conclusion here.  For example, nowhere in the state

legislative history is there anything like Congressman Dingell's reference to CAN-SPAM's "limited right of action by a *bona fide* Internet Service Provider."  Likewise, the legislative history of these statutes does not mention the need for any plaintiff-ISP to show a particular harm to it.  Indeed, when speaking of standing, the Maryland General Assembly emphasized the expansive nature of the anti-spam statute's reach:  "A practice that is prohibited by the Act violates the Act, *regardless of whether a consumer in fact has been misled, deceived, or damaged as a result of the practice.*"  Md. Gen. Assemb., Econ. Matters Comm., Floor Rep., H.B. 915, at 2 (2002) (emphasis added).

Likewise, the legislative findings accompanying the California statute show that the state legislature there spoke almost exclusively in terms of harm to consumers and end users and did not single out or even identify any ISP-specific harms or any need to demonstrate the *bona fides* of an ISP's operations.  Cal. Bus. & Prof. Code § 17529.  As in Maryland, ___**any**___ recipient of false or deceptive spam under the California statute can sue for statutory damages, even those who may be attracted in whole or in part by the "siren song of statutory damages."  And any effort to impute Congress's intent into the intent of the Maryland General Assembly or the California Legislature without some proof that the intentions were the same is wholly inappropriate, even if a court were inclined to agree with the course that Congress chose, as interpreted by *Gordon*.

### B.    Courts Interpreting Cal. Bus. & Prof. Code § 17529 Uniformly Agree That The Federal Standing Requirements Do Not Apply.

Several cases have rejected other attempts to impose the CAN-SPAM standing requirements on claims brought under Cal. Bus. & Prof. Code § 17529.5.  In *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, the court held that "Defendants' arguments that plaintiffs . . . lack standing under the *federal* CAN-SPAM [Act] are irrelevant because plaintiffs' claims are based on their alleged status as email service providers under the state law."  622 F. Supp. 2d

935, 940 n.4 (N.D. Cal. 2009).  In another case, the court held that states have authority to enact

spam legislation that provides for broader private enforcement than what was chosen by

Congress, (*i.e.*, by granting standing to persons or entities who would not be permitted to sue

under CAN-SPAM), and such mechanisms do not run afoul of CAN-SPAM's preemption

provision.[10]  *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763, at

*13-14 (N.D. Cal. Apr. 1, 2010).  In holding that CAN-SPAM's preemption clause restricts the

permissible scope of states' *substantive regulation* of spam, and not the enforcement scheme that

the states may choose to adopt, the court observed:

> The CAN-SPAM Act's preemption provision grants states the
> authority to regulate certain behavior . . . without regard to the
> methods that states may use to enforce these prohibitions.  15
> U.S.C. § 7707(b)(1).  It would be both unnecessary and
> disingenuous to attempt to impose parity in the standing provisions
> between the two statutes, by imposing a narrow reading on
> Congress's express reservation of this right for the states.

*Id.* at *7.[11]  As *Asis* correctly holds, states are free to confer more expansive private rights of

action, and thus broader standing, than the public/private enforcement scheme found in CAN-

SPAM, so long as the state's substantive prohibitions are not broader than CAN-SPAM's.

BSI—as an electronic mail service provider (California) and an interactive computer

service provider (Maryland)—has statutory standing under Md. Code Ann., Com. Law §14-3003

and Cal. Bus. & Prof. Code § 17529, for no other reason than that it was a recipient of a type of

spam that those statutes prohibit.  It need not satisfy a more onerous standing requirement

---

[10] Were it otherwise, both states' causes of action in favor of email recipients would *a fortiori* also be invalid, because CAN-SPAM does not itself provide for suits by recipients.

[11] In response to a comparable attempt to impose the standing requirements of a separate law onto claims brought under § 17529, the court made clear that it "will not take it upon itself to rewrite the plain language of section 17529.5(b)(1)(A) to include a requirement for 'lost money or property' as a prerequisite for standing."  *Id.* at *9.  The defendant had argued that a recently enacted ballot initiative, which limited standing under California's more general consumer protection statutes, also applied to the spam statute, but the court rejected that claim.

imported from an entirely different law. *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *9 (N.D. Cal. Apr. 1, 2010). *See also Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010) (holding that "the plaintiffs' allegation that each plaintiff received from defendant one or more commercial e-mails containing 'false and deceptive statements . . . is sufficient at the pleading stage to support each such plaintiff's standing to bring a claim under § 17529.5(a)").

