## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**BEYOND SYSTEMS, INC.**

**Plaintiff,**

**v.**

**KRAFT FOODS INC.,** *et al.*

**Defendants.**

**Case No.: 8:08-cv-00409-PJM**

### RESPONSE OF KRAFT DEFENDANTS TO BEYOND SYSTEMS, INC.'S
### MOTION TO STRIKE AFFIRMATIVE DEFENSES RELATED TO ISP STANDING

Plaintiff Beyond Systems, Inc. ("BSI") in its Memorandum In Support Of Its Motion To Strike Affirmative Defenses Related to ISP Standing ("BSI Mem.") seems to concede that it is a litigation factory that has never suffered and cannot prove any "real ISP-type harm." Faced with these facts, BSI incorrectly contends that such proof is not required. As Connexus explains in its Memorandum, the Court has already determined that BSI cannot maintain this suit unless it establishes that it is a *bona fide* ISP.[1] BSI is now asking this Court to reconsider its prior rulings, but there is no basis for such motion. Indeed, the Court correctly concluded that BSI must prove it is a *bona fide* ISP, and any other conclusion would be preempted by the CAN-SPAM Act, 15 U.S.C. § 7701 *et seq*.

---

[1] Connexus Corporation has also filed its Opposition to BSI's Motion to Strike Affirmative Defenses Related to ISP Standing ("Connexus Memorandum") in response to BSI's Motion to Strike. So as not to duplicate arguments, Defendants Kraft Foods, Inc., Kraft Foods Global Inc., and Vict. Th. Engwall & Co., Inc. (referred to herein as "Kraft") join the Connexus Memorandum.

**BACKGROUND**

As described in detail in Kraft's Memorandum in Support of Summary Judgment ("Kraft SJ Mem.," Dkt. No. 283-1) this case involves an ongoing scheme among BSI and its sole employee, Paul Wagner, and Hypertouch Inc. ("Hypertouch") and its sole employee and the brother of Paul Wagner, Joe Wagner, to misuse state laws regulating commercial email in order to manufacture claims against Defendants, including Kraft.

In this case, the Wagner brothers set up a daisy-chain operation where both BSI and Hypertouch would troll for email using spam traps and then forward those emails to each other in order to multiply claims based on the same email and maximize statutory recovery.  (Kraft SJ Mem. (Dkt. 283-1) at 11-12, 12-22.)  For example, a Hypertouch spam trap would receive an email in California, redirect it to BSI in Maryland, then both BSI and Hypertouch would sue under both California and Maryland statutes for this same email.  In essence, under BSI's scheme, one email would result in four statutory claims.  In fact, of the 11,120 emails on which BSI originally sued, 8,665 were sent to Hypertouch and redirected to BSI and of those 8,665, Hypertouch had already sued Kraft on 6,841 and settled those claims with Kraft.  (*Id.* at 18-19.) Despite the settlement agreement, BSI maintained that this daisy-chain of claims was legal and that it too could sue on these same emails under both California and Maryland statutes.  The Court rejected that claim on summary judgment and ruled that BSI could not pursue claims against Kraft for email sent to Hypertouch.

As explained below and in Connexus' Memorandum, neither the California nor Maryland Legislatures could have possibly intended to confer standing on entities that were not legitimate ISPs and that were only subjected to unsolicited commercial email ("UCE") because of their own

affirmative acts.  Moreover, if the Legislatures did intend to confer such standing, then the

federal CAN-SPAM Act would preempt those laws.

## ARGUMENT

**I.      Maryland's And California's Statutes Would Be Preempted Under BSI's Argument That It Does Not Need To Prove It Was A *Bona Fide* ISP That Was Adversely Affected.**

Congress expressly provided that CAN-SPAM "supersedes any statute, regulation, or rule

of a State or political subdivision of that State that expressly regulates the use of electronic mail

to send commercial messages, except to the extent that any such statute, regulation, or rule

prohibits falsity or deception in any portion of a commercial electronic mail message or

information attached thereto."  15 U.S.C.A. §7707(b)(1).  Contrary to BSI's position, this

preemption provision limits standing to *bona fide* ISPs which have been adversely affected, even

under parallel State laws that are not preempted because of the savings clause.

