IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | : | |
|---|---|---|
| BEYOND SYSTEMS, INC. | : | |
| | : | Case No. 8:08-CV-00409-PJM |
| Plaintiff, | : | |
| | : | |
| v. | : | The Honorable Peter J. Messitte |
| | : | |
| KRAFT FOODS, INC., et al., | : | Magistrate Judge Charles B. Day |
| | : | |
| Defendants. | : | |
| | : | |

**CONNEXUS CORP.'S OPPOSITION TO BEYOND SYSTEMS, INC.'S
MOTION TO STRIKE AFFIRMATIVE DEFENSES
RELATED TO "ISP" STANDING AND FOR ALTERNATIVE RELIEF**

Defendant Connexus Corp. respectfully submits its Opposition to Beyond Systems, Inc.'s ("BSI") Motion to Strike Affirmative Defenses Related to "ISP" Standing and for Alternative Relief ("Motion").

**I.      INTRODUCTION**

BSI's motion to strike is nothing more than another motion for reconsideration of this Court's multiple orders holding that BSI must prove it is a *bona fide* ISP to sue under the Maryland and California anti-spam statutes. (Ex. 1, 6/14/10 Hrg. Tr. at 22:16-23:4; ECF Nos. 420, 437 and 438; World Avenue Litigation ECF No. 544.) Contrary to BSI's belief, the California and Maryland legislatures intended to protect only true victims of spam, and did not empower opportunistic plaintiffs like BSI to amass emails and then sue over them for a windfall in statutory damages. Likewise, BSI's argument that it need not show it is a *bona fide* ISP because the words "*bona fide*" appear in CAN-SPAM's legislative history but do not appear in the legislative histories of the Maryland and California statutes is equally unavailing. BSI does not contest that it must show it is a *bona fide* Maryland resident even though "*bona fide*" does

not expressly appear in Maryland's residency requirement, and fails to explain why the Court should treat the residency requirement any differently than the ISP requirement. There is, in fact, no difference between the two issues, and BSI must prove it is a *bona fide* ISP and a *bona fide* Maryland resident to maintain suit. The Court should deny BSI's motion outright.

Likewise, the Court should deny BSI's request for a stay pending this Court's articulation of the standards and factors involved in each Mini-Trial issue. This Court and others clearly articulated these factors and standards. To the extent the Court agrees that further articulation is needed, Connexus attaches hereto a proposed order for the Court's consideration.

Finally, the Court – not the jury – should decide the Mini-Trial issues. All three issues relate to whether BSI has standing to sue under the Maryland and California statutes, standing is a "threshold jurisdictional issue" that does not concern the merits of a plaintiff's claims, and courts – not juries – decide jurisdictional issues including standing under binding precedent. Indeed, BSI concedes that the Court should determine whether it is a *bona fide* Maryland resident, but fails to show why the two remaining issues must be tried to a jury. There is no difference between these issues and the Court should decide each of the Mini-Trial issues.

## II.   ARGUMENT

### A.   BSI MUST SHOW IT IS A *BONA FIDE* ISP

This Court repeatedly held that whether BSI is a *bona fide* ISP is a triable issue that must be resolved before BSI can pursue its claims on the merits. Further, Magistrate Judge Day in the related *World Avenue Litigation* held that BSI bears the burden of showing it is a *bona fide* ISP, and BSI failed to show that Magistrate Judge Day erred and did not object to this holding. (WA ECF No. 660.) Thus, BSI's motion to strike is nothing more than an untimely and redundant motion for reconsideration, and the Court should deny it because BSI failed to meet its burden.

2

Further, BSI failed to meet its burden for striking a pleading under FRCP 12(f), thereby mandating denial of BSI's motion for this independent reason.

### 1. Reconsideration is an extraordinary remedy.

"Motions for reconsideration are 'an extraordinary remedy which should be used sparingly.'" *AGV Sports Group, Inc. v. Protus IP Solutions, Inc.*, No. RDB-08-3388, 2010 WL 1529195, at *1 (D. Md. Apr. 15, 2010) (quoting *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A party seeking reconsideration must show that "exceptional circumstances" warrant reconsideration. *Smith v. Bounds*, 813 F.2d 1299, 1303-04 (4th Cir. 1987); *AGV Sports,* 2010 WL 1529195, at *1. Further, a motion for reconsideration should be denied if "it merely reargue[s] the legal issues that were, or could have been advanced [previously]." *Berman v. Congressional Towers Ltd. P'ship*, 325 F. Supp. 2d 592, 595 (D. Md. 2004).

