## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ ) | |
| BEYOND SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:08-cv-00409 (PJM) (CBD) |
| ) | |
| KRAFT FOODS, INC., *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| CONNEXUS CORP., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES JOSEPH WAGNER, *et al*., ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____) | |

## BEYOND SYSTEMS, INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES
## RELATED TO "ISP" STANDING AND FOR ALTERNATIVE RELIEF

Plaintiff Beyond Systems, Inc. ("BSI") respectfully files this Reply in support of its Motion to Strike Affirmative Defenses Related to "ISP" Standing and for Alternative Relief (DE #452) ("Pl. Mot. Strike").

## INTRODUCTION

BSI's motion to strike is not some disguised motion for reconsideration, as Defendants argue.  Such a motion would presuppose the existence of a definitive, formal ruling on questions of law or fact after full briefing.  In this case, however, the feature

issue for the mini-trial now scheduled for June 2012—whether BSI is a "*bona fide ISP*"—has never been fully briefed or argued on its merits.  Connexus sees no need for the Court to deal with this issue now, but that cannot be because the Court has already decided it.  There has never been a ruling, based on a thorough analysis of the Maryland and California statutes at issue, that standing turns on a plaintiff's *bona fides* as an ISP. Connexus certainly has not pointed to any such ruling in its opposition ("Def. Connexus's Br."), and the various colloquies cited by Connexus, Def. Connexus's Br. 1-3, are not equivalent to the kind of definitive, judicial analysis made after the full airing of each side's position that would provide the parties or an appellate court with the legal bases upon which a court's decision rests.  Given that this litigation is heading toward a trial on what is *presumed* to be a threshold issue, and that Defendants' latest barrage of discovery requests is directed at that issue, it is time for this Court to decide whether the "*bona fide ISP*" requirement is a requirement at all, and that is why BSI filed its motion to strike.

Likewise, if there is a *bona fide* ISP requirement under the state statutes at issue (notwithstanding the lack of any reference to such requirement in either the text or legislative history of these statutes), then the Court has yet to define what that requirement entails, leaving BSI guessing as to how the parties are to prove or disprove the issue.  Indeed, it would seem that the standard as thus far articulated is something akin to an "I know it when I see it" standard that hardly qualifies as adequate to allow BSI fairly to prepare its case.

As shown in our opening papers, contrary to the presumption on which the entirety of this litigation has recently proceeded, there is no "*bona fide ISP*" requirement under the Maryland and California statutes.  Thus, if BSI is correct, then the myriad

allegations regarding its history as a litigant and its motivations for bringing this case (its "*bona fides*") have no relevance, and the June 2012 mini-trial on that issue would be wholly unnecessary.  But if this Court disagrees, the parties still cannot effectively prepare for or conduct a trial on the "*bona fide* ISP" issue until the Court sets forth the applicable legal standard, including the factors against which BSI's business will be evaluated by the fact finder to determine whether it is a *bona fide* service provider.  This Court should thus rule, once and for all, on the legal validity of the "*bona fide* ISP" issue and, if it rejects BSI's position, clearly define the standard by which it will be measured.

## ARGUMENT

I. **THE COURT SHOULD DECIDE THE LEGAL QUESTION WHETHER THE "BONA FIDE" ISP ISSUE IS MANDATED BY THE STATE ANTI-SPAM STATUTES BEFORE PROCEEDING TO TRIAL OF FACTS BEARING ON THAT ISSUE.**

   A. **Prior Consideration Of The "*Bona Fide*" ISP Defense Has Focused Only On Disputed Issues Of Fact, Not Whether The Issue Is Valid.**

Connexus argues that BSI's motion to strike is nothing more than a retread of arguments previously made and lost.  That is wrong.  To be sure, the issue whether the Maryland and California anti-spam statutes include a *bona fide* ISP requirement has been raised by the parties and the Court on a few occasions.  But the Court has never definitely ruled as a matter of law that the statutes include this requirement.  Whenever the issue has arisen, the question has been whether the Court or jury would be able to decide it, or whether there are triable issues of fact that would preclude summary judgment for Defendants.[1]  For example, at the hearing on Defendants' motion for summary judgment

