## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:08-cv-00409 (PJM) (CBD) |
| | ) | |
| KRAFT FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CONNEXUS CORP., *et al.*, | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES JOSEPH WAGNER, *et al.*, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

_____

## JOINT OPPOSITION OF PLAINTIFF BEYOND SYSTEMS, INC. AND THIRD-PARTY DEFENDANT HYPERTOUCH, INC. TO CONNEXUS CORP.'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Plaintiff Beyond Systems, Inc. ("BSI") and Third-Party Defendant Hypertouch, Inc.

("Hypertouch") respectfully submit this joint opposition to Defendant Connexus Corp.'s

("Connexus") Motion to Compel and for Sanctions.

## INTRODUCTION

From its base camp at the foot of the mountain of discovery BSI has produced in this

action both recently and over the last four years, Connexus makes an unnecessary, premature,

wasteful, and baseless motion to compel on three thin strands of marginal and cumulative

discovery: the amount of consideration BSI received in settlement of the World Avenue

1

litigation, the confidential Settlement Agreement itself between World Avenue and BSI, and Connexus's vague and redundant interrogatory regarding "lawsuit collaboration." (Yes, these are the only outstanding discovery matters that are supposedly in "dispute" and thus require BSI, Hypertouch, and this Court to waste time and resources addressing and resolving them.) To the extent that this information is even relevant to the three Mini-Trial issues, a question that will be resolved once and for all after the hearing on BSI's motion to strike in mid-March, it is entirely cumulative of the extensive discovery that Connexus has already taken – and that BSI has worked hard and in good faith to provide – on the Mini-Trial issues.

From the outset of producing each and every document it previously produced in the World Avenue litigation relevant to the Mini-Trial issues, and of then producing additional documents and responses to even more discovery requests served by Connexus, it was quite clear to BSI that no matter how diligently and in good faith it tried to comply with Connexus's requests, there would inevitably be a few, *de minimus* loose ends upon which Connexus would seize to engage in yet another round of discovery motions practice consistent with its scorched earth litigation strategy, actions for which *Connexus*, not BSI, should be sanctioned. Indeed, this manufactured dispute is exactly what BSI sought to avoid by seeking a modest modification to the scheduling order, DE # 469, that would have postponed the hearing on any motion to compel until after the Court's ruling on BSI's motion to strike. Yet even if, in the wake of that ruling, the additional discovery sought here might prove to have some marginal, probative value, any such value is substantially outweighed by the prejudice that disclosure would work on BSI, Hypertouch, and World Avenue, particularly with respect to piercing the confidential settlement agreement among those parties. Finally, with respect to the fourth category of documents in Connexus's motion – the under-seal filings – BSI has made clear to Connexus that it has no

intention of withholding them, that it has produced many of the relevant filings already, and that it is in the process of reviewing the remaining filings and producing those that are relevant to the Mini-Trial issues.  There is thus no controversy requiring judicial involvement, and Connexus's motion to compel production of the under-seal filings, like the entirety of its motion, is a waste of this Court's and all of the parties' time and resources and should be summarily denied.

## I.  ARGUMENT

### A.  Legal Standard

Fed. R. Civ. P. 26(b)(1) "limits discovery to 'any matter, not privileged, that is relevant to the claim or defense of any party.'"  *Equal Rights Ctr. v. Archstone-Smith Trust*, 251 F.R.D. 168, 170 (D. Md. 2008).  Fed. R. Civ. P. 26(b)(2)(C) permits the Court to restrict discovery of otherwise allowable information if it determines that "the discovery sought is unreasonably cumulative or duplicative," or that the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *See also E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-0984, 2012 WL 380048, at *1 (D.Md. Feb. 3, 2012) (noting that the Rule "requires [a] Court to balance various factors to determine the reasonable extent of discovery in a given case").

### B.  In Light of the Voluminous Discovery It Has Already Taken, Connexus's Demand for Discovery of the Amount of the World Avenue Settlement is Unduly Cumulative and Unjustified.

