# Exhibit 1

DEPOSITION OF DAVID SHIN
CONDUCTED ON MONDAY, OCTOBER 5, 2009

1 (Pages 1 to 4)

### Page 1

```
 1    UNITED STATES DISTRICT COURT
 2      FOR THE DISTRICT OF MARYLAND
 3
 4   BEYOND SYSTEMS, INC., ) Case No.
 5        Plaintiff,  ) 8:08-CV-00409 (PJM)
 6   vs.              )
 7   KRAFT FOODS, INC.,  )
 8   et al.,          )
 9        Defendants.  )
10
11
12
13         DEPOSITION OF DAVID SHIN
14          MONDAY, OCTOBER 5, 2009
15              9:33 A.M.
16
17
18
19
20
21   Job No.: 24-165063
22   Pages 1 - 279
23   Reported by:
24      JENNY S. BOOKER
25      RPR, CSR No. 9237
```

### Page 2

```
 1        Deposition of DAVID SHIN, the witness, taken on
 2   behalf of the Defendants Connexus Corp. and Hydra LLC,
 3   on Monday, October 5, 2009, 9:33 a.m., at 2049 Century
 4   Park East, Suite 2100, Los Angeles, California, before
 5   Jenny S. Booker, CSR No. 9237.
 6
 7   APPEARANCES OF COUNSEL:
 8
 9   FOR THE PLAINTIFF:
10      STEPTOE & JOHNSON LLP
11      CARLA A. VELTMAN, ESQUIRE
12      2121 Avenue of the Stars, Suite 2800
13      Los Angeles, California 90067
14      (213) 734-3200
15   -and-
16      STEPTOE & JOHNSON LLP
17      THOMAS M. BARBA, ESQUIRE
18      1330 Connecticut Avenue, N.W.
19      Washington, DC 20036
20      (202) 429-2000
```

### Page 3

```
 1   APPEARANCES OF COUNSEL (CONTINUED):
 2
 3   FOR THE DEFENDANTS CONNEXUS CORP. and HYDRA LLC:
 4      VENABLE LLP
 5      ARI N. ROTHMAN, ESQUIRE
 6      575 Seventh Street, N.W.
 7      Washington, DC 20004
 8      (202) 344-4000
 9
10   Also present:  Paul A. Wagner
```

### Page 4

```
          I N D E X
WITNESS       EXAMINATION          PAGE
David Shin      By Mr. Rothman       5

          E X H I B I T S
NO.    PAGE         DESCRIPTION
Exhibit 205  32   Declaration of David Shin
Exhibit 206  71   KPMG LLP Report Re: Beyond
                  Systems, Inc., v. Kraft Foods, Inc.
Exhibit 207  71   KPMG Report prepared by
                  David Shin dated 8/31/09
Exhibit 208  71   KPMG Report prepared by
                  David Shin dated 8/31/09
Exhibit 209  73   KPMG Report prepared by
                  Kelly Markgraf dated 3/6/09,
                  Bates stamped KPMG001148 and
                  KPMG001149
Exhibit 210  167  E-mail to Thomas Barba,
                  Jennie Kneedler, and
                  Bernard Boit dated 4/17/09,
                  Bates stamped SHIN 000106
Exhibit 211  170  E-mail to Bernard Boit from
                  David Shin dated 4/23/09,
                  Bates stamped KPMG02739 through
                  KPMG02743
Exhibit 212  192  Report of Keith J. Jones
Exhibit 213  195  Extract from mailbox file
Exhibit 214  226  E-mail to Bernard Boit from
                  David Shin dated 5/1/09,
                  Bates stamped KPMG00424 through
                  KPMG00426

(Exhibits attached. Confidential Exhibits 207, 208, 209,
211, 213, and 214 bound under separate cover.)
```

Page 97

BY MR. ROTHMAN:
Q. By "programs," I mean like an application as opposed to fragments or evidence of other e-mails, like an executable file.
   MS. VELTMAN: Compound.
   THE WITNESS: Could you repeat that question?
BY MR. ROTHMAN:
Q. Sure.
   Did you find any custom programs used to generate e-mails on Server 1 or Server 2?
A. I believe that it was out of the scope. We did not specifically.
   I did notice scripts on the -- on the servers, but we didn't investigate fully.
Q. So did you find any custom programs used to generate e-mails or not?
A. No.
Q. Did you find any programs used to send e-mails on the servers?
   MS. VELTMAN: Assumes facts.
   THE WITNESS: Well -- could you repeat that question?
BY MR. ROTHMAN:
Q. Sure.
   Did you find any programs used to send e-mails

Page 98

on Server 1 or Server 2?
   MS. VELTMAN: Same objection.
   THE WITNESS: Well, on Server 2 we found that there was an e-mail server installed.
BY MR. ROTHMAN:
Q. Okay. And do you know if that e-mail server was used to send bulk commercial e-mail or send other e-mail?
A. No.
Q. Okay. Did you find copies of any of the e-mails at issue in this lawsuit? And by "copies of the e-mails," I mean the header up to the point where it left the first server. So you have the body, and then you have the header up until the point where it left the first server.
   Do you understand what I'm saying?
   MS. VELTMAN: Compound. Vague and ambiguous.
   THE WITNESS: Could you repeat that question?
BY MR. ROTHMAN:
Q. Sure.
   When an e-mail leaves a sending server, there's stuff appended to the header; right?
A. Yes.
Q. Okay. Did you find any evidence of any of the e-mails at issue in this lawsuit on Server 1 or Server 2

Page 99

with a received header appended to it as it was sent?
   MS. VELTMAN: Vague and ambiguous. Assumes facts.
   THE WITNESS: No.
BY MR. ROTHMAN:
Q. Did you find anything on Server 1 or Server 2 that -- e-mails over which -- or strike it.
   You were provided an MBox file in this case?
A. I was provided an MBox file.
Q. Right.
   And that was provided to you by counsel; correct?
A. Correct.
Q. Was it explained to you that that MBox file contains e-mails over which plaintiff is suing?
A. They may have mentioned that. I don't recall the exact. I think that that -- they mentioned that it was regarding this matter, yes.
Q. Did you parse those e-mails?
A. Yes.
Q. Okay. And did you find any evidence on Server 1 or Server 2 of those e-mails being sent exact; you know, matching the dates and the times on the e-mail headers on Server 1 or Server 2?
   MS. VELTMAN: Compound. Assumes facts.

