# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BEYOND SYSTEMS, INC. | § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION. PJM 08-409 |
| | § § | |
| KRAFT FOODS, INC., et al. | § § | |
| | | |
| Defendants | § § | |

## EXPERT REPORT OF WILLIS MARTI

### Introduction, and Summary of Opinions and Conclusions

1. My name is Willis Marti. I have been retained by Connexus Corp. to provide expert conclusions and opinions concerning whether: (1) Plaintiff Beyond Systems, Inc. is as an "interactive computer service provider" as that term is defined below; (2) whether Plaintiff Beyond Systems, Inc. is as an "electronic mail service provider" as that term is defined below; and (3) related conclusions and opinions identified in this report. I will refer to Plaintiff Beyond Systems, Inc. as "BSI." For ease of reference, I refer to an "interactive computer service provider" and an "electronic mail service provider" collectively as an Internet service provider or ISP.

2. The Maryland email statute defines "interactive computer service provider" as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer service" and "includes a service or system that provides

    ii.    How and why James Wagner/Hypertouch, Inc. forwards/routes emails to others in the same manner as James Wagner/Hypertouch, Inc. forwards/routes emails to Paul Wagner/BSI;

    iii.    Efforts by Paul Wagner/BSI and James Wagner/Hypertouch, Inc. to bring lawsuits involving alleged unlawful emails;

    iv.    All lawsuit coordination activities, including joint defense and joint representation agreements;

    v.    Internet Service Provider services provided by Paul Wagner/BSI to James Wagner/Hypertouch, Inc.;

    vi.    Payments by Paul Wagner/BSI to James Wagner/Hypertouch, Inc. for Internet Service Provider services;

    vii.    Internet Service Provider services provided by James Wagner/Hypertouch, Inc. to Paul Wagner/BSI;

    viii.    Payments by James Wagner/Hypertouch, Inc. to Paul Wagner/BSI for Internet Service Provider services; and

    ix.    Exercise of dominion and control over hypertouch.com.

6.    Based on my knowledge and experience which I identify below, I agree that the factors listed by Judge Messitte are germane to whether BSI (or any other entity claiming ISP status) is an ISP. There are other factors which I also believe are germane. I identify those in more detail below.

"Reasonable judgment" is not an accepted scientific standard or forensics standard. (Shin ¶ 21.)

126. Shin assumes meaning of the database fields without basis. See, for example, Shin's statements in paragraph 13 of his report. Many of Shin's subsequent conclusions are based on Shin's assumptions of the meaning of the database fields. Without someone with firsthand knowledge as to the meaning of those fields, there is no way to verify the validity of Shin's conclusions. I am familiar with the tools Shin used to examine the Linux DB server, including EnCase. EnCase is an excellent tool for displaying properties of existing data. EnCase does not translate the meaning of database fields in the manner set forth in Shin's report. Shin's conclusions respecting meanings of database fields are unsupported and unsupportable.

127. In summary, there is nothing in Shin's report that is relevant to whether BSI is an ISP or the nature of the relationship between BSI and Hypertouch. Shin cannot be relied upon to interpret the meaning of data (including database fields) of which he has no knowledge. Various last written dates on the items Shin inspected reveal that nobody can claim what data on such items looked like prior to such last written dates. Assuming that the emails BSI claims for purposes of this suit are dated before such last written dates, the data on the items inspected by Shin cannot be used to correlate such emails to the data on the items inspected by Shin.

### Resnick

128. According to Resnick: "Like the California statute, the Maryland statute does not limit itself to corporations of a certain size, and it only requires that the ICSP enables "multiple users" to use the computer services" and as to the Maryland statute "appears that simply the act of being an intermediary or a provider of end user electronic mail services is sufficient under the

definition." Whether an entity is an ISP ultimately comes down to a holistic consideration of all factors, including the factors I specifically address below and in Judge Messitte's order as I explain in this report. Resnick's test for whether an entity is an ISP is too narrow.

129. According to Resnick: "I had the opportunity to examine the activities of computer servers operated by Plaintiff." Resnick then says "With regard to the Maryland statute, the POP and IMAP traffic as well as the FTP statistics I examined allow me to conclude that Plaintiff is in fact providing "information services", and is providing "access by multiple users to [its] computer service", and therefore falls under the definition in the Maryland statute of an ICSP." These statements are made without basis because Resnick does not adequately describe what he saw or when. Resnick does not identify any "users." Resnick does not describe what information was being provided. Resnick does not provide any notes or contemporaneous documentation concerning his observations. Resnick did not provide adequate information for me to independently verify his observations or claims.

130. Resnick lacks any basis to make the claims quoted in the preceding paragraph and about BSI's claimed ISP activities. Resnick does not know what services BSI provides other than what he has been told by counsel. Resnick does not know any BSI customers. (P. Resnick 10/15/2009 Dep. at 340:17-342:14.)

131. Resnick claims that wildcard email addresses can be used to "presserv[e] even completely misdirected email." BSI did not use wildcard email addresses for this purpose. BSI could not identify any specific instance when it used wildcard email addressed for this purpose except possibly as to one of Hypertouch's alleged customers (Vargas) and no details were provided. (Combined P. Wagner Dep. at 356-365.)

Hypertouch.com" and otherwise store "whatever e-mails" addressed to domain names owned by Hypertouch, that Hypertouch would send to BSI. (Combined P. Wagner Dep. at 88:5-15, 472:11-13, 484:8-20, 1096:1-3; 10/2008 J. Wagner Dep. at 184:16-24, 190:3-192:20, 198:23-199:19, 301:25-302:10, 309:13-21.) BSI "said 'yes,'" and Hypertouch then sent emails to BSI. (Combined P. Wagner Dep. at 9:9-15, 88:5-89:1; 10/2008 J. Wagner Dep. at 191:25-192:20, 195:6-10, 199:16-19, 200:21-25, 205:21-24.) BSI archived the emails, and BSI gave Hypertouch the email archives. According to Hypertouch, the archives consisted of "[a]ll of the email that BSI was **archiving for Hypertouch**." (J. Wagner/ValueClick 12/10/2008 Dep. at 319:21-321:6; 355:2-357:18.) This is consistent with the conclusion that Hypertouch asked BSI to receive and store Hypertouch email which includes hypertouch.com email, not BSI email. (10/2008 J. Wagner Dep. 184:16-24, 190:3-192:20, 198:23-199:19, 301:25-302:10, 309:13-21.)

161.    I agree with Klensin that "plaintiff is not running a highly professional operation."

DATED: April 9, 2012

Willis F. Marti