1330 Connecticut Avenue, NW
Washington, DC 20036-1795

202 429 3000 main
www.steptoe.com



Roger W. Yoerges
202 429 8168
ryoerges@steptoe.com

June 11, 2012

CM/ECF

Honorable Peter J. Messitte
United States District Court
Greenbelt Division
6500 Cherrywood Lane
Greenbelt, MD 20770

Re:   **Plaintiff's Proposed Pretrial Order, No. 8:08-cv-00409 (PJM)**

Dear Judge Messitte:

Attached is Plaintiff Beyond Systems, Inc.'s proposed pretrial order.  Under Local Rule 106.3, "If counsel are unable to agree upon any particular provision of the proposed order, counsel for each party shall submit to the Judge by the filing date a draft proposal on the provision in dispute."  During a meet and confer conference held on June 7, 2012 the parties could not come to a resolution on several key parts of the pre-trial order.  Therefore, each party is submitting its own draft to the Court.  We are prepared to discuss these issues with you during the upcoming pretrial conference.

Sincerely,

_____/s/_____
Roger W. Yoerges

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| _____ )<br>BEYOND SYSTEMS, INC., )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>KRAFT FOODS, INC., *et al.*, )<br> )<br> Defendants. )<br>_____)<br> )<br>CONNEXUS CORP., *et al.*, )<br> )<br> Third-Party Plaintiffs, )<br> )<br> v. )<br> )<br>JAMES JOSEPH WAGNER, *et al.*, )<br> )<br> Third-Party Defendants. )<br>_____) | Case No. 8:08-cv-00409 (PJM) (CBD)<br>Judge Peter J. Messitte |

**PLAINTIFF'S PROPOSED PRETRIAL ORDER**

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 106, and the

Court's scheduling order at DE #440, Plaintiff Beyond Systems, Inc. ("BSI") submits this

proposed Pretrial Order for purposes of the upcoming June 19, 2012 mini-trial.

**I.      Brief Statement of Facts That Plaintiff Proposes To Prove In Support of Claims,
And Listing of Separate Legal Theories Relied Upon In Support of Each Claim**.

This is an action for statutory damages against Defendants Kraft Foods, Inc. et al.

("Kraft") and Connexus Corp. ("Connexus") for transmission of commercial electronic mail in

violation of Maryland Commercial Law §§ 14-3001, *et seq*. ("Maryland Statute"), and California

Business & Professions Code §§ 17529.1, *et seq.* ("California Statute").  The Court has diversity

jurisdiction under 28 U.S.C. § 1332.

In its Order at DE #440, the Court bifurcated this action into a "mini-trial" focusing on the following three issues:  (1) whether BSI is a *bona fide* "interactive computer service provider" ("ICSP") under the Maryland statute, and whether BSI is a *bona fide* "electronic mail service provider" ("EMSP") under the California statute; (2) whether BSI is a *bona fide* resident of the state of Maryland under the Maryland statute; and (3) the nature of the relationship between BSI and Third Party Defendants James Joseph Wagner and Hypertouch, Inc.

In its Order at DE #498, the Court ordered that a jury, acting in either an advisory capacity or on the merits, will return verdicts at the mini-trial in two phases:  the first phase will be limited to whether BSI satisfies the requirements of the Maryland and California statutes according to BSI's theory of the case; during the second phase, the same jury will determine whether BSI is a "bona fide" plaintiff pursuant to Defendants' theory of the case and whether BSI is a resident of the state of Maryland under the Maryland statute.  During phase two, the jury may consider the non-exhaustive factors as listed in the Order, along with additional factors as approved by the Court.

BSI will prove the following facts at trial:

1.      BSI is an "interactive computer service" provider within the meaning of the Maryland statute; i.e., that BSI is an information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, and includes a service of system that provides access to the Internet.

2.      BSI is an "electronic mail service provider" within the meaning of the California statute; i.e., that BSI provides interactive computer services, and/or is an intermediary in sending or receiving electronic mail or that provides to end users of the electronic mail service the ability to send or receive electronic mail.

3.      BSI provides Internet services and is an interactive computer service provider.

4.      BSI provides and enables Internet access and/or hosting services and interactive computer services, including electronic mail services.

