UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BEYOND SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:08-CV-00409 (PJM) |
| KRAFT FOODS INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S RENEWED APPLICATION FOR
ENTRY OF JUDGMENT FOR DAMAGES AGAINST DEFENDANT HYDRA LLC**

Plaintiff Beyond Systems, Inc. ("BSI"), through its undersigned counsel, respectfully submits this memorandum in support of BSI's renewed application for entry of judgment for damages against Hydra LLC ("Hydra"). On Dec. 27, 2010, this Court entered a default judgment as to Hydra. DE 412. At that time, the Court deferred entering judgment as to damages until all other issues were resolved in this case. BSI believes that it is now appropriate to renew its request for the entry of damages to the default judgment given the outcome of this Court's June 19-28, 2012 jury trial in this matter.

**STATEMENT OF FACTS**

BSI sued Hydra on Feb. 15, 2008. The crux of BSI's case is the vexatious sending of illegal spam by Hydra to BSI. Between February 15, 2005, and March 20, 2009, Hydra has sent at least 45,773 emails to BSI that contain false, misleading, forged and/or misrepresented information in violation of Cal. Bus. & Prof. Code §§ 17529.5(a)(1), (2) and/or (3), and Md.

Comm. Law §§ 14-3002(b)(i), (ii) and/or (iii).[1]  Perhaps most remarkable is that Hydra sent 20,331 of these emails to BSI *after* BSI sued Hydra, and has continued to send thousands of emails to BSI into 2012 beyond the 45,773 emails initially at issue.  Declaration of Paul Wagner ("Wagner Decl.") ¶¶ 13-27.

In December 2009, after almost two years of intensely litigating this case, Hydra abandoned its defense and simply walked away, advising its counsel that "[t]his litigation has no value to the company so there is no reason for the company to continue litigating."  DE 289 at Ex. 1.

At the same time, Hydra changed form and ownership.  In late 2009, Hydra, led by CEO Zac Brandenberg, went into voluntary receivership.  The receiver ordered the sale of Hydra LLC to Hydra Group LLC, f/k/a Marlboro Investment Group.  Zac Brandenberg was also the CEO of Hydra Group LLC.  *See* DE 280 at 1, 2 (stating Venable had contacted Hydra "in December 2009" and was told that a receiver had been appointed for Hydra and had sold the assets from CEO Zac Brandenberg's old company, Hydra LLC, to his new company, Hydra Group LLC). Hydra Group LLC then continued to operate the same email advertising business, running old Hydra's same affiliate network, conducting the business through Hydra's existing network, hydranetwork.com.  DE 287 at 2 & n.1 (new Hydra spam from the week of February 1, 2010); DE 282 at 2-3; DE 295 at n.2 (showing new Hydra spam from February 18, 2010).

Hydra Group's press releases of early 2010 confirm that Hydra's marketing operations and affiliates were simply transferred to the new company, "immediately" put back in service and eventually integrated into "the combined Adknowledge-Hydra ecosystem."  The press release of January 19, 2010 – "Hydra Group LLC Buys Assets of Hydra LLC" – announced that

---

[1] *E.g.*, Second Am. Compl. ¶¶ 48-54, 56, 58-64.

Hydra Group "purchased the assets of Hydra LLC, including the Hydra Network[]", and that Hydra Group was "[a] newly formed entity" that "includes original Hydra founder and CEO Zac Brandenberg." https://www.hydragroup.com/press/10/hydra-group-LLC-buys-assets-of-hydra-LLC.html. Brandenberg stated that the plan was to "apply[] new proprietary technologies . . . to Hydra Network's [existing] affiliate marketing practice" in order to "complete the build out of internal capabilities for direct distribution of ads across search, email," and other media. *Id*.

On April 15, 2010, BSI informed the Court by letter that Hydra had changed its name to Hydra Group LLC and disavowed certain debts and obligations of Hydra. DE 388. Counsel requested expedited consideration of BSI's motion for entry of default against Hydra and Third-Party Defendant Hypertouch's motion to dismiss Hydra's Third-Party Complaint in order to permit BSI to take steps, including, if necessary, additional litigation, to prevent Hydra from evading its legal obligations by a fraudulent transfer of assets.

On June 14, 2010, this Court granted BSI's motion for entry of default as to Hydra and directed the Clerk of Court to enter a default against Hydra. June 14, 2010 Hrg. Tr. at 7:21-25. On July 16, 2010, the Clerk of Court entered the default. DE 376.

