# EXHIBIT 5

Page 1

```
         IN THE UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF MARYLAND
- - - - - - - - - - - - - - - X

 BEYOND SYSTEMS, INC.,         :

         Plaintiff,            :

    v.                         : Case No. 8:08-cv-00409

                               : (PJM)

 KRAFT FOODS, INC., et  al.,  :

         Defendants.           : CONFIDENTIAL

- - - - - - - - - - - - - - - X
```

Deposition of PAUL ANDREW WAGNER, a witness herein, called for examination by counsel for Defendants in the above-entitled matter, pursuant to subpoena, the witness being duly sworn by ANN L. BLAZEJEWSKI, a Notary Public in and for the District of Columbia, taken at the offices of Perkins Coie, 607 Fourteenth Street, N.W., Washington, D.C., at 10:09 a.m., Monday, May 11, 2009, and the proceedings being taken down by Stenotype by ANN L. BLAZEJEWSKI, RMR, CRR, and transcribed under her direction.

```
                                                           Page 2
 1     APPEARANCES:
 2
 3     On behalf of the Plaintiff:
 4          STEPHEN H. RING, ESQ.
 5          Law Offices of Stephen H. Ring, P.C.
 6          20300 Seneca Meadows Parkway, Suite 200
 7          Germantown, Maryland 20876
 8          (301) 540-8180
 9          (301) 540-8195 FAX
10          shr@ringlaw.us
11
12          THOMAS M. BARBA, ESQ.
13          Steptoe & Johnson
14          1330 Connecticut Avenue, N.W.
15          Washington, D.C. 20036-1795
16          (202) 429-8127
17          (202) 261-9838 FAX
18          tbarba@steptoe.com
19
20
21
22
```

```
                                                           Page 3
 1      APPEARANCES:  (CONT.)
 2      On behalf of the Defendant Kraft Foods:
 3              JOHN K. ROCHE, ESQ.
 4              Perkins Coie, LLP
 5              607 Fourteenth Street, N.W.
 6              Washington, D.C. 20005-2011
 7              (202) 434-1627
 8              (202) 654-9106 FAX
 9              jroche@perkinscoie.com
10
11      On behalf of Defendants Connexus and Hydra:
12              ARI N. ROTHMAN, ESQ.
13              Venable LLP
14              575 7th Street, N.W.
15              Washington, D.C. 20004-1601
16              (202) 344-4000
17              (202) 344-8300 FAX
18              anrothman@venable.com
19
20
21
22
```

1  net.

2          BY MR. ROCHE:

3      Q.   If we could flip over to the next page,
4  your response to Interrogatory Number 2, down about,
5  right in the middle of the page there, a portion that
6  reads, "Finally, BSI seeks actual damages including
7  but not limited to $31,011.05."

8      A.   Yes.

9      Q.   Where does that number come from?

10     A.   I believe that comes from a table of actual
11 damages that BSI compiled and produced in this
12 litigation.

13     Q.   To the best of your recollection, what's
14 included in that number $31,011.05?

15     A.   Well, it would probably reflect the various
16 upgrades that BSI had to perform in order to maintain
17 the same level of quality of service.

18     Q.   Over what time period?

19     A.   Probably over several years.

20     Q.   Can you narrow that down for me?

21     A.   I forget when we -- it would include 2008
22 back to I would guess 2005.  So during the period when

Page 41

1   the e-mails at issue were being sent.
2       Q.   Okay.  So this is just damages from '05
3   through whenever you filed this response?
4       A.   I think so, yes.
5       Q.   Okay.  And is this number related to
6   e-mails you have received in general or is it in any
7   way targeted to specific e-mails that you contend have
8   harmed BSI?
9       A.   Each e-mail has harmed BSI, has contributed
10  to all these necessary upgrades, each of them have
11  been a factor in this requirement to upgrade in order
12  to maintain the same level of quality of service.
13      Q.   Do you contend the Kraft e-mails at issue
14  are the only ones you have received during this time
15  period?
16      A.   You mean has BSI received e-mails other
17  than from Kraft during this...?
18      Q.   Other unsolicited commercial e-mail.  Have
19  you received it from other entities?
20      A.   Yes, it has.
21      Q.   What portion would you estimate makes up --
22  strike it.  Of the UCE that you have received, what

Case 8:08-cv-00409-PJM   Document 593-5   Filed 10/23/12   Page 7 of 8
Wagner, Paul Andrew - Vol. I CONFIDENTIAL                May 11, 2009
Washington, DC

Page 42

1  portion of that consists of Kraft e-mails?

2      A.   You mean the e-mails we have identified so
3  far that we attribute to Kraft or including e-mails we
4  have not yet --

5      Q.   From 2005 on, what would you say is the
6  percentage of the UCE you have received that you can
7  attribute to Kraft?

8      A.   Okay, because there are additional e-mails
9  that promote various incentive awards, and Kraft,
10 Gevalia is not listed explicitly in the e-mail, but
11 when you go to the landing page web site, you find
12 there are five to eight sponsors, one of them is
13 Gevalia.  So I would say those e-mails also are
14 attributable to Gevalia, but we are not able to
15 identify all those, so I don't have a final fixed
16 answer, but as far as e-mails that contain Gevalia
17 explicitly, it's surely -- it would surely be less
18 than 1 percent, as far as we know.

19     Q.   So the Kraft e-mails consist of less than 1
20 percent of the total UCE you have received since 2005?

21     A.   Yes, these e-mails at issue are less than 1
22 percent of what BSI has received since 2005.

Case 8:08-cv-00409-PJM   Document 593-5   Filed 10/23/12   Page 8 of 8
Wagner, Paul Andrew - Vol. I CONFIDENTIAL                    May 11, 2009
Washington, DC

Page 43

1  Q.  And this $31,011.05, that number, is that
2  just for BSI or does that include any other entities,
3  Hypertouch, for example?
4  A.  I imagine Hypertouch has its own actual
5  costs, but these are BSI's costs.
6  Q.  If we could flip over to your response to
7  Interrogatory Number 4, and we actually already
8  touched on this issue.  You'll note that it lists your
9  experts Dr. Klensin, Levine, and Mr. Resnick?
10 A.  Yes.
11 Q.  If we could just one by one go through each
12 of them, starting with Dr. Klensin, how do you know
13 him?  How did you come to have a relationship with
14 him?
15 A.  See, he is I think well known as the chief
16 editor of the Simple Mail Transport Protocol and other
17 related protocols and standards.
18 Q.  How did you come to know of him?  Is that
19 how you came to know of him?
20 A.  Yes.  Yes.
21 Q.  When did you first communicate with him?
22 A.  I think it was in 2007.  It might have been