# EXHIBIT 8

J. Joseph Curran, Jr
Attorney General

Carmen M. Shepard
Donna Hill Staton
Deputy Attorneys General



William Leibovici
Chief, Consumer
Protection Division

## STATE OF MARYLAND
## OFFICE OF THE ATTORNEY GENERAL
### CONSUMER PROTECTION DIVISION

WRITER'S DIRECT DIAL NO.
(410) 576-6307

February 28, 2002

The Honorable Michael E. Busch, Chairman
House Economic Matters Committee
150 Lowe House Office Building
Annapolis, MD 21401

    Re: House Bill 915

Dear Chairman Busch:

    I am writing concerning House Bill 915, sponsored by Delegate Joan B. Pitkin and cosponsored by Delegates Bobo, Cadden, Conroy, DeCarlo, Dypski, Heller, Howard, Hubbard, Kagan, Shank and Sophocleus, that concerns deceptive unsolicited commercial e-mail received by Maryland consumers.

    The Consumer Protection Division shares the sponsors' concerns about the impact of unsolicited commercial e-mail, known as "spam," upon Maryland businesses and consumers. "Spam" has been a source of concern for consumers who need to sift through significant amounts of unwanted solicitations to locate important messages. House Bill 915 would address e-mail messages that make the sifting process more difficult by misrepresenting either the sender or the subject matter of the e-mail message. In addition to lost productivity, deceptive spammers often disguise pornographic e-mail by misrepresenting the subject matter, which may then be opened by unsuspecting consumers or their children.

    However, the Division believes that, as drafted, House Bill 915 would have little impact in preventing deceptive spam. Instead, the Division believes that the Committee should consider the approach taken by the Washington State law concerning deceptive spam, which gives consumers and Internet

200 Saint Paul Place, 16th Floor ♦ Baltimore, Maryland 21202-2021
Telephone Numbers: (410) 576-6550 ♦ (888) 743-0023 ♦ D.C. Metro: (301) 470-7534 ♦ Fax: (410) 576-6566
Consumer Complaints and Inquiries: (410) 528-8662 ♦ Health Advocacy Unit/Billing Complaints: (410) 528-1840
Telephone for Deaf: (410) 576-6372

The Honorable Michael E. Busch
February 28, 2002
Page 2

Service Providers the right to bring an action against the sender of the deceptive e-mail and collect statutory damages. Consumers in that State have used the law to bring private actions against senders of deceptive e-mail. Although it will be difficult for many consumers to trace the sender of the deceptive e-mail and collect damages if successful in their action, it will nevertheless offer consumers an avenue for addressing their concerns about spam. I am enclosing an article discussing the Washington State law, which has been upheld by that State's Supreme Court and the U.S. Supreme Court.

The Division has discussed its concerns about House Bill 915 with the sponsor and would be happy to work with the Economic Matters Committee and the sponsors to prepare amendments to House Bill 915 that would incorporate the approach to deceptive spam taken by the Washington State law. Thank you for your consideration of this matter.

Sincerely,

Steven M. Sakamoto-Wengel
Assistant Attorney General

cc:   The Honorable Joan B. Pitkin
      The Honorable Elizabeth Bobo
      The Honorable Joan Cadden
      The Honorable Mary A. Conroy
      The Honorable Diane DeCarlo
      The Honorable Cornell N. Dypski
      The Honorable Henry B. Heller
      The Honorable Carolyn J. B. Howard
      The Honorable James W. Hubbard
      The Honorable Cheryl C. Kagan
      The Honorable Christopher B. Shank
      The Honorable Theodore Sophocleus



**eattletimes.com**
The Seattle Times

Saturday, January 12, 2002, 12:00 a.m. Pacific

*Permission to reprint or copy this article/photo **must** be obtained from The Seattle Times. Call 206-464-3113 or e-mail resale@seattletimes.com with your request.*

# On the trail of taking a bite out of spammers

By Peter Lewis
*Seattle Times consumer-affairs reporter*

With spam volumes at all-time highs and its depraved content at all-time lows, it's nice to have a guy like Bennett Haselton around to do some trailblazing.

    E-mail this article
    Print this article

Haselton is among the handful of state residents taking matters into their own hands by going to small-claims court to combat the stream of spam — junk e-mails with come-ons for get-rich-quick schemes, sex-enhancing drugs and pornography.

It's only fitting that the job should fall to a Bellevue 23-year-old who drives two beaters with personalized license plates "NERDPOWR" and "NRDVANA."

Haselton, who works as a contract programmer, has yet to collect a dime, but he is encouraged by four $500 judgments he won last month in Bellevue District Court's small-claims division. He plans to send the cases to a collection agency if the spammers don't pay up.

Haselton and a few others started gearing up last summer after the state Supreme Court revived an anti-spam law that a lower court had ruled unconstitutional.

The 1998 statute was designed to protect state residents against bulk commercial e-mails that contain misleading information in the subject line, use a third party's Internet address without permission or disguise the message's origin. Most spam falls into one or more of those categories, experts say.

Under the law, recipients of such messages can go to court to try to collect $500 or actual damages, whichever is greater.

To date, Haselton has lost only one case, and that was because a judge disagreed with him over whether a particular message's subject line qualified as "misleading."

Meantime, he has more than 40 additional cases pending. He learns a bit more with each case, including the sometimes-jarring realization that judges disagree about how to handle spam cases.

