# EXHIBIT 9

**IN THE**
**COURT OF SPECIAL APPEALS OF MARYLAND**
————————————

September Term, 2004
————————————

No. 2321
————————————

**MARYCLE, LLC,** *et al.*,

*Plaintiffs-Appellants,*

v.

**FIRST CHOICE INTERNET, INC.,** *et al.*,

*Defendants-Appellees.*
————————————

On Appeal from the Circuit Court for Montgomery County
(Durke G. Thompson, Judge)
————————————

**BRIEF OF THE STATE OF MARYLAND AS** *AMICUS CURIAE*
————————————

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

STEVEN M. SULLIVAN
Solicitor General
200 St. Paul Place, 20th Floor
Baltimore, Maryland  21202
(410) 576-6324

Attorneys for the State of Maryland

June 24, 2005

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICUS CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    State And Federal Laws Addressing The Problem Of Unauthorized, False Or Misleading Commercial Electronic Mail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Legislative History Of The Maryland Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    IF THE COURT REACHES THE ISSUE, THE MARYLAND COMMERCIAL ELECTRONIC MAIL ACT DOES NOT VIOLATE THE COMMERCE CLAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX

# TABLE OF AUTHORITIES

## Cases

*Ayres v. Townsend*, 324 Md. 666 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Berlin v. Aluisi*, 57 Md. App. 390 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Beyond Systems, Inc. v. Realtime Gaming Holding Co.*,
    ___ Md. ___, 2005 WL 1458056,
    No. 119, Sept. Term, 2004 (June 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Commonwealth of Virginia v. Jaynes*, 65 Va. Cir. 355,
    2004 WL 2085359 (Loudoun Co. Cir. Ct. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fenn v. MLeads Enterprises, Inc.*, 103 P.3d 156 (Utah App. 2004) . . . . . . . . . . . . . . . 7

*Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr.2d 258 (Cal. App. 2002) . . . . . . . . . . 4,7

*Governor of Maryland v. Exxon Corp.*, 279 Md. 410 (1977) . . . . . . . . . . . . . . . . . . . . 7,9

*Lillebo v. Davis*, 272 Cal. Rptr. 638 (Cal. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ruhrgas AG v. Marathon Oil* Co., 526 U.S. 574 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 8

*State ex rel. Attorney General v. Burning Tree Club, Inc.*, 301 Md. 9 (1984) . . . . . . . . . 1

*State of Washington v. Heckel*, 24 P.3d 404 (Wash. 2001),
    *cert. denied*, 534 U.S. 997 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*State of Washington v. Heckel*, 93 P.3d 189 (Wash. App. 2004),
    *review denied*, 108 P.3d 1229 (Wash. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wolinski v. Browneller*, 115 Md. App. 285 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Constitutional Provisions, Statutes, and Session Laws

United States Constitution, Article 1, § 8, clause 3 . . . . . . . . . . . . . . . . . . . . . . . *passim*

Pub. Law 108-187, 108th Congress, 117 Stat. 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15 U.S.C.
    § 7701(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    § 7706(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 7707(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Md. Code Ann.,

    Comm. Law (2000 Repl. Vol. and 2003 Supp.)
    § 13-102(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    § 13-102(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    §§ 14-3001 - 14-3003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

    Cts. & Jud. Proc. 3-405(c) (2002 Repl. Vol.) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Alaska Stat. § 45.50.479 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Ariz. Rev. Stat. Ann. § 44-1372 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Ark. Code Ann. (2003)
    § 5-41-205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    §§ 4-88-601 to 4-88-607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Cal. Bus. & Prof. Code (2003 and 2004 Supp.)
    §§ 17538.45 and 17529 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Cal. Penal Code § 502 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Colo. Rev. Stat. Ann. §§ 6-2.5-101 to 6-2.5-105 (2003) . . . . . . . . . . . . . . . . . . . . . . 3n
Conn. Gen. Stat. Ann. §§ 53.451- 53.453 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Del. Code Ann. tit. 11 (2003)
    § 931 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    §938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Florida Stats. (2004)
    § 668.60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 668.601 to 668.606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 668.6075 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Idaho Code § 48-603E (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
815 Ill. Comp. Stat. (2003)
    505/2Z . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    511/1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    511/5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    511/10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    511/15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
720 Ill. Comp. Stat. 5/16D-3 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Ind. Code § 24-5-22 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Iowa Code (2003)
    § 714E.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 714E.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
La. Rev. Stat. Ann. §§ 73.1-73.6 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Me. Rev. Stat. Ann. tit. 10, § 1497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
2003 Mich. Pub. Acts 4519 (enacted July 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Minn. Stat. § 325F.694 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Mo. Rev. Stat. §§ 407.1120 - 407.1132 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Nev. Rev. Stat. (2003)
    §§ 41.705-41.735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 205.492 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n

