EXHIBIT 15

1  Lawrence P. Riff (SBN 104826)
   lriff@steptoe.com
2  Lynn R. Levitan (SBN 176737)
   llevitan@steptoe.com
3  **STEPTOE & JOHNSON LLP**
   633 W 5th Street, Suite 700
4  Los Angeles, CA  90071
   Telephone : (213) 439-9400
5  Facsimile:   (213) 439-9599

6  Thomas M. Barba (admitted *pro hac vice*)
   John J. Duffy (admitted *pro hac vice*)
7  Anthony A. Onorato (admitted *pro hac vice*)
   Jennie L. Kneedler (admitted *pro hac vice*)
8  **STEPTOE & JOHNSON LLP**
   1330 Connecticut Ave., NW
9  Washington, DC  20036
   Telephone:  (202) 429-3000
10 Facsimile:   (202) 429-3902

11 Attorneys for Plaintiff
   BEYOND SYSTEMS, INC.
12
                    **UNITED STATES DISTRICT COURT**
13
                    **CENTRAL DISTRICT OF CALIFORNIA**
14

15

16 BEYOND SYSTEMS, INC., a            )   Case No.  CV08-01039 RGK PLAX
   Maryland corporation,              )
17                                    )   *Assigned to Hon. R. Gary Klausner*
                 Plaintiff,           )   *Courtroom 850*
18                                    )
           vs.                        )   **SECOND AMENDED AND**
19                                    )   **SUPPLEMENTAL RESPONSE**
   CONNEXUS CORP. (f/k/a              )   **TO DEFENDANT CONNEXUS**
20 VENDARE MEDIA and NETBLUE,         )   **CORP.'S FIRST SET OF**
   INC.), a Delaware corporation;     )   **INTERROGATORIES TO**
21 HYDRA MEDIA GROUP, INC., a         )   **BEYOND SYSTEMS, INC.**
   California corporation;            )
22 MAILCOMPANYX (d/b/a Internet       )
   Endeavors, Inc.), a Nevada         )
23 corporation, including SEBASTIAN   )
   BARALE, in his individual capacity;)
24 and Does 1 through 10, inclusive,  )
                                      )
25               Defendants.          )
                                      )
26

27

28

---

1

Beyond Systems, Inc. ("BSI") hereby submits its supplemental objections and responses to Defendant Connexus Corp.'s ("Connexus") First Set of Interrogatories (Nos. 1-12) (each individually an "Interrogatory" and collectively the "Interrogatories").

## OBJECTIONS TO DEFINITIONS

1.      BSI objects to the Definitions and Instructions to the extent they purport to impose upon BSI obligations beyond those set forth in the Federal Rules of Civil Procedure and/or applicable case law.

2.      BSI objects to the Instructions and Definitions to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence.

3.      BSI objects to the definition of "BSI," "you," and "your" insofar as these definitions are not limited to Plaintiff Beyond Systems, Inc., or natural persons or entities within the control of Plaintiff.

4.      BSI objects to the definition of "Hypertouch" insofar as the definition is not limited to Hypertouch, Inc., or natural persons or entities within the control of Hypertouch.

5.      BSI objects to the definitions of "person(s)" as vague, ambiguous and overly broad.  BSI further objects to the extent "person(s)" encompasses natural persons or entities not within the control of Plaintiff.

6.      BSI objects to the definitions of "Connexus," "Vendare," "NetBlue," "Hydra" and "MailCompanyX" to the extent the definitions include persons or entities not known to Plaintiff.

7.      BSI objects to the definition of the word "identify" in Definition 16 as unduly burdensome.  BSI further objects to the extent it purports to impose upon BSI obligations beyond those set forth in the Federal Rules of Civil Procedure and/or applicable case law.

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

## OBJECTIONS TO INSTRUCTIONS

1.    BSI objects to Instruction I as overly broad, unduly burdensome, and oppressive.  BSI further objects to the extent it purports to impose upon BSI obligations beyond those set forth in the Federal Rules of Civil Procedure and/or applicable case law.

## GENERAL OBJECTIONS TO INTERROGATORIES

1.    BSI reserves the right to supplement its objections and/or responses to the Interrogatories.

2.    The inadvertent disclosure of any privileged information, or inadvertent production of privileged documents or things, shall not be deemed to be a waiver of any applicable privilege with respect to such or any other information, documents, or things.

3.    Plaintiff objects to this entire set of Interrogatories on the ground that it exceeds Federal Rule of Civil Procedure Rule 33's limit of 25 Interrogatories including discrete subparts.  Plaintiff will respond to the first 25 interrogatories which it in good faith believes are or should be separate interrogatories pursuant to the rule and the case law interpreting the rule.  Plaintiff objects to responding to the remaining supernumerary interrogatories without a stipulation between the parties or Defendant securing leave of the Court.

4.    Plaintiff objects to these Interrogatories to the extent that they seek any information the production of which would violate any guaranteed right of privacy afforded to third parties by law, rule or regulation.

3

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

# INTERROGATORIES

## INTERROGATORY NO. 1:

State separately for each email you produced in response to Document Request Nos. 1-9 of Connexus's First Request for Production of Documents:

(a) all facts upon which you base your contention that the email violates California Business and Professions Code §§ 17529.1 et seq. and Maryland Commercial Law §§ 14-3001 et seq., including all facts upon which you base your contention that the email contains falsified, misrepresented and/or forged header information as alleged in Paragraphs 37-43, and Paragraphs 45 and 46 of the Complaint; all facts upon which you base your contention that the email contains a subject line designed to mislead a recipient regarding the contents or subject matter of the message as alleged in Paragraphs 38 and 48 of the Complaint; all facts upon which you base your contention that the email contains false, misrepresented and/or forged information in the message body itself as alleged in Paragraph 47; and whether anyone was misled by the email and if so the identity of such person and how such person was misled;

