# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

| | |
|---|---|
| BEYOND SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:08-cv-00409 (PJM) (CBD) |
| ) | Judge Peter J. Messitte |
| KRAFT FOODS, INC., *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| CONNEXUS CORP., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES JOSEPH WAGNER, *et al*., ) | |
| ) | |
| Third-Party Defendants. ) | |
| _____) | |

## <u>PLAINTIFF'S POST-TRIAL REPLY MEMORANDUM</u>

Plaintiff Beyond Systems, Inc. ("BSI") respectfully files this Reply in support of BSI's

Motion for Judgment as a Matter of Law (DE #584).

## INTRODUCTION

BSI proved during the June 2012 Mini-Trial that it provides the services required to

qualify as an ICSP and EMSP under the Maryland and California anti-spam statutes. That is all

that BSI is required to do to establish that it has standing to sue under these statutes. Defendants[1]

contend that satisfying these statutory requirements is insufficient, and they ask the Court to

_____

[1] Connexus did not oppose BSI's Motion for Judgment as a Matter of Law and failed to join in Kraft's opposition. This Reply nevertheless applies to both Defendants.

impose on BSI an additional requirement—that it prove that it is a "bona fide" ICSP and EMSP. But whether Defendants rely on the "absurd results" exception to well-settled rules of statutory construction, whether they choose to conflate the "bona fide" and "adverse effect" requirements, as they have now done, whether they raise Article III standing and federal preemption, or whether they claim that BSI "consented" to receive illegal spam, their arguments fail for one simple reason. They all depend, at bottom, on the false premise that the state statutes at issue require a plaintiff to suffer actual injury as a condition to bringing a claim. As this Court has already ruled,[2] that is wrong as a matter of law. The statutes, their legislative histories, and the cases construing them (and statutes like them), are clear that no injury is required. Without that premise, there is nothing to support Defendants' argument that this Court should impose an additional, extra-statutory "bona fide" requirement, and BSI should prevail as a matter of fact and law.

Moreover, contrary to Defendants' assertions, BSI's use of these anti-spam statutes to combat spam is not some affront to the Maryland and California Legislatures' purpose; rather, it is entirely consistent with what they intended. By expressly permitting purely statutory damages in the amount of $500 or $1,000 per violation regardless of whether a plaintiff suffers any demonstrable harm, the legislatures clearly signaled that their objective was to incentivize private enforcement and thereby create a powerful deterrent against deceptive and unlawful spam. There is thus no "financial bonanza" here that would offend the sensibilities of Maryland's or California's lawmakers; the fact is that both legislatures deliberately *chose* to

---

[2] *See* June 14, 2010 Summ. J. Hrg. Tr. J. Messitte 94:22-25 & 95:22-24 ("That the gist of the statute is because there's misleading information in the transmission and not you have to rely on it. You don't have to show damages with regard. That's why you put statutory damages in. . . . I mean, if you have statutory damages, you clearly don't have to show damages. Why would you have statutory damages?"); *see also Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 538 (D. Md. 2006) (rejecting preemption and stating MCEMA "supplements the federal law. It does not frustrate the goals of the federal legislation; in fact it furthers them."); *see also* Pl. Opp. Br. 10-11.

impose a substantial financial consequence on spammers when they authorized a substantial statutory award on a per email basis, fully aware that such an award would exceed the sum of any actual injury in the majority of cases.  Defendants are unable to point to anything in the text, history, or purpose of these statutes that justifies a departure from the plain meaning of the statutes' standing provisions.

This Court should deny Defendants' Motions for Summary Judgment and hold that BSI has standing to proceed with its claims.

**I.      The Fundamental Premise Of All Of Defendants' Arguments—That The Maryland And California Statutes Require Plaintiffs To Prove They Have Suffered An Injury Or "Adverse Effect" From Spam—Is Wrong As A Matter of Law.**

In the final analysis, Defendants' arguments regarding the Maryland and California statutes depend entirely upon the false premise that the legislatures intended to impose a requirement of actual damages or "adverse effects" as an element of standing.[3]  Indeed, although Defendants also argue that BSI's allegedly litigious nature is somehow disqualifying, the linchpin of their argument, regardless of how it is framed, is that to be "bona fide" a plaintiff must have been genuinely harmed by a spammer's violation of the law.  Yet, as demonstrated time and again in BSI's prior briefing, the statutes and their legislative histories are indisputably and unambiguously clear that *neither* statute requires actual damages or "adverse effects" as a condition to bringing suit.  Once that point is conceded, Defendants' argument collapses like a house of cards.  As the legislative histories and numerous cases demonstrate, the legislatures' express enforcement goal in both Maryland and California is to stop and deter the sending of

