IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BEYOND SYSTEMS, INC. | : |
| Plaintiff, | : Case No. 8:08-CV-00409-PJM |
| v. | : The Honorable Peter J. Messitte |
| KRAFT FOODS, INC., et al., | : Magistrate Judge Charles B. Day |
| Defendants. | : |

**KRAFT FOODS, INC.'S MEMORANDUM
IN SUPPORT OF BILL OF COSTS**

Defendants Kraft Foods, Inc. and Vict. Th. Engwall & Co, Inc. (collectively, "Kraft") became the prevailing parties in this action when, on August 12, 2013, the District Court granted Kraft's motion for summary judgment and entered final judgment in its favor following a two-week jury trial that brought to an end more than five years of litigation.  (*See* Dkt. 611, 612.)  As the prevailing party, Kraft is entitled to recover taxable costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).  As set forth in its Bill of Costs and described in more detail below, Kraft seeks an award of costs incurred defending BSI's claims in the amount of $31,655.48.

**BACKGROUND**

The basis for BSI's claims in this case, as the Court noted in its summary judgment opinion, was nothing short of remarkable.  Far from the *bona fide* service provider it claimed to be, BSI and its owner Paul Wager were in the business of intentionally collecting "spam" emails for the purpose of suing commercial advertisers under California and Maryland statutes regulating the transmission of unsolicited commercial email.  At the time of trial in this case, BSI

had already filed dozens of spam-related lawsuits, seeking against defendants such as Kraft millions of dollars in statutory damages for commercial emails it had made no attempt to avoid and, in fact, went to considerable lengths to seek out and collect.  The basic strategy behind BSI's litigation scheme was simple:  Place email servers in two states – Maryland and California – with hefty statutory penalties for unsolicited email.  Use those servers to trap and collect as much spam as possible.  Route the spam through a server operated by Paul's brother Joe and his company, Hypertouch, in California first, which then automatically forwarded it to a server in Maryland.  Archive the emails indefinitely.  Mine them for deep-pocket defendants to sue, sometimes years after the emails were received.  Market a prospectus of potential cases to law firms that will take the cases for a contingency fee.  Bring separate lawsuits – one in California, one in Maryland – asserting multiple claims on the same emails.  Claim in each of those lawsuits a right to double recovery on each email under both the California and Maryland statutes. Attempt to leverage the sheer volume of emails collected, regardless of whether they are unlawful or not, to coerce large settlements.

BSI's litigation scheme, at least for a time, proved to be quite profitable.  Between 2006 and 2012, BSI coerced more than $1 million in settlements – more than three times its revenue from other activities – from defendants who, forced not only to spend substantial sums to defend the claims, were faced with the prospect of statutory penalties up to $1,000 for each of the thousands of emails BSI had solicited and collected from them.  Having gone largely unchallenged to that point, by 2008 BSI had begun to set its sights on larger defendants with deeper pockets.

Such was the nature of its claim against Kraft and defendant Connexus Corp.  Rather than acquiesce to BSI's extortionist demands, Kraft and Connexus pushed back by, *inter alia*,

challenging BSI's status as a legitimate internet service provider with standing to sue under either the California or Maryland statutes. Following extensive discovery, a two week jury trial was conducted in June 2012 on the threshold question of whether, given its operation and manufactured nature of its claims, BSI even had a right to pursue claims under the state statutes. The jury – based on what the Court described as "overwhelming" evidence (Dkt. 611 at 33) demonstrating that BSI had intentionally solicited, trapped and archived the emails on which it was suing for the sole purpose of bringing the claims at issue – concluded that BSI is not a *bona fide* service provider, but rather a company primarily in the business of fabricating claims to pursue against companies like Kraft and Connexus.

On August 12, 2013, the Court entered summary judgment against BSI on the ground that because it was not a *bona fide* service provider, it was not among the class of plaintiffs the Maryland and California statutes intended to protect and, therefore, lacked standing to bring claims thereunder. (Dkt. 611 at 16-30.) The Court also ruled that, by "inviting" and therefore "consenting" to the harm alleged, BSI's claims were barred as a matter of law by the common law doctrine *volenti non fit injuria*. (*Id.* at 30-36.) Among the more "remarkable features" of the case, the Court observed, was not only the ends to which BSI went to solicit and trap the emails on which to sue, but its attempts to artificially multiply its claims and Defendants' potential exposure. (*Id.* at 12.) BSI's efforts included, *inter alia*, conspiring with Hypertouch to sue on thousands of the same Kraft emails that Paul's brother Joe had claimed in a different lawsuit had been sent to Hypertouch – which Hypertouch had then forwarded to BSI – at the same time Hypertouch was settling its case with Kraft and agreeing to cooperate with Kraft to identify and cure any future issues in exchange for a substantial cash payment. (*Id.*)

**BASIS FOR REQUEST**

Fed. R. Civ. P. 54(d) entitles the prevailing party in an action to an award of costs as a matter of course. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994) (Rule 54(d) "makes clear that, in the ordinary course, a prevailing party is entitled to an award of costs"). The rule creates a strong presumption that the prevailing party will be awarded its costs, and thus "it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption." *Wyne v. Medo Indus., Inc.*, 329 F. Supp.2d 584, 586 (D. Md. 2004). 28 U.S.C. §1920 provides that a "judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in this case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title."