C.   **"Litigation-Seeking" Conduct Does Not Disqualify A Claimant From Seeking Relief Under Modern Consumer Protection Legislation On Which The Maryland And California Anti-Spam Statutes Were Both Modeled.**

Defendants have accused BSI of being a "litigation factory," which should exclude it from relief under Maryland and California anti-spam laws.  Pejorative names like these are not intended, of course, to conjure up an attractive image.  But statutory standing does not turn on a plaintiff's image, as proven by the many forms of consumer protection laws that permit suits by private litigants, regardless of whether the litigant can show any actual harm and even if the litigant seems to be in the business of seeking relief under these statutes.  The focus of these statutes is on preventing and deterring conduct that the legislative branch finds to be anathema.  State anti-spam statutes like the ones here fall squarely into this category of laws, and the standing requirements should be viewed no differently.

When it comes to consumer protection laws, the notion that "professional plaintiffs" lack standing has been repeatedly rejected.  *See, e.g.*, *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 327 (D. Conn. 2009).  In *Lemire*, a case brought under the Fair Debt Collection Practices Act ("FDCPA"),[12] the court said that "to contest [the plaintiff's] ability to fairly and

---

[12] 15 U.S.C. § 1692 *et seq.* (2006).  The FDCPA creates a cause of action for consumers who receive communications from debt collectors that fail to communicate clearly the various debtor-protection safeguards established by the Act.  Like the spam statutes, the FDCPA creates a cause of action based on receipt of deceptive materials and provides for recovery of statutory damages, even without a showing of

adequately represent the putative class, [the defendant] relies exclusively on its allegations that she is a 'Professional Plaintiff,' and that this must necessarily imply that 'the Plaintiff is . . . an opportunist seeking to usurp the rights of those individuals who are actually injured when a violation of the FDCPA occurs. . . . While this accusation may be significant to [the defendant], I am not convinced why it should be significant to this Court." *Id.* The court further emphasized that the FDCPA "'encourages parties who have suffered no loss to bring civil actions for statutory violations,'" and thus permits even "professional plaintiffs" to serve as class representative in the litigation. *Id.* at 328 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 96 (2d Cir. 2008)).

The FDCPA is closely analogous to the state statutes here. Unlike the standing provision in CAN-SPAM, the FDCPA's standing provision[13] permits a plaintiff to recover statutory damages based solely on the receipt of unlawful material, even though the plaintiff has not incurred any actual harm. Under these kinds of statutes, there is no basis for imposing artificial limitations such as a requirement that a plaintiff show that he is a "*bona fide*" plaintiff. Legislatures have valid reasons for expanding the scope of private enforcement of consumer protections laws, and it is not for a court to second-guess those reasons. As the Second Circuit said in another FDCPA case, the FDCPA "permits and encourages parties who have suffered no loss to bring civil actions for statutory violations," because such statutes "enlist[] the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated

---

actual harm. *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 96 (2d Cir. 2008) ("[T]he FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations.").

[13] The FDCPA provides: "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-- (1) any actual damage sustained by such person as a result of such failure; [or] (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k (2006).

counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson*, 516 F.3d at 91, 96.[14]

In short, although some courts might look less than fondly on the "professional plaintiff," certain statutes, such as the FDCPA and the state laws implicated here, actually encourage their efforts, which, in this case, may be the only thing keeping deceptive spammers like the Defendants from evading the law's clear prohibitions. *Cf. Murray v. Cingular Wireless II*, 242 F.R.D. 415, 418-19 (N.D. Ill. 2005) (holding that plaintiffs could maintain suit, even though "the named plaintiffs appear to greet the arrival of . . . junk mail . . . with joy and eagerly show their mail to lawyers at Edelman & Combs pursuant to a pre-existing agreement in the hope of finding an offer that presents a colorable FCRA claim").

**D.     It Is The Province Of State Legislatures, Not This Court, To Decide What The Scope Of Private Enforcement Should Be.**

The anti-spam statutes are, of course, a legislative creation, and whether certain parties should be permitted to enforce them should be a legislative decision, not the court's. Thus, for example, in enacting CAN-SPAM, Congress clearly envisioned that the FTC would play an active role in enforcement, and it thus would be consistent to adopt a somewhat narrower scope of private enforcement. *See* 15 U.S.C. § 7710(1) (2006) (directing FTC to consider granting a bounty to private parties whose tips lead to a successful FTC enforcement action against spammers). That, of course, was Congress's prerogative.