The Fourth Circuit has said:

> [t]he purpose of Congress is the ultimate touchstone in every preemption case. Instead of imposing the narrowest possible construction on preemptive language when read in isolation, we seek a fair understanding of congressional purpose, looking to the language of the pre-emption statute and the statutory framework surrounding it, while also considering the structure and purpose of the statute as a whole.

*Omega World Travel, Inc., v. Mummagraphics, Inc.,* 469 F.3d 348, 352 (4th Cir. 2006) (internal

quotations and citations omitted).  Accordingly, to understand the scope of the preemption

clause, the Court must examine the "structure and purpose" of CAN-SPAM as well as the

language of the preemption provision itself.

### A.      BSI Must Be A *Bona Fide* ISP.

Congress expressly limited the private right of action under CAN-SPAM to "internet

access service providers" who have been "adversely affected by a violation of . . . or a pattern or

practice that violates" the Act.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009) (quoting 15 U.S.C. § 7706(g)(1).[2]  *Gordon* analyzes in detail the competing interests and Congress' objectives as reflected in the legislative history of CAN-SPAM.  The legislative history makes clear that Congress limited standing because the lawmakers were "wary of the possibility, if not the likelihood, that the siren song of substantial statutory damages would entice opportunistic plaintiffs to join the fray, which would lead to undesirable results."  *Id.* at 1050. Congress "did intend to exclude plaintiffs who, despite certain identifying characteristics, did not provide the actual, *bona fide* service of a legitimate operation."  *Id*. (citing 150 *Cong. Rec*. E72– 02 ("[W]e intend that Internet access service providers provide actual Internet access service to customers.").  The Court concluded that "we believe that Congress' clear intention to restrict private action remains of great importance and guides the proper standing analysis."  *Id.*

It would undermine Congress' objective if a non-*bona fide* ISP could bring a claim under state law that is identical to one the ISP is prohibited from bringing under CAN-SPAM.  *Cf.*, *Anderson v. Sara Lee Corporation,* 508 F.3d 181, 194-95 (4th Cir. 2007) (holding that conflict preemption bars plaintiff from circumventing the exclusive remedies and procedures of the FLSA by pursuing the same FLSA claims through state common law claims).  Moreover, it would completely frustrate the express intent of Congress by allowing states to expand the class of claimants, when Congress intentionally limited the class of claimants to *bona fide* ISPs. *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 830 (4th Cir. 2010)(conflict preemption applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'").

---

[2] In *Gordon*, the Court did not address whether the standing requirements for an ISP under CAN-SPAM also applied to the State law claims that were exempt from preemption, because the defendant did not challenge those claims based on standing:  "At the outset, we must frame the issue as it comes to us.  First, Virtumundo does not contest Gordon's standing to bring CEMA claims."  *Gordon*, 575 F.3d at 1058.

Congress intended CAN-SPAM to eliminate or harmonize the patchwork of state laws regulating email communications. *Omega*, 469 F.3d at 356; *Gordon*, 575 F.3d at 1062-63. If the standing requirements are not uniform for ISPs, then BSI and other non-*bona fide* ISPs which were not adversely affected could set up servers in the most lenient state for standing and either troll for email there or redirect email to those servers in order to pursue claims that they were not permitted to pursue under federal or other states' laws. Thus, the gatekeepers under CAN-SPAM, *bona fide*, adversely affected ISPs, would be made irrelevant. The new gatekeepers would be unscrupulous litigation factories like BSI, who have suffered no adverse impact.

Assume BSI is exactly what we contend, a manufacturer of spam claims that uses spam traps to attract, collect and then catalogue UCE, rather than a *bona fide* ISP that provides a real service to real customers. Congress expressly intended to exclude that type of entity from bringing any type of claim, including claims for false and misleading information. *See Gordon*, 575 F.3d at 1051-52 (stating that "while we agree that statutory standing is not limited to traditional ISPs, we reject any overly broad interpretation of "Internet access service . . . ", and that it was "troubled" by Gordon "adding his 'clients' e-mail addresses to mailing lists and accumulating spam through a variety of means for the purpose of facilitating litigation."). It would be inconsistent with Congress' express intent to allow this same ISP to bring, under a parallel state statute, the exact same claim that Congress barred it from bringing under CAN-SPAM. Accordingly, if the state statutes do not require *bona fide* status for standing, they are preempted.