### 2. *Bona Fide* is part of BSI's standing requirement.

This Court already held, over BSI's objections and previous motion for reconsideration, that whether BSI is a *bona fide* ISP is a triable issue that must be resolved before BSI can pursue its claims on the merits. (Ex. 1, 6/14/10 Hrg. Tr. at 22:16-23:10; Ex. 2, 11/29/11 Hrg. Tr. at 83:25-84:12; ECF Nos. 437, 438, 440; WA ECF No. 544). Now, BSI merely repeats its tired argument that "[n]othing in either the text or legislative histories of those two statutes contains any reference to a '*bona fide* ISP' or 'adverse effect' as standing requirements or elements of any claim brought under them." (Mot. at 2-3.) BSI's arguments badly miss the mark and do not warrant reconsideration, and its suggestion that the Maryland and California legislatures authorized opportunistic and uninjured ISPs like BSI to collect emails and sue for millions of dollars over them is outright ridiculous. (Mot. at 10.) According to its lead sponsor, the

3

Maryland statute is designed to "give[] **victims** the right to go to court and seek damages[.]" (Ex. 3, Statement of Sen. Teitelbaum (emphasis added)).  Similarly, the California legislature enacted its anti-spam statute because it found that "problems" caused by "spam" include "lost productivity" and the cost of "additional equipment, software, and manpower." Cal. Bus. & Prof. Code § 17529 (emphasis added).  There can be no doubt that the California and Maryland legislatures intended to protect only true victims of spam.

 BSI's argument that it need not show it is *bona fide* because the words "*bona fide*" appear in CAN-SPAM's legislative history but do not appear in the legislative histories of the Maryland and California statutes is equally unavailing. (Mot. at 5-10.)  As Judge Gould noted in his concurring opinion in *Gordon*, "the common law developed ample remedies for persons who had suffered grievous harms, but, as I understand the history of our common law, it did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1067-68 (9th Cir. 2009).  Thus, Judge Gould would "presume a bona fide requirement even without [CAN-SPAM's] legislative history." *Id.* at 1068.  "That the legislative history specifies bona fide [ISP] providers strengthens our conclusion that Gordon's suit should be dismissed, but the legislative history is not necessary to reach this conclusion in light of the common-law antecedents that do not favor manufactured claims." *Id.*  As this Court previously found, this rationale applies equally here and BSI failed – again – to show otherwise.

 By holding that BSI must show it is a *bona fide* ISP, this Court is not rewriting the anti-spam statutes as BSI contends. (Mot. at 8-9.)  Rather, this Court, pursuant to binding Supreme Court precedent, is adopting a common sense and obvious interpretation of the statutes based on their express language and legislative history, as "[u]nquestionably the courts, in interpreting a

statute, have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results or would thwart the obvious purpose of the statute." *Comm'r v. Brown*, 380 U.S. 563, 571 (1965).  Any other interpretation would license opportunistic plaintiffs like BSI to clog the courts with manufactured claims seeking millions of dollars.  There is no evidence that the Maryland or California statutes intended to reach such an absurd result and the Court should reject BSI's suggestions to the contrary.[1]

### 3. BSI has the burden of proof at trial.

The Court should reject BSI's argument that Connexus bears the burden of showing that BSI is not a *bona fide* ISP.  Magistrate Judge Day already ruled in the related *World Avenue Litigation* that "As for the bifurcation of the trial into three succinct issues, the Court views these issues to be a subset of the original issues that have always been a part of this case.  Namely, the questions framed by Judge Messitte have always been elements, and/or factors, to be established by Plaintiff in its case." (WA ECF No. 660.)  BSI never objected to this ruling, and failed to show in its present motion any circumstances – much less extraordinary circumstances required for reconsideration under Fourth Circuit precedent – why the Court should reverse it.