---

[1] The issue was considered during the June 14, 2010 motions hearing in the context of Defendants' motions for summary judgment, which contended that there were no disputed issues of fact and that the Defendants had established that BSI was not a "*bona fide*" ISP as a matter of law.  The Court ruled only that there were

on June 14, 2010, the Court considered whether the "*bona fide* ISP" issue raised by

Defendants implicated factual questions for resolution by a jury, asking, "Can someone

technically, technically qualify, but substantially, truly and ultimately really be in the

business of litigation and not one who should be protected as a bona fide ISP, because

that question really is out there and *it may well be that that's a question that the trier of

fact should look at*."  Hr'g Tr. 22:17-22 June 14, 2010 (emphasis added); *id.* at 26:23-25

("I'm trying to frame their argument as I best understand it, and *the question is could a

trier of fact agree with that*.") (emphasis added).

What the Court decidedly has *not* done is expressly analyze whether the question

that it believed to be "out there"—whether Maryland and California law require proof of

an ISP's *bona fides* as a prerequisite to bringing a claim for damages—is, as a matter of

law, a requirement imposed by these statutes.  BSI never conceded that it is; believes

strongly that it is not; and, through its pending motion to strike, asks the Court to decide

this issue once and for all.[2]  Indeed, given that the text and the legislative history of the

Maryland and California statutes are silent on the issue, it would seem appropriate for the

---

disputed issues of fact on this question that should be resolved by a jury, not that the state anti-spam
statutes definitively require proof that a claimant is a *bona fide* ISP.  Hr'g Tr. 26:20-27:3 June 14, 2010.

[2] That the *bona fides* of BSI are not legally relevant to its standing to enforce Maryland's and California's
anti-spam statutes was raised by BSI's counsel at the June 14, 2010, hearing:

> THE COURT:  Do you concede though that a jury listening to your litigation history and the kinds
> of facts that Mr. Baldridge recited could in fact conclude that you're not an ISP?
> MR. ONORATO:  No, your Honor, I certainly do not concede that.
> THE COURT:  No, a jury could find that.  I'm not saying you would want them to find it, but a
> jury could find that, that in fact the rest is really just a façade.
> MR. ONORATO:  I don't believe a jury could find that *because I don't believe the issue of having
> litigated* [in the past] *is relevant to the status as an ISP*.

Hr'g Tr. 26:3-14 June 14, 2010 (emphasis added).

Court to decide now whether the featured issue at the mini-trial next year is actually an issue that *anyone* should be deciding.

### B.   There Are No Procedural Obstacles To Prevent Resolution Of This Issue.

Connexus argues that a motion to strike is improper here as a procedural matter, but it is wrong once again.  If BSI is correct that the "*bona fide* ISP" issue is legally irrelevant to standing under the states' laws, then even Connexus would agree that it should be struck because it has "'no possible relation to the controversy and may prejudice the other party.'"  Def. Connexus's Br. 7 (quoting *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 909 (D. Md. 1971)).  Moreover, Connexus's suggestion that the Court should not decide the legal question presented because, in its view, the question is "unclear" and thus not proper for a motion to strike makes no sense. That the parties may disagree on an issue does not make the issue "unclear."  Moreover, BSI's position could not be clearer:  there is no basis in the text or legislative history of the Maryland and California statutes that justifies the imposition of a "*bona fide* ISP" requirement.  Citing nothing more than a single federal case (*Gordon*) that construes a different statute (the federal CAN-SPAM Act), Connexus disagrees, but that merely joins this legal issue in the classic manner that courts confront every day.  BSI merely asks that the Court decide that issue.

## II.  LIKE CONSUMER PROTECTION LAWS GENERALLY, THE FOCUS OF THE STATES' ANTI-SPAM LAWS IS DETERRENCE OF UNLAWFUL SPAMMING BY ENCOURAGING ENFORCEMENT OF THE LAW BY PRIVATE PLAINTIFFS.