Connexus has been taking discovery from BSI concerning the issues now slated for resolution at the Mini-Trial for four years.  After this Court issued its Order on October 24, 2011 (DE # 440) setting this case for a bifurcated trial on the three Mini-Trial issues, Connexus

obtained *still more* discovery from BSI.  In addition to its responses to Defendants' written discovery requests, BSI has now produced to Connexus all materials that BSI and Hypertouch produced to World Avenue concerning the Mini-Trial issues, both prior to and following the Court's bifurcation of that case.[1]  Quite simply, BSI has given Connexus virtually everything it has asked for that has any conceivable relevance to the Mini-Trial issues.  This is evidenced by following summary of all discovery that has taken place in this action, much of which pertains to the Mini-Trial issues:

- 11 sets of interrogatories, totaling 37 requests with at least 53 subparts;

- 13 sets of requests for production, totaling 138 requests with at least 18 subparts, and in response to which BSI has produced over 100,000 pages of material;

- 5 sets of requests for admission, totaling 148 requests;

- 19 days of deposition of fact and expert witnesses, including 6 days with Paul Wagner and more than 2 days with Joe Wagner;

- 5 subpoenas for documents and depositions

And yet, all of this is still not enough for Connexus.  Despite BSI's extraordinary diligence and good faith in discharging its discovery obligations, Connexus continues to overreach by demanding that BSI disclose the amount of consideration that it received only late last year in settlement of its claims against World Avenue.  But the supposed "relevance" of such information does not justify piercing the confidentiality of the World Avenue settlement, for at least two reasons.  First, as set forth in its Motion to Strike, BSI strongly contests the notion that its prior litigation under the spam laws has any relevance whatsoever to its status as an

---

[1] In the absence of definitive guidance on the scope of the Mini-Trial issues, BSI has generally erred on the side of over-inclusiveness in makings its productions.

interactive computer or email service provider under the Maryland and California statutes, and the merits of that position are now squarely before the Court.[2]  Second, notwithstanding this position, BSI has produced its complete litigation revenues and costs for the years 2004-2010, along with a substantial number of source documents backing these figures, such as checks, bank statements, and income tax returns.  This information is more than sufficient to allow Connexus to prepare its case, while preserving the confidentiality of the World Avenue settlement.  In similar fashion, BSI has also produced a complete accounting of its non-litigation revenues and expenditures for the same period: 2004-2010.

Given that Connexus has already compiled detailed evidence indicating the proportion of BSI's litigation to non-litigation revenues for the years 2004-2010, Connexus's demand for the World Avenue settlement figure is unduly cumulative, does little or nothing to augment Connexus's proof of its case, and does not begin to justify the chilling effect that such disclosure would have not only on the parties' ability to settle this case, but also on many future cases coming before the Court.  Simply stated, to the extent that the 2011 information is even marginally probative, its value is *de minimus* and greatly outweighed by the prejudice that BSI and World Avenue would suffer from being compelled to disclose such a key term of their confidential settlement agreement.[3]  *Chrysler Corp. v. Superior Dodge, Inc.*, 83 F.R.D. 179, 193 (D. Md. 1979) (holding that documents which had not been produced in an earlier trial were cumulative of data that had been produced to the plaintiff, and thus were not necessary to the plaintiff's proof in that action); *see also Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 465 (D.

---

[2] The Court originally scheduled a hearing on BSI's motion for March 8, 2012, which has since been rescheduled to take place sometime in mid-March.  ECF No. 477.

[3] Connexus disingenuously suggests that it would be unable to ascertain the exact amount of the World Avenue figure if BSI discloses its 2011 revenue in an aggregate figure.  This, of course, is wrong.  First of all, disclosure of the aggregate total would still provide Connexus with an upper limit as to the amount of the World Avenue settlement, which is itself an unacceptable breach of the agreement's confidentiality.  Second, given that BSI has produced its entire litigation history to Connexus, Connexus is well aware of BSI's litigation involvement in 2011, and thus will easily deduce that the aggregate figure is entirely attributable to the World Avenue settlement.

Md. 2000) (holding that exclusion of additional cumulative evidence under Fed. R. Evid. 403 was proper, where plaintiff was permitted to present "a great deal" of evidence in support of its spoliation claim).  The Court should therefore deny Connexus's motion to compel.

> **D.  Other Information that Connexus Seeks in the Settlement Agreement is Not Probative of any Mini-Trial Issue.  Even if it were, it is Also Cumulative, and Thus the Need for Disclosure is Outweighed by the Parties' Interests in Confidentiality and the Judicial Policy of Encouraging Settlements.**

Even if this Court holds that BSI's *litigation revenue* (including that from the World Avenue settlement) is probative of its status as an interactive computer service provider and must be produced, Connexus's additional demand for production of the *settlement agreement itself* is completely unnecessary.[4]  Each of the reasons Connexus provides for a supposed need not only for the entirety of the settlement agreement itself, but all schedules, and all documents related to the settlement, are without merit.

First, Connexus contends that it needs the entire agreement to discover the settlement consideration received by BSI.  This, of course, is untrue.  Should the Court order BSI to disclose its revenue from the World Avenue settlement, BSI can easily do so without having to produce the confidential settlement agreement itself.