Page 100

   THE WITNESS: No.
BY MR. ROTHMAN:
Q. Did you find any -- or strike it.
   You said you did find log files on either Server 1 or Server 2?
A. I did find some log files on -- I found -- I found more log -- I found log files on Server 1. I found some log files on Server 2.
Q. What kind of log files did you find on Server 1?
A. I found the -- the time zone configuration file.
   I found the ".bash_history" file.
   I found the ".MySQL_history" file.
   I also found the D message file.
Q. What's that, the D message file?
A. It is the -- it is a log file that contains boot-up messages.
Q. Got it.
   Let me ask another question with respect to log files: Did you find any log files on Server 1 or Server 2 that reflect the sending of e-mails by MailCompanyX?
   MS. VELTMAN: Compound. Calls for speculation. Assumes facts.

101

1   THE WITNESS: No.
2   BY MR. ROTHMAN:
3   Q. Did you find any computer programs that sent
4   bulk e-mails?
5   MS. VELTMAN: Vague and ambiguous.
6   THE WITNESS: I found a server that -- e-mail
7   server that could do that.
8   BY MR. ROTHMAN:
9   Q. Okay. An e-mail server could do anything.
10  Did you find any programs that were used to
11  send bulk e-mails?
12  MS. VELTMAN: Argumentative. Assumes facts.
13  Vague and ambiguous.
14  BY MR. ROTHMAN:
15  Q. Programs now, not the servers.
16  A. I'm sorry?
17  Q. I'm looking for programs, not servers.
18  Did you find any programs that were used to
19  send bulk e-mails?
20  MS. VELTMAN: Vague and ambiguous.
21  THE WITNESS: No. But that wasn't what we were
22  looking for.
23  BY MR. ROTHMAN:
24  Q. That's fine.
25  Did you find any e-mail communications between

102

1   Sebastian Barale and anybody at Hydra?
2   MS. VELTMAN: Vague and ambiguous.
3   THE WITNESS: From our -- up to -- up to date,
4   no.
5   BY MR. ROTHMAN:
6   Q. Going back to the MBox file that plaintiff
7   provided you for purposes of this case, do you know how
8   that MBox file was created?
9   A. No.
10  Q. Did you do anything to test the integrity of
11  the messages in that MBox file?
12  MS. VELTMAN: Asked and answered.
13  THE WITNESS: No.
14  BY MR. ROTHMAN:
15  Q. You submitted a rebuttal report in response to
16  Keith Jones' report in this action; is that right?
17  A. Yes.
18  Q. And that was in response to the Keith Jones
19  report -- the only Keith Jones report, I guess, that
20  was -- that has been submitted in this case; is that
21  your understanding?
22  A. I believe so.
23  Q. And why did you submit a report in response to
24  Jones' report?
25  A. It was at the request of counsel.

103

1   Q. Did counsel request you to respond to all of
2   Keith Jones' report or just portions of it?
3   A. Off the top of my head, I can't recall. But
4   there were a lot of questions or -- that were in his
5   report. And we tried to do our best due diligence to
6   answer as many questions as possible.
7   Q. Okay. Going back to Server 1. If you could
8   take out Exhibit 206. And let me know when you have it
9   in front of you.
10  A. Okay.
11  Q. In paragraph 8, you write: "It was explained
12  to KPMG that Mr. Testa, a former employee of MailCompanyX,
13  was directed by Mr. Barale, former CEO of MailCompanyX,
14  Inc., to give the server directly to Kelly Mar-" -- is
15  it "Markgraf"?
16  A. Yes.
17  Q. All right. Do you know to whom -- or strike
18  it.
19  What does, "It was explained to KPMG" mean?
20  Did counsel in this case explain this information to
21  KPMG?
22  MS. VELTMAN: Calls for speculation.
23  BY MR. ROTHMAN:
24  Q. Do you know who explained this information --
25  well, strike it.

104

1   You wrote this paragraph; right?
2   A. Yes.
3   Q. All right. So do you know who was explaining
4   this information to KPMG?
5   A. It may have been counsel. It may have been
6   Mr. Testa. We --
7   Q. You don't know?
8   A. Well, it would have to be either B.A., or
9   Bernard Boit, explained through counsel, or a
10  combination of.
11  Q. Do you know who specifically?
12  A. There may have been correspondence.
13  Q. Right. There may have been anything. I'm
14  asking if you know who explained this information to
15  KPMG.
16  A. I would say all of the above.
17  Q. Okay. "The above," being Mr. Boit, who is an
18  employee of KPMG?
19  A. Yes.
20  Q. Mr. Testa, who is not counsel and who is not
21  employed by KPMG; right?
22  A. Yes. And counsel.
23  Q. And counsel?
24  A. Yes.
25  Q. Do you know who specifically from counsel?