5.      BSI's services include primary and secondary email servers, web servers, domain name service ("DNS") servers, file transfer protocol ("FTP") servers, database services, e-commerce services, port forwarding, and backup services.

6.      BSI has physical control over and access to its own hardware, which it owns, houses, maintains, and configures.

7.      BSI operates its services on its own sites and pays for high-speed ISP- and/or business-level connections to its three Points of Presence in Silver Spring, Maryland, Rockville, Maryland, and the District of Columbia.

8.      BSI owns six servers at its Silver Spring point of presence, three at its Rockville point of presence, and six at its Washington, D.C., point of presence.  BSI houses various other items of equipment used for its business at these locations as well, such as several workstations, laptops, hubs, switches, network attached storage, backup drives and other media, printers, scanners, battery backups, cables, tools, A/V equipment, and server racks.

9.      BSI has hosted numerous domain names for use by BSI and/or its users and provides email accounts under some of these domain names.

10.     BSI provides electronic mailing list services to enable users and itself to send out mass-distribution newsletters to subscribers.

11.     BSI assigns IP addresses allocated to its network to clients for their use in accessing and providing services via the Internet.  With its DNS, BSI maps host names to IP addresses on behalf of clients.

12.     BSI maintains a Merchant Account with electronic payment processor Card Services International to enable online purchases.

13.     BSI has hosted interactive computer services, such as email services, for numerous corporate entities.  Clients have included Fortune 500 companies, a mental health services provider, a custom bike shop, a film production company, technology companies (including other interactive computer service providers), international conferences, sole proprietorships, hotels, boarding houses, law firms, and doctors.

14.     BSI provides DNS for the over 200 employees and volunteers of St. Luke's House, Inc. ("SLH"), as well as emergency upstream connectivity for those users during outages.  St. Luke's House provides comprehensive mental health services for adults with serious and persistent mental illness and youth with serious emotional disabilities.  BSI has also provided when needed Internet access and secondary mail services to SLH for over a decade, until last year.

15.     Since 2002, BSI has provisioned and maintained high-speed wireless Internet access and business services for the Young Woman's Christian Home, a non-profit organization housing over 100 residents.

16.     BSI currently has several paying customers for its interactive computer and electronic mail services.  BSI currently hosts email services for some of these customers, and provides DNS and/or secondary mail server services for all of these customers.  BSI has additionally provided free interactive computer services to thousands of users who

access websites hosted on BSI's networks; who receive email newsletters from BSI-supported community groups; and who use BSI-provided WiFi as a means of wirelessly accessing the Internet.

17.     The DNS servers operated by BSI currently serve numerous domain names, translating domain names meaningful to humans into the numerical identifiers (IP addresses) associated with network equipment for the purpose of locating and addressing these devices worldwide.

18.     Since installing and operating its first mail server in 1997, BSI was receiving an average of one million emails on its servers per day and now receives approximately 500,000 emails per day.

19.     BSI follows a number of protocols and steps to help its customers determine if emails are legitimate.  BSI has relied on a variety of software programs and techniques to filter mail (i.e., spam filters), including SpamAssassin, PolluStop, ClamAV, SpamPal, built-in server mechanisms, custom filters and manual and semi-automated analyses to detect and flag probable spam, and to prioritize email.  BSI then delivers all email, flagged or otherwise, to the intended recipient.

20.     BSI was established as a Maryland Corporation in 1996.

21.     BSI has always been a Maryland Corporation and remains in good standing.

22.     BSI's interactive computer service work has primarily been performed in Maryland and the District of Columbia.  Most of BSI's interactive computer services for users are performed by its automated servers in Silver Spring and Rockville, Maryland.

23.     Since 1996, BSI has always maintained its Principal Office in Maryland.

24.     Since 1996, BSI has had a Maryland registered agent.

25.     BSI's corporate address, and Principal Office, as shown in all public filings, has always been a Maryland address from its inception in 1996 to the present.

26.     BSI's Principal Office is 9501 Anchorage Place, Bethesda, Maryland 20817.  This is also the address of its resident agent, Alton Burton, CPA, and the address recorded with the Maryland State Department of Assessments and Taxation as the principal office of the corporation.