Then, on June 21, 2010, a company called AdKnowledge announced it had completed its acquisition of Hydra Group. http://www.adknowledge.com/press-room/press-releases/adknowledge-acquires-hydra-leading-cpa-affiliate-network. Hydra's own June 21, 2010, press release made clear that this corporate transition did not end or even interrupt Hydra's operations: "Starting immediately, Hydra affiliates will benefit from direct access to Adknowledge's 6,500+ advertiser campaigns from their current Hydra login. After integration, affiliates within the combined Adknowledge-Hydra ecosystem will have access to 7,000+ of the industry's most diverse and highest yielding CPC (cost-per-click) and CPA offers. This will

establish Adknowledge as the largest affiliate network measured by its number of diverse offers." https://www.hydragroup.com/press/10/adknowledge-acquires-hydra-leading-cpa-affiliate-network.html. "As importantly, the acquisition of Hydra will benefit advertisers using Adknowledge's Bidsystem platform (www.bidsystem.com) by connecting them to thousands of Hydra affiliates." *Id*. "'Since Hydra's launch, we have delivered millions of new customers to clients like . . . Kraft, and helped thousands of premium publishers financially benefit from their promotion of these campaigns to their audiences.  The result is we've built an incredibly healthy advertiser and affiliate marketplace that will increase in scale dramatically as we now join forces with Adknowledge,' said Zac Brandenberg, chief executive officer of Hydra.  The Hydra brand will be retained in the near term and operate alongside Adstation (www.adstation.com), Adknowledge's existing affiliate offering . . . ." *Id*.

By August-September 2010, Hydra's well-known domains used in its emails, and which are key identifiers in attributing spam to Hydra – such as lynxtrack.com, imglt.com and ltpic.com – were transferred to a new registrant – AdKnowledge.  Wagner Decl. ¶¶ 4-13.  Since that time, Hydra/AdKnowledge has continued to send emails to BSI, at least into April 2012.  In fact, Hydra Group LLC is currently actively litigating an anti-spam matter brought under the California statute, Cal. Bus. & Prof. Code § 17529.5, in the U.S. District Court for the Eastern District of New York for emails sent in 2010, during which time BSI (which sued in 2008) was still receiving emails.  *Id*. ¶¶ 14-27.  Not only did Hydra abandon this litigation, but it also continued to pursue its lucrative business model without pause.  *See supra*; *Bank v. Hydra Group LLC*, 10-cv-01770 (JG) (VMS) (E.D.N.Y.) (Ex. 1).

On Dec. 27, 2010, this Court entered a default judgment as to liability against Hydra. DE 412. At that time, the Court deferred entering judgment as to damages until all other issues were resolved in this case.

As further explained below, BSI believes that the time is appropriate for it to renew its request for entry of judgment as to damages against Hydra. In further support of this request, BSI incorporates by reference the additional facts set forth in the accompanying application.

## ARGUMENT

**I.    Entry of Judgment Against Hydra Does Not Depend On the Resolution of Any Issue Remaining In This Case As To Any Other Defendant.**

From June 19 to June 28, 2012, this Court conducted a two-phase jury trial. Phase One of the trial addressed whether BSI is an "interactive computer service provider" ("ICSP") under Md. Code Ann., Comm. Law § 14-3001(c)(1), and/or an "electronic mail service provider" ("EMSP") under Cal. Bus. & Prof. Code § 17529.1(h). On June 25, at the close of evidence in Phase One, the jury found that "BSI is a service or system that provides access to the Internet or is an information service system or access software provider that provides or enables computer access by multiple users to be, to a computer service." (Trial Tr. at 6/25 101:5-23). The jury also found that "BSI is an intermediary in sending or receiving electronic mail or that provides to end users of electronic mail service the ability to send or receive electronic mail." (Trial Tr. at 6/25 101:25-102:10). The jury findings in Phase One conclusively establish that BSI meets the statutory definitions of ICSP and EMSP.

The trial then moved to Phase Two, which addressed two issues: Connexus' and Kraft's argument that BSI is not a "bona fide" ICSP and EMSP exclusively because of its "litigation activities," and whether BSI is a Maryland resident. Adhering to a jury instruction that compelled the jury to equate "substantial" or "primary" litigation activities with a lack of bona

fides, the jury found that BSI's "litigation activities" disqualify it from being a "bona fide" ICSP/EMSP. While BSI believes that there is no legal requirement that it be a "bona fide" ICSP or EMSP to recover under Maryland's and California's anti-spam laws, the issue is of no consequence with respect to Hydra. Not only was the issue never been raised by Hydra, but Hydra's default operates as a waiver of its right to contest whether BSI is a "bona fide" litigant. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) ("A district court, however, is plainly free to render judgment to a plaintiff on a claim to which the defendant has an affirmative defense that he has waived."); *see also Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, 2012 U.S. Dist. LEXIS 133373, at *5 n.1 (E.D. Va. Aug. 9, 2012) ("in rem defendant domain names have waived any right to assert affirmative defenses by their default"); *Belmont Partners, LLC v. Nehmeh*, No. 3:07CV00032, 2008 WL 1858896, at *4 (W.D. Va, Apr. 24, 2008) (default constituted waiver of defenses that could have been asserted).

It is thus completely appropriate for the Court to enter judgment at this time. The issue of standing, whether grounded in the plain meaning of the Maryland and California statutes or somehow engrafted with a "bona fide" overlay, is not jurisdictional but rather is an element of the claim, and thus is as waivable as any other defense. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (elements included in statute that create plaintiff's cause of action (including statutory standing) are merits issues and are not to be treated as jurisdictional issues); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 339 (4th Cir. 2006) (plaintiff's statutory standing as a "person purchasing" securities is element on the merits of plaintiff's claim for relief, not jurisdictional requirement). By defaulting, Hydra waived any right to challenge BSI's right to recover, whether that challenge relates to standing, consent, or any other issue

constituting what effectively would be a legal defense to a claim. This Court should therefore enter final judgment for damages against Hydra without further delay.