**Why it's called that**

Why unsolicited, commercial e-mail is called spam:

"The generally accepted version is that it comes from the Monty Python song, 'spam spam spam spam, spam spam spam spam, lovely spam, wonderful spam.' Like the song, spam is an endless repetition of worthless text."

— *from ISP-Planet at www.internet.com*

"One of the problems that I kept running into was that I'd get contradictory information from different judges on different days in the same courtroom about how to handle cases that were basically identical," Haselton said.

For example, one judge told him he couldn't sue in small-claims court unless he had lost money, he said. Other judges have said otherwise.

On another occasion, a judge said that if he got more than one objectionable e-mail from the same company, Haselton could sue for damages only once. Other judges said otherwise.

**Spam information, tips on fighting back**

www.peacefire.org/anti-spam/

www.metrokc.gov/kcdc/smclhome.htm

www.aboutspam.com/

www.spamlaws.com/

And judges also have disagreed on whether Haselton can sue a company that has hired someone else to spam on their behalf. One more hitch: District Court staffers have dispensed contradictory information on whether he can sue spammers located outside the jurisdiction, Haselton said.

### Variety of interpretations

Judge J. Wesley Saint Clair, King County District Court presiding judge, said spam cases are relatively new.

"The law is an interesting creature," he said. "It can be interpreted a variety of ways, and the proponent of any particular issue has to convince the trier of fact of the accuracy of their position."

Besides the procedural setbacks, there are other obstacles that make the course Haselton has chosen a tricky one for most people.

Haselton, who graduated from Vanderbilt University at age 20 with a bachelor's and master's degree in math, is well-suited for the task. He likes to figure things out.

"It's a minority of the amount of spam that I get where you can actually track down the individual or corporation responsible and sue them," he said. "It's a little tricky."

Another problem: satisfying judges that he has properly notified a defendant, because the court holds plaintiffs to a "strict standard to prove that you've served the right party," he said. Among other methods, he has used registered letters.

Haselton believes that once enough judges become experienced handling spam cases — or once a case goes up on appeal to set a binding precedent on how the law should work — uniform procedures will be adopted that will make it relatively easy to take action against spammers.

The long-term strategy is to reach a point "where spamming becomes so expensive (for spammers) that it's just not profitable to do it," Haselton said.

That point is quite a ways down the road. And for now, the spam keeps piling up.

### A spike in spamming

Brightmail, a San Francisco company that sells spam-catching software, says there has been a five-fold increase in the volume of spam in the past 18 months.

Chief Executive Officer Gary Hermansen isn't sure why that has occurred. A significant spike in the last quarter of last year could be linked, he said, to security concerns after Sept. 11 and to anthrax mail scares, which spammers may have seen as an opportunity.

At the same time, the rawness of pornographic spam seems to have plumbed new lows. Jim Kendall, president of the Washington Association of Internet Service Providers, and a promoter of the state's anti-spam law, thinks the sources for most of that have moved offshore to "Third World Internet service providers desperate for money."

Haselton thinks he receives less pornographic spam, and more "upscale" come-ons for products and services for Webmasters, because he's listed as the contact person for a well-trafficked Web site.

Spam annoys him for the same reasons it irritates many — it takes time to delete, and he sometimes misidentifies legitimate e-mail as junk mail, causing him to kill or ignore messages he should have paid attention to.

For Haselton, the more serious concern is that he runs an electronic "mailing list" that has become a casualty of hard line, anti-spam measures.

"A lot of places are dealing with the (spam) problem by taking extremely aggressive anti-spam measures," he said. "And they end up filtering a lot of messages, and legitimate news letters, and even sometimes just individual messages that I'm sending to people, and these paranoid spam filters end up blocking it."

**Not the only fighter**

He isn't the only spam fighter to turn to small-claims court to turn the tables on spammers.

Ben Livingston, 22, has made a hobby of suing telemarketers and those who send him spam. So far, he has netted $524.74, has eight claims pending (view them at www.smallclaim.info) and has published a zine called "Zen and the Art of Small Claims," which is available by sending a self-addressed stamped envelope to P.O. Box 95227, Seattle, WA 98145.

There is no charge, but Livingston, vice president of a small Internet-service provider in Ballard, wouldn't mind if people tossed in a few extra stamps.

Bruce Miller of Shoreline has four cases pending. Before plunking down his $21 filing fee in small-claims court, Miller sends out "demand letters" to companies that have spammed him.

"My typical routine is to send out a demand letter and put a deadline on it," Miller said. "If I don't hear from them, then they are fair game. Actually, they're fair game already."

Another Seattle-area man, Martin Palmer, says on his Web site that he's gone "20 for 23" in small-claims cases and had recovered $18,650 before the law was overturned in March 2000. But those winnings have been difficult to substantiate.

Haselton said Palmer told him that, in some cases, Palmer agreed to confidential settlements. That's not something Haselton is interested in, he said, "because the point is to make it a matter of public record that this can be done, and educate other people about how this can be done."

Of the four companies or individuals that Haselton obtained judgments against, the representative of only one, Bulk ISP of Nevada, would comment.

Ty Lee, who described himself as a company director, at first contended that the state law under which Haselton sued was "stricken."

Reminded that the state Supreme Court revived the law last summer, Lee asked, "Do you think we're going to pay the $500?"

*Peter Lewis can be reached at 206-464-2217 or plewis@seattletimes.com. Seattle Times columnist Nicole Brodeur contributed to this report.*

Copyright © 2002 The Seattle Times Company