N.M. Stat. Ann. (2003)
    § 57-12-23  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 57-12-24  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
N.C. Gen. Stat. (2003)
    § 1-75.4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 1- 539.2A  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 14-453  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 14-458  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
N.D. Cent. Code § 51-27 (2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Ohio Rev. Code Ann. § 2307.64 (2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Okla. Stat. tit. 15, § 776 (2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
18 Pa. Cons. Stat. (2003)
    § 5903  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 7661  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
R.I. Gen. Laws (2003)
    § 6-47-2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    §§ 11-52-1 to 11-52-6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
S.D. Codified Laws (2003)
    § 37-24-6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 37- 24-36  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 37-24-37  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Tenn. Code Ann. (2003)
    § 47-18-2501  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 47-18- 2502  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Tex. Bus. & Com. § 46 (2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Utah Code Ann. §§ 13-36-101 to 13-36-105 (2003)  . . . . . . . . . . . . . . . . . 3n
Va. Code Ann. (2003)
    § 8.01-328.1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    §§ 18.2-152.2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 152.3:1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 152.4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 152.12  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
    § 152.16  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Wash. Rev. Code §§ 19.190.010 to 19.190.050 (2003)  . . . . . . . . . . . . . . . 3n
W. Va. Code §§ 46A-6G-1 to 46A-6G-5 (2003)  . . . . . . . . . . . . . . . . . . . . . 3n
Wis. Stat. § 944.25 (2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n
Wyo. Stat. Ann. §§ 40-12-401 to 40-12-404 (2003)  . . . . . . . . . . . . . . . . . . 3n

**Miscellaneous**

R.T. Nimmer & H.K. Towle,
    *The Law of Electronic Commercial Transactions* ¶ 13.07[4]
    (current through May 2005 Update)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3n, 4n


"Validity of State Statutes and Administrative Regulations
    Regulating Internet Communications under Commerce Clause
    and First Amendment of Federal Constitution,"
    98 A.L.R.5th 167 (Westlaw on-line edition updated weekly)
    (last visited June 23, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4n

**IN THE**
**COURT OF SPECIAL APPEALS OF MARYLAND**

_____

September Term, 2004

_____

No. 2321

_____

**MARYCLE, LLC, _et al._,**

_Plaintiffs-Appellants,_

**v.**

**FIRST CHOICE INTERNET, INC., _et al._,**

_Defendants-Appellees._

_____

On Appeal from the Circuit Court for Montgomery County
(Durke G. Thompson, Judge)

_____

**BRIEF OF THE STATE OF MARYLAND AS _AMICUS CURIAE_**

_____

**INTEREST OF _AMICUS CURIAE_**

As set forth in its motion for leave to participate in this case as _amicus curiae_, in this action where the constitutionality of a Maryland statute has been drawn into question, the Attorney General "is entitled to be heard" and to "submit his views in writing. . . ."  Md. Code Ann., Cts. & Jud. Proc. 3-405(c).[1]  _See State ex rel. Attorney General v. Burning Tree Club, Inc._, 301 Md. 9, 37 (1984)("under the Constitution and statutes of Maryland the Attorney General ordinarily has the duty of appearing in the courts as the defender of the validity of enactments of the General Assembly").

_____

[1]The Attorney General was not "served with a copy of the proceedings" as contemplated by Md. Code Ann., Cts. & Jud. Proc. §3-405(c), according to the records of the Office of the Attorney General.