(b) the identity and role of each person and entity that you contend sent, directed, assisted, encouraged, conspired in, procured, initiated, participated in, and/or facilitated the sending of the email, and how you determined such identity and role, including the nature and extent of the role of Connexus, NetBlue, and/or Vendare in the email and how you determined such information;

(c) a description of each computer, server, and/or other equipment involved in receiving, storing, transmitting and/or redirecting the email, and for each computer, server, and piece of equipment : (i) its role (i.e., receiving, storing, transmitting and/or redirecting the email); (ii) the date and time the

4

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

1   email hit the computer, server, or piece of equipment; (iii) its physical

2   location when the email hit it; (iv) its owner when the email hit it; and (v)

3   whether it was part of the BSI network;

4   (d) whether the email was redirected or resent, and if so, where, when, how

5   many times, and why the email was redirected or resent;

6   (e) a description of the landing server (also referred to as the receiving mail

7   server), including the owner at the time the email hit the server, the physical

8   location of the server when the email hit the server, and whether the server

9   was part of the BSI network, and whether the email was downloaded from

10   the server (and if so when);

11   (f) the identity of the intended recipient (addressee) of the email and that

12   person's user ID;

13   (g) the identity of the actual recipient of the email and that person's user ID;

14   (h) a description of software BSI used in connection with receiving, storing,

15   and/or transmitting the email, including a description of the purpose of such

16   software;

17   (i) the format(s) in which you received the email, any reformatting you

18   performed, and whether you could render the email (i.e., view all of its

19   graphics) and whether you did so;

20   (j) whether you received any complaints from anyone (including any of your

21   customers) about the email, and if so, identify the customer and describe the

22   nature of the complaint and how it was resolved, and whether the customer

23   cancelled any service or returned any good;

24   (k) the nature and extent (including a quantification) of actual damages you

25   incurred, including damage to any of your computers, servers, and business

26   operations; and

27   (1) whether you are seeking to recover damages for the email in any other

28   litigation, and if so the style of the case (e.g., Beyond Systems, Inc. v. Kraft

Foods, Inc. et al., Case No. 8:08-CV-00409, pending in the United States District Court for the District of Maryland).

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff objects to this Interrogatory on the ground that it is divided into discrete subparts which are not factually subsumed and necessarily related to the primary question.

Plaintiff further objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Plaintiff further objects to this Interrogatory on the ground that the requested information is equally available to the propounding party and, at least in part, in Defendant's possession and subject to discovery in this action.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows and states in connection with each response below:  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement the Responses below should additional information become available:

1(a)        The Maryland and California statutes prohibit use of a third party's domain name without permission.  Emails at issue violate this prohibition, at least, because they are registered via a private registration / proxy service which itself prohibits the use of their domains in unlawful emails and/or in Unsolicited Commercial Emails, and nonetheless the senders used the proxy domains in emails with false or misleading attributes.  The Maryland and California statutes prohibit false, misrepresented, misleading, or forged header information, or information about the origin of the email.  Emails at issue contain, at least, false, misrepresented, misleading, or forged HELO parameters, routing information, "From" fields, "To" fields, spam check, sender information, and other header information, as well as false or misleading information in the body of the email regarding the origin of the email.  The Maryland and California statutes prohibit

6

false and deceptive subject lines.  Emails at issue contain subject lines designed to deceive spam filters and other protections against spam put in place by ISPs and users, and to deceive recipients about, inter alia, the nature, origin, offer, sender, or incentive of the email.

Plaintiff produced the emails it attributes to Defendant based on, among other things, that the email promoted or utilized a Defendant-owned domain, that the email linked to Defendant's server(s), and the email advertised a Defendant-owned landing page.

Information responsive to this Interrogatory is contained on the face of the emails and is therefore equally available to the propounding party.  Furthermore, the requested information is, at least in part, in Defendant's possession and subject to discovery in this action.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this response should additional information become available.

1(b)          Information responsive to this Interrogatory is contained on the face of the emails and is therefore, equally available to the propounding party.  Furthermore, the requested information is, at least in part, in Defendant's possession and subject to discovery in this action.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff

expressly reserves the right to supplement this response should additional information become available.

1(c)(i)        Plaintiff states that the following email-related servers have run the following programs on the following operating systems since February of 2005:

altmail.hasit.com (Stalker SMTP Server 1.8b9d14) -- Mac OS 8.1 - 9.2

beyondsystems.net (CommuniGate Pro SMTP 4.1.8) -- Windows XP

beyondsystems.net (CommuniGate Pro SMTP 4.2.9) -- Windows XP

beyondsystems.net (CommuniGate Pro SMTP 5.0.8) -- Windows XP

beyondsystems.net (CommuniGate Pro SMTP 5.1.6 _community_) -- Windows XP

linkcenter.net (CommuniGate Pro RULES 5.0.8) -- Windows XP

linkcenter.net (CommuniGate Pro RULES 5.1.10) -- Windows XP

linkcenter.net (CommuniGate Pro RULES 5.1.13) -- Windows XP

linkcenter.net (CommuniGate Pro SMTP 5.0.8) -- Windows XP

linkcenter.net (CommuniGate Pro SMTP 5.1.10) -- Windows XP

linkcenter.net (CommuniGate Pro SMTP 5.1.13) -- Windows XP

linkcenter.net (CommuniGate Pro SMTP 5.2.0) -- Windows XP

mail.hasit.com (Stalker SMTP Server 1.8b9d14) -- Mac OS 8.1 - 9.2

mail.reasonabledoubt.com (CommuniGate Pro RULES 4.2) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro RULES 4.3.6) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro RULES 5.0.1) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro RULES 5.0.2) -- Mac OS 10.3 through 10.5