---

[3] Kraft wrongly contends that it is "[i]mplicit in the jury's Phase II verdict" that BSI was not harmed or adversely affected by Defendants' spam.  That is incorrect.  Indeed, the issue of whether BSI suffered actual injury or adverse effects was not even tried in the June 2012 Mini-Trial.  The Phase II instructions did not ask the jury to reach any conclusion as to whether BSI suffered any injury from Defendants' spam.  Rather, it focused only on whether BSI was "primarily or substantially" engaged in litigation.  If the Court now deviates from its earlier rulings and concludes that there is a requirement of actual injury, BSI is entitled to a trial on that issue.  *See* Pl.'s Opp. Br. 10, n. 3.

bulk commercial email that has even the *tendency* to deceive, even in the absence of any proof that email actually deceived or otherwise harmed anyone.  The legislatures chose to confer standing on *any* person and on *any* entity that provides the services that are identified in the statutes, wholly apart from and unrelated to whether those persons or entities were harmed or could show "adverse effects."  None of the argument that Defendants advance is to the contrary.

> **A.** **The Clear, Unambiguous, Plain Meaning of the Statutes Speaks to the Absence of Any Actual Damages Requirement.**

The anti-spam statutes at issue here are *not*, as Defendants repeatedly say, "silent" regarding the issue of actual injury or adverse effects.  To the contrary, both statutes expressly allow recovery of either statutory or actual damages.  Pl.'s Opening Br. 25-27.  This language is clear and establishes beyond doubt that the legislatures chose not to impose any requirement of actual damages.

Likewise, there is no ambiguity in the statutes' definitions of what entities qualify as ICSPs or EMSPs that would permit the Court to depart from the plain meaning rule.  Defendants assert that BSI "simply presumes without saying so that the state statutes' definitions of ICSP and EMSP are unambiguous."  Kraft Opp. Br. 7.  But this fundamentally misconstrues Defendants' burden in invoking this exception to the plain meaning rule.  Courts may not simply presume that statutes are unclear, just as they may not read ambiguities into a statute where no genuine ambiguity exists.  Defendants have failed to establish any ambiguity in either statute, and their reliance on strained hypotheticals that bear no relation to the facts of this case in an effort to conjure one up is meritless.  *See* Pl.'s Opp. Br. 9-10.[4]

---

[4] Likewise, Defendants' exegesis on the word "damages" is beside the point.  Defendants fail to explain why the statutes' provision that plaintiffs may bring suit to recover purely statutory damages should be ignored.  Harping on all conceivable ramifications implicit in the word "damages" does not create an ambiguity and misses the fundamental point that the statutes very clearly provide that actual damages are not required, as this Court has recognized.  That is the end of the inquiry on actual damages.

4

Finally, Defendants' assertion that courts have begun "abandoning the 'plain meaning' rule altogether" is incorrect.  Kraft Opp. Br. 6.  Defendants quote *California Teachers Ass'n v. San Diego Community College District* for the proposition that "[t]he Plain Meaning Rule fortunately has been discredited."  28 Cal. 3d 692, 710 (1981) (Newman, J., concurring).  But they utterly fail to make clear that this off-hand remark was made in the *concurring* opinion of one justice, not by the majority, which actually applied the plain meaning rule in the same manner that BSI seeks to do here.  *Id.* at 698.

The narrow exceptions to the plain meaning rule on which Defendants rely are just that—narrow exceptions.  Defendants have failed to carry their burden of showing that there is any genuine ambiguity in the statutes or "absurd result" that would permit the Court to apply those exceptions here, and there exists absolutely no basis for implying a "bona fide" element that Defendants seek to engraft.