**ITEMIZATION OF COSTS**

**I.   Court Reporter Fees And Transcript Costs**

The cost of deposition transcripts may be taxed if the deposition was reasonably necessary to the parties' case at the time they were incurred. 28 U.S.C. § 1920(a); *LaVay Corp. v. Dominion Federal savings & Loan Ass'n.*, 830 F.2d 522, 528 (4th Cir. 1987); *Simmons v. O'Malley*, 235 F. Supp.2d 442, 443 (D. Md. 2002). To be taxable, a transcript cost need only be "relevant and reasonable." *Am. Med. Sec., Inc. v. Larsen*, 31 F.Supp.2d 502, 509 (D. Md. 1998) ("[T]he language 'necessarily obtained for use in this case' in 28 U.S.C. § 1920(2) and (4)

requires merely that costs be relevant and reasonable and not that they be indispensable to the final outcome.") Transcripts obtained for use in discovery or trial preparation are therefore taxable. *Cf. Country Vinter of N.C., LLC v. E&J Gallo Winery, Inc.*, 718 F.3d 249 (4th Cir. 2013).

  A. <u>Summary Of Deposition Transcript Costs.</u>

| Deponent | Deposition Dates | Amount Sought | Supporting Invoices |
|---|---|---|---|
| Paul Wagner | 6/30/09<br>7/27/09<br>8/25/09<br>11/12/09 | $2,269.85<br>$885.50<br>$828.25<br>$1276.00 | Ex. 1 |
| Joe Wagner | 10/22/09 | $1731.50 | Ex. 2 |
| Peter Resnick | 10/14/09<br>10/15/09<br>10/26/09<br>10/27/09 | $992.45<br>$945.95<br>$896.15<br>$911.45 | Ex. 3 |
| Richard Levine | 10/1/09<br>10/2/09 | $1442.30<br>$1383.75 | Ex. 4 |
| Fredrick Cohen | 2/23/10 | $1610.25<br>$1,376.04<br>$1,231.60 | Ex. 5 |
| Kenneth Hirschman | 11/19/09<br>11/29/09 | $960.85<br>$878.02 | Ex.6 |
| John Evans | 12/9/09<br>12/10/09 | $677.05<br>$521.65 | Ex. 7 |
| Alexander Guardi | 10/23/08 | $368.75 | Ex. 8 |
| David Hyland | 10/23/08 | $218.30 | *Id.* |
| Jon Zendell | 10/23/08 | $283.20 | *Id.* |
| Ross Goldenberg | 10/22/08 | $976.45 | Ex. 9 |
| Ilan Mishan | 6/3/08 | $599.50 | Ex. 10 |

| | | | |
|---|---|---|---|
| Luanne Fragapane | 7/22/08 | $1,086.60 | Ex. 11 |
| Fred Miller | 7/23/08 | $746.05 | Ex. 12 |
| Joseph Mano | 10/24/08 | $867.55 | Ex. 13 |
| Stu Stein | | $1,112.85 | Ex. 14 |
| Fosina | Vol. 1<br>Vol. 2 | $601.15<br>$787.65 | *Id.* |
| **Total** | | **$27,466.66** | |

B. <u>Basis For Taxing Cost Of Each Deposition</u>

1. <u>Trial Witnesses</u>

Paul Wagner (Ex. 1), Joseph Wagner (Ex. 2), and Peter Resnick (Ex. 3) testified at trial. *See* U.S. Dist. Ct., D. Md. Guidelines For Bills Of Costs (3d. 2013), p. 7. ("D. Md. Guidelines").

2. <u>Expert Witness Depositions.</u>

Richard Levine (Ex. 4) was designated by BSI as a testifying expert, who was identified on Plaintiffs' "may-call" witness list. (Dkt. 539 at 29.) His deposition was introduced in support of Kraft's Post-Trial Brief and Motion for Summary Judgment that was dispositive of the case. (Dkt. 587, Ex. 2, at 8-9; Dkt. 599-4, Ex. 3.) *See* D. Md. Guidelines at 7.)

John Evans (Ex. 7) was designated by Kraft as an expert, *inter alia*, on the Kraft email transmissions noted above from Hypertouch to BSI on which Hypertouch had previously sued Kraft and settled. (Dkt. 539 at 29.) His deposition was noticed and taken by BSI, and his expert

report and declarations were submitted in support of Defendants' pre-trial motions for summary judgment. (Dkt. 283-20; 283-20; 257-22; 295-52 ¶ 6.) The District Court granted Kraft's motion to exclude these emails from the case. (Dkt. 611 at 4, n. 5; Dkt. 370.) *See* D. Md. Guidelines at 7.