---

[14] The lower court's opinion in *Jacobson* decried the "cottage industry" of litigation under the FDCPA and the emergence of a class of "professional plaintiffs," but it did not hold that such plaintiffs lacked standing. 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), *rev'd in part, aff'd in part*, 516 F.3d 85, 96 (2d Cir. 2008). The court did hold that the plaintiffs had failed to establish a violation of the FDCPA on the merits under the "least sophisticated consumer standard," but this holding was reversed on appeal.

But because Maryland and California do not have the FTC at their disposal to enforce their anti-spam laws, the legislatures in those states decided to create an enforcement scheme that relies principally on litigation by private parties.[15]  The fact that, unlike CAN-SPAM, both the Maryland and California statutes allow spam recipients to sue, for example, further proves this point.  By enacting statutes that allow both computer and email service providers *and* spam recipients to sue for statutory damages without any requirement of actual damages, Maryland and California have plainly opted for broad private enforcement that distinguishes these state laws from federal law.

That legislative choice must be respected.  To limit standing under the state anti-spam statutes to *bona fide* ISPs as the court did in *Gordon* would impermissibly encroach on the rights of the Maryland General Assembly and the California Legislature to fashion their laws as they see fit.  It is not for the courts to tinker with or outright amend those laws to limit their enforcement in a way that the statute does not support.  For example, prior to enactment of the PSLRA, "professional securities plaintiffs" were not barred from seeking relief simply because of their status as such.  *In re Gibson Greetings Sec. Litig.,* 159 F.R.D. 499, 501 (S.D. Ohio 1994); *Koenig v. Benson*, 117 F.R.D. 330, 336 (E.D.N.Y. 1987); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508-09 (9th Cir. 1992).  This was deemed by many to be bad public policy, but it was up to Congress, not the courts, to respond with a legislative solution, which it did with the enactment of the Private Securities Litigation Reform Act (codified at scattered sections of 15

---

[15] Like Congress, some state legislatures have opted for more limited private enforcement, and accordingly have limited standing under their spam laws to recipients who suffer actual injury.  *E.g.*, Iowa Code Ann. § 716A.6 (West 2011) (providing a cause of action to "a person who is injured by a violation").  Legislatures are aware of these textual means for limiting standing; the absence of such limitations from the Maryland and California statutes is not accidental.

U.S.C.).  Legislation is how questions regarding the proper scope of enforcement should be resolved.

Similarly, "patent trolls" who do not engage in research, development, or marketing of products but who purchase patents solely to extract licensing fees from potential infringers may not be the courts' favorite plaintiffs.  But whether and to what extent these plaintiffs have the *bona fides* needed to sue for infringement is a matter left to the legislative branch to decide.  As one court stated, "these entities own a legitimate property right—the patent—that they are seeking to enforce.  This Court is not aware of any rules that apply differently to them." *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011).

\* \* \* \*

There simply is no basis to impose a "*bona fide* ISP" requirement under Maryland and California law, just as there is no requirement that an ISP show that it is "adversely affected" by false or deceptive spam as a prerequisite to making a claim.  Whatever may be said about the CAN-SPAM Act, these are concepts that are foreign to the state laws that govern here.  Imposing them in this case would not only be an impermissible intrusion on the prerogatives of the state legislatures, but it would have no basis in precedent, statutory text, or legislative history.  Defendants' no-standing defense should be struck.

**III.     IF THERE IS A "*BONA FIDE* ISP" REQUIREMENT, THIS COURT SHOULD DEFINE THAT STANDARD BEFORE FURTHER LITIGATION AND DISCOVERY ON THE ISSUE CONTINUES.**

If the Court should nevertheless hold that the Maryland and California statutes have a "*bona fide* ISP" requirement, then it should at this point articulate what that means. The lack of an articulated standard will result in wide-ranging, unruly discovery and will make it impracticable for BSI to know how to prepare for any trial of this issue.