The savings clause is consistent with the above construction. That clause provides that state statutes that expressly regulate electronic mail are preempted "except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of the commercial

electronic mail message . . . ."  15 U.S.C.A. § 7707(b)(1).  The inclusion of "except to the extent that" carves out a narrow exception that preserves only the claim under state law, but does not expand standing to non-*bona fide* ISPs.  In other words, an ISP can bring a claim under either state or federal law for falsity or deception, but the ISP must still meet the *bona fide* requirement of CAN-SPAM.  A comparison of this section, which uses the language "except to the extent that," to the language in 15 U.S.C.A. § 7707(b)(2)(A), which does not, demonstrates that Congress intended a very limited exception to preemption under 15 U.S.C.A. § 7707(b)(1).  In 15 U.S.C.A. § 7707(b)(2)(A), Congress made clear that it did not preempt "State laws that are not specific to electronic mail, including State trespass, contract, or tort law . . . ."  Congress' decision not to limit the enforceability of those laws at all with respect to electronic mail makes clear that those laws are preserved in their entirety, including their enforcement and standing requirements.  *Cf.*, *Omega*, 469 F.3d at 354 (narrowly construing the CAN-SPAM savings clause and reasoning that terms must be construed in the context of the statute as a whole); *Gordon*, 575 F.3d at 1061 ("Thus, the express language of § 7707(b) demonstrates Congress' intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail with limited, narrow exception.").

Moreover, contrary to BSI's contention, we believe that the Maryland and California statutes do require that the plaintiff be a *bona fide* ISP, and courts "should, if reasonably possible, construe a statute 'in a manner that avoids *any* doubt about its [constitutional] validity.'"  *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 346, 232 P.3d 625 (2010)(citations omitted)(construing §17529.5(b)(1) of the California statute).  In the case of the Maryland statute, an ISP may recover the greater of $1,000 or its actual damages, whereas a recipient may only recover $500.  Md. Code Ann., Com. Law §14-3003.  This difference in

damages indicates that the Legislature considered ISPs to be more adversely affected than recipients and/or the superior party to bring such claims (*i.e.,* gatekeepers), which is consistent with Congress' findings under CAN-SPAM for *bona fide* ISPs.  Similarly, both states protect from liability ISPs "involved in the routine transmission of the unsolicited commercial e-mail advertisement over its computer network."  Cal. Bus. & Prof. Code §17529.5(b)(1)(D), 17529.8(a)(3); *see also* Md. Code Ann., Com. Law §14-3002(a).  The phrase "routine transmission . . . over its computer network" indicates that the Legislatures had something more substantial in mind than a server in a home closet used to collect and reroute email.[3]  Thus, construing the two statutes to require that a plaintiff be a *bona fide* ISP is both consistent with the language of the statutes themselves and the principle that a statute should be construed to avoid any doubt about its constitutional validity.

### B.   The ISP Must Have Been Adversely Affected To Have Standing.

The requirement under CAN-SPAM that the ISP be adversely affected applies to standing under the state statutes for the reasons set out in Section A, above.  Specifically, Congress intended a very limited set of gatekeepers—"adversely affected" ISPs.  *Gordon*, 575 F.3d at 1053.  To broaden the scope of standing to ISPs, like BSI here, which cannot prove that it was adversely affected, would frustrate Congress' intent.

Moreover, the Maryland statute supports an "adversely affected" requirement.  That statute permits ISPs to recover double the damages that a recipient could recover.  It would be illogical for the Legislature to provide double the statutory damages to ISPs, compared to other

---

[3] BSI's Wagner admitted that he stores his servers in two Maryland homes owned by his parents and keeps a third server in the Maryland home of an attorney who provides occasional legal services to BSI.  Kraft SJ. Mem.(Dkt. 283-1) at 8.

potential claimants, unless the ISP had to show an adverse impact.  Md. Code Ann., Com. Law §14-3003 (statutory damages of $1,000 to ISPs, but only $500 to recipients).