Further, BSI bears the burden of proving the three Mini-Trial issues because a plaintiff always bears the burden of pleading and proving its own standing according to binding Supreme

---

[1] None of the cases BSI cites stand for the proposition that CAN-SPAM's *bona fide* ISP standing requirement is not also part of the standing requirement under the state statutes at issue.  None of BSI's cases address the Maryland statute, and the cases addressing the California statute do not apply.  (Mot. at 10-12 (citing *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935 (N.D. Cal. 2009) (relying on the "analogous federal CAN-SPAM Act" in finding that plaintiff's complaint alleged sufficient injury to support Article III standing at the motion to dismiss stage); *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) (holding that Cal. Bus. & Prof. Code § 17.529.5's standing requirement was not amended by a later state ballot initiative); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) (holding that under the California statute, plaintiffs were not required to allege they relied to their detriment on the allegedly false e-mails)).  Likewise, BSI's reliance on class action cases for the proposition that professional plaintiffs are also entitled to their day in court is both misplaced and irrelevant, as those cases largely addressed failures to comply with FRCP 23's class certification requirements.  (Mot. at 14-16.)

Court precedent: "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [proving standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (burden is on plaintiffs to prove standing).

Likewise, BSI's argument that the burden of proof shifts to Connexus to show that BSI is not a *bona fide* ISP because Connexus raised BSI's standing as an affirmative defense is wrong. Connexus pled BSI's lack of standing as an affirmative defense only in an abundance of caution, as prudence dictates, to avoid any possibility of waiver. Thus, the burden of proof does not shift to Connexus under these circumstances:

> If a defendant makes the mistake of pleading matter as an affirmative defense that could have been raised by denial, there is no reason to penalize him [by] shifting the burden of proof from plaintiff to defendant by invoking the fiction that pleading affirmatively on the matter he intended to assume the burden of proof. This latter conclusion seems particularly appropriate since defendant should be encouraged to plead a defense affirmatively if he is in any doubt as to his ability to put the matter in issue under a denial.

*Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982) (quoting 5 Wright & Miller § 1278).

### 4.     BSI failed to meet its burden for striking a pleading.

The Court should deny BSI's motion to strike because it is woefully late. FRCP 12(f) requires a moving party to file its motion to strike "within 21 days after being served with the pleading." Connexus served its answer and affirmative defenses on April 3, 2008. (ECF No. 46.) BSI filed its motion to strike over three and a half years later on November 18, 2011. (ECF No. 452-1.) The Court should deny BSI's motion for this reason alone.

BSI's motion also fails on the merits. A motion to strike under FRCP 12(f) is a drastic remedy, disfavored by the courts, and infrequently granted. *Nat'l Credit Union Admin. v. First Union Capital Mkts. Corp.*, 189 F.R.D. 158, 162 (D. Md. 1999). Unless the attacked allegations "have no possible relation to the controversy and may prejudice the other party," a motion to strike will be denied. *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 909 (D. Md. 1971). A court should also deny a motion to strike "when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law." *Nat'l Credit Union*, 189 F.R.D. at 162 (citations omitted). Therefore, "even when technically appropriate and well-founded, a motion to strike is often not granted in the absence of a showing of prejudice to the moving party." *Id.* (internal quotations and citations omitted).

Here, BSI's motion is devoid of any argument that Connexus's defense is either irrelevant or prejudicial. Indeed, as this Court repeatedly held, Connexus's defense is relevant to whether BSI is a proper plaintiff and there is no prejudice to BSI beyond the ordinary prejudice of facing an obstacle to recovery. And, although Connexus's firm view is that BSI must show it is a *bona fide* ISP to maintain suit, BSI contends otherwise, thereby raising "unclear questions of law." BSI failed to meet its burden to show that striking Connexus's affirmative defenses is warranted under FRCP 12(f), and the Court should deny BSI's motion for this additional reason.

### B.    THE MINI-TRIAL ISSUES ARE CLEAR

The Court should deny BSI's request that this Court stay discovery while the Court articulates the standard for proving that BSI is a *bona fide* ISP. The three Mini-Trial issues are:

> (1) whether Plaintiff Beyond Systems, Inc. is a *bona fide* "interactive computer service provider" entitled to bring suit under the Maryland Commercial Electronic Mail Act ("MD-CEMA"), Md. Code Ann., Com. Law §§ 14-3001 *et seq.*, and/or whether Plaintiff Beyond Systems, Inc. is a *bona fide* "electronic mail service provider" entitled to bring suit under California Business

> and Professions Code §§ 17529.1 *et seq.*; (2) whether Plaintiff Beyond Systems, Inc. is a *bona fide* resident of the state of Maryland within the meaning of the MD-CEMA statute; and (3) the nature of the relationship between Plaintiff Beyond Systems, Inc. and Third-Party Defendants James Joseph Wagner and Hypertouch, Inc.