The Maryland and California anti-spam laws are, fundamentally, consumer protection laws, and their principal aim is to halt the proliferation of deceptive and misleading spam.  To support its argument that these statutes implicitly include a *bona*

*fide* ISP requirement, Defendants seem to argue that the laws focus not on the prevention of unlawful spam, but rather on compensating "victims" who have been harmed by violations of the law.  *See* Def. Connexus's Br. 4.  If an ISP-plaintiff is not a "real" ISP, the argument goes, then it is not a "real" victim and could not have been an intended beneficiary of the state anti-spam statutes.  Defendants fundamentally misconstrue the purpose of these statutes.  As Maryland courts have held, the legislature's principal reason for enacting consumer protection legislation is "'to prevent [the unlawful] practices from occurring in Maryland.'"  *Blaylock v. Johns Hopkins Fed. Credit Union*, 831 A.2d 1120, 1131 (Md. App. 2003) (quoting *Consumer Prot. Div. v. Luskin's, Inc.*, 706 A.2d 102, 114 (Md. App. 1998), *rev'd in part on other grounds*, *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702 (Md. 1999)).  Imposing Defendants' "*bona fide* ISP" requirement on plaintiffs who seek to enforce these laws would undermine the legislative purpose and would be wholly incompatible with the statutes' primary objective of deterring deceptive and misleading spam.

As already shown in BSI's opening papers, the text and legislative history of the two state statutes at issue here clearly embrace these deterrence goals[3]—goals that must be distinguished from the tort law's primary objective of compensating individual victims for their injuries.  Pl.'s Mot. Strike 9-10, 12.  It would frustrate this legislative intent to

---

[3] The California Assembly highlighted the law's deterrent purpose, stating, "This bill will get at the real solution to unsolicited e-mails by allowing people to sue the advertisers of unsolicited e-mails.  S.B. 186 seeks to get to the heart of the matter by penalizing the actual advertiser of the spam e-mails.  We need to go after the companies that are profiting by these e-mails and allow recipients to hold the advertisers financially responsible."  Cal. Assemb., Comm. On Judiciary, Bill Analysis, S.B. 186 (Jun. 26, 2003). Likewise, the Maryland General Assembly rejected a narrower focus on compensating only those individual recipients that have been "harmed" by a violation, instead providing that "A practice that is prohibited by the Act violates the Act, regardless of whether a consumer in fact has been misled, deceived, or damaged as a result of the practice."  Md. Gen. Assemb., Econ. Matters Comm., Floor Rep., H.B. 915, at 2 (2002).

scrutinize the motives and litigation history of plaintiffs who sue under these laws to determine whether they have been genuinely "harmed."  Whatever may be said about the federal CAN-SPAM Act, anti-spam activists (or, as they are disparagingly referred to by Defendants, "litigation mills") are actually *encouraged* under these state laws, and there is nothing in the state statutes or cases to prove otherwise.  Indeed, courts have repeatedly held in the consumer protection context that a plaintiff's status as a "professional litigant" is *irrelevant* to its standing to sue.  *See* Pl.'s Mot. Strike 12-15.  Defendants have no answer to this line of cases other than to argue that they involve class actions, Def. Connexus's Br. 5, n.1, a point that, while generally true, is irrelevant to the central question whether BSI's *bona fides* are germane under the state statutes at issue here.

The plain meaning of the state statutes is what governs in this case, and nothing in the legislative history of those statutes suggests that the Court of Appeals' adoption of a "*bona fide* ISP" requirement in *Gordon* should be the law here.[4]  Likewise, there is nothing "absurd" about not imposing the same requirements found under federal law. *See* Def. Connexus's Br. 4-5.  Given that California and Maryland were concerned first

---

[4] Connexus mischaracterizes several cases cited by BSI in its motion, cases which, in upholding a plaintiff's standing under California's anti-spam statute, adopted a plain-meaning approach.  *See* Pl.'s Mot. Strike 10-12.  Despite Connexus's claims, Def. Connexus's Br. 5 n.1, the cited cases are relevant to the issue before this Court.  In each case, the Court confirmed that the standing requirements under § 17529.5 are distinct from CAN-SPAM's, and rejected the Defendant's claim that a plaintiff who would lack standing under CAN-SPAM may not bring an action under State law.  *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 940 n.4 (N.D. Cal. 2009) ("Defendants' arguments that plaintiffs were not 'recipients' under Section 17529.5, or that plaintiffs lack standing under the *federal* CAN-SPAM, are irrelevant because plaintiffs' claims are based on their alleged status as email service providers under state law.");  *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763, at * 13-14 (N.D. Cal. Apr. 1, 2010) (recognizing "the difference in standing conferred by section 17529.5 and the CAN-SPAM Act" and noting that "By eschewing the standing requirements of the CAN-SPAM Act, section 17529.5 allows a broader scope of plaintiffs . . . to bring suit against email advertisers"); *Hoang v. Reunion.com*, No. C-08-3518 MMC, 2010 WL 1340535, at *3 (noting that CAN-SPAM and state anti-spam laws, including section 17529.5, differ as to "the types of parties who may bring a suit thereunder").