Second, Connexus contends that the settlement agreement is relevant to the third Mini-Trial issue to the extent that it indicates whether Hypertouch or Joe Wagner were also parties to that agreement.  Def. Mot. Compel 5.  Once again, production of the Settlement Agreement itself would not shed any light on the Mini-Trial issues beyond the information already in Connexus's

---

[4] Contrary to Connexus's assertion, this Court has *never* issued an order requiring BSI to disclose a settlement agreement.  The hearing excerpt cited by Connexus, Def. Mot. Compel 4, did not order the disclosure of settlement agreements; in that hearing, Magistrate Judge Day simply ruled that BSI was required to produce some documentation of the financial figures it had disclosed, and listed deposits of settlement checks, check stubs, settlement agreements, judgments, accounting records, and bank statements as examples of documents that would suffice.  Def. Mot. Compel, Ex. C, 7/15/11 Hrg. Tr. 41:15-19.  It is clear that this was not a ruling requiring BSI to disclose settlement agreements, but simply a ruling that BSI was required to produce some form of documentary proof of the revenue figures that it had calculated.

possession.  BSI has already provided extensive discovery on the nature of the routing relationship between Hypertouch and BSI, including the depositions of Paul Wagner in this case and the deposition of both Paul and Joe Wagner in the World Avenue litigation (which have now been produced to Connexus).  Ex. 1.  The Settlement Agreement and related documents simply do not provide any insight into the technical details of the email routing relationship or the reasons for the existence of that relationship, and they certainly do not provide any information that has not already been disclosed elsewhere.  And, to the extent that Hypertouch's privity to the settlement agreement is at all relevant to that issue, Connexus acknowledges in its brief that BSI has *already disclosed* that fact to Connexus in discovery.  Def. Mot. Compel 4.  Thus, Connexus has failed to offer any justification for piercing the confidentiality of the agreement.

Third, Connexus contends that disclosure of the settlement agreement is necessary to reveal whether or not "the parties contemplated any form of prospective relief relating to World Avenue's future conduct," or if instead "BSI merely sought to recover monetary relief."  This supposed defense theory is simply preposterous given the conduct of this case since its inception, and cannot possibly justify production of the settlement agreement.  There can be no question concerning BSI's motives in this case, and thus no basis for rank surmise that BSI's motives have differed in any other case.  BSI has repeatedly complained to Defendants during the course of this litigation that, despite suing them, and despite repeatedly making clear that it wants their spamming to stop, it has *continued to receive their spam*.  To cite just one example, when Connexus sought to exclude thousands of additional emails from this case, counsel for BSI argued that Connexus was hardly in a position to complain about the addition of the emails given the fact that it sent them despite BSI's previous clear and unambiguous efforts to stop them.  *See* Ex. 3, DE # 153, Def. Mot. Pursuant to R. 37(c), at 2 (objecting to BSI's statement that its claims

"are ongoing and include e-mails that may be received as Defendants may continue to send them"); Ex. 4, DE #170, Pl. Opp'n to Def. Mot. Pursuant to R. 37(c), at 2 (noting that BSI received more than 18,000 emails linked to one of the defendants months *after* it had filed suit). BSI should not be required to breach the settlement agreement's confidentiality provisions solely to disprove Connexus's absurd claim that BSI lacks any genuine interest in halting the flow of spam to its mail servers.

Finally, even where a settlement agreement contains information that is relevant to a party's claim, production will not be required where "the harm [the resisting party] would suffer from the disclosure outweigh[s] the legitimate benefits of such disclosure or [where] such disclosure otherwise impose[s] an 'undue burden.'" *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Syst., Inc.*, No. 1:05CV955, 2011 WL 2470460, at *15 (N.D.N.C. June 20, 2011). This Court strongly encouraged BSI and World Avenue to reach a settlement of the lawsuit, and both sides worked diligently to reach a confidential agreement in settlement of BSI's claims against World Avenue.  The parties relied heavily on the confidentiality provision when entering that settlement.  Connexus has failed to advance any compelling reason why the cumulative information it hopes to obtain from disclosure of the Settlement Agreement outweighs the compelling interests of both BSI and World Avenue in preserving the confidentiality of that agreement.