27.     Since 1996, BSI has filed all of its corporate federal, Maryland state, and Montgomery County income tax returns as a Maryland resident and never elsewhere.

28.     BSI has always paid Maryland and Montgomery County corporate income and personal property taxes and never elsewhere.

29.     BSI also regularly makes required payments to the Maryland Unemployment Insurance Fund, and makes no such payments to the District of Columbia or any other state.

30.     Since its founding, BSI has at all times maintained computer equipment at its locations in Maryland; since 1997, BSI has at all times maintained one or more mail servers at its locations in Maryland.

31.     BSI was first located at 1612 Sherwood Road, Silver Spring, Maryland 20902. Since 2007, BSI has also maintained servers and equipment at 38 Maryland Avenue, Unit 333, Rockville, Maryland 20850.

32.     BSI received all the emails that give rise to its claims against the Defendants in this action on its mail servers located in Maryland at either the Silver Spring or the Rockville address.

33.     BSI's domains, including in the emails at issue, are registered with registrars using a Maryland address, which address appears in the public WHOIS registry.

34.     Since its inception in 1996, BSI has maintained business arrangements with various other interactive computer service providers to provide, enable and perform interactive computer services from or for them utilizing BSI's or their technical infrastructures.  Since Hypertouch, Inc., of California ("Hypertouch") became a "doing business as" in 1997 and continuing after its corporate formation in 1999, BSI has maintained such a business relationship with Hypertouch to provide, enable, and receive interactive computer services.  Since 2002, BSI has maintained a business arrangement with Hypertouch to receive, deliver, and retain emails for some BSI-owned domains via Hypertouch's infrastructure.

35.     BSI uses Hypertouch's secondary mail and DNS services for failover purposes and provides Hypertouch similar services.

36.     Hypertouch is not a subsidiary, division, or department of BSI.

37.     BSI controls its own finances and accounting.  BSI has separate accounting and payroll systems from Hypertouch.

38.     BSI has never assumed any financial obligations of Hypertouch.

39.     Terminating its agreements with Hypertouch would not cause BSI to cease operating.

40.     Hypertouch routes the BSI-bound mail that Hypertouch receives to BSI automatically.  Just as Hypertouch routes mail destined for its other clients to them, it automatically routes BSI's mail to BSI.

41.     BSI has received all emails that give rise to the underlying claims in this case on its mail servers in real-time, routed and delivered by automated means at the time they were initially transmitted.

**II.     Brief Statement of Facts That Each Defendant Proposes To Prove Or Rely Upon As A Defense, Together With a Listing of The Separate Legal Theories Relied Upon In Support of Each Affirmative Defense**

[Defendants' Statement]

**III.     Similar Statements as to any Counterclaim, Cross Claim, or Third-Party Claim**.

BSI has no counterclaim, cross claim, or third-party claim at this time.  Because the mini-trial does not address the merits of the claims at issue, BSI reserves the right to bring any counterclaim, cross claim, or third-party claim at a subsequent stage of the litigation.  Connexus has pending third-party claims against Hypertouch and Joe Wagner.  However, those third-party claims are not being tried during the June 2012 mini-trial.  Therefore, Connexus will submit a separate statement concerning its third-party claims should this case proceed to trial on the merits.

**IV.     Any Amendments Required of the Pleadings**

BSI has no amendments to its pleadings at this time.  Because the mini-trial does not address the merits of the claims at issue, BSI reserves the right to amend its pleadings at a subsequent stage of the litigation.  Connexus has pending third-party claims against Hypertouch and Joe Wagner.  However, Connexus has no amendments to its third-party complaint at this time.  Because the mini-trial does not address the merits of the claims at issue, Connexus reserves the right to amend its pleadings at a subsequent stage of the litigation.

**V.     Any Issue in the Pleadings That Is to Be Abandoned**

Neither BSI nor Defendants have issues in its pleadings that will be abandoned at this time.  Because the mini-trial does not address the merits of the claims at issue, the parties reserve the right to address the issue of abandoning issues in the pleadings at a subsequent stage of the litigation.