## II.     Delay in Entry of Damages Prejudices BSI.

45,773 emails attributable to Hydra are involved in this case. Hydra is liable for sending these emails pursuant to the default against it. This number does not include the several thousand additional emails that Hydra has continued to send to BSI since it defaulted, a substantial number of which were sent as recently as April 2012. Wagner Decl. ¶¶ 14-27.

This Court should not delay in entering damages. It is highly likely that one purpose of Hydra's "reorganization" and later acquisition/merger was for Hydra to distance itself from this liability. Doing so will substantially increase the difficulty of execution of any judgment, and therefore, cause BSI to expend substantial additional resources to effect such execution. Further, this Court should note that since Hydra walked away from this litigation, it has continued to send spam to BSI and others, as shown by Mr. Wagner in this application, and as evidenced by Hydra's current litigation (*Bank v. Hydra Group*, *supra*) under the California anti-spam statute, concerning emails it sent in 2010 to that plaintiff.

## III.    The Damages Sought Are Prescribed By Statute.

The Maryland anti-spam statute provides that any person who transmits or conspires to transmit commercial email that contains false or misleading information is liable to an interactive computer service provider "in an amount equal to the greater of $1,000 or the interactive computer service provider's actual damages." Md. Code Ann., Comm. Law §§ 14-3002(b); 14-3003(3) (West 2012). California's anti-spam statute expressly permits email service providers to sue to recover "either or both of" actual damages or liquidated damages of $1,000 per violation. Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(i)-(ii) (West 2012).

This case was filed on February 15, 2008. This Court has ruled that the Maryland anti-spam law has a three-year statute of limitations and that the California anti-spam statute has a one-year statute of limitations for statutory damages. All 45,773 emails at issue are actionable under Maryland's three-year statute of limitations. That results in $45,773,000 in damages. In addition, 23,918 of the 45,773 are actionable under California's one-year statute of limitations. That results in an additional $23,918,000 in damages, for a total of $69,691,000 in statutory damages.

As other courts have held, the awarding of these damages is not discretionary. *See Microsoft Corp. v. JDO Media, Inc.*, No. 04-0515, 2005 WL 1838609, at *3 (W.D. Wash. Aug. 1, 2005) (awarding maximum statutory damages of $24,125,000 under Washington's anti-spam law because "[g]iven the statutory language of CEMA, the court finds it has no discretion in the amount of damages it awards."). Further, numerous courts have awarded the full amount of substantial damages in similar anti-spam cases. *E.g.*, *Facebook, Inc. v. Guerbuez*, No. C08 03889 JF HRL, 2008 U.S. Dist. LEXIS 108921, at *1 (N.D. Cal. Nov. 21, 2008) (ordering $436,638,600 in statutory damages for violations of CAN-SPAM) (DE 388 Ex. 3); *MySpace, Inc. v. Wallace*, No. 2:07-cv-01929, 2008 WL 1766714, at *5 (C.D. Cal. May 29, 2008) (ordering statutory damages against two defendants of $160,390,200 and $233,777,500 for violations of CAN-SPAM); *Am. Online v. Smith*, No. 05-0344, 2006 WL 181674, at *3 (E.D. Va. Jan. 24, 2006) (awarding maximum amount of statutory damages under Virginia's anti-spam law); *Kramer v. Cash Link Sys.*, No. 3-03-CV-80109, 2004 WL 2952561, at *7 (S.D. Iowa Dec. 17, 2004) (ordering statutory damages against three defendants of $360,000,000, $720,000,000 and $140,000 for violations of Iowa's anti-spam law, RICO, and the Iowa Ongoing Criminal Conduct Act).

Finally, both the Maryland and California statutes provide for reasonable attorneys' fees, and the California statute also provides for costs. *See* Md. Comm. Law § 14-3003 ("A person who violates this subtitle is liable for reasonable attorney's fees and for damages: . . . (3) to an interactive computer service provider, in an amount equal to the greater of $1,000 or the interactive computer service provider's actual damages."); Cal. Bus. & Prof. Code § 17529.5(b)(1)(C) ("The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.").

## **CONCLUSION**

Accordingly, BSI respectfully requests that this Court enter a final judgment for damages against Hydra in the amount of $69,691,000, and for reasonable attorneys' fees and costs in an amount to be determined upon further submissions by BSI.

Date: October 17, 2012

Respectfully submitted,

      /s/
Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)
Jeffrey E. McFadden (D. Md. Bar No. 8738)
John J. Duffy (D. Md. Bar No. 28613)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
ryoerges@steptoe.com
jmcfadden@steptoe.com
jduffy@steptoe.com

Anthony A. Onorato (US DC-MD Bar No. 28622)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com