**State And Federal Laws Addressing The Problem Of Unauthorized, False Or Misleading Commercial Electronic Mail**

The General Assembly has declared consumer protection to be "one of the major issues which confront all levels of government," Md. Code Ann., Comm. Law § 13-102(a)(1), and has called for "strong protective and preventive steps" to "assist the public in obtaining relief" from unlawful consumer practices, *id*., § 13-102(b)(3). To that end, in 2002 the General Assembly adopted the Maryland Commercial Electronic Mail Act, Md. Code Ann., Comm. Law §§ 14-3001 - 14-3003, to provide a remedy for unauthorized, false or misleading commercial electronic mail transmissions ("e-mail"), sometimes known as "spam."

In 2003, the United States Congress similarly recognized the need to address the problem of unwanted commercial e-mail, by enacting the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, Pub. Law 108-187, 108th Congress, 117 Stat. 2699 ("CAN-SPAM Act"). According to Congressional findings, "[u]nsolicited commercial electronic mail is currently estimated to account for over half of all electronic mail traffic, up from an estimated 7 percent in 2001, and the volume continues to rise." 15 U.S.C. §7701(a)(2). "Most of these messages are fraudulent or deceptive in one or more respects," *id*., and "[m]any senders of unsolicited commercial electronic mail purposefully disguise the source of such mail," *id*. § 7701(a)(7), or "purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages," *id*. § 7701(a)(8).

The CAN-SPAM Act specifically authorizes enforcement of its provisions by "the attorney general of a State, or an official or agency of a State" on behalf of "the residents of

2

the State. . . ." 15 U.S.C. § 7706(f). In addition, Congress has recognized the States' continuing authority to maintain and enforce State statutes, regulations or rules, such as Md. Code Ann., Comm. Law §§ 14-3001 to 14-3003, which prohibit falsity or deception in any portion of a commercial electronic mail message or information attached thereto, as well as other laws not specific to electronic mail and those that relate to fraud or computer crime. *See* 15 U.S.C. §§ 7707(b)(1); 7707(b)(2).

At least 36 other States have enacted laws that are similar to the Maryland Act at issue here, in that they prohibit the sending of commercial e-mail that obscures or misrepresents the origins or purposes of the e-mail transmission.[2] To date, there have been only two reported appellate court cases addressing constitutional challenges to such laws, and in each of those cases, the State statute was held not to violate the Commerce Clause. *See State of*

---

[2]*See* R.T. Nimmer & H.K. Towle, *The Law of Electronic Commercial Transactions* ¶ 13.07[4] at n.3 (current through May 2005 Update) (citing Alaska Stat. § 45.50.479 (2003); Ariz. Rev. Stat. Ann. § 44-1372 (2003); Ark. Code Ann. § 5-41-205; §§ 4-88-601 to 4-88-607 (2003); Cal. Bus. & Prof. Code §§ 17538.45 and 17529 (2003 and 2004 Supp.); Cal. Penal Code § 502 (2003); Colo. Rev. Stat. Ann. §§ 6-2.5-101 to 6-2.5-105 (2003); Conn. Gen. Stat. Ann. §§ 53.451- 53.453 (2003); Del. Code Ann. tit. 11, §§ 931, 937, 938 (2003); Florida Stats. §§ 668.60, 668.601 to 668.606, and 668.6075 (2004); Idaho Code § 48-603E (2003); 815 Ill. Comp. Stat. 505/2Z, 511/1, 511/5, 511/10, 511/15 (2003) and 720 Ill. Comp. Stat. 5/16D-3 (2003); Ind. Code § 24-5-22 (2003); Iowa Code §§ 714E.1, 714E.2 (2003); La. Rev. Stat. Ann. §§ 73.1-73.6 (2003); Me. Rev. Stat. Ann. tit. 10, § 1497; 2003 Mich. Pub. Acts 4519 (enacted July 11, 2003); Minn. Stat. § 325F.694 (2003); Mo. Rev. Stat. §§ 407.1120-407.1132 (2003); Nev. Rev. Stat. §§ 41.705-41.735, 205.492 (2003); NM Stat. Ann. §§ 57-12-23, 57-12-24 (2003); N.C. Gen. Stat. §§ 1-75.4, 1- 539.2A, 14-453, 14-458 (2003); N.D. Cent. Code § 51-27 (2003); Ohio Rev. Code Ann. § 2307.64 (2003); Okla. Stat. tit. 15, § 776 (2003); 18 Pa. Cons. Stat. §§ 5903, 7661 (2003); R.I. Gen. Laws §§ 6-47-2, 11-52-1 to 11-52-6 (2003); S.D. Codified Laws §§ 37-24-6, 37- 24-36, 37-24-37 (2003); Tenn. Code Ann. §§ 47-18-2501, 47-18- 2502 (2003); Tex. Bus. & Com. § 46 (2003); Utah Code Ann. §§ 13-36-101 to 13-36-105 (2003); Va. Code Ann. § 8.01-328.1 (2003); Va. Code Ann. §§ 18.2-152.2, 152.3:1, 152.4, 152.12, 152.16 (2003); Wash. Rev. Code §§ 19.190.010 to 19.190.050 (2003); W. Va. Code §§ 46A-6G-1 to 46A-6G-5 (2003); Wis. Stat. § 944.25 (2003); Wyo. Stat. Ann. §§ 40-12-401 to 40-12-404 (2003)).