1  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.0.7) -- Mac OS 10.3
2  through 10.5
3  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.0.9) -- Mac OS 10.3
4  through 10.5
5  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.1.12) -- Mac OS 10.3
6  through 10.5
7  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.1.4) -- Mac OS 10.3
8  through 10.5
9  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.1.5) -- Mac OS 10.3
10  through 10.5
11  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.1.8) -- Mac OS 10.3
12  through 10.5
13  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.1c.2) -- Mac OS 10.3
14  through 10.5
15  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.2.0) -- Mac OS 10.3
16  through 10.5
17  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.2c1) -- Mac OS 10.3
18  through 10.5
19  mail.reasonabledoubt.com (CommuniGate Pro RULES 5.2c3) -- Mac OS 10.3
20  through 10.5
21  mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.2) -- Mac OS 10.3 through
22  10.5
23  mail.reasonabledoubt.com (CommuniGate Pro SMTP 4.3.6) -- Mac OS 10.3
24  through 10.5
25  mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.0.1) -- Mac OS 10.3
26  through 10.5
27  mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.0.2) -- Mac OS 10.3
28  through 10.5

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.0.7) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.0.9) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1.12) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1.4) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1.5) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1.8) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.1c.2) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.2.0) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.2c1) -- Mac OS 10.3 through 10.5

mail.reasonabledoubt.com (CommuniGate Pro SMTP 5.2c3) -- Mac OS 10.3 through 10.5

mail.safemailbox.com (Stalker SMTP Server 1.8b9d14) -- Mac OS 8.1 - 9.2

mail.safemailbox.net (Stalker SMTP Server 1.8b8) -- Mac OS 8.1 - 9.2

mail2.beyondsystems.net (CommuniGate Pro SMTP 5.1.14) -- Mac OS 10.4 - 10.5

mail2.beyondsystems.net (CommuniGate Pro SMTP 5.2.0) -- Mac OS 10.5

pebbles.linkcenter.net (Sambar SMTPD) -- Windows XP

upland.dyndns.org (CommuniGate Pro SMTP 5.1.4 _community_) -- Mac OS 10.4

upland.dyndns.org (CommuniGate Pro SMTP 5.2c1 _community_) -- Mac OS 10.4

upland2.dyndns.org (CommuniGate Pro SMTP 5.2c2 _community_) -- Mac OS 10.4

webmail.castalia.net with SMTP (Microsoft Exchange Internet Mail Service Version 5.5.2653.13) -- Windows 2000 Server

The server that receives a particular e-mail is readily identifiable on the face of the e-mail and thus equally accessible to Defendant. Plaintiff further states that all of its computers that were involved in receiving, storing, and/or transmitting the emails at issue were located in the state of Maryland. The Maryland servers have had IP addresses on one of the following subnets: 66.92.148.0/24, 66.92.173.0/24. 71.126.162.0/24 and 66.93.97.0/24.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B). Discovery is ongoing. Plaintiff expressly reserves the right to supplement this response should additional information become available.

1(c)(ii)     The information requested is contained on the face of the emails produced and is therefore, equally available to the propounding party.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B). Discovery is ongoing. Plaintiff expressly reserves the right to supplement this response should additional information become available.

1(c)(iii)    With regard to the physical location when the email hit BSI's servers, BSI's servers were and are in Rockville, MD and Silver Spring, MD.

1        Pursuant to an agreement with counsel for Defendant, Plaintiff supplements
2   its response to this Interrogatory as follows:

3        Information responsive to this Interrogatory can be found in the enclosed
4   spreadsheet (attached as Exhibit A), and the Legend that explains the terms used
5   in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff
6   expressly reserves the right to supplement this response should additional
7   information become available.

8        1(c)(iv)     Computers, servers and other equipment ("machines")
9   belonging to BSI and other entities were involved in receiving, storing,
10  transmitting and/or redirecting each email.  A Hypertouch machine can be
11  recognized by the headers in the emails at issue that contain one of the machine
12  names listed above and is not on one of the BSI IP address subnets listed above.
13  Plaintiff alleges that machines controlled by defendants and/or their agents caused
14  each of the emails at issue; therefore, such information is in defendants'
15  possession and subject to discovery in this action.

16       Pursuant to an agreement with counsel for Defendant, Plaintiff supplements
17  its response to this Interrogatory as follows:

18       Information responsive to this Interrogatory can be found in the enclosed
19  spreadsheet (attached as Exhibit A), and the Legend that explains the terms used
20  in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff
21  expressly reserves the right to supplement this response should additional
22  information become available.

23       1(c)(v)     See response to 1(c)(i).

24       Pursuant to an agreement with counsel for Defendant, Plaintiff supplements
25  its response to this Interrogatory as follows:

26       Information responsive to this Interrogatory can be found in the enclosed
27  spreadsheet (attached as Exhibit A), and the Legend that explains the terms used
28  in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff

1   expressly reserves the right to supplement this response should additional

2   information become available.

3       (d)          Plaintiff has found no email at issue that was redirected or

4   resent.

5       Pursuant to an agreement with counsel for Defendant, Plaintiff supplements

6   its response to this Interrogatory as follows:

7       Information responsive to this Interrogatory can be found in the enclosed

8   spreadsheet (attached as Exhibit A), and the Legend that explains the terms used

9   in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff

10  expressly reserves the right to supplement this response should additional

11  information become available.

12      1(e)          Interrogatory 1(e) is largely duplicative of Interrogatory 1(c),

13  so Plaintiff hereby incorporates the objections and substantive answers to

14  Interrogatory 1(c) by reference.  Although "downloaded" is vague, ambiguous and

15  undefined, Plaintiff states that all the emails at issue were downloaded from the

16  receiving server as Plaintiff understands the meaning of "downloaded."

17      Pursuant to an agreement with counsel for Defendant, Plaintiff supplements

18  its response to this Interrogatory as follows:

19      Information responsive to this Interrogatory can be found in the enclosed

20  spreadsheet (attached as Exhibit A), and the Legend that explains the terms used

21  in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff

22  expressly reserves the right to supplement this response should additional

23  information become available.

24      1(f)          Information responsive to this Interrogatory is contained on the

25  face of the emails and is therefore equally available to the propounding party.