> **B.** **Allowing Claims of Litigants Like BSI to Go Forward Irrespective of Actual Harm Advances the Maryland and California Legislatures' Purpose of Stopping and Deterring Unlawful Spam and Thus Could Not Possibly Produce an Absurd Result.**

BSI sued Defendants for exactly the same reason it has repeatedly sued spammers in the past:  to deter the sending of false and misleading commercial email that has even the tendency to deceive.  That is precisely what the Maryland and California legislatures wanted.  Those law makers knew full well, in authorizing the imposition of statutory damages irrespective of actual injury or harm, that entities providing basic Internet and e-mail services stood to gain financially if they could prove that the emails were deceptive within the meaning of the anti-spam statutes.  That decision was intentional; the legislatures recognized that only the most onerous financial consequences – consequences that Defendants themselves have characterized as "penal"[5] –

---

[5] Kraft Opp. Br. 26-28.

would have any chance of deterring those who make hundreds of millions of dollars a year sending illegal spam. These legislatures would be shocked to learn that the financial penalties that they had imposed to deter illegal conduct had been somehow re-cast as "windfalls" to be reaped by greedy "litigation factories." That outcome would be the only absurdity here.

Defendants' heavy reliance on *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436 (2008), also does nothing to change the analysis. Indeed, in *Starbucks*, Defendants have found the rare, classic example of inappropriate judicial intervention that serves as a model of what this Court should avoid, not embrace. There, the intermediate California Court of Appeal blatantly disregarded the plain language of the statute at issue (which allowed a plaintiff to bring suit to recover purely statutory damages), because it viewed the statute's lack of an injury requirement as unwise. 168 Cal. App. 4th at 1448 n.6, 1451-52 ("There are better ways to filter out impermissible questions on job applications than allowing 'lawyer bounty hunter' lawsuits brought on behalf of tens of thousands of unaffected job applicants."). But while some might agree that there are better ways for legislatures to accomplish their goals than through the actual statutory provisions that they enact, those are policy considerations with which courts should not meddle. The court in *Starbucks* misapplied the plain meaning rule and went out of its way to find an ambiguity where none existed,[6] all to justify an interpretation of a statute that comported with the court's own notion of better policy. That was wrong, and it would be doubly wrong for a federal court to do so in a diversity case.

Indeed, as noted in BSI's opening brief, the California Supreme Court subsequently condemned the very kind of activism in which the court in *Starbucks* engaged. Pl's Opening Br. 29-30 (citing *Munson v. Del Taco, Inc.*, 208 P.3d 623, 632-34 (Cal. 2009)). In *Munson*, decided

---

[6] *Starbucks* rationalized its conclusion that the text of the statute was ambiguous by relying on a dubious distinction between "any applicant" and "the applicant." *Id.* at 1449.

a year after *Starbucks*, the California Supreme Court held that courts must not deviate from a statute's plain meaning and impose additional requirements that are not found in the statutory text, even when they believe that such requirements might be useful to "suppress abusive litigation." 208 P.3d 623, 632-34 (Cal. 2009). Decisions like that are within the exclusive province of the legislative branch, not the judicial branch. Defendants fail to provide any response to *Munson*, which rejected decisions like the one in *Starbucks*. Put simply, courts lack authority to redefine the clearly expressed requirements of a statutory cause of action for the purpose of denying recovery based on policy considerations of this sort.[7]

>    **C.     BSI's Standing Is Governed by the Private Rights of Action in the Maryland and California Anti-Spam Statutes, Not by the Distinct Causes of Action Under Those States' More General Consumer Protection Statutes.**

Defendants wrongly conflate the distinct statutory standing requirements of the anti-spam statutes with Maryland's and California's more general consumer protection statutes, and incorrectly argue that BSI must satisfy the standing requirements of the latter. This argument is also wrong. By creating separate statutory causes of action to enforce their laws against deceptive spam, the legislatures made clear that plaintiffs who bring anti-spam lawsuits need not rely on the states' more general consumer protection laws and likewise need not satisfy those statutes' distinct standing requirements. Were it otherwise, there would have been no reason to create a separate right of action; the legislatures would simply have relied on the pre-existing