Fredrick Cohen (Ex. 5) was designated as an expert by Defendants. His deposition was noticed and taken by BSI. Excerpts of Cohen's deposition transcript was submitted by BSI in opposition to Defendants' pre-trial motion for summary judgment (Dkt 295, Ex. 24), and Cohen was listed on Defendants' "will-call" witness list. (Dkt. 539 at 29.) Although ultimately Cohen was not called to testify, he was present at court every day and his deposition transcript was used to prepare his potential testimony and in connection with other trial preparation.

Kenneth Hirschman was an expert witness designated by Kraft to provide testimony regarding internet protocol and email marketing to rebut anticipated testimony by BSI's designated experts. His deposition was noticed and taken by BSI.

### 3. Party Witnesses

Ross Goldenberg (Ex. 9), David Hyland (Ex. 8), John Zendell (*Id.*) and Alexander Guardi (*Id.*) were employees and/or representatives of Kraft deposed at BSI's request. *See* D. Md. Guidelines at 7.

### 4. Luanne Fragapane and Fred Miller

Luanne Fragapane (Ex. 11) and Fred Miller (Ex. 12) were representatives of Sitel, a Kraft vendor that handled database information, including complaints, op-outs and other related information regarding Gevalia Coffee products and E-Advertising. Both witnesses had knowledge of the Kraft/Gevalia account, and their knowledge/testimony was directly relevant to BSI's allegations.

      5.    <u>Joseph Mano and Illan Mishan, Stu Stein and Jim Fosina</u>

Joseph Mano was an employee of Kraft who was involved in the Gevalia electronic marketing campaign. Stu Stein was a Kraft employee who managed Gevalia's electronic marketing during the period that the email messages were sent. He was also a 30(b)(6) witness. Jim Fosina is the president of Fosina Marketing and was an outside contractor who advised Gevalia on its e-marketing campaigns. Both of these depositions, Stein and Fosina, were referenced in the summary judgment proceedings.

      C.    <u>Trial and Summary Judgment Transcripts</u>

Kraft also seeks $1,478.10 for costs incurred to obtain trial transcripts for the parties' eight-day trial spanning from June 19-June 28, 2012. (Ex. 15.) The transcripts were used in connection with witness examination, closing arguments, and the extensive post-trial briefing ordered by the District Court. (Dkt. 584-85, 587, 592-93, 599-601.) In addition, Kraft seeks $123.30 for the summary judgment transcripts. (Ex. 15.)

**II.    Process Server Fees**

Kraft requests $708.00 in private process server fees it incurred serving deposition and trial subpoenas (Ex. 16). *See Wyne v. Medo Indus., Inc.*, 329 F. Supp.2d 584, 590 (D. Md. 2004) ("[F]ees associated with private process servers are taxable costs.") The fees Kraft requests were incurred in connection with the following subpoenas:

    (1)    Document and deposition subpoena for Joseph Wagner ($262.00), who testified at trial.

    (2)    Trial subpoena for John Clark ($147.00), who testified at trial.

    (3)    Trial subpoena for Steven Wagner ($147.00), who testified at trial.

(4)   Trial subpoena for William Wagner ($152.00).  Although Wagner did not testify, his deposition was submitted in support of Kraft's post-trial Motion for Summary Judgment, which was dispositive of the case.  (Dkt. 587 at 19-20.)

### III.   Copying Costs

Kraft requests $1,879.42 in copying and related costs.  *See* 28 U.S.C. § 1920(4).  This includes (i) $1638.70 in photocopying and printing expenses charged to Kraft at $.07 a copy for 23,267 documents copied and printed in the case and (ii) $250.70 for the cost of scanning and bates labeling documents Kraft produced to BSI in response to discovery requests.  The photocopying and printing costs were incurred in connection with the parties' production of hundreds of thousands of documents during discovery, documents produced through third-party discovery, the filing of extensive pre- and post-trial summary judgment briefs for which the District Court requested courtesy copies of all exhibits, case law and briefs, and copying costs.

### CONCLUSION

Wherefore, Defendants Kraft Foods, Inc. and Vict. Th. Engwall & Co., Inc. seek recovery of $31,655.48 in costs incurred in this matter pursuant to Federal Rule of Civil Procedure 54(d)(1) and 27 U.S.C. 1920 and for such additional relief as the Court deems appropriate.

Dated:  September 9, 2013                               /s/ John K. Roche

| | |
|---|---|
| Darrell J. Graham (*pro hac vice*) | John K. Roche (USDC-MD Bar No. 17531) |
| John E. Bucheit (*pro hac vice*) | PERKINS COIE LLP |
| Roeser Bucheit & Graham LLC | 700 13th Street, N.W., Suite 600 |
| 2 North Riverside Plaza, Ste. 1420 | Washington, D.C. 20005-3960 |
| Chicago, IL  60606 | (202) 434-1627 |
| (312) 621-0301 | (202) 654-9106 (facsimile) |
| (312) 621-0306 (facsimile) | jroche@perkinscoie.com |
| dgraham@rbglegal.com | |
| jbucheit@rbglegal.com | |

Counsel for Defendants Kraft Foods, Inc. and Vict. Th. Engwall & Co.