It is well-settled that, where possible, the scope of the legal issues relevant to the litigation should be clearly defined before the parties conduct extensive factual discovery. For example, it is common for courts to stay discovery pending resolution of a motion to dismiss for failure to state a claim, in recognition of the fact that the outcome of these motions may narrow the scope of legally relevant issues for which discovery is required. *E.g., Briggs v. T & D Heating & Plumbing Co.*, No. WDQ-10-2714, 2011 WL 2970845, at *3 (D. Md. July 19, 2011) (granting stay and recognizing that discovery would be undue burden and expense where defendant "would bear the costs of investigating issues that may be rendered moot by the decision on the motion to dismiss"). Similarly, if the "*bona fide* ISP" defense is a valid requirement under Maryland and California law, this Court should articulate a standard defining that defense, so that the parties may determine which evidence is germane and which is non-responsive.

Likewise, if the "*bona fide* ISP" issue remains in this case, BSI will have to prepare to defend against it. But what "it" is, unfortunately, remains far from clear. For example, if a plaintiff in fact provides the services that are statutorily required under Maryland and California law, is it relevant that the plaintiff also seeks to profit from the anti-spam statutes? Similarly, if a plaintiff provides the statutorily defined services, does it matter that the plaintiff is considered by some vague standard to be litigious? These are merely two of many questions that arise from the

complete lack of guidance on what it means to be a "*bona fide* ISP."  If this Court disagrees with

BSI's position and continues to hold that a trial is warranted on this issue, then only the Court

can provide the guidance that is needed here.

## IV.    DEFENDANTS BEAR THE BURDEN OF PROVING THAT BSI IS NOT A "*BONA FIDE*" ISP.

If there is a "*bona fide* ISP" requirement under Maryland and California law, then

Defendants should bear the burden of proving that BSI is not one.  It is true that the requirement

of being an electronic mail service provider or an interactive computer service provide is a

component of BSI's statutory standing, and BSI bears the burden of proof on that issue as part of

its claim for relief.  But any further requirement of "*bona fide*" status is not traceable to the

statutes' respective standing provisions.  Defendants do not dispute that BSI meets the statutory

definitions under Maryland and California law, nor could they.  Instead, the Defendants argue

that BSI should not be entitled to sue because it has acted in an improper manner to manufacture

this litigation.  *See*, *e.g.*, Kraft Mot. for Summ. J. at  8 ("BSI is an entity that is primarily in the

business of litigation and pursuing statutory damages.  As such, it does not have standing.");

Connexus Mot. for Sum. Judg. at 10 ("BSI lacks standing because it is a lawsuit factory and not

[sic] legitimate ISP victimized by fraudulent email.").

In effect, Defendants argue that BSI has "unclean hands"—an issue that is in the nature

of an equitable defense—and a party raising such a defense bears the burden of proving it.  *See*

*Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 730 n.12, 922 A. 2d 538, 553 n.12 (Md.

2007) (party raising the affirmative defense of unclean hands bears the burden of proof);

*Ghirardo v. Antonioli*, 14 Cal. 4th 39, 55, 924 P.2d 996, 1005 (Cal. 1996) (same).  Accordingly,

while BSI must prove that it meets the statutory definitions under Maryland and California law,

Defendants' bear the burden of proving their affirmative defense that BSI has acted in bad faith.

**V.  IF THERE IS A "*BONA FIDE*" REQUIREMENT, ANY FACTUAL QUESTION PERTAINING TO BSI'S *BONA FIDES* IS AN ISSUE THAT MUST BE DECIDED BY A JURY.**

   **A.  Statutory Standing Is Part Of The Merits Of The Case And Thus A Jury Finding On Disputed Facts Is Required.**

Factual issues bearing on the elements of the plaintiff's claim on the merits must be resolved by a jury.[16]  A judge may only resolve disputed issues of fact if those issues go to jurisdictional or non-merits requirements.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004); *Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 (11th Cir. 2003).[17]  The question of BSI's standing as a "*bona fide* ISP," if it is an issue, is one of statutory standing.  As courts have repeatedly held, statutory standing is properly a merits issue[18] and thus requires jury resolution of any disputed facts bearing on that question. *E.g.*, *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003) (holding that jury fact-finding was required, because "the *disputed* issue was statutory standing. . . .  This issue goes to the merits and therefore must be decided in accordance with Rule 56 standards").