Additionally, the requirement of an adverse impact is supported by the two federal appellate courts that have rigorously analyzed and narrowly construed the scope of the exemption to preemption under CAN-SPAM, as well as the California Supreme Court.  All three cases narrowly construed the savings clause in CAN-SPAM by saving from preemption only those state laws based on traditional tort theories directed at fraud and deception, and requiring that the deception be material.  *Omega*, 469, F.3d at 351-55 (Congress did not intend to allow states to enact laws that prohibit "mere error" or "insignificant inaccuracies"); *Gordon*, 575 F.3d at 1063 (holding that only traditional State tort theories directed at fraud and deception are saved from preemption).  *Cf.*, *Kleffman*, 49 Cal. 4th at 347-350, 232 P.3d 625 (holding that vague or confusing headers, even if done intentionally, do not rise to the level of false and misleading; any other conclusion would conflict with CAN-SPAM and be preempted).  Accordingly, technical inaccuracies and intentionally confusing information contained in email headers or subject lines was not sufficient to support a claim.  These courts were all clearly wary of allowing plaintiffs to circumvent the intent of Congress by bringing claims under state laws even though the parties bringing the claims were not misled, harmed or likely to suffer any harm.  Similarly, the Court should not allow an ISP that cannot show any adverse impact to pursue a claim.

## II.   BSI Has The Burden Of Proving Standing.

Both Constitutional and statutory standing are essential elements of a plaintiff's case, and plaintiff has the burden of proving standing.  *Lujan  v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 334 (4th Cir.

2007).  BSI does not offer a single case to contradict this well established principle.

Accordingly, BSI has the burden of proof on standing.

## <u>CONCLUSION</u>

For the reasons stated above, BSI's motion to strike Kraft's defenses should be denied and BSI must be required to prove it is a *bona fide* ISP that has been adversely affected by the UCE at issue.

DATED:  December 12, 2011                                    /s/

John K. Roche (USDC-MD Bar No. 17531)
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
700 13th Street, N.W., Suite 600
Washington, D.C. 20005-3960
(202) 434-1627
(202) 654-9106 (facsimile)
jroche@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham (*Pro Hac Vice*)
ROESER BUCHEIT & GRAHAM, LLC
20 N. Wacker Drive, Ste. 1330
Chicago, IL  60606
(312) 621-0301
(312) 621-0301 (facsimile)
dgraham@rbglegal.com

*Attorneys for Defendants Kraft Foods Inc.,*
*Kraft Foods Global Inc., and Vict. Th. Engwall*
*& Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals:

Anthony Cavanaugh
Thomas M. Barba
John J. Duffy
Anthony A. Onorato
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
(202) 429-3000
(202) 429-3902 (facsimile)
acavanaugh@steptoe.com
tbarba@steptoe.com
jduffy@steptoe.com
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P. C.
506 Main Street, Suite 215
Gaithersburg, Maryland 20878
301-563-9249
301-563-9639 (fax)
shr@ringlaw.us

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson St., Suite 201
Rockville, MD  20850
(301) 251-9660
(301) 251-9610 (facsimile)
mike@mikerothman.com

*Attorneys for Plaintiff Beyond Systems, Inc.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Attorneys for Defendants Connexus Corp.*

Hydra LLC
8800 Wilshire Blvd., 2nd Floor
Beverly Hills, CA 90211
*Pro Se*
(service by U.S. Mail only)

/s/

John K. Roche (USDC-MD Bar No. 17531)
John M. Devaney (*Pro Hac Vice*)
PERKINS COIE LLP
700 13th Street, N.W., Suite 600
Washington, D.C. 20005-3960
(202) 434-1624
(202) 654-9106 (facsimile)
jdevaney@perkinscoie.com
jroche@perkinscoie.com

*Attorneys for Defendants Kraft Foods Inc., Kraft Foods Global Inc., and Vict. Th. Engwall & Co., Inc.*