(ECF No. 440.) The Court already articulated the standard for determining these issues, and the standards and related factors are clear from the proceedings in this case and in others. For example, during the hearing on Connexus's Motion for Summary Judgment, this Court stated:

> Can someone technically, technically qualify, but substantially, truly and ultimately really be in the business of litigation and not one who should be protected as a bona fide ISP, because that question really is out there and it may well be that that's a question that the trier of fact should look at, whether in fact BSI really does anything other than try and get spam and sue people. Even though it may, and this is just an argument that defendant makes, it may dress up its activity to make it look like an ISP, but that's not really what it is or what it does. So I don't hear the defendants conceding that they are an ISP in the sense that that issue is not on the table. They're saying substantially, you're not what an ISP is.
>
> ***
>
> All these interconnections [between BSI and Hypertouch] arguably suggest that that's really all these folks do, or at least substantially that's all they do, and that the rest is window dressing. I mean, I'm not saying that's the conclusion. I'm trying to frame their argument as I best understand it, and the question is could a trier of fact agree with that? Doesn't excuse the fact that spam may have been out there, but maybe the plaintiff is wrong here, that's all. It's the wrong plaintiff to be bringing suit, that's their argument.

(Ex. 1, 6/14/10 Hrg. Tr. at 22:16-23:4, 26:20-27:3.)

Similarly, at the hearing on World Avenue's motion for partial summary judgment, the Court explained that "[t]he time has come in my view to test the bona fides of the plaintiff's activities. The time has come to try these issues. The issues of whether they [BSI] are in fact in [the] business of manufacturing harm to themselves, whether they are bona fide residents in Maryland." (Ex. 2, 11/29/10 Hrg. Tr. at 84:1-5.) The Court then articulated that it would

8

bifurcate trial, and "look at the issues of the whole arrangement of BSI. That is, is BSI [a] bona fide resident of the State of Maryland. And is there, in fact, a scheme between Hypertouch and BSI." (*Id.* at 90:22-25.)

The Ninth Circuit's opinion in *Gordon* provides further clarification of these issues. *Gordon,* 575 F.3d 1040. In deciding that plaintiff was not a *bona fide* ISP, the court noted that it "expect[s] a legitimate service provider to secure adequate bandwidth and storage capacity and take reasonable precautions, such as implementing spam filters, as part of its normal operations." *Id.* at 1054. The court also looked to whether the plaintiff "hired additional personnel," "experienced technical concerns of incurred costs that can be necessarily attributed to commercial e-mail," and that plaintiff held no employment for years and had "never been compensated for any of his purported Internet services, and his only income source has come from monetary settlements from his anti-spam litigation campaign." *Id.* at 1055-56.

In deciding the three Mini-Trial Issues, this Court should consider those factors it has already articulated along with the factors the Ninth Circuit found dispositive in *Gordon*. Additional non-exhaustive factors include BSI's sources of revenues, time spent on litigation endeavors versus other alleged business activities including with Joe Wagner/Hypertouch, number of anti-spam and similar lawsuits filed (like junk-fax suits), customer base, marketing efforts, types of services provided, office locations and types, hiring of employees, bookkeeping/billing practices, accounting practices, implementation of security/fire prevention methods, efforts to prevent/stop receipt of alleged spam, compliance with applicable license and zoning requirements, and customer complaints.

Because the standards and factors associated with the Mini-Trial Issues are clear, the Court should deny BSI's motion for stay on this ground. Connexus attaches hereto a proposed

9

order setting forth the standard and factors for the Mini-Trial issues for the Court's consideration to the extent the Court is inclined to clarify such standards and factors.

### C. THE COURT, NOT A JURY, DECIDES THE MINI-TRIAL ISSUES

The Court – not the jury – should decide the Mini-Trial issues. All three issues relate to whether BSI has standing to sue under the Maryland and California statutes, standing is a "threshold jurisdictional issue" that does not concern the merits of a plaintiff's action, and courts – not juries – decide jurisdictional issues including standing. *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (subject-matter jurisdiction is "the courts' *statutory* or constitutional *power* to adjudicate the case") (first emphasis added, second emphasis in original).