and foremost with stopping the kind of spam that Defendants disseminate, it hardly would "shock the conscience"[5] to confer standing on parties who sue frequently to stop this scourge on the Internet.  To the contrary, reliance on sophisticated, "professional" plaintiffs to enforce these laws is fully consistent with and furthers the legislature's goals.[6]

Finally, consistent with its prior ruling as to the scope of CAN-SPAM's preemption clause,[7] this Court also should reject Kraft's argument that the federal CAN-SPAM law preempts state private rights of action that may be broader than those afforded under CAN-SPAM.  DE# 455, Kraft Defendants' Opposition ("Def. Kraft's Br") at 3-7.  First, neither the text nor the legislative history of CAN-SPAM'S preemption clause makes any reference to the methods that states may choose to enforce state law.  15 U.S.C. § 7707(b)(1) (2006) (providing that CAN-SPAM preempts state laws regulating spam email "except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic email or information attached thereto").  Rather, Congress restricted *only* the substantive scope of conduct that states may regulate, but it left states free to determine how their laws' prohibitions should be enforced.

---

[5] *Hillman v. Internal Revenue Serv.*, 250 F.3d 228, 232 (4th Cir. 2001) (specifying the standard for application of the canon, and quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000)).

[6] Connexus's reference to Judge Gould's concurring opinion in *Gordon* is another way of phrasing this same argument and should likewise be rejected.  The majority in *Gordon* did not adopt Judge Gould's approach, but instead made clear that the Court was constrained by CAN-SPAM's text and legislative history.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1049-52 (9th Cir. 2009); *see* Pl.'s Mot. Strike 9.

[7] *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 538 (D. Md. 2006) ("[P]roviding a civil remedy to the individual recipient of unwanted commercial electronic mail or to a third party without whose permission its Internet domain name or electronic mail address was used, or to an ISP provider is fully in harmony with CAN-SPAM's enforcement mechanisms.").

Second, every federal district court presented with Kraft's argument has rejected it. For example, the Northern District of California has held that "[i]t would be both unnecessary and disingenuous to attempt to impose parity in the standing provisions between the two statutes, by imposing a narrow reading on Congress's express reservation of this right for the states." *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *14 (N.D. Cal. Apr. 1, 2010); *see* Pl.'s Mot. Strike 11.[8] CAN-SPAM's preemption clause does not require that states enact standing requirements identical to the federal enforcement scheme, and Kraft cannot point to anything in CAN-SPAM's text, legislative history, or interpretive case law suggesting otherwise.

Third, the cases cited by Kraft only magnify the flaw in its argument. *See* Def. Kraft's Br. 8. These cases address CAN-SPAM's preemption provision *only* with reference to whether a state law prohibits "falsity or deception" in emails—in other words, whether the statutes at issue conformed to CAN-SPAM's restriction of the *substantive conduct* that states may regulate. These cases do not support Kraft's argument that the preemption clause also limits the scope of private enforcement that states may adopt.

Relatedly, and also mistakenly, Kraft argues that the state statutes in this case implicitly support a requirement of "adverse effects" for private standing, because the statutes provide different damages for service providers versus residents. *See* Def. Kraft's Br. 6-8. The answer to this argument is that it is completely contrary to the text

---

[8] If Kraft's argument were valid, then the states' causes of action in favor of individual e-mail recipients would also be preempted, because "recipients" are not permitted to bring claims under the federal statute. This Court has already rejected that argument in *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 538 (D. Md. 2006).

and legislative histories of the statutes, which *expressly* state that there is *no* requirement

of harm in order to maintain an action.  Pl.'s Mot. Strike 6, 8-10.  The statutes could not

be clearer on this point.  That damages for e-mail recipients are measured differently

from damages for ISPs is, in the end, meaningless here.