As courts throughout the Fourth Circuit have reasoned, maintaining the confidentiality of settlement agreements is essential to advancing the goals of judicial economy by encouraging parties to settle their disputes without going to trial.  *Stephens v. County of Albermarle*, 422 F. Supp. 2d 640, 644 (W.D. Va. 2006) ("[C]onfidentiality may be of paramount concern to the parties, especially where one side fears that publicity of a settlement might encourage further

litigation.  Subjecting a settlement to terms of confidentiality can play an important role in allaying those concerns, thereby facilitating settlement and avoiding protracted litigation.").  For this reason, district courts within the Fourth Circuit have frequently denied proponents' attempts to discover confidential settlement agreements.  *See, e.g.*, *Cason v. Builders FirstSource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 249 (W.D.N.C. 2001) (holding that the plaintiff was not entitled to discovery of past settlement agreements involving the defendant, and recognizing that parties might be discouraged from settling disputes if they believe that such settlement agreements might be subject to disclosure to third parties); *Wolfe v. Nat'l Med. Care, Inc.*, No. 2:07-0115, 2009 WL 1755127, at *4 (S.D. W.Va. June 17, 2009); *Pennington v. Midland Credit Mgmt., Inc.*, No. 1:10cv112, 2010 WL 3187955, at *1-2 (E.D. Va. Aug. 9, 2010); *Mears Group, Inc. v. L.A. Pipeline Constr. Co., Inc.*, No. 3:08-CV-329, 2009 WL 77864, at *10 (E.D. Va. Jan. 7, 2009).  Connexus has not offered any justification for disclosure that overrides the paramount interests in maintaining the confidentiality of settlement agreements, and so its motion should be denied.

### E.  Connexus's Interrogatory Concerning "Lawsuit Collaboration" is Beyond the Scope of the Third Mini-Trial Issue and is Duplicative of Prior Discovery.

Connexus seeks to compel a further response[5] to its Interrogatory concerning BSI's and Hypertouch's "collaboration on threatened, potential, and actual lawsuits."[6]  Def. Mot. Compel 7.  As BSI set forth in its Motion to Strike, BSI (and indeed all of the parties) continues to seek definitive guidance on what the third Mini-Trial issue actually means.  As BSI understands it, the issue concerns the nature of the routing relationship between BSI and Hypertouch – specifically,

---

[5] BSI and Hypertouch already served supplemental responses to this Interrogatory to Connexus on February 3, 2012, the same day that Connexus filed its motion to compel.  Ex. 2.

[6] The text of Connexus's actual interrogatory is somewhat more convoluted.  *See* Def. Mot. to Compel, Ex. G at Interrogatory No. 1.

whether the emails on which BSI is suing were routed to it by Hypertouch in the normal course

consistent with the ISP service that Hypertouch provided to BSI – or  if instead the routing

relationship was somehow configured for the purpose of manufacturing claims.  BSI has already

provided an enormous amount of discovery on this issue, and has explained to Connexus

repeatedly its view that the information sought regarding lawsuit collaboration goes beyond the

scope of Mini-Trial issue #3 and, further, that any dispute regarding such scope should logically

follow this Court's ruling given that the dispute would simply become moot.  But rather than

wait for the Court to provide guidance, Connexus instead moved to compel a response on a

*single* outstanding Interrogatory.  Once again, Connexus has burdened the Court (and BSI) by

creating unnecessary, premature controversy.

Moreover, even if Connexus's view of the scope of Mini-Trial issue #3 is correct,

Connexus has already obtained extensive discovery on the issue.  As BSI and Hypertouch

explained in their supplemental responses to this Interrogatory, previous discovery as to whether

Paul and Joe Wagner provided any assistance to each other regarding spam litigation includes the

various depositions of Paul Wagner and the World Avenue deposition of Joe Wagner, Ex. 1, as

well as various email communications between Joe and Paul Wagner that have been produced to

Connexus in this litigation.  In their supplemental responses, BSI and Hypertouch acknowledged

that Paul Wagner and Joe Wagner have occasionally assisted each other with regard to litigation

by conducting the analysis required to identify whether spam came from a particular defendant,

and thus have provided an appropriate and reasonable answer to Connexus's Interrogatory.

Connexus's attempt to compel additional and cumulative discovery on this issue should be

denied.

**F.  BSI is Not Withholding Relevant Documents Filed Under Seal in the World Avenue Litigation.**

There is no genuine controversy concerning the under-seal filings that Connexus demands in its motion, and Connexus's assertion that BSI is "withholding" these documents is false.  As it has already made clear to Connexus, BSI has *no intention of withholding production* of these documents.  BSI has already produced some of the filings, and is in the process of producing the remaining under-seal filings that are relevant to the Mini-Trial issues.  Most if not all of the under seal material comprises documents that were produced or served by BSI in the World Avenue litigation, and because BSI has already completed its production to Connexus of its documents from the World Avenue case, the vast majority of the contents of these filings have almost certainly been produced to Connexus already.  Nonetheless, in an effort to avoid needless controversy, BSI is now working diligently (and expending additional resources) to produce the remainder of the under seal filings, and expects to complete that production by March 2, 2012.  Thus, there is no need for judicial involvement, and Connexus's motion to compel on this point is baseless and a waste of the Court's time.