**VI.**    **Stipulated Facts or Requested Stipulations of Facts**

    **A.**    **Stipulated Facts:**

        1.    BSI provides information, system, or access software services to multiple individuals.

        2.    BSI provides or enables computer access to multiple users.

        3.    BSI provides Internet access to multiple users.

        4.    BSI provides multiple users with the ability to access the Internet.

        5.    BSI enables multiple users to access the Internet.

        6.    BSI has facilitated the sending and receiving of electronic mail to multiple users.

        7.    BSI enables multiple users to send and receive electronic mail.

        8.    BSI provides email access to multiple users.

        9.    BSI provides a service that permits multiple users to send email.

        10.    BSI provides a service that permits multiple users to receive email.

        11.    BSI hosts domains for its multiple users.

        12.    BSI is an "intermediary" in sending or receiving electronic mail.

        13.    BSI operates a list service that provides the distribution of electronic newsletters to multiple subscribers.

        14.    BSI is incorporated in the state of Maryland.

        15.    BSI owns an Internet Merchant Account.

        16.    BSI has provided e-commerce services for multiple individuals.

        17.    BSI owns its own servers and computer equipment.

18.     BSI hosts DNS (domain name service) servers.

19.     BSI has hosted websites for businesses on its servers.

20.     BSI has hosted websites for individuals on its servers.

21.     BSI has hosted domains for businesses on its servers.

22.     BSI has hosted domains for individuals on its servers.

23.     BSI provides streaming media services.

24.     BSI purchases its own equipment.

25.     BSI has purchased hardware upgrades.

26.     BSI has purchased software upgrades.

27.     BSI owns multiple domain names.

28.     BSI hosts domains on servers that it owns.

29.     BSI provided interactive computer services and electronic mail services to multiple users at St. Lukes's House.

30.     BSI has hosted multiple domain names.

31.     BSI provides or enables wired or wireless Internet connectivity to multiple users.

32.     Hypertouch was incorporated in California in 1999.

33.     BSI was incorporated in Maryland in 1996.

34.     Paul Wagner has physical control over and access to hardware that BSI owns.

35.     James Joseph Wagner has physical control and access to the hardware that Hypertouch owns.

**B.      Plaintiff's Requested Stipulations of Facts:**

1.      Other interactive computer or email service providers use litigation as a tool to combat spam.

2.      Spam email constitutes a large proportion of email received by BSI as a proportion of all email received by BSI, just as it does for interactive computer service providers elsewhere.

3.      It is a standard industry custom to provide email and interactive computer services free of charge.

4.      Routine conveyance is a standard routing practice between interactive computer service providers.

5.      Email routed between interactive computer service providers during the course of routine conveyance typically includes a large proportion that is spam.

**C.      Defendants' Requested Stipulations of Facts:**

[Defendants' Requested Stipulations]

## VII.    Details of the Damages Claimed or Any Other Relief Sought As of the Date of The Pretrial Conference

Because the mini-trial does not address damages, BSI reserves the right to amend its response at a subsequent stage of the litigation.  BSI seeks statutory damages as provided in the Maryland and California statutes for each email for which Defendants are found to be liable.

## VIII.   Exhibits and Demonstrative Exhibits

**A.      Plaintiff's Exhibit and Demonstrative Exhibit List:**

1.      BSI Articles of Incorporation, BSI0038236-238

2.      Live demonstration of BSI interactive computer service provider activity and electronic mail service provider activity

3.      Screen shots of BSI server activity from October 2009, BSI0034852-865; BSI0034866-907; BSI0034908-923; BSI0034924-928; BSI0034929; BSI0034930-952.

4.      BSI tax filings, BSI0021221-234; BSI0021320-345; BSI0021346-371; BSI0021372-398; BSI0021399-431; BSI0021432-458; BSI0021459-483; BSI0021486-518.

5.      Pervasiveness of spam slide

6.      Internet structure/post office analogy

7.      Internet structure – actual

8.      CA/MD spam law definitions

11

9.      California and Maryland statute legislative history

10.     What qualifies as an interactive computer service provider in Maryland?

11.     Does BSI qualify as a Maryland interactive computer service provider?

12.     What qualifies as an electronic mail service provider in California?

13.     Does BSI qualify as a California electronic mail service provider

14.     List of small interactive computer service providers

15.     List of players

16.     BSI timeline

17.     Infrastructure of an interactive computer service provider

18.     List of BSI services

19.     List of BSI customers

20.     BSI/Hypertouch relationship

21.     List of spam cases filed by other interactive computer service providers

22.     List of Maryland resident qualifiers for BSI

23.     BSI network connectivity diagram, BSI0021291-293.

24.     BSI domain name registrations, BSI0034823-825; BSI0034826-828.

25.     BSI customer invoices, BSI0034545-559; BSI0020744; BSI0020745;
        BSI0020748; BSI0020749; BSI0020750; BSI0020751.