*Washington v. Heckel*, 24 P.3d 404 (Wash. 2001)(upholding Washington's commercial electronic mail act, Wash. Rev. Code § 19.190.010, as facially valid under the Commerce Clause), *cert. denied*, 534 U.S. 997 (2001), *on remand*, 93 P.3d 189 (Wash. App. 2004)(holding statute did not violate Commerce Clause as applied), *review denied*, 108 P.3d 1229 (Wash. 2005).  *See also Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr.2d 258 (Cal. App. 2002)(holding Cal. Bus. & Prof. Code § 17538.4, regulating the transmission of unsolicited commercial e-mails, does not violate the dormant Commerce Clause).  In the only other pertinent reported decision of any court,[3] a circuit court in neighboring Virginia has rejected a Commerce Clause challenge to that State's criminal statute governing the transmission of unsolicited bulk electronic mail.  *See Commonwealth of Virginia v. Jaynes*, 65 Va. Cir. 355, 2004 WL 2085359 (Loudoun Co. Cir. Ct. 2004).

## Legislative History Of The Maryland Act

According to the legislative history of the Maryland Commercial Electronic Mail Act, the General Assembly sought to ensure its constitutionality by modeling the Act after Washington's similar statute, which Washington's highest court had upheld as valid under the Commerce Clause. *See* Senate Bill 538, 2002 Session, Floor Report at page 2, last sentence, attached to this brief as State's Appendix ("State App.") at 2; House Bill 915, 2002 Session, Floor Report at page 3, last sentence (State App. 5); Feb. 19, 2002 Advice Letter from Assistant Attorney General Kathryn M. Rowe to the Honorable Robert C. Baldwin,

---

[3] *See* "Validity of State Statutes and Administrative Regulations Regulating Internet Communications under Commerce Clause and First Amendment of Federal Constitution," 98 A.L.R.5th 167 (Westlaw on-line edition updated weekly)(last visited June 23, 2005); R.T. Nimmer & H.K. Towle, *The Law of Electronic Commercial Transactions* ¶ 13.07[4] (current through May 2005 update).

4

Maryland House of Delegates at page 3 (State App. 8) (explaining the holding in *State of Washington v. Heckel*, 24 P.3d 404 (Wash. 2001), and citing *Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr.2d 258 (Cal. App. 2002)).  Prior to the final passage of the legislation, the General Assembly adopted amendments intended to address any remaining concerns about the validity of the Act under federal law.  *See* Amendments to Senate Bill No. 538 (State App. 9-11).  *See, e.g., id.*, Amendment 3 (State App. 10), now codified as § 14-3002(a) (providing that statute does not apply to an interactive computer service provider or telecommunications utility that merely handles, retransmits or carries e-mail sent by others).

## STATEMENT OF THE CASE

The State accepts the Appellants' Statement of the Case.