26  Plaintiff objects to the extent this interrogatory requires it to speculate as to the

27  sender's intent.  BSI states that it does not assign a "user ID" and that any user

28  identification is the same as the email address.  BSI allows its clients to choose

---

13

one or multiple user names in conjunction with a domain name.  BSI was the end recipient of all the emails at issue.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this response should additional information become available.

1(g)       Information responsive to this Interrogatory is contained on the face of the emails and is therefore equally available to the propounding party.  BSI was the end recipient of all the emails at issue.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to this Interrogatory as follows:

Information responsive to this Interrogatory can be found in the enclosed spreadsheet (attached as Exhibit A), and the Legend that explains the terms used in the spreadsheet (attached as Exhibit B).  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this response should additional information become available.

1(h)       Plaintiff hereby incorporates the objections and substantive answers to Interrogatory 1(c)(i) by reference.  Plaintiff further states that it has used the following types of programs in connection with receiving, storing, and/or transmitting the email:

WatchGuard -- firewall

BlackIce -- firewall

ZoneAlarm -- firewall

Kapersky -- antivirus

Stalker Internet Mail Server – email server

1    Qualcomm WorldMail – email server

2    Microsoft Exchange – email server

3    Sambar – email server

4    CommuniGate Pro – email server

5    SpamAssassin – spam filter

6    Niversoft PolluStop – spam filter

7    Niversoft ClamAV – spam filter

8    SpamPal – spam filter

9    Eudora – email client program

10    Aid4Mail -- convert, export, migrate, and archive email

11    Pursuant to an agreement with counsel for Defendant, Plaintiff supplements

12    its response to this Interrogatory as follows:

13    Information responsive to this Interrogatory can be found in the enclosed

14    spreadsheet (attached as Exhibit A), and the Legend that explains the terms used

15    in the spreadsheet (attached as Exhibit B). Discovery is ongoing. Plaintiff

16    expressly reserves the right to supplement this response should additional

17    information become available.

18    1(i)         BSI's CommuniGate Pro servers receive and store email as

19    Generic mailbox files (.mbox, Berkeley mail format, BSD mail format, Unix mail

20    format). Eudora and Aid4Mail/decoding scripts download and convert the mail

21    into Eudora mailbox files (.mbx).

22    Since 2/7/2008, BSI has retained the .mbox file (including embedded

23    images, excluding attachments) as well as the .mbx file. BSI does not in general

24    request and retain images referenced in the HTML source code in the body of the

25    emails – i.e., in <IMG ...> links. BSI has done so on a limited, ad hoc basis. BSI

26    does not always save the results of such an ad hoc request. So with the

27    appropriate email conversion and viewing software, the embedded images could

28    be rendered since 2/7/2008, but the remotely referenced images could not.

1   Pursuant to an agreement with counsel for Defendant, Plaintiff supplements
2   its response to this Interrogatory as follows:

3   Some of the Emails contained embedded images, which BSI began retaining
4   in February 2008.  Prior to February 2008, it was BSI's policy to purge the file
5   attachments and embedded images accompanying emails to certain destination
6   addresses every few minutes, in part because the images typically consumed more
7   disk space than the emails themselves and often contained viruses.  Since February
8   2008, it is still BSI's policy not to retain file attachments, but to retain embedded
9   images.  BSI has now completed its analysis of the Emails at issue (at least with
10  regard to the embedded images) and found that at least 2 embedded images
11  accompanied the Hydra Emails, at least 40 embedded images accompanied the
12  Connexus emails, and all 42 images were transmitted before 2008.  Since BSI no
13  longer possesses the 42 embedded images, it is not possible to determine how
14  large they were, nor whether any contained a virus.  Discovery is ongoing.
15  Plaintiff expressly reserves the right to supplement this response should additional
16  information become available.

17      1(j)        BSI has received numerous complaints in person and by
18  telephone about client and server outages.  Usually these are caused by a huge
19  spam burden.  For example, one client in Switzerland, Guy Genilloud (in support
20  of Colorvivo Films), both calls and send emails to BSI.  These complaints will be
21  produced.  In general the spam complaints are not resolved.  Some customers, such
22  as Dr. Peter Wagner, abandon their accounts after they become unusable due to
23  spam.  Others, such as Guy and Colorvivo Films, change the user name portion of
24  their email address(es) – and notify all colleagues they can recall of the change.

25  Pursuant to an agreement with counsel for Defendant, Plaintiff supplements
26  its response to this Interrogatory as follows:

27  There are no complaints that specifically mention the emails at issue by
28  referencing that email by sender or product or otherwise.  Discovery is ongoing.

1   Plaintiff expressly reserves the right to supplement this response should additional
2   information become available.

3        1(k)     BSI states that it has provided this information to Defendant in
4   its Rule 26(a) disclosures and is continuing to produce responsive documents.

5        After further consultation with counsel for Defendant, Plaintiff provides the
6   following supplemental response:

7        BSI has provided evidence of its actual damages.  Plaintiff alleges that it
8   was actually harmed by Defendants and has produced evidence of this harm.
9   Plaintiff seeks statutory damages, as provided for under California and Maryland
10  law.  Plaintiff also seeks actual damages because California law permits recovery
11  of both statutory and actual damages.  A calculation of actual damages to be
12  awarded in addition to statutory damages is a feature of the damages phase of this
13  case.  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement
14  this response should additional information become available.

15       1(l)     Emails containing the Gevalia string are also at issue in *Beyond*
16  *Systems, Inc. v. Kraft Foods, Inc. et al.*, Case No. 8:08-CV-00409, pending in the
17  United States District Court for the District of Maryland.  BSI states that there are
18  multiple participants in the emails, all of which are independently liable for
19  participating in, assisting in, procuring, advertising in, and / or sending the
20  violative email.

21  **INTERROGATORY NO. 2:**

22       Describe all efforts you and/or your customers undertook to stop receiving
23  and/or limit the receipt of email involving Connexus, Vendare, and/or NetBlue,
24  including whether you employed e-mail blocking, screening, managing, or
25  filtering hardware, software or services, and whether you and/or your customers
26  attempted to "opt out" of receiving such e-mails.