---

[7] The *Starbucks* opinion is flawed for an additional reason: when the court held that the statutory causes of action at issue required an "aggrieved" plaintiff, its premise for doing so was the principle that "[w]hen civil liability is predicated upon a legislative provision . . . plaintiffs must establish that they fall within the class of persons for whose protection the legislative provision was enacted. 'The statute must be designed to protect against the kind of harm which occurred.'" *Starbucks*, 168 Cal. App. 4th at 1447-48. That principle is drawn from the doctrine of negligence *per se*, whereby plaintiffs seek to impose tort liability for the defendant's breach of a statute. BSI's claims have nothing to do with the common law of negligence. Rather, they rely on violations of statutes that themselves provide for a private right of action and that, unlike negligence claims, do not require any actual injury or harm. Furthermore, regardless of the *Starbucks* court's conclusion about the requirements for standing under the California marijuana conviction disclosure statute, decisions applying both the Maryland and California anti-spam statutes (including the decisions of this Court) make clear that no injury is required. *See* Pl.'s Opp. Br. 10-12.

general consumer protection causes of action.  The relevance of the states' analogous consumer protection statutes is *not* that they displace the distinct standing requirements of the anti-spam statutes.  Rather, those statutes show that when they wish to do so, legislatures are fully capable of restricting standing along the lines advocated by Defendants.  Neither legislature chose to do so here, and that choice is dispositive in favor of BSI's standing.

The *in pari materia* canon has no application to the question before the Court, and does not stand for the broad proposition that Defendants suggest.  That canon does not permit a court to ignore real and deliberate differences between statutes, even if they regulate similar conduct.  The statutes governing deceptive business practices in general contain restrictive standing provisions that require the plaintiff to suffer economic injury or loss of property.  Conversely, the anti-spam statutes address a specific type of deceptive conduct:  sending false or misleading spam.  These statutes contain their own remedies that define the class of plaintiffs who have standing (ICSPs, EMSPs, or recipients of spam) and expressly provide that no injury is required.  Defendants' interpretation is, therefore, incorrect, precisely because it would treat the separate causes of action under the anti-spam statutes as surplusage in derogation of established principles of statutory interpretation.

With respect to the Maryland statutes, the parties' prior briefs contain an error that requires clarification.  Contrary to statements in BSI's Opening Brief and Kraft's Opposition, the requirement in the Maryland Consumer Protection Act ("CPA") that a plaintiff may only sue to recover for "injury or loss sustained by him" has been present in that statute since its enactment in 1975, and was not subsequently added by legislative amendment.  Md. Code Ann., Comm. Law § 13-408(a) (West 2012).  *But see* Pl.'s Opening Br. 25 (incorrectly stating that this limitation was imposed by legislative amendment); Kraft Opp. Br. 18-19 (compounding this

error by incorrectly stating that "After the passage of CEMA, the MPCA [sic] was amended to add the injury in fact standing requirement"). Thus, BSI's argument—that the Maryland General Assembly was fully aware of the distinct injury requirement for private enforcement actions under the CPA when it enacted the CEMA and its separate right of action in 2003—remains true, because the CPA's requirement has existed since that statute's inception. *E.g., Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992) (applying standing requirement of injury or loss for violation of CPA). Rather than rely on the CPA's existing cause of action or impose a similar restriction on standing for claims based on deceptive spam, the Maryland legislature chose to create a new and separate cause of action for violations of the anti-spam law, with distinct standing requirements that expressly provide that no actual injury is required. That decision is consistent with the legislature's intent to create an effective deterrent against unlawful spam, and this Court is bound to honor that legislative choice. *See* Pl.'s Opening Br. 24-26.

Defendants' argument that this Court should apply the standing requirements under California's general false advertising and unfair business practices statutes fails for similar reasons. Proposition 64, adopted November 2, 2004, specifically sets forth the two statutory causes of action that were subject to the new standing requirements of lost money or property: Cal. Bus. & Prof. Code §§ 17204 and 17535. Cal. Initiative Measure, Prop. 64, §§ 3 and 5 (approved by voters Nov. 2, 2004). The California anti-spam statute's separate private right of action had already been enacted at the time that the electorate passed Prop. 64, which did *not* include § 17529.5 among the statutory causes of action subject to the new standing requirements. Cal. Bus. & Prof. Code § 17529.5 (West 2012) (enacted Sept. 24, 2003 and amended Sept. 24, 2004). Kraft's argument to the contrary is therefore incorrect.