In the past, the law was muddled regarding the proper classification of statutory standing issues.[19]  But it would seem that, since the Supreme Court decided *Arbaugh v. Y & H Corp.*,

---

[16] The parties agree that the second mini-trial issue – residency – should be decided by the Court.  Our arguments here are addressed to mini-trial issues (1) and (3).

[17] The rule allowing judicial finding of jurisdictional facts is subject to an exception.  In some cases, even issues that are clearly defined as jurisdictional require fact-finding by the jury, if the jurisdictional issue overlaps factually with an issue on the merits of the case.  *E.g., Augustine v. United States*, 704 F.2d 1074, 1077-78 (9th Cir. 1983); *see also Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (noting this exception but concluding that there was no "intertwinement" on the facts of that case).

[18] This is in contrast to Article III standing, which is an issue of the federal court's jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

[19] Courts formerly asked whether the statutory standing issue was "intertwined with the merits" of the plaintiff's claim before determining that it should be treated as a merits issue.  *See, e.g., Lerner v. Fleet Bank, NA*, 318 F.3d 113, 128-29 (2d Cir. 2003) (concluding that RICO's statutory standing requirement goes to the merits of the action and is not jurisdictional, but relying in part on fact that the statutory standing question was "intertwined with the merits"); *see also Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85-87 (2d Cir. 2005) (explaining confusion regarding proper

546 U.S. 500, 516 (2006), it is now clear that elements included in the statute that creates the plaintiff's cause of action (including statutory standing) are merits issues and are not to be treated as jurisdictional issues.  Accordingly, factual disputes bearing on such issues must be decided by a jury, not a judge.  In *Arbaugh*, the Court held that whether a defendant is covered by Title VII's statutory definition of an "employer" is not a jurisdictional issue, but an element of the plaintiff's claim on the merits.  *Id.* at 515-16.  In so holding, the Court laid down a bright-line rule governing required elements under the statute that supplies the cause of action: when the legislature "does not rank a statutory limitation on coverage as jurisdictional, courts should treat that restriction as nonjurisdictional in character."  *Id.* at 515-16.  To be sure, the statutory requirement at issue in *Arbaugh* pertained to the defendant's status, rather than the plaintiff's.  But this distinction does not matter, because the Fourth and Sixth Circuits have held that a *plaintiff's* statutory standing is also a "limitation on coverage" governed by *Arbaugh*, and thus statutory standing is an issue on the merits that implicates the jury trial right.

The Fourth Circuit applied the "bright line" rule of *Arbaugh* to hold that a plaintiff's statutory standing as a "person purchasing" securities under 15 U.S.C. § 77*l* is an element on the merits of the plaintiff's claim for relief, not a jurisdictional requirement.  *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 339 (4th Cir. 2006).  Thus, in the Fourth Circuit, statutory standing is an element on the merits of the case, and all disputed facts bearing on BSI's statutory standing as an ISP must be resolved by a jury.  As in *Arbaugh*, the court in *Partington* made no inquiry into whether the statutory standing requirement in 15 U.S.C. § 77*l* was "intertwined" with the core of the plaintiff's claim for relief.  *Accord Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548-49 (6th Cir. 2006) (relying on *Arbaugh* and holding that a plaintiff's statutory standing

---

classification of statutory standing following the Supreme Court's decision in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)).

as an "eligible employee" under the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1), is a question on the merits, without inquiring into whether standing was "intertwined" with other elements of the merits); *see also Thompson v. North Am. Stainless*, 562 U.S. __, 131 S. Ct. 863, 867-69 (2011) (treating plaintiff's statutory standing as "person aggrieved" under Title VII not as jurisdictional question but as element on merits that court resolved only after first ruling, on the merits, that conduct complained of amounted to retaliation).

It is thus clear that statutory standing is part of the merits, not a jurisdictional issue.  In contrast to jurisdictional issues, jury fact-finding is required for *any* issue that is part of the merits, regardless of whether the standing question is "intertwined" with other aspects of the plaintiff's claim for relief.  Because the provisions in the California[20] and Maryland[21] statutes that create causes of action do not speak in jurisdictional terms, *Arbaugh* and *Partington* hold that BSI's statutory standing under these laws is an issue on the merits that requires jury resolution of disputed facts.[22]

### B.      The Standing Issue In This Case Also Is Intertwined With The Merits.

If this Court concludes, notwithstanding *Arbaugh* and *Partington*, that statutory standing should be treated as a jurisdictional requirement if it can be separated from the merits of the case,

---

[20] Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(ii) (West 2011).