"The established procedures in the federal courts for the determination of jurisdictional questions are not at variance with the prevailing procedures in the state courts. There is no right to a jury trial of disputed facts involved in the determination of a jurisdictional question." *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 859 (4th Cir. 1959); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (trial judge is authorized to resolve contested facts relating to subject-matter jurisdiction); *Webb v. Nolan*, 361 F. Supp. 418 (M.D.N.C. 1972), *aff'd*, 484 F.2d 1049 (4th Cir. 1973) ("[U]nless the Court wishes to use a jury advisorily, the issue of citizenship is not a jury issue."); *Multistack, LLC v. Arctichill, Inc.*, No. 05 Civ. 3865, 2010 WL 510506, at *3 (S.D.N.Y. Mar. 1, 2006) ("the determination of whether a plaintiff has standing to bring a particular lawsuit is a threshold question of law for the judge, not a question of fact for the jury."). The only exception to this rule is where the plaintiff's standing is so intertwined with the merits of plaintiff's claim that the two cannot be segregated. *See, e.g., DDB Techs., LLC v. MLB*

*Advanced Media, LP*, 517 F.3d 1284, 1291-92 (Fed. Cir. 2008) (plaintiff not entitled to a jury trial on standing).

The "intertwined with the merits" exception does not apply here. For example, in *Multistack*, the court held that plaintiff was not entitled to a jury trial to determine whether it met the statutory definition of a "patentee" under the Patent Act because "the determination of whether a plaintiff has standing to bring a particular lawsuit is a threshold question of law for the judge, not a question of fact for the jury." *Multistack*, 2006 WL 510506 at *3-6. Similarly, in *DDB*, the Federal Circuit held that a patent owner was not entitled to a jury trial on the jurisdictional issue of standing. *DDB,* 517 F.3d at 1291-92. There, the plaintiff argued that it was entitled to a jury trial on whether the parties' contract provided for assignment of the patents at issue (and thus, whether it had standing to sue for infringement), which it argued was intertwined with the merits of the case. *Id.* at 1291. The court held that because the standing issue required the interpretation of legal issues separate from the substantive patent law governing the infringement claim, plaintiff was not entitled to a jury trial on the issue of standing. *Id.* at 1291-92. Other courts are in accord. *See, e.g., Berardinelli v. Castle & Cooke Inc.*, 587 F.2d 37, 38-39 (9th Cir. 1978) ("[a] party is entitled to have the jurisdictional issue submitted to a jury only where the jurisdictional issue and the issue on the merits are factually so 'completely intermeshed,' … that 'the question of jurisdiction is dependent on decision of the merits.").

Here, the three Mini-Trial issues are completely separate from the merits of BSI's claims. In both California and Maryland, BSI must show it is a *bona fide* ISP to have standing and maintain suit as shown herein. Only after making this showing may BSI proceed to a completely separate merits inquiry: whether Connexus sent and/or caused to be sent false and fraudulent

emails. Thus, for purposes of determining standing (the sole issue to be decided at the Mini-Trial), whether BSI is a *bona fide* ISP is completely irrelevant to whether the emails at issue violate the substantive provisions of the anti-spam statutes. The same holds true as to BSI's standing as a *bona fide* Maryland resident (Mini-Trial issue No. 2), and BSI concedes that the Court should decide whether BSI is a *bona fide* Maryland resident but fails to explain why this issue is any different from the other two Mini-Trial issues. (Mot. at 19, n. 16). There is, in fact, no difference and the Court – not the jury – decides the Mini-Trial issues because they relate to standing.

BSI's argument that the Supreme Court in *Arbaugh* recently developed a new "bright-line" rule that holds statutory standing is always a merits issue is simply incorrect, as *Arbaugh* involved a federal statute with a separate and distinct jurisdictional provision and does not mandate empaneling a jury here.[2] In *Arbaugh*, plaintiff sued her former employer for sexual harassment under Title VII. *Arbaugh*, 546 U.S. at 503-04. The employer argued that it did not meet Title VII's definition of an "employer" and thus could not be sued under Title VII, and the trial court agreed and dismissed the case for lack of subject-matter jurisdiction. *Id.* at 504. Notably, the "employer" requirement did not appear in Title VII's separate jurisdictional provisions located at 42 U.S.C. § 2000e-5(f)(3).[3]

---

[2] BSI also relies on *Thompson v. N. Am. Stainless, L.P.*, 562 U.S. ___, 131 S. Ct. 863 (2011). Like *Arbaugh*, *Thompson* deals with the interpretation of Title VII, and it is inapplicable for the same reasons argued below. *Id.* at 865.