## III.   CONNEXUS'S ARGUMENT THAT THE APPLICABLE LEGAL STANDARDS FOR THE MINI-TRIAL ARE ALREADY CLEAR IS WITHOUT MERIT.

Even if proof that BSI is a "*bona fide* ISP" is required, no one can genuinely

contend, as Connexus does, that the governing standards have been clearly articulated.

With all due respect, the Court's discussion from the bench at the June 14, 2010 hearing,

cited at length by Connexus, Def. Connexus's Br. 7-9, does not provide the kind of clear

guidance that the parties would need to develop the evidence to prove or disprove this

issue.  *See* Hr'g Tr. 22:17-23 June 14, 2010.  If BSI's obligation at the threshold to

pursue a claim turns on whether it is a *bona fide* ISP, then BSI has the corresponding

right to know what standard will be used to judge that matter.  Must BSI have a huge

payroll and high rent payments to prove that it is a "real" business?  Must BSI own its

own equipment and have thousands of email subscribers to qualify as a *bona fide* ISP?  Is

it necessary that it have never harbored any desire to recover damages for the deceptive

spam that the Connexuses of the world disseminate on the Internet?  Until clear standards

are articulated, BSI is essentially flying blind, and that is, frankly, unfair.

Connexus's suggestion that this Court should fashion a standard that adopts, *in

toto*, all of the factors from the *Gordon* opinion also solves little.  The *Gordon* opinion

identified two components of standing under the Federal CAN-SPAM Act:  (1) that the

plaintiff be a *bona fide* ISP, and (2) that the plaintiff demonstrate that it was "adversely

affected" by the violation, as required by CAN-SPAM's text.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1052-55 (9th Cir. 2009).  *Gordon*, however, categorized several of the factors identified now by Connexus as relevant only to this *second* prong of CAN-SPAM standing—that the plaintiff must be "adversely affected" by a violation.[9]  *See Gordon*, 575 F.3d at 1053-56.  Neither of the state statutes in this litigation includes any requirement of "adverse effects," and any of the factors that pertain to this issue are plainly inapposite.

The remaining factors proposed by Defendant, *see* Def. Connexus's Br. 9; Def. Connexus's Proposed Order, lack any basis in what the Maryland and California *legislatures* deemed relevant to an email service provider's or interactive computer service provider's standing:  the nature of the email and computing services provided.[10] BSI maintains that only these legislatively-prescribed considerations are relevant to a plaintiff's standing under these laws.  Should this Court disagree and decide instead to create a "*bona fide* ISP" requirement, only the Court can and should decide which (if any) of these factors should be relevant to that inquiry, and BSI's motion merely seeks guidance on that issue now.

---

[9] Among the factors limited to CAN-SPAM's "adversely affected" prong cited by Connexus are the extent to which BSI "secure[d] adequate bandwidth and storage capacity," "[took] reasonable precautions, such as implementing spam filters, as part of its normal operations," and "hired additional personnel" and "experienced technical concerns of incurred costs" related to spam.  Def. Connexus's Br. 9.  Each of these factors is drawn from the portion of *Gordon* that addressed the harms necessary to support standing under CAN-SPAM's textual "adversely affected" prong, not its elaboration of the "*bona fide*" requirement. *Gordon*, 575 F.3d at 1054.

[10] To name but one example, Connexus contends that a jury should consider whether BSI adopted adequate "security/fire prevention methods" before permitting BSI to maintain suit as "*bona fide* ISP."  One can only wonder where they came up with such a standard.

IV. **BECAUSE STATUTORY STANDING IMPLICATES THE MERITS OF BSI'S CLAIM, A JURY MUST RESOLVE DISPUTED FACTS RELATED TO BSI'S STATUS AS AN INTERACTIVE COMPUTER SERVICE PROVIDER AND EMAIL SERVICE PROVIDER.**