**G.  BSI and Hypertouch Should Not be Sanctioned for Making Valid Objections to Defendants' Discovery Requests in a "Dispute" that is Largely the Product of Connexus's Deliberate, Premature Timing.**

Connexus's motion for sanctions under Fed. R. Civ. P. 37(a)(5)(A) is  meritless.  The Rule expressly provides that sanctions should not be entered if "the opposing party's nondisclosure, response, or objection was substantially justified."[7]  For the reasons set forth above, BSI and Hypertouch plainly were "substantially justified" in resisting Connexus's irrelevant and cumulative discovery demands and unjustified intrusion into the confidential World Avenue Settlement.  Moreover, and questions of the cumulative nature of the requested

---

[7] "An individual's conduct is found to be 'substantially justified' if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'"  *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 515 (D. Md. 2010) (quoting *Burkett ex rel. Estate of Burkett v. AIG Claim Servs., Inc.*, 244 F.R.D. 328, 330 (N.D. W.Va. 2005)).

information aside, the dispute arising over the scope of the three Mini-Trial issues, and thus over the relevance of the requests at issue here, is indeed genuine and is the subject of a hearing in mid-March.   Given the *de minimus* nature of the three narrow demands at issue, Connexus could, and *should*, have awaited the Court's ruling on BSI's motion to strike, and further, should have provided BSI with the opportunity to supplement its responses based on that ruling, before wasting this Court's and BSI's time and resources with a needless, premature motion.   If anything, Connexus is the party that has behaved improperly by seeking sanctions on the basis of BSI's and Hypertouch's legitimate resistance to these disclosures.   The Local Rules expressly provide that motions for sanctions should not be filed as a matter of course, as Connexus has apparently done here.   L.R. 105(8)(a).   Connexus would do well to remember that the Local Rules also permit the Court to impose sanctions on parties who file unjustified sanctions motions.

**CONCLUSION**

For the foregoing reasons, Connexus's motion to compel should be denied.


Date:  February 21, 2012                          Respectfully submitted,


_____/s/_____              *Of Counsel:*
Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)      Stephen H. Ring (USDC-MD Bar No. 00405)
Jeffrey McFadden (D. Md. Bar No. 8738)       Law Offices of Stephen H. Ring, P.C.
John J. Duffy (D. Md. Bar No. 28613)         506 Main Street, Suite 215
STEPTOE & JOHNSON LLP                         Gaithersburg, Maryland  20878
1330 Connecticut Ave., NW                     T: 301-563-9249
Washington, D.C.  20036                       F: 301-563-9639
T: 202-429-3000                               shr@ringlaw.us
F: 202-429-3902
tbarba@steptoe.com
ryoerges@steptoe.com                          Mike Rothman (USDC-MD Bar No. 14568)
jmcfadden@steptoe.com                         Law Office of Michael S. Rothman
jduffy@steptoe.com                            401 E. Jefferson Street, Suite 201
                                              Rockville, MD  20850
                                              T: 301-251-9660
Anthony A. Onorato (D. Md. Bar No. 28622)    F: 301-251-9610
STEPTOE & JOHNSON LLP                         mike@mikerothman.com
750 Seventh Avenue
New York, NY  10019                           *Counsel for Plaintiff Beyond Systems, Inc.*
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com


*Counsel for Plaintiff Beyond Systems, Inc. and*
*Third-Party Defendants James Joseph Wagner*
*and Hypertouch, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2012, the foregoing

JOINT OPPOSITION OF PLAINTIFF BEYOND SYSTEMS, INC. AND THIRD-PARTY

DEFENDANT HYPERTOUCH, INC. TO CONNEXUS CORP.'S MOTION TO COMPEL

DISCOVERY AND FOR SANCTIONS was served via U.S. and electronic mail on the below-

named parties:

Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
607 14th Street NW, Suite 800
Washington, D.C.  20005-2003
(202) 434-1613 (Telephone)
(202) 434-1690 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
ROESER, BUCHEIT & GRAHAM
LLC
20 N. Wacker Dr.
Chicago, IL 60606
(312) 922-1200
dgraham@rbglegal.com

*Counsel for Defendants Kraft Foods
Inc., Kraft Foods Global and Vict. Th.
Engwall & Co.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge @venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus
Corp.*

/s/
Jennifer M. Newton