26.     BSI WHOIS information; BSI0004414-415; BSI0038212-214;
        BSI0038239-240; BSI0045869; BSI0045862-863; BSI0045858-859;
        BSI0045846-847; BSI0045848-849; BSI0045852-853; BSI0045901-902.

27.     Press articles re: other interactive computer service providers suing under
        anti-spam statutes

28.     BSI users' declarations, BSI0034539; BSI0034540-541; BSI0034542-543.

29.     Hypertouch users' declarations, BSI0024168-170.

30.     BSI users' correspondence re: email archiving, BSI0030904.

31.     Correspondence from P. Wagner to Megapath, BSI0021294-298.

32.    Invoices and documentation of payments for BSI's service from Speakeasy and other upstream providers, BSI21311-312; BSI0034560-564.

33.    BSI Credit Card statements from 2004-2009, BSI0022339-344; BSI0022360-364; BSI0022365-379; BSI0022380-384; BSI0022400-404; BSI0022420-426; BSI0022427-441; BSI22442-446, BSI0022447-461; BSI0022462-466.

34.    Screenshot of BSI's account on Speakeasy's web page, BSI0034691-692.

35.    Server diagram, showing BSI service for the mail.stlukeshouse.com domain via BSI's mail.linkcenter.net server; BSI0020753.

36.    Screenshot of BSI account on Maryland Dep't of Assessments and Taxation website, BSI0021243-244.

37.    Email correspondence re: services BSI provided to St. Luke's House, BSI0020756-811.

38.    Email correspondence re: BSI's e-commerce services to St. Luke's House, BSI0034953-956.

39.    Email correspondence re: BSI's services to Young Women's Christian Hospital, BSI0021995-2245.

40.    Email correspondence re: services provided by BSI, BSI0008135-136.

41.    Speakeasy's terms of service, BSI0021299-310.

42.    BSI's invoices to YWCH, BSI0002843-846.

43.    Table of BSI's Non-Litigation expenses, BSI0022566-580.

44.    Compilation of BSI's invoices for both upstream connectivity and hardware, BSI0031577-2019.

45.    Email excerpts, showing BSI's web-hosting services for Barcroft Bicycles, BSI0021519-867.

46.    Hybrid Report of Paul Wagner

47.    Slide explaining Domain Name Service system

48.    Screen shots of BSI customer email accounts, BSI0034696-702

49.    Email correspondence with BSI customer, BSI0008126

50.    Whois lookup for domain name stlukeshouse.com, BSI0035035-037

51.     Email correspondence with BSI customer St. Luke's House, BSI0044221-
        291

52.     Service signups for BSI customers, BSI0034544-536

53.     Court's Amended Order (DE # 498)

54.     Connexus Opp to Motion to Strike & Draft Order (DE # 456)

55.     TIA-942 Data Center Standard Summary

56.     Public articles and press releases discussing spam cases filed by other
        interactive computer service providers:

        a.      "AOL declares victory in spam suit settlement," USA Today.
        April 3, 2002.  Available at:
        http://www.usatoday.com/tech/news/2002/04/03/aol-spam.htm

        b.      "Earthlink Wins $25 Million in Spam Suit," by Christopher
        Saunders.  July 22, 2002.  Available at:
        http://www.internetnews.com/IAR/article.php/1430591/Earthlink+Wins+2
        5+Million+in+Spam+Suit.htm

        c.      "Former 'Spam King' pays MS $7m to settle lawsuit," by John
        Leyden.  August 9, 2005.  Available at:
        http://www.theregister.co.uk/2005/08/09/richter_ms_settlement/

        d.      "Who's been sued under CAN-SPAM?" by Al Iverson.  October
        25, 2006.  Available at:

        e.      http://www.spamresource.com/2006/10/whos-been-sued-under-
        can-spam.html