## QUESTION PRESENTED

If the question of the enactment's constitutionality is properly before this Court in light of the circuit court's determination that it lacked personal jurisdiction over the defendants, did the circuit court err in holding that the Maryland Commercial Electronic Mail Act violates the dormant Commerce Clause?

## STATEMENT OF FACTS

The State accepts the Appellants' Statement of Facts.  However, because the State was not a party in the proceedings below, it does not purport to be familiar with the specific facts of this case, and it takes no position on the truth or accuracy of the facts as stated by either set of parties.

## SUMMARY OF ARGUMENT

If the circuit court correctly found that it lacked personal jurisdiction over the defendants, then it was required to refrain from addressing the merits of defendants' constitutional challenge to the Maryland Commercial Electronic Mail Act.  If this Court determines the circuit court erred in finding a lack of personal jurisdiction, then the Court should reverse the circuit court's ruling on the merits, which disregards the intent of the Legislature and the pertinent, cogent authority on which it relied in adopting the Act.

## ARGUMENT

### IF THE COURT REACHES THE ISSUE, THE MARYLAND COMMERCIAL ELECTRONIC MAIL ACT DOES NOT VIOLATE THE COMMERCE CLAUSE.

With proper concern for the need to comply with constitutional requirements while legislating to protect Maryland residents, the General Assembly carefully crafted the Maryland Commercial Electronic Mail Act to emulate the State of Washington's similar statute, which already had withstood a Commerce Clause challenge.  In failing to heed the legislative intent that the Maryland Act be similarly construed and upheld, the circuit court below abandoned the judicial restraint and deference demanded by Maryland precedents governing review of legislation, as well as "the cardinal rule of statutory construction that statutes be so interpreted as not to render them unconstitutional." *Berlin v. Aluisi*, 57 Md. App. 390, 397 (1984). *See, e.g., Wolinski v. Browneller*, 115 Md. App. 285, 309 (1997)(this Court will "presume that the legislature intended the statute to be constitutionally sound, and we will interpret the statute in such a way to save it from constitutional infirmity, if our interpretation does not distort the meaning of the statute's plain language"). *See also Ayres v. Townsend*, 324 Md. 666, 675 (1991)("There is a presumption of the constitutionality of

6

a statute; to overcome the presumption, there must be a clear and convincing showing by the party assailing the statute that it does not rest upon any reasonable constitutional basis but is essentially arbitrary."); *Governor of Maryland v. Exxon Corp.*, 279 Md. 410, 424, 426 (1977)(in reviewing a constitutional challenge, including a claim under the Commerce Clause, "[j]udicial deference to legislative judgment is appropriate when reviewing legislation dealing with economic problems"; "statute enacted by the Legislature in the exercise of the police power 'is presumed to be valid and one attacking its validity has the burden of affirmatively and clearly establishing its invalidity'").

Instead, even upon determining that it had no personal jurisdiction over the defendants, Memorandum Opinion at 6-7, the circuit court went to great lengths to address their affirmative defense and find a violation of the Commerce Clause by "distinguishing" the only two appellate decisions in the Nation that have addressed similar commercial e-mail statutes, including the Washington statute that served as the model for Maryland, *id*. at 5 and nn. 4, 5 (distinguishing *Heckel*, 24 P.3d 404 and *Ferguson v. Friendfinders, Inc*., 115 Cal. Rptr.2d 258).

While the lower court's analysis of the personal jurisdiction issue may itself be subject to question, *compare Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, ___ Md. ___, 2005 WL 1458056, No. 119, Sept. Term, 2004 (June 22, 2005)(plaintiff in action under Maryland Commercial Electronic Mail Act failed to establish a *prima facie* case that defendants possessed the requisite minimum contacts for the exercise of long-arm jurisdiction satisfying due process), *with Fenn v. MLeads Enterprises, Inc.*, 103 P.3d 156 (Utah App. 2004)(reversing dismissal for lack of personal jurisdiction in consumer's action against non-resident corporation under State statute governing unsolicited commercial e-mail

and holding that due process requirements were satisfied), if the circuit court was correct in finding it lacked personal jurisdiction over the defendants, then it had no jurisdiction to adjudicate the merits.  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction)," and without personal jurisdiction a court is "powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil* Co., 526 U.S. 574, 577, 584 (1999)(citation omitted)(unanimous opinion).  Thus, in the absence of personal jurisdiction, the circuit court should have dismissed the complaint without ruling upon the Act's constitutionality, and there would be no need for this Court to address the constitutional question. *See Curran v. Price*, 334 Md. 149, 171 (1994)("If a decision on a constitutional question is not necessary for proper disposition of the case," the appellate court "will not reach it.").