27  **RESPONSE TO INTERROGATORY NO. 2:**

28

1  Plaintiff objects to this Interrogatory on the ground that is seeks information
2  which is not in the possession, custody or control of Plaintiff, including what
3  efforts Plaintiff's customers undertook.

4  Plaintiff further objects to this Interrogatory on the ground that it is vague,
5  ambiguous, overbroad, compound, and unduly burdensome.

6  Plaintiff further objects to this Interrogatory on the ground that requests BSI
7  to describe efforts taken by its customers, who are not in BSI's control.

8  Subject to the foregoing objections, and the objections to the Definitions
9  and Instructions and the General Objections which are all incorporated herein by
10  reference, Plaintiff responds as follows and states in connection with each
11  response below:  Discovery is ongoing.  Plaintiff expressly reserves the right to
12  supplement the Responses below should additional information become available:

13  BSI states that it has used the following types of firewall and/or anti-spam
14  programs: WatchGuard; BlackIce; ZoneAlarm; Kapersky; Stalker Internet Mail
15  Server; Qualcomm WorldMail; Microsoft Exchange; Sambar; CommuniGate Pro;
16  SpamAssassin; Niversoft PolluStop; Niversoft ClamAV; SpamPal; Eudora.

17  BSI cannot speak for its customers.  BSI states that, like major ISPs, it
18  accepts all email, documents key aspects of the interaction between the servers (as
19  is recorded in the headers of each email), and then routes the email to the
20  apparently-intended recipient.  Also, although the federal CAN-SPAM Act
21  requires all commercial e-mail to have an opt-out mechanism, neither it, nor
22  California nor Maryland law, make it a requirement for end users to opt-out.  To
23  the contrary, major ISPs such as Microsoft, Earthlink, AT&T, Yahoo, Comcast,
24  Verizon, Charter, NetZero, and Qwest, warn against attempting to "opt out" of
25  spam because providing one's e-mail address to spammers often subjects the
26  recipient to more spam e-mail.

27  **INTERROGATORY NO. 3:**

28

State the nature of your business, the products and/or services you offer for sale, the price per unit of any such product and/or service, how and when you advertise each product and/or service, how actual and/or potential customers can contact you about such products and/or services.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff further objects to this Interrogatory on the ground that it is vague, ambiguous, overbroad, compound, and unduly burdensome.

Plaintiff objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

Since 1996, BSI has provided Internet connectivity and interactive computer services, including electronic mail service to many users, including many users in Maryland.  BSI provides Internet services, technology consulting, and advanced research on emerging technologies.  Within these categories are a number of specific services which enable computer access by multiple users to a computer service, including, for example:  enterprise architecture (analysis, design, and development); distributed applications (scalability, failover, cross-platform); wireless initiatives (access, solutions, P2P, mobile computing); Internet security (spam, PKI, VPNs, firewalls, survivability); network support (LAN and client/server setup, support & management); and management (strategic planning, marketing, CRM, supply chain).  In addition, BSI provides Internet access and hosting services for multiple users, including e-mail servers, web servers, DNS servers, e-commerce services, database services, and backup services.  BSI has hosted approximately 110 domain names for use by BSI or its clients and it assigns IP addresses it owns to clients for their use in accessing and providing services via the Internet.

1  Additional information is publicly available, including at www.beyondsystems.net.

2  BSI does not advertise other than through its website, word of mouth, and through

3  Paul Wagner's efforts to expand the company's business.  BSI can be contacted by

4  email through its website.

5  As for "price per unit", Plaintiff objects on comprehensibility and relevance

6  grounds.

7  **INTERROGATORY NO. 4:**

8  For each product or service you have sold and/or provided at no charge

9  since January 1, 2005, identify (a) the customer that purchased the good or service,

10  (b) the goods and/or services sold to the customer, (c) whether BSI facilitated in

11  any manner the customer's ability to receive and/or send email, and if so, when,

12  how, and the email addresses the customer used; (d) the price paid by the customer

13  for each good or service purchased, (e) when the customer purchased the good

14  and/or service, and (f) whether the customer returned any goods or cancelled any

15  services, and if so, when and why.

16  **RESPONSE TO INTERROGATORY NO. 4:**

17  Plaintiff objects to this Interrogatory on the ground that it is divided into

18  discrete subparts which are not factually subsumed and necessarily related to the

19  primary question.

20  Plaintiff further objects to this Interrogatory on the ground that it is vague,

21  ambiguous, overbroad, compound, and unduly burdensome.

22  Plaintiff objects to this Interrogatory on the ground that it seeks information

23  which is neither relevant nor reasonably calculated to lead to the discovery of

24  admissible evidence.

25  Plaintiff further objects to this Interrogatory to the extent that it violates any

26  guaranteed right of privacy afforded to third parties by law, rule or regulation.

27  Subject to the foregoing objections, and the objections to the Definitions

28  and Instructions and the General Objections which are all incorporated herein by

reference, Plaintiff responds as follows and states in connection with each response below:  Discovery is ongoing.  Plaintiff expressly reserves the right to supplement the Responses below should additional information become available:

4(a)     Plaintiff objects on relevance, burdensomeness and privacy grounds to the request for the identity of all customers who received each product or service sold since January 1, 2005.

4(b)     BSI incorporates its response to Interrogatory 3 with regard to the goods and/or services sold.

4(c)     BSI is an email service provider, so by its nature it facilitates and helps customers by providing access to the Internet and facilitating their ability to send and receive email.  BSI also, for example, assists users to set up spam filtering for their own accounts.  Email addresses used include those contained on the face of the emails and are therefore, equally available to the propounding party.

4(d)     Plaintiff objects on relevance and burdensomeness grounds.

4(e)     Plaintiff objects on relevance and burdensomeness grounds.