There is nothing incongruous about a decision to impose different standing requirements for violations of different statutory prohibitions, even where those statutes share a common prohibition against deceptive conduct.  This is particularly so here, because the anti-spam statutes target a more discrete wrong than do the general consumer protection statutes.  While the states' general consumer protection statutes may be implicated by potentially any commercial activity, the anti-spam statutes are only implicated when a spammer chooses to target an ICSP, EMSP, or individual recipient with false or deceptive spam.  Indeed, as Kraft points out in its brief, the two California statutes that were amended by Prop. 64 originally granted standing to "any person acting for the interests of itself, its members, or the general public."  Conversely, California's anti-spam statute limits standing to EMSPs or recipients of the deceptive spam. These laws are thus not susceptible to the same abuse as the more general consumer protection statutes are, because the ball is entirely in the spammer's court.  No one can bring suit under either state's anti-spam law unless a spammer chooses to send that recipient or service provider deceptive spam.  It was therefore entirely reasonable to conclude that the same concerns about protecting legitimate businesses from aggressive litigation under the general consumer protection laws—concerns that they addressed by adopting a requirement of actual injury—do not apply to suits under the anti-spam statutes.  Both anti-spam statutes reflect a straightforward legislative choice to limit standing based on the type of plaintiff (who must be either an ICSP/EMSP or a recipient of unlawful spam) rather than by imposing a requirement of actual injury.  There is no basis for this Court to impose additional limitations that neither legislature saw fit to include.

II.     **BSI Proved In Phase One Of The Mini-Trial That It Satisfies Both The Statutory Requirements, As Well As Defendants' Broader "Bona Fide" Factors, And Therefore Has Standing To Maintain Its Claims Under Both Parties' Theories**.

In Phase One of the Mini-Trial, the jury credited BSI's overwhelming proof that it provides the services required by the Maryland and California statutes to qualify as an ICSP and EMSP. That is enough to entitle BSI to sue under those statutes.

Defendants first attack this aspect of the verdict by arguing that none of the services that BSI provides, other than its direct provision of email accounts to users, is even relevant to standing. Of course, BSI indisputably does provide email accounts to users, so it is not at all clear why Defendants even bother with this argument. But it is clearly wrong in any event. The Maryland statute is not limited to electronic mail service providers, but rather confers standing on entities that provide "interactive computer services," a broader term that includes services in addition to traditional email accounts. And these additional services are relevant because they are exactly the kinds of services that other ICSPs and EMSPs provide, which underscores that BSI is indeed a legitimate service provider under any definition of that term. Likewise, Defendants' argument that the DNS service that BSI provides to St. Luke's is not relevant to its standing under the California statute is incorrect. Kraft Opp. Br. 32, n. 11 (claiming that evidence of BSI's DNS services is not relevant to its standing). The evidence clearly showed that BSI's DNS service is essential to the operation of St. Luke's email service and enables email access for *approximately two hundred staff members* at St. Luke's. BSI's DNS service is clearly relevant to BSI's standing under both the Maryland and California statutes.

Defendants next argue that BSI failed to establish standing under *BSI's* theory of the case, but that, too, is meritless. In fact, Defendants' argument does not address itself to BSI's theory of the case at all; rather, it is merely a rehash of *Defendants'* theory that BSI must

11

demonstrate that it was "adversely affected" by spam.  *See* Kraft Opp. Br. 31-33 (claiming that

BSI must show that it was "burdened by Defendants' spam" in providing services to its

customers, and that BSI "cannot show and has not shown the type of harm the statutes at issue

were intended to address").  BSI's theory—the only theory that is consistent with the statutory

text—is that the statutes do not require any showing of actual injury or adverse effects.  On that

theory, BSI plainly should prevail.  Moreover, Defendants' suggestion that BSI is only entitled to

sue for spam that was addressed to its email customers is just another variation on their

previously rejected "actual harm" argument and is also unsupported by the text of the statutes.

Finally, the jury's Phase One verdict established that BSI is an ICSP and an EMSP even

under the *Defendants'* extra-statutory "bona fide" standard.  As demonstrated in BSI's opening

brief, the jury heard all of the testimony offered by Defendants' expert, Willis Marti, and was

instructed by this Court to consider Defendants' extended list of extra-statutory "bona fide"

factors. Pl.'s Opening Br. 36-39.  Even after considering these factors, the jury found that BSI is

an ICSP and EMSP.  It was *Defendants* who insisted that the jury consider these "bona fide"

factors in the first phase of the Mini-Trial, despite this Court's prior order that that phase was to

be limited to BSI's theory of the case.  Defendants must now live with the consequences of the

jury's Phase One determination.