[21] Md. Code Ann., Com. Law. § 14-3003(3) (West 2011).

[22] If this were not enough, the overwhelming weight of authority to address the proper classification of statutory standing holds that the issue is an aspect of the merits.  *E.g., Noel v. Hall*, 568 F.3d 743, 748 (9th Cir. 2009) (holding that plaintiff's statutory standing to bring private action under the Federal Wiretap Act, 18 U.S.C. § 2520 (West 2006), "unlike constitutional standing, is not jurisdictional"); *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (recognizing that plaintiff's statutory standing as a "participant" under ERISA need not be decided before reaching the merits of the plaintiff's claim).

The only recent case to treat a statutory standing question as jurisdictional was *DDB Tech., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290-92 (Fed. Cir. 2008).  Although *DDB* held that the "jurisdictional" issue of standing under the Patent Act did not require jury resolution of disputed facts, it did not cite *Arbaugh*, *Partington*, or *Cobb*, and did not discuss the distinction between statutory standing and Constitutional standing.  In light of the controlling Fourth Circuit opinion in *Partington*, *DDB's* relevance is dubious.  Statutory standing is simply not a jurisdictional issue; it is a merits issue.

then the "*bona fide* ISP" issue still does not fit into this category, because it is intertwined with the merits of BSI's claim.  As shown in Part III, *supra*, there is as yet no clearly enunciated standard of what it means to be a "*bona fide* ISP" under Maryland and California law.  But, as Defendants present the issue, their allegations that BSI plays some role in facilitating its own receipt of spam may presumably relate to BSI's *bona fides*.  This issue of how BSI came to receive the emails relates to the core of BSI's claim on the merits, which is that Defendants unlawfully caused the emails to be transmitted over BSI's network hardware.  For example, if evidence shows that the Defendants sent or caused to be sent their emails to web domains operated by BSI, the fact-finder could conclude that the Defendants' conduct, not BSI's, was primarily responsible for transmission of the unlawful emails over BSI's network.  Thus, litigating the "*bona fide* ISP" issue requires factual development of how the challenged emails came to be sent to and received at their respective destinations.  This factual issue cannot be extracted from the merits of the plaintiff's claim, and so it must be resolved by a jury.

## CONCLUSION

Plaintiff respectfully requests that the Court grant this motion to strike Defendants' defense of lack of standing as legally insufficient.  In the alternative, Plaintiff requests that this Court issue an order that (1) defines the legal standard that governs the *bona fide* ISP element as it applies to the Maryland and California laws, so that any further litigation and discovery on this issue may be conducted by reference to that standard; (2) holds that the Defendants bear the burden of proving their defense of lack of standing; and (3) holds that facts regarding this defense will be tried by a jury.

Date:  November 16, 2011                                    Respectfully submitted,


_____/s/_____                  *Of Counsel:*

Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)              Stephen H. Ring (USDC-MD Bar No. 00405)
Jeffrey McFadden (D. Md. Bar No. 8738)               Law Offices of Stephen H. Ring, P.C.
John J. Duffy (D. Md. Bar No. 28613)                 506 Main Street, Suite 215
STEPTOE & JOHNSON LLP                                 Gaithersburg, Maryland  20878
1330 Connecticut Ave., NW                             T: 301-563-9249
Washington, D.C.  20036                               F: 301-563-9639
T: 202-429-3000                                       shr@ringlaw.us
F: 202-429-3902
tbarba@steptoe.com
ryoerges@steptoe.com                                  Mike Rothman (USDC-MD Bar No. 14568)
jmcfadden@steptoe.com                                 Law Office of Michael S. Rothman
jduffy@steptoe.com                                    401 E. Jefferson Street, Suite 201
                                                      Rockville, MD  20850
                                                      T: 301-251-9660
Anthony A. Onorato (D. Md. Bar No. 28622)            F: 301-251-9610
STEPTOE & JOHNSON LLP                                 mike@mikerothman.com
750 Seventh Avenue
New York, NY  10019                                   *Counsel for Plaintiff Beyond Systems, Inc.*
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com


*Counsel for Plaintiff Beyond Systems, Inc. and*
*Third-Party Defendants James Joseph Wagner*
*and Hypertouch, Inc.*