[3] Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), states:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district,

The Supreme Court granted certiorari, noting that "[s]ubject-matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief-a merits-related determination." *Id.* at 511 (internal quotation omitted). The Supreme Court then held that "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Id.* at 515-516. Because Title VII's definition of the word "employer" did not appear in Title VII's separate jurisdictional provision at 42 U.S.C. § 2000e-5(f)(3), the Supreme Court found that the "employer" was not a jurisdictional inquiry. *Id.* at 516.

*Partington* did not even address whether the parties were entitled to a jury trial, and nothing in that decision mandates empaneling a jury here. At issue in *Partington* was whether the phrase "person purchasing" in the 1933 Securities Act constituted a jurisdictional requirement for purposes of determining the Court's subject-matter jurisdiction. *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 339 (4th Cir. 2006). The "person purchasing" requirement did not appear in the Act's separate jurisdictional provisions located at 15 U.S.C. § 77v.[4] Applying *Arbaugh*, the Fourth Circuit held that because Congress did not clearly indicate that the provision at issue was a jurisdictional limitation, it did not curtail the "broad jurisdictional grants that otherwise apply-namely 28 U.S.C. 1331 (federal question jurisdiction) and 15 U.S.C. 77v (the jurisdictional provision of the 1933 Act)." *Id.* Therefore, the Fourth

---

such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

[4] The 1933 Act's jurisdictional provision, 15 U.S.C. § 77v, titled "Jurisdiction of Offenses and Suits," provides in pertinent part: "The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto …."

Circuit held that the district court had subject matter jurisdiction because plaintiff fulfilled the separate jurisdictional provisions in the Act.

In contrast to the statutes at issue in *Arbaugh* and *Partington*, the Maryland and California state anti-spam statutes do not contain their own jurisdictional provisions, making *Arbaugh's* "bright-line rule" inapplicable. There is nothing in either the Maryland or California statute like the jurisdictional provisions in *Arbaugh* (42 U.S.C. § 2000e-5(f)(3)) or *Partington* (15 U.S.C § 77v). Thus, because the state legislatures did not set forth jurisdictional provisions within the statutes themselves, this Court must determine whether BSI's standing is so completely intertwined with the merits that it is an issue for the jury. It is not as shown above, and the Court should decide the Mini-Trial issues.

### III. CONCLUSION

For the foregoing reasons, Connexus Corp. requests that the Court deny BSI's Motion to Strike Affirmative Defenses Related to "ISP" Standing and for Alternative Relief. Alternatively, if the Court is inclined to clarify the standards and factors relevant to the Mini-Trial issues, then Connexus requests that the Court enter the proposed order submitted herewith.

Respectfully submitted,

Dated: December 12, 2011

/s/
J. Douglas Baldridge (US DC-MD Bar No. 11023)
Lisa Jose Fales (US DC-MD Bar No. 08141)
Ari N. Rothman (US DC-MD Bar No. 17560)
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
(202) 344-4000 (phone)
(202) 344-8300 (fax)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Attorneys for Connexus Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of December, 2011, a copy of the foregoing *Connexus Corp.'s Opposition to Beyond Systems, Inc.'s Motion to Strike Affirmative Defenses Related to "ISP" Standing and for Alternative Relief* was filed electronically in accordance with the Court's CM/ECF procedures, and served upon the below-named counsel via the Court's electronic filing notification system:

Thomas M. Barba
John J. Duffy
Jeffrey E. McFadden
Roger W. Yoerges
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
tbarba@steptoe.com
jduffy@steptoe.com
jmcfadden@steptoe.com
ryoerges@steptoe.com

Anthony A. Onorato
STEPTOE & JOHNSON LLP
750 Seventh Ave., Ste. 1800
New York, NY 10019
tonorato@steptoe.com

Stephen H. Ring
Law Offices of Stephen H. Ring, P.C.
506 Main St., Suite 215
Gaithersburg, MD 20878
shr@ringlaw.com

Mike Rothman
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD 20850
mike@mikerothman.com

*Counsel for Plaintiff BSI, Inc., Joe Wagner/Hypertouch, Inc.*

John K. Roche
Barry J. Reingold
John M. Devaney
PERKINS COIE LLP
607 14th St., NW, Suite 800
Washington, DC 20005-2003
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
ROESER BUCHEIR & GRAHAM LLC
20 N. Wacker Dr.
Suite 1330
Chicago, IL 60606
dgraham@djgrahamlaw.com

*Counsel for Defendants Kraft Foods Inc. & Vict. Th. Engwall & Co.*

                /s/
Lauren E. Ingebritson