Connexus argues that all standing issues in this case should be resolved by the Court, not by a jury, because they are jurisdictional. The matter is not quite so easily decided, as we showed in our opening papers. Pl.'s Mot. Strike 19-21. Where the statutory standing provision at issue is "an ingredient of the claim for relief" and does "not clearly indicate [that it is] a jurisdictional limitation," the Supreme Court's holding in *Arbaugh* controls, and the statutory standing requirement is deemed to be an element of the plaintiff's claim that implicates the jury trial right. 546 U.S. 500, 515-16 (2006). Thus, the analysis turns strictly on the question whether the statutory provision at issue speaks in jurisdictional terms, and the existence of a separate jurisdictional provision within the statute has no bearing on the question.[11]

Here, the Court has subject-matter jurisdiction pursuant to the federal diversity jurisdiction statute, 28 U.S.C. § 1332 (2006), and the standing provisions of the state statutes at issue do not themselves address jurisdiction. Under the Fourth Circuit's decision in *Partington* and the Supreme Court's decision in *Arbaugh*, the only relevant question is whether the statutory standing provisions in Md. Com. Law § 14-3003 and Cal. Bus. & Prof. Code § 17529.5(b)(1)(A) expressly address jurisdiction. They do not,

---

[11] Connexus misreads both *Partington* and *Arbaugh* to turn on the fact that the statutes in those cases also included separate jurisdictional provisions. Def. Connexus's Br. 12-14. The courts' holdings were not dependent on that fact. Rather, *Arbaugh* made clear that the issue was whether the statutory provision speaks in jurisdictional terms; only if it does may the court treat the required element as jurisdictional. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) (holding that when the legislature "does not rank a statutory limitation on coverage as jurisdictional, courts should treat that restriction as non-jurisdictional in character").

and thus the law requires this Court to treat the issue as part of the merits of BSI's claim, with disputed facts to be resolved by a jury.[12]

---

[12] Connexus also contends that this Court is bound to treat BSI's status as a "*bona fide* ISP" as jurisdictional because it is "no different" from the residency issue and, it suggests, residency is a jurisdictional issue under the statutes.  Regardless of how the parties have characterized other issues, the law requires that BSI's statutory standing is an element of its claim on the merits.  And to the extent that the Court views the residency issue as another element of BSI's statutory standing then it, too, should be decided by a jury to the extent that there are issues of fact that are in dispute.

In any event, BSI has filed a separate motion for summary judgment on the element of residency, which will show that there are no genuine issues of material fact as to that element, because the applicable law defines "residency" as the State in which BSI is incorporated and pays taxes:  Maryland.  Thus, any inquiries into the state in which BSI's officers reside or the fact that some of BSI's operations can be managed remotely are not relevant to the determination of BSI's residency, even if those facts are disputed.

## CONCLUSION

For these reasons, the Court should grant BSI's motion.


Date:  December 22, 2011

Respectfully submitted,


_____/s/_____

Thomas M. Barba (D. Md. Bar No.
28487)
Roger W. Yoerges (D. Md. Bar No.
14088)
Jeffrey McFadden (D. Md. Bar No.
8738)
John J. Duffy (D. Md. Bar No. 28613)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
ryoerges@steptoe.com
jmcfadden@steptoe.com
jduffy@steptoe.com


Anthony A. Onorato (D. Md. Bar No.
28622)
STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, NY  10019
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

*Counsel for Plaintiff Beyond Systems,*
*Inc. and Third-Party Defendants James*
*Joseph Wagner and Hypertouch, Inc.*

*Of Counsel:*

Stephen H. Ring (USDC-MD Bar No.
00405)
Law Offices of Stephen H. Ring, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland  20878
T: 301-563-9249
F: 301-563-9639
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No.
14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

*Counsel for Plaintiff Beyond Systems,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of December, 2011, the foregoing BEYOND SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES RELATED TO "ISP" STANDING AND FOR ALTERNATIVE RELIEF was served electronically via the Court's CM/ECF system upon the below-named parties:

Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington, D.C.  20005-2003
(202) 434-1613 (Telephone)
(202) 434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

Darrell J. Graham
ROESER, BUCHEIT & GRAHAM
LLC
20 N. Wacker Dr.
Chicago, IL 60606
(312) 922-1200
dgraham@rbglegal.com

*Counsel for Defendant Connexus Corp.*

*Counsel for Defendants Kraft Foods Inc., Kraft Foods Global and Vict. Th. Engwall & Co.*

_____/s/_____
Jennifer M. Newton