        f.      "Big Four ISPs File First Major Can Spam Suits," by Janis Mara.
        March 10, 2004.  Available at:

        g.      http://www.clickz.com/clickz/news/1694624/big-four-isps-file-
        first-major-can-spam-suits (March 2004)

        h.      "AOL Files Spam Suits," by Brian Morrissey.  April 15, 2003.
        Available at:
        http://www.esecurityplanet.com/trends/article.php/2190881/AOL-Files-
        Spam-Suits.htm

        i.      "Target Spam:  NY AG, Microsoft File $38M Suits," Ryan
        Naraine.  December 18, 2003.  Available at:
        http://www.clickz.com/clickz/news/1715016/target-spam-ny-ag-
        microsoft-file-usd38m-suits

**j.**      "First Can Spam Suit Filed," by Ron Miller.  March 5, 2004.  Available at:  http://www.clickz.com/clickz/news/1711129/first-can-spam-suit-filed

**k.**      "Iowa ISP Wins $1 Billion in Spam Suit," by John P. Mello Jr.  December 21, 2004.  Available at:  http://www.technewsworld.com/story/Iowa-ISP-Wins-1-Billion-in-Spam-Suit-39143.html

**l.**      "Microsoft awarded $4 million in spam suit," by Matt Hines.  July 16, 2004.  Available at:

**m.**      http://news.cnet.com/Microsoft-awarded-4-million-in-spam-suit/2100-1014_3-5272776.html

**n.**      "Microsoft Files More Anti-Spam Lawsuits in Conjunction With Leading ISPs," by Microsoft News Center.  October 28, 2004.  Available at:  http://www.microsoft.com/en-us/news/press/2004/oct04/10-28canspamfollowuppr.aspx

**o.**      "EarthLink puts stop to 'Alabama spammers'," by Matt Hines.  January 26, 2005.  Available at:  http://news.cnet.com/EarthLink-puts-stop-to-Alabama-spammers/2100-7348_3-5551566.html

**p.**      "Strigl's Verizon Wireless Vows To Slice SMS Spam," by Dan Frommer.  November 23, 2005.  Available at:  http://www.forbes.com/2005/11/23/verizon-wireless-strigl-cx_df_1123autofacescan12.html

**q.**      "Verizon Sues Text Spammers," by Lisa Lerer.  September 26, 2006.  Available at:  http://www.forbes.com/2006/09/29/spam-suit-verizon-cx-tech-intel-cx_ll_0929spamsuit.html

**r.**      "Washington Settles State's First Can-Spam Suit," by Ken Magill.  May 24, 2006.  Available at:  http://chiefmarketer.com/news/washington-settles-state-s-first-can-spam-suit

**s.**      "Who's been sued under CAN-SPAM?" by Al Iverson.  October 25, 2006.  Available at:

**t.**      http://www.spamresource.com/2006/10/whos-been-sued-under-can-spam.html (2006)

**u.**      "Verizon Wireless Settles Spam Suit," by Susan Rush.  July 25, 2006.  Available at:  http://www.spamfighter.com/News-6141-Verizon-Wireless-Settles-Spam-Suit.htm

**v.**      "e360Insight, LLC. v Comcast Corporation," by Mickey Chandler.  January 22, 2008.  Available at: http://www.spamsuite.com/node/352

**w.**      "Comcast and e360 settle lawsuit," by Laura in Legal at Word to the Wise.  January 19, 2010.  Available at: http://blog.wordtothewise.com/2010/01/comcast-and-e360-settle-lawsuit/

**x.**      "Yahoo files suit against 'lottery' spammers," by Lottery Post. May 27, 2008

**y.**      http://www.lotterypost.com/news/175693

**z.**      "Yahoo wins $610m lawsuit against lottery spammers," by Shaun Nichols.  December 8, 2011.  Available at:  http://www.v3.co.uk/v3-uk/news/2131006/yahoo-wins-usd610m-suit-lottery-spammers

**aa.**      "Yahoo wins $610m lawsuit against lottery spammers," by Shaun Nichols.  May 5, 2009.  Available at: http://www.pcmag.com/article2/0,2817,2346542,00.asp