　　If this Court does consider the constitutional challenge, then the Court should reverse the erroneous ruling of the circuit court, which is based on flawed analysis that conflicts with the intent of the General Assembly and the well-reasoned decision of the Washington Supreme Court, on which the Legislature relied in determining that Maryland's Act would satisfy the requirements of the Commerce Clause.  "[W]here it is obvious, as it is here, that the statute in question was enacted with constitutional prescriptions in mind, this represents a considered legislative judgment which is entitled to significant weight and deference," and a reviewing court must "resolve all doubts in favor of the legislative action." *Lillebo v. Davis*, 272 Cal. Rptr. 638, 655 (Cal. App. 1990).  Therefore, in accordance with the judgment of the General Assembly, the decision in *State of Washington v. Heckel* remains the best guide to understanding why the Maryland Commercial Electronic Mail Act does not

8

violate the Commerce Clause.

The Washington Supreme Court analyzed the dormant Commerce Clause challenge according to the two-step process outlined by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). *See Heckel*, 24 P.3d at 409. *See also Governor of Maryland v. Exxon Corp.*, 279 Md.. 410, 434-35 (1977)(similarly applying *Pike* principles). Under the *Pike* analysis, a court will "first determine whether the state law openly discriminates against interstate commerce in favor of intrastate economic interests." *Id*. "If the law is facially neutral, applying impartially to in-state and out-of-state businesses, the analysis moves to the second step, a balancing of the local benefits against the interstate burdens. . . ." *Id*. "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id*. "If a legitimate local purpose is found, then the question becomes one of degree," and "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id*.

In step one, the Washington Supreme Court determined that the State's commercial e-mail act is not "facially discriminatory" because it "applies evenhandedly to in-state and out-of-state spammers. . . ." *Id*. at 409. Similarly, the circuit court in this case found that "[o]n its face," the Maryland Act "does not discriminate against residents from other states. . . ." Memorandum Opinion at 6.

Proceeding to the second step, the court in *Heckel* determined that the Washington Act "survives the *Pike* balancing test" because "the Act's local benefits surpass any alleged

9

burden on interstate commerce. . . ." *Id*., 24 P.3d at 409.  Specifically, the Act "protects the interests of three groups – ISPs [Internet service providers], actual owners of forged domain names, and e-mail users" by providing them a remedy for "problems that spam causes." *Id*. These problems include a "tremendous burden" on computer equipment that results when local ISPs are forced to use limited memory space and processing power to store unwanted e-mails and must "labor in vain to return the messages to an address that does not exist." *Id*. (citation omitted). The actual owners of domain names and e-mail addresses unlawfully used by spammers also "suffer economic harm" when their computers are bombarded with responses to bulk e-mail messages that were sent by spammers using the forged domain names and e-mail addresses. *Id*. at 410.  Deceptive spam also "harms individual Internet users" because when "a spammer distorts the point of origin or transmission path of the message, e-mail recipients cannot promptly and effectively respond to the message (and thereby opt out of future mailings); their efforts to respond take time, cause frustration, and compound the problems that ISPs face in delivering and storing the bulk messages"; and "the use of false or misleading subject lines further hampers an individual's ability to use computer time most efficiently." *Id*.

The *Heckel* court concluded that the Washington Act "serves the 'legitimate local purpose' of banning" this involuntary shifting of costs "from deceptive spammers to businesses and e-mail users," which has been likened to "sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone." *Id*. at 410 (citation omitted).  The Act's requirement of truthfulness in commercial e-mail transmissions serves to "advance the Act's aim of protecting ISPs and consumers from the problems associated with commercial bulk e-mail" by making "'spamming unattractive to the many

10

fraudulent spammers, thereby reducing the volume of spam.'" *Id*. at 411 (citation omitted).