4(f)     BSI states that customers have terminated email accounts, but objects to the extent the Interrogatory calls for Plaintiff to speculate as to why customers returned goods or cancelled services.

Pursuant to an agreement with counsel for Defendant, Plaintiff supplements its response to Interrogatory 4 in its entirety as follows.  The following information is designated "Confidential" by Plaintiff pursuant to the terms of the protective order entered in this case.

BSI provides internet services to 272 persons.  In the past, BSI has provided internet services to 45 other persons.  The precise number of persons to whom BSI has provided internet access is impossible to calculate because BSI has provided access to persons both known and unknown through its wireless hotspots, DNS server(s) and secondary mail server(s).  In the past, BSI hosted 21 corporate

persons, and 31 corporate accounts.  Further, BSI provides DNS and secondary mail server services for 219 employees and volunteers of one of its corporate customers. BSI currently hosts 14 non-family member, non-Hypertouch, non-BSI persons.  BSI currently provides DNS and secondary mail server services for 35 non-family members, non-Hypertouch persons.  Since 2000, BSI has also provided similar services to 20 additional persons.  BSI's DNS servers currently serve 56 domain names.  Hypertouch also uses connectivity provided by BSI to service domain names through Hypertouch's DNS server and web servers.  BSI agrees to seek affidavits from persons who have used BSI's internet services and who are willing to be identified regarding the services that BSI has provided to them. Discovery is ongoing.  Plaintiff expressly reserves the right to supplement this response should additional information become available.

**INTERROGATORY NO. 5:**

State your quarterly revenue, income, and profits since January 1, 2000 that you have derived from each of your business lines, profit centers or other revenue-producing activities or operations, including but not limited to the provision of internet and/or email access, the products and services you list in response to Interrogatory Nos. 3 and 4 herein, consulting, and settlements or judgments arising out of litigation or the threat of litigation.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff further objects to this Interrogatory on the ground that the time period is not reasonably limited in scope.

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES
Doc. # LA-174026 v.1

1   Subject to the foregoing objections, and the objections to the Definitions
2   and Instructions and the General Objections which are all incorporated herein by
3   reference, Plaintiff responds as follows:

4   BSI is a Maryland corporation in good standing.  BSI is an email service
5   provider.   BSI is an Internet Service Provider.  BSI is an "electronic mail service
6   provider" as defined in California Business & Professions Code § 17529.1(h).
7   BSI is an "interactive computer service" as defined in Maryland Commercial Law
8   Code § 14-3001.  BSI provides and enables access to the Internet for multiple
9   users.  BSI owns and operates interactive computer services that enable its
10  customers to, among other things, access the Internet, access BSI-hosted Internet
11  services and exchange e-mail.  BSI owns and maintains computers and other
12  equipment, including specialized computers or servers that process e-mail
13  messages and otherwise support its e-mail services.  Whereas BSI charges some of
14  its clients for its services like many major web-based email service providers, BSI
15  does not charge many of its clients for basic levels of service.

16  **INTERROGATORY NO. 6:**

17  Identify the domain names owned by and/or registered to you that were
18  involved with the emails you produced in response to Document Request Nos. 1-9
19  of Connexus's First Request for Production of Documents, and for each domain
20  name state when you acquired it, why you acquired it, how you acquired it, from
21  whom you acquired it, the purchase price paid, the date you registered it, the
22  registrar, and the role of the domain name in connection with the emails you
23  produced in response to Document Request Nos. 1-9 of Connexus's First Request
24  for Production of Documents.

25  **RESPONSE TO INTERROGATORY NO. 6:**

26  Plaintiff objects to this Interrogatory on the ground that "the role of the
27  domain name" is vague and ambiguous.

28

Plaintiff further objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff further objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff amends and supplements its initial response as follows:

BSI states that 6 domain names involved with the emails at issue are owned by and registered to BSI, including:  beyondsystems.net, castalia.net, hypertouch.com, linkcenter.net, safemailbox.com, and safemailbox.net.  BSI states that information responsive to this Interrogatory, including when a domain was acquired, the date registered, and the registrar, is publicly available at www.joker.com or www.domaintools.com.  BSI states that it created four of the six cited domains and purchased those from the registrar at the price set by the registrar.  BSI purchased safemailbox.com from MZM for less than $100 before 2005.  BSI states that it acquired these domains because they correspond to names given by BSI to its business and research projects.  In 1997, Hypertouch was not incorporated, just an FBN for the brother (Joe Wagner) of Plaintiff's principal (Paul Wagner).  It was not clear to Joe at that time if individuals were allowed to register .COM domains, so Joe asked BSI if Joe could register the domain name "hypertouch.com" in the name of BSI.  BSI agreed, so it has thus been registered by BSI.

**INTERROGATORY NO. 7:**

Describe the goods and/or services BSI has provided to Hypertouch since January 1, 1999 through the present, the consideration provided by Hypertouch to BSI for each such good and/or service, and identify all customers to whom BSI has provided identical or substantially identical goods or services.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this Interrogatory on the ground that it is divided into discrete subparts which are not factually subsumed and necessarily related to the primary question.

Plaintiff further objects to this Interrogatory on the ground that the time period is not reasonably limited in scope.

Plaintiff further objects to this Interrogatory to the extent that it violates any guaranteed right of privacy afforded to third parties by law, rule or regulation.