Finally, the *only* factor that was tried to the jury in Phase Two—whether BSI "primarily

or substantially engages in bringing anti-spam litigation"—has absolutely nothing to do with the

services identified in the Maryland and California statutes and cannot be determinative of

whether BSI is a legitimate provider of those services, even if Defendants' "bona fide"

requirement were accepted.  *See* Pl.'s Opening Br. 37-40.  Although BSI maintains that there is

no basis to impose any "bona fide" requirement, if the Court disagrees, such a requirement must

at the very least be plausibly tied to an entity's provision of the services set forth by the legislatures.  An ICSP's or EMSP's litigiousness does not in any way detract from its capacity to provide those services and thus is not—and should not be—relevant to standing.  It would be reversible error to base a holding that BSI is not a "service provider" solely on the fact that it has previously litigated anti-spam cases, which is the only fact that the Phase Two verdict established.[8]

**CONCLUSION**

For the reasons stated in BSI's opening brief, in its Opposition to Defendants' post-trial motions, and in this Reply, the Court should (1) hold that BSI has standing to sue under the Maryland and California statutes, and (2) deny Defendants' motions for summary judgment.


Date:  November 21, 2012                    Respectfully submitted,


_____/s/_____

Thomas M. Barba (D. Md. Bar No. 28487)
Roger W. Yoerges (D. Md. Bar No. 14088)
Jeffrey E. McFadden (D. Md. Bar No. 8738)
John J. Duffy (D. Md. Bar No. 28613)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, D.C.  20036
T: 202-429-3000
F: 202-429-3902
tbarba@steptoe.com
ryoerges@steptoe.com
jmcfadden@steptoe.com
jduffy@steptoe.com

Anthony A. Onorato (D. Md. Bar No. 28622)
STEPTOE & JOHNSON LLP

*Of Counsel:*

Stephen H. Ring (USDC-MD Bar No. 00405)
Law Offices of Stephen H. Ring, P.C.
506 Main Street, Suite 215
Gaithersburg, Maryland  20878
T: 301-563-9249
F: 301-563-9639
shr@ringlaw.us

Mike Rothman (USDC-MD Bar No. 14568)
Law Office of Michael S. Rothman
401 E. Jefferson Street, Suite 201
Rockville, MD  20850
T: 301-251-9660
F: 301-251-9610
mike@mikerothman.com

---

[8] As argued in BSI's opening brief, the Phase Two instructions were fatally flawed, because even if there were a basis for considering BSI's litigation history as a factor relevant to its standing, the instructions erred in making that factor alone dispositive of BSI's standing.  *See* Pl.'s Opening Br. 39-40.

1114 Avenue of the Americas
New York, NY  10036                           *Counsel for Plaintiff Beyond Systems, Inc.*
T: 212-506-3900
F: 212-506-3950
tonorato@steptoe.com

*Counsel for Plaintiff Beyond Systems, Inc. and
Third-Party Defendants James Joseph Wagner
and Hypertouch, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2012, the foregoing PLAINTIFF'S

POST-TRIAL REPLY MEMORANDUM was filed electronically in accordance with the

Court's CM/ECF procedures, and served electronically on the below-named parties by the

Court's electronic notification system:

Barry J. Reingold
John M. Devaney
John K. Roche
PERKINS COIE LLP
700 Thirteenth Street N.W.
Washington, D.C.
20005-3960
(202) 654-6200 (Telephone)
(202) 654-6211 (Facsimile)
jroche@perkinscoie.com
breingold@perkinscoie.com
jdevaney@perkinscoie.com

Darrell J. Graham
Peter S. Roeser
John E. Bucheit
ROESER, BUCHEIT & GRAHAM LLC
20 N. Wacker Dr., Ste. 1330
Chicago, IL 60606
(312) 922-1200
dgraham@rbglegal.com
proeser@rbglegal.com
jbucheit@rbglegal.com

*Counsel for Defendants Kraft Foods Inc.,
Kraft Foods Global Inc., and Vict. Th.
Engwall & Co., Inc.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street NW
Washington, D.C.  20004
(202) 344-4000 (Telephone)
(202) 344-8300 (Facsimile)
jdbaldridge@venable.com
ljfales@venable.com
anrothman@venable.com

*Counsel for Defendant Connexus
Corp.*

_____
/s/
Jennifer M. Newton