**bb.**      "Verizon Settles Spam Suit," by The Associated Press.  February 11, 2009.  Available at:  http://www.cbsnews.com/8301-205_162-527365.html

**cc.**      "Spam lawsuits: new and old," by Laura in Legal at Word to the Wise.  June 17, 2010.  Available at: http://blog.wordtothewise.com/2010/06/spam-lawsuits-new-and-old/

**dd.**      "Microsoft spam suit involves old nemesis," by John P. Mello Jr. June 22, 1010.  Available at: http://www.allspammedup.com/2010/06/microsoft-spam-suit-involves-old-nemesis/

**ee.**      "$236m judgment lands on mom and pop spam shop," by Dan Goodin.  October 8, 2008.  Available at: http://www.theregister.co.uk/2008/10/08/mom_and_pop_spammer_judgement/

**ff.**      "Judges Can Spam Suit Against Epic," by Wendy Davis. December 4, 2009.  Available at:

**gg.**      http://www.mediapost.com/publications/article/118525/judges-can-spam-suit-against-epic.html

**hh.**      "Spammers ordered to pay tiny ISP whopping $2.6m," by Dan Goodin.  May 6, 2010.  Available at: http://www.theregister.co.uk/2010/05/06/spam_judgment/

**ii.** "Veteran spam suit troll plaintiff calls it quits," by Dan Goodin. September 14, 2010.  Available at: http://www.theregister.co.uk/2010/09/14/asis_calls_it_quits/

**jj.** "Yahoo! Wins $610 Million Trademark Infringement and CAN-SPAM Award Over Nigerian Advance Fee Fraud Suit," by Joseph DiCioccio.  December 15, 2011.  Available at:

**kk.** http://www.copyrighttrademarkmatters.com/2011/12/15/yahoo-wins-610-million-trademark-infringement-and-can-spam-award-over-nigerian-advance-fee-fraud-suit/

**B.** Defendants' Exhibit and Demonstrative Exhibit List:

[Defendants' list]

## IX.   Witness Lists

**A.** Plaintiff's Witness List

Plaintiff intends to call:

1.    Paul Wagner (Hybrid Fact/Expert)
1837 R Street NW
Washington, DC 20009

2.    Lynnita-Renee Sykes (BSI Customer)
2351 Eisenhower Avenue #1001
Alexandria, VA  22314

3.    John Clark (BSI Customer)
6040 Southport Drive
Bethesda, MD 20814
(301) 896-4238

Plaintiff may call:

4.    Dr. James Joseph Wagner (President of Hypertouch)
17 Greenfield Street
Lowell MA 01851
(650) 714-8419

**B.** Defendant's Witness List:

[Defendants' Witnesses]

## X.   Expert Lists

**A.**     Plaintiff's Experts

Plaintiff intends to call:

1.     Paul Wagner (Hybrid Fact/Expert)

2.     Peter Resnick (Expert on email systems, the Internet, and interactive computer service providers)
503 West Indiana Avenue
Urbana, IL 61801
(217) 337-1905

Plaintiff may call:

1.     John Levine (Expert on email systems, the Internet, and interactive computer service providers)
24 Washington St.
Trumansburg, NY 14886
(607) 330-5711

**B.**     Defendants' Experts

[Defendants' Experts]

## XI.     Deposition Designations

None

## XII.     Other Pretrial Relief, including Pending Motions

Plaintiff objects to the following items in Defendants' Proposed Pretrial Order:

1.     Plaintiff does not agree that Defendants are in fact conceding phase one of the Mini-Trial, as they purport to do in their proposed pre-trial order. While supposedly not contesting phase one, Defendants state that they "reserve all rights to challenge whether BSI meets the technical requirements of the California and Maryland statutes to the extent BSI introduces evidence concerning such technical requirements and/or to the extent such technical requirements are relevant to the second phase of the Mini-Trial ordered at ECF No. 498." Defendants also summarily rejected

all proposed stipulations of fact, including those based on the statutory

language and those based on their own answers to Plaintiff's court-

sponsored Requests for Admissions for the Mini Trial.  If Defendants are

actually not contesting phase one, they need to state which factual points

they are conceding.  Plaintiff does not agree with the Defendants' proposal

to limit the trial to phase two issues.  Instead, the trial should proceed as

initially scheduled by the Court in ECF #498.