The court then contrasted these significant local benefits with "the only burden the Act places on spammers," which is "the requirement of truthfulness, a requirement that does not burden commerce at all but actually 'facilitates it by eliminating fraud and deception.'" *Id*. (citation omitted). "While spammers incur no costs in complying with the Act, they do incur costs for noncompliance, because they must take steps to introduce forged information into the header of their message." *Id*. Therefore, the defendant spammer could not "prove that 'the burden imposed on . . . commerce" by the Act "'is *clearly excessive* in relation to the putative local benefits.'" *Id*. (citation omitted)(emphasis in original).

The Washington Supreme Court concluded its analysis by disposing of arguments that the Act would impermissibly burden interstate commerce by creating inconsistency among the laws of the various states or by regulating out-of-state conduct. As to the alleged inconsistency among state laws, the court noted the number of other states that already had enacted legislation regulating e-mail solicitations; at that time there were 17 other states with similar laws, *id*. at 411-12, whereas now there would be at least 36 other states with such laws, as well as the federal CAN-SPAM Act that has been adopted since the decision in *Heckel*. The court determined that the "truthfulness requirements of the Act do not conflict with any of the requirements in the other states' statutes, and it is inconceivable that any state would ever pass a law requiring spammers to use misleading subject lines or transmission paths."*Id*. at 412. While the laws of some States may impose other requirements not found in the Act, such laws "'merely create additional, but not irreconcilable, obligations,'" which "are not considered to be 'inconsistent' for purposes of the dormant Commerce Clause analysis." *Id*. (citation omitted). Therefore, "the differences between the Act and the anti-

11

spam laws of other states" do not "impose extraordinary costs on businesses deploying spam." *Id*.

Finally, the *Heckel* court rejected the argument that any effect the Act has beyond State borders might violate the dormant Commerce Clause, because "there is no 'sweeping extraterritorial effect' that would outweigh the local benefits of the Act," as required to establish a violation under the *Pike* balancing analysis. *Heckel*, 24 P.3d at 412 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)). This conclusion is not contradicted by the possibility that a State resident might open and read offending e-mail messages while traveling out-of-state, since the Act does not purport to regulate when or where recipients may access their e-mail, but instead "addresses the conduct of spammers in targeting [the State's] consumers." *Id*. In sum, the Act does not have an impermissibly burdensome extraterritorial effect because it "reaches only those deceptive [unsolicited commercial e-mail] messages directed to" a resident of the State or "initiated from a computer located" within the State. *Id*. at 413.

This same analysis applies to sustain the constitutionality of the Maryland Act, as the General Assembly intended when it passed the legislation. This Court should adopt the reasoning of the Washington Supreme Court and uphold the statute.

## CONCLUSION

For the reasons stated above, the decision of the Circuit Court for Montgomery County should be reversed.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland

STEVEN M. SULLIVAN
Solicitor General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6324

June 24, 2005                                    Attorneys for the State of Maryland

Pursuant to Md. Rule 8-504(a)(8), this brief has been printed with proportionally spaced type:
Times New Roman - 13 point

13

# APPENDIX

**Page**

Senate Bill 538, 2002 Session, Floor Report                    State App. 1

House Bill 915, 2002  Session, Floor Report                    State App. 3

Feb. 19, 2002 Advice Letter from
Assistant Attorney General Kathryn M. Rowe to
the Honorable Robert C. Baldwin,
Maryland House of Delegates                                    State App. 6

Amendments to Senate Bill No. 538, 2002 Session               State App. 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of June, 2005, two copies of the foregoing

Brief of the State of Maryland as *Amicus Curiae* were sent by first-class mail, postage

prepaid to:

Michael S. Rothman, Esquire
401 East Jefferson Street, Suite 208
Rockville, Maryland  20850

Attorney for Appellants MaryCLE, LLC and NEIT Solutions, LLC

and

Andrew Dansicker, Esquire
Robert Schulman, Esquire
401 East Pratt Street, Suite 1800
Baltimore, Maryland  21202

Attorneys for Appellees First Choice Internet, Inc. and Joseph Frevola


_____

Steven M. Sullivan