Plaintiff further objects to this Interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff further objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

Hypertouch and BSI have each owned and operated their own mail servers, web servers, DNS servers and Internet connectivity since before 2000. Hypertouch has had one or more web servers located on BSI's network since sometime before 2004. Sometime in mid-2003 the spam load going to hypertouch.com became so great that Hypertouch could not archive it robustly, whereas BSI possessed greater server capacity and so BSI began receiving and archiving spam on its several large storage systems. Both BSI and Hypertouch users have hypertouch.com email addresses. BSI and Hypertouch each provide respective secondary servers for the other, as well as for other respective clients, in multiple instances both for DNS and mail servers. If BSI's mail server goes down or becomes unresponsive, email being sent to many of the domains BSI hosts are sent to its secondary MX servers, which include Hypertouch's current primary

1  mail server, mail.reasonabledoubt.com.  The secondary MX servers hold onto the

2  mail until the primary mail server comes back up.  BSI and Hypertouch maintain

3  DNS and mail servers on at least three, and sometimes as many as five different

4  networks.  That way if one or two servers or the networks they are on go down, the

5  world is still able to access all the hosted domains.  Multiple servers on different,

6  diverse networks is common, industry best practice.  The consideration

7  Hypertouch provides for these services is to provide similar or complementary

8  services to BSI.  BSI provides similar services for an organization with over 150

9  employees.

10 **INTERROGATORY NO. 8:**

11      Describe in detail the method(s) by which BSI measures "server response"

12 as BSI uses that term in Paragraph 50 of the Complaint, and provide server

13 responsiveness data by month for each mail server and DNS server owned or

14 operated by BSI since January 1, 2005.

15 **RESPONSE TO INTERROGATORY NO. 8:**

16      Plaintiff objects to this Interrogatory on the ground that it is vague,

17 overbroad, compound, and unduly burdensome.

18      Subject to the foregoing objections, and the objections to the Definitions

19 and Instructions and the General Objections which are all incorporated herein by

20 reference, Plaintiff responds as follows:

21      BSI measures server response in three primary ways:  BSI detects sluggish

22 server behavior through the course of its everyday interactions with the servers;

23 through Windows task manager and Mac TOP which indicate the load on the

24 CPU; and by delays in routing emails from one server to the next or to the client

25 which is documented in the headers of the emails.  BSI does not keep data by

26 month for each mail server.  Data responsive to this Interrogatory is contained on

27 the face of the emails and is therefore, equally available to the propounding party.

28

The emails are a continual gauge of server response as documented by the timestamps in the consecutive headers of a given email.

**INTERROGATORY NO. 9:**

Describe in detail the method(s) by which BSI measures e-mail "load" as BSI uses that term in Paragraph 50 of the Complaint, and provide e-mail load data by month for each mail server and DNS server owned or operated by BSI since January 1, 2005.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

A server's capacity is consumed in part by the load it carries and the rest of the capacity is available for other activities. In addition, BSI incorporates its response to Interrogatory 8.

**INTERROGATORY NO. 10:**

Describe in detail the method(s) by which BSI measures network bandwidth utilization, provide network bandwidth utilization data by month since January 1, 2005, and state how much bandwidth each of the emails you produced in response to Document Request Nos. 1-9 of Connexus's First Request for Production of Documents occupied.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Subject to and without waiving the above objections, Plaintiff responds as follows:

Defendant has exceeded the number of Interrogatories allowed pursuant to Federal Rule of Civil Procedure 33 because the foregoing Interrogatories are divided into discrete subparts which are not factually subsumed and necessarily related to the primary question.  Therefore, Plaintiff is not obligated to respond to any Interrogatory beyond the 25 already requested.

**INTERROGATORY NO. 11:**

Describe in detail BSI's policies and procedures for the management of e-mail, including but not limited to the screening, blocking, or filtering thereof, and for each policy, practice, mechanism, or procedure, state the dates each policy, practice, mechanism, or procedure was put in place, and any changes to each policy, practice, mechanism, or procedure since January 1, 2005.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this Interrogatory on the ground that it is divided into discrete subparts which are not factually subsumed and necessarily related to the primary question.

Plaintiff further objects to this Interrogatory on the ground that it is vague, overbroad, compound, and unduly burdensome.

Subject to the foregoing objections, and the objections to the Definitions and Instructions and the General Objections which are all incorporated herein by reference, Plaintiff responds as follows:

Defendant has exceeded the number of Interrogatories allowed pursuant to Federal Rule of Civil Procedure 33 because the foregoing Interrogatories are divided into discrete subparts which are not factually subsumed and necessarily related to the primary question.  Therefore, Plaintiff is not obligated to respond to any Interrogatory beyond the 25 already requested.

**INTERROGATORY NO. 12:**

Identify all persons who answered and/or provided information and/or otherwise participated in answering these Interrogatories.

28

1  **RESPONSE TO INTERROGATORY NO. 12:**

2        Defendant has exceeded the number of Interrogatories allowed pursuant to

3  Federal Rule of Civil Procedure 33 because the foregoing Interrogatories are

4  divided into discrete subparts which are not factually subsumed and necessarily

5  related to the primary question.  Therefore, Plaintiff is not obligated to respond to

6  any Interrogatory beyond the 25 already requested.

7

8  AS TO FORM AND OBJECTIONS ONLY:

9

10  Dated:   September 19, 2008            STEPTOE & JOHNSON LLP

11

12                                        Lawrence P. Riff

13                                        Lynn R. Levitan

14                                        STEPTOE & JOHNSON LLP
                                          633 W 5th Street, Suite 700
15                                        Los Angeles, CA  90071

16                                        Telephone:  (213) 439-9400
                                          Facsimile:  (213) 439-9599
17

18                                        Thomas M. Barba

19                                        John J. Duffy
                                          Jennie L. Kneedler
20                                        STEPTOE & JOHNSON LLP

21                                        1330 Connecticut Ave., NW
                                          Washington, DC  20036
22                                        Telephone:          (202) 429-3000

23                                        Facsimile:          (202) 429-3902
                                          tbarba@steptoe.com
24                                        jduffy@steptoe.com

25                                        jkneedler@steptoe.com

26

27                                        Anthony A. Onorato
                                          STEPTOE & JOHNSON LLP
28                                        750 Seventh Ave., Ste. 1800

29

New York, NY  10019
Telephone:          (212) 506-3900
Fax:                     (212) 506-3950
tonorato@steptoe.com

*Attorneys for Plaintiff BEYOND SYSTEMS, INC.*

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

**PROOF OF SERVICE**
F.R.C.P. 5 / C.C.P. § 1013a(3)/ Cal. R. Ct. R. 2.260

1

2

I am a resident of, or employed in the District of Columbia.  I am over the age of 18 and not a
3 party to this action.  My business address is:  Steptoe & Johnson LLP, 1330 Connecticut Ave.,
N.W., Washington, D.C.  20036.