2.  Plaintiff disagrees that Defendants should be allowed to treat BSI

customers and members of the Wagner family as "adverse to Defendants."

There is no basis or evidence in the record to suggest that these witnesses

would be hostile to Defendants, and Defendants should not presumptively

be allowed to treat them as such.

3.  Plaintiff objects to and disagrees with any portion of Defendants'

Proposed Pretrial Order  proposing jury instructions or relief related to

BSI's or its counsel's supposed "destruction of documents" following the

settlement of the *World Avenue* litigation, which was, in fact, a routine

document destruction in accordance with the Protective Order governing

the handling of confidential materials in that case.  Despite having been

repeatedly advised by counsel to both BSI and World Avenue that each

and every one of the originals of any such documents remains in BSI's

and/or Hypertouch's possession, custody, or control (i.e., no document has

been literally "destroyed"), Defendants nonetheless insist on creating,

through baseless, scandalous, *ad hominem* accusations, a sideshow

19

intended to leverage Defendants' position in the litigation and to distract the Court from the merits.  This is not the first time Defendants have resorted to such tactics; the first resulted in the Court striking the entirety of Defendants' pleading, and a similar result should follow here.  To the extent Defendants' bombast reduces to a complaint of being unsure whether every single document produced in the *World Avenue* litigation has been produced here, the only appropriate relief would have been a timely-filed motion to compel, and not the draconian, utterly unjustified relief Defendants seek here.  Even so, it is difficult to imagine what document could possibly exist (not one of which, Defendants have identified to us) that would make a material difference on the *500 documents* they have already identified as exhibits in this case.

4.   Defendants' objection to Plaintiff's proposed exhibit list is premature, as the parties have not yet had their mutual exchange of trial exhibits per Local Rule 106.7(b).  This review will take place prior to the pretrial conference on June 14, 2012.

The parties agree to provide each other 24- hour notice before witnesses are called to testify at trial.

## XIII.   Any Other Matter Added by the Court

None

Date:  June 11, 2012                           Respectfully submitted,


_____/s/_____          *Of Counsel:*
Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)          Stephen H. Ring (USDC-MD Bar No. 00405)
Jeffrey E. McFadden (D. Md. Bar No. 8738)        Law Offices of Stephen H. Ring, P.C.
John J. Duffy (D. Md. Bar No. 28613)             506 Main Street, Suite 215
STEPTOE & JOHNSON LLP                            Gaithersburg, Maryland  20878
1330 Connecticut Ave., NW                        T: 301-563-9249
Washington, D.C.  20036                          F: 301-563-9639
T: 202-429-3000                                  shr@ringlaw.us
F: 202-429-3902
tbarba@steptoe.com                               Mike Rothman (USDC-MD Bar No. 14568)
ryoerges@steptoe.com                             Law Office of Michael S. Rothman
jmcfadden@steptoe.com                            401 E. Jefferson Street, Suite 201
jduffy@steptoe.com                               Rockville, MD  20850
                                                 T: 301-251-9660
                                                 F: 301-251-9610
Anthony A. Onorato (D. Md. Bar No. 28622)        mike@mikerothman.com
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas                      *Counsel for Plaintiff Beyond Systems, Inc.*
New York, NY  10036
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com


*Counsel for Plaintiff Beyond Systems, Inc. and*
*Third-Party Defendants James Joseph Wagner*
*and Hypertouch, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2012, the foregoing PLAINTIFF'S

PROPOSED PRETRIAL ORDER was served via federal express on the below-named parties:

Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
700 Thirteenth Street N.W.
Washington, D.C.
20005-3960
(202) 654-6200 (Telephone)
(202) 654-6211 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Peter S. Roeser
John E. Bucheit
ROESER, BUCHEIT & GRAHAM LLC
20 N. Wacker Dr., Ste. 1330
Chicago, IL 60606
(312) 922-1200
dgraham@rbglegal.com
proeser@rbglegal.com
jbucheit@rbglegal.com

*Counsel for Defendants Kraft Foods Inc.,
Kraft Foods Global Inc., and Vict. Th.
Engwall & Co., Inc.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus
Corp.*

_____
/s/
Jennifer M. Newton