4

5 On **September 19, 2008,** I served the following listed document(s), by method indicated below,
on the parties in this action:  **SECOND AMENDED AND SUPPLEMENTAL RESPONSE**
6 **TO DEFENDANT CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES TO**
7 **BEYOND SYSTEMS, INC.**

*SEE ATTACHED SERVICE LIST*

8

9 ☒ **BY U.S. MAIL**

By placing ☐ the original / ☒ a true copy thereof enclosed in a
10 sealed envelope(s), with postage fully prepaid, addressed as per the
attached service list, for collection and mailing at Union Station,
11 Washington, D.C., following ordinary business practices.  I am
readily familiar with Steptoe & Johnson LLP's practice for
12 collection and processing of documents for mailing.  Under that
practice, the document is deposited with the United States Postal
13 Service on the same day as it is collected and processed for mailing
in the ordinary course of business.

14

☐ **BY OVERNIGHT DELIVERY**
15 By delivering the document(s) listed above in a sealed envelope(s)
or package(s) designated by the express service carrier, with
16 delivery fees paid or provided for, addressed as per the attached
service list, to a facility regularly maintained by the express service
17 carrier or to an authorized courier or driver authorized to receive
documents by the express service carrier to receive documents, who received these
18 documents at 1330 Connecticut Ave., N.W. Washington, D.C.
20036.

19 ☐ **BY PERSONAL SERVICE**
20   ☐ By personally delivering and handing the document(s) listed
above to the person(s) identified on the attached service list.
21   ☐ By personally delivering the document(s) listed above to the
office address(es) as shown on the attached service list and leaving
22 said document(s) with a clerk or other person in charge, or if no one
is in charge leaving it in a conspicuous place in the office(s).
23   ☐ By personally delivering the document(s) listed above to the
address(es) as shown on the attached service list and leaving said
24 document(s) with someone of suitable age and discretion residing at
said address(es).

☐ **BY ELECTRONIC SERVICE**
**(via electronic filing service provider)**
By electronically transmitting the document(s)
listed above to LexisNexis File and Serve, an
electronic filing service provider at
www.fileandserve.lexisnexis.com, from the email
address _____@steptoe.com, at
approximately _____.  To my knowledge, the
transmission was reported as complete and
without error.

☒ **BY ELECTRONIC SERVICE**
**(to individual persons)**
By electronically transmitting the document(s)
listed above to the email address(es) of the
person(s) set forth on the attached service list
from the email address jkneedler@steptoe.com at
approximately 11:00 p.m.  To my knowledge, the
transmission was reported as complete and
without error.

☐ **BY FACSIMILE**
By transmitting the document(s) listed above from
Steptoe & Johnson LLP in Los Angeles,
California to the facsimile machine telephone
number(s) set forth on the attached service list.
Service by facsimile transmission was made ☐
pursuant to agreement of the parties, confirmed in
writing, or ☐ as a courtesy to the parties.

25

26 I declare under penalty of perjury under the laws of the District of Columbia and the United
States of America that the above is true and correct.  Executed on **September 19, 2008** at
27 Washington, D.C.

28 Jennie L. Kneedler                          Jennifer eah
Type or Print Name                              Signature

31

1
2
3
4
5

## SERVICE LIST

*Beyond Systems, Inc. v. Connexus Corp., et al.*

## COUNSEL FOR DEFENDANTS

6  Jeffrey M. Tanzer, Esq.                CONNEXUS CORP.; and
7  **VENABLE LLP**                        HYDRA MEDIA GROUP, INC.
   2049 Century Park East, Suite 2100
8  Los Angeles, California  90067
9  (310) 229-9900
   (310) 229-9901 (Facsimile)
10

11  J. Douglas Baldridge, Esq. (*admitted pro*   CONNEXUS CORP.; and
    *hac vice*)                                   HYDRA MEDIA GROUP, INC.
12  Lisa Jose Fales, Esq. (*admitted pro hac*
13  *vice*)
    Ari N. Rothman, Esq. (*admitted pro hac*
14  *vice*)
15  **VENABLE LLP**
16  575 Seventh Street, N.W.
    Washington, D.C.  20004
17  (202) 344-4000
18  (202) 344-8300 (Facsimile)
19

20  Alan K. Steinbrecher, Esq.              MAILCOMPANYX (d/b/a
    Barbara F. Stein, Esq.                  Internet Endeavors, Inc.) and
21  **LAW OFFICES OF ALAN K.**              SEBASTIAN BARALE
22    **STEINBRECHER, P.C.**
    515 South. Flower Street, 17th Floor
23  Los Angeles, California 90071
24  (213) 891-1400
    (213) 891-1470 (Facsimile)
25
26
27
28

BEYOND SYSTEMS, INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSE TO DEFENDANT
CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES

Doc. # LA-174026 v.1

## **VERIFICATION**

I, Paul A. Wagner, declare and state:

I am President of BEYOND SYSTEMS, INC. and am authorized to sign this verification as to PLAINTIFF BEYOND SYSTEMS INC.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSES TO DEFENDANT CONNEXUS CORP.'S FIRST SET OF INTERROGATORIES in the case of *Beyond Systems Inc. v. Connexus Corp., et al., CV 08-01039 (RGK),* filed in the United States District Court for the Central District of California.

All matters set forth herein are within my personal knowledge, and I am the only person at Beyond Systems Inc. who has knowledge of all such matters.  The information contained within these responses is drawn from pertinent business records and from my own knowledge and information, and based thereon I believe the information contained in these responses is true and correct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed September 19, 2008 in the District of Columbia.

Paul A. Wagner

_____
Paul A. Wagner